THOMAS B. WALPER (State Bar No. 96667)
thomas.walper@mto.com
JOHN W. BERRY (State Bar No. 295760)
john.berry@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

RACHAEL E. MENY (State Bar No. 178514)
rmeny@keker.com
THOMAS E. GORMAN (State Bar No. 279409)
tgorman@keker.com
KEKER, VAN NEST & PETERS LLC
633 Battery Street
San Francisco, California 94111-1809
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

*Counsel for Google LLC*

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re<br><br>ANTHONY SCOTT LEVANDOWSKI,<br><br>Debtor. | Bankruptcy Case No. 20-30242 (HLB)<br><br>Chapter 11<br><br>Hon. Hannah L. Blumenstiel |
| ANTHONY SCOTT LEVANDOWSKI,<br><br>Plaintiff,<br><br>UBER TECHNOLOGIES, INC.,<br><br>Defendant. | Adv. Proceeding No. 20-03050_<br><br>**GOOGLE LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO INTERVENE**<br><br>Date: September 3, 2020<br>Time: 2:00 p.m. (PST)<br>Place: United States Bankruptcy Court<br>450 Golden Gate Ave.<br>Courtroom 19, 16th Floor<br>San Francisco, CA 94102 |

## TABLE OF CONTENTS


Page

I. INTRODUCTION ... 1

II. BACKGROUND ... 2

A. The Debtor's Illegal Solicitation of Google Employees and Trade Secret Theft ... 2

B. Uber's Agreement to Indemnify the Debtor ... 3

C. The Lawsuits That Followed ... 5

D. The Debtor's Bankruptcy ... 6

E. Uber's Proof of Claim ... 7

F. The Debtor's Proceeding Against Uber ... 8

III. ARGUMENT ... 9

A. Google Should Be Allowed To Intervene As Of Right Under Rule 24(a) ... 9

B. Google Should Be Allowed To Permissively Intervene Under Rule 24(b) ... 14

IV. CONCLUSION ... 15





Case: 20-03050 Doc# 15 Filed: 07/31/20 Entered: 07/31/20 17:39:47 Page 2 of 20

## TABLE OF AUTHORITIES


**Page(s)**

**FEDERAL CASES**

*Assurance Co. of Am. v. MDF Framing, Inc.*, No. CV 06-00169-MO, 2006 WL 8459542 (D. Or. Apr. 7, 2006) ....12

*In re Caldor Corp.*, 303 F.3d 161 (2d Cir. 2002) ....10

*California Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113 (9th Cir. 2002) ....10

*California ex rel. Lockyer v. United States*, 450 F.3d 436 (9th Cir. 2006) ....11

*In re Catholic Bishop of Spokane*, No. ADV 04-00291, 2006 WL 6817586 (B.A.P. 9th Cir. Sept. 6, 2006) ....13

*In re Enron Corp.*, 333 B.R. 205 (Bankr.S.D.N.Y.2005) ....14

*Feder v. Lazar (In re Lazar)*, 83 F.3d 306 (9th Cir. 1996) ....14

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico for Puerto Rico*, 872 F.3d 57 (1st Cir. 2017) ....10

*Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836 (9th Cir. 2011) ....15

*Fuel Oil Supply & Terminaling v. Gulf Oil Corp.*, 762 F.2d 1283 (5th Cir. 1985) ....10

*In re Hamilton*, 584 B.R. 310 (B.A.P. 9th Cir. 2018), aff'd, 785 F.App'x 438 (9th Cir. 2019) ....13

*Matter of Marin Motor Oil, Inc.*, 689 F.2d 445 (3d Cir. 1982) ....10

*In re Molasky*, 843 F.3d 1179 (9th Cir. 2016) ....9

*Nazomi Communications, Inc. v. Nokia Corp.*, No. SACV 10-151 DOC (RNBx), 2010 WL 11508956 (C.D. Cal. June 21, 2010) ....14

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Ampam Riggs Plumbing Inc.*, No. CV-14-00039-PHX-DGC, 2014 WL 1875160 (D. Ariz. May 9, 2014) ....11





Case: 20-03050 Doc# 15 Filed: 07/31/20 Entered: 07/31/20 17:39:47 Page 3 of 20

# TABLE OF AUTHORITIES
**(Continued)**

**Page(s)**

*New Hampshire Ins. Co. v. Greaves*, 110 F.R.D. 549 (D.R.I. 1986)....................12, 13

*Nw. Forest Res. Council v. Glickman*, 82 F.3d 825 (9th Cir. 1996), *as amended on denial of reh'g* (May 30, 1996)....................12

*Oregon Nat. Res. Council, Inc. v. Tulelake Irr. Dist.*, 980 F.2d 738 (9th Cir. 1992)....................9

*In re Rawlinson*, 209 B.R. 501 (B.A.P. 9th Cir. 1997)....................7

*Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983)....................12

*Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001)....................11

*Teague v. Bakker*, 931 F.2d 259 (4th Cir. 1991)....................13

*U.S. v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002)....................9, 10, 15

*U.S. v. Levandowski*, No. 3:19-cr-00377 (N.D. Cal.)....................6

*Waymo LLC v. Uber Techs., Inc.*, No. 3:17-cv-00939 (N.D. Cal. Feb. 23, 2017)....................5, 8

*Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183 (9th Cir. 2009)....................11

**Federal Statutes**

11 U.S.C. § 502(a)....................11, 15

11 U.S.C. § 510(c)....................14, 15

11 U.S.C. § 523(a)(6)....................13, 14

11 U.S.C. § 1109(b)....................10

**State Statutes**

Cal. Civ. Proc. Code § 703.140(b)10(E)....................7



Case: 20-03050 Doc# 15 Filed: 07/31/20 Entered: 07/31/20 17:39:47 Page 4 of 20

## TABLE OF AUTHORITIES
**(Continued)**

**Page(s)**

**FEDERAL RULES**

FED. R. BANKR. P. 7024 ........ 9, 16

FED. R. CIV. P. 24 ........ 9, 11

FED. R. CIV. P. 24(a) ........ 9

FED. R. CIV. P. 24(a)(1) ........ 9, 10

FED. R. CIV. P. 24(a)(2) ........ 9, 10

FED. R. CIV. P. 24(b) ........ 9, 15



Case: 20-03050 Doc# 15 Filed: 07/31/20 Entered: 07/31/20 17:39:47 Page 5 of 20

## I. INTRODUCTION

1. The Debtor Anthony Levandowski recently filed this proceeding against Uber Technologies, Inc. ("Uber") seeking to enforce his rights under an indemnity agreement with Uber and objecting to Uber's proof of claim, which is entirely contingent on the enforceability of that same agreement. Google LLC ("Google"), the largest creditor in this bankruptcy, and the ultimate beneficiary of the Uber indemnity, now seeks to intervene in this critical proceeding.

2. The Debtor filed the bankruptcy case on March 4, 2020, just hours after a $179 million state court judgment was entered against him in favor of Google. That judgment arose from a unanimous arbitral finding that the Debtor, who was an early employee of Google's self-driving car business, had violated his contractual, statutory and tort duties to Google, with a view towards benefiting Uber's own self-driving car venture. Specifically, the arbitration panel found that the Debtor, while still a Google employee, had engaged in stealth negotiations with Uber's prior management to form a new company to compete with Google, staffed his secret company with Google engineers, and then sold the company to Uber for a reported $680 million.

3. The Debtor's only prospect of fully satisfying his liability to Google in this bankruptcy is to recover under the Indemnification Agreement he signed with Uber in 2016. That agreement was drafted specifically to reimburse the Debtor for any civil liability arising from his wrongful conduct against Google. The agreement specifically states that Uber must indemnify the Debtor if his "former employer" (i.e., Google) sued him for a variety of enumerated claims, including any breach of the Debtor's duty of loyalty or of his non-solicitation and non-competition covenants owed to Google—the very claims successfully brought by Google in its arbitration against him.

4. Because Uber argues in its proof of claim that its indemnity obligations should be rescinded, the Debtor filed this proceeding to object to that proof of claim and seek specific performance of the Indemnification Agreement. This proceeding, therefore, strikes at the very core of the recoveries in this bankruptcy case, and is tightly intertwined with the administration and liquidation of the estate's greatest asset, the indemnity. Indeed, as the Uber proof of claim


Case: 20-03050 Doc# 15 Filed: 07/31/20 Entered: 07/31/20 17:39:47 Page 6 of 20

itself makes clear, the outcome of the dispute over the indemnity will likely be dispositive of *all* of the major claims in this case.

5. Because Google's recovery on its claim against the Debtor depends in large part on the outcome of this proceeding, Google has a significant interest in making sure the Uber indemnity is enforced, and can intervene without imposing any additional administrative costs to the estate. Google also approaches the indemnity dispute from a unique perspective. It is the "former employer" specifically referenced in the Indemnification Agreement. It is also the victim of the Debtor's illegal scheme to compete against Google using employees he poached from Google for his and Uber's benefit while still working for and being paid by Google. Unlike the Debtor, then, Google approaches this dispute without any conflict of interest or unclean hands. Further, Google is already quite familiar with the facts underlying the Debtor's indemnity claim, having investigated and litigated issues arising from the events that unfolded in 2015 and 2016 for several years.

6. The Debtor has no objection to this intervention, Uber will not suffer any cognizable prejudice from Google's involvement in this case, and having all three parties litigating in the same forum over the same issues—the most important issues in this bankruptcy—will be the most efficient and just way to resolve the parties' disputes over the indemnity. Accordingly, Google asks this Court to allow it to intervene and present arguments and evidence in this proceeding.

## II. BACKGROUND[1]

### A. The Debtor's Illegal Solicitation of Google Employees and Trade Secret Theft

7. Before this bankruptcy, the lawsuits and his criminal prosecution, the Debtor was a well-paid Google employee. *See* Declaration of Alex Gorin ("Gorin Decl.") Ex. A (Corrected Final Award (Dec. 23, 2019), redacted ("CFA")), at 20, 36, 42. The Debtor joined Google in 2007, and worked on Google's self-driving car initiative, ultimately becoming the leader of a

[1] The facts in this section are derived from the unanimous findings of the arbitral panel in Google's litigation against the Debtor (Gorin Decl. Ex. A) and Judge Alsup's findings in the Waymo LLC-Uber litigation (*id*. Ex. B).


Case: 20-03050 Doc# 15 Filed: 07/31/20 Entered: 07/31/20 17:39:47 Page 7 of 20

group responsible for developing proprietary light-detecting and ranging sensors for self-driving vehicles. *See id.*

8. In 2015, Google was way ahead of Uber in the self-driving car space. The Debtor, fully aware of Uber's desire to catch up with Google, secretly approached some former Uber executives in the summer of 2015 with a solution to their problem—he could bring his know-how and a team of Google engineers over to Uber. *See id.* at 34-35. With that in mind, and unbeknownst to Google, the Debtor and Uber's prior management entered into negotiations in 2015 and 2016 and collaborated to create a new company, Ottomotto LLC ("Otto"), so that it could be staffed with Google engineers and then sold to Uber after the Debtor's departure from Google. *See id.* at 35, 38-41.

9. The Debtor left Google in January 2016 to further carry out this plan. *See id.* at 35, 37, 39-41. A final term sheet for Uber's acquisition of his newly formed company Otto was signed just a few weeks later in February, and the final merger agreement for Uber to acquire Otto was executed in April 2016. *See id.* at 40-42.

10. The former Uber executives in place at the time were aware of the Debtor's disloyalty to Google and, in fact, encouraged it during their covert negotiations in 2015 and 2016. The Debtor, in turn, took actions to assist Uber at Google's expense. He convinced at least 29 Google employees to leave and join his newly-formed company, Otto, which he then secretly sold to Uber. *See id.* at 41. As he explained to Uber executives at that time, those departures would "damage Google" because "they were going right across the street to the competitor." *Id.* at 51. Before leaving Google, the Debtor also stole a treasure trove of Google files and trade secrets, including thousands of computer files that he took before leaving Google and accessed after he left.

**B. Uber's Agreement to Indemnify the Debtor**

11. Given all that he had already done—soliciting dozens of Google employees, taking Google's proprietary information and secretly working with Uber to compete against Google—the Debtor knew he was facing enormous legal exposure from Google. So, shortly after resigning


Case: 20-03050 Doc# 15 Filed: 07/31/20 Entered: 07/31/20 17:39:47 Page 8 of 20

from Google, he demanded an indemnity from Uber, arguing that this indemnity was "critical," and he "wouldn't have done [the Otto deal] without it." *Id*. at 52.

12. Uber acquiesced, and signed the Indemnification Agreement with the Debtor on April 11, 2016, the same day Uber signed the merger agreement to acquire Otto. *See* Dkt. No. 1 (Compl.) ¶ 1, Ex. A. Uber did so even though its executives at the time were aware that the Debtor had engaged in numerous "bad acts" that would trigger Uber's indemnity obligations if Google ever sued the Debtor. *See*, *e.g.*, *id*. at 1, § 2.1 (provisions in agreement specifying "Bad Acts" triggers of indemnity obligations).

13. The Indemnification Agreement provides the Debtor and some of his defecting Google colleagues (including a former Google employee, Lior Ron) an *unlimited* indemnity for claims brought by their "Former Employer"—that is, Google. *Id*. at 1. Uber agreed to indemnify them for any judgment (and other costs) arising from specific "bad acts," including any "breach" of a "duty of loyalty" owed to Google, or any breach of a "non-solicitation" or "non-competition" agreement with Google. *Id*. at § 2.1(a)(ii)-(iii). Uber also agreed to indemnify the Debtor, Ron and the others for any Google claim arising from the "misappropriation" of any of Google's "intellectual property, including … trade secrets." *Id*. at § 2.1(a)(i). Uber further agreed to advance any "Expenses" arising from such claims, defined to include any "judgment[]," "award[]," "damages," litigation costs, attorney fees or interest. *Id*. at § 2.3(a) & § 1 Definitions.

14. In March 2016, before closing its deal with the Debtor and signing the Indemnification Agreement, Uber retained Stroz Friedberg, LLC, an outside security and forensics firm, to carry out a diligence investigation of the Debtor's misconduct towards Google. As part of its investigation, Stroz Friedberg obtained 35 of the Debtor's computers and devices, forensically examined them and interviewed him over the course of several days.

15. As the Indemnification Agreement makes clear, whatever "bad acts" that were revealed to or discovered by Stroz Friedberg at any point during its investigation of the Debtor would be fully indemnifiable by Uber. *See id*. at 1-2 ("any claim that has arisen out of or resulted from any Pre-Signing Bad Acts … that reasonably arises or results from any facts, circumstances, activities or events contained or disclosed on the face of such final report shall, subsection to


Case: 20-03050 Doc# 15 Filed: 07/31/20 Entered: 07/31/20 17:39:47 Page 9 of 20

Section 2(b)(ii), constitute an Indemnifiable Claim."). Stroz Friedberg's investigation confirmed that, while still employed at Google, the Debtor had solicited dozens of Google employees to leave with him, formed a company to compete with Google and negotiated the sale of that company to Uber. Stroz Friedberg also discovered and disclosed to Uber's prior leadership that the Debtor had taken Google trade secrets and proprietary information, including that he had downloaded thousands of Google proprietary files shortly before leaving Google and accessed some after his departure.

**C. The Lawsuits That Followed**

16. The Uber-Debtor acquisition deal for Otto was publicly announced in August 2016.[2] Shortly after that, in October 2016, Google sued the Debtor and Ron in arbitration, asserting claims for breach of contract, breach of tort duties and statutory unfair competition. That arbitration focused on the Debtor's illegal solicitation of Google employees and unlawful competition against Google.

17. Then, in February 2017, Waymo LLC—Google's self-driving business that was spun off as a separate company in 2016—sued Uber in federal court in this district. In that action, Waymo alleged several counts of trade secret misappropriation, patent infringement and unfair competition. *See Waymo LLC v. Uber Techs., Inc.*, No. 3:17-cv-00939 (N.D. Cal. filed Feb. 23, 2017). In May 2017, Judge Alsup granted, in part, Waymo's request for a preliminary injunction. *See* Gorin Decl. Ex. B, at 23. Judge Alsup found that "Waymo has made a strong showing that Levandowski absconded with over 14,000 files from Waymo, evidently to have them available to consult on behalf of Otto and Uber." *Id*. at 7. Judge Alsup also found that "it would strain credulity to imagine that Levandowski plundered Waymo's vault the way he did with no intent to make sure of the downloaded trove," and "that Uber knew or at least should have known of the downloading but nevertheless proceeded to bring Levandowski and Otto on board." *Id*. at 7, 9-10.

[2] The Debtor's and Uber's Otto deal was not publicly announced until August 2016 to minimize the chance that Google would become aware of the Debtor's breach and withhold his final bonus payment. *See* Gorin Decl. Ex. A (CFA), at 41-42.


Case: 20-03050 Doc# 15 Filed: 07/31/20 Entered: 07/31/20 17:39:47 Page 10 of 20

Ultimately, in February 2018, after a year of litigation and five days into a jury trial, Waymo and Uber settled the federal court case.

18. Meanwhile, in Google's arbitration against the Debtor and Ron, the three arbitrator panel held a two-week hearing in April and May 2018 with over 30 fact witnesses and over 600 exhibits. *See id*. Ex. A (CFA), at 11. In March 2019, the panel issued a unanimous interim award in Google's favor, and then issued a unanimous final award on December 6, 2019. *See id*. at 123. In its final award, the arbitral panel awarded Google a net amount from the Debtor of $174,786,091.24 (excluding joint and several portions of the award). *See id*. Ex. C (state court judgment).

19. On January 9, 2020, Google filed a petition to confirm the award in California Superior Court. *See Google LLC v. Levandowski and Ron*, CPF-20-516982 (S.F. Cty. Super. Ct. Mar. 4, 2020). That petition was granted, and the state court judgment was entered on March 4, 2020. *See* Gorin Decl. Ex. C. The Debtor has appealed the state court order confirming the arbitral award and entering the judgment, and that appeal is still pending. Meanwhile, post-judgment interest on the judgment is accruing at a rate of 10% *per annum* (*see* Cal. Civ. Proc. Code § 685.010), and if the debt is not discharged, will continue to accrue post-petition. *See In re Hamilton*, 785 F. App'x 438, 439 (9th Cir. 2019) ("interest at the state's judgment interest rate continues to accrue postpetition on nondischargeable debts") (quotations and citations omitted).

**D. <u>The Debtor's Bankruptcy</u>**

20. After Google obtained its final arbitral award against the Debtor and Lior Ron, Uber honored its indemnification obligations to Ron under the Indemnification Agreement, paying Ron's full $9-plus million share of the award owed to Google. Uber, however, refused to do the same for the Debtor.

21. So, on the same day Google's $179 million state court judgment was entered against him, the Debtor filed for Chapter 11 bankruptcy protection on March 4, 2020. As the Debtor explained in his April 2020 status conference statement to this Court, he filed bankruptcy specifically to "stay Google's collection of the Judgment while his and Uber's respective rights


Case: 20-03050 Doc# 15 Filed: 07/31/20 Entered: 07/31/20 17:39:47 Page 11 of 20

under the Indemnification Agreement can be determined." *In re Levandowski,* No. 20-30242, Dkt. No. 64 at 2.

22. Other than Google's claim of $179 million for the state court judgment, the Debtor's bankruptcy schedules list about $3 million of other liabilities. *See id*., Dkt. No. 138 at 7. Beyond the Indemnification Agreement, which the Debtor values at approximately $179.5 million, the Debtor has identified assets with an approximate value of $60 million. *See id*., Dkt. No. 137 at 10-20. Those include $17.6 million in retirement accounts; $15.4 million owed to him; $10.7 million in equity interests; $7 million in trust accounts; $5.9 million in investments in four businesses; $3.3 million in security deposits and prepayments; and $780,000 in vehicles, bank accounts, and insurance policy interests. *See id*. Of these assets, the Debtor has claimed about $17.6 million—the full value of the Debtor's retirement accounts—as exempt under California law. *See id*., Dkt. 123 at 25.[3] The Debtor has also suggested that the $7 million contained in his trust accounts are excluded from being property of the estate.

23. If the Debtor's claimed exemptions and exclusions were upheld, the Debtor would have only about $35 million of assets to satisfy his liabilities. And even if all of the Debtor's claimed exemptions and exclusions are rejected, he cannot come close to fully repaying Google (or his other creditors) in this bankruptcy without recovering on his indemnification claim against Uber.

**E. Uber's Proof of Claim**

24. Uber filed its proof of claim on July 8, 2020, asserting claims against the Debtor's estate. The allowance of each of these claims requires Uber to prevail on its contention that its Indemnification Agreement with the Debtor (but not Ron) should be voided or not enforced, or that its liability to the Debtor under that agreement is somehow limited. *See* Gorin Decl. Ex. D (Uber proof of claim, Claim 8-1).

---

[3] As this Court is aware, Individual Retirement Account exemptions have specific limits. Under California law (which is the law the Debtor cites in his schedules), the IRA exemption is limited to funds "reasonably necessary for the support of the debtor and any dependent of the debtor." Cal. Civ. Proc. Code § 703.140(b)10(E). The Debtor's IRA assets far exceed this limit. *See In re Rawlinson*, 209 B.R. 501, 503 n.4, 508 (B.A.P. 9th Cir. 1997).


Case: 20-03050 Doc# 15 Filed: 07/31/20 Entered: 07/31/20 17:39:47 Page 12 of 20

25. Specifically, Uber identifies five contingent claims it has against the Debtor:

- a claim for contribution from the Debtor for its payment of Lior Ron's share of the arbitral award if the indemnity is rescinded (*id.* ¶¶ 3, 5);
- a claim for recovery of the legal fees and costs Uber paid for the Debtor's defense of the Google arbitration if the indemnity is voided (*id.* ¶¶ 3, 6-7);
- a claim for rescission of the fees and costs Uber incurred in litigating and settling the *Waymo* litigation if it is found that the Debtor "fraudulently induced" Uber into agreeing to sign the Indemnification Agreement and acquire Otto (*id.* ¶¶ 3, 8-9);
- a claim for reimbursement of the legal fees and costs Uber may incur if the indemnity is found to be unenforceable (*id.* ¶¶ 3, 10); and
- a claim to limit the amount Uber owes under the indemnity under an "Excluded Claim" provision if it is held that the Indemnification Agreement is enforceable and cannot be voided. *Id.* ¶¶ 3, 11-13.

Adjudication of any of these claims will require this Court to determine whether or not the Indemnification Agreement between Uber and the Debtor is enforceable.

**F. <u>The Debtor's Proceeding Against Uber</u>**

26. On July 16, 2020, in response to Uber's proof of claim, the Debtor initiated this proceeding with a complaint against Uber objecting to Uber's proof of claim and seeking declaratory relief, specific performance and damages.

27. The Debtor asserts eight different counts against Uber:

- Count I seeks a declaratory judgment that Uber has released all the claims in its proof of claim. *See* Dkt. No. 1 (Compl.) ¶¶ 143-151. If the Debtor is successful on his declaratory judgment action, Uber would have no claims against the estate and would be obligated to indemnify the Debtor for Google's judgment.
- Count II and III seek specific performance of the Indemnification Agreement by requiring Uber to indemnify the Debtor for the Google judgment and all fees and cost he incurred and will incur in litigating that judgment. *See id.* ¶¶ 152-166, 167-182.
- Count IV seeks a declaratory judgment that Uber has no right to rescind the Indemnification Agreement. *See id.* ¶¶ 183-193.


Case: 20-03050 Doc# 15 Filed: 07/31/20 Entered: 07/31/20 17:39:47 Page 13 of 20

- Counts V, VI and VII seek relief regarding Uber's agreement to acquire Otto Trucking LLC. *See id.* ¶¶ 194-217, 218-234, 235-245
- Count VIII is an objection to Uber's proof of claim. *See id.* ¶¶ 246-252. The Debtor argues that all of the claims against the estate asserted by Uber in its proof of claim must fail because the Indemnification Agreement is enforceable.

28. With this motion to intervene, Google seeks to join the Debtor's objections to Uber's proof of claim (count VIII) and his claims seeking to enforce the Indemnification Agreement (counts I, II, III and IV).

## III. ARGUMENT

29. Intervention is governed by Bankruptcy Rule 7024, which incorporates Rule 24 of the Federal Rules of Civil Procedure and thus follows the same intervention analysis used in any civil action. *See In re Molasky*, 843 F.3d 1179, 1184 n.4 (9th Cir. 2016). In the Ninth Circuit, "Rule 24 is broadly construed in favor of applicants for intervention," *Oregon Nat. Res. Council, Inc. v. Tulelake Irrigation Dist.*, 980 F.2d 738 (9th Cir. 1992), because a "liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *U.S. v. City of Los Angeles*, 288 F.3d 391, 397-98 (9th Cir. 2002).

30. That policy, and the requirements of Rule 24, weigh heavily in favor of Google's intervention. The Debtor does not object to this intervention, Uber will suffer no prejudice from Google's participation, and Google's intervention will lead to a more just and efficient outcome because it will allow all of the key issues in this bankruptcy to be resolved in one proceeding with all the key parties involved. Google's intervention, therefore, should be allowed both as of right under Rule 24(a) and permissively under Rule 24(b).

### A. Google Should Be Allowed To Intervene As Of Right Under Rule 24(a)

31. Intervention as of right is justified under Rule 24(a)(1) if Google has "an unconditional right to intervene by a federal statute" or under Rule 24(a)(2) if intervention allows Google to "protect its interests" in the proceeding. FED. R. CIV. P. 24(a)(1), (a)(2). Google's intervention is justified under either one of those provisions.

32. First, section 1109(b) of the Bankruptcy Code provides Google with the


Case: 20-03050 Doc# 15 Filed: 07/31/20 Entered: 07/31/20 17:39:47 Page 14 of 20

unconditional statutory right to intervene. It expressly states that "a creditor" "may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). Those requirements are easily satisfied—this proceeding is a "case under this chapter," and Google is the Debtor's largest creditor. *See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico for Puerto Rico*, 872 F.3d 57, 62 (1st Cir. 2017) (holding that § 1109(b) gives an unsecured creditors' committee an unconditional right to intervene in an adversary proceeding); *In re Caldor Corp.*, 303 F.3d 161, 169 (2d Cir. 2002) (same); *Matter of Marin Motor Oil, Inc.*, 689 F.2d 445, 446 (3d Cir. 1982) (same); 7 Collier on Bankruptcy ¶ 1109.04[1][a][i]-[ii] (16th ed. 2020); *but see Fuel Oil Supply & Terminaling v. Gulf Oil Corp.*, 762 F.2d 1283, 1284 (5th Cir. 1985).[4]

33. Second, Google can also intervene as of right under Rule 24(a)(2). A party is entitled to intervene under that provision if: "(1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest." *City of Los Angeles*, 288 F.3d at 397. Courts evaluating these requirements should construe this provision "broadly in favor of proposed intervenors," and must be "guided primarily by practical and equitable considerations." *Id*.

34. Google meets all four requirements of Rule 24(a)(2). Its motion to intervene is timely, and its intervention will not prejudice the Debtor or Uber. *See Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002). Google moved to intervene just two weeks after the Debtor commenced the action. The Debtor—the party that brought the action—does not oppose Google's intervention in the case. And Uber cannot point to any harm it could suffer from Google's involvement in this proceeding.

---

[4] Google is, of course, a creditor and no creditors' committee has been appointed in this case, but section 1109(b)'s text makes no distinction between the rights of a creditor and a creditors' committee. Given that Google is by far the largest unsecured creditor in this case, it is particularly appropriate to apply the plain language of section 1109(b) here.


Case: 20-03050 Doc# 15 Filed: 07/31/20 Entered: 07/31/20 17:39:47 Page 15 of 20

35. Google also has "significantly protectable interests" in this proceeding, and its ability to protect its interests will be impaired if it is not allowed to intervene. As the Ninth Circuit has noted, if a party "'would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.'" *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (*quoting* FED. R. CIV. P. 24 advisory committee notes).[5]

36. Google has a strong interest in this proceeding because it is, at its heart, a proceeding to object to Uber's proof of claim, which seeks to invalidate Google's best source of recovery in the bankruptcy—the Indemnification Agreement that explicitly indemnified the Debtor for claims brought by Google. The Bankruptcy Code recognizes this interest by giving Google, as a creditor, the right to raise its own objections to Uber's claims. *See* 11 U.S.C. 502(a). Indeed, Google has an "obvious" interest in being heard on the issue of whether the Indemnification Agreement must be enforced because the indemnity was crafted specifically to pay any judgment that Google might obtain against the Debtor. *Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1188-89 (9th Cir. 2009) (interest of airline to intervene in insurance coverage action between insurance company and maintenance company was "obvious" because airline "wants to be able to collect its judgment against [the maintenance company] from the [] insurance policy and it cannot do that if [the insurance company] is not liable under that policy"); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Ampam Riggs Plumbing Inc.*, No. CV-14-00039-PHX-DGC, 2014 WL 1875160, at *5 (D. Ariz. May 9, 2014) (contractor allowed to intervene in insurance coverage dispute between insurer and bankrupt subcontractor because a finding of no insurance coverage "could as a practical matter impair [contractor's] ability to recover").[6]

---

[5] Courts generally hold that a finding of a significant protectable interest also means the applicant's interests will be impaired if it is not allowed to intervene. *See Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 441-42 (9th Cir. 2006).

[6] *See also Assurance Co. of Am. v. MDF Framing, Inc.*, No. CV 06-00169-MO, 2006 WL 8459542, at *3 (D. Or. Apr. 7, 2006) (similar, because proposed intervenors were not just "creditors seeking to protect the collectability of a debt, rather they are the intended beneficiaries of the insurance policy" and without intervention, "any disposition of the action might involve a


Case: 20-03050 Doc# 15 Filed: 07/31/20 Entered: 07/31/20 17:39:47 Page 16 of 20

37. Finally, Google's interests are not adequately represented if it is not allowed to intervene here. In assessing this factor, courts examine "(1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996), *as amended on denial of reh'g* (May 30, 1996). To make this showing, Google only needs to show "that representation of its interests *may be* inadequate," and "the burden of making this showing is minimal." *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) (internal quotation marks and citations omitted) (emphasis added).

38. This showing is easily made here. For one, there is no certainty that the Debtor will be willing or able to pursue his claims and relief here, in what could be a long, protracted and expensive proceeding. The Debtor is also conflicted in the fight for the Uber indemnity. Based on what he alleges in his complaint, the Debtor appears to continue to harbor animus toward Google, his former employer;[7] and he was already found to have secretly worked with Uber's prior management to compete illegally against Google on the very acts resulting in Google's judgment against him. Under these circumstances, the Debtor may not adequately present all the arguments and evidence supporting the enforceability of the Uber indemnity, which ultimately is for the benefit of Google. *See, e.g., In re Catholic Bishop of Spokane*, No. ADV 04-00291, 2006 WL

---

practical impairment or potential disadvantage to the [contractors'] possible recovery of the state court claim" against their subcontractors); *New Hampshire Ins. Co. v. Greaves*, 110 F.R.D. 549, 552-53 (D.R.I. 1986) (accident victim allowed to intervene in insurance coverage dispute between insurance company and insured to determine enforceability of insurance policy because if insurance company prevailed, then victim's "only recourse will be against the uninsured [], who is without sufficient assets from which to satisfy any substantial judgment").

[7] The Debtor's complaint against Uber is littered with references about alleged "threats," "animosity," "hostility" and "attacks" from Google. *E.g.*, Dkt. No. 1 (Compl.) ¶¶ 4, 12, 39, 46. None of those allegations are true and, more to the point, have nothing to do with the indemnity dispute with Uber. Indeed, the Debtor seems more focused on trying to convince this Court that Google was the bad actor here, and that Uber was an unwitting business partner. That is the exact opposite of what the arbitral panel unanimously found in the Google-Debtor arbitration in 2019 or what Judge Alsup found in the Waymo-Uber litigation in 2018.


Case: 20-03050 Doc# 15 Filed: 07/31/20 Entered: 07/31/20 17:39:47 Page 17 of 20

6817586, at *5 (B.A.P. 9th Cir. Sept. 6, 2006) (intervention warranted where "there is animosity, mistrust and ill will" among the parties and the "level of distrust [is] extreme"); *Teague v. Bakker*, 931 F.2d 259, 262 (4th Cir. 1991) (affirming intervention "[g]iven the financial constraints on the insureds' ability to defend the present action" and the "significant chance that they might be less vigorous than the [proposed] Intervenors in defending their claim to be insureds under the [insurance] policy"); *New Hampshire Ins. Co.*, 110 F.R.D. at 553 (allowing intervention because plaintiff "lacks the financial means and the motivation to incur the significant litigation expenses" and "may not be as vigorous in his opposition of the insurer's attempt to invalidate the policy as the [intervenors] would like").

39. For example, the Debtor may not be willing or able to present all of the evidence needed to rebut Uber's efforts to void the Indemnification Agreement because that evidence could impact his pending civil appeal of the Google judgment against him. The Debtor may also believe that more fully detailing his willful misconduct against Google would make it easier for Google to establish that Google's claim is non-dischargeable as a debt based on a "willful and malicious injury." 11 U.S.C. § 523(a)(6); *see also In re Hamilton*, 584 B.R. 310, 314 (B.A.P. 9th Cir. 2018), *aff'd*, 785 F. App'x 438 (9th Cir. 2019) (former employer's judgment for, among other things, breach of duty of loyalty and trade secret misappropriation was non-dischargeable under § 523(a)(6)). Thus, even though the Debtor has a fiduciary duty to secure the greatest possible recovery for his largest creditor, his personal interest in defending against Google's judgment and obtaining a fresh start may make it difficult for him to present all of the best arguments and evidence on the issues in this case. *See, e.g.*, *Nazomi Commc'ns, Inc. v. Nokia Corp.*, No. SACV 10-151 DOC (RNBx), 2010 WL 11508956, at *5 (C.D. Cal. June 21, 2010) (allowing intervention because defendants may not adequately represent intervenor's interests because they "have a strong incentive to disclaim knowledge of whether the sub-components in their products infringe [plaintiff's] patents or blame [intervenors] for concealing the alleged infringement").

40. Finally, if Uber's indemnity were somehow found unenforceable and its claims in its proof of claim are allowed, Google may argue that any allowed Uber claim against the estate should be equitably subordinated to Google's claim under Bankruptcy Code section 510(c). *See*


Case: 20-03050 Doc# 15 Filed: 07/31/20 Entered: 07/31/20 17:39:47 Page 18 of 20

*In re Lazar*, 83 F.3d 306, 309 (9th Cir. 1996); *In re Enron Corp.*, 333 B.R. 205, 221 (Bankr. S.D.N.Y. 2005). Equitable subordination is an argument the Debtor, who was intimately involved in the inequitable conduct in 2015 and 2016, has not asserted. Only Google can make sure subordination is pursued in this proceeding. Moreover, because subordination of Uber's claims would be based largely on the same facts that will already be at issue in this proceeding, allowing Google to pursue that remedy as an intervenor would be an efficient and fair means of adjudicating these issues.

**B. Google Should Be Allowed To Permissively Intervene Under Rule 24(b)**

41. Permissive intervention by Google is also warranted under Rule 24(b). Permissive intervention is appropriation where the following is established: "(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *City of Los Angeles*, 288 F.3d at 403.

42. All three factors are present here. For one, there is no jurisdictional requirement for Google to permissively intervene in order to join in the Debtor's objections to Uber's claims. *See Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011) ("Where the proposed intervenor in a federal-question case brings no new claims, the jurisdictional concern drops away."). In any event, Google has its own independent right to object to Uber's claims under 11 U.S.C. § 502(a) and to seek equitable subordination under 11 U.S.C. § 510(c). That is more than sufficient to satisfy the jurisdictional requirement of Rule 24(b), to the extent that requirement even applies. *See id.*

43. Also, as noted above, Google has timely brought this motion to intervene; and any claims Google will make in this proceeding share common questions of law and fact with what is already being asserted in this case by the Debtor. Google seeks to pursue some of the same objections and claims the Debtor asserts in its complaint. Like the Debtor, Google contends that Uber's indemnity is fully enforceable and that each of Uber's defenses to its enforceability lacks merit. Therefore, there is substantial overlap and so permissive intervention is well justified.


Case: 20-03050 Doc# 15 Filed: 07/31/20 Entered: 07/31/20 17:39:47 Page 19 of 20

## IV. CONCLUSION

44. For the foregoing reasons, Google respectfully asks this Court to grant Google's motion to intervene under Rule 24(a) and Rule 24(b) of the Federal Rules of Civil Procedure, incorporated into these proceedings under Bankruptcy Rule 7024, so that Google may join the Debtor's objections to Uber's proof of claim (count VIII), join in the Debtor's claims seeking to enforce the Indemnification Agreement (counts I, II, III and IV), raise other claims or arguments regarding Uber's proof of claim, and otherwise be permitted to fully participate in this proceeding, including by filing motions, making and presenting arguments and evidence, taking discovery and participating fully in any trial or evidentiary hearings.

Dated: July 31, 2020

By: *John W. Berry*

John W. Berry
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
(213) 683-9571
john.berry@mto.com

By: *Rachael Meny*

Rachael Meny
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, California 94107-1809
(415) 391-5400
rmeny@keker.com

*Counsel for Google LLC*


Case: 20-03050 Doc# 15 Filed: 07/31/20 Entered: 07/31/20 17:39:47 Page 20 of 20