# EXHIBIT A

Debra I. Grassgreen (CA Bar No. 169978)
Jeremy V. Richards (CA Bar No. 102300)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Telephone:     (415) 263-7000
Facsimile:     (415) 263-7010
E-mail:        dgrassgreen@pszjlaw.com
               jrichards@pszjlaw.com

David J. Bradford (admitted *pro hac vice*)
Catherine Steege (admitted *pro hac vice*)
Terri L. Mascherin (admitted *pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
Telephone: (312) 222-9350
E-mail: dbradford@jenner.com
        csteege@jenner.com
        tmscherin@jenner.com

*Counsel for Uber Technologies, Inc.*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>ANTHONY SCOTT LEVANDOWSKI,<br><br>    Debtor. | Bankruptcy Case No. 20-30242 (HLB)<br><br>Chapter 11<br><br>Hon. Hannah L. Blumenstiel |
| ANTHONY SCOTT LEVANDOWSKI,<br><br>    Plaintiff,<br><br>    v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>    Defendant. | Adv. Pro. No. 20-03050<br><br>**UBER TECHNOLOGIES, INC.'S OBJECTION TO GOOGLE LLC'S MOTION TO INTERVENE**<br><br>Date:    September 3, 2020<br>Time:    2:00 p.m. (PST)<br>Place:    (Telephonic Appearances Only)<br>        United States Bankruptcy Court<br>        450 Golden Gate Ave.<br>        Courtroom 19, 16th Floor<br>        San Francisco, CA 94102 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................. ii

I. INTRODUCTION ...................................................................................................................... 1

II. BACKGROUND ....................................................................................................................... 3

    A. THE INDEMNIFICATION AND OTTO TRUCKING AGREEMENTS. ............. 3

    B. THE PRE-BANKRUPTCY ARBITRATION. ........................................................ 4

    C. LEVANDOWSKI'S ARBITRATION DEMAND, THIS ADVERSARY PROCEEDING AND THE STIPULATION TO EXPEDITE DISCOVERY IN THIS PROCEEDING. ........................................................................................ 4

    D. GOOGLE'S INTERVENTION MOTION. ........................................................... 5

III. ARGUMENT ............................................................................................................................. 6

    A. RULE 24(A) DOES NOT PERMIT GOOGLE TO INTERVENE AS OF RIGHT. ................................................................................................................... 7

        1. Google Has No Right To Intervene Under Rule 24(a)(1) ........................... 7

        2. Google Has No Right To Intervene Under Rule 24(a)(2) ........................ 11

    B. PERMISSIVE INTERVENTION IS IMPROPER BECAUSE GOOGLE WILL RAISE ISSUES COLLATERAL TO THE MERITS OF THIS ADVERSARY PROCEEDING. ...................................................................... 19

        1. Google Does Not Have an Absolute Right to Object to Uber's Claims. ..................................................................................................... 20

        2. Google Will Raise Collateral Issues, Not Common Issues ..................... 23

    C. IF THE COURT PERMITS GOOGLE TO INTERVENE, IT SHOULD LIMIT THE SCOPE OF INTERVENTION TO AVOID DELAY. ...................... 23

IV. CONCLUSION. ....................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Assurance Co. of Am. v. MDF Framing, Inc.*,
  No. 06-CV-00169, 2006 WL 8459542 (D. Or. Apr. 7, 2006) ................................14

*Assured Guar. Corp. v. Fin. Oversight & Mgmt. Bd.*
  *(In re Fin. Oversight & Mgmt. Bd.)*,
  872 F.3d 57 (1st Cir. 2017)....................................................................10, 24

*Baker & Taylor Drilling Co. v. Stafford*,
  369 F.2d 551 (9th Cir. 1966) ...............................................................22

*In re Caldor Corp.*,
  303 F.3d 161 (2d Cir. 2002)...................................................................10

*In re Castlerock Props.*,
  781 F.2d 159 (9th Cir. 1986) ...............................................................22

*In re Catholic Bishop of N. Alaska*,
  No. 08-CV-90019, 2009 WL 8446700 (Bankr. D. Alaska Mar. 25, 2009) ............................9

*In re CVC, Inc.*,
  106 B.R. 478 (Bankr. N.D. Ohio 1989) ...............................................................9

*In re Dominelli*,
  820 F.2d 313 (9th Cir. 1987) ...............................................................20

*In re Donnan*,
  No. EC-18-1106, 2019 WL 1922843 (B.A.P. 9th Cir. Apr. 29, 2019)...................................21

*Envisage Dev. Partners, LLC v. Patch of Land Lending, LLC*,
  No. 17-CV-3971, 2017 WL 4551575 (N.D. Cal. Oct. 11, 2017) ..........................................16

*In re Facebook, Inc. S'holder Deriv. Privacy Lit.*,
  367 F. Supp. 3d 1108 (N.D. Cal. 2019) ...............................................................17, 18

*Freedom from Religion Found. v. Geithner*,
  644 F.3d 836 (9th Cir. 2011) ...............................................................2, 7, 16, 17

*Fuel Oil Supply & Terminaling v. Gulf Oil Corp.*,
  762 F.2d 1283 (5th Cir. 1985) ...............................................................8, 9, 10

*Greene v. United States*,
  996 F.2d 973 (9th Cir. 1993) ...............................................................12

*Hawaii-Pacific Venture Cap. Corp. v. H.B. Rothbard*,
    564 F.2d 1343 (9th Cir. 1977) ...................................................................12, 16

*In re Horstman*,
    No. 18-CV-01517, 2018 WL 6219840 (C.D. Cal. Oct. 1, 2018).............................................16

*I.N.S. v. Cardoza-Fonseca*,
    480 U.S. 421 (1987)...........................................................................................8

*Intel Corp. v. Ins. Co. of Pennsylvania*,
    No. 08-CV-3238JF, 2009 WL 81393 (N.D. Cal. Jan. 9, 2009) ...........................24

*In re Ionosphere Clubs, Inc.*,
    101 B.R. 844 (Bankr. S.D.N.Y. 1989) .....................................................9, 10

*Liu v. S.E.C.*,
    140 S. Ct. 1936 (2020) .....................................................................................9

*Matter of Marin Motor Oil, Inc.*,
    689 F.2d 445 (3d Cir. 1982)..........................................................................10

*In re Morpheus Lights, Inc.*,
    228 B.R. 449 (Bankr. N.D. Cal. 1998) .........................................................21

*Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*,
    425 F.3d 1308 (11th Cir. 2005) ...................................................................12

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Ampam Riggs Plumbing Inc.*,
    No. CV-14-00039, 2014 WL 1875160 (D. Ariz. May 9, 2014) ...........................14

*Navigation Holdings, LLC v. Molavi*,
    No. 19-CV-02644, 2020 WL 1492693 (N.D. Cal. Mar. 27, 2020).........................22

*In re Nemee*,
    No. 09-93249-E-11, 2012 WL 8123401 (Bankr. E.D. Cal. Jan. 27, 2012) ...........................8

*Perry v. Prop. 8 Official Proponents*,
    587 F.3d 947 (9th Cir. 2009) .......................................................................19

*Phar-Mor, Inc. v. Coopers & Lybrand*,
    22 F.3d 1228 (3d Cir. 1994)..........................................................................10

*In re PM Cross, LLC*,
    No. 13-11075, 2013 WL 6048810 (Bankr. D.N.H. Nov. 15, 2013) ........................10

*Pub. Serv. Co. of N.H. v. Patch*,
    136 F.3d 197 (1st Cir. 1998)..........................................................................12

Case: 20-03050    Doc# 25-2    Filed: 08/20/20    Entered: 08/20/20 16:47:55    Page 5 of 39

*Schumacher v. White*,
    429 B.R. 400 (E.D.N.Y. 2010) ...................................................................22

*In re St. Theresa Properties, Inc.*,
    152 B.R. 852 (Bankr. S.D.N.Y. 1993) ....................................................8, 9

*In re Subpoenas Duces Tecum Dated Mar. 16, 1992*,
    978 F.2d 1159 (9th Cir. 1992) ...............................................................10, 11

*In re TMT Procurement Corp.*,
    764 F.3d 512 (5th Cir. 2014) .......................................................................22

*In re Tri Valley Growers*,
    No. 01-4098 (Bankr. N.D. Cal. Sept. 17, 2001) ......................................9, 10

*U.S. v. Tennessee*,
    260 F.3d 587 (6th Cir. 2001) .......................................................................12

*UMG Recordings, Inc. v. Bertelsmann AG*,
    222 F.R.D. 408 (N.D. Cal. 2004) ................................................................23

*United States v. Alisal Water Corp.*,
    370 F.3d 915 (9th Cir. 2004) ................................................................ *passim*

*United States v. Blue Lake Power, LLC*,
    215 F. Supp. 3d 838 (N.D. Cal. 2016) ...................................................23, 24

*Van Hoomissen v. Xerox Corp.*,
    497 F.2d 180 (9th Cir. 1974) .......................................................................24

*In re Volkswagen Clean Diesel Mktg., Sales Practices, & Prod. Liability Lit.*,
    894 F.3d 1030 (9th Cir. 2018) .......................................................................7

*In re W. Asbestos Co.*,
    313 B.R. 859 (N.D. Cal. 2004) ....................................................................22

*In re Wilshire Courtyard*,
    729 F.3d 1279 (9th Cir. 2013) .......................................................................9

**Statutes**

11 U.S.C. § 307 ...........................................................................................8

11 U.S.C. § 502 .............................................................................2, 20, 21

11 U.S.C. § 523 ....................................................................................14, 18

11 U.S.C. § 1103 .........................................................................................11

iv

11 U.S.C. § 1109 ............................................................................................... *passim*

28 U.S.C. § 1334 ......................................................................................................8

28 U.S.C. § 1408 ......................................................................................................8

28 U.S.C. § 1409 ......................................................................................................8

Cal. Civ. Code § 2774(a) ...................................................................................18, 19

Cal. Civ. Proc. Code § 685.010(a) ...........................................................................2

**Other Authorities**

4 COLLIER ON BANKRUPTCY ¶ 502.02 (16th ed. 2020) ...........................................21

6 MOORE'S FED. PRAC. § 24.03 (2020) ..................................................................12

Fed. R. Bankr. P. 3007 ...........................................................................................21

Fed. R. Bankr. P. 7001 ...........................................................................................10

Fed. R. Bankr. P. 7003 .............................................................................................8

Wright & Miller, 7C FED. PRAC. & PROC. § 1906 (3d ed. 2020) ...............................7

Uber Technologies, Inc. ("**Uber**") hereby objects to the *Motion to Intervene* [Dkt. 14] (the "**Intervention Motion**") filed by Google LLC ("**Google**").

## I. INTRODUCTION

This adversary proceeding is a classic breach of contract dispute. Anthony Levandowski seeks to enforce an indemnification agreement between himself and Uber and to recover damages for what he claims is Uber's breach of an agreement to acquire a company known as Otto Trucking. (*See* Complaint [Adv.Dkt. 1.] at ¶¶143-245.) Because Uber has filed a proof of claim, Levandowski's complaint also includes a count objecting to Uber's claim. (*Id.* ¶¶246-52.) Given the importance of this dispute to Levandowski personally and to Uber and its business, the parties have committed to move this matter forward expeditiously, agreeing to complete discovery within six months and targeting a trial date of early 2021. [Adv.Dkt. 12.]

Enter Google. Google is not a party to either of the contracts at issue. Google is not a named third-party beneficiary of either contract. Google has no standing or right to pursue any of the substantive claims set forth in Counts I through VII of the Complaint. Google is an unsecured creditor that, like all of debtor Levandowski's other creditors, stands to be paid more if Levandowski succeeds on some or all of his claims against Uber. But the fact that Google—like every other creditor in every other bankruptcy case—may benefit if the estate fiduciary succeeds in prosecuting estate claims, is not a sufficient justification for either mandatory or permissive intervention under Rule 7024 of the Federal Rules of Bankruptcy Procedure. If it were, every interested creditor could claim a right to participate and quarterback the estate fiduciary's pursuit of estate claims. That is not the law and for good reason.

Under well-established rules, Google has no basis to intervene here since, among other things, it seeks only to increase the likelihood of its individual economic recovery, it is adequately represented by Levandowski who shares the same ultimate objective as Google (a substantial recovery from Uber), and Google's involvement in this adversary proceeding will necessarily introduce collateral issues that will not aid the resolution of Uber's and Levandowski's disputes, but only delay their resolution.

For example, Google suggests it intends to plead additional claims against Uber, but beyond suggesting that it might bring an equitable subordination claim, Google has not identified any of its other alleged claims. (Intervention Memo [Adv.Dkt. 15] ¶¶40, 43.) If Google actually asserts additional claims against Uber, that will necessarily delay this case significantly because, as set forth below, ████████████████████████████████████████████████████ ██████████████████████████████████████████████████ Thus, allowing Google to intervene will likely immediately derail this adversary proceeding ████████ ████████████████████████████.

And if Google has no intention of alleging additional claims against Uber and only wants to quarterback Levandowski's efforts, this too is no reason for intervention. Levandowski, in his role as the fiduciary of his bankruptcy estate, shares the same ultimate objective as Google: to collect as much as possible from Uber. Levandowski therefore is, as a matter of law, adequately advancing the estate's interests. *See Freedom from Religion Found. v. Geithner*, 644 F.3d 836, 841-42 (9th Cir. 2011). And because Google has threatened that its judgment against Levandowski is non-dischargeable, Levandowski's personal interests also align completely with Google's interests in maximizing any recovery from Uber.

Further, any delay caused by Google's unnecessary participation in this lawsuit will prejudice both Levandowski and Uber. Google's judgment states that it is accruing substantial post-judgment interest (10% annually or about $50,000 per day) that may continue to mount each day that Uber's and Levandowski's disputes are not resolved. *See* Cal. Civ. Proc. Code § 685.010(a). While section 502 cuts off claims for unmatured interest as of the petition date in an insolvent case and there are significant arguments for not applying the state post-judgment rate in federal court in a solvent case, Google has threatened that its claim is non-dischargeable and, as such, delay may potentially increase the size of its claim. *See* 11 U.S.C. § 502(b)(2).

In short, Google's participation is unnecessary and potentially harmful. The Court should deny the Intervention Motion.

2

## II. BACKGROUND

This is a two-party dispute that does not depend upon or require Google's participation which will only result in disruption and delay.

### A. The Indemnification And Otto Trucking Agreements.

As alleged in the Complaint, from 2007 until January 27, 2016, Levandowski was an employee at Google, working on Google's self-driving car project. (Complaint ¶¶32, 47.) Levandowski alleges that on January 27, 2016, he left Google and joined Otto Trucking, a company he states he was "credited" with co-founding. (*Id*. ¶47.) After he left Google and joined Otto Trucking, Levandowski alleges that Uber became interested in acquiring Otto Trucking. (*Id*. ¶¶48-49.)

On April 11, 2016, Levandowski and Uber entered into several agreements, including an indemnification agreement (the "**Indemnification Agreement"**), and the Otto Agreement and Plan of Merger (the "**Otto Trucking Agreement**"). (*Id*. ¶67.) Broadly speaking, the Indemnification Agreement provided that Uber would indemnify Levandowski for certain expenses relating to certain claims by a former employer arising out of Levandowski's alleged infringement or misappropriation of intellectual property, the breach of his fiduciary duties, or the breach of a non-disclosure agreement or similar agreement, in connection with Otto Trucking. [Dkt. 1-2, at § 2.1(a).] However, the Indemnification Agreement also provided that it would be "null and void" if Levandowski committed any "Post-Signing Specified Bad Act[s], which were defined to include "retaining, not returning . . . or possessing" confidential information from a former employer." (*Id*. § 2.1(a); *Id*. Ex. A, § 2(A).) It further stated that if Levandowski did not "truthfully disclose[]" to Uber the conduct that gave rise to a claim, Uber would owe him no indemnification for that claim. (*Id*. § 2.1(b)(ii).) Finally, the Otto Trucking Agreement provided for Uber's acquisition of Otto Trucking and its eventual merger into Uber. (Complaint ¶¶196-200.)

Case: 20-03050    Doc# 25-2    Filed: 08/20/20    Entered: 08/20/20 16:47:55    Page 10 of 39

**B.** **The Pre-Bankruptcy Arbitration.**

On October 28, 2016, Google filed two arbitration demands against Levandowski alleging breaches of common law and contractual duties related to his operation of start-ups that competed with Google's business and his solicitation of employees away from Google. [Adv.Dkt. 1-8, 1-9.] While these arbitrations were pending, Uber notified Levandowski that he was in material breach of the Indemnification Agreement and that the claims in the arbitration were outside of the Indemnification Agreement's scope. [Adv.Dkt. 1-9.] Uber told Levandowski that it would seek to recover amounts paid under the Indemnification Agreement and would not indemnify Levandowski from any judgment entered against him. [*Id*.]

On December 6, 2019, the arbitration panel issued its final award against Levandowski. (Complaint ¶125.) On March 4, 2020, the California Superior Court confirmed Google's final award against Levandowski, and issued judgment against Levandowski for $179,047,998.64. (*Id*. ¶131.) Hours later, Levandowski filed his chapter 11 case in this Court. (*Id*. ¶132.)

**C.** **Levandowski's Arbitration Demand, This Adversary Proceeding And The Stipulation To Expedite Discovery In This Proceeding.**

Shortly after filing bankruptcy, on March 30, 2020, Levandowski filed an arbitration demand against Uber seeking to enforce the Indemnification Agreement. (*Id*. ¶135.) Uber agreed to arbitration, but after Uber filed its proof of claim, Levandowski commenced this adversary proceeding on July 16, 2020. Five of the counts of his Complaint—Counts I-IV and VII—seek specific performance of the Indemnification Agreement and declarations that certain of Uber's defenses against liability are invalid. (Complaint ¶¶143-93, 235-245.) Count V and VI seek damages for Uber's alleged breach of the Otto Trucking Agreement. (Complaint ¶¶183-234.) Finally, Count VIII objects to Uber's proof of claim, alleging that Uber is not entitled to recover the amounts paid under the Indemnification Agreement or for contribution related to Uber's settlement with Google (the "**Waymo Settlement**") and that Uber's claim should be disallowed.

(Complaint ¶¶246-52.)

On July 28, 2020, Uber and Levandowski filed a *Stipulation to Withdraw Arbitration and Litigate Indemnity Dispute in Bankruptcy Court* [Adv.Dkt. 12] (the "**Stipulation**"). Under the Stipulation, Uber and Levandowski agreed that "all disputes raised in Mr. Levandowski's demand in the arbitration and his Complaint in the Adversary Proceeding and those raised in Uber's Proof of Claim in the Chapter 11 Case, will be resolved before this Court" and that Uber would join in Levandowski's request to withdraw the arbitration demand. (Stipulation ¶¶1-2.) The Stipulation further provided that Uber and Levandowski would both "work in good faith to get discovery completed in the Adversary Proceeding *within six months*, subject to extension for good cause shown and the Court's schedule." (*Id.* ¶3 (emphasis added).)

**D.    Google's Intervention Motion.**

On July 31, 2020, Google filed its Intervention Motion, asserting that it has a unique interest in the prosecution of this adversary proceeding because its claim will only be substantially paid if Levandowski is successful in establishing that the Indemnification Agreement obligates Uber to indemnify Levandowski for Google's $179 million judgment. (Intervention Memo ¶36.) Significantly, Google does not allege that it is a party to either the Indemnification Agreement or the Otto Trucking Agreement and it does not allege that it is a third-party beneficiary of either agreement. (*See generally* Intervention Memo.) Google also does not attach a proposed pleading to its Intervention Motion or specifically identify any claims it presently intends to bring against Uber, stating only that "if Uber's indemnity were somehow found unenforceable and its claims in its proof of claim are allowed, Google may argue that any allowed Uber claim against the estate should be equitably subordinated...." (*Id.* ¶40.)

Relevant to the Intervention Motion is the fact that Google and Uber are parties to a February 8, 2018, Waymo Settlement ███████████████████████████████████

███████████████████████████

███████████████████████████████

[REDACTED]

Further, the Waymo Settlement provided that [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

## III.    ARGUMENT

The Court should deny the Intervention Motion. Google has not met its "burden of showing that *all* the requirements for intervention have been met." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) (affirming denial of judgment creditor's motion to intervene in adversary proceeding) (emphasis in original).

To begin, Google is not entitled to mandatory intervention: it does not have a statutory right to intervene or a sufficiently protectable interest that may be affected by this adversary

_____

[1] The Waymo Settlement includes confidential and proprietary information and, for that reason, is not attached hereto. Upon information and belief, Google has a copy of the Waymo Settlement within its possession, custody, and control.

proceeding that Levandowski inadequately represents. Similarly, permissive intervention is improper because Google proposes to raise issues that are collateral to, and not in common with, the factual and legal issues that will resolve the disputes between Uber and Levandowski and Google's participation will only delay this case. The Court should deny the Intervention Motion for any one of these several reasons. In the alternative, if the Court permits intervention, it should do so only on certain conditions discussed in Section III.C.

### A.    Rule 24(a) Does Not Permit Google To Intervene As Of Right.

Rule 24(a) requires a court to permit a party to intervene when (1) the party "is given an unconditional right to intervene by a federal statute," or (2) the party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede [its] ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(1)-(2). "Where the party and the proposed intervenor share the same ultimate objective" as is the case here, "a presumption of adequacy of representation applies." *Freedom from Religion Found.,* 644 F.3d at 841. Google has not satisfied either ground for mandatory intervention.

### 1.    Google Has No Right To Intervene Under Rule 24(a)(1).

Courts "have been hesitant to find [] unconditional statutory right[s] of intervention," and there is no basis to find one here. Wright & Miller, 7C FED. PRAC. & PROC. § 1906 (3d ed. 2020); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liability Lit.*, 894 F.3d 1030, 1041-42 (9th Cir. 2018) (holding that party had no statutory, unconditional right to intervene). Google cites section 1109(b) of the Bankruptcy Code as the basis for its supposed statutory intervention right. (Intervention Memo ¶32.) But section 1109(b) does not apply here.

Section 1109(b) grants "part[ies] in interest," including a debtor's creditors, the right to "be heard on any issue *in a case* under this chapter [11]." 11 U.S.C. § 1109(b) (emphasis added). But Google skips over section 1109(b)'s critical limitation—the right to be heard on any issue applies

Case: 20-03050   Doc# 25-2   Filed: 08/20/20   Entered: 08/20/20 16:47:55   Page 14 of 39

only in the "case" and it is well established that an adversary proceeding is distinct from the bankruptcy case itself. "The word 'case' is a term of art, referring to the proceedings initiated by the filing of a bankruptcy petition by which a debtor is reorganized or liquidated." *In re St. Theresa Properties, Inc.*, 152 B.R. 852, 853 n.1 (Bankr. S.D.N.Y. 1993) "An adversary proceeding is not a 'case under Chapter 11,' but a separate law suit to which only the parties in that action have standing." *In re Nemee*, No. 09-93249-E-11, 2012 WL 8123401, at *5 (Bankr. E.D. Cal. Jan. 27, 2012). Due to "the distinctions Congress has drawn between bankruptcy 'cases' and related 'proceedings,' ... Congress did not create an absolute statutory right to intervene in bankruptcy adversary proceedings through § 1109(b)." *Fuel Oil Supply & Terminaling v. Gulf Oil Corp.*, 762 F.2d 1283, 1287 (5th Cir. 1985); *St. Theresa Properties,* 152 B.R. at 853 n.1 (same).

The distinction between the case and an adversary proceeding is found throughout the Bankruptcy Code and the Bankruptcy Rules. For example, section 307 provides that a United States trustee "may appear and be heard on any issue in any case *or proceeding* under this title," whereas this additional reference to a "proceeding" is absent from section 1109(b). *Compare* 11 U.S.C. § 307 (emphasis added) *with* 11 U.S.C. § 1109(b); *see also* Fed. R. Bankr. P. 7003 (same, providing that "a complaint commencing an *adversary proceeding* be filed with the court in which the *case* under the Code is pending"). This difference in statutory text between section 307 and section 1109(b) is critical because "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987).

In addition, the jurisdictional and venue provisions that govern bankruptcy cases and adversary proceedings distinguish between cases and proceedings. Section 1408 governs "Venue of *cases* under title 11" and section 1409 governs "Venue of *proceedings* arising under title 11 or arising in or related to *cases* under title 11." 28 U.S.C. §§ 1408, 1409 (emphasis added). Likewise 28 U.S.C. § 1334(a) supplies federal jurisdiction over "cases" and subsection (b) supplies federal jurisdiction over "proceedings" arising in or related to those "cases." 28 U.S.C. § 1334(a), (b). By

8

consistently distinguishing between "cases" and "adversary proceedings," Congress has made clear that these two statutory terms mean different things. The Court should recognize their independent meanings since it is a "cardinal principle of interpretation that courts must give effect, if possible, to every clause and word of a statute." *Liu v. S.E.C.*, 140 S. Ct. 1936, 1948 (2020) (quoting *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1890 (2019)).

Because a "case" is distinct and separate from an "adversary proceeding," the fact that section 1109(b) grants creditors, simply on account of their status as creditors, a right to participate in the main bankruptcy "case" does not mean they may participate as of right, through intervention, in separately administered adversary proceedings, as the better reasoned decisions hold. *See, e.g., Fuel Oil*, 762 F.2d at 1285-87 (section 1109(b) does not grant an unconditional statutory right to intervene); *In re Tri Valley Growers*, No. 01-4098, at *2-3 (Bankr. N.D. Cal. Sept. 17, 2001) (unpub., attached hereto as Ex. A.) (same); *In re Catholic Bishop of N. Alaska*, No. 08-CV-90019, 2009 WL 8446700, at *2 (Bankr. D. Alaska Mar. 25, 2009); *St. Theresa Properties,* 152 B.R. at 853 n.1; *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 854-55 (Bankr. S.D.N.Y. 1989); *In re CVC, Inc.*, 106 B.R. 478, 479 (Bankr. N.D. Ohio 1989).

A second portion of section 1109(b)'s text reinforces this conclusion. Again, that section states that a creditor may be heard "on any issue in a case *under* this chapter [11]." 11 U.S.C. § 1109(b) (emphasis added). The Ninth Circuit has explained that a matter arises "under" the Bankruptcy Code when it "involve[s] causes of action created or determined by a statutory provision of" the Bankruptcy Code. *In re Wilshire Courtyard*, 729 F.3d 1279, 1285 (9th Cir. 2013). Here, though, Levandowski asserts breach of contract, specific performance, and declaratory judgment claims. (*See* Adv.Dkt. 1, at ¶¶143-245.) None of those claims involve matters arising "under" the Bankruptcy Code. Rather, it is state law, not the Bankruptcy Code, that created each of these claims, and but for the commencement of his chapter 11 case, Levandowski could have asserted these claims in an arbitral forum (which he initially did) or in a non-bankruptcy court. Accordingly, even if this adversary proceeding is a "case" (and it is not), Google's right via section 1109(b) to be heard on matters in a case "under" chapter 11 does not extend to matters in this

9

adversary proceeding that are created and determined by state law, and thus arise "under" state law, not chapter 11.

Indeed, Google's contrary reading of section 1109(b) would generate absurd results and would flood adversary proceedings with intervenors. If section 1109(b) qualifies as a mandatory and unconditional statutory intervention right, then "each individual creditor—perhaps hundreds of them—would be automatic parties to every adversary proceeding connected with the [chapter 11] case." *Fuel Oil*, 762 F.2d at 1287. Courts would be precluded from applying Rule 24's other standards in adversary litigation to guard against "the possibility of delay and additional expense" posed by multiple or "even one strategic intervenor," like Google here, *Ionosphere Clubs*, 101 B.R. at 855, whose intervention would cause "undue delay" and "thwart[] the goal of a speedy and efficient reorganization." *In re PM Cross, LLC*, No. 13-11075, 2013 WL 6048810, at *3 (Bankr. D.N.H. Nov. 15, 2013). Courts would also have no reason to enforce separate bankruptcy rules and maintain separate administrative dockets for adversary proceedings, since the procedural differences between the main case and adversary proceedings would evaporate. In the world of bankruptcy litigation that Google proposes, adversary proceedings would function just like the collective proceeding in the main case, with participation by all creditors, rather than the form of private litigation between a limited set of parties that adversary proceedings have always adopted. *See Tri Valley Growers*, No. 01-4098, at *2; Fed. R. Bankr. P. 7001, *et seq.*

Finally, the out-of-circuit cases Google relies upon to argue that section 1109(b) supports mandatory intervention do not apply here. All of these cases addressed intervention requests by creditors' committees, not individual creditors. *See, e.g., Assured Guar. Corp. v. Fin. Oversight & Mgmt. Bd. (In re Fin. Oversight & Mgmt. Bd.)*, 872 F.3d 57 (1st Cir. 2017); *In re Caldor Corp.*, 303 F.3d 161 (2d Cir. 2002); *Matter of Marin Motor Oil, Inc.*, 689 F.2d 445 (3d Cir. 1982); *but see Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1232-33 (3d Cir. 1994) (criticizing *Marin*'s interpretation of section 1109(b)).

Critically, committees are representatives of all unsecured creditors and have fiduciary obligations to act in their best interests and maximize their recoveries. *In re Subpoenas Duces*

*Tecum Dated Mar. 16, 1992*, 978 F.2d 1159, 1161 (9th Cir. 1992); *see also* 11 U.S.C. § 1103(c)(5). Google is not a committee. Google does not owe fiduciary duties to other creditors or represent their interests. Google acts only for itself. Accordingly, even if section 1109(b)'s text could be stretched to allow for the mandatory intervention of *one* additional party—*i.e.*, a committee—that represents and bears fiduciary duties to numerous stakeholders in the case, it does not follow that all individual creditors like Google have a right to intervene in adversary proceedings to assert their own idiosyncratic and self-serving interests, which here may involve business issues beyond financial recovery that have nothing to do with Levandowski's bankruptcy estate. Indeed, had Congress intended such a result it would have written section 1109(b) to allow for the mandatory participation of creditors in adversary proceedings.

For these reasons, the Court should conclude that section 1109(b) does not provide Google an unconditional statutory intervention right under Rule 24(a)(1).

### 2. Google Has No Right To Intervene Under Rule 24(a)(2).

Google also may not intervene as of right under Rule 24(a)(2). To intervene under this provision, Google must "demonstrate that (1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest." *Alisal*, 370 F.3d at 919. A failure to show any of these factors defeats the Intervention Motion. Google fails this test.

#### a. Google Lacks A "Significant Protectable Interest" In This Adversary Proceeding.

*First*, Google's status as a judgment creditor of the debtor does not qualify as a "significant protectable interest" supporting intervention. Google admits that the sole purpose of its proposed intervention is to collect its judgment against Levandowski. As Google states, Levandowski's "only prospect of fully satisfying his liability to Google in this bankruptcy is to recover under the

11

Indemnification Agreement he signed with Uber in 2016." (Intervention Memo ¶3.) Google therefore seeks to intervene to "enforce[]" the Indemnification Agreement and ensure its claim is paid in full. (*Id.* ¶36.)

But the Ninth Circuit has long held, in case law ignored by Google, that a creditor's interest in preserving or enhancing the "collectability of a debt . . . does not, on its own, support a right to intervention." *Alisal*, 370 F.3d at 920 (relying upon *Hawaii-Pacific Venture Cap. Corp. v. H.B. Rothbard*, 564 F.2d 1343, 1346 (9th Cir. 1977)). "An economic stake in the outcome of the litigation, even if significant, is not enough." *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993); *see also* 6 MOORE'S FED. PRAC. § 24.03 (2020) (an "interest in the collectibility of a debt is not an interest 'relating to the property or transaction which is the subject of the action'"). And if courts allowed parties to intervene solely because they sought to increase their chances of recovering their debts, that would send "an open invitation for virtually any creditor of a defendant to intervene in a lawsuit where damages might be awarded." *Alisal*, 370 F.3d at 920; *accord Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005); *U.S. v. Tennessee*, 260 F.3d 587, 596 (6th Cir. 2001); *Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 205 (1st Cir. 1998).

Like with Google's reading of section 1109(b), if Google's interpretation of Rule 24(a)(2) is accepted, *all* of Levandowski's creditors could seek to intervene in this matter. They could seek intervention because enforcement of the Indemnity Agreement or success on the Otto Trucking breach of contract claim would allow for their claims to be paid more as well. But this is precisely the sort of chaos via an indiscriminate "open invitation" to intervention that the Ninth Circuit foreclosed in *Alisal*. And the damage that Uber and Levandowski will sustain if *Alisal* is ignored is not speculative or remote: if this bilateral dispute is transformed into a multi-party, collective

proceeding, with the addition of Google, especially with its own conflicting interests and motivations, the Stipulation's expedited trial timeline will become all but impossible to meet. Google will be the only beneficiary of any delay, given that it will undoubtedly argue that its claim continues to balloon at the rate of ten per cent per annum.[2]

In response, Google claims a "strong interest in this proceeding" because it is "Google's best source of recovery in the bankruptcy." (Intervention Memo ¶36.) Google argues that its economic interest is supposedly unique because the indemnity at issue was "crafted" "to pay any judgment Google might obtain." (*Id.*) First, it is not true that the indemnity covers "*any* judgment."[3] But more importantly, Google's own statements demonstrate that its interests in the outcome of this case are the exact same economic interests that every other creditor shares. There is nothing unique about Google's interests that make it any different from any other creditor. Simply put, Google wants to intervene to be paid. And under controlling Ninth Circuit precedent that is not a sufficient reason "on its own, [to] support a right to intervention." *Alisal*, 370 F.3d 920.

---

[2] In pointing out why Google's interests are not aligned with the parties' interests in obtaining a speedy resolution of this adversary proceeding, Uber is not conceding that Google is entitled to accrue post-judgment interest after Levandowski's petition date and is only making the point that Google may have illegitimate reasons to delay this adversary proceeding.

[3] The Indemnification Agreement provides that Uber has no obligation to indemnify Levandowski for any "Excluded Claims," defined to include claims based on conduct Levandowski failed to disclose to Uber before the Agreement was executed. [Dkt. 1-2, § 2.1(b)]. Second, the Indemnification Agreement provided that Levandowski's right to indemnity would be "null and void" if Levandowski committed a "Post-Signing Specified Bad Act", which was defined to include "retaining, not returning . . . or possessing" confidential information from a former employer. [*Id.* § 2.1(a); *Id.* Ex. A, § 2(A).] Uber and Levandowski dispute whether the Indemnification Agreement is void on account of Levandowski committing a Post-Signing Specified Bad Act, and also dispute whether most of the Google judgment is allocable to Excluded Claims. Resolving those disputes, though, turns on questions of fact that can and should be fully litigated by Uber and Levandowski without Google's intervention.

13

Tellingly, Google cites no case law where a court permitted a judgment creditor to intervene in an action where the judgment debtor actively sought recovery under an indemnification agreement. Google's cases instead involved litigation where insurance carriers sought declaratory judgments that they had no duty to defend their insured for an injury caused to a third party and, critically, the insured tortfeasor failed to respond, risking a default judgment in favor of the insurance carrier. Under these circumstances, the courts allowed the injured party to intervene to protect the insurance policy as a source of recovery. (*See* Intervention Memo ¶36 citing *Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183 (9th Cir. 2009); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Ampam Riggs Plumbing Inc.*, No. CV-14-00039, 2014 WL 1875160 (D. Ariz. May 9, 2014); *Assurance Co. of Am. v. MDF Framing, Inc.*, No. 06-CV-00169, 2006 WL 8459542 (D. Or. Apr. 7, 2006).)

These cases do not control here. The insureds in those cases had no interest in litigating the coverage disputes because they would not receive any economic benefit if the court upheld their entitlement to coverage. Instead, any proceeds would go to the third parties who suffered losses, not the insureds. But here, Levandowski has appeared and is actively prosecuting his claims against Uber because it is in his personal economic interest to do so, and is also in the interest of his bankruptcy estate. Based on allegations Google has made against Levandowski, there is a risk to Levandowski that Google's judgment will not be discharged. *See* 11 U.S.C. § 523(a)(2), (6). If that occurs, and if his estate lacks sufficient funds to pay Google in full, Levandowski will remain personally liable to Google once this chapter 11 case ends. That gives Levandowski every incentive to diligently prosecute this adversary proceeding and collect as much as he can for creditors.

Levandowski can therefore be expected to vigorously prosecute this adversary proceeding,

14

and there is no basis to allow Google as a third party, who *also* stands to benefit from enforcement of the Indemnification Agreement, to intervene, duplicate Levandowski's efforts, delay the resolution of this matter, and make it more costly for both the estate and Uber. In short, Google's insurance coverage cases, involving missing or defaulting insureds, are not relevant to the question of whether Google has the significant protectable interest necessary for its intervention request. Google is only seeking to intervene to improve its chances to collect its debt and therefore its request to intervene as of right should be denied.

### b. Google's Interests Are Not at Risk of Being Impaired.

Next, there is no risk to Google that "the disposition of the action may, as a practical matter, impair or impede [its] ability to protect its interest." *Alisal*, 370 F.3d at 919. Google's asserted interest is its right to collect from Levandowski. Google has the "means" to protect its interest by filing a proof of claim in the main bankruptcy case and that "is adequate to protect [its] interests." *Id.* at 921. Levandowski's adversary proceeding in no way impairs Google's right to file its claim; nor will this adversary proceeding impact the allowance of Google's claim. If Google's claim is allowed, it will receive a distribution from the bankruptcy estate, just like every other unsecured creditor once a plan is confirmed. Thus, Google's right to file a claim protects its interests *vis-a-vis* Levandowski.

In addition, Levandowski's breach of contract claims against Uber cannot possibly impact any claims Google has against Uber ████ ██████████████████████████████████████ ██████ █████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████ Accordingly, Google's Intervention Motion should be denied because Google will suffer no

impairment of a significant protectable interest ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████ *Alisal*, 370 F.3d at 921; *Hawaii-*

*Pacific Venture Cap.*, 564 F.2d at 1346.

████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████ ████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████ ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████[4]

### c. Levandowski Adequately Represents Google's Interests in This Adversary Proceeding.

Finally, Google has no mandatory right to intervene because Levandowski adequately represents Google's interests in this adversary proceeding. "Where the party and the proposed intervenor share the same ultimate objective, a presumption of adequacy of representation applies." *Freedom from Religion Found.,* 644 F.3d at 841. That "presumption can be rebutted only by 'a compelling showing to the contrary.'" *Id.* (quoting *Perry v. Prop. 8 Official Proponents*, 587

---

[4] ████████████████████████████████████████████████████████

████████████████████████████████████████ █ ████████████

████████████████████████████

F.3d 947, 951 (9th Cir. 2009)). A "compelling showing to the contrary" does not include "conclusory allegations and hypothetical disagreements," or "mere differences in strategy." *In re Facebook, Inc. S'holder Deriv. Privacy Lit.*, 367 F. Supp. 3d 1108, 1131 (N.D. Cal. 2019); *accord Freedom from Religion Found.*, 644 F.3d at 842.

Google impugns Levandowski's motives and suggests he will not vigorously litigate this matter. (Intervention Memo ¶¶38-39.) There is no basis for this assumption and, in fact, Levandowski's decision to file the adversary proceeding immediately after the mediation concluded supports the opposite conclusion. Moreover, for the reasons given above, Levandowski and Google share the same "ultimate objective" in this litigation, triggering the "presumption of adequacy of representation." *Freedom from Religion*, 644 F.3d at 841. Both Levandowski and Google seek to have the Indemnification Agreement enforced against Uber to its fullest extent. That result would allow Levandowski to pay Google's claim and exit bankruptcy without any liability, even if Google's judgment would otherwise be non-dischargeable. And in that circumstance, Google would get its claim paid in full, aligning its ultimate objective here with that of Levandowski.

Google responds only with conjecture that is insufficient to rebut the presumption of adequacy. It first suggests that Levandowski harbors "animus" towards Google. (Intervention Memo ¶38.) Even if this allegation has some truth, it does not mean that Levandowski will act in a way contrary to his own self-interest and his and Google's shared ultimate objective: to receive full indemnification to satisfy Google's judgment. Moreover, Levandowski's consent to Google's intervention request directly refutes the notion that Levandowski's alleged animus toward Google is so great that he would take action to harm Google even if it also harmed himself. (*Id.* ¶6.)

Similarly, Google incorrectly suggests that Levandowski will refrain from "present[ing]

17

all of the evidence needed to rebut Uber's efforts to void the Indemnification Agreement because that evidence could impact his pending civil appeal of the Google judgment against him" or would establish that Google's judgment is non-dischargeable. (*Id.* ¶39.) That is not correct because the appeal primarily focuses on the arbitrators' decision not to allow Levandowski to testify. Google's argument also is a red herring. If anything, Google, like Levandowski, would also be incentivized *not* to present all evidence concerning Levandowski's fraudulent and felonious conduct, as that evidence supports Uber's claims to rescind and void the Indemnification Agreement and Uber's other defenses to the Indemnification Agreement.

In any event, Google has not identified any actual conduct or arguments that Levandowski has taken or made in this adversary proceeding that would suggest he has any other objective than to enforce the Indemnification Agreement consistent with Google's interests. Without identifying more than "hypothetical disagreements" with Levandowski, Google cannot succeed in establishing that his representation of Google's interests as a creditor of his bankruptcy estate will be inadequate. *Facebook*, 367 F. Supp.3d at 1131.

In fact, Google, not Levandowski, has a conflict that might impede its ability to prosecute the claims pled in Levandowski's complaint. Under section 2774 of the California Civil Code, Uber has no indemnification obligation, regardless of the terms of the Indemnification Agreement, if Levandowski's conduct "was a felony." Cal. Civ. Code § 2774(a). Uber will argue that Levandowski committed a felony through misconduct at Google that gave rise to Google's judgment. Levandowski has a clear interest in rebutting this felonious conduct defense: doing so would remove one hurdle to obtaining indemnification. *See* 11 U.S.C. § 523(a)(2), (6). But it would be very challenging, if not impossible, for Google to finesse the presentation of Levendowski's defense by contending that Levandowski's conduct was sufficiently wrongful to preclude a

discharge, but not so wrongful as to qualify as felonious within the meaning of 2774. Only Levendowski himself has an unimpaired incentive to defend his conduct without qualification. And since it is unlikely that Google will receive full payment on its claim in this case, Google has a strong interest in succeeding on the non-dischargeability issue. Given Google's conflicting interests, Levandowski is the appropriate party to prosecute the claims at issue here, not Google.

In sum, Levandowski adequately represents Google's interests in this litigation. Because Google has not "show[n] that *all* the requirements for intervention have been met," it is not entitled to mandatory intervention. *Alisal*, 370 F.3d at 919 (emphasis in original).

### B. Permissive Intervention Is Improper Because Google Will Raise Issues Collateral To The Merits Of This Adversary Proceeding.

Google finally summarily asserts that it is entitled to permissive intervention under Rule 24(b). (Intervention Memo ¶¶41-43.) Under that provision, the Court, in its discretion and taking into account the totality of the circumstances, may grant intervention where "the applicant shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Perry*, 587 F.3d at 955.

"Where a putative intervenor has met these requirements, the court may also consider other factors in the exercise of its discretion, including the nature and extent of the intervenors' interest and whether the intervenors' interests are adequately represented by other parties." *Id.* In addition, Rule 24(b)(3) states that the Court "*must* consider whether the [permissive] intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3) (emphasis added).

At the outset, Google's request for permissive intervention fails for numerous reasons: (i) its Intervention Motion is untimely in light of the Stipulation to expedite this case, and Google's

19

failure to date to file a proposed pleading setting forth its actual claims, as required by Rule 24(c); (ii) permitting Google to intervene will cause undue delay by interfering with the expedited schedule set forth in the Stipulation; (iii) Google lacks protectable interests in the Indemnification Agreement and is instead only an unsecured creditor attempting to maximize its economic recovery; and (iv) Google's interests here are all adequately represented as a matter of law by Levandowski whose ultimate objective, like Google's, is to enforce the Indemnification Agreement to the fullest extent possible.

Google's request for permissive intervention also lacks merit under the remaining factors. *First*, even if the Court has subject matter jurisdiction to adjudicate Google's claims, it is improper for Google to bring its objection to Uber's claim in an adversary proceeding rather than in the main bankruptcy case, and Google otherwise lacks standing to join the additional counts in Levandowski's complaint. *Second*, if Google intervenes, it will inject collateral issues and claims into this adversary proceeding, all of which will distract from the dispositive issues between Uber and Levandowski.

### 1. Google Does Not Have an Absolute Right to Object to Uber's Claims.

Google broadly asserts that section 502(a) of the Code gives all creditors the right to object to the claims of other creditors in a bankruptcy case and that this justifies its permissive intervention here. (Intervention Memo ¶36.) Not so. Courts generally hold that a creditor's right to object to another creditor's claim only comes into play if the debtor in possession or trustee has not objected. *In re Dominelli*, 820 F.2d 313, 317 (9th Cir. 1987) ("[t]he trustee, as representative of the estate, normally can represent each general creditor as effectively as could the creditor itself [with respect to objections to other creditors' claims]). Or as the leading treatise on Bankruptcy recognizes, many courts have restricted creditors' ability to file claim objections because "the needs of orderly and expeditious administration do not permit the full and unfettered exercise of

Case: 20-03050    Doc# 25-2    Filed: 08/20/20    Entered: 08/20/20 16:47:55    Page 27 of 39

such right." 4 COLLIER ON BANKRUPTCY ¶502.02 (16th ed. 2020). Imagine the chaos that would ensue in complex multi-creditor cases if every single creditor could file a separate objection to claims that are already subject to vigorous objection by a debtor.

Here, Levandowski has objected and there is no need for Google to pile on. But even if Google has an unlimited right to object to Uber's claim, section 502(a) does not grant Google the authority to assert its objection to Uber's claim *in this adversary proceeding* rather than in the main bankruptcy case. Instead, claim objections are, by default, contested matters to be prosecuted outside of adversary proceedings. *See In re Donnan*, No. EC-18-1106, 2019 WL 1922843, at *6 (B.A.P. 9th Cir. Apr. 29, 2019) ("a claim objection is a 'contested matter' and governed by [Bankruptcy] Rule 9014," not an adversary proceeding governed by Bankruptcy Rule 7001).

A party may only assert a claim objection in an adversary proceeding if it joins the objection to an additional claim for relief that requires an adversary proceeding, and for which the party independently possesses standing. *See* Fed. R. Bankr. P. 3007(b); *In re Morpheus Lights, Inc.*, 228 B.R. 449, 452-53 (Bankr. N.D. Cal. 1998) (dismissing creditor's equitable subordination claim in adversary proceeding where creditor lacked standing to prosecute claim). Here, Google attempts to shoehorn its objection to Uber's claim into this adversary proceeding by purporting to join Levandowski's claims for specific performance of the Indemnification Agreement and for declarations regarding Uber's obligations under that contract. (Intervention Memo ¶44.) Yet Google offers no argument for why it has standing to seek to enforce or interpret the Indemnification Agreement, even though it is not a party to that contract.

Nor does (or could) Google allege that it is a third party beneficiary of the Indemnification Agreement since the contract does not name Google as a third party beneficiary, and California law, which governs the Indemnification Agreement, "requires a third-party beneficiary to be

expressly named in a contract before the beneficiary may enforce the contract." *Navigation Holdings, LLC v. Molavi*, No. 19-CV-02644, 2020 WL 1492693, at *9 (N.D. Cal. Mar. 27, 2020). Because Google lacks standing to enforce the Indemnification Agreement itself, it cannot join Levandowski's counts that seek specific performance of the Indemnification Agreement or declarations regarding Uber's obligations thereunder and, without authority to join those claims, Google has no hook under Bankruptcy Rule 3007 to object to Uber's claim in this adversary proceeding rather than in the main chapter 11 case.

Finally, permissive intervention is improper because the Court will lack subject matter jurisdiction over the additional, affirmative claims that Google apparently intends to assert against Uber (but which Google has failed to identify). (*See* Intervention Memo ¶43.) Bankruptcy courts have "no jurisdiction in controversies between third parties not involving the debtor or his property." *Baker & Taylor Drilling Co. v. Stafford*, 369 F.2d 551, 556 (9th Cir. 1966); *accord In re Castlerock Props.*, 781 F.2d 159, 162 (9th Cir. 1986); *In re TMT Procurement Corp.*, 764 F.3d 512, 526 (5th Cir. 2014) ("bankruptcy jurisdiction does not extend to state law actions between non-debtors over non-estate property"). Any of Google's own claims against Uber arising from Levandowski's misconduct would, in the unlikely event they prove successful, only benefit Google. Levandowski's bankruptcy estate would see no recovery on account of Google's independent claims. Because those claims will have "no effect" on Levandowski's bankruptcy estate, they cannot give rise to federal bankruptcy jurisdiction. *In re W. Asbestos Co.*, 313 B.R. 859, 863 (N.D. Cal. 2004) (no bankruptcy jurisdiction to determine rights of two non-debtors); *Schumacher v. White*, 429 B.R. 400, 406 (E.D.N.Y. 2010).

Further, it would be doubly improper for the Court to adjudicate any disputes between Google and Uber arising from Levandowski's misconduct ███████████████████████████

█████████████████████████████████████████████ Since the Court would lack both

the jurisdiction and the authority to resolve any independent claims Google might have, this is an

additional basis to deny Google's Intervention Motion.

### 2. Google Will Raise Collateral Issues, Not Common Issues.

Even more, permissive intervention is inappropriate because Google's intervention would

"necessitate the consideration of extraneous legal and factual issues that [Levandowski's] lawsuit

would not otherwise invoke." *UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408, 414

(N.D. Cal. 2004). Most importantly, Google's participation will immediately raise questions about

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████ Further,

Google has admitted that it will "raise other claims or arguments regarding Uber's proof of claim"

that Levandowski has not yet asserted, including whether Uber's claim should be equitably

subordinated. (Dkt. 14-1, at pg. 3; Intervention Memo ¶40.) Due to Google's admission that it will

introduce extraneous, collateral issues to this proceeding if it intervenes, permissive intervention

is not appropriate. The Intervention Motion should be denied.

### C. If the Court Permits Google To Intervene, It Should Limit The Scope Of Intervention To Avoid Delay.

Finally, even though Google's intervention will not be manageable or appropriate, if the

Court decides to grant the Intervention Motion, it should limit the scope of Google's intervention.

Doing so is necessary to ensure that progress in this matter is not delayed. As courts within this

district have recognized, "'an intervenor is admitted to the proceeding as it stands, and in respect

of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the

23

nature of the proceeding.'" *United States v. Blue Lake Power, LLC*, 215 F. Supp. 3d 838, 844 (N.D. Cal. 2016) (quoting *Vinson v. Washington Gas Light Co.*, 321 U.S. 489, 498 (1944)); *see also Van Hoomissen v. Xerox Corp.*, 497 F.2d 180, 181-82 (9th Cir. 1974). A court therefore has "wide discretion to impose any conditions [on intervention that are] consistent with the fair and prompt resolution of the litigation." *Id.* In fact, one of the cases Google cites in its Intervention Motion recognizes that courts can limit intervention by: (1) precluding intervening parties from raising claims or issues that the original parties have not already asserted, (2) denying intervening parties access to or authority to propound discovery, and (3) and restricting intervening parties' ability to participate in settlement discussions. *Fin. Oversight & Mgmt. Bd.*, 872 F.3d at 63-64; *accord Intel Corp. v. Ins. Co. of Pennsylvania*, No. 08-CV-3238JF, 2009 WL 81393, at *4 (N.D. Cal. Jan. 9, 2009).

In light of the need to avoid delay in this proceeding, and in line with these cases, any intervention in this proceeding should be strictly cabined. If Google is permitted to intervene, Uber requests that it be barred from introducing or arguing claims or issues that neither Uber nor Levandowski have already raised in this adversary proceeding. Google should not be allowed to file duplicative briefs on issues and it should be prohibited from propounding discovery or asking questions at depositions or filing discovery motions. It should be denied the authority to appeal any of the Court's orders. ████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████ Only with these conditions will Google's proposed intervention "not create any additional delay" notwithstanding the parties' aim, memorialized in the Stipulation, to proceed to trial as fast as possible. *Intel*, 2009 WL 81393, at *4.

Case: 20-03050    Doc# 25-2    Filed: 08/20/20    Entered: 08/20/20 16:47:55    Page 31 of 39

## IV. CONCLUSION.

For all of the foregoing reasons, Uber respectfully requests that the Court deny the Intervention Motion. If the Court grants the Intervention Motion, Uber respectfully requests that the Court exercise its discretion to limit the scope of Google's intervention to avoid unnecessary delay and the introduction of extraneous, irrelevant issues into this adversary proceeding.

Dated: August 20, 2020

Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ Debra I. Grassgreen*

Debra I. Grassgreen (CA Bar No. 169978)
Jeremy V. Richards (CA Bar No. 102300)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Telephone:     (415) 263-7000
Facsimile:      (415) 263-7010
E-mail:         dgrassgreen@pszjlaw.com
                jrichards@pszjlaw.com

David J. Bradford (*pro hac vice* pending)
Catherine Steege (*pro hac vice* pending)
Terri L. Mascherin (*pro hac vice* pending)
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
Telephone: (312) 222-9350
E-mail: dbradford@jenner.com
        csteege@jenner.com
        tmscherin@jenner.com

*Counsel for Uber Technologies, Inc.*

25

**CERTIFICATE OF SERVICE**

I hereby certify that on August 20, 2020, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF

participants in this adversary proceeding, including counsel for Google LLC and the Debtor.

By: */s/ Debra I. Grassgreen*
Debra I. Grassgreen

# **EXHIBIT A**

*In re Tri Valley Growers*, No. 01-4098 (Bankr. N.D. Cal. Sept. 17, 2001) (unpub.)

# In re Tri Valley Growers

Decided Sep 17, 2001

No. 00-44089 J11, Adv. No. 01-4098 AJ, Adv. No. 01-4156 AJ.

September 17, 2001

## MEMORANDUM DECISION (MOTION FOR LEAVE TO INTERVENE)

EDWARD D. JELLEN, United States Bankruptcy Judge.

A. Introduction

The Official Committee of Growers (the "Growers' Committee") has filed a motion seeking leave to intervene in this adversary proceeding. The motion is opposed by the Official Committee of Unsecured Creditors, the plaintiff herein (the "Creditors' Committee"), and by the U.S. Trustee, which appointed the Growers' Committee. The court will deny the motion.

Tri Valley Growers, the above debtor ("Tri Valley"), is a cooperative association organized to process and market fruits and vegetables delivered by its member growers. Tri Valley filed its chapter 11 petition herein on July 10, 2000.

The present adversary proceeding is a class action for declaratory relief in which the Creditors' Committee seeks a determination as to allowability and status of the creditor claims that have been filed by numerous grower-members of Tri Valley. Specifically, the complaint seeks a determination that the grower-members: (a) are not entitled to producer's liens under California Food and Agricultural Code § 54001 et. seq. because of their status as members of a cooperative, and thus, that they are not holders of secured claims against the estate herein, (b) that the grower members' right to receive a dividend out of the estate in respect of their unsecured claims is subject to certain restrictions in Tri Valley's charter, and (c) that because of such restrictions, the grower members do not have administrative priority claims arising from their postpetition deliveries of products to Tri Valley.

The motion is governed by Fed.R.Civ.P. 24, which applies in adversary proceedings via Fed.R.Bankr.P. 7024.

B. Intervention of Right

Fed.R.Civ. p. 24 (a) provides:

(a) Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The Growers' Committee contends that it is entitled to intervene as a matter of right under both subsections of Fed.R.Civ.P. 24 (a).

As to Fed.R.Civ.P. 24 (a)(1), the Growers' Committee argues that Bankruptcy Code § 1109 (b) is a statute that confers upon it the unconditional right to intervene. Bankruptcy Code § 1109 (b) provides as follows:

(b) A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

In Matter of Marin Oil Inc., 689 F.2d 445 (3d Cir. 1982), the Third Circuit held that "case" within the meaning of § 1109 (b) included adversary proceedings, and thus, that creditors' committees have an unqualified right to intervene in all proceedings being litigated in a particular bankruptcy case. This holding, if good law, would entitle the Growers' Committee to intervene herein without regard to any of the circumstances present here that would dictate against intervention.

In Fuel Oil Supply and Terminaling v. Gulf Oil Corp., 762 F.2d 1283 (5th Cir. 1985), however, the Fifth Circuit was faced with the same issue, and reached the opposite conclusion, holding that Bankruptcy Code § 1109 (b) did not confer upon creditors' committees the absolute right to intervene in adversary proceedings, and that courts should consider the factors specified in Fed.R.Civ.P. 24 (a) (2) when faced with a motion by a creditors' committee to intervene in an adversary proceeding. See also In re Thompson, 965 F.2d 1136, 1142 n. 8 (1st Cir. 1992).

In reaching its conclusion, the court in Fuel Oil noted that "courts have been hesitant to find unconditional statutory rights of intervention", and when they do, the right is generally conferred on the United States or a regulatory commission. Fuel Oil, 762 F.2d at 1286. The court also stated that the applicable procedural rules governing both intervention and the rights of creditors committees to initiate adversary proceedings supported its conclusion. Id. at 1286-87.

This court finds Fuel Oil more persuasive than Marin. Indeed, after it decided Marin, the Third Circuit revisited the issue in Phar-Mor Inc. v. Coopers Lybrand, 22 F.3d 1228, 1233 (3d Cir. 1994), and discussed in depth the reasons why many courts rejected its analysis in Marin, only to acknowledge that "internal operating procedures barred [the Third Circuit] from overruling it." In Phar-Mor, the Third Circuit noted:

The courts rejecting Marin have advanced three reasons why Marin's interpretation of the scope of § 1109 (b) is incorrect. First, Congress has consistently drawn a distinction between bankruptcy "cases" and "adversary proceedings" related to them in other parts of the bankruptcy statutory scheme. Second, courts have construed Rule 24 (a) (1) narrowly; these courts have been reluctant to interpret statutes to grant an unconditional right to intervene to private parties. Third, Bankruptcy Rule 7024 and its accompanying advisory committee note indicate that Congress was aware of a distinction between cases and adversary proceedings and that Congress intended to differentiate between them in the context of intervention.

According to the courts critical of <u>Marin</u>, these legislative and judicial developments indicate that Congress was aware of the distinction between adversary proceedings and cases, and deliberately did not extend the right to intervene to adversary proceedings. These courts believe that Congress intended that motions to intervene under § 1109 (b) would be controlled by Rule 24 (a) (2) rather than Rule 24 (a) (1).

<u>Id</u>. at 1232-33.

For the reasons stated in <u>Fuel Oil</u> and in <u>Phar-Mor's</u> discussion of the reasons courts have declined to follow <u>Marin</u>, this court holds that Bankruptcy Code § 1109 (b) does not provide creditors' committees with the absolute right to intervene in all adversary proceedings.

The next issue, then, is whether Fed.R.Civ. p. 24 (a) (2) provides the Growers' Committee with the right to intervene. To prevail, the Growers' Committee must show the following: (1) the application must be timely; (2) the applicant must have a "significantly protectable" interest relating to the transaction that is the subject of the litigation; (3) the applicant must be so situated that the disposition of the act as a practical matter will impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the parties before the court. <u>See Northwest Forest Resource Council v. Glicknuin</u>, 82 F.3d 825, 836 (9th Cir. 1996).

Here, the Growers' Committee cannot make such a showing. As to the second factor, the Growers' Committee, as distinguished from the growers who filed claims, does not have any property interests at stake. <u>See Purcell v. BankAtlantic Financial Corp</u>., 85 F.3d 1508, 1512 (11th Cir. 1996). <u>See also Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 n. 1 (1992). As to the third factor, this court has held that the Growers' Committee does not even have standing to bind any grower-claimants as to the "allowance, disallowance, amount, priority, or status (secured or unsecured) of their individual claims," the very matters that are at issue herein. <u>See Decision on Motion to Dismiss</u>, filed June 26, 2001 in <u>Official Committee of Growers v. Tri Valley Growers</u>, Adv. Proc. 01-4076 AJ herein, attachment, p. 2.

As to the fourth factor, this court has found by its Amended Order Approving Maintenance of Class Action; Findings of Fact and Conclusions of Law, entered herein August 14 2001, that the growers are adequately represented by the class representatives herein. <u>See</u> paragraphs 9-12. The court has considered the applicable factors, <u>see, e.g.</u>, <u>Blake v. Pallan</u>, 554 F.2d 947, 954-55 (9th Cir. 1977),[1] and concluded that whatever interest the Growers' Committee has in the outcome of this litigation will be adequately protected by the class representatives, who, unlike the the Growers' Committee, are the real parties in interest, the parties with money at stake, and the parties with standing to litigate the issues that have been raised.

[1]  In <u>Blake</u>, the Ninth Circuit stated that when evaluating the adequacy of representation, the court should consider: (1) whether the interests of the existing party and the intervenor are sufficiently similar that the existing party would undoubtedly make the same legal arguments as the intervenor; (2) whether the existing party is capable and willing to make such arguments, and (3) whether the intervenor would add some necessary element not covered by the existing parties to the proceedings.

The court therefore holds that the Growers' Committee is not entitled to intervene pursuant to Fed.R.Civ. p. 24 (a) (2). <u>See, e.g.</u>, <u>In re Chalk Line Mfg., Inc</u>., 184 B.R. 828, 833 (Bankr. N.D. Ala. 1995), <u>In re Heck's Properties, Inc</u>., 151 B.R. 739, 749 (S.D.W.Va. 1992) (denying equity committee's motion to intervene in action alleging injury to corporate debtor, because debtor in possession's prosecution of action adequately protected

Case: 20-03050    Doc# 25-2    Filed: 08/20/20    Entered: 08/20/20 16:47:55    Page 37 of 39

stockholders' interests); <u>In re CVC Inc.</u>, 106 B.R. 478, 480 (Bankr. N.D. Ohio 1989) (holding that no inadequate representation existed justifying creditors' committee intervention under Rule 24 (a) (2) in debtor in possession's action against individual creditor).

C. <u>Permissive Intervention</u>

Fed.R.Civ.P. 24 (b) provides, in relevant part:

> (b) Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

A bankruptcy court has broad discretion to grant or deny motions for permissive intervention. <u>Orange County v. Air California</u>, 799 F.2d 535, 539 (9th Cir. 1986), <u>cert. denied</u> 480 U.S. 946 (1987). Even if the Growers' Committee could prove it meets all of Rule 24 (b) (2)'s threshold requirements, the Court retains the discretion to deny permissive intervention. <u>Donnelly v. Glickman</u>, (9th Cir. 1998) (citing<u>Orange County</u>, 799 F.2d at 159 F.3d 405, 412 (9th Cir. 1998) (citing<u>Orange County</u>, 799 F.2d at 539). In exercising its discretion, the Court may consider other relevant factors.

These relevant factors include the nature and extent of the intervenors' interest; their standing to raise relevant legal issues; the legal position they seek to advance, and its probable relation to the merits of the case; whether the intervenors' interests are adequately represented by other parties; whether intervention will prolong or unduly delay the litigation; and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented. <u>Spangler v. Pasadena City Bd. of Educ.</u>, 552 F.2d 1326, 1329 (9th Cir. 1977).

Here, the court's consideration of the relevant factors leads it to conclude that intervention should be denied. The court has already mentioned that the Growers' Committee lacks standing to bind any claimants as to the allowance or status of their claims. It has also noted that the grower-claimants are already and adequately represented by the class representatives, and do not require an additional representative, especially one that has suffered no injury. The added expense to the estate also dictates against intervention.

Moreover, the U.S. Trustee appointed the Growers' Committee to negotiate a plan and "not . . . to engage in any litigation nor to defend any litigation concerning its individual members." Transcript of November 22, 2001 hearing at 34:24-35:10. The court will deny the Growers' Committee's motion for permissive intervention under Fed.R.Civ.P. 24 (b).

D. <u>Conclusion</u>

For the above reasons, the court will issue its order denying the motion of the Growers' Committee to intervene under Fed.R.Civ.P. 24 (a) and (b).

# PROOF OF SERVICE

I, the undersigned, a regularly appointed and qualified clerk in the office of the United States Bankruptcy Court for the Northern District of California at Oakland, hereby certify:

That I, in the performance of my duties as such clerk, served a copy of the foregoing document entitled Memorandum Decision (Motion for Leave to Intervene) by depositing it in the regular United States mail at Oakland, California, on the date shown below, in a sealed envelope bearing sufficient postage, addressed as listed on the attached Service List.

I declare under penalty of perjury that the foregoing is true and correct.

 casetext