

Brett M. Schuman
+1 415 733 6021
BSchuman@goodwinlaw.com

Goodwin Procter LLP
3 Embarcadero Center
San Francisco, CA 94111

goodwinlaw.com
+1 415 733 6000

January 8, 2021

**Via ECF**

Hon. Dennis Montali
United States Bankruptcy Court for the Northern District of California
Lorena_Parada@canb.uscourts.gov

**Re:** *Levandowski v. Uber Technologies, Inc.*, **Adv. Pro. No. 20-03050 / Dispute re Privilege Waiver**

Dear Judge Montali:

Anthony Levandowski submits the attached brief addressing the remaining issues in dispute following the parties' meet and confer efforts and responding to the Court's requests from the December 29, 2020 hearing.

Mr. Levandowski is happy to provide any materials referenced in this brief as exhibits if requested by the Court.

Sincerely,

/s/ Brett M. Schuman



Brett M. Schuman
+1 415 733 6021
BSchuman@goodwinlaw.com

Goodwin Procter LLP
3 Embarcadero Center
San Francisco, CA 94111

goodwinlaw.com
+1 415 733 6000

Uber has changed course and now represents that "Uber will not take the position in this case that it lacked knowledge of information that its counsel at MoFo learned from Stroz during Stroz's investigation" or that it "lacked knowledge of facts learned by its litigation counsel through discovery in the Waymo litigation or the Google arbitration." Email from T. Mascherin to H. Vu (Jan. 6, 2021, 1:31 PM). Uber seeks the benefit of MoFo's knowledge but insists on withholding evidence showing what MoFo knew. This is precisely the unfair sword-shield situation contemplated by *Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003) where a party must choose—waive privilege or concede its claims.

Uber alleges that "[i]f Uber had known Levandowski had been involved with the Tyto business, had misappropriated Google trade secrets, had breached his fiduciary duties to Google, had committed felonious misconduct, or had lied to Stroz, Uber would not have executed the Indemnification Agreement in April 2016 and it would not have completed the Otto acquisition in August 2016." ECF No. 62-1 at p. 83, ¶ 19. These fraud-based claims—like dischargeability—require Uber to show justifiable reliance, which is based almost entirely on MoFo's communications.

Levandowski seeks an order that Uber concede its fraud based claims or produce: (i) the "information obtained from Anthony Levandowski" or other individuals investigated as identified in approximately 2,000 entries on Uber's privilege logs, (ii) any statements going to Uber's reasonable reliance on Levandowski, and (iii) any analyses or conclusions regarding Uber's legal exposure in indemnifying Levandowski for "Bad Acts" that included breach of duties to Google and theft of trade secrets and whether Uber considered such exposure material to its decision to proceed with the transaction. ECF No. 49 at Ex. A, Defin. of "Bad Acts"; § 2.1. Levandowski also asks the court to direct Uber to promptly produce a log that comprehensively shows what Uber has withheld from its prior productions.

**A. Applicable precedent requires waiver or concession of claims to prevent manifest unfairness.**
The *Bittaker* court found that the doctrine of implied waiver "directs the party holding the privilege to produce the privileged materials *if* it wishes to go forward with its claims implicating them." *Bittaker*, 331 F.3d at 720. "In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." *Id*. at 719. *Bittaker* has been widely applied in this District in a variety of circumstances.

In *Waymo LLC v. Uber Techs., Inc.*, Waymo sued Uber for trade secret misappropriation based on an internal investigation run by attorneys and an internal forensic team. There, Otto Trucking relied on *Bittaker* to argue that Waymo had relied on the opinions and conclusions of an internal investigator, but would not let him answer questions about what the attorneys had told him, including any instructions or facts provided by attorneys. *Waymo LLC v. Uber Techs. Inc*., No. 3:17-cv-00939-WHA (N.D. Cal. Aug. 11, 2017), ECF 1163. Magistrate Judge Corley agreed this was a waiver and ordered Waymo to produce its privileged investigation documents. *See id.* at ECF No. 1272. Uber benefitted from this waiver and used statements found in Waymo's privileged documents that the alleged trade secrets were "low value" in its defense. Indeed, these documents became the centerpiece of its opening statement and defense.

The Court in *Rambus Inc. v. Samsung Elecs. Co.*, 2007 WL 3444376, at *4 (N.D. Cal. Nov. 13, 2007) reached a similar conclusion. In that matter, Samsung investigated the conduct of a former employee but delayed in filing suit for aiding and abetting breach of fiduciary duty and business torts. In finding



that Samsung had waived privilege, the court held by asserting its claims and defenses to rebut allegations of delay, "Samsung has placed the issue of what it knew about Steinberg's work at Rambus . . . Samsung has also placed the timing and scope of its investigation of these claims at issue by alleging that it did not and could not investigate potential claims until 2005." *Id.* at *2. Similarly, in *Burton Way*, Hon. Vaughn Walker required the defendant to waive privilege or be barred from presenting extrinsic evidence on the meaning of a contract where its attorneys were extensively involved in the negotiations. *Burton Way Hotels, LLC v. Four Seasons Hotels Ltd.*, No. 2:11-CV-00303 PSG (PLAx) (C.D. Cal. June 18, 2013), ECF No. 414-1 at 19-20. The record would otherwise be "incomplete without the communications [defendant] has claimed are privileged" and also be "misleading without disclosure of the totality of lawyers' communications regarding the Agreements." *Id*.

MoFo's investigation using Stroz is subject to the same waiver applied in *Waymo* and *Rambus*. The Court should require that Uber produce factual information found in its privileged documents and any materials that relate to Uber's justifiable reliance on Levandowski's disclosures or the materiality of its understanding of its legal exposure in deciding to proceed with acquiring Otto and providing indemnity.

**B. Uber should be required to produce factual information found in its privileged documents.**
Everything Uber learned about the investigation came through lawyers: Levandowski provided information to Stroz; Stroz relayed that information to MoFo; MoFo relayed that information to Uber. The best record of those representation is in MoFo's contemporaneous notes and emails. Uber treated MoFo as its proxy such that MoFo received information and findings relating to Stroz's work on Uber's behalf. *See e.g.*, AL-UBER0104300 (email from Stroz to Levandowski's transactional counsel, "Unicorn [Uber] needs to immediately receive *(through MoFo)*" various documents) (emphasis added). MoFo then represented Levandowski, with Uber controlling that defense, through which MoFo acquired additional information from Levandowski.

Facts are not privileged and should not be withheld. AL Ltr. at 4. Uber has essentially conceded this, but claims it produced all relevant facts relating to its knowledge. This representation is contradicted by the over 2,000 entries on its logs that say, "***Email regarding information obtained from Anthony Levandowski*** [and others] and shared pursuant to joint defense agreement to further investigation for the purpose of obtaining or giving legal advice, in anticipation of litigation involving Google, regarding acquisition of Ottomotto." (emphasis added). Uber's authorities do not support Uber's withholding of the facts contained in these emails because in those cases the facts were also available from nonprivileged sources. *See* Uber Ltr. at 5. Such is not the case here, as again, the oral communications with Stroz are memorialized in the MoFo communications to Uber.[1] Uber has not and cannot represent that it has produced all factual information found in these emails. The only place this information can be found is in the communications logged that expressly identify information provided by Levandowski.

---

[1] There are also no witnesses who can testify to the factual content of these emails as non-attorney executives testified that their knowledge of the Stroz investigation came from attorneys and further probing was denied. Poetzcher Dep. Tr. 9/29/2017, 511:4-512:2 ("I mean, the only updates I got on [the Stroz investigation] were from counsel"); Kalanick Dep. Tr. 7/27/2017, 145:3-17; 148:12-22 (Uber's CEO testified that "the information that [he] received [about the investigation] was with company counsel.").



Moreover, while Uber has produced some documents from before April 11, 2016, it has not produced documents about the Stroz investigation or other knowledge it acquired after that date. What Uber learned about Levandowski's conduct after it agreed to provide indemnity and when is relevant to both Uber's claims and defenses that it can void the Indemnification Agreement based on a "Post-Signing Specified Bad Act" and rescind that contract despite having waited three years to do so. If Uber failed to promptly act, these claims and defenses fail. And Uber's communications with counsel post-signing, including the 39+ communications found on Uber's logs addressed herein, go directly to this issue.

**C. Uber should produce any statements that go to reasonable reliance and materiality.**
As the Court recognized at the December 29 hearing, by alleging in its answer and counterclaims that it would not have proceeded with providing indemnity or the Otto Transaction had it known that Levandowski "had lied to Stroz," Uber put its justifiable reliance at issue. *See In re Brown*, 217 B.R. 857, 860 (Bankr. S.D. Cal. 1998) (denying justifiable reliance where sophisticated lender decided to grant a loan despite a credit check indicating that the debtor had made false representations on the loan application). In addition, Uber's decision to proceed with the transaction despite concerns it received or expressed regarding Levandowski's credibility undermines Uber's allegations of materiality.

Mr. Tate, Uber's counsel at MoFo, included in his notes that Levandowski "lied about small things." Stroz also noted numerous instances where Levandowski's interview responses differed from the forensic evidence. *See* ECF No. 49 at ¶ 72 (Stroz report noting discrepancies in Levandowski's recollection of the Google materials on his personal devices); Stroz Report at 8 (same).

To the extent these or additional concerns regarding Levandowski's credibility—raised by Stroz, MoFo or Uber—are contained in the documents Uber continues to withhold, they must be produced. They go directly to whether Uber's reliance was justified. In addition, Uber's response to these concerns go to materiality. Levandowski should be allowed discovery into this knowledge if Uber wants to proceed with its fraud-based and dischargeability claims. ECF 62-1, Defense 7, Counts VI, VIII, IX.

**D. Uber's understanding of its legal exposure should be produced.**
Uber also claims it would not have signed the Indemnification Agreement had it known that Levandowski had misappropriated trade secrets or breached duties to Google. Whether Levandowski had taken trade secrets or breached duties to Google are legal conclusions that can only be determined by attorneys. As such, Uber has put at issue counsel's assessment of Uber's risk and Uber's response to such knowledge as material factors in its decision to proceed with the Otto transaction.

Uber largely ignored the analogous cases cited in Levandowski's opening papers, claiming it has not asserted an advice of counsel defense. Uber's distinction is inapposite. In *Nat.-Immunogenics Corp. v. Newport Trial Grp.*, 2018 WL 6138160, at *5 (C.D. Cal. Jan. 24, 2018), defendants were sued for filing sham class actions against plaintiff. Defendants claimed justifiable reliance on the "facts and circumstances known to Defendants at the time they learned from their attorney-investigator who identified individuals to serve as lead plaintiffs in the sham lawsuits. In finding a privilege waiver, the court determined that an "advice of counsel" defense was ***not*** necessary to put privileged communications at issue, and that the reliance allegation "turns upon the subjective intention of the party claiming reliance and, therefore, demands investigation into attorney-client communications where such



an intention would be manifested." *Id*. (citation omitted). Similarly, in *Regents of Univ. of Cal. v. Micro Therapeutics, Inc*., 2007 WL 2069946, at *1 (N.D. Cal. July 13, 2007), the court ordered redactions covering "attorney-client advice, legal analysis, mental impressions, thoughts and opinions of counsel" removed from a memo reporting on the findings of an attorney-investigator that led the plaintiff's counsel to decide not to disclose a thesis to the Patent and Trademark Office. Defendant's reliance defense put squarely at issue counsel's "state of mind and belief that the thesis was not publicly available" and was necessary to evaluate plaintiff's defense. *Id*. at *4. Unlike these cases, Uber's authorities do not concern attorney-led investigations that were subjects of an implied waiver.

MoFo's role in reporting to Uber Stroz's findings is the same as the attorneys' in the above cases: it oversaw an investigation and reported the facts and Uber's legal exposure to Uber. This information was used to understand the indemnity risk. AL-UBER0036727. For example, Uber hired MoFo specifically because Uber was worried about its exposure in providing indemnity. If MoFo advised Uber that it faced ***any*** exposure given the facts uncovered by the Stroz investigators MoFo hired, then that advice is discoverable because Uber now claims it would not have proceeded with the transaction because of an undisclosed risk. As another example, on a log titled "Defendants' Privilege Log re Documents sufficient to show Reasons for Uber's Acquisition of Otto", Uber identified a "[p]resentation prepared by and with legal counsel for purposes of advising the Uber Board of Directors about the acquisition of Otto, including legal risks and ramifications of the transaction" provided on the day the Board approved the Otto transaction. This presentation should be produced.

MoFo knew the information provided by Levandowski to Stroz. It also knew the legal consequences of the information it learned, including Uber's risk of having to pay Google a substantial judgment. As Uber relies on what MoFo knew as part of this case and does not dispute that MoFo's knowledge is imputed on it, Levandowski should be allowed discovery into MoFo's and Uber's understanding of Uber's exposure and whether that exposure was in fact material as Uber now contends.

**E. Uber's privilege logs are deficient and Uber cannot identify the documents withheld.**
Uber bears the burden of establishing its assertion of privilege and work product. Nevertheless, Uber insisted that Levandowski must review its boilerplate logs and identify entries that he is challenging. Yet Uber cannot even identify which of its 23 logs identifies the documents Uber continues to withhold. Just yesterday, Uber provided Levandowski with a new log dated 9/22/2017, representing that this log contains entries that are "relevant" to this dispute. But Uber admits that this log does not contain ***all*** documents it has withheld from discovery. It also cannot fully explain why the other logs are not at issue. It further stated that logs containing communications in MoFo's possession are not at issue because Uber does not have those documents. MoFo's documents created for Uber are in Uber's control.

Based on Uber's representation that the new 9/22/2017 log is the only log at issue, Levandowski addressed the contents of that log, a 6/30/2017 MoFo log with similar entries, and the board presentation found on a third log. Given the numerous deficiencies in Uber's privilege logs and the fact that Uber cannot provide a comprehensive list of what it continues to withhold, Levandowski reserves all rights to identify additional materials in Uber's or MoFo's possession that are subject to waiver and requests an order requiring Uber to identify the entirety of documents it continues to withhold on the basis of privilege from the productions it made in the Waymo Litigation and Google Arbitration.