# EXHIBIT 74

# EXHIBIT 74

1  MICHAEL A. JACOBS (CA SBN 111664)
   MJacobs@mofo.com
2  ARTURO J. GONZALEZ (CA SBN 121490)
   AGonzalez@mofo.com
3  ERIC A. TATE (CA SBN 178719)
   ETate@mofo.com
4  MORRISON & FOERSTER LLP
   425 Market Street
5  San Francisco, California 94105-2482
   Telephone:    415.268.7000
6  Facsimile:    415.268.7522

7  Attorneys for Defendants
   UBER TECHNOLOGIES, INC.,
8  OTTOMOTTO LLC, and OTTO TRUCKING LLC

9  KAREN L. DUNN (*Pro Hac Vice* app. pending)
   kdunn@bsfllp.com
10 HAMISH P.M. HUME (*Pro Hac Vice* app. pending)
   hhume@bsfllp.com
11 BOIES SCHILLER FLEXNER LLP
   1401 New York Avenue, N.W.
12 Washington DC 20005
   Telephone:    202.237.2727
13 Facsimile:    202.237.6131

14 Attorneys for Defendants
   UBER TECHNOLOGIES, INC.
15 and OTTOMOTTO LLC

16                UNITED STATES DISTRICT COURT

17              NORTHERN DISTRICT OF CALIFORNIA

18                  SAN FRANCISCO DIVISION

| 19 | WAYMO LLC, | Case No.       3:17-cv-00939-WHA |
|---|---|---|
| 20 | Plaintiff, | **DEFENDANTS UBER TECHNOLOGIES, INC., OTTOMOTTO** |
| 21 | v. | **LLC, AND OTTO TRUCKING LLC'S JOINT NOTICE OF MOTION AND** |
| 22 | UBER TECHNOLOGIES, INC.; | **MOTION TO COMPEL ARBITRATION OF, AND TO STAY,** |
| 23 | OTTOMOTTO LLC; OTTO TRUCKING LLC, | **TRADE SECRET AND UCL CLAIMS [9 U.S.C. §§ 3, 4]** |
| 24 | Defendants. |  |
| 25 |  | Date:    May 4, 2017 |
| 26 |  | Time:    8:00 a.m.<br>Ctrm:    8, 19th Floor<br>Judge:   Honorable William H. Alsup<br>Trial Date: October 2, 2017 |
| 27 |  |  |

28                **DOCUMENT SUBMITTED UNDER SEAL**

1

## NOTICE OF MOTION AND MOTION

2     **PLEASE TAKE NOTICE** that on May 4, 2017, at 8:00 a.m., or as soon thereafter as the

3  matter may be heard, in the United States District Court for the Northern District of California,

4  San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, CA, in Courtroom

5  8 before the Honorable William Alsup, Defendants Uber Technologies, Inc., Ottomotto LLC, and

6  Otto Trucking LLC will, and hereby do, jointly move the Court pursuant to 9 U.S.C. § 4 for an

7  order to compel arbitration of, and, pursuant to 9 U.S.C. § 3, to stay, Waymo LLC's trade secret

8  misappropriation claims (i.e., the first and second causes of action) and its claim for violation of

9  Section 17200 of the California Business and Professions Code (i.e., the seventh cause of action)

10  in the above-referenced matter.

11     Defendants' motion is based on this Notice of Motion and Motion, the accompanying

12  Memorandum of Points and Authorities, the concurrently filed Declaration of Arturo J. González

13  and all exhibits thereto, all documents in the Court's file, any matters of which this Court may

14  take judicial notice, and on such other written and oral argument as may be presented to the

15  Court.

16

17  Dated: March 27, 2017                          MORRISON & FOERSTER LLP

18
                                                  By:  */s/ Arturo J. González*
19                                                     ARTURO J. GONZÁLEZ

20                                                Attorneys for Defendants
                                                  UBER TECHNOLOGIES, INC.,
21                                                OTTOMOTTO LLC, and OTTO TRUCKING LLC

22

23

24

25

26

27

28

DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION OF, AND TO STAY, TRADE SECRET AND UCL CLAIMS
Case No. 3:17-cv-00939-WHA
sf-3740050

1

1

## TABLE OF CONTENTS

2

**Page**

3   STATEMENT OF ISSUES TO BE DECIDED ....................................................... 1

4   MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

5   I.   INTRODUCTION .................................................................................... 1

6   II.  FACTUAL BACKGROUND .................................................................. 3

7        A.   Mr. Levandowski's Employment with Waymo ..................................... 3

8             1.   The contracts ............................................................................... 3

9             2.   The arbitration provisions ........................................................... 4

10       B.   Waymo's Allegations in this Lawsuit ................................................... 5

11       C.   Related Arbitration Demands................................................................ 5

12  III. THE LEGAL STANDARD .................................................................... 6

13  IV.  ARGUMENT ........................................................................................... 6

14       A.   Equitable Estoppel Prevents Plaintiff from Circumventing the Arbitration
              Provision in Levandowski's Employment Agreements. ........................... 6

15
              1.   Waymo alleges substantially interdependent and concerted
16                 misconduct between Levandowski and Defendants that is intimately
                   connected with the obligations in Levandowski's underlying
17                 contracts. ..................................................................................... 7

18            2.   Waymo should not be allowed to avoid arbitration by pleading
                   around its arbitration requirement. .............................................. 9
19
         B.   The Broad Arbitration Clauses Require Waymo to Arbitrate Its Trade
20            Secret and UCL Claims......................................................................... 10

21       C.   The Broad Arbitration Clause's Plain Language Envisioned the Possibility
              of Arbitrating Claims against Non-Signatories....................................... 11
22
         D.   The Court Should Compel the Trade Secret and UCL Claims to Arbitration
23            and Stay Them; the Remaining Claims should Proceed. ......................... 12

24  V.   CONCLUSION....................................................................................... 14

25

26

27

28

DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION OF, AND TO STAY, TRADE SECRET AND UCL CLAIMS
CASE NO. 3:17-cv-00939-WHA                                                                    i

Case 2:20-cv-03050   Doc. #129-1   Filed: 02/24/21   Entered: 02/24/21 04:14:33   Page 4
of 20

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Arellano v. T-Mobile USA, Inc.*,
5
　　No. C 10-05663 WHA, 2011 WL 1842712 (N.D. Cal. May 16, 2011) ...................................10

6
*AT&T Mobility LLC v. Concepcion*,
7
　　563 U.S. 333 (2011)..........................................................................................................6

8
*Bigler v. Harker Sch.*,
　　153 Cal. Rptr. 3d 78 (Cal. Ct. App. 2013) ..............................................................11

9
*BrowserCam, Inc. v. Gomez, Inc.*,
10
　　No. C 08-02959 WHA, 2009 WL 210513 (N.D. Cal. Jan. 27, 2009)........................................12

11
*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
　　207 F.3d 1126 (9th Cir. 2000)...........................................................................................6
12

13
*Congdon v. Uber Techs., Inc.*,
　　No. 16-CV-02499-YGR, 2016 WL 7157854 (N.D. Cal. Dec. 8, 2016) ............................12, 13

14
*F.D. Imp. & Exp. Corp. v. M/V Reefer Sun*,
15
　　248 F. Supp. 2d 240 (S.D.N.Y. 2002)...........................................................................11

16
*Ferguson v. Corinthian Colls., Inc.*,
　　733 F.3d 928 (9th Cir. 2013)...........................................................................................10
17

18
*Goldman v. KPMG LLP*,
　　92 Cal. Rptr. 3d 534 (2009) ...........................................................................................7, 8

19
*Gray v. Conseco, Inc.*,
20
　　No. SA CV 00-322 DOC (EEX), 2000 WL 1480273 (C.D. Cal. Sept. 29, 2000)..............10, 13

21
*Hall v. Internet Capital Grp., Inc.*,
　　338 F. Supp. 2d 145 (D. Me. 2004) ...............................................................................11
22

23
*Howsam v. Dean Witter Reynolds, Inc.*,
　　537 U.S. 79 (2002)..........................................................................................................6

24
*KPMG LLP v. Cocchi*,
25
　　565 U.S. 18 (2011) ..........................................................................................................12

26
*Kramer v. Toyota Motor Corp.*,
　　705 F.3d 1122 (9th Cir. 2013)........................................................................................2, 7
27

28
*Martinez v. Check 'N' Go of Cal., Inc.*,
　　No. 15-cv-1864 H (RBB), 2015 WL 12672702 (S.D. Cal. Oct. 5, 2015) ...............................12

Case 20-03050   Doc# 129-1   Filed: 02/24/21   Entered: 02/24/21 04:14:33   Page 5 of 20

*Mohebbi v. Khazen,*
    No. 13-CV-03044-BLF, 2014 WL 6845477 (N.D. Cal. Dec. 4, 2014) ....................................10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983) ...........................................................................................................................6

*PacifiCare Health Sys., Inc. v. Book,*
    538 U.S. 401 (2003) .......................................................................................................................6

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,*
    388 U.S. 395 (1967) .......................................................................................................................9

*Simula, Inc. v. Autoliv, Inc.,*
    175 F.3d 716 (9th Cir. 1999) ........................................................................................................10

*Tech. & Intellectual Prop. Strategies Grp. PC v. Insperity, Inc.,*
    No. 12–CV–03163–LHK, 2012 WL 6001098 (N.D. Cal. Nov. 29, 2012) ...............................12

*Torbit, Inc. v. Datanyze, Inc.,*
    No. 5:12-CV-05889-EJD, 2013 WL 572613 (N.D. Cal. Feb. 13, 2013) ............................7, 13

*Trinchitella v. Am. Realty Partners, LLC,*
    No. 2:15-cv-02365, 2016 WL 4041319 (E.D. Cal. July 27, 2016)...........................................13

*United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.,*
    46 F. App'x 412 (9th Cir. 2002) .................................................................................................12

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.,*
    830 F.3d 1335 (Fed. Cir. 2016)....................................................................................................10

**Statutes**

9 U.S.C. § 1 *et seq.*.............................................................................................................................6

9 U.S.C. § 3 .........................................................................................................................1, 3, 12, 13

9 U.S.C. § 4 ..............................................................................................................................................3

DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION OF, AND TO STAY, TRADE SECRET AND UCL CLAIMS
Case No. 3:17-cv-00939-WHA
iii

Case: 20-03050    Doc# 129-1    Filed: 02/24/21    Entered: 02/24/21 04:14:33    Page 6
of 20

**STATEMENT OF ISSUES TO BE DECIDED**

This motion raises the following issues:

1.     Whether Waymo must arbitrate its trade secret misappropriation and California UCL claims against Defendants under 9 U.S.C. § 4; and,

2.     Whether those claims should be stayed under 9 U.S.C. § 3 pending the outcome of the arbitration, while the remaining claims proceed in this Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

The agreements Waymo[1] signed with its former employee, Anthony Levandowski, require arbitration of all disputes "with anyone" that arise out of, relate to, or result from Levandowski's employment.  Waymo's trade secret and unfair competition claims must be referred to arbitration because they arise out of, relate to, and result from Levandowski's employment.

At the heart of Plaintiff's trade secret claims are detailed allegations of purported misconduct among Defendants and Levandowski, a "former manager in Waymo's self-driving car project," who is "now leading the same effort for Uber."  (Am. Compl. ¶ 4, ECF No. 23.)  According to Waymo, Levandowski, while employed at Waymo, engaged in an elaborate scheme to improperly obtain Waymo's trade secrets, and then to help Defendants "leverage[ the] stolen information to shortcut the process" of "developing their own technology" in the driverless car space.  (*Id.* ¶ 10.)  Waymo alleges "Uber jump-started its self-driving car efforts by using Waymo trade secrets stolen by Anthony Levandowski" while he was employed by Waymo.  (Mot. Prelim. Inj. at 1, ECF No. 24.)

Vital to Waymo's complaint is its contention that Levandowski was able to misappropriate Waymo's information by virtue of his job at Waymo.  (*See* Am. Compl. ¶¶ 41–

---

[1] In December 2016, Google spun off its driverless car group as a subsidiary of Google's parent company Alphabet.  (*See* Mot. Prelim. Inj. at 3, ECF No. 24, and Jaffe Decl. Exs. 24–25 & 31–32, ECF Nos. 27-4, 27-5, 27-11, 27-12.)  As Plaintiff does in its amended complaint and in its preliminary injunction motion, Defendants likewise use the name "Waymo" to refer to Google's "self-driving car project from its inception in 2009 to the present."  (Am. Compl. at 7 n.2; Mot. Prelim. Inj. at 3 n.2.)

1   49.)[2]  The amended complaint, which mentions Levandowski by name 35 times, describes how he

2   allegedly laid the foundation for Defendants to obtain Waymo's intellectual property.  (*Id.* ¶¶ 41–

3   54.)  Nonetheless, Waymo does not name Levandowski as a defendant, even though Waymo has

4   separately brought arbitration claims against him.  The reason is plain: through artful pleading,

5   Waymo hopes to avoid arbitrating its trade secret and UCL claims, aiming instead to litigate them

6   here.  Waymo's contracts, however, require that the claims be arbitrated.  As a result, Defendants

7   have been forced to bring this motion and to initiate a separate arbitration for a declaration that

8   Waymo's trade secret and UCL claims are meritless, which Defendants will file this week.

9          In this motion, Defendants seek to hold Waymo to its promise to arbitrate.  Waymo and

10  Levandowski entered into broad arbitration agreements that reach the misappropriation and unfair

11  competition claims in this case.  Principles of equitable estoppel bar Waymo from avoiding its

12  arbitration obligations.  In this case, Waymo is alleging interdependent and concerted misconduct

13  between Levandowski and Defendants that arises out of Levandowski's employment relationship

14  with Waymo.  Because those allegations are "founded in or intimately connected with the

15  obligations" of Levandowski's employment agreements with Waymo and because those

16  agreements include arbitration provisions covering all disputes arising out of, relating to, or

17  resulting from Levandowski's employment, Defendants are entitled to enforce Waymo's

18  agreement to arbitrate.  *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013).

19          Moreover, the plain language of the agreements reveal that Waymo made a promise to

20  arbitrate *all* disputes *with anyone*, when the dispute *arises out of, relates to, or results from*

21  Levandowski's employment.  The provision's "with anyone" language makes clear that both

22  Levandowski and Waymo mutually agreed to arbitrate—not just disputes between the two of

23  them—but *all* disputes *with anyone*, so long as the controversy broadly relates to Levandowski's

24  employment.  In the face of such a broad arbitration agreement, it is irrelevant that Defendants are

25  not signatories to the arbitration agreements.  Both Waymo and Levandowski committed

26  _____

27          [2] (*See also* Mot. Prelim. Inj. at 1 ("Desperate to catch up with Waymo — by any means
    necessary — Uber jump-started its self-driving car efforts by using Waymo trade secrets stolen
28  by Anthony Levandowski, a former Waymo employee.").)

DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION OF, AND TO STAY, TRADE SECRET AND UCL CLAIMS
Case No. 3:17-cv-00939-WHA                                                                    2

1   themselves contractually to arbitrate employment-related disputes with anyone.  The Court should

2   hold Waymo to its end of the bargain.

3          The precepts of equitable estoppel, coupled with the broad "with anyone" arbitration

4   provisions Waymo agreed to, require that Waymo be compelled to arbitrate its trade secret and

5   UCL claims under 9 U.S.C. § 4.  Those claims should be stayed under 9 U.S.C. § 3, pending the

6   arbitration's outcome, while the remaining patent claims proceed.  Additionally, because an

7   arbitration panel can address any motion for a preliminary injunction, the Court should also stay

8   the preliminary injunction motion in favor of prompt consideration of the request by arbitrators.

9   **II.     FACTUAL BACKGROUND**

10          **A.     Mr. Levandowski's Employment with Waymo**

11          Mr. Levandowski began his career at Waymo in April 2007 as an engineer, ultimately

12   working in the division responsible for developing Waymo driverless cars and related technology.

13   In 2011, Waymo promoted Levandowski to a managerial position, where he led a team of

14   Waymo engineers who developed LiDAR technology for Waymo's self-driving car project.  (*See*

15   González Decl. ¶ 3, Ex. 1, p. 10 (Waymo JAMS Arbitration Demand).)

16                **1.     The contracts**

17          During the course of his Waymo employment, Mr. Levandowski entered into two "At-

18   Will Employment, Confidential Information, Invention Assignment and Arbitration"

19   Agreements—one in 2009 and another in 2012.  (González Decl. ¶ 3, Ex. 1, p. 46 and p. 34.)[3]

20   The 2012 Agreement requires the employee to "hold in strictest confidence" Waymo's

21   "Confidential Information" and to not disclose it without permission.  (2012 Empl. Agmt. § 2(a),

22   González Decl., Ex. 1, p. 34; *accord* 2009 Empl. Agmt. § 2(a), Ex. 1, p. 46.)  The agreements

23   broadly define "Company Confidential Information" to include, among other things, trade secrets.

24   (2012 Empl. Agmt. § 2(a), Ex. 1, p. 34.)  The 2009 Agreement also contains certain carve-out

25   _____

26          [3] In an arbitration demand filed by Waymo against Levandowski (discussed in more detail below), Waymo brought claims against Levandowski based on both the 2009 and 2012

27   Employment Agreements, which Waymo attached as exhibits to its demand.  For simplicity's sake, Defendants include the demand along with the Employment Agreements all as one exhibit

28   to the González Declaration (Exhibit 1), but have added pagination for the Court's convenience.

1  provisions that identify inventions and trade secrets that Levandowski conceived before his

2  Waymo employment or that Waymo otherwise agreed Levandowski owns.  (2009 Empl. Agmt.

3  § 3(a), Ex. 1, p. 47.)

4          **2.**      **The arbitration provisions**

5       Both the 2009 and 2012 Employment Agreements contain broad, virtually identical

6  arbitration provisions.  The 2012 Agreement requires arbitration of ***all*** disputes with ***anyone***

7  arising out of, relating to, or resulting from Levandowski's employment with the Company:[4]

> IN CONSIDERATION OF MY EMPLOYMENT WITH THE
> COMPANY, **ITS PROMISE TO ARBITRATE ALL
> EMPLOYMENT-RELATED DISPUTES,** AND MY RECEIPT
> OF THE COMPENSATION, PAY RAISES AND OTHER
> BENEFITS PAID TO ME BY THE COMPANY, AT PRESENT
> AND IN THE FUTURE, **I AGREE THAT ANY AND ALL
> CONTROVERSIES, CLAIMS, OR DISPUTES WITH
> ANYONE** (INCLUDING THE COMPANY AND ANY
> EMPLOYEE, OFFICER, DIRECTOR, SHAREHOLDER OR
> BENEFIT PLAN OF THE COMPANY IN THEIR CAPACITY
> AS SUCH OR OTHERWISE), WHETHER BROUGHT ON AN
> INDIVIDUAL, GROUP, OR CLASS BASIS, **ARISING OUT
> OF, RELATING TO, OR RESULTING FROM MY
> EMPLOYMENT WITH THE COMPANY** OR THE
> TERMINATION OF MY EMPLOYMENT WITH THE
> COMPANY, INCLUDING ANY BREACH OF THIS
> AGREEMENT, **SHALL BE SUBJECT TO BINDING
> ARBITRATION UNDER THE ARBITRATION RULES SET
> FORTH IN CALIFORNIA CODE OF CIVIL PROCEDURE
> SECTION 1280 THROUGH 1294.2, INCLUDING SECTION
> 1283.05 (THE "RULES") AND PURSUANT TO
> CALIFORNIA LAW.**

22  (2012 Empl. Agmt. § 14(a) (emphasis added), Ex. 1, p. 38.)[5]

---

24      [4] Both agreements define "Company" to include "Google Inc., its subsidiaries, affiliates,
25  successors or assigns."  (2009 Empl. Agmt. at 1, Ex. 1, p. 46; 2012 Empl. Agmt. at 1, Ex. 1, p. 34).)

26      [5] The 2009 Agreement's arbitration provision is substantively similar.  (*See* 2009 Empl.
27  Agmt. § 15, Gonzalez Decl. Ex. 1, p. 50.)  For purposes of this motion, the differences between
the two clauses are immaterial.  The 2012 Agreement expressly invokes the Federal Arbitration
28  Act; the 2009 Agreement does not.  (*See* 2012 Empl. Agmt. § 14(f), Ex. 1, pp. 39–40.)

                                             4

### B.   Waymo's Allegations in this Lawsuit

Waymo's amended complaint mentions Levandowski by name 35 times, and Waymo's motion for a preliminary injunction names him 32 times.  His alleged conduct as a Waymo employee is the core for Waymo's trade secret and UCL claims.  Waymo contends that Levandowski, just before departing Google, accessed "Waymo's highly confidential design server" and then "downloaded [*sic*] over 14,000 proprietary files from that server," including "9.7 GBs of sensitive, secret, and valuable internal Waymo information."  (Am. Compl. ¶¶ 43–44.)[6] According to Waymo, "2 GBs of the download related to Waymo's LiDAR technology," including "confidential specifications for each version of every generation of Waymo's LiDAR circuit boards."  (*Id.* ¶ 44.)  Waymo says Levandowski also "used his Waymo credentials and security clearances to download additional confidential Waymo documents."  (*Id.* ¶ 47.)

"After downloading all of this confidential information regarding Waymo's LiDAR systems and other technology *and while still a Waymo employee*," Waymo claims, "Mr. Levandowski attended meetings with high-level executives at Uber's headquarters in San Francisco on January 14, 2016."  (*Id.* ¶ 48, emphasis added.)  The implication is that Defendants were able to spur their own supposedly lagging self-driving car projects "by using Waymo trade secrets stolen by Anthony Levandowski."  (Mot. Prelim. Inj. at 1.)

### C.   Related Arbitration Demands

On October 28, 2016, Waymo filed two arbitration demands with JAMS against Levandowski, claiming that he took and improperly used Waymo's confidential information to assist Defendants.  (*See* González Decl. ¶ 2, Exs. 1, 2.)  In one of those demands, Waymo alleges that Levandowski breached the confidentiality provisions of his employment agreements by using Waymo's confidential employee salary information to make targeted offers to Waymo's employees.  (*See* González Decl. ¶ 3 & Ex. 1.)  In the second demand, Waymo similarly contends Levandowski improperly used Waymo's confidential information to induce Waymo employees to join a competing driverless-car enterprise.  (*See id.* ¶ 4 & Ex. 2.)  Even though Waymo claims in

---

[6] Waymo's preliminary injunction motion similarly alleges that Levandowski "unlawfully" took "14,000+" documents.  (Mot. Prelim. Inj. at 2.)

1   both arbitrations that Levandowski improperly took and used Waymo's confidential information,

2   it makes no claims of trade secret misappropriation in that forum.  (*Id.* Exs. 1, 2.)

3       This week, Defendants will initiate arbitration proceedings, seeking a declaratory

4   judgment that Waymo's claims that Defendants misappropriated trade secrets and violated the

5   UCL are meritless.  Defendants will initiate this arbitration proceeding based upon the broad

6   arbitration provisions in Levandowski's employment agreements with Waymo.  (*Id.* ¶ 6.)

7   **III.    THE LEGAL STANDARD**

8       The Federal Arbitration Act (FAA) reflects a liberal federal policy favoring arbitration

9   and requires rigorous enforcement of arbitration agreements.[7]  *See AT&T Mobility LLC v.*

10  *Concepcion*, 563 U.S. 333, 339 (2011) (holding that "courts must place arbitration agreements on

11  an equal footing with other contracts").  The Court's role in determining whether a dispute is

12  arbitrable is "limited to determining (1) whether a valid agreement to arbitrate exists[8] and, if it

13  does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho*

14  *Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *see also PacifiCare Health Sys.,*

15  *Inc. v. Book*, 538 U.S. 401, 407 n.2 (2003); *Howsam v. Dean Witter Reynolds, Inc*., 537 U.S. 79,

16  83–84 (2002).  "If the response is affirmative on both counts, then the Act requires the court to

17  enforce the arbitration agreement in accordance with its terms." *Chiron Corp.*, 207 F.3d at 1130.

18  **IV.    ARGUMENT**

19          **A.    Equitable Estoppel Prevents Plaintiff from Circumventing the**
                    **Arbitration Provision in Levandowski's Employment Agreements.**

20

21      The principles of equitable estoppel compel Waymo to arbitrate its trade secret and UCL

22  claims, because Waymo alleges substantially interdependent and concerted misconduct among

23  _____

24      [7] The arbitration clause in the 2012 Employment Agreement "is entered pursuant to, and
    shall be governed by, the Federal Arbitration Act (9 U.S.C. Section 1, et seq.)."  (2012 Empl.

25  Agmt. § 14(f), Gonzalez Decl. Ex. 1, p. 39.); *see also Moses H. Cone Mem'l Hosp. v. Mercury
    Constr. Corp.*, 460 U.S. 1, 24–25 (1983) (holding that federal substantive law of arbitrability

26  generally applies to arbitration agreements that come within the coverage of the FAA).

27      [8] There should be no dispute concerning the validity of the arbitration agreements
    themselves in view of Waymo's arbitration demand against Levandowski based on those

28  agreements.

1    Levandowski—a signatory—and the non-signatory Defendants, and that conduct is founded in or

2    intimately connected with Waymo's agreement to arbitrate its disputes with Levandowski. [9]

3         "Equitable estoppel precludes a party from claiming the benefits of a contract while

4    simultaneously attempting to avoid the burdens that contract imposes." *Kramer v. Toyota Motor*

5    *Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101

6    (9th Cir. 2006)).  Under California law, when a non-signatory seeks to enforce an arbitration

7    clause, equitable estoppel applies "when the signatory alleges substantially interdependent and

8    concerted misconduct by the nonsignatory and another signatory and "the allegations of

9    interdependent misconduct [are] founded in or intimately connected with the obligations of the

10   underlying agreement." *Kramer*, 705 F.3d at 1128–29.

11                    **1.    Waymo alleges substantially interdependent and concerted misconduct
                              between Levandowski and Defendants that is intimately connected
12                            with the obligations in Levandowski's underlying contracts.**

13        Where, as here, a non-signatory seeks to compel a signatory to arbitrate, equitable

14   estoppel may operate "to protect the vitality of arbitration agreements and federal arbitration

15   policy." *Torbit, Inc. v. Datanyze, Inc.*, No. 5:12-CV-05889-EJD, 2013 WL 572613, at *4 (N.D.

16   Cal. Feb. 13, 2013) (quoting *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir.

17   2009); *see also Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 528 (5th Cir. 2000)).

18   Equitable estoppel applies when the signatory alleges substantially interdependent and concerted

19   misconduct "founded in or intimately connected with the obligations of the underlying

20   agreement." *Goldman v. KPMG LLP*, 92 Cal. Rptr. 3d 534, 541 (2009).  The "allegations of

---

22        [9] There is no reasonable dispute that Waymo is a signatory to the 2009 and 2012

23   Employment Agreements.  Google spun Waymo off just this past December.  (Am. Compl. ¶ 25
     ("In 2016, Google's self-driving car program became Waymo, a stand-alone company operating

24   alongside Google and other technology companies under the umbrella of Alphabet Inc.").)
     Indeed, Waymo—like Google—"is a subsidiary of Alphabet Inc. . . ." (*Id.* ¶ 12; *see also* Mot.

25   Prelim. Inj. at 3, ECF No. 24, and Jaffe Declaration Exs. 24-25 & 31-32, ECF Nos. 27-4, 27-5,
     27-11, 27-12.)  Both the 2009 and 2012 Employment Agreements make clear that the agreements

26   are between Levandowski and the "Company," which is defined to include Google's affiliates.
     (2009 Empl. Agmt. at 1, Gonzalez Decl. Ex. 1, p. 46; 2012 Empl. Agmt. at 1, Ex. 1, p. 34.)

27   Waymo's own amended complaint refers to Levandowski as "a Waymo employee." (Am.
     Compl. ¶ 42.)  Further, Google recently filed an arbitration demand based on those agreements.

28   DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION OF, AND TO STAY, TRADE SECRET AND UCL CLAIMS
     Case No. 3:17-cv-00939-WHA                                                                    7

1   collusive behavior must also establish that the plaintiff's claims against the nonsignatory are

2   intimately founded in and intertwined with the obligations imposed by the [contract containing

3   the arbitration clause]." *Id.* at 545 (internal quotation marks omitted; alteration in original).

4          Here, Waymo alleges throughout its amended complaint and in its motion for preliminary

5   injunction that Defendants and Levandowski, through concerted conduct among them,

6   misappropriated Waymo's trade secrets—and that Levandowski was able to accomplish the theft

7   by virtue of his job at Waymo by, for example, using "his Waymo credentials and security

8   clearances to download additional confidential Waymo documents."  (Am. Compl. ¶ 47; *see also*

9   *id.* ¶¶ 4–6, 41–49, 55–58, 67, 80.)  Waymo's complaint accuses Levandowski of "downloading

10  all of this confidential information regarding Waymo's LiDAR systems and other technology . . .

11  while still a Waymo employee."  (*Id.* ¶ 48, emphasis added.)

12         Waymo's allegations, and its claims against Defendants, make one thing clear: They are

13  all inextricably bound up with Levandowski's employment relationship, which is governed by his

14  Waymo employment agreements (including, for example, the agreements' prohibitions on the

15  disclosure and use of trade secrets).  Going well beyond mere allegations of concerted misconduct

16  alone, Waymo plainly asserts instances of interdependent collusion that Levandowski allegedly

17  engaged in while he worked for Waymo and that, if true, would violate the terms of the 2009 and

18  2012 Employment Agreements.  (*See*, *e.g.*, Am. Compl. ¶¶ 72, 82; Droz Decl. ISO Mot. Prelim.

19  Inj. ¶ 30, ECF No. 24-3.)  In other words, Waymo's allegations of concerted misconduct "are

20  intimately founded in and intertwined with the obligations imposed by the [contract[s] containing

21  the arbitration clause]." *Goldman*, 92 Cal. Rptr. 3d at 545 (internal quotation omitted).  There is

22  no way to evaluate the claims against Defendants without also considering the extent and nature

23  of the wrongful acts Levandowski supposedly committed, in alleged concert with Defendants,

24  while he was working for Waymo.

25         The crux of Waymo's allegations is that Levandowski leveraged his employment at

26  Waymo—and his concomitant access to Waymo's trade secrets—to misappropriate those secrets

27  and to give them to the Defendants in violation of his employment agreement.  Waymo even

28  refers to the employment agreements Levandowski signed, which limited the use of confidential

Case: 20-33050   Doc# 129-1   Filed: 02/24/21   Entered: 02/24/21 04:14:33   Page 14 of 20

1   information and required arbitration.[10]  Under these circumstances, the concerted conduct

2   Waymo alleges is intertwined with the confidentiality obligations in Levandowski's Waymo

3   employment contracts.  Those contracts require arbitration of the trade secret and UCL claims.

4                 **2.**       **Waymo should not be allowed to avoid arbitration by pleading around**
                              **its arbitration requirement.**

5

6          The Court should prohibit Waymo from using artful pleading to avoid its arbitration

7   obligation.  Waymo brings three separate but related actions: In addition to this lawsuit, Waymo

8   also has filed two arbitration demands against Levandowski.  (González Decl. ¶¶ 3–4.)  In the

9   lawsuit, despite the myriad allegations about Levandowski's serious misconduct while a Waymo

10   employee, Waymo omits him as a named defendant.  In the two arbitrations—where Waymo

11   similarly alleges Levandowski mounted a plan to build a competing business while still a Waymo

12   employee, Waymo alleges Levandowski violated his contractual obligations by misusing

13   Waymo's confidential information to solicit Waymo's employees and contractors.  Tellingly,

14   though, Waymo asserts no claims for trade secret misappropriation in those arbitrations.

15   Waymo's purpose for proceeding in this curious manner seems clear: through artful pleading, it

16   hopes to avoid arbitrating the misappropriation and UCL claims at all costs.  To address this

17   gamesmanship, Defendants have been forced to bring this motion and will initiate arbitration

18   proceedings, seeking a declaration that Waymo's misappropriation-of-trade-secrets claims and

19   UCL claim are meritless.

20

21

22

23           [10] Waymo notes that it "requires all employees, contractors, consultants, vendors, and

24   manufacturers to sign confidentiality agreements before any confidential or proprietary trade
secret information is disclosed to them."  (Am. Compl. ¶¶ 72, 82; Mot. Prelim. Inj. at 5.)  In a

25   declaration Waymo submitted in support of its preliminary injunction motion, Waymo refers
more specifically—though still vaguely—to Levandowski's written agreement: "As a condition

26   of employment, I understand Waymo requires all employees—**including members of the**

27   **LiDAR team who have left Waymo to work for Defendants**—to enter into written agreements
to maintain the confidentiality of proprietary and trade secret information, and not to misuse such

28   information."  (Droz Decl. ISO Mot. Prelim. Inj. ¶ 30, ECF No. 24-3, emphasis added.)

1

**B.     The Broad Arbitration Clauses Require Waymo to Arbitrate Its Trade Secret and UCL Claims.**

2

3       The broad arbitration provisions in Levandowski's employment agreements require

4   arbitration of virtually any kind of dispute "arising out" of or "relating to" Levandowski's

5   employment with Waymo.  *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395,

6   398 (1967) (labeling as "broad" a clause that required arbitration of "[a]ny controversy or claim

7   arising out of or relating to this Agreement").  The Ninth Circuit "has made clear that, when an

8   otherwise-valid arbitration agreement includes such broad language, 'all doubts are to be resolved

9   in favor of arbitrability.'"[11]  *Mohebbi v. Khazen*, No. 13-CV-03044-BLF, 2014 WL 6845477, at

10  *7 (N.D. Cal. Dec. 4, 2014) (quoting *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir.

11  1999)); *Gray v. Conseco, Inc.*, No. SA CV 00-322 DOC (EEX), 2000 WL 1480273, at *5 (C.D.

12  Cal. Sept. 29, 2000) ("When the language 'arising out of and relating to' appears in an arbitration

13  provision, courts interpret the provision as a 'broad' arbitration clause.").

14      The employment agreements' broad arbitration provisions require that all "controversies,

15  claims, or disputes . . . arising out of, relating to, or resulting from" Levandowski's employment

16  with Waymo must be arbitrated.  (2012 Empl. Agmt. § 14(a), González Decl. Ex. 1, p. 38; *accord*

17  2009 Empl. Agmt. § 15(a), Ex. 1, p. 50.)  The 2012 Agreement expressly extends to any statutory

18  claims under state or federal law.  (2012 Empl. Agmt. § 14(a), Ex. 1, p. 38.)  These provisions

19  plainly cover Waymo's trade secret claims, which are founded on Levandowski's purported

20  misconduct as an employee of Waymo, on activities Levandowski could only have carried out by

21  virtue of his employment, and on Levandowski's alleged breaches of the confidentiality

22  provisions in his employment agreements.  They also cover Waymo's UCL claim, which is based

23  on its trade secret claims, rather than its patent infringement claims.  (Am. Compl. ¶¶ 143–48.)

24  Both the trade secret claims and UCL claims are arbitrable.  *See Simula*, 175 F.3d at 724–25

25

---

26      [11] Because Waymo alleges patent infringement claims, this case comes within the Federal
    Circuit's appellate jurisdiction.  The Federal Circuit applies regional circuit law to determine
27  whether claims fall within the scope of an arbitration clause.  *Verinata Health, Inc. v. Ariosa
    Diagnostics, Inc.*, 830 F.3d 1335, 1338 (Fed. Cir. 2016) (citing *Deprenyl Animal Health, Inc. v.
28  Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1349 (Fed. Cir. 2002)).

1  ("Courts routinely refer claims for misappropriation of trade secrets to arbitration."); *Ferguson v.*

2  *Corinthian Colls., Inc.*, 733 F.3d 928, 937–38 (9th Cir. 2013) (holding that arbitration clause was

3  "sufficiently broad to cover" UCL claims); *Arellano v. T-Mobile USA, Inc.*, No. C 10-05663

4  WHA, 2011 WL 1842712, at *2 (N.D. Cal. May 16, 2011) (Alsup, J.) (granting motion to compel

5  arbitration of UCL claims and stay claims for injunctive relief).

6    **C.    The Broad Arbitration Clause's Plain Language Envisioned the Possibility of
          Arbitrating Claims against Non-Signatories.**

7

8        The employment agreements' expansive arbitration provisions reach not only the *subject*

9  *matter* of Waymo's claims; they extend broadly to require Waymo to arbitrate its claims against

10  non-signatories to those agreements—here, the Defendants.  *See, e.g.*, *F.D. Imp. & Exp. Corp. v.*

11  *M/V Reefer Sun*, 248 F. Supp. 2d 240, 247 (S.D.N.Y. 2002) (noting the distinction between

12  arbitration clauses that specifically identify the parties to be bound and "a broader form of

13  arbitration clause which does not restrict the parties").  "If an arbitration clause is broad, it may

14  govern disputes of non-signatories and parties not listed in the contract."  *Id.*; *see also Hall v.*

15  *Internet Capital Grp., Inc.*, 338 F. Supp. 2d 145, 151 (D. Me. 2004) (broadly worded arbitration

16  clauses can reach claims with non-signatories).

17        Here, the broad employment agreement provisions require arbitration of virtually any

18  claim against *anyone*, so long as the claim relates to Levandowski's employment.  Waymo and

19  Levandowski agreed to arbitrate:

20        **ANY   AND   ALL   CONTROVERSIES,   CLAIMS,   OR
        DISPUTES WITH ANYONE** (INCLUDING THE COMPANY

21        AND    ANY    EMPLOYEE,    OFFICER,    DIRECTOR,
        SHAREHOLDER OR BENEFIT PLAN OF THE COMPANY IN

22        THEIR CAPACITY AS SUCH OR OTHERWISE) . . . .

23

24  (2012 Empl. Agmt. § 14(a) (emphasis added), Ex. 1, p. 38.)

25        "Anyone" means anyone, and includes Defendants here.  *See Bigler v. Harker Sch.*, 153

26  Cal. Rptr. 3d 78, 88–89 (Cal. Ct. App. 2013) (noting that court should consider the usual and

27  ordinary meaning of the contract language to determine the arbitration clause's scope).  While the

28  examples in the parenthetical following the phrase "with anyone" are associated with Waymo, the

1   provision is not *limited* to those examples; the provision extends to "anyone."  Having bound

2   Levandowski to arbitrate any claims he might have against "anyone," Waymo should not be

3   permitted to argue that "anyone" means something else when it comes to *Waymo's* obligation.

4   By the plain language of the arbitration provisions, Waymo must arbitrate its claims against

5   anyone, including non-signatory Defendants, if they arise out of or relate to Levandowski's

6   employment relationship with Waymo.  The claims here plainly do.

7           **D.      The Court Should Compel the Trade Secret and UCL Claims to
                       Arbitration and Stay Them; the Remaining Claims should Proceed.**
8

9           Because the trade secret and UCL claims are arbitrable, they should be referred to

10  arbitration and stayed pending the outcome of the arbitration, including, without limitation, all

11  discovery related thereto.  Additionally, because an arbitration panel can address any motion for a

12  preliminary injunction, the Court should also stay Waymo's preliminary injunction motion in

13  favor of prompt consideration of the request by arbitrators.

14          Where, as here, the dispute involves "multiple claims, some arbitrable and some not, the

15  former must be sent to arbitration even if this will lead to piecemeal litigation" or would result in

16  "'the possibly inefficient maintenance of separate proceedings in different forums.'"  *KPMG LLP*

17  *v. Cocchi*, 565 U.S. 18, 19, 22 (2011) (per curiam) (quoting *Dean Witter*, 470 U.S. at 217–18).

18          Section 3 of the FAA provides that a court shall, on application of one of the parties, stay

19  trial pending arbitration in any suit where any issue is referable to arbitration and the court refers

20  the suit to arbitration.  9 U.S.C. § 3; *Congdon v. Uber Techs., Inc.*, No. 16-CV-02499-YGR, 2016

21  WL 7157854, at *5 (N.D. Cal. Dec. 8, 2016).  Whether to stay the *entire* action, including issues

22  not referred to arbitration, is a matter for the district court's discretion.  *BrowserCam, Inc. v.*

23  *Gomez, Inc.*, No. C 08-02959 WHA, 2009 WL 210513, at *3 (N.D. Cal. Jan. 27, 2009) (Alsup, J.)

24  (quoting *United States ex rel. Newton v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427

25  (9th Cir. 1985)); *Martinez v. Check 'N' Go of Cal., Inc.*, No. 15-cv-1864 H (RBB), 2015 WL

26  12672702, at *6 (S.D. Cal. Oct. 5, 2015) (staying arbitrable claims but declining to stay the lone

27  non-arbitrable claim).

28          In deciding whether to stay non-arbitrable claims, court consider several factors, including

DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION OF, AND TO STAY, TRADE SECRET AND UCL CLAIMS
Case No. 3:17-cv-00939-WHA                                                                                    12

1   whether the arbitrable claims predominate over the non-arbitrable ones, and whether the

2   resolution of the non-arbitrable claims will depend on the arbitrator's rulings concerning the

3   arbitrable claims. *United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 F. App'x 412, 415

4   (9th Cir. 2002) (unpublished) (citing *Simitar Entm't, Inc. v. Silva Entm't, Inc.*, 44 F. Supp. 2d

5   986, 997 (D. Minn. 1999)); *see also Tech. & Intellectual Prop. Strategies Grp. PC v. Insperity,*

6   *Inc.*, No. 12–CV–03163–LHK, 2012 WL 6001098, at *13 (N.D. Cal. Nov. 29, 2012) (non-

7   arbitrable claims should be stayed when resolution of the arbitrable claims might have a

8   conclusive effect on the non-arbitrable ones). They also evaluate "the economy and efficiency

9   that result from avoiding duplication of effort" and "how suited the dispute is to the arbitration

10  process[.]" *Gray*, 2000 WL 1480273, at *8 (stay warranted where "non-arbitrable claim is based

11  on exactly the same facts and issues as the arbitrable claims"); *Trinchitella v. Am. Realty*

12  *Partners, LLC*, No. 2:15-cv-02365, 2016 WL 4041319, at *13 (E.D. Cal. July 27, 2016)

13  (evaluating the "similarity of the issues of law and fact among" the arbitrable and non-arbitrable

14  claims and discussing "the possibility of inconsistent rulings"). Courts likewise "weigh the

15  competing interests that will be affected," including, for example, whether proceeding without a

16  stay will impose hardship or in equity, or would complicate "'issues, proof, and questions of

17  law . . . .'" *Congdon*, 2016 WL 7157854, at *5 (quoting *Roderick v. Mazzetti & Assocs., Inc.*,

18  No. C04-2436 MHP, 2004 WL 2554453, at *3 (N.D. Cal. Nov. 9, 2004)).

19      Here, the Court must stay Waymo's trade secret and UCL claims under the FAA's

20  mandatory stay provisions, if it finds those claims to be arbitrable. 9 U.S.C. § 3. In addition, the

21  Court should stay the motion for preliminary injunction because an arbitration panel can give it

22  prompt consideration. *See generally Torbit*, 2013 WL 572613, at *5 (granting motion to compel

23  arbitration and staying the case, while denying the preliminary injunction as moot in light of the

24  stay).

25      At the same time, however, the Court should not stay Waymo's patent claims. An

26  arbitration panel's resolution of Waymo's trade secret and UCL claims will not affect the patent

27  claims, and the trade secret claims and UCL claims do not predominate over the patent claims.

28  Whatever an arbitration panel might decide regarding whether the Defendants misappropriated

DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION OF, AND TO STAY, TRADE SECRET AND UCL CLAIMS
Case No. 3:17-cv-00939-WHA                                                                      13

1   Waymo's trade secrets, that decision will have little or no bearing on the patent claims.  For

2   example, resolution of the issue of whether Defendants misappropriated Waymo's trade secrets

3   will not resolve the issue of whether Defendants' LiDAR technology infringes Waymo's patents.

4   Consequently, there is no economy or efficiency to be realized from freezing the patent claims

5   pending resolution of the arbitrable claims.  Thus, although the Court must stay the trade secret

6   and UCL claims if it finds them to be arbitrable, resolution of the remaining claims should

7   proceed in this forum, on course.

8   **V.     CONCLUSION**

9          The broad arbitration provisions in Levandowski's employment contracts require that

10  disputes with anyone arising out of or related to Levandowski's employment must be arbitrated.

11  Given the conduct Waymo alleges Levandowski engaged in while he was a Waymo employee, it

12  is clear that the arbitration provisions, by their terms, reach the trade secret and UCL claims

13  against Defendants.  Waymo should be required to abide by the terms of the contracts it made.

14         Waymo especially should not be allowed to avoid arbitration where it has alleged

15  pervasive collusion between Levandowski and Defendants, and where its claims are connected

16  with, and founded on, Levandowski's alleged misconduct while he was a Waymo employee—

17  conduct that his employment contracts governed.  Waymo certainly shouldn't be allowed to

18  selectively manipulate its claims and dart back-and-forth between forums, to end-run its

19  arbitration obligation.  Defendants ask that this Court, under the terms of the far-reaching

20  arbitration provisions, and under principles of equitable estoppel, compel Waymo to arbitrate its

21  trade secret and UCL claims against Defendants and stay those claims pending the arbitration.

22

23  Dated: March 27, 2017                    MORRISON & FOERSTER LLP

24

25                                          By:  */s/ Arturo J. González*_____
                                                 ARTURO J. GONZÁLEZ

26                                          Attorneys for Defendants
27                                          UBER TECHNOLOGIES, INC.,
                                            OTTOMOTTO LLC, and OTTO TRUCKING LLC

28