# EXHIBIT 75

# EXHIBIT 75

1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
     Charles K. Verhoeven (Bar No. 170151)
2    charlesverhoeven@quinnemanuel.com
     David A. Perlson (Bar No. 209502)
3    davidperlson@quinnemanuel.com
     Melissa Baily (Bar No. 237649)
4    melissabaily@quinnemanuel.com
     John Neukom (Bar No. 275887)
5    johnneukom@quinnemanuel.com
     Jordan Jaffe (Bar No. 254886)
6    jordanjaffe@quinnemanuel.com
   50 California Street, 22nd Floor
7  San Francisco, California 94111-4788
   Telephone:    (415) 875-6600
8  Facsimile:    (415) 875-6700

9  Attorneys for WAYMO LLC

10                    UNITED STATES DISTRICT COURT

11        NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

12  WAYMO LLC,                              CASE NO. 3:17-cv-00939
                    Plaintiff,
13          vs.                             **PLAINTIFF WAYMO LLC'S
    UBER TECHNOLOGIES, INC.;                OPPOSITION TO DEFENDANTS'
14  OTTOMOTTO LLC; OTTO TRUCKING            MOTION TO COMPEL ARBITRATION
    LLC,                                    OF, AND TO STAY, TRADE SECRET
15                  Defendants.             AND UCL CLAIMS**

16
                                           Date:       April 27, 2017
17                                         Time:       8:00 a.m.
                                           Ctrm:       8, 19th Floor
18                                         Judge:      Honorable William H. Alsup
                                           Trial Date: October 2, 2017
19

20

21

22

23

24

25

26

27

28

                                           WAYMO'S OPPOSITION TO MOTION TO COMPEL ARBITRATION

1
2

**TABLE OF CONTENTS**

**Page**

3   INTRODUCTION.................................................................................................................1

4   BACKGROUND...................................................................................................................3

5   I.   WAYMO'S LITIGATION AGAINST UBER ...........................................................3

6        A.   Waymo Asserts Trade Secret And Patent Claims Against Uber Only......................3

7        B.   Uber Moves To Compel Arbitration And Stay Waymo's Trade Secret And
             UCL Claims Against It Before Filing An Arbitration Demand Against
8            Waymo .......................................................................................................................5

9   II.  GOOGLE'S PREVIOUSLY FILED ARBITRATIONS AGAINST MR.
         LEVANDOWSKI INVOLVE DIFFERENT FACTUAL ALLEGATIONS AND
10       DIFFERENT CLAIMS FOR RELIEF...........................................................................6

11  ARGUMENT ........................................................................................................................8

12  I.   UBER LACKS STANDING TO COMPEL ARBITRATION OR STAY
         WAYMO'S TRADE SECRET CLAIMS PURSUANT TO THE FEDERAL
13       ARBITRATION ACT .....................................................................................................8

14       A.   A Nonsignatory To An Arbitration Agreement, Like Uber, May Only
             Invoke Arbitration Under Very Limited Circumstances............................................8
15
         B.   Equitable Estoppel Does Not Apply To Waymo's Trade Secret Claims
16           Against Uber ...............................................................................................................10

17  II.  UBER'S ALTERNATIVE ARGUMENT REGARDING THE SUPPOSEDLY
         BROAD LANGUAGE OF THE LEVANDOWSKI EMPLOYMENT
18       AGREEMENTS IS IRRELEVANT AND MISCASTS THE AGREEMENTS ...............15

19  III. UBER'S REQUEST TO STAY WAYMO'S PRELIMINARY INJUNCTION
         MOTION SHOULD BE DENIED BECAUSE WAYMO CANNOT BE
20       COMPELLED TO ARBITRATE ITS REQUEST FOR PRELIMINARY
         INJUNCTIVE RELIEF ..................................................................................................18
21
22  IV.  OTHER EQUITABLE CONSIDERATIONS STRONGLY FAVOR DENYING
         UBER'S REQUESTED RELIEF....................................................................................20

23  CONCLUSION.....................................................................................................................24

24
25
26
27
28

-i-
WAYMO'S OPPOSITION TO MOTION TO COMPEL ARBITRATION

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

<u>Cases</u>

*AT & T Techs., Inc. v. Commc'ns Workers*,
   475 U.S. 643 (1986) ................................................................................................................8

*Amergence Supply Chain Mgmt. Inc. v. Changhong (Hong Kong) Trading Ltd.*,
   No. CV-15-9976-MWF (AFMx), 2016 WL 8234652 (C.D. Cal. Apr. 21, 2016) ...................11

*Arthur Andersen LLP v. Carlisle*,
   556 U.S. 624 (2009) ................................................................................................................9

*Bank of Am., N.A. v. Immel, No. C 10-02483 CRB*,
   2010 WL 2380877 (N.D. Cal. June 11, 2010) ......................................................................14

*Benasra v. Marciano*,
   92 Cal. App. 4th 987 (2001) ..................................................................................................16

*Blackbird Techs., Inc. v. Joshi*,
   No. 5:15-CV-04272-EJD, 2015 WL 5818067 (N.D. Cal. Oct. 6, 2015) ...............................14

*Britton v. Co-op Banking Grp.*,
   4 F.3d 742 (9th Cir. 1993) .......................................................................................................9

*Burgoon v. Narconon of N. California*,
   125 F. Supp. 3d 974 (N.D. Cal. 2015) ...................................................................................13

*In re Carrier IQ, Inc. Consumer Privacy Litig.*,
   No. C-12-MD-2330 EMC, 2014 WL 1338474 (N.D. Cal. Mar. 28, 2014) .............................15

*Comedy Club, Inc. v. Improv W. Assocs.*,
   553 F.3d 1277 (9th Cir. 2009) .................................................................................................9

*Comer v. Micor, Inc.*,
   436 F.3d 1098 (9th Cir. 2006) ....................................................................................9, 10, 15

*Congdon v. Uber Techs., Inc.*,
   No. 16-CV-02499-YGR, 2016 WL 7157854 (N.D. Cal. Dec. 8, 2016) .................................20

*Craig v. Brown & Root, Inc.*,
   84 Cal. App. 4th 416 (2000) ..................................................................................................16

*Davenport v. Blue Cross of California*,
   52 Cal. App. 4th 435 (1997) ..................................................................................................19

*Engalla v. Permanente Med. Grp., Inc.*,
   15 Cal. 4th 951 (1997) ...........................................................................................................16

*F.D. Imp. & Exp. Corp. v. M/V Reefer Sun*,
   248 F. Supp. 2d 240 (S.D.N.Y. 2002) ....................................................................................18

-ii-

WAYMO'S OPPOSITION TO MOTION TO COMPEL ARBITRATION

*Fitz v. NCR Corp.*,
    118 Cal. App. 84th 702 (2004)...................................................................................19

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
    331 F.3d 1122 (9th Cir. 2003)...................................................................................23

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991).....................................................................................................22

*Goldman v. KPMG LLP*,
    173 Cal. App. 4th 209 (2009).........................................................................10, 13, 15

*Gonsalves v. Infosys Techs., Ltd., No. C 3:09-04112*,
    2010 WL 3118861 (N.D. Cal. Aug. 5, 2010).............................................................17

*Hall v. Internet Capital Grp., Inc.*,
    338 F. Supp. 2d 145 (D. Me. 2004)............................................................................18

*Hawkins v. KPMG LLP*,
    423 F. Supp. 2d 1038 (N.D. Cal. 2006) .....................................................................12

*Hess v. Ford Motor Co.*,
    27 Cal. 4th 516 (2002)...............................................................................................17

*Huong Que, Inc. v. Luu*,
    150 Cal. App. 4th 400 (2007).....................................................................................14

*Jones v. Jacobson*,
    195 Cal. App. 4th 1 (2011).........................................................................................16

*Karo v. San Diego Symphony Orchestra Ass'n*,
    762 F.2d 819 (9th Cir. 1985)......................................................................................15

*Kaselitz v. hiSoft Tech. Int'l, Ltd.*,
    No. C-12-5760 MMC, 2013 WL 622382 (N.D. Cal. Feb. 15, 2013)..........................17

*Klamath Water Users Protective Ass'n v. Patterson*,
    204 F.3d 1206 (9th Cir. 2000)....................................................................................15

*Kramer v. Toyota Motor Corp.*,
    705 F.3d 1122 (9th Cir. 2013)......................................................9, 10, 11, 12, 13, 14, 15

*Mance v. Mercedes-Benz USA*,
    901 F. Supp. 2d 1147 (N.D. Cal. 2012) .....................................................................11

*Miyasaki v. Real Mex Restaurants, Inc.*,
    No. C 05-5331 VRW, 2006 WL 2385229 (N.D. Cal. Aug. 17, 2006).........................22

*Mohamed v. Uber Techs., Inc.*,
    848 F.3d 1201 (9th Cir. 2016)...............................................................................14, 15

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ......................................................................................................20

*Mundi v. Union Sec. Life Ins. Co.*,
    555 F.3d 1042 (9th Cir. 2009) .................................................................................8, 9

*Murphy v. DirecTV, Inc.*,
    724 F.3d 1218 (9th Cir. 2013) ......................................................1, 9, 10, 11, 13, 15

*Nelson v. Anderson*,
    72 Cal. App. 4th 111 (1999) ..........................................................................................15

*Nguyen v. Tran*,
    157 Cal. App. 4th 1032 (2007) .......................................................................................9

*Nitsch v. DreamWorks Animation SKG Inc.*,
    100 F. Supp. 3d 851 (N.D. Cal. 2015) ..........................................................................15

*PMS Distributing Co., Inc. v. Huber & Suhner, A.G.*,
    863 F.2d 639 (9th Cir. 1988) ........................................................................................19

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
    55 Cal. 4th 223 (2012) ..................................................................................................16

*Pulli v. Pony Int'l, LLC*,
    206 Cal. App. 4th 1507 (2012) .....................................................................................17

*Rajagopalan v. NoteWorld, LLC*,
    718 F.3d 844 (9th Cir. 2013) .......................................................................1, 10, 14, 15

*S. Energy Homes, Inc. v. Kennedy*,
    774 So. 2d 540 (Ala. 2000) ...........................................................................................12

*Skyware, Inc. v. Abramson, No. C 11-00545 PSG*,
    2011 WL 2883446 (N.D. Cal. July 18, 2011) ..............................................................17

*Spinks v. Equity Residential Briarwood Apartments*,
    171 Cal. App. 4th 1004 (2009) .....................................................................................15

*Stirlen v. Supercuts, Inc.*,
    51 Cal. App. 4th 1519 (1997) .......................................................................................19

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*,
    130 S. Ct. 1758 (2010) ...............................................................................................1, 12

*In re TFT-LCD (Flat Panel) Antitrust Litig., No. M 07-1827 SI*,
    2011 WL 1753784 (N.D. Cal. May 9, 2011) .................................................................9

*Torbit, Inc. v. Datanyze, Inc.*,
    No. 5:12-CV-05889-EJD, 2013 WL 572613(N.D. Cal. Feb. 13, 2013) .................11, 12

*Toyo Tire Holdings of Americas Inc. v. Continental Tire North Amer., Inc.*,
    609 F.3d 975 (9th Cir. 2010) ........................................................................................19

*U.S. ex rel. McCoy v. California Med. Review, Inc.*,
    133 F.R.D. 143 (N.D. Cal. 1990) ..................................................................................24

Case: 20-03050   Doc# 129-2   Filed: 02/24/21   Entered: 02/24/21 04:14:33   Page 6
of 84

*U.S. v. Romm,*
    455 F.3d 990 (9th Cir. 2006) .................................................................................14, 15

*Victoria v. Superior Court,*
    40 Cal. 3d 734 (1985) ..........................................................................................9, 16, 17

*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,*
    489 U.S. 468 (1989) ......................................................................................................1

*Westlye v. Look Sports, Inc.,*
    17 Cal. App. 4th 1715 (1993) ......................................................................................16

*Wiedenbeck v. United Educ. Inst.,*
    No. SACV1500810CJCJEMX, 2015 WL 12743599 (C.D. Cal. Dec. 15, 2015) ......................17

**<u>Statutes</u>**

Cal. Code Civ. Proc. § 1281.8(a)(3) .................................................................................19

Cal. Code Civ. Proc. § 1281.8(b) .....................................................................................19

Cal. Code Civ. Proc. § 1636 ............................................................................................17

Cal. Code Civ. Proc. § 1648 ............................................................................................17

-v-
WAYMO'S OPPOSITION TO MOTION TO COMPEL ARBITRATION

**<u>INTRODUCTION</u>**

This is a dispute between two technology companies competing in the self-driving car space. On the one side is Plaintiff Waymo LLC, and on the other are Defendants Uber Technologies, Inc., Ottomotto LLC, and Otto Trucking LLC's (together "Uber").  Waymo has brought trade secret misappropriation and unfair competition claims against *Uber*, based on *Uber's* unlawful use of Waymo's trade secrets, and seeks preliminary and permanent relief enjoining *Uber* from further misusing Waymo's trade secrets in *Uber's* in-house, custom built LiDAR system.  In order to prevail on its claims, Waymo will need to prove that *Uber* misappropriated Waymo's trade secrets and that *Uber* unfairly competed against Waymo.  Anthony Levandowski is not a defendant in this case.  Nor is this an employment dispute between Waymo and Mr. Levandowski.  *Uber* is the defendant in this case, and *Uber* is responsible for its own misconduct.

It is black letter law that "arbitration is a matter of consent, not coercion." *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.,* 130 S. Ct. 1758, 1773 (2010) (quoting *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).  Waymo has not consented to arbitrate this dispute with Uber.  And Waymo cannot be coerced into arbitration simply because the trade secrets that *Uber* stole and that *Uber* is using in *Uber's* self-driving cars happen to come from former Waymo employees.  That is not the law.

Instead, only parties to an arbitration agreement may invoke arbitration under the Federal Arbitration Act (FAA), with very limited exceptions.  The only exception that Uber argues applies is the doctrine of equitable estoppel.  But under binding Ninth Circuit precedent, that doctrine applies "only under two very specific conditions" – neither of which is found here. *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013).  Those conditions are so specific and narrowly confined that, as recently as 2013, the Ninth Circuit had "never previously allowed a non-signatory defendant to invoke equitable estoppel against a signatory plaintiff[.]"  *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013).  That remains true to this day.

Uber is attempting to use equitable estoppel as a vehicle to evade the court's jurisdiction, but the equitable estoppel exception does not apply here either.  First, Waymo's claims against Uber are tort claims founded in statutory and common law, rising and falling based on Uber's misconduct; they

WAYMO'S OPPOSITION TO MOTION TO COMPEL ARBITRATION

are not – as required for equitable estoppel to apply – contract-based claims dependent on specific terms in Mr. Levandowski's employment agreements.   Second, Waymo did not name Mr. Levandowski as a defendant in this litigation.   Thus, Waymo does not – as required for equitable estoppel to apply – allege interdependent and concerted misconduct between a signatory and a nonsignatory.   Not only is Mr. Levandowski not a party in this litigation, but even Uber's recently filed arbitration demand does not name Mr. Levandowski as a party.   Moreover, in the previously filed arbitrations brought by Google (not Waymo) against Mr. Levandowski, as Uber admits, Google does not assert any claims related to the misappropriation of Waymo's trade secrets and improper use of Waymo's intellectual property.   Thus, the arbitration panel assigned to these ongoing proceedings will decide no issues related to allegations of trade secret theft or patent infringement.

Uber also argues, against the plain language of the contracts themselves and common sense, that Waymo has promised to arbitrate all disputes "with anyone" related to Mr. Levandowski's Waymo employment – even third party competitors.   Not so.   The plain reading of the agreements is that Waymo agreed to arbitrate its disputes with Mr. Levandowski, and Mr. Levandowski agreed to arbitrate his disputes with Waymo and anyone at Google.   Even if Uber's interpretation of these agreements were correct (which it is not), that would change absolutely nothing about the merits of Uber's motion because Uber still would not be a signatory to the agreements with standing to assert them.   Nor has Uber even tried to show (it could not) that it is a third-party beneficiary such that they would be able to enforce the employment agreements as a nonsignatory.

Finally, Uber argues that the Court should stay Waymo's motion for a preliminary injunction. But that motion, and the May 3 hearing, must proceed no matter how the Court rules on Uber's standing to invoke arbitration.   The arbitration clauses in Mr. Levandowski's employment agreements have specific carve-outs that allow Waymo to pursue provisional injunctive relief in court pursuant to controlling California law and Ninth Circuit authority.[1]

In actuality, Uber's plea to move this case to arbitration is a desperate and baseless attempt to get out of federal court for two reasons.   First, delay – getting the hearing on Waymo's Preliminary

---

[1]  Moreover, Waymo's preliminary injunction includes two of its patent claims, which Uber agrees will not be stayed under any scenario.

Injunction off calendar and the trial on Waymo's trade secret claims postponed.  Second, secrecy – because in court, unlike in arbitration, the public has a right of access.  And Uber does not like what the public is learning through this litigation about Uber's illegal and unfair competition.  Counsel for Uber initially suggested at the March 29 hearing that the secrecy of arbitration could resolve the issues raised by Mr. Levandowski's invocation of the Fifth Amendment and permit him to testify without fear of criminal prosecution.  (Dkt. 131 at 4:9-16, 15:11-16.)  After the Court rejected that argument as "[r]idiculous," counsel for Uber responded, "Well, Your Honor, at least it's not in the public where it's going to be on the front page of the *New York Times* the next day."  (*Id.* at 15:17-22.)

The Court should deny Uber's motion to compel arbitration and to stay Waymo's trade secret claims, and this action should proceed on the merits in federal District Court.

## BACKGROUND

I.   **WAYMO'S LITIGATION AGAINST UBER**

  A.   **Waymo Asserts Trade Secret And Patent Claims Against Uber Only**

Waymo brought its trade secret and patent infringement claims against Uber after it discovered that Uber, who was a late entry in the self-driving car space, had not only improperly acquired Waymo's trade secret information but was actually using Waymo's intellectual property to build a competing LiDAR system for self-driving cars.  As set forth in detail in the Amended Complaint (Dkt. 23), and further in Waymo's Preliminary Injunction Motion (Dkt. 24), Uber's acquisition of Otto in August 2016 for a reported $680 million raised suspicions at Waymo regarding possible misuse of its intellectual property.  (FAC ¶¶ 49-50, 55-57.)  Otto had been founded barely six months earlier by Mr. Levandowski, a former Waymo employee, prior to his resignation from Waymo.  (*Id.*)  Mr. Levandowski became Uber's Vice President of Engineering in charge of Uber's entire self-driving car project.  (*Id.* ¶ 56.)  Media reports at the time suggested that Uber paid over half a billion dollars largely to acquire Otto's six-month-old LiDAR technology.  (Dkt. 25-4 at 9; Dkt. 27-24.)  In contrast, Waymo's LiDAR technology had taken seven years to develop.  (FAC ¶¶ 9, 21-37.)  Adding to Waymo's suspicions were the abrupt resignations of several Waymo employees around this same time period – employees who then joined Uber's self-driving car team.  (*Id.* ¶¶ 51, 53, 57.)  Waymo began to investigate.  (*Id.* ¶ 57.)

1   That investigation, which began in late August 2016, led to the discovery in October of Mr.

2   Levandowski's download of over 14,000 proprietary files from Waymo's highly confidential design

3   server the month before his resignation.  (FAC ¶¶ 43-47, 51-54, 57.)  But Waymo had no evidence

4   that **Uber** had obtained these files or was using the trade secrets they contained in its competing

5   LiDAR systems.  That came in mid-December 2016, when Waymo received an email from one of its

6   components suppliers, subject "OTTO FILES," attaching a machine drawing of a purported Uber

7   printed circuit board.  (*Id.* ¶¶ 58-59.)  This drawing was evidence that Uber had access to Waymo's

8   trade secret LiDAR designs, at which point Waymo endeavored to confirm whether Uber was using

9   custom LIDAR in its self-driving cars.  (*Id.* ¶¶ 59-60.)  At this time, Uber was still refusing to

10  publicly identify its LiDAR supplier.  (*Id.* ¶ 60.)  On February 9, 2017, Waymo obtained the second –

11  and conclusive – piece of hard evidence, this time in response to a public records request to the

12  Nevada Governor's Office of Economic Development and Department of Motor Vehicles.  (*Id.* ¶¶

13  60-61.)  This evidence confirmed that, as of September 2016, Uber was telling Nevada regulators that

14  it had already "developed in house and/or currently deployed" an "[i]n-house custom built 64-laser"

15  LiDAR system.  (*Id.*)  Now that Waymo finally had proof that Uber had improperly acquired and was

16  actually *using* Waymo's trade secrets in its self-driving cars, Waymo brought suit in federal district

17  court two weeks later.

18  Specifically, Waymo asserted causes of action for trade secret misappropriation (under the

19  Federal Defend Trade Secrets Act and California Uniform Trade Secrets Act) and unfair competition

20  (under California Business and Professions Code § 17200).  Waymo's trade secret misappropriation

21  claims alleged that Uber had acquired Waymo's trade secret information, that Uber had knowledge of

22  or reason to know that the trade secrets were acquired by improper means or in an unlawful manner,

23  and that Uber was using the trade secrets without Waymo's consent and to Uber's benefit.  (FAC ¶¶

24  73-76, 82-85.)  Waymo's unfair competition claims alleged that Uber acquired and that Uber had used

25  Waymo's confidential and proprietary trade secret information through material misrepresentations

26  and omissions.  (FAC ¶ 146.)  Waymo also brought patent infringement claims against Uber on four

27  Waymo patents directed to LiDAR systems and self-driving car technology.  (*Id.* ¶¶ 89-142.)

28

WAYMO'S OPPOSITION TO MOTION TO COMPEL ARBITRATION

Just over two weeks after filing its Complaint against Uber, Waymo moved for a preliminary injunction to enjoin Uber and any of its employees (or executives) from using or disclosing Waymo's trade secrets. (Dkt. 24.) Waymo further sought to enjoin Uber from infringing two of its patents. In the motion, Waymo also requested that Uber be compelled to return any and all Waymo confidential information in its possession or control, including the 14,000+ documents unlawfully taken from Waymo by Uber's current Vice President of Engineering, Mr. Levandowski. To this day, Uber has failed to return Waymo's confidential information.

### B. Uber Moves To Compel Arbitration And Stay Waymo's Trade Secret And UCL Claims Against It Before Filing An Arbitration Demand Against Waymo

On March 15, 2017, one day before the Court's Case Management Conference on Waymo's Motion for Preliminary Injunction, Uber notified Waymo for the first time of its position that Waymo's claims against Uber were subject to the arbitration provisions in employment agreements between Mr. Levandowski and Google ("Levandowski Employment Agreements"). (Declaration of David A. Perlson ("Perlson Decl.") ¶ 2.) At the March 16 hearing, counsel for Uber indicated that Uber would file a motion to compel arbitration "within two weeks" and that the motion would be "set for hearing on regular notice." (Dkt. 63 at 12:15-17, 14:23-24.) The Court encouraged Uber's counsel to consider filing the motion sooner than two weeks, particularly if Uber wished to have its motion heard before the preliminary injunction hearing. (*Id.* at 15:11-14.) On March 27, almost two weeks later, Uber filed the Motion to Compel Arbitration and to Stay Waymo's Trade Secret and UCL Claims. (Dkt. 115.) Uber did not actually file and serve a demand for arbitration ("Uber Arbitration") until March 31. (Ex. A; *see also* Exs. B-C.)[2]

The Uber Arbitration includes two claims seeking declaratory relief that the trade secret misappropriation and UCL claims are subject to mandatory arbitration, and that those same claims "are without merit." (Ex. C ¶¶ 20-25.) Uber asserts a theory of equitable estoppel in arguing why it is entitled to file the Arbitration Demand as a non-signatory to the underlying Levandowski Employment Agreements. (Ex. C ¶ 7.) Uber does not claim that it is a party or third party beneficiary to the

---

[2]   Exhibits A-F referenced herein correspond to the Exhibits attached to the Perlson Declaration.

1   Levandowski Employment Agreements, and asserts no other basis for its right to invoke the

2   Levandowski Employment Agreements' arbitration provisions against Waymo.

3       Like in this lawsuit, Mr. Levandowski is not a party to the Uber Arbitration.  (Perlson Decl. ¶

4   9; Exs. B-C.)  However, despite Uber's repeated representations to the Court that it does not have

5   control over Mr. Levandowski's personal files and thus cannot produce them in this action, Uber was

6   able to obtain from Mr. Levandowski an executed version of his 2012 Employment Agreement and

7   included it in the arbitration demand.  (*See* Ex. D.)

8   **II.   GOOGLE'S PREVIOUSLY FILED ARBITRATIONS AGAINST MR.
         LEVANDOWSKI INVOLVE DIFFERENT FACTUAL ALLEGATIONS AND
9        DIFFERENT CLAIMS FOR RELIEF**

10      Before obtaining the December 2016 email and February 2017 public-records request, Google

11  instituted arbitration proceedings against Mr. Levandowski on October 28, 2016 by filing two separate

12  arbitration demands (the "Levandowski Arbitrations").  (Dkts. 114-7, 114-8.)  Neither Waymo nor

13  Uber are parties to these proceedings.[3]  The Levandowski Arbitrations are "closely related" to each

14  other but were brought separately "[o]ut of an abundance of caution" in order to respect

15  confidentiality clauses between Mr. Levandowski and Google in the second arbitration's subject

16  agreements. (Dkt. 114-8 at 9-10.)  In the Levandowski Arbitrations, Google is represented by counsel

17  from Keker, Van Nest & Peters LLP and Mr. Levandowski is personally represented by Uber's

18  counsel, Morrison & Foerster (including Arturo Gonzalez and Eric Tate, who have appeared in this

19  matter).   And aside from Uber's allegations in its recently filed Uber Arbitration that Mr.

20  Levandowski was a party to employment agreements with Google (Ex. C ¶¶ 8-9), and that Mr.

21  Levandowski left Google to found Otto (*id.* ¶¶ 11-12), there is no factual overlap between Uber's

22  recently asserted arbitration demand and the Levandowski Arbitrations.  (*Compare id.* ¶ 16, *with id.*

23  ¶18.)

24      Google's first arbitration asserts a Breach of Contract claim against Mr. Levandowski and

25  another co-founder of Otto for breaches of the non-solicitation, non-competition, and confidentiality

26  _____

27  [3] Among other reasons, at the time Google instituted the Levandowski Arbitrations, Waymo did not
    exist as a standalone company.  Waymo spun off as a separate Alphabet Inc. subsidiary in December
28  2016.  (Dkt. 27-5.)

                                           6                    WAYMO'S OPPOSITION TO MOTION TO COMPEL ARBITRATION

provisions included in each individual's respective employment agreements, as well as non-contract claims for Breach of Fiduciary Duties and Duties of Loyalty, Fraud-Deceit, Tortious Interference with Contract and with Prospective Economic Advantage, Unlawful Conduct and Unfair Competition, and Unjust Enrichment.  (Dkt. 114-7 at 18-28.)  In the second arbitration, Google asserts Breach of Contract claims against Mr. Levandowski for breaches of non-solicitation and non-competition provisions in two contracts signed in 2011 in connection with Google's purchase of two companies founded by Mr. Levandowski – Anthony's Robots, LLC and 510 Systems, LLC.  (Dkt. 114-8 at 10, 17-19.)  Google is not asserting any trade secret misappropriation claims in the Levandowski Arbitrations.

The same basic allegations are at issue in both Levandowski Arbitrations.  In sum, Google asserts that, **while** Mr. Levandowski was a Google employee, Mr. Levandowski improperly solicited Google employees and consultants to join another company, and violated his duties and obligations to Google by creating, or participating in, other, unauthorized companies during his Google employment.  (*See* Dkt. 114-7 at 9-17, 114-8 at 9-16.)  Specifically, Google alleges that Mr. Levandowski breached his obligations and duties to Google by building a company (Otto) that would ultimately compete with Google's self driving car project, and by secretly developing at least two other competing companies (Odin Wave, LLC and Tyto Lidar LLC).  (*See id.*)  Google also alleges that Mr. Levandowski embarked on a campaign to target and recruit valuable Google employees by soliciting them and inducing them to leave Google and join his competing venture, Otto, in part by using Google's confidential salary and compensation information to make targeted and individualized job offers.  (*See id.*)

These allegations concerning Mr. Levandowski's improper solicitation of employees are the only claims Google asserts in the Levandowski Arbitrations that are related at all to Google's confidential (but not trade secret) information.  Because there are no allegations concerning trade secrets being asserted by Google in the Levandowski Arbitrations, the arbitration panel will not decide any issues related to the trade secret misappropriation claims that Waymo is asserting against Uber.  (Declaration of Rachel Meny ("Meny Decl.") ¶¶ 4-5, 7.)  Indeed, as Uber admits in its Motion, Google "makes no claims of trade secret misappropriation" in the Levandowski Arbitrations.  (Mot. at 6, 9;

WAYMO'S OPPOSITION TO MOTION TO COMPEL ARBITRATION

1   *see also* Dkt. 131 at 29:11-30:1 ("[T]hey don't allege trade secrets [in the prior arbitrations]. They

2   allege other things against them.").)

3          After filing, the Levandowski Arbitrations were functionally consolidated before the same

4   three-arbitrator panel.  Despite the October 2016 initiation of arbitration, the first case management

5   conference was not conducted until March 10, 2017.  No formal discovery can start yet, and the merits

6   hearing is set to begin on April 30, 2018.  Counsel from Morrison & Foerster did not disclose the

7   present motion to compel arbitration to Keker, Van Nest and Peters or the arbitration panel until the

8   afternoon of April 3, 2017.  (Meny Decl. ¶¶ 8-11.)  The panel did not take any position regarding

9   Uber's motion to compel arbitration during the April 3 case management conference.[4]  (*Id.* ¶ 11.)

10  Although Mr. Levandowski's arbitration counsel (including Arturo Gonzalez and Eric Tate at

11  Morrison) had previously agreed to collect and produce Mr. Levandowski's initial disclosure

12  documents by April 10, his counsel abruptly announced at the April 3 arbitration conference that Mr.

13  Levandowski may not testify or produce documents in the Levandowski Arbitrations.  (*Id.* ¶¶ 6, 12.)

14  Mr. Gonzales informed Google today (April 10) that Mr. Lewandowski would not produce documents

15  in the arbitration, and the parties will subsequently brief and argue issues related to the Fifth

16  Amendment privilege against self-incrimination.  (*Id.* ¶ 12.)

17  **ARGUMENT**

18  **I.   UBER LACKS STANDING TO COMPEL ARBITRATION OR STAY WAYMO'S TRADE SECRET CLAIMS PURSUANT TO THE FEDERAL ARBITRATION ACT**

19

20      **A.   A Nonsignatory To An Arbitration Agreement, Like Uber, May Only Invoke Arbitration Under Very Limited Circumstances**

21         "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any

22  dispute which he has not agreed so to submit."  *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042,

23  1045 (9th Cir. 2009) (quoting *AT & T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 648 (1986)).

24  "[T]he policy favoring arbitration cannot displace the necessity for a voluntary agreement to

25

26  ---
    [4] On March 31, Uber emailed Waymo offering to stipulate that the same panel in the Levandowski
27  Arbitrations hear the Uber Arbitration, and that the hearing in the Uber Arbitration take place after the
    scheduled date of the jury trial in this action.  (Perlson Dec., Ex. F.)  Waymo responded on April 4
28  that it opposed Uber's attempt to compel arbitration and did not agree to the stipulation, which
    Waymo did not believe to be practicable in any event.  (*Id.*)

arbitrate." *Id.* (quoting *Victoria v. Superior Court*, 40 Cal. 3d 734, 739 (1985) (en banc)). "Generally, the contractual right to compel arbitration may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) (internal quotation marks omitted). Contrary to the suggestion in Uber's Motion (Mot. at 6), "[t]he strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009); *see also Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006) (when the question is "whether a particular party is bound by the arbitration agreement" then "the liberal federal policy regarding the scope of arbitrable issues is inapposite.").

Uber is not a signatory to either of the Levandowski Employment Agreements. Therefore, Uber may only invoke arbitration under sections 3 and 4 of the Federal Arbitration Act ("FAA"), as it is trying to do here, when "the relevant state contract law allows the litigant to enforce the agreement." *Kramer*, 705 F.3d at 1128 (citing *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 632 (2009)). Here, Uber agrees that California law applies to the Levandowski Employment Agreements. (*See* Mot. at 7; Ex. D ¶¶ 14(a), 14(f), 15(a); Ex. E ¶¶ 15(b), 16(a).)

Under California law, there are "limited exceptions" to the rule that "only parties to an arbitration contract may enforce it or be required to arbitrate." *Nguyen v. Tran*, 157 Cal. App. 4th 1032, 1036 (2007). As a nonsignatory seeking to enforce the arbitration provisions of the Levandowski Employment Agreements, Uber "bears the burden of proving that" one of California state law's exceptions applies. *Murphy*, 724 F.3d at 1233-34. "As courts recognize, there is a black letter rule that the obligation to arbitrate depends on consent," and therefore "a nonsignatory defendant faces a heavy burden to show that the signatory plaintiff intended to submit to arbitration[.]" *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 1753784, at *5 (N.D. Cal. May 9, 2011). A nonsignatory to an arbitration agreement who fails to meet its heavy burden of proving one of the state law exceptions applies lacks standing to compel arbitration under the FAA. *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 748 (9th Cir. 1993) (affirming district court ruling that nonsignatory, who failed to show that any state law exceptions applied, "lacked standing to enforce the arbitration

1   clause" and accordingly "affirm[ing] the district court's order denying [the nonsignatory's] motion to

2   compel arbitration").

3        The limited exceptions are theories of incorporation by reference, assumption, agency, veil-

4   piercing or alter-ego, equitable estoppel, and third party beneficiary.  *Comer*, 436 F.3d at 1101; *see*

5   *also Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 219-20 (2009).  Here, Uber has only advanced a

6   single theory under which it, as a nonsignatory, can enforce the Levandowski Employment

7   Agreements – equitable estoppel.  (Mot. at 2-3.)  As explained below, equitable estoppel does not

8   apply to Waymo's trade secret claims against Uber.

9   **B.     Equitable Estoppel Does Not Apply To Waymo's Trade Secret Claims Against**

10          **Uber**

11          "Equitable estoppel precludes a party from claiming the benefits of a contract while

12  simultaneously attempting to avoid the burdens that contract imposes."  *Kramer*, 705 F.3d at 1128.

13  Under California law, equitable estoppel is "narrowly confined" to "two very specific conditions":

14  "(1) when a signatory must rely on the terms of the written agreement in asserting its claims against

15  the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract

16  and (2) when the signatory alleges substantially interdependent and concerted misconduct by the

17  nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or

18  intimately connected with the obligations of the underlying agreement."  *Murphy*, 724 F.3d at 1229

19  (citations omitted).  As set forth below, these narrowly confined conditions are absent here because

20  Mr. Levandowski – the signatory – is not a party and because the asserted claims are not based on any

21  agreement with Mr. Levandowski.  Indeed, the equitable estoppel exception is so narrowly confined

22  that Uber cites no cases, and Waymo is not aware of any, in which the Ninth Circuit has ever affirmed

23  a finding that a nonsignatory defendant can compel arbitration against a signatory on the theory of

24  equitable estoppel.  *See*, *e.g.*, *Rajagopalan*, 718 F.3d at 847 ("We have never previously allowed a

25  non-signatory defendant to invoke equitable estoppel against a signatory plaintiff, and we decline to

26  expand the doctrine here.").

27          Uber argues that equitable estoppel applies based on the second of the Ninth Circuit's "two

28  very specific conditions" – *i.e.*, because "Waymo alleges substantially interdependent and concerted

Waymo's Opposition to Motion to Compel arbitration

misconduct between Levandowski and Defendants that is intimately connected with the obligations in Levandowski's underlying contracts."  (Mot. at 7.)  This second, "concerted misconduct" form of equitable estoppel narrowly applies "in certain cases where a signatory to an arbitration agreement attempts to evade arbitration by suing nonsignatory defendants for claims that are based on the same facts and are inherently inseparable from **arbitrable claims** against **signatory defendants**." *Murphy*, 724 F.3d at 1231 (emphasis added, internal quotation marks omitted).  Here, there are no "signatory defendants" – Waymo has not brought any trade secret claims against Mr. Levandowski – so this form of equitable estoppel cannot apply as a matter of law.  *Amergence Supply Chain Mgmt. Inc. v. Changhong (Hong Kong) Trading Ltd.*, No. CV-15-9976-MWF (AFMx), 2016 WL 8234652, at *6 (C.D. Cal. Apr. 21, 2016) ("Because Plaintiff brings no claims against signatories to the NDA, the second circumstance does not apply.") (citing *Kramer*, 705 F.3d at 1128); *Mance v. Mercedes-Benz USA*, 901 F. Supp. 2d 1147, 1157 (N.D. Cal. 2012), *abrogated on other grounds by Kramer*, 705 F.3d 1122[5] ("Because Mr. Mance does not bring any claims against Dealer – and so there are no claims against a nonsignatory that are 'inherently bound up' with claims against a signatory – only the first theory of equitable estoppel applies.")).  Indeed, Uber does not cite a single case where the "concerted misconduct" form of equitable estoppel applies in this Circuit where, as here, the plaintiff has asserted no claims against a signatory.

The only case cited by Uber from this Circuit in which a court actually granted a nonsignatory's motion to compel arbitration, *Torbit, Inc. v. Datanyze, Inc.*, is distinguishable on multiple levels.  No. 5:12-CV-05889-EJD, 2013 WL 572613, at *4 (N.D. Cal. Feb. 13, 2013).  First, it did not even address, let alone apply, the "concerted misconduct" equitable estoppel theory that Uber asserts here.  *Id.* (applying a now abrogated version of the "reliance" standard).[6]  Second, in *Torbit* the

---

[5]   *See, e.g.*, *Amergence Supply Chain Mgmt*, 2016 WL 8234652, at *9 ("Finally, the district court's holding in *Mance v. Mercedes-Benz USA* is no longer good law in light of the Ninth Circuit's decisions in *Mundi* and *Kramer*.").

[6]   *Torbit* issued just fourteen days after the Ninth Circuit's opinion in *Kramer*, and therefore the parties in that case were unable to brief the district court on the now-controlling standards for equitable estoppel.  *Kramer* and subsequent Ninth Circuit cases applying its standard for the "reliance" form of equitable estoppel abrogate *Torbit's* holding that a nonsignatory has standing to compel arbitration so long as the plaintiff's claims "touch matters" covered by an arbitration

WAYMO'S OPPOSITION TO MOTION TO COMPEL ARBITRATION

plaintiff asserted claims against a signatory to the arbitration agreement (Ilya Semin) – claims that were identical to those brought against the nonsignatory (Datanyze). *Id.* at *2. But here, Mr. Levandowski is not a defendant in this case. So the public policy concerns traditionally underpinning the "concerted misconduct" form of equitable estoppel are entirely absent. The "second [i.e., concerted misconduct] form of equitable estoppel" is concerned with preventing "arbitration proceedings **between the two signatories**" from being "rendered meaningless" by "denying the **signatory** the benefit of the arbitration clause, and in order to **avoid duplicative litigation** which undermines the efficiency of litigation." *Hawkins v. KPMG LLP*, 423 F. Supp. 2d 1038, 1050 (N.D. Cal. 2006) (emphasis added, internal quotation marks and citation omitted). And even Uber – the party seeking to compel arbitration – has not named Mr. Levandowski as a party to the Uber Arbitration. *Cf. S. Energy Homes, Inc. v. Kennedy*, 774 So. 2d 540, 545 (Ala. 2000) ("The concept of 'intertwining' necessarily presupposes that the signatory to the arbitration agreement is or will be engaged in an arbitration proceeding with the plaintiff. . . . In other words, 'intertwining' requires at least two threads to weave together – one cannot intertwine a single thread. Under the circumstances presented by this case, requiring [nonsignatory defendant] to litigate [plaintiffs'] claims against it cannot render arbitration proceedings meaningless, nor can it thwart federal policy in favor of arbitration.").

Although Uber does not cite any relevant authority, it appears to be aware that its equitable estoppel theory cannot apply without a signatory defendant, and therefore devotes an entire section of its brief to arguing – this time without any citations to authority at all – that Waymo should not be allowed to use "artful pleading" to avoid a supposed "arbitration obligation." (Mot. at 9.) Uber has it backwards. Arbitration "is a matter of consent, not coercion." *Stolt-Nielsen S. A.,* 130 S. Ct. at 1773. As Uber's own cited authority holds, "no principle of law – **and certainly not the doctrine of**

---

agreement. *Compare Torbit*, 2013 WL 572613, at *4 ("Thus, to have standing to compel arbitration on this claim, Datayanze [sic] must show proof that at least one of these elements is 'intertwined' with or 'relates to directly to' Mr. Semin's employment agreement. . . . As discussed in the previous section, Mr. Semin's alleged violations of the CFAA and trespass to chattels 'touch matters' covered by the arbitration clause in the Agreement, . . . and thus are 'intertwined with the contract providing for arbitration.'") (citations omitted), *with Kramer*, 705 F.3d at 1131 ("Looking to California contract law, the correct analysis is whether Plaintiffs would have a *claim* independent of the existence of the Purchase Agreement.") (emphasis in original).

**equitable estoppel** – allows us to decide that a plaintiff who did not agree to arbitrate with a defendant must do so simply because he alleges a conspiracy, and without regard to whether his conduct renders assertion of his right to a judicial forum contrary to equity." *Goldman*, 173 Cal. App. 4th at 233 (finding further that while "federal policy favors arbitration, that policy simply does not apply to parties who have not agreed to arbitrate") (emphasis added, internal quotations and citations omitted).[7]

Further, Uber's "concerted misconduct" theory must fail for a second, independent reason. This form of equitable estoppel only applies "when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are **founded in or intimately connected with the obligations of the underlying agreement**." *Murphy*, 724 F.3d at 1229 (citing *Kramer*, 705 F.3d at 1128-29) (emphasis added).   Waymo's trade secret claims against Uber, however, are not intimately founded in or intertwined with the obligations of the Levandowski Employment Agreements.  "The *sine qua non* for allowing a nonsignatory to enforce an arbitration clause based on equitable estoppel is that the claims the plaintiff asserts against the nonsignatory are dependent on or inextricably bound up with the contractual obligations of the agreement containing the arbitration clause." *Murphy*, 724 F.3d at 1231 (quoting *Goldman*, 173 Cal. App. 4th at 213-14).   But Waymo's trade secret claims are not "dependent on" or "inextricably bound up with" the contractual obligations of the Levandowski Employment Agreements.  Rather, Waymo's claims are based in tort and seek to enforce statutory rights that exist independently of any obligations in the agreements.

Specifically, Waymo seeks to enforce statutory rights under California's Uniform Trade Secret Act, the federal Defend Trade Secrets Act, and California's Unfair Competition Law.  These claims "ar[i]se independently of the terms of the agreements containing arbitration provisions." *Kramer*, 705 F.3d at 1132.  Mr. Levandowski owed Waymo a duty of confidentiality as a matter of California law,

---

[7]   Courts have correctly rejected similar arguments from nonsignatory defendants seeking to compel arbitration. *See*, *e.g.*, *Burgoon v. Narconon of N. California*, 125 F. Supp. 3d 974, 985, 991-93 (N.D. Cal. 2015) (permitting plaintiffs to amend their complaint to drop a breach of contract claim and acknowledging that "[t]o the extent Defendants argue that Plaintiffs are simply amending in order to avoid arbitration, that may be true," but nevertheless denying nonsignatory's motion to compel arbitration under an equitable estoppel theory).

independent of the specific terms of his employment agreements.  *See*, *e.g.*, *Blackbird Techs., Inc. v. Joshi*, No. 5:15-CV-04272-EJD, 2015 WL 5818067, at *4 (N.D. Cal. Oct. 6, 2015) (under California law, an employee owes a duty of loyalty to his or her employer, and "may not use the employer's property or confidential information for the employee's 'own purposes or those of a third party'") (quoting *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 416 (2007)).[8]  In bringing statutory trade secret claims against Uber, therefore, Waymo is not "seek[ing] to enforce or challenge the terms, duties, or obligations of the [Levandowski Employment Agreements]."  *Kramer*, 705 F.3d at 1132.  "Here, the claims against [Uber] arise under [a statute] and not out of obligations imposed by the [Levandowski Employment Agreements].  Therefore, the rule that an arbitration agreement can be enforced by a non-signatory when the allegations against the non-signatory are intimately founded in and intertwined with underlying contract obligations does not apply."  *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1215-16 (9th Cir. 2016); *see also Rajagopalan*, 718 F.3d at 847-48 (nonsignatory "may not compel [plaintiff] to arbitrate his claims on the basis of equitable estoppel" where plaintiff's RICO and Washington state law claims were "statutory claims that are separate from the contract itself").  "Again, we are returned to the fundamental point: [Waymo is] not relying in any way on the [Levandowski Arbitration Agreements] to make their claims against [Uber], while at the same [time] avoiding the arbitration clauses of those agreements – and, at bottom, that is the only basis upon which they may be equitably estopped from refusing to arbitrate when they have not agreed to do so."  *Goldman*, 173 Cal. App. 4th at 233 (affirming denial of a motion to compel arbitration under an analysis of the second form of equitable estoppel).[9]

---

[8]  *See also Bank of Am., N.A. v. Immel*, No. C 10-02483 CRB, 2010 WL 2380877, at *3 (N.D. Cal. June 11, 2010) ("Defendants also likely had a duty under California law not to use or disclose U.S. Trust's confidential information.") (citing *Huong Que*, 150 Cal. App. 4th at 416).  The confidentiality duties owed by Waymo employees to Waymo are further reinforced by training and documents provided to employees, such as Google's Code of Conduct, available at http://abc.xyz/investor/other/google-code-of-conduct.html.

[9]  As noted above, Uber does not even attempt to argue that the first, "reliance" form of equitable estoppel applies here.  (*See generally* Mot. at 6-9).  Because it was not raised in Uber's Motion, this theory has been waived.  *U.S. v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006) ("[A]rguments not raised by a party in its opening brief are deemed waived.").  In any event, this form of equitable estoppel cannot apply.  Just as Waymo's trade secret claims against Uber are not "dependent on or intertwined with" the Levandowski Employment Agreements, Waymo's claims do not "rely on," and are not

1

## II.   UBER'S ALTERNATIVE ARGUMENT REGARDING THE SUPPOSEDLY BROAD LANGUAGE OF THE LEVANDOWSKI EMPLOYMENT AGREEMENTS IS IRRELEVANT AND MISCASTS THE AGREEMENTS

2

3    Uber raises an alternative argument – that the arbitration provisions are so broad that even

4    though Uber is not a signatory to the Levandowski Employment Agreements, Uber can still somehow

5    enforce these Agreements as if it were.  (Mot. at 10-12.)  But Uber cites no legal basis for this.

6    Indeed, as noted above, no matter how broad a contract or its arbitration clause, California law allows

7    non-signatories to enforce an arbitration provision in only the limited exceptions noted above –

8    incorporation by reference, assumption, agency, veil-piercing or alter-ego, equitable estoppel, and

9    third party beneficiary.  *Comer*, 436 F.3d at 1101.  But Uber has only asserted that equitable estoppel

10   applies, which has no merit as discussed above.  And Uber has not even tried to argue it is a third-

11   party beneficiary to the Levandowski Employment Agreements.  So no matter how broadly Uber

12   seeks to interpret the Levandowski Employment Agreements to which it is not a party, it has no basis

13   to seek their benefit.[10]  *Nelson v. Anderson*, 72 Cal. App. 4th 111, 129-30 (1999), *as modified on*

14   _____

15   "intimately founded in or intertwined with" the Levandowski Employment Agreements.  *See Goldman*, 173 Cal. App. 4th at 231 ("[T]he central core of the standard" is that "the plaintiff's allegations must rely on or depend on the terms of the written agreement[,] . . . not simply on the fact that an agreement exists. . . .  While the document at issue may play a role in the ultimate outcome of this suit, it is not a part of Plaintiffs' causes of action" and therefore "Plaintiffs are not trying to 'have it both ways' by seeking to hold the nonsignatory liable pursuant to duties imposed by the agreement, but at the same time denying applicability of the agreement's arbitration clause[.]") (internal quotation marks and citations omitted); s*ee also Kramer*, 705 F.3d at 1129-32; *Murphy*, 724 F.3d at 1230-31; *Mohamed*, 848 F.3d at 1215-16; *Rajagopalan*, 718 F.3d at 847; *Nitsch v. DreamWorks Animation SKG Inc.*, 100 F. Supp. 3d 851, 866 (N.D. Cal. 2015); *In re Carrier IQ, Inc. Consumer Privacy Litig.*, No. C-12-MD-2330 EMC, 2014 WL 1338474, at *9 (N.D. Cal. Mar. 28, 2014).

20

21   [10]   Uber should not be permitted to argue it is a third party beneficiary in its reply having not raised it in its Motion.  *Romm*, 455 F.3d at 997.  Nor could it.  "A third party qualifies as a beneficiary under a contract if the parties intended to benefit the third party and the terms of the contract make that intent evident." *Karo v. San Diego Symphony Orchestra Ass'n,* 762 F.2d 819, 821–22 (9th Cir. 1985); *see also  Klamath Water Users Protective Ass'n v. Patterson,* 204 F.3d 1206, 1211 (9th Cir. 2000) ("[T]he third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party.").  Although a third party need not be expressly named or identified in a contract, a party must demonstrate "that [it] is a member of a class of persons for whose benefit it was made."  *Spinks v. Equity Residential Briarwood Apartments,* 171 Cal. App. 4th 1004, 1023 (2009) (internal quotation marks and citations omitted).  Here, the language of the arbitration agreements make clear who are the intended beneficiaries of the Levandowski Employment Agreements – Mr. Levandowski and Google (including any Google employee, officer, director, shareholder or benefit plan) – and there is no language in the agreement which provides that future employers, or any company or individual not expressly identified in the Agreements, are intended to be beneficiaries of the Agreements.  The idea that Waymo would intend that its employment contracts be for the benefit of competitors who steal its trade secrets is risible.

1   *denial of reh'g* (June 14, 1999); *Westlye v. Look Sports, Inc.*, 17 Cal. App. 4th 1715, 1728 (1993)

2   (finding contract inapplicable to nonsignatory defendant that "failed to make any legal argument in the

3   trial court or on appeal that would entitle them to invoke the contract"); *Jones v. Jacobson*, 195 Cal.

4   App. 4th 1, 15, (2011), *as modified* (June 1, 2011) ("[T]he nonsignatory bears the burden to establish

5   [it] is a **party** to the arbitration agreement/provision covering the dispute."). Rather, "[i]n California,

6   '[g]eneral principles of contract law determine whether the parties have entered a binding agreement

7   to arbitrate.'" *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236

8   (2012) (quoting *Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 420 (2000)); *Engalla v.

9   Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 972–973 (1997). And "the policy favoring arbitration

10  cannot displace the necessity for a voluntary *agreement* to arbitrate." *Victoria*, 40 Cal. 3d at 739

11  (emphasis added); *see also Benasra v. Marciano*, 92 Cal. App. 4th 987, 990 (2001) ("[A] party cannot

12  be compelled to arbitrate a dispute that [it] has not agreed to resolve by arbitration.").

13       Moreover, while irrelevant given that it has established no rights under the Levandowski

14  Employment Agreements at all, Uber's interpretation of the arbitration provisions is also incorrect.

15  The Levandowski Employment Agreements require that Mr. Levandowski agree to arbitrate disputes

16  "with anyone" at Google (i.e. against Google or individuals or entities within Google).[11]

> **I AGREE THAT** ANY AND ALL CONTROVERSIES, CLAIMS, OR **DISPUTES**
> **WITH ANYONE (INCLUDING THE COMPANY AND ANY EMPLOYEE,**
> **OFFICER, DIRECTOR, SHAREHOLDER OR BENEFIT PLAN OF THE**
> **COMPANY IN THEIR CAPACITY AS SUCH OR OTHERWISE)**, WHETHER
> BROUGHT ON AN INDIVIDUAL, GROUP, OR CLASS BASIS, ARISING OUT
> OF OR RELATING TO, OR RESULTING FROM MY EMPLOYMENT WITH THE
> COMPANY OR THE TERMINATION OF MY EMPLOYMENT WITH THE
> COMPANY **SHALL BE SUBJECT TO BINDING ARBITRATION**[.][12]

22       After setting out the metes and bounds of Levandowski's agreement to arbitrate his claims, the

23  agreement then sets forth Mr. Levandowski's understanding that Google also agrees to arbitrate any

24  claims for disputes with Mr. Levandowski.

---

11   The quoted language is from the Arbitration and Equitable Relief sections of the Levandowski
Employment Agreements. (Ex. D ¶ 14, Ex. E ¶ 15 (emphasis added).)

12   The arbitration provisions in the Levandowski Employment Agreements also provide a non-
exhaustive list of the disputes in which Mr. Levandowski agrees to arbitrate: "DISPUTES WHICH **I**
**AGREE TO ARBITRATE**, AND THEREBY AGREE TO WAIVE ANY RIGHT TO A TRIAL BY
JURY, INCLUDE . . . ." (Ex. D ¶ 14, Ex. E ¶ 15 (emphasis added).)

1      I FURTHER UNDERSTAND THAT THIS AGREEMENT TO ARBITRATE ALSO
     APPLIES TO **ANY DISPUTES THAT THE COMPANY MAY HAVE WITH**
2      **ME.**

3      The plain reading of the agreements shows Google's agreement to arbitrate its disputes with

4 Mr. Levandowski, and Mr. Levandowski's agreements to arbitrate his disputes with Google and

5 anyone at Google. *Kaselitz v. hiSoft Tech. Int'l, Ltd.*, No. C-12-5760 MMC, 2013 WL 622382, at *4,

6 6–7 (N.D. Cal. Feb. 15, 2013) (construing a similar arbitration provision in an employment agreement

7 to include an affiliated parent company of the employer as a party to the agreement, and permitting the

8 parent company to enforce the arbitration provisions).

9      Nevertheless, Uber incorrectly argues that Google broadened its agreements to arbitrate its

10 disputes with an employee, such that Google's claims against a competitor are subject to arbitration.

11 (Mot. at 11-12.) Uber's argument ignores governing California law, which states that "[h]owever

12 broad may be the terms of a contract, it extends only to those things concerning which it appears that

13 the parties **intended** to contract." *Victoria*, 40 Cal. 3d at 739 (quoting Cal. Civ. Code § 1648)

14 (emphasis added); *see also* Cal. Civ. Code § 1636. No language exists in the arbitration provisions, or

15 anywhere else in the Levandowski Employment Agreements, that would evince an intent by Google to

16 arbitrate its disputes against any nonsignatory to the contract, let alone a competitor, as Uber now

17 asserts. *Wiedenbeck v. United Educ. Inst.*, No. SACV1500810CJCJEMX, 2015 WL 12743599, at *3

18 (C.D. Cal. Dec. 15, 2015) (finding that an agreement did not mention the nonsignatory or give any

19 other indication that the nonsignatory was intended to be a party to the agreement); *see also Hess v.*

20 *Ford Motor Co.*, 27 Cal. 4th 516, 524 (2002) ("A putative third party's rights under a contract are

21 predicated upon the contracting parties' intent to benefit it.") (internal quotation and citation omitted).

22      Indeed, Uber does not provide a single case that construes this "with anyone" language as

23 broadly as it asserts, despite that similar arbitration provisions have been litigated in multiple cases in

24 California, and thus appear to be a relatively standard arbitration clause in employment agreements

25 governed by California law. *See, e.g.*, *Skyware, Inc. v. Abramson*, No. C 11-00545 PSG, 2011 WL

26 2883446, at *1 (N.D. Cal. July 18, 2011); *Gonsalves v. Infosys Techs., Ltd.*, No. C 3:09-04112, 2010

27 WL 3118861, at *2 (N.D. Cal. Aug. 5, 2010); *Pulli v. Pony Int'l, LLC*, 206 Cal. App. 4th 1507, 1512

28 (2012). The two out-of-state cases Uber cites, neither of which applies California law, had completely

WAYMO'S OPPOSITION TO MOTION TO COMPEL ARBITRATION

1   unrelated fact patterns and do not support Uber's arguments here.  *See F.D. Imp. & Exp. Corp. v. M/V*

2   *Reefer Sun*, 248 F. Supp. 2d 240, 247-50 (S.D.N.Y. 2002) (finding a presumption of applicability to

3   the nonsignatory plaintiff for Charter Party and Bills of Lading agreements in an admiralty and

4   maritime action, and further holding that the arbitration provisions were also applicable because the

5   plaintiff was asserting claims under the contract in the district court action); *Hall v. Internet Capital*

6   *Grp., Inc.*, 338 F. Supp. 2d 145, 150, 151 n.12 (D. Me. 2004) (holding that nonsignatory shareholders

7   of a company involved in a merger could enforce the arbitration terms of an agreement related to the

8   merger under an estoppel theory and the "circumstances of the case" that demonstrated the agreement

9   "was executed by corporate officers as a result of authority granted to them by the shareholders").

10      Left with no controlling in-state authority and inapposite out-of-state authority, Uber

11   ultimately resorts to making far reaching and conclusory assertions about the applicability of the

12   Levandowski Employment Agreements to Waymo's claims against Uber without citing any authority

13   at all.[13]  (*See* Mot. at 12.)  However, Uber has not met its burden to prove that it is a party to the

14   agreements.  Under the plain language of the Levandowski Employment Agreements and governing

15   California law, Uber cannot enforce the arbitration provisions contained therein.

16   **III.    UBER'S REQUEST TO STAY WAYMO'S PRELIMINARY INJUNCTION**

17         **MOTION SHOULD BE DENIED BECAUSE WAYMO CANNOT BE**
         **COMPELLED TO ARBITRATE ITS REQUEST FOR PRELIMINARY**

18         **INJUNCTIVE RELIEF**

19      The preliminary injunction motion should proceed as scheduled even if the Court compels

20   Waymo to arbitration.  A party compelled to arbitration may nevertheless seek injunctive relief in

21   court pursuant to the arbitration rules set forth in California Code of Civil Procedure 1280 through

22   1294.2 (the "Rules").  Specifically, the Rules prescribe that a party to an arbitration agreement may

23   file in court "an application for a provisional remedy in connection with an arbitrable controversy, but

24   only upon the ground that the award to which the applicant may be entitled may be rendered

25

_____

26   [13]  Uber's unsupported assertions are telling for the additional reason that they double as a means to
     conceal a tacit admission by Uber concerning the actual scope of the phrase "with anyone" as used in

27   the arbitration provisions. (Mot. at 12 ("While **the examples in the parenthetical following the**
     **phrase 'with anyone' are associated with Waymo**, the provision is not limited to those examples;

28   the provision extends to 'anyone.'") (emphasis added and removed).)

WAYMO'S OPPOSITION TO MOTION TO COMPEL ARBITRATION

1  ineffectual without provisional relief."  Cal. Code Civ. Proc. § 1281.8(b); *see also* Cal. Code Civ.

2  Proc. § 1281.8(a)(3) (provisional remedies include preliminary injunctions); *Fitz v. NCR Corp.*, 118

3  Cal. App. 4th 702, 726 (2004) (finding that injunctive relief for trade secret, noncompetition and

4  intellectual property disputes was available under California law despite arbitration provision); *Stirlen*

5  *v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1537 (1997), *as modified* (Feb. 10, 1997) ("The forms of

6  emergency judicial relief Supercuts asserts it must have **are** available to a party compelled to arbitrate

7  a dispute.").  The Ninth Circuit has also held that compelling arbitration does not strip the court of

8  authority to grant provisional relief pending the outcome of the arbitration, where such relief is

9  necessary to preserve the meaningfulness of arbitration.  *Toyo Tire Holdings of Americas Inc. v.*

10  *Continental Tire North Amer., Inc.,* 609 F.3d 975, 981 (9th Cir. 2010) ("[A] district court may issue

11  interim injunctive relief on arbitrable claims if interim relief is necessary to preserve the status quo

12  and the meaningfulness of the arbitration process—provided, of course, that the requirements for

13  granting injunctive relief are otherwise satisfied."); *PMS Distributing Co., Inc. v. Huber & Suhner,*

14  *A.G.,* 863 F.2d 639, 642 (9th Cir. 1988) (finding the same for the provisional relief of a writ of

15  possession).

16       The Rules are explicitly incorporated into the Levandowski Employment Agreements

17  arbitration provisions, which further acknowledge the right to injunctive relief by explicitly stating

18  that "nothing in this agreement or in this provision is intended to waive the provisional relief remedies

19  available under the Rules."  (Exs. D ¶ 14, E ¶ 15.)  Put another way, the arbitration provisions permit

20  Waymo to seek provisional remedies, such as the preliminary injunction Waymo seeks here,

21  regardless of whether or not Waymo's trade secret claims against Uber are otherwise arbitrable.  Thus,

22  Ninth Circuit jurisprudence and California law governing the Levandowski Employment Agreements

23  together require that the Court proceed with Waymo's motion for a preliminary injunction, even if the

24  Court compels Waymo to arbitration.  *Davenport v. Blue Cross of California*, 52 Cal. App. 4th 435,

25  451 (1997).

26       Moreover, Waymo's motion for a preliminary injunction encompasses not only the trade secret

27  claims that Uber seeks to have stayed pending arbitration, but also claims related to Uber's

28  infringement of Waymo's patents. (Dkt. 25-4 at 16-20; 22-23; 25.)  Uber admits that the trade secret

WAYMO'S OPPOSITION TO MOTION TO COMPEL ARBITRATION

1   claims it wishes to arbitrate "do not predominate over the patent claims" and that "there is no

2   economy or efficiency to be realized from freezing the patent claims pending resolution of the

3   arbitrable claims."[14]  (Mot. at 13, 14.)  Therefore, Uber's request that the Court exercise its discretion

4   to stay Waymo's motion for a preliminary injunction should be denied.  *Congdon v. Uber Techs., Inc.*,

5   No. 16-CV-02499-YGR, 2016 WL 7157854, at *5 (N.D. Cal. Dec. 8, 2016) ("It is, however, within a

6   district court's discretion whether to stay, for 'considerations of economy and efficiency,' an entire

7   action, including issues not arbitrable, pending arbitration."); *see also Moses H. Cone Mem'l Hosp. v.*

8   *Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983) (finding that the decision whether or not to stay

9   non-arbitrable claims is "one left to the district court (or to the state trial court under applicable state

10  procedural rules) as a matter of its discretion to control its docket").

11       Thus, for the reasons set forth above, the preliminary injunction hearing should proceed even if

12  the Court determines that Waymo's trade secret claims against Uber are arbitrable.

13  **IV.   OTHER EQUITABLE CONSIDERATIONS STRONGLY FAVOR DENYING**

14  **      UBER'S REQUESTED RELIEF**

15       Equity strongly favors denying Uber's motion.  Waymo addresses these issues, as well as

16  specific questions raised in the Court's March 30 and April 9 Orders (Dkts. 130 and 194), below.

17       How far along the arbitrations brought by Google against Mr. Levandowski have progressed;

18  and when the arbitration will be concluded by comparison to the proceedings in this case:  The

19  Levandowski Arbitrations, despite the fact they were filed in October of 2016, are far less advanced

20  than this litigation.  Due to the need to formally consolidate the two demands and Mr. Levandowski's

21  prior opposition to early consolidation, the arbitrations were not formally commenced until January

22  20, 2017 and the first status conference did not occur until March 2017.  Discovery in the

23  Levandowski Arbitrations is not scheduled to begin until today, April 10 – and on April 3, Mr.

24  Levandowski announced that, despite this previously agreed upon exchange date, he may not be

25  producing any documents, either today, this month, or ever; and today Mr. Levandowski's counsel

26  informed Google that Mr. Levandowski will not be producing any documents in the in the

27  _____

28  [14]   Uber also concedes, as it must given these admissions, that "resolution of the remaining claims
    should proceed in this forum, on course."  (Mot. at 14.)

WAYMO'S OPPOSITION TO MOTION TO COMPEL ARBITRATION

1   Levandowski Arbitrations.  Contrary to the impression Uber tries to make in its Motion, the existence

2   of those unrelated arbitrations in no way presents efficiencies or equities to compelling Waymo's

3   trade secret claims against Uber to arbitration.  Because Uber did not name Mr. Levandowski as a

4   party in the Uber Arbitration, there is not even a commonality of parties across the Levandowski

5   Arbitrations and either this litigation or the Uber Arbitration.

6        The merits hearing in the Levandowski Arbitrations is not scheduled to begin until April 30,

7   **2018**.  Any suggestion by Uber that an arbitration hearing may occur in 2017 is flatly contradicted by

8   Levandowski's and Morrison & Foerster's statements and positions in the Levandowski Arbitrations

9   to date.  When Google originally proposed both October and December 2017 arbitration hearing dates

10  for its demands, Levandowski and Morrison & Foerster firmly rejected these dates, claiming that any

11  arbitration hearing date in 2017 was not possible.  (Meny Decl. ¶ 10.)

12       In contrast, expedited discovery has already commenced in this case and is ongoing, a

13  preliminary injunction hearing is scheduled for May 3, and trial is set for this October.  The case

14  schedule reflects the urgency of Waymo's claims and the threat of irreparable harm from Uber's

15  ongoing use of Waymo's trade secrets and infringement of Waymo's patent rights.   Uber waited to

16  serve its demand in the Uber Arbitration until March 31 – over two weeks after telling the Court it

17  believed Waymo's trade secret claims were arbitrable, and over five weeks after Waymo filed the

18  Complaint.

19       Who the arbitrators are; and their relevant expertise:  The Levandowski Arbitrations will be

20  heard by the Hon. Steven A. Brick (Ret.), Hon. Edward A. Panelli (Ret.), and Hon. James Ware

21  (Ret.).[15]  (Meny Decl. ¶ 13.)  It is extremely unlikely that these three busy individuals would be able to

22  schedule a hearing on Waymo's trade secret claims this year, and when Google suggested an October

23  2017 hearing date at the first arbitration case management conference, the arbitrators noted that

24  Google's request was aggressive in an arbitration context  (*Id.*)

25

26

27     [15]    The arbitrators' biographies can be found here:   https://www.jamsadr.com/panelli/;

28  https://www.jamsadr.com/ware/; and https://www.jamsadr.com/brick/.

WAYMO'S OPPOSITION TO MOTION TO COMPEL ARBITRATION

1    <u>The extent to which (and when) the arbitrations brought by Google against Mr. Levandowski</u>

2    <u>will determine which of the 14,000-plus allegedly downloaded files qualify as trade secrets</u>:  Google

3    has not brought any trade secret misappropriation claims against Mr. Levandowski in the

4    Levandowski Arbitrations.  So the arbitrators will not determine whether any of the 14,000-plus files

5    downloaded by Mr. Levandowski qualify as trade secrets.

6    Google's breach of contract claims against Mr. Levandowski allege breaches of the non-

7    solicitation, non-competition, and confidentiality provisions of his contracts.  The allegations for

8    breach of confidentiality provisions relate to Mr. Levandowski's use of confidential salary and

9    compensation information to make targeted and individualized job offers in connection with his

10   solicitation of Google employees.  These allegations do not involve Mr. Levandowski's downloads

11   from the Waymo design server, or the subsequent acquisition and use of the trade secrets contained in

12   those downloads by Uber.

13   <u>If the arbitration will resolve that issue, whether, after deciding the issue of provisional relief,</u>

14   <u>this Court should stay this case as to the trade claims until those claims are resolved in the</u>

15   <u>Levandowski arbitration. If the arbitration will not reach that issue, please explain why</u>:  As explained

16   above, the Levandowski Arbitrations will not reach that issue because Google has not asserted any

17   trade secret claims, or any allegations relating to the 14,000-plus downloaded files, in the

18   Levandowski Arbitrations.  Therefore, the Court should decide not only the issue of provisional relief,

19   but also all further issues relating to Waymo's trade secret claims.

20   <u>The extent to which depositions and document discovery will be available on an expedited</u>

21   <u>basis</u>:  There are no established JAMS procedures for expedited discovery, nor has Uber offered any.

22   And because Uber has not made Mr. Levandowski a party to the Uber Arbitration, there is no

23   possibility of more (let alone faster) discovery in arbitration than in litigation.  In fact, as is well

24   recognized, "the discovery allowed in arbitration is more limited than in the federal courts." *Miyasaki*

25   *v. Real Mex Restaurants, Inc.*, No. C 05-5331 VRW, 2006 WL 2385229, at *7 (N.D. Cal. Aug. 17,

26   2006) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991)).  Already, in the

27   litigation, Uber has resisted discovery – even in the face of a Court order.  In arbitration, Waymo

28

1  would be severely prejudiced in its ability to get the discovery it needs to determine the full scope of

2  Uber's acquisition and use of Waymo's trade secrets.

3    The Levandowski Arbitrations – although unrelated – are instructive of how Uber will likely

4  approach expedited discovery in an arbitration of Waymo's trade secret claims, insofar as the same

5  counsel represents Mr. Levandowski in the Levandowski Arbitrations as represents Uber in this

6  action.  Google initiated those arbitrations in October 2016, but the first case management conference

7  did not occur until March 10 – almost four months later.  (Meny Decl. ¶¶ 8-9.)  Mr. Levandowski has

8  also refused to produce any documents.  (Meny Decl. ¶ 12.)  And, although the arbitrators have

9  allowed slightly more discovery (although less than in court), Respondents "initially opposed allowing

10  either side to serve **any** Interrogatories or Requests for Admission, and most recently argued that each

11  side be limited to just ten Requests for Production, two non-party document subpoenas, five

12  depositions for non-parties or party affiliates (i.e. employees of Google and Uber), and that the

13  depositions of Mr. Levandowski and [the other Respondent] be limited to a combined ten hours."

14  (Meny Decl. ¶ 14 (emphasis added).)

15    <u>Secrecy versus transparency:</u>  Last, but by no means least, equities in this case strongly favor

16  litigating Waymo's trade secret claims in a public forum.  This Circuit has " a strong presumption in

17  favor of access to court records", and "a federal common law right to inspect and copy public records

18  and documents" given the "public policy reasons behind a presumption of access to judicial

19  documents (judicial accountability, education about the judicial process etc.)[.]"  *Foltz v. State Farm*

20  *Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1134-35 (9th Cir. 2003) (internal quotation marks and citations

21  omitted).  Uber seeks to move proceedings to arbitration, not out of considerations of equity, but in

22  order to conceal from the public any further revelations of its own (and its executives') misconduct.

23  Counsel for Uber conceded as much at the March 29 hearing (that Uber had initially requested be

24  sealed). (Dkt. 131 at 15:11-22.)

25    **MR. GONZALEZ**:  So I will tell you, your Honor.  First, this is related, in part, to
   the petition to compel arbitration for this reason: If the Court grants our petition, then
26   it means that this trade secrets issue goes into arbitration.  And if [Mr. Levandowski]
   testifies there, it's – it's in confidence.  It's a big difference.

27    **THE COURT**:  Ridiculous.  It's not in confidence.  The United States Attorney can
   go subpoena information all day long.

28

WAYMO'S OPPOSITION TO MOTION TO COMPEL ARBITRATION

1

**MR. GONZALEZ**:   Well, Your Honor, at least it's not in the public where it's going to be on the front page of *The New York Times* the next day.

2

3

But as the intense media coverage in this case has shown, the allegations Waymo has made

4

against Uber and its $680 million acquisition of Otto concern matters of considerable importance and

5

public interest.  Uber's anxiety that public disclosure of its egregious misconduct in stealing Waymo's

6

trade secrets will harm its reputation is not a factor that the Court should take into account in

7

considering the equities of Uber's Motion; if anything, it strongly favors continued public access.  *See*,

8

*e.g.*, *U.S. ex rel. McCoy v. California Med. Review, Inc.*, 133 F.R.D. 143, 148 (N.D. Cal. 1990)

9

("Defendants' argument with regard to reputation is equally misguided, as numerous courts have ruled

10

that harm to a party's reputation is not a sufficient justification for the denial of public access to

11

judicial proceedings. . . .  Moreover, this action, arising from Congress' efforts to combat fraudulent

12

claims for public funds, clearly is of great public interest.  As such, the argument for public access to

these judicial proceedings is stronger still.") (internal quotation marks and citations omitted).

13

## CONCLUSION

14

For the foregoing reasons, Waymo respectfully requests that the Court deny Uber's motion.

15

16

DATED:  April 10, 2017           QUINN EMANUEL URQUHART & SULLIVAN, LLP

17

18

By   */s/ Charles K. Verhoeven*

19             Charles K. Verhoeven

20             Attorneys for Plaintiff Waymo LLC

21

22

23

24

25

26

27

28

WAYMO'S OPPOSITION TO MOTION TO COMPEL ARBITRATION

1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
      Charles K. Verhoeven (Bar No. 170151)
2     charlesverhoeven@quinnemanuel.com
      David A. Perlson (Bar No. 209502)
3     davidperlson@quinnemanuel.com
      Melissa Baily (Bar No. 237649)
4     melissabaily@quinnemanuel.com
      John Neukom (Bar No. 275887)
5     johnneukom@quinnemanuel.com
      Jordan Jaffe (Bar No. 254886)
6     jordanjaffe@quinnemanuel.com
    50 California Street, 22nd Floor
7   San Francisco, California 94111-4788
    Telephone:     (415) 875-6600
8   Facsimile:     (415) 875-6700

9   Attorneys for WAYMO LLC

10                      UNITED STATES DISTRICT COURT

11          NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

12  WAYMO LLC,                            CASE NO. 3:17-cv-00939-WHA

13              Plaintiff,                **DECLARATION OF DAVID A. PERLSON
                                          IN SUPPORT OF PLAINTIFF'S**
14        vs.                             **OPPOSITION TO DEFENDANTS'
                                          MOTION TO COMPEL ARBITRATION**
15  UBER TECHNOLOGIES, INC.;              **OF, AND TO STAY, TRADE SECRET
    OTTOMOTTO LLC; OTTO TRUCKING          AND UCL CLAIMS [9 U.S.C. §§ 3, 4]**
16  LLC,

17              Defendants.

18

19

20

21

22

23

24

25

26

27

28

1        I, David A. Perlson, hereby declares as follows.

2        1.     I am a member of the bar of the State of California and partner with Quinn

3 Emanuel Urquhart & Sullivan, LLP, counsel for Plaintiff Waymo LLC ("Waymo").  I make this

4 declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and

5 would testify competently to the matters set forth herein.  I make this declaration in support of

6 Waymo's Opposition to Defendants' Motion To Compel Arbitration Of, And To Stay, Trade

7 Secret And UCL Claims [9 U.S.C. §§ 3, 4].

8        2.     On March 15, 2017, during a meet and confer with counsel from Defendants,

9 Defendants informed Waymo of their intention to file a motion to compel arbitration for the first

10 time.

11        3.     Attached hereto as Exhibit A is a true and correct copy of an email thread accepting

12 service of Defendants' March 31, 2017 Arbitration Demand to Waymo.

13        4.     Attached hereto as Exhibit B is a true and correct copy of the JAMS Demand For

14 Arbitration Form that was served by Defendants and submitted as part of Defendants' March 31,

15 2017 Arbitration Demand To Waymo.

16        5.     Attached hereto as Exhibit C is a true and correct copy of Defendants' Arbitration

17 Demand Complaint against Waymo that was served by Defendants and submitted as part of

18 Defendants March 31 Arbitration Demand to Waymo.

19        6.     Attached hereto as Exhibit D is a true and correct copy of Anthony Levandowski's

20 2012 At-Will Employment, Confidential Information, Invention Assignment And Arbitration

21 Agreement which Defendants attached as Exhibit 1 to Defendants' Arbitration Demand Complaint

22 that was served by Defendants.

23        7.     Attached hereto as Exhibit E is a true and correct copy of Anthony Levandowski's

24 2009 At-Will Employment, Confidential Information, Invention Assignment And Arbitration

25 Agreement which Defendants attached as Exhibit 2 to Defendants' Arbitration Demand Complaint

26 that was served by Defendants.

27

28

-2-

Case No. 3:17-cv-00939-WHA
DECLARATION OF DAVID A. PERLSON

8.      Attached hereto as Exhibit F is a true and correct copy of an email exchange related to the filing of Defendants' March 31 Arbitration Demand and Defendants' request to schedule an arbitration hearing after the conclusion of these proceedings on the merits.

9.      Neither Mr. Levandowski nor Google, Inc., the parties to the 2012 and 2009 At-Will Employment, Confidential Information, Invention Assignment And Arbitration Agreements, are named as parties in Defendants' Arbitration Demand.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED:  April 10, 2017              */s/ David A. Perlson*
                                   David A. Perlson

**SIGNATURE ATTESTATION**

Pursuant to Local Rule 5-1(i)(3), I attest under penalty of perjury that concurrence in the filing of this document has been obtained from David A. Perlson.

                                   */s/ Charles K. Verhoeven*
                                   Charles K. Verhoeven

Case No. 3:17-cv-00939-WHA
DECLARATION OF DAVID A. PERLSON

# EXHIBIT A

**From:**              Williams, Ben <BWilliams@mofo.com>
**Sent:**               Friday, March 31, 2017 1:15 PM
**To:**                  David Perlson
**Cc:**                  Gonzalez, Arturo J.; Charles K Verhoeven
**Subject:**         RE: Service of new arbitration demand
**Attachments:**     2017.03.31 Arbitration Demand to Waymo LLC_FINAL.PDF


David,

I've attached a copy of the arbitration demand referenced in the chain below. A hard copy is being sent by courier today to Mr. Verhoeven's office and should be delivered shortly. Thanks

Sincerely,
Ben

**Benjamin D. Williams**
Morrison & Foerster LLP
707 Wilshire Boulevard | Los Angeles, CA 90017-3543
P: 213.892.5237 | M: 213.292.1378 | F: 213.892.5454
BWilliams@mofo.com | www.mofo.com

---

**From:** David Perlson [mailto:davidperlson@quinnemanuel.com]
**Sent:** Thursday, March 30, 2017 6:52 PM
**To:** Williams, Ben
**Cc:** Gonzalez, Arturo J.
**Subject:** Re: Service of new arbitration demand

**- External Email -**

Ben, we can accept service.

David

On Mar 30, 2017, at 6:21 PM, Williams, Ben <BWilliams@mofo.com> wrote:

> Dave,
>
> Good speaking to you. I write to ask whether you are authorized to accept service on behalf of Waymo of the arbitration demand we spoke about (the one referenced in the motion to compel arbitration). Can you let me know by 11 a.m. tomorrow?
>
> Thanks,
> Ben
>
> **Benjamin D. Williams**
> Morrison & Foerster LLP
> 707 Wilshire Boulevard | Los Angeles, CA 90017-3543
> P: 213.892.5237 | M: 213.292.1378 | F: 213.892.5454
> BWilliams@mofo.com | www.mofo.com

==========================================================================
=======

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email.

==========================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email.

# EXHIBIT B



# Demand for Arbitration Form (continued)
Instructions for Submittal of Arbitration to JAMS

## TO RESPONDENT (PARTY ON WHOM DEMAND FOR ARBITRATION IS MADE)

Add more respondents on **page 6**.

| RESPONDENT NAME | Waymo LLC |
|---|---|

| ADDRESS | 1600 Amphitheatre Parkway |
|---|---|

| CITY | Mountain View | STATE | CA | ZIP | 94043 |
|---|---|---|---|---|---|

| PHONE | (650)253-0000 FAX (650)253-0001 EMAIL |
|---|---|

### RESPONDENT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

| REPRESENTATIVE/ATTORNEY | Charles K. Verhoeven |
|---|---|

| FIRM/COMPANY | Quinn Emanuel Urquhart & Sullivan, LLP |
|---|---|

| ADDRESS | 50 California Street, 22nd Floor |
|---|---|

| CITY | San Francisco | STATE | CA | ZIP | 94111 |
|---|---|---|---|---|---|

| PHONE | (415)875-6600 FAX (415)875-6700 EMAIL charlesverhoeven@quinnemanuel.com |
|---|---|

## FROM CLAIMANT

Add more claimants on **page 7**.

| CLAIMANT NAME | Uber Technologies, Inc. |
|---|---|

| ADDRESS | 1455 Market Street |
|---|---|

| CITY | San Francisco | STATE | CA | ZIP | 94105 |
|---|---|---|---|---|---|

| PHONE | | FAX | | EMAIL | |
|---|---|---|---|---|---|

### CLAIMANT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

| REPRESENTATIVE/ATTORNEY | Arturo J. González (see Attachment 1 caption for additional counsel) |
|---|---|

| FIRM/COMPANY | Morrison & Foerster LLP |
|---|---|

| ADDRESS | 425 Market Street |
|---|---|

| CITY | San Francisco | STATE | CA | ZIP | 94105-2482 |
|---|---|---|---|---|---|

| PHONE | (415)268-7000 FAX (415)268-7522 EMAIL agonzalez@mofo.com |
|---|---|

# Demand for Arbitration Form (continued)
Instructions for Submittal of Arbitration to JAMS

## MEDIATION IN ADVANCE OF THE ARBITRATION

☐ If mediation in advance of the arbitration is desired, please check here and a JAMS Case Manager will assist the parties in coordinating a mediation session.

## NATURE OF DISPUTE / CLAIMS & RELIEF SOUGHT BY CLAIMANT

CLAIMANT HEREBY DEMANDS THAT YOU SUBMIT THE FOLLOWING DISPUTE TO FINAL AND BINDING ARBITRATION.
A MORE DETAILED STATEMENT OF CLAIMS MAY BE ATTACHED IF NEEDED.

See Attachment 1.

AMOUNT IN CONTROVERSY (US DOLLARS)   N/A

 # Demand for Arbitration Form (continued)
### Instructions for Submittal of Arbitration to JAMS

## ARBITRATION AGREEMENT
This demand is made pursuant to the arbitration agreement which the parties made as follows. *Please cite location of arbitration provision and attach <u>two copies</u> of entire agreement.*

**ARBITRATION PROVISION LOCATION**

2012 At-Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement, § 14, attached as Ex. 1

2009 At-Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement § 15, attached as Ex. 2

## RESPONSE
The respondent may file a response and counter-claim to the above-stated claim according to the applicable arbitration rules. *Send the original response and counter-claim to the claimant at the address stated above with <u>two copies</u> to JAMS.*

## REQUEST FOR HEARING

**REQUESTED LOCATION**   Santa Clara County, California

## ELECTION FOR EXPEDITED PROCEDURES (IF COMPREHENSIVE RULES APPLY)
See: *Comprehensive Rule 16.1*

☐   By checking the box to the left, Claimant requests that the Expedited Procedures described in JAMS Comprehensive Rules 16.1 and 16.2 be applied in this matter. Respondent shall indicate not later than seven (7) days from the date this Demand is served whether it agrees to the Expedited Procedures.

## SUBMISSION INFORMATION

**SIGNATURE**   *[signature]*   **DATE**   March 30, 2017

**NAME (PRINT/TYPED)**   Arturo J. González

# Demand for Arbitration Form (continued)

## Instructions for Submittal of Arbitration to JAMS

Completion of this section is <u>required for all consumer or employment claims</u>.

## CONSUMER AND EMPLOYMENT ARBITRATION

Please indicate if this is a CONSUMER ARBITRATION.  For purposes of this designation, and whether this case will be administered in California or elsewhere, JAMS is guided by *California Rules of Court Ethics Standards for Neutral Arbitrators, Standard 2(d) and (e),* as defined below, and the JAMS Consumer and Employment Minimum Standards of Procedural Fairness:

☐ <u>YES</u>, this **is** a CONSUMER ARBITRATION.

☒ <u>NO</u>, this **is not** a CONSUMER ARBITRATION.

"Consumer arbitration" means an arbitration conducted under a pre-dispute arbitration provision contained in a contract that meets the criteria listed in paragraphs (1) through (3) below. "Consumer arbitration" excludes arbitration proceedings conducted under or arising out of public or private sector labor-relations laws, regulations, charter provisions, ordinances, statutes, or agreements.

1. The contract is with a consumer party, as defined in these standards;
2. The contract was drafted by or on behalf of the non-consumer party; and
3. The consumer party was required to accept the arbitration provision in the contract.

"Consumer party" is a party to an arbitration agreement who, in the context of that arbitration agreement, is any of the following:

1. An individual who seeks or acquires, including by lease, any goods or services primarily for personal, family, or household purposes including, but not limited to, financial services, insurance, and other goods and services as defined in section 1761 of the Civil Code;
2. An individual who is an enrollee, a subscriber, or insured in a health-care service plan within the meaning of section 1345 of the Health and Safety Code or health-care insurance plan within the meaning of section 106 of the Insurance Code;
3. An individual with a medical malpractice claim that is subject to the arbitration agreement; or
4. An employee or an applicant for employment in a dispute arising out of or relating to the employee's employment or the applicant's prospective employment that is subject to the arbitration agreement.

In addition, JAMS is guided by its Consumer Minimum Standards and Employment Minimum Standards when determining whether a matter is a consumer matter.

If Respondent disagrees with the assertion of Claimant regarding whether this IS or IS NOT a CONSUMER ARBITRATION, Respondent should communicate this objection in writing to the JAMS Case Manager and Claimant within seven (7) calendar days of service of the Demand for Arbitration.

## EMPLOYMENT MATTERS

If this is an EMPLOYMENT matter, Claimant must complete the following information:

Private arbitration companies are required to collect and publish certain information at least quarterly, and make it available to the public in a computer-searchable format. In employment cases, this includes the amount of the employee's annual wage. The employee's name will not appear in the database, but the employer's name will be published. Please check the applicable box below:

☐ Less than $100,000     ☐ $100,000 to $250,000     ☐ More than $250,000     ☒ Decline to State

## WAIVER OF ARBITRATION FEES

In certain states (e.g. California), the law provides that consumers (as defined above) with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of the arbitration fees. In those cases, the respondent must pay 100% of the fees. Consumers must submit a declaration under oath stating the consumer's monthly income and the number of persons living in his or her household. Please contact JAMS at 1-800-352-5267 for further information. Note: this requirement is not applicable in all states.

 # Demand for Arbitration Form (continued)
## Instructions for Submittal of Arbitration to JAMS

## RESPONDENT #2 (PARTY ON WHOM DEMAND FOR ARBITRATION IS MADE)

| RESPONDENT NAME | |
|---|---|

| ADDRESS | |
|---|---|

| CITY | STATE | ZIP |
|---|---|---|

| PHONE | FAX | EMAIL |
|---|---|---|

### RESPONDENT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

| REPRESENTATIVE/ATTORNEY | |
|---|---|

| FIRM/ COMPANY | |
|---|---|

| ADDRESS | |
|---|---|

| CITY | STATE | ZIP |
|---|---|---|

| PHONE | FAX | EMAIL |
|---|---|---|

## RESPONDENT #3 (PARTY ON WHOM DEMAND FOR ARBITRATION IS MADE)

| RESPONDENT NAME | |
|---|---|

| ADDRESS | |
|---|---|

| CITY | STATE | ZIP |
|---|---|---|

| PHONE | FAX | EMAIL |
|---|---|---|

### RESPONDENT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

| REPRESENTATIVE/ATTORNEY | |
|---|---|

| FIRM/ COMPANY | |
|---|---|

| ADDRESS | |
|---|---|

| CITY | STATE | ZIP |
|---|---|---|

| PHONE | FAX | EMAIL |
|---|---|---|



# Demand for Arbitration Form (continued)
Instructions for Submittal of Arbitration to JAMS

## CLAIMANT #2

| CLAIMANT NAME | Ottomotto LLC |
|---|---|

| ADDRESS | 737 Harrison St |
|---|---|

| CITY | San Francisco | STATE | CA | ZIP | 94107 |
|---|---|---|---|---|---|

| PHONE | | FAX | | EMAIL | |
|---|---|---|---|---|---|

CLAIMANT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

| REPRESENTATIVE/ATTORNEY | Arturo J. González (see Attachment 1 caption for additional counsel) |
|---|---|

| FIRM/ COMPANY | Morrison & Foerster LLP |
|---|---|

| ADDRESS | 425 Market Street |
|---|---|

| CITY | San Francisco | STATE | CA | ZIP | 94105-2482 |
|---|---|---|---|---|---|

| PHONE | (415)268-7000 | FAX | (415)268-7522 | EMAIL | agonzalez@mofo.com |
|---|---|---|---|---|---|

## CLAIMANT #3

| CLAIMANT NAME | Otto Trucking LLC |
|---|---|

| ADDRESS | 737 Harrison St |
|---|---|

| CITY | San Francisco | STATE | CA | ZIP | 94107 |
|---|---|---|---|---|---|

| PHONE | | FAX | | EMAIL | |
|---|---|---|---|---|---|

CLAIMANT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

| REPRESENTATIVE/ATTORNEY | Arturo J. González (see Attachment 1 caption for additional counsel) |
|---|---|

| FIRM/ COMPANY | Morrison & Foerster LLP |
|---|---|

| ADDRESS | 425 Market Street |
|---|---|

| CITY | San Francisco | STATE | CA | ZIP | 94105-2482 |
|---|---|---|---|---|---|

| PHONE | (415)268-7000 | FAX | (415)268-7522 | EMAIL | agonzalez@mofo.com |
|---|---|---|---|---|---|

# EXHIBIT C

1    MICHAEL A. JACOBS (CA SBN 111664)
     MJacobs@mofo.com
2    ARTURO J. GONZÁLEZ (CA SBN 121490)
     AGonzalez@mofo.com
3    MORRISON & FOERSTER LLP
     425 Market Street
4    San Francisco, California  94105-2482
     Tel: 415.268.7000 │ Fax: 415.268.7522
5
     RUDY Y. KIM (CA SBN 199426)
6    RudyKim@mofo.com
     MORRISON & FOERSTER LLP
7    755 Page Mill Road
     Palo Alto, California 94304-1018
8    Tel: 650.813.5600 │ Fax: 650.494.0792
9    WENDY J. RAY (CA SBN 226269)
     WRay@mofo.com
10   MORRISON & FOERSTER LLP
     707 Wilshire Boulevard
11   Los Angeles, California  90017-3543
     Tel: 213.892.5200 │ Fax: 213.892.5454
12
     Attorneys for Claimants
13   UBER TECHNOLOGIES, INC.,
     OTTOMOTTO LLC, and OTTO TRUCKING LLC
14
     KAREN L. DUNN
15   kdunn@bsfllp.com
     HAMISH P.M. HUME
16   hhume@bsfllp.com
     BOIES SCHILLER FLEXNER LLP
17   1401 New York Avenue, N.W.
     Washington DC  20005
18   Tel: 202.237.2727 │ Fax: 202.237.6131
19   Attorneys for Claimants
     UBER TECHNOLOGIES, INC.
20   and OTTOMOTTO LLC

21          BEFORE JAMS (JUDICIAL ARBITRATION AND MEDIATION SERVICES)

22

| 23  UBER TECHNOLOGIES, INC.; | Case No. |
| OTTOMOTTO LLC; OTTO TRUCKING LLC | |
| 24 | **ARBITRATION DEMAND** |
| Claimants, | |
| 25      v. | |
| 26  WAYMO LLC, | |
| 27           Respondent. | |

28

1.      Claimants Uber Technologies, Inc. ("Uber"), Ottomotto LLC, and Otto Trucking

LLC hereby submit this arbitration demand against Respondent Waymo LLC, and allege and

pray as follows.

**Nature of the Dispute**

2.      Respondent's affiliate Google Inc. ("Google") entered into two employment

agreements with Anthony Levandowski, in which it agreed to arbitrate **all** controversies "arising

out of, relating to, or resulting from" Levandowski's employment.  Ex. 1 (2012 Employment

Agreement); Ex. 2 (2009 Employment Agreement).  Respondent breached those agreements by

filing claims in California federal court in a case styled *Waymo, LLC v. Uber Techs.*, Case No.

3:17-cv-00939-WHA (N.D. Cal., filed Feb. 23, 2017) ("California Lawsuit").  *See* Ex. 3 (First

Am. Compl. in the California Lawsuit) ("California FAC").  Respondent should have filed three

of those claims with JAMS, not the court, because those claims are subject to mandatory

arbitration under the 2009 and 2012 Employment Agreements.

3.      Claimants therefore file this arbitration demand here—in the appropriate forum—

seeking (i) a declaration that Respondent's first, second, and seventh causes of action in the

California Lawsuit are subject to mandatory arbitration; and (ii) a declaration that those claims

are without merit.

**Jurisdiction**

4.      JAMS has jurisdiction over this dispute by virtue of the arbitration provisions in

the 2009 and 2012 Employment Agreements, both of which have broad arbitration clauses.  For

example, the 2012 Employment Agreement provides:

> IN CONSIDERATION OF MY EMPLOYMENT WITH THE
> COMPANY, **ITS PROMISE TO ARBITRATE ALL
> EMPLOYMENT-RELATED DISPUTES**, AND MY
> RECEIPT OF THE COMPENSATION, PAY RAISES AND
> OTHER BENEFITS PAID TO ME BY THE COMPANY, AT
> PRESENT AND IN THE FUTURE, **I AGREE THAT ANY
> AND ALL CONTROVERSIES, CLAIMS, OR DISPUTES
> WITH ANYONE** (INCLUDING THE COMPANY AND ANY
> EMPLOYEE, OFFICER, DIRECTOR, SHAREHOLDER OR
> BENEFIT PLAN OF THE COMPANY IN THEIR CAPACITY
> AS SUCH OR OTHERWISE), WHETHER BROUGHT ON AN

Case: 20-03050   Doc# 129-2   Filed: 02/24/21   Entered: 02/24/21 04:14:33   Page 47
of 84

INDIVIDUAL, GROUP, OR CLASS BASIS, **ARISING OUT OF, RELATING TO, OR RESULTING FROM MY EMPLOYMENT WITH THE COMPANY** OR THE TERMINATION OF MY EMPLOYMENT WITH THE COMPANY, INCLUDING ANY BREACH OF THIS AGREEMENT, **SHALL BE SUBJECT TO BINDING ARBITRATION UNDER THE ARBITRATION RULES SET FORTH IN CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 1280 THROUGH 1294.2, INCLUDING SECTION 1283.05 (THE "RULES") AND PURSUANT TO CALIFORNIA LAW.**

Ex. 1 § 14(a) (emphasis added).[1]  The Employment Agreements define "Company" to include Google's affiliates.  *See* Ex. 1, at 1; Ex. 2, at 1.  The arbitration clauses in both agreements provide that arbitrations will be administered by JAMS pursuant to JAMS Employment Arbitration Rules & Procedures.  Ex. 1 § 14(b); Ex. 2 § 15(b).

5.      Respondent, as an affiliate of Google, is bound by these arbitration provisions.

6.      The arbitration clauses in the Employment Agreements and the principles of equitable estoppel establish Respondent's consent to arbitration.

7.      Claimants are not signatories to the Employment Agreements, but are entitled to invoke their arbitration provisions under principles of equitable estoppel.  Respondent's trade secret and unfair competition claims in the California Lawsuit are based on alleged concerted misconduct between Claimants and Levandowski, who *is* a signatory to the employment agreements.  Because that alleged misconduct by Claimants and Levandowski is founded in and intertwined with Levandowski's purported violations of his employment agreements (as described in paragraphs 16.a–f below), equitable estoppel permits Claimants to enforce the arbitration provisions in those agreements.

**Relevant Facts**

8.      In May 2009, Google entered into an employment agreement with Levandowski.  Ex. 2.  In that agreement, Google (and its affiliate Waymo) agreed to arbitrate all controversies "arising out of, relating to, or resulting from" Levandowski's employment.  *Id.*

---

[1] The 2009 Agreement's arbitration provision is substantively similar.  *See* Ex. 2 § 15(a).  For purposes of this arbitration demand, the differences between the two clauses are immaterial.

9.      In February 2012, Google entered into an employment agreement with Levandowski.  Ex. 1.  In that agreement, Google (and its affiliate Waymo) similarly agreed to arbitrate all controversies "arising out of, relating to, or resulting from" Levandowski's employment.  *Id*.

10.     Respondent was part of Google until late 2016, when it became a separate company operating alongside Google under Alphabet Inc.'s umbrella.  Ex. 3 ¶ 25; Ex. 4 (Waymo LLC's Certification of Interested Entities or Persons and Corporate Disclosure Statement, ECF No. 5).

11.     Levandowski left Google in January 2016.

12.     In early 2016, Levandowski founded Claimants Ottomotto LLC and Otto Trucking LLC.  Levandowski is currently employed by Claimant Uber.

13.     On February 23, 2017, Respondent sued Claimants in California federal court, asserting causes of action for (1) violation of the Defense of Trade Secrets Act [*sic*]; (2) violation of the California Uniform Trade Secrets Act; (3) patent infringement; and (4) violation of Cal. Business & Professions Code §§ 17200, *et seq*.

14.     On March 10, 2017, Respondent filed the operative First Amended Complaint in the California Lawsuit, asserting causes of action against Claimants for (1) violation of the Defend Trade Secrets Act; (2) violation of the California Uniform Trade Secrets Act; (3) patent infringement; and (4) violation of Cal. Business & Professions Code §§ 17200, *et seq*.  Ex. 3.

15.     Respondent's claim for violation of Cal. Business & Professions Code §§ 17200, *et seq.* in the California Lawsuit is based on the alleged "misappropria[tion] of Waymo's confidential and proprietary information."  *Id.* ¶ 144.

16.     Respondent's trade secret and unfair competition claims in the California Lawsuit are all based on Levandowski's conduct as an employee of Google and/or Respondent.  In the California Lawsuit, Respondent alleges, among other things, that:

a.      "Levandowski, a former manager in Waymo's self-driving car project . . . downloaded more than 14,000 highly confidential and proprietary files shortly before his resignation," *id.* ¶ 4;

b. "Levandowski took extraordinary efforts to raid Waymo's design server and then conceal his activities," *id.*;

c. "In the months leading to the mass download of files, Mr. Levandowski told colleagues that he had plans to set up a new, self-driving vehicle company.  In fact, Mr. Levandowski appears to have taken multiple steps to maximize his profit and set up his own new venture – which eventually became Otto – before leaving Waymo in January 2016," *id.* ¶ 5;

d. "[U]nbeknownst to Waymo at the time, Waymo manager Anthony Levandowski was also secretly preparing to launch a competing vehicle automation venture – a company named '280 Systems,' which would later become Otto," *id.* ¶ 41;

e. "[W]hile still a Waymo employee . . . Levandowski attended meetings with high-level executives at Uber's headquarters on January 14, 2016," *id.* ¶ 48; and

f. "The next day, January 15, 2016, Mr. Levandowski's venture 280 Systems – which became [Claimant] OttoMotto LLC – was officially formed . . . .  On January 27, 2016, Mr. Levandowski resigned from Waymo without notice."  *Id.* ¶ 49.

17. Respondent's trade secret and unfair competition claims in the California Lawsuit are without merit.  Claimants are not seeking to arbitrate Respondent's patent infringement claims at this time.

18. Respondent's affiliate Google has filed two other arbitration demands with JAMS against Levandowski based on conduct Levandowski allegedly engaged in during and after the time he was a Google/Waymo employee.  The crux of Google's claims in the two arbitrations is that Levandowski took and improperly used Google/Waymo confidential information to benefit Ottomotto LLC and ultimately Uber:

a. On October 28, 2016, Google filed a JAMS arbitration demand against Levandowski, alleging that he improperly used Google/Waymo

1   confidential information to induce Google/Waymo employees to join a

2   competing enterprise, 280 Systems, which became Ottomotto LLC.

3      b.   The same day, Google also filed a JAMS arbitration demand against

4   Levandowski and another former Google employee, alleging that they had

5   breached the confidentiality provisions of their employment agreements

6   by, among other things, using confidential salary information to make

7   offers to Google/Waymo employees to induce them to leave

8   Google/Waymo, and further alleging that Levandowski breached his

9   employment agreement by using Google/Waymo's confidential

10   information about a third-party vendor that manufactured parts related to

11   laser technology for driverless cars.

12   **Consent to Arbitration**

13   19.    Claimants consent to have this dispute heard by a panel of JAMS arbitrators,

14   pursuant to the arbitration provisions in the 2009 and 2012 Employment Agreements.

15   **First Claim – For Declaratory Relief**

16   20.    Claimants repeat and re-allege each and every allegation in paragraphs 1 through

17   19 above as if fully set forth herein.

18   21.    Respondent's first, second, and seventh causes of action in the California Lawsuit

19   are subject to mandatory arbitration in accordance with the terms of the 2009 Employment

20   Agreement.

21   22.    Respondent's first, second, and seventh causes of action in the California Lawsuit

22   are subject to mandatory arbitration in accordance with the terms of the 2012 Employment

23   Agreement.

24   23.    Claimants seek a final and binding declaration that Respondent's first, second,

25   and seventh causes of action in the California Lawsuit are subject to mandatory arbitration.

26   **Second Claim – For Declaratory Relief**

27   24.    Claimants repeat and re-allege each and every allegation in paragraphs 1 through

28   23 above as if fully set forth herein.

1    25.    Claimants seek a final and binding declaration that Respondent's first, second,

2    and seventh causes of action in the California Lawsuit are without merit.

3                                **Prayer for Relief**

4    WHEREFORE, Claimants respectfully pray for the following:

5    A.    A declaration that Respondent's first, second, and seventh causes of action set

6    forth in the California Lawsuit are subject to mandatory arbitration in accordance with the terms

7    of the 2009 and 2012 Employment Agreements;

8    B.    A declaration that Respondent's first, second, and seventh causes of action set

9    forth in the California Lawsuit are without merit; and

10    C.    Any other and further relief that the Arbitrators deem just and proper.

11

12   Dated: March 31, 2017                    MORRISON & FOERSTER LLP

13
                                             By: _____
14                                               ARTURO J. GONZÁLEZ

15                                           Attorneys for Claimants
                                             UBER TECHNOLOGIES, INC.,
16                                           OTTOMOTTO LLC, and OTTO TRUCKING LLC

17

18

19

20

21

22

23

24

25

26

27

28

Case: 20-03050   Doc# 129-2   Filed: 02/24/21   Entered: 02/24/21 04:14:33   Page 52
of 84

# EXHIBIT D

## Exhibit B

GOOGLE INC.

AT-WILL EMPLOYMENT, CONFIDENTIAL INFORMATION, INVENTION ASSIGNMENT AND ARBITRATION AGREEMENT

---

As a condition of my employment with Google Inc., its subsidiaries, affiliates, successors or assigns (together the "Company"), and in consideration of my receipt of confidential information, my employment with the Company and my receipt of the compensation now and hereafter paid to me by the Company, I agree to the following:

1. **At-Will Employment.** I UNDERSTAND AND ACKNOWLEDGE THAT MY EMPLOYMENT WITH THE COMPANY IS FOR AN UNSPECIFIED DURATION AND CONSTITUTES "AT-WILL" EMPLOYMENT. I ALSO UNDERSTAND THAT ANY REPRESENTATION TO THE CONTRARY IS UNAUTHORIZED AND NOT VALID UNLESS IN WRITING AND SIGNED BY THE CHIEF EXECUTIVE OFFICER OF THE COMPANY. ACCORDINGLY, I ACKNOWLEDGE THAT MY EMPLOYMENT RELATIONSHIP MAY BE TERMINATED AT ANY TIME, WITH OR WITHOUT GOOD CAUSE OR FOR ANY OR NO CAUSE, AT MY OPTION OR AT THE OPTION OF THE COMPANY, WITH OR WITHOUT NOTICE.

2. **Confidential Information.**

(a) *Company Information.* I understand that, as a result of my employment with the Company, I will obtain extensive and valuable Confidential Information belonging to the Company. I agree at all times during my employment with the Company and thereafter, to hold in the strictest confidence, and not to use, except for the benefit of the Company, or to disclose to any person, firm or corporation without written authorization of the Chief Executive Officer or the Board of Directors of the Company, any Company Confidential Information, except under a non-disclosure agreement duly authorized and executed by the Company. I understand that my unauthorized use or disclosure of Company Confidential Information during my employment may lead to disciplinary action, up to and including immediate termination and legal action by the Company. I understand that "Company Confidential Information" means any Company non-public information that relates to the actual or anticipated business or research and development of the Company, technical data, trade secrets or know-how, including, but not limited to, research, product plans, or other information regarding Company's products or services and their marketing, the identity of the Company's customers (including, but not limited to, customer lists and the identity of customers of the Company on whom I called or with whom I became acquainted during the term of my employment), software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances or other business information. I further understand that Company Confidential Information does not include any of the foregoing items which have become publicly known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved or improvements or new versions thereof.

(b) *Former Employer Information.* I agree that I will not, during my employment with the Company, improperly use or disclose any proprietary information or trade secrets of any former or concurrent employer or other person or entity, and that I will not bring onto the premises of the Company any unpublished document or proprietary information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

(c) *Third Party Information.* I recognize that the Company may have received and in the future may receive from third parties associated with the Company, e.g., the Company's customers, suppliers, licensors, licensees, partners, or collaborators, their confidential or proprietary information ("Associated Third Party Confidential Information"). By way of example, Associated Third Party Confidential Information may include the habits or practices of Associated Third Parties, the technology of Associated Third Parties, requirements of Associated Third Parties, and information related to the business conducted between the Company and such Associated Third Parties. I agree at

all times during my employment with the Company and thereafter, to hold in the strictest confidence, and not to use or to disclose to any person, firm or corporation any Associated Third Party Confidential Information, except as necessary in carrying out my work for the Company consistent with the Company's agreement with such Associated Third Parties.   I understand that my unauthorized use or disclosure of Associated Third Party Confidential Information during my employment will lead to disciplinary action, up to and including immediate termination and legal action by the Company.

(d) *User Data*.   User Data consists of information directly or indirectly collected by Google from users of its services.  User Data includes individual log files related to any user session or use of Google services or log files in the aggregate. User Data also includes personally identifiable information, which is information that can be directly associated with a specific person or entity, such as a name, address, telephone number, e-mail address, or information about activities that can be directly linked to a user, such as an IP address or cookie information.  I agree to treat User Data as Company Confidential Information under this Agreement and to access, use and disclose User Data only as authorized by and in accordance with this Agreement and Company policies.

3.    Inventions

(a)    *Inventions Retained and Licensed*.  *I have attached hereto as Exhibit A, a list describing all inventions, discoveries, original works of authorship, developments, improvements, and trade secrets, which were conceived in whole or in part by me prior to my employment with the Company to which I have any right, title or interest, which are subject to California Labor Code Section 2870 attached hereto as Exhibit B, and which relate to the Company's proposed business, products, or research and development (collectively referred to as "Prior Inventions"); which are not assigned to the Company hereunder, or, if no such list is attached, I represent and warrant that there are no such Prior Inventions. Furthermore, I represent and warrant that none of the Prior Inventions listed on Exhibit A of this Agreement will materially affect my ability to perform my obligations under this Agreement.  If, in the course of my employment with the Company, I incorporate any Prior Invention into or use any Prior Invention in connection with any product, process, service, technology or other work by or on behalf of the Company, I hereby grant to the Company a nonexclusive, royalty-free, fully paid, irrevocable, perpetual, worldwide license, with the right to grant and authorize sublicenses, to make, have made, modify, use, import, offer for sale, and sell such Prior Invention as part of or in connection with such product, process, service, technology or other work and to practice any method related thereto.*

(b)    *Assignment of Inventions*.  I agree that I will promptly make full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and hereby assign to the Company, or its designee, all my right, title, and interest in and to any and all inventions, original works of authorship, developments, concepts, improvements, designs, discoveries, ideas, trademarks or trade secrets, whether or not patentable or registerable under patent, copyright or similar laws, which I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time that I am in the employ of the Company (collectively referred to as "Inventions"), except as provided in Section 3(e) and Section 3(f) below.  I further acknowledge that all original works of authorship which are made by me (solely or jointly with others) within the scope and of and during the period of my employment with the Company and which are protectable by copyright are "works made for hire", as that term is defined in the United States Copyright Act.  I understand and agree that the decision whether or not to commercialize or market any Inventions developed by me solely or jointly with others is within the Company's sole discretion and for the Company's sole benefit and that no royalty or other consideration will be due to me as a result of the Company's efforts to commercialize or market any such Inventions.

(c)    *Maintenance of Records*.  I agree to keep and maintain adequate and current accurate and authentic written records of all Inventions made by me (solely or jointly with others) during the term of my employment with the Company.  The records will be in the form of notes, sketches, drawings, electronic files, reports, or any other format that may be specified by the Company.  The records are and will be available to and remain the sole property of the Company at all times.

(d)    *Patent and Copyright Registrations*.  I agree to assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to

the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths or affirmations, assignments and all other instruments which the Company shall deem proper or necessary in order to apply for, register, obtain, maintain, defend, and enforce such rights and in order to assign and convey to the Company, its successors, assigns, and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any rights relating thereto, and testifying in a suit or other proceeding relating to such Inventions. I further agree that my obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue after the termination of this Agreement. If the Company is unable because of my mental or physical incapacity or for any other reason to secure my signature with respect to any Inventions, including, without limitation, to apply for or to pursue any application for any United States or foreign patents or copyright registrations covering such Inventions, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf and stead to execute and file any papers, oaths and to do all other lawfully permitted acts with respect to such Inventions with the same legal force and effect as if executed by me.

(e)     *Exception to Assignments.*  Except as provided in Section 3(f), I understand that the provisions of this Agreement requiring assignment of Inventions to the Company do not apply to any invention which qualifies fully under the provisions of California Labor Code Section 2870 (attached hereto as Exhibit B). I will advise the Company promptly in writing of any Inventions that I believe meet the criteria in California Labor Code Section 2870 and not otherwise disclosed on Exhibit A.

(f)     *Project Inventions.*  I understand that during my employment with the Company, I will be a member of the Project Chauffeur Development Team (the "Development Team"). I hereby acknowledge and agree that for so long as I am a member of the Development Team, any and all Inventions (including the Technology (as defined in my amended offer letter by and between the Company and me (the "Amended Offer Letter"))), arising from my work at, on behalf of, or within the scope of the Project (as defined in the Amended Offer Letter) and any and all copyrights, patents, mask work rights or other intellectual property rights or technology related thereto in any and all countries (collectively, the "Project Inventions") will be exclusively owned by Google Auto LLC, a wholly owned subsidiary of Google Inc., or such other entity designated by Google from time to time (the "Project Entity"). I hereby agree to assign any and all such right, title and interest in and to such Project Inventions solely to Project Entity. Furthermore, I agree to assist the Project Entity, or its designee, at the Project Entity's expense, in every proper way to secure the Project Entity's rights in the Project Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to the Project Entity of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths or affirmations, assignments and all other instruments which the Project Entity shall deem proper or necessary in order to apply for, register, obtain, maintain, defend, and enforce such rights and in order to assign and convey to the Project Entity, its successors, assigns, and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any rights relating thereto, and testifying in a suit or other proceeding relating to such Inventions. I further agree that my obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue after the termination of this Agreement. If the Project Entity is unable because of my mental or physical incapacity or for any other reason to secure my signature with respect to any Project Inventions, including, without limitation, to apply for or to pursue any application for any United States or foreign patents or copyright registrations covering such Project Inventions, then I hereby irrevocably designate and appoint the Project Entity and its duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf and stead to execute and file any papers, oaths and to do all other lawfully permitted acts with respect to such Inventions with the same legal force and effect as if executed by me. I agree to keep and maintain adequate and current accurate and authentic written records of all Project Inventions made by me (solely or jointly with others) for so long as I am a member of the Development Team. The records will be in the form of notes, sketches, drawings, electronic files, reports, or any other format that may be specified by the Project Entity. The records are and will be available to and remain the sole property of the Project Entity at all times.

4.     **Conflicting Employment**

(a)     *Current Obligations.*  I agree that, during the term of my employment with the Company, I will not engage in any other employment, occupation, or consulting directly related to the business in which the Company is now involved or becomes involved during the term of my employment, nor will I engage in any other activities, including, but not limited to, employment outside of the Company, membership on Boards of Directors or Advisory

Boards other than the Company's, personal investments or establishing, maintaining or servicing business relationships with family or friends that conflict with my obligations to the Company.

*(b)    Prior Relationships.*  Without limiting Section 4(a), I represent that I have no other agreements, relationships or commitments to any other person or entity that conflict with my obligations to the Company under this Agreement or my ability to become employed and perform the services for which I am being hired by the Company. I further agree that if I have signed a confidentiality agreement or similar type of agreement with any former employer or other entity, I will comply with the terms of any such agreement to the extent that its terms are lawful under applicable law.  I represent and warrant that after undertaking a careful search (including searches of my computers, cell phones, electronic devices and documents), I have returned all property and confidential information belonging to all prior employers, and that failure to do so may result in my termination. Moreover, in the event that the Company or any of its directors, officers, agents, employees, investors, shareholders, administrators, affiliates, divisions, subsidiaries, predecessor or successor corporations, or assigns is sued based on any obligation or agreement to which I am a party or am bound (other than that my agreements with the Company), I agree to fully indemnify the Company, its directors, officers, agents, employees, investors, shareholders, administrators, affiliates, divisions, subsidiaries, predecessor and successor corporations, and assigns for all verdicts, judgments, settlements, and other losses incurred by the Company (the Indemnitee), as well as any reasonable attorneys' fees and costs if the plaintiff is the prevailing party in such an action, in the event that the Company is the subject of any legal action based on factual allegations that, if true, would conflict with my obligations under this Agreement.

**5.    Returning Company Documents**  Upon separation from employment with the Company or on demand by the Company during my employment, I will immediately deliver to the Company, and will not keep in my possession, recreate or deliver to anyone else, any and all Company property, including, but not limited to, Confidential Information, User Data, Associated Third Party Confidential Information, as well as all devices and equipment belonging to the Company (including computers, handheld electronic devices, telephone equipment, and other electronic devices), Company credit cards, records, data, notes, notebooks, reports, files, proposals, lists, correspondence, specifications, drawings blueprints, sketches, materials, photographs, charts, all documents and property, and reproductions of any of the aforementioned items that were developed by me pursuant to my employment with the Company, obtained by me in connection with my employment with the Company, or otherwise belonging to the Company, its successors or assigns, including, without limitation, those records maintained pursuant to Section 3(c) and Section 3(f). I also consent to an exit interview to confirm my compliance with this Section 5.

**6.    Termination Certification.**  Upon separation from employment with the Company, I agree to immediately sign and deliver to the Company the "Termination Certification" attached hereto as **Exhibit C.** I also agree to keep the Company advised of my home and business address for a period of one (1) year after termination of my employment with the Company, so that the Company can contact me regarding my continuing obligations provided by this Agreement.

**7.    Notification of New Employer.**  In the event that I leave the employ of the Company, I hereby grant consent to notification by the Company to my new employer about my obligations under this Agreement.

**8.    Solicitation of Employees.**  I agree that for a period of twelve (12) months immediately following the termination of my relationship with the Company for any reason, whether with or without cause, I shall not either directly or indirectly solicit, induce, recruit or encourage any of the Company's employees to leave their employment, or take away such employees, or attempt to solicit, induce, recruit, encourage or take away employees of the Company, either for myself or for any other person or entity.

**9.    Export Statement of Assurance.**  I recognize that, in the course of my employment, the Company may release to me items (including, but not limited to, software, technology, or systems, equipment and components) subject to the Export Administration Regulations ("EAR") or the International Traffic in Arms Regulations ("ITAR"). I hereby certify that I will not export, re-export or release these items in violation of the EAR or ITAR. In order to comply with this certification, I will not disclose/export/re-export these items to any person other than the persons in my working group as required in the performance of the job responsibilities assigned to me by the Company. I understand that if I have any question regarding whether a given disclosure/export/re-export is or would be contrary to this certification, I should immediately contact the Legal Services Department before taking any actions.

**10.     Code of Conduct Acknowledgement.**  I acknowledge that I have read the Company's Code of Conduct, which is available on the Company's public website and can be found by clicking "About Google" and looking on the "Investor Relations" page of the site, specifically at http://investor.google.com/corporate/code-of-conduct.html. I agree to adhere to the terms of the Code of Conduct and to report any violations of the Code.

**11.     Representations.**  I agree to execute any proper oath or affirmation or verify any proper document required to carry out the terms of this Agreement.  I represent that my performance of all terms of the Agreement will not breach any agreement to keep in confidence proprietary information acquired by me in confidence or in trust prior to my employment by the Company.  I hereby represent and warrant that I have not entered into, and I agree I will not enter into, any oral or written agreement in conflict herewith.

**12.     Audit.**  I acknowledge that I have no reasonable expectation of privacy in any computer, technology system, email, handheld device, telephone, or documents that are used to conduct the business of the Company.  As such, the Company has the right to audit and search all such items and systems, without further notice to me, to ensure that the Company is licensed to use the software on the Company's devices in compliance with the Company's software licensing policies, to ensure compliance with the Company's policies, and for any other business-related purposes in the Company's sole discretion.  I understand that I am not permitted to add any unlicensed, unauthorized or non-compliant applications to the Company's technology systems and that I shall refrain from copying unlicensed software onto the Company's technology systems or using non-licensed software or web sites.  I understand that it is my responsibility to comply with the Company's policies governing use of the Company's documents and the Internet, email, telephone and technology systems to which I will have access in connection with my employment.

**13.     *Permission for Use of Images.*  *I understand that during my employment with Google, agents of the company may take film, digital or other images of me, for subsequent use in non-commercial materials or collateral, including, but not limited to, the Company website (external and internal), annual reports, press day materials, internal presentations, analyst presentations, company, lobby or reception area stagings or productions, etc., without my prior consent, approval or review.  My name may or may not be included along with my image.  I hereby grant advance permission for such use of my image(s) by the Company, both during and after my employment, and I understand that I will not receive any royalties or other compensation for this use and I further agree to release and hold harmless any agent, employee, officer, director or other individual affiliated or working on behalf of the Company with respect to such use of my image(s).*

**14.     Arbitration and Equitable Relief**

*(a)     Arbitration.*  IN CONSIDERATION OF MY EMPLOYMENT WITH THE COMPANY, ITS PROMISE TO ARBITRATE ALL EMPLOYMENT-RELATED DISPUTES, AND MY RECEIPT OF THE COMPENSATION, PAY RAISES AND OTHER BENEFITS PAID TO ME BY THE COMPANY, AT PRESENT AND IN THE FUTURE, I AGREE THAT ANY AND ALL CONTROVERSIES, CLAIMS, OR DISPUTES WITH ANYONE (INCLUDING THE COMPANY AND ANY EMPLOYEE, OFFICER, DIRECTOR, SHAREHOLDER OR BENEFIT PLAN OF THE COMPANY IN THEIR CAPACITY AS SUCH OR OTHERWISE), WHETHER BROUGHT ON AN INDIVIDUAL, GROUP, OR CLASS BASIS, ARISING OUT OF, RELATING TO, OR RESULTING FROM MY EMPLOYMENT WITH THE COMPANY OR THE TERMINATION OF MY EMPLOYMENT WITH THE COMPANY, INCLUDING ANY BREACH OF THIS AGREEMENT, SHALL BE SUBJECT TO BINDING ARBITRATION UNDER THE ARBITRATION RULES SET FORTH IN CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 1280 THROUGH 1294.2, INCLUDING SECTION 1283.05 (THE "RULES") AND PURSUANT TO CALIFORNIA LAW.  DISPUTES WHICH I AGREE TO ARBITRATE, AND THEREBY AGREE TO WAIVE ANY RIGHT TO A TRIAL BY JURY, INCLUDE ANY STATUTORY CLAIMS UNDER STATE OR FEDERAL LAW, INCLUDING, BUT NOT LIMITED TO, CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, THE AMERICANS WITH DISABILITIES ACT OF 1990, THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, THE OLDER WORKERS BENEFIT PROTECTION ACT, THE SARBANES-OXLEY ACT, THE WORKER ADJUSTMENT AND RETRAINING NOTIFICATION ACT, THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, THE FAMILY AND MEDICAL LEAVE ACT, THE FAIR LABOR STANDARS ACT, THE CALIFORNIA FAMILY

RIGHTS ACT, THE CALIFORNIA LABOR CODE, CLAIMS OF HARASSMENT, DISCRIMINATION, WRONGFUL TERMINATION AND ANY OTHER CONTRACTUAL, TORT OR STATUTORY CLAIMS UNDER FEDERAL, CALIFORNIA AND LOCAL LAWS, TO THE EXTENT ALLOWED BY LAW. I FURTHER UNDERSTAND THAT THIS AGREEMENT TO ARBITRATE ALSO APPLIES TO ANY DISPUTES THAT THE COMPANY MAY HAVE WITH ME.

(b)   *Procedure.*   I AGREE THAT ANY ARBITRATION WILL BE ADMINISTERED BY JUDICIAL ARBITRATION & MEDIATION SERVICES, INC. ("JAMS"), PURSUANT TO ITS EMPLOYMENT ARBITRATION RULES & PROCEDURES (THE "JAMS RULES"). I AGREE THAT THE ARBITRATOR SHALL HAVE THE POWER TO DECIDE ANY MOTIONS BROUGHT BY ANY PARTY TO THE ARBITRATION, INCLUDING MOTIONS FOR SUMMARY JUDGMENT AND/OR ADJUDICATION, MOTIONS TO DISMISS OR TO STRIKE, DEMURRERS, AND MOTIONS FOR CLASS CERTIFICATION, PRIOR TO ANY ARBITRATION HEARING. I ALSO AGREE THAT THE ARBITRATOR SHALL HAVE THE POWER TO AWARD ANY REMEDIES AVAILABLE UNDER APPLICABLE LAW, INJUNCTIVE RELIEF, AND THAT THE ARBITRATOR SHALL AWARD ATTORNEYS' FEES AND COSTS TO THE PREVAILING PARTY, EXCEPT AS PROHIBITED BY LAW. I UNDERSTAND THAT THE COMPANY WILL PAY FOR ANY ADMINISTRATIVE OR HEARING FEES CHARGED BY THE ARBITRATOR OR JAMS EXCEPT THAT I SHALL PAY ANY FILING FEES ASSOCIATED WITH ANY ARBITRATION THAT I INITIATE, BUT ONLY SO MUCH OF THE FILING FEES AS I WOULD HAVE INSTEAD PAID HAD I FILED A COMPLAINT IN A COURT OF LAW. I AGREE THAT THE ARBITRATOR SHALL ADMINISTER AND CONDUCT ANY ARBITRATION IN ACCORDANCE WITH CALIFORNIA LAW, INCLUDING THE CALIFORNIA CODE OF CIVIL PROCEDURE, AND THAT THE ARBITRATOR SHALL APPLY SUBSTANTIVE AND PROCEDURAL CALIFORNIA LAW TO ANY DISPUTE OR CLAIM, WITHOUT REFERENCE TO RULES OF CONFLICT OF LAW. TO THE EXTENT THAT THE JAMS RULES CONFLICT WITH CALIFORNIA LAW, CALIFORNIA LAW SHALL TAKE PRECEDENCE. I AGREE THAT THE DECISION OF THE ARBITRATOR SHALL BE IN WRITING. I AGREE THAT ANY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED IN SANTA CLARA COUNTY, CALIFORNIA.

(c)   *Remedy.*   EXCEPT AS PROVIDED BY THE RULES AND THIS AGREEMENT, ARBITRATION SHALL BE THE SOLE, EXCLUSIVE AND FINAL REMEDY FOR ANY DISPUTE BETWEEN ME AND THE COMPANY. ACCORDINGLY, EXCEPT AS PROVIDED FOR BY THE RULES AND THIS AGREEMENT, NEITHER I NOR THE COMPANY WILL BE PERMITTED TO PURSUE COURT ACTION REGARDING CLAIMS THAT ARE SUBJECT TO ARBITRATION. NOTWITHSTANDING, THE ARBITRATOR WILL NOT HAVE THE AUTHORITY TO DISREGARD OR REFUSE TO ENFORCE ANY LAWFUL COMPANY POLICY, AND THE ARBITRATOR SHALL NOT ORDER OR REQUIRE THE COMPANY TO ADOPT A POLICY NOT OTHERWISE REQUIRED BY LAW. NOTHING IN THIS AGREEMENT OR IN THIS PROVISION IS INTENDED TO WAIVE THE PROVISIONAL RELIEF REMEDIES AVAILABLE UNDER THE RULES.

(d)   *Administrative Relief.*   I UNDERSTAND THAT THIS AGREEMENT DOES NOT PROHIBIT ME FROM PURSUING AN ADMINISTRATIVE CLAIM WITH A LOCAL, STATE OR FEDERAL ADMINISTRATIVE BODY SUCH AS THE DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING, THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, THE NATIONAL LABOR RELATIONS BOARD, OR THE WORKERS' COMPENSATION BOARD. THIS AGREEMENT DOES, HOWEVER, PRECLUDE ME FROM PURSUING COURT ACTION REGARDING ANY SUCH CLAIM.

(e)   *Voluntary Nature of Agreement.*   I ACKNOWLEDGE AND AGREE THAT I AM EXECUTING THIS AGREEMENT VOLUNTARILY AND WITHOUT ANY DURESS OR UNDUE INFLUENCE BY THE COMPANY OR ANYONE ELSE. I FURTHER ACKNOWLEDGE AND AGREE THAT I HAVE CAREFULLY READ THIS AGREEMENT AND THAT I HAVE ASKED ANY QUESTIONS NEEDED FOR ME TO UNDERSTAND THE TERMS, CONSEQUENCES AND BINDING EFFECT OF THIS AGREEMENT AND FULLY UNDERSTAND IT, INCLUDING THAT *I AM WAIVING MY RIGHT TO A JURY TRIAL.* FINALLY, I AGREE THAT I HAVE BEEN PROVIDED AN OPPORTUNITY TO SEEK THE ADVICE OF AN ATTORNEY OF MY CHOICE BEFORE SIGNING THIS AGREEMENT.

(f)   *Arbitration Clause, Governing Law.*   THIS ARBITRATION CLAUSE IS ENTERED PURSUANT TO, AND SHALL BE GOVERNED BY, THE FEDERAL ARBITRATION ACT (9 U.S.C. SECTION 1, ET SEQ.),

BUT IN ALL OTHER RESPECTS THIS AGREEMENT IS GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA.

15.   **General Provisions**

(a)   *Governing law; Consent to Personal Jurisdiction*.   Except as set forth elsewhere in this Agreement, this Agreement will be governed by the laws of the State of California without giving effect to any choice of law rules or principles that may result in the application of the laws of any jurisdiction other than California.   To the extent that any lawsuit is permitted under this Agreement, I hereby expressly consent to the personal jurisdiction of the state and federal courts located in California for any lawsuit filed there against me by the Company arising from or relating to this Agreement.

(b)   *Entire Agreement*.  This Agreement, together with the Exhibits herein, and my offer letter from the Company  set forth the entire agreement and understanding between the Company and me *relating to the subject matter herein and* supersedes all prior discussions or representations between us including, but not limited to, any representations made during my interview(s) or relocation negotiations, whether written or oral.  No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the Chief Executive Officer of the Company and me.  Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

*(the remainder of this page is intentionally blank)*

**Exhibit A**

**GOOGLE INC.**

**LIST OF PRIOR INVENTIONS
AND ORIGINAL WORKS OF AUTHORSHIP**

Do you have inventions or improvements?   Check a box and sign below.

☐   No inventions or improvements

☐   Yes – they are listed below

☐   Additional sheets attached

| Title | Date | Identifying Number or Brief Description |
|-------|------|----------------------------------------|
|       |      |                                        |

Signature of Employee: _____

Print Name of Employee: _ Anthony LevAnDowski

Date: _ 2/24/12

(c)    *Severability.*  If one or more of the provisions in this Agreement are deemed void by law, then the remaining provisions will continue in full force and effect.

(d)    *Successors and Assigns.*  This Agreement will be binding upon my heirs, executors, assigns, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns.

(e) *Waiver.*   Waiver by the Company of a breach of any provision of this Agreement will not operate as a waiver of any other or subsequent breach.

(f)    *Survivorship.*  The rights and obligations of the parties to this Agreement will survive termination of my employment with the Company.

Date: __

**Signature**

Anthony LevAndowski

**Name of Employee (typed or printed)**

Date: __  1/1/12

**Signature**

SEBASTIAN THRUN

**Name of Company Representative (typed or printed)**

**EXHIBIT B**

**GOOGLE INC.**

**CALIFORNIA LABOR CODE SECTION 2870**
**INVENTION ON OWN TIME-EXEMPTION FROM AGREEMENTS**

---

"(a)   Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

> (1)   Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer.

> (2)   Result from any work performed by the employee for the employer.

(b)   To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable."

EXHIBIT C

GOOGLE INC.

TERMINATION CERTIFICATION

---

This is to certify that I do not have in my possession, nor have I failed to return, any devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items belonging to Google Inc., its subsidiaries, affiliates, successors or assigns (together, the "Company").

I further certify that I have complied with all the terms of the Company's At Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement signed by me, including the reporting of any inventions and original works of authorship (as defined therein), conceived or made by me (solely or jointly with others) covered by that agreement.

I have informed the Company in the event I am subject to any litigation holds or similar request for record retention.

I further agree that, in compliance with the At Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement, I will adhere to my obligations to the Company contained in Section 2 (Confidential Information), Section 3 (Inventions), Section 5 (Return of Company Documents) and Section 8 (Solicitation of Employees).

After leaving the Company's employment, I will be employed by _____ in the position of:

_____. I am / am not (circle one) subject to a litigation hold/request for record retention.


_____

*Signature of Employee*


_____

*Print Name*


_____

*Date*


_____

*Address for Notifications*

# EXHIBIT E

## GOOGLE INC.

### AT-WILL EMPLOYMENT, CONFIDENTIAL INFORMATION, INVENTION ASSIGNMENT AND ARBITRATION AGREEMENT

This Agreement replaces and supersedes any and all prior versions of this document. As a condition of my continuing employment with Google Inc., its subsidiaries, affiliates, successors or assigns (together "the Company"), and in consideration of receipt of confidential information as well as my participation in the Google Chauffeur project, my employment with the Company and my receipt of the compensation now and hereafter paid to me by the Company, I agree to the following:

1.    **At-Will Employment.** I UNDERSTAND AND ACKNOWLEDGE THAT MY EMPLOYMENT WITH THE COMPANY IS FOR AN UNSPECIFIED DURATION AND CONSTITUTES "AT-WILL" EMPLOYMENT. I ALSO UNDERSTAND THAT ANY REPRESENTATION TO THE CONTRARY IS UNAUTHORIZED AND NOT VALID UNLESS IN WRITING AND SIGNED BY THE CHIEF EXECUTIVE OFFICER OF THE COMPANY. ACCORDINGLY, I ACKNOWLEDGE THAT MY EMPLOYMENT RELATIONSHIP MAY BE TERMINATED AT ANY TIME, WITH OR WITHOUT GOOD CAUSE OR FOR ANY OR NO CAUSE, AT MY OPTION OR AT THE OPTION OF THE COMPANY, WITH OR WITHOUT NOTICE.

2.    **Confidential Information.**

*(a)    Company Information.* I understand that, as a result of my employment with the Company, I will obtain extensive and valuable Confidential Information belonging to the Company. I agree at all times during my employment with the Company and thereafter, to hold in the strictest confidence, and not to use, except for the benefit of the Company, or to disclose to any person, firm or corporation without written authorization of the Chief Executive Officer or the Board of Directors of the Company, any Company Confidential Information, except under a non-disclosure agreement duly authorized and executed by the Company. I understand that my unauthorized use or disclosure of Company Confidential Information during my employment may lead to disciplinary action, up to and including immediate termination and legal action by the Company. I understand that "Company Confidential Information" means any Company non-public information that relates to the actual or anticipated business or research and development of the Company, technical data, trade secrets or know-how, including, but not limited to, research, product plans, or other information regarding Company's products or services and their marketing, the identity of the Company's customers (including, but not limited to, customer lists and the identity of customers of the Company on whom I called or with whom I became acquainted during the term of my employment), software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances or other business information. I further understand that Company Confidential Information does not include any of the foregoing items which have become publicly known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved or improvements or new versions thereof.

*(b)    Former Employer Information.* I agree that I will not, during my employment with the Company, improperly use or disclose any proprietary information or trade secrets of any former or concurrent employer or other person or entity and that I will not bring onto the premises of the Company any unpublished document or proprietary information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

*(c)    Third Party Information.* I recognize that the Company may have received and in the future may receive from third parties associated with the Company, e.g., the Company's customers, suppliers, licensors, licensees, partners, or collaborators, their confidential or proprietary information ("Associated Third Party Confidential Information"). By way of example, Associated Third Party Confidential Information may include the habits or practices of Associated Third Parties, the technology of Associated Third Parties, requirements of Associated Third Parties, and information related to the business conducted between the Company and such Associated Third Parties.

*Eff. Date 4.28.08levandowski*
*CA version*

I agree at all times during my employment with the Company and thereafter, to hold in the strictest confidence, and not to use or to disclose to any person, firm or corporation any Associated Third Party Confidential Information, except as necessary in carrying out my work for the Company consistent with the Company's agreement with such Associated Third Parties. I understand that my unauthorized use or disclosure of Associated Third Party Confidential Information during my employment will lead to disciplinary action, up to and including immediate termination and legal action by the Company.

*(d)     User Data.* User Data consists of information directly or indirectly collected by Google from users of its services. User Data includes individual log files related to any user session or use of Google services or log files in the aggregate. User Data also includes personally identifiable information, which is information that can be directly associated with a specific person or entity, such as a name, address, telephone number, e-mail address, or information about activities that can be directly linked to a user, such as an IP address or cookie information. I agree to treat User Data as Company Confidential Information under this Agreement and to access, use and disclose User Data only as authorized by and in accordance with this Agreement and Company policies.

## 3.     Inventions

*(a)     Inventions Retained and Licensed.* I have attached hereto as Exhibit A, a list describing all inventions, discoveries, original works of authorship, developments, improvements, and trade secrets, which were conceived in whole or in part by me prior to my employment with the Company to which I have any right, title or interest, which are subject to California Labor Code Section 2870 attached hereto as Exhibit B, and which relate to the Company's proposed business, products, or research and development (collectively referred to as "Prior Inventions"); which are not assigned to the Company hereunder, or, if no such list is attached, I represent and warrant that there are no such Prior Inventions.     To the extent the inventions, discoveries, original works of authorship, developments, improvements, and trade secrets set forth in Exhibit A were conceived in whole or in part by me during my employment with the Company, the Company has agreed that I am the sole owner of the inventions, discoveries, original works of authorship, developments, improvements, and trade secrets set forth in Exhibit A. Furthermore, I represent and warrant that none of the Prior Inventions listed on Exhibit A of this Agreement will materially affect my ability to perform my obligations under this Agreement. The terms of my grant to the Company of a license to the inventions, discoveries, original works of authorship, developments, improvements, and trade secrets set forth in Exhibit A are provided in a side agreement between Google Inc., Anthony's Robots, LLC and myself dated May 19, 2009 (the "Side Agreement"). Other than the inventions, discoveries, original works of authorship, developments, improvements and trade secrets set forth in Exhibit A, if in the course of my employment with the Company, I incorporate any Prior Invention into or use any Prior Invention in connection with any product, process, service, technology or other work by or on behalf of the Company, I hereby grant to the Company a nonexclusive, royalty free, fully paid, irrevocable, perpetual, worldwide license, with the right to grant and authorize sublicenses, to make, have made, modify, use, import, offer for sale and sell such Prior Invention as part of or in connection with such product, process, service, technology or other work and to practice any method related thereto.

*(b)     Assignment of Inventions.* I agree that other than those such inventions, discoveries, original works of authorship, developments, improvements, and trade secrets set forth in Exhibit A, and except as provided in Section 2 of the Side Agreement, I will promptly make full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and hereby assign to the Company, or its designee, all my right, title, and interest in and to any and all inventions, original works of authorship, developments, concepts, improvements, designs, discoveries, ideas, trademarks or trade secrets, whether or not patentable or registerable under patent, copyright or similar laws, which I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time that I am in the employ of the Company (collectively referred to as "Inventions"), except as provided in Section 3(e) below. I further acknowledge that all original works of authorship which are made by me (solely or jointly with others) within the scope and of and during the period of my employment with the Company and which are protectable by copyright are "works made for hire", as that term is defined in the United States Copyright Act. I understand and agree that the decision whether or not to commercialize or market any Inventions developed by me solely or jointly with others is within the Company's sole discretion and for the Company's sole benefit and that no royalty or other consideration will be due to me as a result of the Company's efforts to commercialize or market any such Inventions.

(c)   _Maintenance of Records_.   I agree to keep and maintain adequate and current accurate and authentic written records of all Inventions made by me (solely or jointly with others) during the term of my employment with the Company.  The records will be in the form of notes, sketches, drawings, electronic files, reports, or any other format that may be specified by the Company.  The records are and will be available to and remain the sole property of the Company at all times.

(d)   _Patent and Copyright Registrations_.   I agree to assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths or affirmations, assignments and all other instruments which the Company shall deem proper or necessary in order to apply for, register, obtain, maintain, defend, and enforce such rights and in order to assign and convey to the Company, its successors, assigns, and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any rights relating thereto, and testifying in a suit or other proceeding relating to such Inventions.  I further agree that my obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue after the termination of this Agreement.  If the Company is unable because of my mental or physical incapacity or for any other reason to secure my signature with respect to any Inventions, including, without limitation, to apply for or to pursue any application for any United States or foreign patents or copyright registrations covering such Inventions, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf and stead to execute and file any papers, oaths and to do all other lawfully permitted acts with respect to such Inventions with the same legal force and effect as if executed by me.

(e)   _Exception to Assignments_.   I understand that the provisions of this Agreement requiring assignment of Inventions to the Company do not apply to any invention which qualifies fully under the provisions of California Labor Code Section 2870 (attached hereto as Exhibit B).  I will advise the Company promptly in writing of any inventions that I believe meet the criteria in California Labor Code Section 2870 and not otherwise disclosed on Exhibit A.

## 4.   **Conflicting Employment**

(a)   _Current Obligations_.   I agree that other than as set forth in Sections 2 and 3 of the Side Agreement,, I will not engage in any other employment, occupation, or consulting directly related to the business in which the Company is now involved or becomes involved during the term of my employment, nor will I engage in any other activities, including, but not limited to, employment outside of the Company, membership on Boards of Directors or Advisory Boards other than the Company's, personal investments or establishing, maintaining or servicing business relationships with family or friends that conflict with my obligations to the Company.

(b)   _Prior Relationships_.   Other than as described in the Side Agreement, I represent that I have had no other agreements, relationships or commitments to any other person or entity that conflict with my obligations to the Company under this Agreement or my ability to perform the services for which I am being hired by the Company and, other than as allowed in the Side Agreement, will have no other agreements, relationships or commitments to any other person or entity that conflict with my obligations to the Company under this Agreement.   I further agree that if I have signed a confidentiality agreement or similar type of agreement with any former employer or other entity, I will comply with the terms of any such agreement to the extent that its terms are lawful under applicable law.  I represent and warrant that after undertaking a careful search (including searches of my computers, cell phones, electronic devices and documents), I have returned all property and confidential information belonging to all prior employers, and that failure to do so may result in my termination.  Moreover, in the event that the Company or any of its directors, officers, agents, employees, investors, shareholders, administrators, affiliates, divisions, subsidiaries, predecessor or successor corporations, or assigns is sued based on any obligation or agreement to which I am a party or am bound (other that my agreements with the Company), I agree to fully indemnify the Company, its directors, officers, agents, employees, investors, shareholders, administrators, affiliates, divisions, subsidiaries, predecessor and successor corporations, and assigns for all verdicts, judgments, settlements, and other losses incurred by the Company (the indemnitee), as well as any reasonable attorneys' fees and costs if the plaintiff

is the prevailing party in such an action, in the event that the Company is the subject of any legal action based on factual allegations that, if true, would conflict with my obligations under this Agreement.

**5.      Returning Company Documents.** Upon separation from employment with the Company or on demand by the Company during my employment, I will immediately deliver to the Company, and will not keep in my possession, recreate or deliver to anyone else, any and all Company property, including, but not limited to, Confidential Information, User Data, Associated Third Party Confidential Information, as well as all devices and equipment belonging to the Company (including computers, handheld electronic devices, telephone equipment, and other electronic devices), Company credit cards, records, data, notes, notebooks, reports, files, proposals, lists, correspondence, specifications, drawings blueprints, sketches, materials, photographs, charts, all documents and property, and reproductions of any of the aforementioned items that were developed by me pursuant to my employment with the Company, obtained by me in connection with my employment with the Company, or otherwise belonging to the Company, its successors or assigns, including, without limitation, those records maintained pursuant to Section 3(c). I also consent to an exit interview to confirm my compliance with this Section 5.

**6.      Termination Certification.** Upon separation from employment with the Company, I agree to immediately sign and deliver to the Company the "Termination Certification" attached hereto as Exhibit C. I also agree to keep the Company advised of my home and business address for a period of one (1) year after termination of my employment with the Company, so that the Company can contact me regarding my continuing obligations provided by this Agreement.

**7.      Notification of New Employer.** In the event that I leave the employ of the Company, I hereby grant consent to notification by the Company to my new employer about my obligations under this Agreement.

**8.      Solicitation of Employees.** I agree that for a period of twelve (12) months immediately following the termination of my relationship with the Company for any reason, whether with or without cause, I shall not either directly or indirectly solicit, induce, recruit or encourage any of the Company's employees to leave their employment, or take away such employees, or attempt to solicit, induce, recruit, encourage or take away employees of the Company, either for myself or for any other person or entity.

**9.      Export Statement of Assurance.** I recognize that, in the course of my employment, the Company may release to me items (including, but not limited to, software, technology, or systems, equipment and components) subject to the Export Administration Regulations ("EAR") or the International Traffic in Arms Regulations ("ITAR"). I hereby certify that I will not export, re-export or release these items in violation of the EAR or ITAR. In order to comply with this certification, I will not disclose/export/re-export these items to any person other than the persons in my working group as required in the performance of the job responsibilities assigned to me by the Company. I understand that if I have any question regarding whether a given disclosure/export/re-export is or would be contrary to this certification, I should immediately contact the Legal Services Department before taking any actions.

**10.     Code of Conduct Acknowledgement.** I acknowledge that I have read the Company's Code of Conduct, which is available on the Company's public website and can be found by clicking "About Google" and looking on the "Investor Relations" page of the site. I agree to adhere to the terms of the Code of Conduct and to report any violations of the Code.

**11,     Acknowledgment of Employee Handbook.** I acknowledge that I have read the Company's Employee Handbook which is available on the Company's internal website. I agree to abide by the policies and guidelines set forth in the Employee Handbook, as they may be revised from time to time.

**12.     Representations.** I agree to execute any proper oath or affirmation or verify any proper document required to carry out the terms of this Agreement. I represent that my performance of all terms of the Agreement will not breach any agreement to keep in confidence proprietary information acquired by me in confidence or in trust prior to my employment by the Company. I hereby represent and warrant that I have not entered into, and I agree I will not enter into, any oral or written agreement in conflict herewith.

*Eff Date 4.28.08levandowski*
*CA version*

**13.    Audit.** I acknowledge that I have no reasonable expectation of privacy in any computer, technology system, email, handheld device, telephone, or documents that are used to conduct the business of the Company. As such, the Company has the right to audit and search all such items and systems, without further notice to me, to ensure that the Company is licensed to use the software on the Company's devices in compliance with the Company's software licensing policies, to ensure compliance with the Company's policies, and for any other business-related purposes in the Company's sole discretion. I understand that I am not permitted to add any unlicensed, unauthorized or non-compliant applications to the Company's technology systems and that I shall refrain from copying unlicensed software onto the Company's technology systems or using non-licensed software or web sites. I understand that it is my responsibility to comply with the Company's policies governing use of the Company's documents and the internet, email, telephone and technology systems to which I will have access in connection with my employment.

**14.    Permission for Use of Images.** I understand that during my employment with Google, agents of the company may take film, digital or other images of me, for subsequent use in non-commercial materials or collateral, including, but not limited to, the Company website (external and internal), annual reports, press day materials, internal presentations, analyst presentations, company, lobby or reception area stagings or productions, etc., without my prior consent, approval or review. My name may or may not be included along with my image. I hereby grant advance permission for such use of my image(s) by the Company, both during and after my employment, and I understand that I will not receive any royalties or other compensation for this use and I further agree to release and hold harmless any agent, employee, officer, director or other individual affiliated or working on behalf of the Company with respect to such use of my image(s).

**15.    Arbitration and Equitable Relief**

*(a)    Arbitration.* EXCEPT FOR CLAIMS ARISING UNDER THE SIDE AGREEMENT, WHICH WILL BE GOVERNED BY SECTION 8.3 OF THAT AGREEMENT, IN CONSIDERATION OF MY EMPLOYMENT WITH THE COMPANY, ITS PROMISE TO ARBITRATE ALL EMPLOYMENT-RELATED DISPUTES, AND MY RECEIPT OF THE COMPENSATION, PAY RAISES AND OTHER BENEFITS PAID TO ME BY THE COMPANY, AT PRESENT AND IN THE FUTURE, I AGREE THAT ANY AND ALL CONTROVERSIES, CLAIMS, OR DISPUTES WITH ANYONE (INCLUDING THE COMPANY AND ANY EMPLOYEE, OFFICER, DIRECTOR, SHAREHOLDER OR BENEFIT PLAN OF THE COMPANY IN THEIR CAPACITY AS SUCH OR OTHERWISE), WHETHER BROUGHT ON AN INDIVIDUAL, GROUP, OR CLASS BASIS, ARISING OUT OF, RELATING TO, OR RESULTING FROM MY EMPLOYMENT WITH THE COMPANY OR THE TERMINATION OF MY EMPLOYMENT WITH THE COMPANY, INCLUDING ANY BREACH OF THIS AGREEMENT, SHALL BE SUBJECT TO BINDING ARBITRATION UNDER THE ARBITRATION RULES SET FORTH IN CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 1280 THROUGH 1294.2, INCLUDING SECTION 1283.05 (THE "RULES") AND PURSUANT TO CALIFORNIA LAW. DISPUTES WHICH I AGREE TO ARBITRATE, AND THEREBY AGREE TO WAIVE ANY RIGHT TO A TRIAL BY JURY, INCLUDE ANY STATUTORY CLAIMS UNDER STATE OR FEDERAL LAW, INCLUDING, BUT NOT LIMITED TO, CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, THE AMERICANS WITH DISABILITIES ACT OF 1990, THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, THE OLDER WORKERS BENEFIT PROTECTION ACT, THE SARBANES-OXLEY ACT, THE WORKER ADJUSTMENT AND RETRAINING NOTIFICATION ACT, THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, THE FAMILY AND MEDICAL LEAVE ACT, THE CALIFORNIA FAMILY RIGHTS ACT, THE CALIFORNIA LABOR CODE, CLAIMS OF HARASSMENT, DISCRIMINATION AND WRONGFUL TERMINATION AND ANY STATUTORY CLAIMS. I FURTHER UNDERSTAND THAT THIS AGREEMENT TO ARBITRATE ALSO APPLIES TO ANY DISPUTES THAT THE COMPANY MAY HAVE WITH ME.

*(b)    Procedure.* I AGREE THAT ANY ARBITRATION WILL BE ADMINISTERED BY JUDICIAL ARBITRATION & MEDIATION SERVICES, INC. ("JAMS"), PURSUANT TO ITS EMPLOYMENT ARBITRATION RULES & PROCEDURES (THE "JAMS RULES"). I AGREE THAT THE ARBITRATOR SHALL HAVE THE POWER TO DECIDE ANY MOTIONS BROUGHT BY ANY PARTY TO THE ARBITRATION, INCLUDING MOTIONS FOR SUMMARY JUDGMENT AND/OR ADJUDICATION, MOTIONS TO DISMISS OR TO STRIKE, DEMURRERS, AND MOTIONS FOR CLASS CERTIFICATION, PRIOR TO ANY ARBITRATION HEARING. I ALSO AGREE THAT THE ARBITRATOR SHALL HAVE THE

*Eff. Date 4.28.08levandowski*
*CA version*

POWER TO AWARD ANY REMEDIES AVAILABLE UNDER APPLICABLE LAW, AND THAT THE ARBITRATOR SHALL AWARD ATTORNEYS' FEES AND COSTS TO THE PREVAILING PARTY, EXCEPT AS PROHIBITED BY LAW. I UNDERSTAND THAT THE COMPANY WILL PAY FOR ANY ADMINISTRATIVE OR HEARING FEES CHARGED BY THE ARBITRATOR OR JAMS EXCEPT THAT I SHALL PAY ANY FILING FEES ASSOCIATED WITH ANY ARBITRATION THAT I INITIATE, BUT ONLY SO MUCH OF THE FILING FEES AS I WOULD HAVE INSTEAD PAID HAD I FILED A COMPLAINT IN A COURT OF LAW. I AGREE THAT THE ARBITRATOR SHALL ADMINISTER AND CONDUCT ANY ARBITRATION IN ACCORDANCE WITH CALIFORNIA LAW, INCLUDING THE CALIFORNIA CODE OF CIVIL PROCEDURE, AND THAT THE ARBITRATOR SHALL APPLY SUBSTANTIVE AND PROCEDURAL CALIFORNIA LAW TO ANY DISPUTE OR CLAIM, WITHOUT REFERENCE TO RULES OF CONFLICT OF LAW. TO THE EXTENT THAT JAMS RULES CONFLICT WITH CALIFORNIA LAW, CALIFORNIA LAW SHALL TAKE PRECEDENCE. I AGREE THAT THE DECISION OF THE ARBITRATOR SHALL BE IN WRITING. I AGREE THAT ANY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED IN SANTA CLARA COUNTY, CALIFORNIA.

*(c)    Remedy.* EXCEPT AS PROVIDED BY THE RULES AND THIS AGREEMENT, AND EXCEPT FOR CLAIMS ARISING UNDER THE SIDE AGREEMENT, WHICH WILL BE GOVERNED BY SECTION 8.3 OF THAT AGREEMENT, ARBITRATION SHALL BE THE SOLE, EXCLUSIVE AND FINAL REMEDY FOR ANY DISPUTE BETWEEN ME AND THE COMPANY. ACCORDINGLY, EXCEPT AS PROVIDED FOR BY THE RULES AND THIS AGREEMENT, NEITHER I NOR THE COMPANY WILL BE PERMITTED TO PURSUE COURT ACTION REGARDING CLAIMS THAT ARE SUBJECT TO ARBITRATION. NOTWITHSTANDING, THE ARBITRATOR WILL NOT HAVE THE AUTHORITY TO DISREGARD OR REFUSE TO ENFORCE ANY LAWFUL COMPANY POLICY, AND THE ARBITRATOR SHALL NOT ORDER OR REQUIRE THE COMPANY TO ADOPT A POLICY NOT OTHERWISE REQUIRED BY LAW. NOTHING IN THIS AGREEMENT OR IN THIS PROVISION IS INTENDED TO WAIVE THE PROVISIONAL RELIEF REMEDIES AVAILABLE UNDER THE RULES.

*(d)    Administrative Relief.* I UNDERSTAND THAT THIS AGREEMENT DOES NOT PROHIBIT ME FROM PURSUING AN ADMINISTRATIVE CLAIM WITH A LOCAL, STATE OR FEDERAL ADMINISTRATIVE BODY SUCH AS THE DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING, THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION OR THE WORKERS' COMPENSATION BOARD. THIS AGREEMENT DOES, HOWEVER, PRECLUDE ME FROM PURSUING COURT ACTION REGARDING ANY SUCH CLAIM.

*(e)    Voluntary Nature of Agreement.* I ACKNOWLEDGE AND AGREE THAT I AM EXECUTING THIS AGREEMENT VOLUNTARILY AND WITHOUT ANY DURESS OR UNDUE INFLUENCE BY THE COMPANY OR ANYONE ELSE. I FURTHER ACKNOWLEDGE AND AGREE THAT I HAVE CAREFULLY READ THIS AGREEMENT AND THAT I HAVE ASKED ANY QUESTIONS NEEDED FOR ME TO UNDERSTAND THE TERMS, CONSEQUENCES AND BINDING EFFECT OF THIS AGREEMENT AND FULLY UNDERSTAND IT, INCLUDING THAT *I AM WAIVING MY RIGHT TO A JURY TRIAL*. FINALLY, I AGREE THAT I HAVE BEEN PROVIDED AN OPPORTUNITY TO SEEK THE ADVICE OF AN ATTORNEY OF MY CHOICE BEFORE SIGNING THIS AGREEMENT.

### 16.    General Provisions

*(a)    Governing law; Consent to Personal Jurisdiction.* This Agreement will be governed by the laws of the State of California without giving effect to any choice of law rules or principles that may result in the application of the laws of any jurisdiction other than California. To the extent that any lawsuit is permitted under this Agreement, I hereby expressly consent to the personal jurisdiction of the state and federal courts located in California for any lawsuit filed there against me by the Company arising from or relating to this Agreement.

*(b)    Entire Agreement.* This Agreement, together with the Exhibits herein, my offer letter from the Company, and the Side Agreement set forth the entire agreement and understanding between the Company and me relating to the subject matter herein and supersede all prior discussions or representations between us including, but not limited to, any representations made during my interview(s) or relocation negotiations, whether written or oral. In the event of

a conflict between the terms of this Agreement and the terms of the Side Agreement, the Side Agreement shall prevail.  No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, other than amendments to paragraphs 3 and 4 relating to personal open source projects in a format prepared by the Company, will be effective unless in writing signed by the Chief Executive Officer of the Company and me.  Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

(c)      *Severability*.  If one or more of the provisions in this Agreement are deemed void by law, then the remaining provisions will continue in full force and effect.

(d)      *Successors and Assigns*.  This Agreement will be binding upon my heirs, executors, assigns, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns.

(e)      *Waiver*.  Waiver by the Company of a breach of any provision of this Agreement will not operate as a waiver of any other or subsequent breach.

(f)      *Survivorship*.  The rights and obligations of the parties to this Agreement will survive termination of my employment with the Company.

Date: _____

_____
Signature

Anthony  LevAnDongki
Name of Employee (typed or printed)

*Eff. Date 4.28.08levandowski*
*CA version*

## Exhibit A

### GOOGLE INC.

### LIST OF PRIOR INVENTIONS
### AND ORIGINAL WORKS OF AUTHORSHIP

| Title | Date | Identifying Number or Brief Description |
|---|---|---|
| 1. A method and apparatus for automated vehicle interaction with pedestrians for collaborative tasks | | . #61168449 |
| 2. A method and apparatus for acquiring a road reference and real-time positioning information of a vehicle based on the retro-reflective paint of lane markings | | . #61168310 |
| 3. A method and apparatus for sending off and retrieving an autonomous vehicle. | | #61168322 |
| 4. A method and apparatus for certifying the safety and drivability of a lane. | | #61168305 |
| 5. A method and apparatus for a vehicle sensing for increased autonomous lane change safety. | | #61168460 |
| 6. A method and apparatus for automated vehicle available parking space detection and guidance | | #61168471 |

___ No inventions or improvements
___ Additional Sheets Attached

Signature of Employee: _____

Print Name of Employee: Anthony GVANDONSKI

Date: _____

## EXHIBIT B

### GOOGLE INC.

### CALIFORNIA LABOR CODE SECTION 2870
### INVENTION ON OWN TIME-EXEMPTION FROM AGREEMENTS

---

"(a)    Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

(1)    Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer.

(2)    Result from any work performed by the employee for the employer.

(b)    To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable."

*Eff. Date 4.28.08levandowski*
*CA version*

## EXHIBIT C

## TERMINATION CERTIFICATION

*This letter confirms that your employment with Google, Inc. (the "Company") has terminated. We extend our sincere thanks for all of your contributions and our best wishes to you in your future endeavors.*

This is to certify that I do not have in my possession, nor have I failed to return, any devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items belonging to Google Inc., its subsidiaries, affiliates, successors or assigns (together, the "Company").

I further certify that I have complied with all the terms of the Company's At Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement signed by me, including the reporting of any inventions and original works of authorship (as defined therein), conceived or made by me (solely or jointly with others) covered by that agreement.

I have informed the Company in the event I am subject to any litigation holds or similar request for record retention.

I further agree that, in compliance with the At Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement, I will adhere to my obligations to the Company contained in Section 2 (Confidential Information), Section 3 (Inventions), and Section 8 (Solicitation of Employees).

After leaving the Company's employment, I will be employed by _____ in the position of:

_____. I am / am not (circle one) subject to a litigation hold/request for record retention.

I have also returned the following Google-issued equipment:

- Laptop
- Cell phone
- Purchasing card

- Badge
- Blackberry
- VPN card

- WAN card
- Other: _____

_____

*Signature of Employee*

_____

*Print Name*

_____

*Date*

_____

*Address for Notifications*

*Eff. Date 4.28.08levandowski*
*CA version*

# EXHIBIT F

**From:**       David Perlson
**Sent:**       Tuesday, April 04, 2017 11:31 AM
**To:**         Gonzalez, Arturo J.; QE-Waymo
**Subject:**    RE: New Arbitration Demand

Arturo, we oppose Defendants' attempt to compel arbitration in this action and do not agree to the proposed stipulation, which we do not believe would be practicable in any event.  Waymo's claims brought in this case are appropriate in district court as we will explain in our opposition.  Let me know if you wish to discuss further.

David

David Perlson
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Direct: (415) 875-6344
Main Phone: (415) 875-6600
Main Fax:  (415) 875-6700
E-mail: davidperlson@quinnemanuel.com
Web:  www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Gonzalez, Arturo J. [mailto:AGonzalez@mofo.com]
**Sent:** Friday, March 31, 2017 1:05 PM
**To:** QE-Waymo <qewaymo@quinnemanuel.com>
**Subject:** New Arbitration Demand

Quinn Team,

Today, we are filing a new arbitration demand that seeks to move the trade secrets claims into the proper forum.  Judge Alsup is obviously concerned that your clients be provided with a timely opportunity to resolve those claims.  We agree.  Thus, we suggest that we stipulate to the following: (1) the same panel that is considering the two pending arbitrations would hear the new one; and (2) we will agree to start the trade secrets arbitration trial two weeks after the jury returns its verdict in the pending proceeding before Judge Alsup.  If the proceeding before Judge Alsup is resolved without a trial, then we would start the trade secrets arbitration on October 9, or as soon thereafter as the arbitrators are available.  Please let us know if your client agrees.

**Arturo J. González**

Chair, Commercial Litigation and Trial Practice Group
Morrison & Foerster LLP
425 Market St. | San Francisco, CA 94105
P: 415.268.7020 | F: 415.276.7020 | C: 415.425.9548
AGonzalez@mofo.com | www.mofo.com

===============================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email.

1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
      Charles K. Verhoeven (Bar No. 170151)
2     charlesverhoeven@quinnemanuel.com
      David A. Perlson (Bar No. 209502)
3     davidperlson@quinnemanuel.com
      Melissa Baily (Bar No. 237649)
4     melissabaily@quinnemanuel.com
      John Neukom (Bar No. 275887)
5     johnneukom@quinnemanuel.com
      Jordan Jaffe (Bar No. 254886)
6     jordanjaffe@quinnemanuel.com
    50 California Street, 22nd Floor
7   San Francisco, California 94111-4788
    Telephone:    (415) 875-6600
8   Facsimile:    (415) 875-6700

9   Attorneys for WAYMO LLC

10

11                     UNITED STATES DISTRICT COURT

12          NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

13   WAYMO LLC,                          CASE NO. 3:17-cv-00939-WHA

14              Plaintiff,               **DECLARATION OF RACHAEL MENY
                                         IN SUPPORT OF PLAINTIFF'S
15        vs.                            OPPOSITION TO DEFENDANTS'
                                         MOTION TO COMPEL ARBITRATION
16   UBER TECHNOLOGIES, INC.;            OF, AND TO STAY, TRADE SECRET
     OTTOMOTTO LLC; OTTO TRUCKING        AND UCL CLAIMS [9 U.S.C. §§ 3, 4]**
17   LLC,

18              Defendants.

19

20

21

22

23

24

25

26

27

28

Case No. 3:17-cv-00939-WHA
DECLARATION OF RACHAEL MENY

1    I, Rachael Meny, hereby declares as follows.

2    1.    I am an attorney licensed to practice in the State of California and am admitted to

3    practice before this Court.  I am a partner at the law firm Keker, Van Nest & Peters LLP ("KVP").

4    I have personal knowledge of the matters set forth in this Declaration, and if called as a witness I

5    would testify competently to those matters.

6    2.    I am counsel, along with others at KVP, for Claimant Google Inc. ("Google") in the

7    pending JAMS arbitrations that Google filed against Anthony Levandowski in October 2016.

8    3.    Google filed one of the pending arbitrations against Levandowski only (the

9    "Levandowski-only Arbitration"), pursuant to two "Non-competition and Non-solicitation

10   Agreement[s]" that Levandowski signed when he sold two companies to Google in 2011.

11   Google's demand in the Levandowski-only Arbitration alleges one claim against Levandowski for

12   breach of his Non-competition and Non-Solicitation Agreements with Google.  See First Cause of

13   Action, page 9.

14   4.    Google filed the other pending arbitration against Levandowski and one of his Otto

15   co-founders, pursuant to their employment agreements with Google  (the "Joint Arbitration").

16   Google's demand in the Joint Arbitration alleges seven claims against Levandowski and his co-

17   founder: (1) breach of the employment agreements with Google; (2) breach of fiduciary

18   duties/duty of loyalty; (3) fraud; (4) tortious interference with contract; (5) tortious interference

19   with prospective economic advantage; (6) violations of Business & Professions Code section

20   17200; and (7) unjust enrichment.  See Joint Demand, pages 10-19.

21   5.    Neither Uber nor Waymo are parties to these two pending arbitration demands.

22   During meet and confer discussions, counsel for Levandowski and his co-founder have stated that

23   Uber (and the related Otto/280 Systems entities) are third parties to these arbitrations who will

24   only produce documents and information pursuant to third party subpoena(s).

25   6.    Levandowski and his co-founder are personally represented in the pending

26   arbitrations by numerous lawyers from Morrison & Foerster LLP, including Arturo Gonzalez (lead

27   counsel) and Eric Tate.  As of April 3, 2017, we understand from Mr. Tate that Morrison &

28   Foerster continues to represent Mr. Levandowski personally in these arbitrations.

7.      Google's arbitration demands do not include allegations concerning trade secrets. Google's arbitration demands also do not include allegations against Uber or any Otto entity. Thus the arbitration panel will not decide any issues related to the trade secret misappropriation claims that Waymo is asserting against Uber.

8.      These arbitration demands were filed on October 28, 2016.  However, the arbitrations were not formally commenced by JAMS until January 20, 2017.  This delay occurred primarily because the parties disputed whether, and how, the two arbitration demands could be consolidated.  After filing, Google spent almost one month of time negotiating with Levandowski's and his co-founder's counsel at Morrison & Foerster over whether the parties would voluntarily agree to consolidate the two arbitration demands.  After extended negotiations, Levandowski's and his co-founder's counsel refused to voluntarily agree to consolidation.  Google then filed a motion asking JAMS to administratively consolidate the two demands, which Levandowski and his co-founder opposed.  JAMS did not commence the arbitrations until it ruled on Google's motion in January 2017, denying Google's motion in light of Respondents' opposition and leaving that issue to be decided by the panel after appointment.

9.      The first case management conference in the arbitration occurred on March 10, 2017.  The parties in arbitration told the arbitration panel that the arbitration pleadings were complete and no new parties would be added to the arbitration. Mr. Gonzalez, Mr. Tate and one other Morrison & Foerster lawyer attended this hearing for Levandowski and his co-founder.  I am informed and believe that this March 10, 2017 conference occurred before Mr. Gonzalez filed a motion to compel arbitration on behalf of Uber and Otto in Federal District court.

10.     By the time of the first case management conference on March 10, 2017, the parties had not yet agreed upon consolidation or a case schedule.  Thus, the arbitrators set a second case management conference to occur on April 3, 2017 and required the parties to engage in further meet and confer efforts on these issues.  Google had proposed an October or December 2017 arbitration hearing date, but Morrison & Foerster rejected these dates.  The parties have now agreed upon an April 30, 2018 start date for hearing on the consolidated arbitration.  This April

1   2018 hearing was agreed upon, in part, after Morrison & Foerster repeatedly contended that it was

2   not possible to do an arbitration hearing in this matter during 2017.

3           11.     On the afternoon of April 3, 2017, Morrison & Foerster first informed KVP that

4   Uber had filed a motion to compel arbitration in this action.  At the April 3, 2017 case

5   management conference later that day, Morrison & Foerster first informed the arbitration panel

6   about their pending motion to compel arbitration, but the panel did not take any position regarding

7   their pending motion.  At the April 3, 2017 case management conference, the parties and the panel

8   confirmed their agreement to an April 30, 2018 hearing date in this matter, and agreed to submit a

9   signed stipulation to the arbitration panel implementing a schedule for the April 30, 2018 hearing

10  date.  No formal discovery can yet begin in the arbitrations.

11          12.     In the arbitration, the parties previously agreed to provide initial disclosures,

12  including documents, on April 10, 2017, and in March 2017 the panel set this as the date for the

13  parties' Rule 17 production.  At the April 3, 2017 conference, Mr. Levandowski's counsel told the

14  arbitration panel that it was currently unclear whether Mr. Levandowski would produce relevant

15  information as required on April 10, 2017.  Today, Mr. Gonzalez informed Google that Mr.

16  Levandowski will not be producing documents in the arbitration, and the parties will brief and

17  argue the Fifth Amendment issues pursuant to the schedule set by the panel.

18          13.     The arbitrations will be heard by the following three arbitrators: Hon. Steven A.

19  Brick (Ret.), Hon. Edward A. Panelli (Ret.), and Hon. James Ware (Ret.).  These three arbitrators

20  noted that Google's initial request at the first case management conference for an October 2017

21  hearing date was aggressive in the arbitration context.

22          14.     Mr. Lewandowski and his co-founder initially opposed allowing either side to serve

23  any Interrogatories or Requests for Admission, and most recently argued that each side be limited

24  to just ten Requests for Production, two non-party document subpoenas (with a limit of 10 RFPs

25  each), five depositions for non-parties or party affiliates (including employees of Google and

26  Uber), and that the depositions of Mr. Levandowski and his co-founders be limited to a combined

27  ten hours.

28

Case No. 3:17-cv-00939-WHA
DECLARATION OF RACHAEL MENY

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed in Truckee, California, on April 10, 2017.

DATED:  April 10, 2017                        /s/ Rachael Meny
                                              Rachael Meny

**SIGNATURE ATTESTATION**

Pursuant to Local Rule 5-1(i)(3), I attest under penalty of perjury that concurrence in the filing of this document has been obtained from Rachael Meny.

                                              /s/ Charles K. Verhoeven
                                              Charles K. Verhoeven

Case No. 3:17-cv-00939-WHA
DECLARATION OF RACHAEL MENY