# EXHIBIT  77

# EXHIBIT  77

1   MICHAEL A. JACOBS (CA SBN 111664)
    MJacobs@mofo.com
2   ARTURO J. GONZÁLEZ (CA SBN 121490)
    AGonzalez@mofo.com
3   ERIC A. TATE (CA SBN 178719)
    ETate@mofo.com
4   MORRISON & FOERSTER LLP
    425 Market Street
5   San Francisco, California  94105-2482
    Telephone:   415.268.7000
6   Facsimile:    415.268.7522

7   Attorneys for Defendants
    UBER TECHNOLOGIES, INC.,
8   OTTOMOTTO LLC, and OTTO TRUCKING
    LLC
9
    KAREN L. DUNN (*Pro Hac Vice*)
10  kdunn@bsfllp.com
    HAMISH P.M. HUME (*Pro Hac Vice*)
11  hhume@bsfllp.com
    BOIES SCHILLER FLEXNER LLP
12  1401 New York Avenue, N.W.
    Washington DC  20005
13  Telephone:   202.237.2727
    Facsimile:    202.237.6131
14
    Attorneys for Defendants
15  UBER TECHNOLOGIES, INC.
    and OTTOMOTTO LLC

16

17                    UNITED STATES DISTRICT COURT

18                  NORTHERN DISTRICT OF CALIFORNIA

19                      SAN FRANCISCO DIVISION

20   WAYMO LLC,                          Case No.       3:17-cv-00939-WHA

21                 Plaintiff,            **DEFENDANTS UBER
                                         TECHNOLOGIES, INC.,**
22         v.                            **OTTOMOTTO LLC, AND OTTO
                                         TRUCKING LLC'S REPLY IN
23   UBER TECHNOLOGIES, INC.;            SUPPORT OF MOTION TO COMPEL
     OTTOMOTTO LLC; OTTO TRUCKING LLC,   ARBITRATION OF, AND TO STAY,
24                                       TRADE SECRET AND UCL CLAIMS
                 Defendants.            [9 U.S.C. §§ 3, 4]**

25
                                         Date:    April 27, 2017
26                                       Time:    8:00 a.m.
                                         Ctrm:    8
27                                       Judge:   Honorable William H. Alsup
                                         Trial Date: October 2, 2017
28

Case: 20-03090   Doc# 129-4   Filed: 02/24/21   Entered: 02/24/21 02:14:33   Page 2
of 39

1

2

3

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................................1

ARGUMENT .............................................................................................................................2

I.  EQUITABLE ESTOPPEL REQUIRES WAYMO TO ARBITRATE ITS
    CLAIMS AGAINST UBER. ........................................................................................2

    A.  Numerous California Cases Have Compelled Signatories Like Waymo
        To Arbitrate Their Claims Against Nonsignatories Like Uber. ............................2

    B.  Uber Has Not Waived Application Of The Complete Legal Standard
        That Applies To Its Motion. .................................................................................3

    C.  Waymo's Trade Secret Claims Against Uber Are Inextricably
        Intertwined With The Levandowski Contract, And Therefore Must Be
        Arbitrated. ............................................................................................................5

        1.  In Order To Meet A Required Element Of Its Trade Secret Claims,
            Waymo Relies On The Confidentiality Provisions Of Its Written
            Employment Agreements. ...............................................................................6

        2.  Waymo Cannot Prevail On Its Trade Secret Claims Without
            Proving That Levandowski Violated The Confidentiality Provisions
            In His Employment Contract. ..........................................................................7

        3.  Waymo Alleges That Uber Engaged In Concerted Misconduct With
            Levandowski That Involved Breaches Of His Employment
            Contract. .......................................................................................................10

    D.  Waymo Cannot Avoid Arbitration Merely By Not Naming Levandowski
        As A Defendant In This Case. ..............................................................................11

    E.  The Fact That Waymo Is Bringing Tort And Statutory Claims Against
        Uber, Rather Than Contract Claims, Is Irrelevant. .............................................12

II. THE ANSWERS TO THE COURT'S QUERIES CONFIRM THAT WAYMO
    SHOULD BE COMPELLED TO ARBITRATE ITS TRADE SECRET
    CLAIMS. ...................................................................................................................13

III. THE COURT SHOULD STAY WAYMO'S PRELIMINARY INJUNCTION
     MOTION AS TO ALL CLAIMS SUBJECT TO ARBITRATION.................................14

CONCLUSION........................................................................................................................15

DEFENDANTS' REPLY IN SUPPORT OF JOINT MOTION TO COMPEL
ARBITRATION OF, & TO STAY, TRADE SECRET & UCL CLAIMS [9 U.S.C. §§ 3, 4]

3:17-cv-00939-WHA

i

## TABLE OF AUTHORITIES

### CASES

*Arnold v. DirecTV, Inc.*,
2013 U.S. Dist. LEXIS 167064 (E.D. Mo. Nov. 25, 2013) ................................... 14

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009) ........................................................................................... 2

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ........................................................................................... 15

*Boucher v. All. Title Co., Inc.*,
127 Cal. App. 4th 262 (2005) ............................................................................ 3

*CD Partners v. Grizzle*,
424 F.3d 795 (8th Cir. 2005) ............................................................................. 14

*Edwards v. Marin Park, Inc.*,
356 F.3d 1058 (9th Cir. 2004) ........................................................................... 5

*Facility Constr. Mgmt. Inc. v. Ahrens Concrete Floors, Inc.*,
2010 WL 1265184 (N.D. Ga. Mar. 24, 2010) .................................................... 7

*Goldman v. KPMG LLP*,
173 Cal. App.4th 209 (2009) .............................................................................. 4

*Hart v. ITC Service Group, Inc.*,
No. 4:15-cv-00599-DGK (W.D. Mo. 2015) ...................................................... 14

*JSM Tuscany LLC v. Superior Court*,
193 Cal. App. 4th 1222 (2011) ...................................................................... 2, 11

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013) .................................................................. 3, 4, 5, 12

*Laswell v. AG Seal Beach, LLC*,
189 Cal. App. 4th 1399 (2010) ......................................................................... 3

*Metalclad Corp. v. Ventana Envtl. Organizational P'ship*,
109 Cal. App. 4th 1705 (2003) .................................................................. 3, 4, 11

*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.*,
186 Cal. App. 4th 696 (2010) ...................................................................... 2, 13

*MS Dealer Service Corp. v. Franklin*,
177 F.3d 942 (11th Cir. 1999) ........................................................................... 10

*Mylan Inc. v. SmithKline Beecham Corp.*,
2012 WL 603804 (D.N.J. Feb. 23, 2012) .......................................................... 7

*Riverside County Sheriff's Dep't v. Stiglitz*,
60 Cal. 4th 624 (2014) ....................................................................................... 15

*Rodriguez v. Shen Zhen New World I LLC*,
  2014 WL 908464 (C.D. Cal. March 6, 2014) .......................................................... 11

*Rowe v. Exline*,
  153 Cal. App. 4th 1276 (2007) ................................................................................ 3

*Torbit, Inc. v. Datanyze, Inc.*,
  2013 WL 572613 (N.D. Cal. Feb. 13, 2013) .................................................. 3, 11, 12

*Turtle Ridge Media Grp., Inc. v. Pac. Bell Directory*,
  140 Cal. App. 4th 828 (2006) .............................................................. 2, 11, 13

*Uptown Drug Co., Inc. v. CVS Caremark Corp.*,
  962 F. Supp. 2d 1172 (N.D. Cal. 2013) .......................................................... 3, 15

**STATUTES**

18 U.S.C. § 1839 ............................................................................................... 7

18 U.S.C. § 1839(3) ........................................................................................... 5

Cal. Bus. & Prof. Code § 17200 ........................................................................... 1

Cal. Civ. Code § 3426.1 ...................................................................................... 7

Cal. Civil Code § 3426.1(d)(2) .............................................................................. 5

Cal. Code Civ. P. § 1281.8(b) ............................................................................. 14

**RULES**

JAMS Rule 24(e) .............................................................................................. 14

# INTRODUCTION

Waymo does not seriously contest that its trade secret claims against Uber are based on allegations of "interdependent and concerted misconduct" between Mr. Levandowski and Uber.[1] Nevertheless, Waymo claims it is not required to arbitrate those claims because, according to Waymo, the concerted misconduct is not "intimately founded in and intertwined with" the underlying Levandowski Agreements.[2] Dkt. 204 at 10, 13-14. That is false. Waymo cannot prevail on its trade secret claims against Uber without proving that Mr. Levandowski engaged in conduct that constitutes a violation of his contractual confidentiality obligations to Waymo. The trade secret claims therefore could not be more "intimately founded in and intertwined with" the Levandowski Agreements that contain a broadly worded arbitration clause. Thus, the doctrine of equitable estoppel requires Waymo to arbitrate its trade secret claims against Uber.

Waymo also tries to argue that it can avoid arbitration by not naming Mr. Levandowski as a defendant. But equitable doctrines cannot be avoided by such a formalistic ruse. Several California cases have allowed nonsignatory defendants to compel signatory plaintiffs to arbitrate their claims even though there was no signatory defendant.

Uber has consented to have an existing panel of distinguished arbitrators resolve Waymo's trade secrets claims—the same panel Waymo agreed could hear its existing arbitrations against Mr. Levandowski. Based on the plain text of the Levandowski Agreements, those arbitrators have the power to grant emergency injunctive relief if it is warranted, and Uber is willing to move as quickly as Waymo wishes. Thus, Waymo cannot argue it would be deprived even for a moment of an opportunity to seek relief. This Court should compel Waymo to arbitrate its trade secret claims, and should stay Waymo's preliminary injunction motion as it

---

[1] The phrase "trade secret claims" includes Count 1 (DTSA claim), Count 2 (Cal. UTSA claim), and Count 7 (§17200 claim based on same basic alleged misconduct as Counts 1 and 2).

[2] The "Levandowski Agreements" refers to the employment agreements between Levandowski and Google. Dkt. 138 at 35, 47. Waymo does not, and cannot, contest that it is bound by these Agreements, which requires "the Company" to arbitrate its claims, and defines "the Company" to include "Google Inc., its subsidiaries, affiliates, successors, or assigns." *Id.*

relates to those claims.

## ARGUMENT

I. **EQUITABLE ESTOPPEL REQUIRES WAYMO TO ARBITRATE ITS CLAIMS AGAINST UBER.**

A. **Numerous California Cases Have Compelled Signatories Like Waymo To Arbitrate Their Claims Against Nonsignatories Like Uber.**

Waymo asserts that it is virtually unheard of for a nonsignatory to an arbitration agreement to compel a signatory to arbitrate its claims. Dkt. 204 at 9. That is false. The Supreme Court has recognized that "traditional principles of state law" sometimes allow a contract to be enforced against nonparties to the contract, and therefore any court that holds "that nonparties to a contract are categorically barred from" seeking relief under the Federal Arbitration Act is in "error." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (internal quotations omitted).

Because state law governs the issue of whether equitable estoppel allows Uber to enforce the arbitration clause to which Waymo consented (*id.* at 632), it is of no moment that, as Waymo emphasizes, "the Ninth Circuit" has not yet "affirmed" a finding "that a nonsignatory defendant can compel arbitration against a signatory on the theory of equitable estoppel." Dkt. 204 at 10. The relevant question is whether *California courts* have addressed whether equitable estoppel allows a nonsignatory to compel a signatory to arbitrate its claims against the nonsignatory. They have, holding in numerous cases that the doctrine of equitable estoppel allows a nonsignatory to an arbitration agreement to compel arbitration of claims made against it when those claims are "intertwined" with that underlying agreement. *See, e.g.*, *JSM Tuscany LLC v. Superior Court*, 193 Cal. App. 4th 1222, 1241 (2011) ("A nonsignatory plaintiff can be compelled to arbitrate a claim even against a nonsignatory defendant, when the claim is itself based on, or inextricably intertwined with, the contract containing the arbitration clause"); *Turtle Ridge Media Grp., Inc. v. Pac. Bell Directory*, 140 Cal. App. 4th 828, 833 (2006), *as modified* (July 20, 2006) (allowing nonsignatory defendant to compel plaintiff to arbitrate even though the entity with whom plaintiff had agreed to arbitrate was not named as a defendant); *Molecular*

1  *Analytical Systems v. Ciphergen Biosystems, Inc.*, 186 Cal. App. 4th 696, 715 (2010)

2  (nonsignatory compelled arbitration of contract and tort claims where such claims were "founded

3  in and inextricably intertwined with" underlying contract that contained an arbitration clause);

4  *Laswell v. AG Seal Beach, LLC*, 189 Cal. App. 4th 1399, 1407-09 (2010) (allowing nonsignatory

5  defendants to enforce arbitration agreement against signatory); *Rowe v. Exline*, 153 Cal. App. 4th

6  1276, 1284-90 (2007) (same); *Boucher v. All. Title Co., Inc.*, 127 Cal. App. 4th 262, 271-72

7  (2005) (same); *Metalclad Corp. v. Ventana Envtl. Organizational P'ship,* 109 Cal. App. 4th

8  1705, 1713-18 (2003) (same).

9        Likewise, federal courts applying California law have repeatedly held that when a

10  signatory advances claims against a nonsignatory that are "intertwined" with obligations set forth

11  in the underlying contract, the doctrine of equitable estoppel allows the nonsignatory to compel

12  the signatory to arbitrate those claims. *See, e.g.*, *Uptown Drug Co., Inc. v. CVS Caremark Corp.*,

13  962 F. Supp. 2d 1172, 1184-86 (N.D. Cal. 2013) (Tigar, J.) (nonsignatory compelling arbitration

14  of trade secret claim since such a claim necessarily requires plaintiff to show misappropriation in

15  violation of a written contract); *Torbit, Inc. v. Datanyze, Inc.*, No. 5:12-CV-05889-EJD, 2013

16  WL 572613 at *4 (N.D. Cal. Feb. 13, 2013) (Davila, J.) (nonsignatory compelling arbitration of

17  trade secret claim where claim was "intertwined with the contract providing for arbitration").

18        Thus, this is not a situation in which there are "no cases" or "only one case," as Waymo

19  tries to tell the Court.  There is an entire body of case law holding that a nonsignatory may

20  compel a signatory to arbitrate its claims when those claims are sufficiently "intertwined" with

21  the agreement.  Applying that law to this case, Waymo must arbitrate its claims against Uber.

22       **B.**    **Uber Has Not Waived Application Of The Complete Legal Standard That**
                **Applies To Its Motion.**

23

24        In footnote 9 of its opposition, Waymo incorrectly contends that Uber "waived" what

25  Waymo calls the "reliance" theory of equitable estoppel.  That is not correct.  Uber's opening

26  brief invoked the general proposition of law, established by California courts and recognized by

27  the Ninth Circuit in the *Kramer* decision, that "[e]quitable estoppel precludes a party from

28  claiming the benefits of a contract while simultaneously attempting to avoid the burdens that

DEFENDANTS' REPLY IN SUPPORT OF JOINT MOTION TO COMPEL
ARBITRATION OF, & TO STAY, TRADE SECRET & UCL CLAIMS [9 U.S.C. §§ 3, 4]

3:17-cv-00939-WHA

3

1    contract imposes." Dkt. 115 at 7 (citing *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128

2    (9th Cir. 2013)). It is that general and well-established principle that governs Uber's motion, and

3    it was most certainly not waived.

4         As shown in the case law cited in Section I(A) above, California courts have applied this

5    governing principle to a wide variety of circumstances. Citing the California state court

6    decisions in *Goldman* and *Metalclad*, *Kramer* referred to "two circumstances" in which the

7    doctrine of equitable estoppel applies to allow a nonsignatory to enforce an arbitration clause

8    against a signatory, which *Kramer* summarized as follows:

9         "when a signatory must rely on the terms of the written agreement in asserting its claims
10        against the nonsignatory **or** the claims are 'intimately founded in and intertwined with'
          the underlying contract"; and

11
          "when the signatory alleges substantially interdependent and concerted
12        misconduct by the nonsignatory and another signatory **and** 'the allegations of
          interdependent misconduct [are] founded in or intimately connected with the
13        obligations of the underlying agreement.'"

14   *Kramer*, 705 F.3d at 1128-29 (emphasis added) (citing *Goldman v. KPMG LLP*, 173 Cal.

15   App.4th 209, 221 (2009), *Metalclad Corp.*, 109 Cal. App. 4th at 1713).

16        The first circumstance that *Kramer* describes contains an "or" clause, actually identifying

17   two different circumstances. That means that *Kramer* identifies a total of three factual situations

18   in which California courts have held the doctrine of equitable estoppel allows a nonsignatory to

19   enforce an arbitration clause:

20   • When a signatory must rely on the terms of the written agreement in asserting its claims

21        against the nonsignatory;

22   • When the claims are intimately founded in and intertwined with the underlying contract;

23        or

24   • When the signatory alleges substantially interdependent and concerted misconduct by the

25        nonsignatory and another signatory, and the allegations of interdependent misconduct are

26        founded in or intimately connected with the obligations of the underlying agreement.

27        *Kramer* does not hold that these three sets of circumstances are mutually exclusive—they

28   obviously are not, and frequently overlap, as they do here. Nor does *Kramer* hold that these are

1    different "legal theories," as Waymo argues.  These are not different legal theories.  They are

2    descriptions of the kinds of overlapping factual circumstances in which "[e]quitable estoppel

3    precludes a party from claiming the benefits of a contract while simultaneously attempting to

4    avoid the burdens that contract imposes."  Dkt. 115 at 7 (citing *Kramer*, 705 F.3d at 1128).

5          Uber's opening brief demonstrated that each of the factual circumstances described in

6    *Kramer* are present here.  *Id.* at 7-9.  We showed that Waymo's claims are "governed by

7    [Levandowski's] Waymo employment agreements" (*id.* at 8), that Waymo's repeated references

8    to those agreements confirms that Waymo's claims are "intertwined with the obligations"

9    imposed by the Levandowski agreements (*id.*), and that Waymo's entire theory of the case is one

10   of "interdependent collusion" between Uber and Levandowski.  *Id.*  Thus, the opening brief

11   contains "contentions as well as citations to authorities and the record" that cover each of the

12   different factual circumstances recognized in *Kramer*.  *Edwards v. Marin Park, Inc.*, 356 F.3d

13   1058, 1066 (9th Cir. 2004) (no waiver of argument where opening brief contains the

14   "contentions as well as citations to authorities and the record" relevant to the argument).[3]

15        **C.    Waymo's Trade Secret Claims Against Uber Are Inextricably Intertwined
16              With The Levandowski Contract, And Therefore Must Be Arbitrated.**

17        Waymo asserts that its claims against Uber "are not based on any agreement with

18   Mr. Levandowski."  Dkt. 204 at 10.  That is false.  As shown in our opening brief and again

19   below, Waymo's trade secret claims are inextricably intertwined with the obligations set forth in

20   the Levandowski Agreements.[4]

21

22

23

24   [3] If the Court concludes otherwise, Uber does not object to permitting Waymo a surreply to
     address any possible claim of prejudice.

25
26   [4] Uber is not admitting Waymo can prevail against Uber *merely* by showing that Levandowski
     breached his agreements.  Uber is simply showing that Waymo's trade secret claims against
27   Uber require it to show *at least* that Levandowski breached his agreements.  The alleged
     Levandowski breaches are necessary, but not sufficient, for Waymo's trade secret claims.

28

1. **In Order To Meet A Required Element Of Its Trade Secret Claims, Waymo Relies On The Confidentiality Provisions Of Its Written Employment Agreements.**

In order to prevail on its trade secret claims, Waymo must establish that the information that was allegedly misappropriated is, in fact, a "trade secret." To do so under California law, Waymo must prove that the supposed proprietary information "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civil Code § 3426.1(d)(2). Similarly, under federal law, a plaintiff is required to show that it "has taken reasonable measures to keep [its] information secret." 18 U.S.C. § 1839(3).

To meet this required element of its trade secret claims, Waymo repeatedly invokes the confidentiality provisions of its employment contracts. It alleges, for example, that it "has undertaken efforts that are reasonable under the circumstances to maintain the secrecy of the trade secrets at issue" through "the use of ***confidentiality agreements*** and ***non-disclosure agreements*** to require . . . employees to maintain the secrecy of Waymo's confidential information." FAC ¶ 82 (emphasis added). Waymo further alleges that it "requires ***all employees … to sign confidentiality agreements*** before any confidential or proprietary trade secret information is disclosed to them." *Id.* at ¶ 72 (emphasis added). *See also id.* at ¶¶ 52–53 (discussing engineers' "confidentiality obligations" owed to Waymo).

Likewise, in its motion for a preliminary injunction, Waymo asserted:

> "As a condition of employment, Waymo ***requires all employees to enter into written agreements to maintain the confidentiality of proprietary and trade secret information***….As a related ongoing measure, Waymo enforces an employee code of conduct that explains employees' strict obligations to maintain secrecy of confidential information."

Dkt. 24 at 5 (emphasis added).

Of course, the most important employment agreement to Waymo, and the one it centrally claims was breached, is that of Mr. Levandowski. The Levandowski Agreements contain both the confidentiality provisions (Dkt. 138 at 47, 59) and the requirement to comply with the "employee code of conduct" to which Waymo refers in its Complaint and preliminary injunction motion. Dkt. 138 at 50, 62. If the Levandowski Agreements did not contain these provisions, Waymo would not be able to show that it took reasonable measures to protect the confidentiality

Case: 20-03050   Doc# 1294   Filed: 02/24/21   Entered: 02/24/21 04:14:39   Page 41
of 39

1   of its alleged trade secrets—thereby causing its trade secret claims to fail.

2          Waymo tries to avoid having to rely on the Levandowski Agreements by arguing that

3   "Mr. Levandowski owed Waymo a duty of confidentiality as a matter of California law

4   independent of the specific terms of his employment agreements." Dkt. 204 at 13-14. But the

5   specific terms of a contract supersede the general provisions of the common law.[5] Moreover,

6   Uber is not aware of a case that has allowed a party to meet the requirement of showing it kept

7   information sufficiently confidential to constitute a trade secret merely by pointing to the

8   existence of a background common law duty of confidentiality. Waymo recognized as much in

9   its complaint. Instead of relying on any common law duty of confidentiality, the complaint

10  alleges that Waymo specifically contracted for confidentiality, and relies on those contractual

11  confidentiality provisions (and the contractually-incorporated employee handbook) in an effort to

12  meet the required element of keeping its alleged trade secrets confidential. It therefore cannot

13  disavow the contractual arbitration promises that appear alongside those contractual

14  confidentiality promises.

### 2.   Waymo Cannot Prevail On Its Trade Secret Claims Without Proving That Levandowski Violated The Confidentiality Provisions In His Employment Contract.

17         In order to prevail on its trade secret claims, Waymo must show that Uber has either (a)

18  acquired Waymo's trade secrets with knowledge that those trade secrets were acquired by

19  improper means, or (b) disclosed or used Waymo's trade secrets at a time when Uber knew that

20  its knowledge of the trade secrets either (i) was "derived" from or through a person who had

21  used improper means to acquire the trade secrets, or who owed a duty to Waymo to maintain the

22  secrecy or limit the use of the alleged trade secrets, or (ii) was acquired under circumstances

23  giving rise to a duty to keep secret or limit use. *See* 18 U.S.C. § 1839 (definition of

---

[5] *See, e.g.*, *Facility Constr. Mgmt. Inc. v. Ahrens Concrete Floors, Inc.*, No. 1:08-CV-01600-JOF, 2010 WL 1265184, at *4 (N.D. Ga. Mar. 24, 2010) (collecting authorities holding that "the express terms of [a] contract supersede the common law."); *Mylan Inc. v. SmithKline Beecham Corp.*, No. CIV.A. 10-4809 JAP, 2012 WL 603804, at *6 (D.N.J. Feb. 23, 2012), *rev'd in part on other grounds,* 723 F.3d 413 (3d Cir. 2013) (holding that express contractual provision overrode duty of good faith and fair dealing ordinarily imposed under state law).

1    "misappropriation" under Federal Defend Trade Secrets Act); Cal. Civ. Code § 3426.1

2    (definition of "misappropriation" under California Uniform Trade Secrets Act).

3           The only way that Waymo can meet one of the foregoing legal standards is to show that

4    Mr. Levandowski acquired the trade secrets through improper means, or that Uber derived its

5    knowledge from Mr. Levandowski, who owed a duty to Waymo to maintain the secrecy over (or

6    limit the use of) those alleged trade secrets.  Thus, the Levandowski Agreements are central to

7    Waymo's ability to prove liability under its trade secret claims.

8           Waymo's allegations confirm that its trade secret claims are based on Mr. Levandowski's

9    alleged violations of his contractual confidentiality obligations.  Here is how Waymo entitles the

10   paragraphs from its Complaint that contain its central allegations of trade secret theft:

11   "**Unbeknownst to Waymo, Anthony Levandowski Lays The Foundation For Defendants To**

12   **Steal Waymo's Intellectual Property Rather Than Compete Fairly In The Autonomous**

13   **Vehicle Space.**"  Dkt. 23 at p. 11 (title to Section D).

14          The ensuing paragraphs allege that between November 2015 and the end of January

15   2016, while he was still a Waymo employee, Mr. Levandowski was doing the following:

16   •   "secretly preparing to launch a competing vehicle automation venture" (*id.* at ¶ 41);

17   •   "had confided in some Waymo colleagues that he planned to 'replicate' Waymo's

18       technology at a Waymo competitor" (*id.* at ¶ 42);

19   •   "went to great lengths to take what he needed to 'replicate' Waymo's technology and

20       then to meet with Uber executives, all while staying a Waymo employee" (*id.*);

21   •   "searched for instructions on how to access Waymo's highly confidential design server"

22       which "holds detailed technical information related to Waymo's LiDAR systems…and is

23       accessible only on a need-to-know basis" (*id.* at ¶ 43);

24   •   "installed special software on his Waymo laptop to access the design server" and then

25       "downloaded over 14,000 proprietary files from that server" including "9.7 GBs of

26       sensitive, secret, and valuable internal Waymo information" and "2GBs …. related to

27       Waymo's LiDAR technology" and "confidential specifications for each version of every

28       generation of Waymo's LiDAR circuit boards" (*id.* at ¶ 44);

DEFENDANTS' REPLY IN SUPPORT OF JOINT MOTION TO COMPEL
ARBITRATION OF, & TO STAY, TRADE SECRET & UCL CLAIMS [9 U.S.C. §§ 3, 4]                    8

Case: 20-03086   Doc# 1294   Filed: 02/24/21   Entered: 02/24/21 04:14:39   Page 43
of 59

3:17-cv-00939-WHA

1  •  "attached a removable device (an SD Card) to the laptop containing the downloaded files

2      for approximately eight hours" (*id.* at ¶ 45);

3  •  "reformatted the laptop, attempting to erase any evidence of what happened to the

4      downloaded files"  (*id.* at ¶ 46);

5  •  "used his Waymo credentials and security clearances to download additional confidential

6      Waymo documents to a personal device"—these Waymo documents "included at least

7      five highly sensitive internal presentations containing proprietary technical details

8      regarding the manufacture, assembly, calibration, and testing of Waymo's LiDAR

9      sensors" (*id.* at ¶ 47);

10 •  "After downloading all of this confidential information regarding Waymo's LiDAR

11     systems and other technology and while still a Waymo employee…..Mr. Levandowski

12     attended meetings with high-level executives at Uber's headquarters…" (*id.* at ¶ 48).

13     It does not take a lot of imagination to recognize that Waymo is alleging that

14 Mr. Levandowski breached the confidentiality provisions in the Levandowski Agreements.

15 Waymo never disputes that it obviously believes the foregoing conduct constitutes a breach of

16 the Levandowski Agreements.  Instead, Waymo relies on the formalism that Mr. Levandowski

17 "is not a party." Dkt. 204 at 10.  But that is irrelevant, as discussed further in Section I(D),

18 below.  The relevant inquiry is whether Waymo's allegation that Mr. Levandowski violated his

19 contractual confidentiality obligations is "inextricably intertwined with," or a necessary part of,

20 Waymo's claims against Uber.  It clearly is.

21     Waymo claims that Uber is the beneficiary of all of Mr. Levandowski's contractual

22 breaches.  And Waymo further claims that Uber is violating trade secret law because Uber

23 allegedly acquired Waymo's trade secret information knowing that it had been wrongfully

24 acquired by Mr. Levandowski.  Waymo cannot prevail on these claims without proving that

25 Mr. Levandowski took the trade secret information in violation of his contractual obligations.  If,

26 contrary to Waymo's allegations, Mr. Levandowski at all times perfectly complied with the

27 confidentiality provisions in the Levandowski Agreements, then Waymo could not prevail on

28

Case: 20-03056   Doc# 129-4   Filed: 02/24/21   Entered: 02/24/21 04:14:38   Page 14
of 39

any of its non-patent claims against Uber.  Waymo has not even attempted to show otherwise.[6]

### 3. Waymo Alleges That Uber Engaged In Concerted Misconduct With Levandowski That Involved Breaches Of His Employment Contract.

The central allegation Waymo makes against Uber is that "[i]nstead of developing their own technology, **Defendants stole** Waymo's long-term investments and property."  Dkt. 23 at ¶ 10 (emphasis added).  The alleged basis for this incendiary allegation is that (a) *Mr. Levandowski* allegedly stole Waymo's trade secrets (*id.* at ¶¶ 41-47), (b) *Mr. Levandowski* was simultaneously meeting with Uber executives while he was stealing Waymo's trade secrets (*id.* at ¶ 48), and (c) *Mr. Levandowski* then abruptly left Waymo and set up a company (Otto) that Uber acquired soon thereafter.  *Id.* at ¶ 55.  Thus, Waymo is quite clearly alleging that Uber engaged in concerted misconduct with Mr. Levandowski that involved complicity in Mr. Levandowski's violation of his contractual confidentiality obligations.

Waymo does not appear to contest that it is alleging that Uber and Mr. Levandowski were engaged in "interdependent and concerted misconduct."  Instead, Waymo argues that the "interdependent and concerted misconduct" was not "founded in or intimately connected with the obligations of the underlying agreement" (i.e., the Levandowski Agreements).  Dkt. 204 at 13-14.  That is incorrect.  The concerted misconduct alleged by Waymo is inextricably intertwined with the alleged breach of the Levandowski Agreements:

- Waymo accuses Levandowski of stealing trade secret information in violation of the confidentiality provisions of the Levandowski Agreements (Dkt. 23 at ¶¶ 41-49);

- Waymo accuses Uber of meeting with Levandowski while he was engaged in the alleged theft and while he was still an employee (*id.* at ¶ 48), and of then acquiring that stolen material by acquiring the companies Levandowski created (*id.* at ¶¶ 55-56).

As alleged by Waymo, there is no way to separate the alleged concerted misconduct from

---

[6] While Waymo alleges that two other employees, Mr. Kshirsagar and Mr. Raduta, also downloaded a small number of Google documents, (Dkt. 23 at ¶¶ 52, 53), those allegations are insufficient to sustain a trade secret claim against Uber. Waymo never tries to argue otherwise. Moreover, it is likely the employment agreements between Waymo and Mr. Kshirsagar and Raduta also have arbitration clauses; Waymo has made no attempt to show they do not.

Case: 20-03050   Doc# 1234   Filed: 02/24/21   Entered: 02/24/21 04:14:39   Page 15
of 39

1  the alleged theft in violation of the Levandowski Agreements.  Thus, the alleged concerted

2  misconduct is indeed "founded in or intimately connected with the obligations of the underlying

3  agreement."

> **D.    Waymo Cannot Avoid Arbitration Merely By Not Naming Levandowski As A Defendant In This Case.**

4

5

6      Waymo argues that because Mr. Levandowski is "not a party" to this lawsuit, the doctrine

7  of equitable estoppel cannot compel Waymo to arbitrate.  That is incorrect.  California courts

8  have repeatedly held that a nonsignatory defendant may invoke the doctrine of equitable estoppel

9  to compel a signatory plaintiff to arbitrate its claims even where there is no signatory named as a

10  defendant.  *See, e.g.*, *Metalclad Corp.*, 109 Cal. App. 4th at 1718 ("Estoppel prevents Metalclad

11  from avoiding arbitration by suing only the [nonsignatory] parent corporation in these

12  circumstances.") (citing *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir.

13  1999) (holding that nonsignatory plaintiff could compel signatory defendant to arbitrate where

14  there were no other parties to the litigation)); *Turtle Ridge Media Grp.*, 140 Cal. App. 4th at 833

15  (holding nonsignatory defendant could compel signatory plaintiff to arbitrate where there were

16  no other defendants); *Rodriguez v. Shen Zhen New World I LLC*, 2014 WL 908464 at *6 (C.D.

17  Cal. March 6, 2014) (applying equitable estoppel to compel plaintiff signatory to arbitrate claims

18  against nonsignatory defendant even though other signatory to agreement was not named as a

19  defendant).  California courts have held that a non-signatory defendant can even compel a

20  nonsignatory plaintiff to arbitrate its claims, with *no* signatories in the case.  *See JSM Tuscany*,

21  193 Cal. App. 4th at 1241.

22      Given that California courts compel arbitration even when a signatory plaintiff chooses to

23  sue only a nonsignatory (tactically choosing to leave any other signatories out of the case),

24  Waymo fails in its effort to distinguish the decision in *Torbit, Inc. v. Datanyze, Inc.*, 2013 WL

25  572613 (N.D. Cal. 2013).  *Torbit* compelled arbitration based on facts that are virtually identical

26  to those presented here.   The plaintiff alleged that its former employee (Ilya Semin) used

27  plaintiff's computer network "to download its code repository, including its trade secrets and

28  proprietary information, onto his personal computer," and further alleged that Mr. Semin

DEFENDANTS' REPLY IN SUPPORT OF JOINT MOTION TO COMPEL
ARBITRATION OF, & TO STAY, TRADE SECRET & CONTRACTUAL CLAIMS [9 U.S.C. §§ 3, 4]

3:17-cv-00939-WHA

11

1  "founded his company, Datanyze, during the course of his employment and that Datanyze is

2  using" the trade secrets and proprietary information taken by Mr. Semin. *Id.* at *2. Mr. Semin's

3  employment agreement with plaintiff had an arbitration clause. But the defendant Datanyze was

4  not a signatory to that agreement. Judge Davila held that the doctrine of equitable estoppel

5  allowed Datanyze to compel arbitration because the plaintiff's trade secret claim was

6  "intertwined with" Mr. Semin's employment agreement. *Id.* at *4. In particular, the court found

7  that the plaintiff could not show a required element of its trade secret claim against Datanyze—

8  that it had "knowledge" that the trade secret was acquired by improper means—without relying

9  on an interpretation of Mr. Semin's employment agreement. *Id.* The same is true here.

10  Waymo claims *Torbit* is "distinguishable" because in *Torbit* the plaintiff sued both the

11  former employee (Mr. Semin) and the company (Datanyze). Dkt. 204 at 11. But as shown

12  above, that formalism is irrelevant. Equitable estoppel cannot be evaded by tactical pleading.

13  Moreover, the court in *Torbit* analyzed the ability of Datanyze to compel arbitration without any

14  reference to the fact that Mr. Semin was a named defendant (and only after concluding that the

15  claims against Mr. Semin all had to be arbitrated).[7]

16  Waymo's attempt to avoid arbitration by not naming Mr. Levandowski as a defendant is

17  gamesmanship that elevates form over substance. Equitable doctrines cannot be so easily fooled.

### E.   The Fact That Waymo Is Bringing Tort And Statutory Claims Against Uber, Rather Than Contract Claims, Is Irrelevant.

20  Waymo argues that because its claims against Uber are "based in tort" and "seek to

21  enforce statutory rights," they are thereby independent from the Levandowski Agreements. Dkt.

22  204 at 13. But as shown above, these tort and statutory claims have elements to them that

23  Waymo cannot satisfy unless it proves facts that show a breach of the Levandowski Agreements.

24  Moreover, numerous cases hold that equitable estoppel requires a signatory to a contract to

25  arbitrate non-contractual claims against a nonsignatory when those claims are intertwined with

---

27  [7] Waymo also claims that *Kramer* somehow "abrogate[d]" the holding in *Torbit*, but there is no
basis for that assertion. *Kramer* did not cite *Torbit* or say anything that was inconsistent with the
28  holding and rationale in *Torbit*.

Case: 20-03056   Doc# 1233-4   Filed: 02/24/21   Entered: 02/24/21 04:14:33   Page 47
of 39

1  alleged breaches of the underlying contract. *See, e.g.*, *Turtle Ridge Media Grp.*, 140 Cal. App.

2  4th at 834-36 (granting nonsignatory's request to compel arbitration against contract signatory of

3  *tort* claims even where no contractual cause of action was alleged); *Torbit, Inc.*, 2013 WL

4  572613 at *4 (compelling arbitration of tort and other statutory claims because they were

5  "intertwined with" alleged breaches of an employment agreement). Moreover, the language of

6  the arbitration clause in the Levandowski Agreements is broad enough to capture non-contractual

7  claims, as explained in our opening brief. Dkt. 115 at 10-11. The agreement also applies to such

8  claims "with anyone." Waymo's attempt to avoid the broad arbitration provisions it negotiated

9  are unpersuasive.

## II.   THE ANSWERS TO THE COURT'S QUERIES CONFIRM THAT WAYMO SHOULD BE COMPELLED TO ARBITRATE ITS TRADE SECRET CLAIMS.

12          This Court asked whether the arbitration proceedings Google initiated against

13  Mr. Levandowski would address which of the 14,000-plus allegedly downloaded files qualify as

14  trade secrets, and also asked "**If the arbitration will not reach that issue, please explain why**."

15  Dkt. 194 (emphasis added). Waymo responded by stating that the Google arbitrations will not

16  address this issue, but Waymo did not "explain why." That is because Waymo has no good

17  answer to that question. Here is the true answer: Google is strategically choosing not to bring

18  claims against Mr. Levandowski that could implicate its trade secrets claim because it wants to

19  avoid the confidential arbitration process to which it contractually agreed. Waymo was aware of

20  the alleged downloading of 14,000 files *before* it filed its two arbitrations in late October—yet

21  they said nothing in either arbitration about that purported misappropriation. Dkt. 23 at ¶ 57.

22  That kind of gamesmanship to avoid a contractual commitment to arbitration is exactly what the

23  doctrine of equitable estoppel is designed to prevent, and is also inconsistent with the Federal

24  and California policies in favor of encouraging arbitration.[8]

---

[8] *See, e.g.*, *Molecular Analytical Systems*, 186 Cal. App. 4th at 714 ("both federal and California arbitration law favor the arbitration of disputes.").

1    The Court also inquired about the status of the current arbitrations, the panelists, and the

2    ability of the parties to conduct expedited discovery.  Dkt. 130.  We attach a declaration from

3    Mr. Gonzalez briefly updating the Court on these matters.  But the point we wish to emphasize

4    most is that the arbitration that Uber initiated against Waymo *will* address the alleged download

5    of the 14,000 files, including which if any of them contained trade secrets.  Moreover, that Uber-

6    initiated arbitration is positioned to move as expeditiously as Waymo wishes.  Uber has

7    consented to the use of the same three distinguished arbitrators that have been empaneled for the

8    Waymo-initiated arbitrations, and Uber is willing to move as expeditiously as Waymo wishes in

9    that arbitration.  Waymo may not have agreed to that, but that just reflects Waymo's strategic

10   effort to litigate its trade secret claims in court, rather than in arbitration as contractually

11   promised.

12   The Court also asked the parties to state whether they have ever taken positions in prior

13   cases with respect to a nonsignatory's ability to compel arbitration that are inconsistent with the

14   position being taken here.  Dkt. 142.  Uber has not done so.  Dkt. 197.  Waymo and Google have

15   done so at least four times.  Dkt. 200.  Moreover, Waymo's disclosure to the Court was

16   incomplete.  It failed to identify its reply brief in support of its motion to compel arbitration in

17   *Hart v. ITC Service Group, Inc.,* No. 4:15-cv-00599-DGK (W.D. Mo. 2015).  In that brief,

18   Google for the first time argued that arbitration was required because the plaintiff's claims "***must***

19   ***rely*** on the terms of the written agreement" with the arbitration clause—an argument it seeks to

20   evade here.  *Hart* Dkt. 62 at 5 (emphasis added).  In addition, Google relied heavily on case law

21   requiring arbitration where *no signatory* appeared as a named defendant—directly rebutting one

22   of its main tactics here.  *Id.* at 5-7 (citing *Arnold v. DirecTV, Inc.*, 2013 U.S. Dist. LEXIS

23   167064 (E.D. Mo. Nov. 25, 2013) and *CD Partners v. Grizzle*, 424 F.3d 795 (8th Cir. 2005)).

24   **III.    THE COURT SHOULD STAY WAYMO'S PRELIMINARY INJUNCTION**
25   **MOTION AS TO ALL CLAIMS SUBJECT TO ARBITRATION.**

26   Waymo argues that even if its trade secret claims must be arbitrated, this Court should

27   not stay its motion for preliminary injunction because it cannot get that relief in arbitration.  That

28   is incorrect.  First, the Levandowski Agreements specifically contemplate that the arbitrators

shall have the power to award "ANY REMEDIES," including "INJUNCTIVE RELIEF." Dkt. 138 at 52. The Levandowski Agreements also invoke the JAMS arbitration rules, and those rules provide that the arbitrators "may grant whatever interim measures are deemed necessary, including injunctive relief…"[9]  Waymo also argues that the California Code of Civil Procedure provides that a party to an arbitration agreement may seek provisional relief in court, but the rules say that is permissible "*only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief.*" Cal. Code Civ. P. § 1281.8(b) (emphasis added). Here, the award Waymo seeks will not be rendered ineffectual without provisional relief from this Court because the arbitrators are empowered to award any provisional injunctive relief they find necessary. *See Uptown Drug Co.*, 962 F. Supp. 2d at 1187.

Far from seeking "delay," Uber has made clear it consents to the existing panel of arbitrators, and is willing to move as quickly as Waymo wishes. Waymo has the burden of showing why that is inadequate to protect its interests. *See Riverside County Sheriff's Dep't v. Stiglitz*, 60 Cal. 4th 624, 633 (2014). Waymo has not met that burden. Further, Waymo is in no position to say the arbitration panel may not move as quickly as this Court. As shown in our opposition to Waymo's preliminary injunction motion, Waymo delayed bringing its motion for at least five months after learning of Mr. Levandowski's alleged downloads. Dkt.177 at 17-18.

Waymo complains that Uber wants "secrecy." But Waymo is the one making massive redactions from its court filings to protect its alleged trade secrets. The Supreme Court has recognized that arbitration is a particularly appropriate forum to resolve trade secret claims because the arbitration setting can much better "protect trade secrets" than can a public judicial forum. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344-45 (2011).

## CONCLUSION

For the foregoing reasons, the Court should compel Waymo to arbitrate its trade secret claims against Uber.

---

[9] *See* Dkt. 138 at 51, 63 (incorporating JAMS arbitration rules into Levandowski Agreements): *see also* JAMS Rule 24(e), *available at* https://www.jamsadr.com/rules-comprehensive-arbitration.

1    Dated:     April 17, 2017                Respectfully Submitted,

2                                        MORRISON & FOERSTER LLP

3

4                                   By:   */s/ Arturo J. González*

                                             ARTURO J. GONZÁLEZ

5

6                                   Attorneys for Defendants

                                  UBER TECHNOLOGIES, INC.,

7                                   OTTOMOTTO LLC, and OTTO TRUCKING LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  MICHAEL A. JACOBS (CA SBN 111664)
   MJacobs@mofo.com
2  ARTURO J. GONZÁLEZ (CA SBN 121490)
   AGonzalez@mofo.com
3  ERIC A. TATE (CA SBN 178719)
   ETate@mofo.com
4  MORRISON & FOERSTER LLP
   425 Market Street
5  San Francisco, California  94105-2482
   Telephone:     415.268.7000
6  Facsimile:     415.268.7522

7  Attorneys for Defendants
   UBER TECHNOLOGIES, INC.,
8  OTTOMOTTO LLC, and OTTO TRUCKING LLC

9  KAREN L. DUNN
   kdunn@bsfllp.com
10 HAMISH P.M. HUME
   hhume@bsfllp.com
11 BOIES SCHILLER FLEXNER LLP
   1401 New York Avenue, N.W.
12 Washington DC  20005
   Telephone:     202.237.2727
13 Facsimile:     202.237.6131

14 Attorneys for Defendants
   UBER TECHNOLOGIES, INC.,
15 and OTTOMOTTO LLC

16                    UNITED STATES DISTRICT COURT

17                   NORTHERN DISTRICT OF CALIFORNIA

18                      SAN FRANCISCO DIVISION

19 WAYMO LLC,                          Case No.     3:17-cv-00939-WHA

20                  Plaintiff,         **DECLARATION OF ARTURO J.**
                                       **GONZÁLEZ IN SUPPORT OF UBER**
21        v.                           **TECHNOLOGIES, INC., OTTOMOTTO**
                                       **LLC, AND OTTO TRUCKING LLC'S**
22 UBER TECHNOLOGIES, INC.;            **REPLY SUPPORTING DEFENDANTS'**
   OTTOMOTTO LLC; OTTO TRUCKING        **MOTION TO COMPEL ARBITRATION**
23 LLC,                                **OF, AND TO STAY, TRADE SECRET AND**
                                       **UCL CLAIMS [9 U.S.C. §§ 3, 4]**
24                  Defendants.
                                       Date:     April 27, 2017
25                                     Time:     8:00 a.m.
                                       Ctrm:     8, 19th Floor
26                                     Judge:    Honorable William Alsup

27                                     Trial Date: October 2, 2017

28

GONZÁLEZ DECLARATION ISO REPLY FOR DEFENDANTS' MOTION TO COMPEL ARBITRATION

la-1346554

I, Arturo J. González, declare as follows:

1.      I am a partner with the law firm of Morrison & Foerster LLP and a member in good standing of the Bar of the State of California.  I make this declaration based on personal knowledge and if called as a witness, I could and would testify competently to the matters set forth herein.

2.      I, along with others at Morrison & Foerster, serve as counsel for respondents in two pending JAMS arbitrations that Google Inc. initiated on October 28, 2016 (the "Google-initiated arbitrations").  One of those arbitrations names Anthony Levandowski as the only respondent; the other names as respondents both Levandowski and one other current Uber employee who also formerly worked for Google.

3.      In the Google-initiated arbitration against only Levandowski, Google claims he breached certain non-compete and non-solicitation agreements that he and Google allegedly entered into as part of Google's purchase of two companies Levandowski founded.

4.      In the other Google-initiated arbitration, Google alleges seven claims against Levandowski and the other respondent, including (1) breach of Google employment agreements; (2) breach of fiduciary duties and duty of loyalty; (3) fraud; (4) tortious interference with contract; (5) tortious interference with prospective economic advantage; (6) violations of California's Business & Professions Code section 17200; and (7) unjust enrichment.

5.      In both Google-initiated arbitrations, Google claims Levandowski misused its confidential information, but it does not bring a claim under state or federal trade-secret misappropriation statutes in that proceeding.  This is true even though Google alleges here, in the *Waymo* litigation, that it discovered in October (the same month Google filed the two Google-initiated arbitrations) that Levandowski purportedly downloaded "over 14,000 proprietary files from Waymo's highly confidential design server the month before his resignation."  (Pl.'s Opp'n to Mot. to Compl. Arb., ECF No. 204, at 4.)  Consequently, as it now stands, neither of the two pending Google-initiated arbitrations will resolve the specific question of whether any of the 14,000 files Levandowski supposedly downloaded qualify as Waymo's trade secrets.

6.      JAMS formally commenced the two Google-initiated arbitrations on January 20,

1   2017, and those proceedings are now well underway.  The JAMS arbitrators assigned to those

2   matters are the Hon. Edward Panelli (Ret.), Hon. James Ware (Ret.), and Hon. Steven Brick

3   (Ret.).  The parties held their first case management conference on March 10, 2017, and a second

4   on April 3, 2017.  The parties have completed an initial document exchange under the applicable

5   JAMS rules and have entered into a stipulated discovery plan.

6          7.      The parties have agreed to a number of deadlines and to an arbitration date in the

7   Google-initiated arbitrations.  For example, motions to dismiss are due in less than two weeks, on

8   April 26, 2017; the hearing on the motions to dismiss is set for June 9; fact-discovery cutoff is

9   January 5, 2018; summary judgment motions due February 14, 2018; and the arbitration hearing

10  is scheduled for April 30–May 11, 2018.

11         8.      Google has confirmed on the record in these arbitrations that it will be seeking

12  documents and depositions by serving "numerous third-party subpoenas" on various individuals

13  and entities, including Otto and Uber.

14         9.      Separately, on March 31, 2017, the Defendants in this litigation instituted a new

15  JAMS arbitration proceeding against Waymo, seeking (i) a declaration that Waymo's first,

16  second, and seventh causes of action in the litigation before Judge Alsup (i.e., the trade-secret

17  misappropriation and unfair completion claims in this case) are subject to mandatory arbitration;

18  and (ii) a declaration that those claims are without merit.  The corresponding arbitration demand

19  was served on Waymo on March 31, 2017.

20         10.     Accordingly, the arbitration Uber initiated against Waymo will resolve the specific

21  question of whether any of the 14,000 files Levandowski allegedly downloaded qualify as

22  Waymo trade secrets.

23         11.     JAMS notified the parties on April 14 that the Uber-initiated arbitration has

24  officially commenced.  The parties are to send their arbitrator "strike lists" to JAMS by no later

25  than April 21, 2017.

26         12.     On March 31—the same day Waymo was served with the new arbitration

27  demand—I sent an e-mail to Waymo's counsel, alerting them that Defendants were "filing a new

28  arbitration demand that seeks to move the trade secrets claims into the proper forum."  Attached

1   as **Exhibit 1** is a true and correct copy of my March 31 e-mail.  In that e-mail, in an effort to

2   expedite resolution of Waymo's trade secret claims, and to avoid any suggestion that Uber was

3   seeking to delay, I proposed that the parties agree to the following:

> (1) the same panel that is considering the two pending arbitrations
> would hear the new one; and (2) we will agree to start the trade
> secrets arbitration trial two weeks after the jury returns its verdict in
> the pending proceeding before Judge Alsup.  If the proceeding
> before Judge Alsup is resolved without a trial, then we would start
> the trade secrets arbitration on October 9, or as soon thereafter as
> the arbitrators are available.

8   Ex. 1.

9           13.    This proposal was designed to ensure that the same three distinguished arbitrators

10   that have been empaneled in the Google-initiated arbitrations could hear and resolve all of the

11   intertwined issues in this dispute.  It was also intended to ensure that arbitration of these issues

12   proceed as expeditiously as possible.  Waymo's counsel declined my proposal.

13          14.    Uber remains willing to try the trade secrets claims in arbitration on an expedited

14   basis.

15          15.    Attached as **Exhibit 2** is a true and correct copy of the reply brief filed by Google

16   Fiber Inc. in the matter of *Hart, et al.* v. *ITC Service Group, Inc.*, *et al*, No. 4:15-cv-00599-DGK

17   (W.D. Mo. 2015).  This brief was filed publicly on May 4, 2016 as docket entry number 62 in that

18   matter, and the copy of the brief attached hereto was downloaded from PACER.

19          I declare under the penalty of perjury under the laws of the United States that the

20   foregoing is true and correct.  Executed this 17th day of April, 2017, in San Francisco, California.

          */s/ Arturo J. González*
          ARTURO J. GONZÁLEZ

# EXHIBIT 1

**From:** David Perlson [mailto:davidperlson@quinnemanuel.com]
**Sent:** Tuesday, April 04, 2017 11:31 AM
**To:** Gonzalez, Arturo J.; QE-Waymo
**Subject:** [EXT] RE: New Arbitration Demand

Arturo, we oppose Defendants' attempt to compel arbitration in this action and do not agree to the proposed stipulation, which we do not believe would be practicable in any event.  Waymo's claims brought in this case are appropriate in district court as we will explain in our opposition.  Let me know if you wish to discuss further.

David

David Perlson
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Direct: (415) 875-6344
Main Phone: (415) 875-6600
Main Fax:  (415) 875-6700
E-mail: davidperlson@quinnemanuel.com
Web:  www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Gonzalez, Arturo J. [mailto:AGonzalez@mofo.com]
**Sent:** Friday, March 31, 2017 1:05 PM
**To:** QE-Waymo <qewaymo@quinnemanuel.com>
**Subject:** New Arbitration Demand

Quinn Team,

Today, we are filing a new arbitration demand that seeks to move the trade secrets claims into the proper forum.  Judge Alsup is obviously concerned that your clients be provided with a timely opportunity to resolve those claims.  We agree.  Thus, we suggest that we stipulate to the following: (1) the same panel that is considering the two pending arbitrations would hear the new one; and (2) we will agree to start the trade secrets arbitration trial two weeks after the jury returns its verdict in the pending proceeding before Judge Alsup.  If the proceeding before Judge Alsup is resolved without a trial, then we would start the trade secrets arbitration on October 9, or as soon thereafter as the arbitrators are available.  Please let us know if your client agrees.

**Arturo J. González**

Chair, Commercial Litigation and Trial Practice Group
Morrison & Foerster LLP
425 Market St. | San Francisco, CA 94105
P: 415.268.7020 | F: 415.276.7020 | C: 415.425.9548
AGonzalez@mofo.com | www.mofo.com

======================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email.

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| **MICHAEL HART,** *et al.*, **individually and on behalf of a class of similar employees,** | ) ) ) | |
| **Plaintiffs,** | ) ) | **Case No. 4:15-cv-00599-DGK** |
| **v.** | ) ) | |
| **ITC SERVICE GROUP, INC.,** *et al.*, | ) ) | |
| **Defendants.** | ) | |

<u>**DEFENDANT GOOGLE FIBER, INC.'S REPLY TO PLAINTIFFS' MEMORANDUM IN OPPOSITION TO GOOGLE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STAY**</u>

Just to be clear – Plaintiffs admit they have agreed to arbitrate their claims against the ITC Defendants.[1]  Indeed, the arbitration agreement Plaintiffs seek to enforce against ITC broadly encompasses "***any dispute or controversy . . . arising from, related to, or having any relationship or connection whatsoever with . . . [their] employment***."  That very same agreement plainly states that Plaintiffs' employment with ITC was/is for the benefit of ITC's client, Google. In their Amended Complaint, Plaintiffs allege that ITC and Google jointly controlled every aspect of their employment, and Plaintiffs seek to hold ITC and Google jointly liable for FLSA violations they allegedly jointly perpetrated. Despite the crystal clear agreement to arbitrate all disputes having "any connection whatsoever" to Plaintiffs' work for ITC for the benefit of Google, Plaintiffs now contend the determination of joint liability for the alleged joint acts of the alleged joint employer should be split and simultaneously adjudicated in two different tribunals – with ITC in arbitration and Google in this Court.  There is no factual or legal basis for such a hopelessly disjointed and misguided course of action.  Instead, this Court should rule that the entire case must proceed in arbitration.

---

[1] ITC Service Group, Inc. and four of its individual representatives.

**ARGUMENT**

The parties disagree as to which of two arbitration agreements applies.  ITC contends that the Mutual Arbitration Agreement is controlling (Dkt. 25, 26). Plaintiffs acknowledge that they entered into the Mutual Arbitration Agreement, but they insist that the Mutual Arbitration Agreement was superseded by a Temporary Contract Employment Agreement containing a different arbitration provision. (Dkt. 34, 35).  Google agrees with ITC that the Mutual Arbitration Agreement should be enforced.  As more fully discussed below, no party disputes that, if the Mutual Arbitration Agreement applies, Google is entitled to enforce Plaintiffs' agreement to arbitrate. But even if the Temporary Contract Employment Agreement is the controlling agreement, Google is still entitled to enforce Plaintiffs' agreement to arbitrate.  Thus, regardless of the Court's determination as to which agreement controls, all claims against all parties should be compelled to arbitration.

A.    **The Mutual Arbitration Agreements Should Be Enforced, And All Parties And All Claims Should Be Compelled To Arbitration.**

For the reasons set forth in the ITC Defendants' suggestions in support of their motion to compel arbitration (Dkt. 26, 43), the Mutual Arbitration Agreements should be enforced. Further, as explained in the suggestions in support of Google's motion (Dkt. 58 at 4-5), Google is entitled to enforce the Mutual Arbitration Agreements due to the sweeping joint employer allegations in the First Amended Complaint (Dkt. 49), and because the Mutual Arbitration Agreements broadly define "Company" to include ITC's "affiliates" and "related entities" (Dkt. 26-1, Ex. A-C).  Indeed, in their opposition to Google's motion, Plaintiffs do not even challenge this conclusion, other than to reiterate their contention that the Mutual Arbitration Agreements have been superseded by the Temporary Contract Employment Agreements.  (Dkt. 61, at 2-3).

Even if there were some doubt as to whether Google could enforce the Mutual Arbitration Agreements as an "affiliate" or "related entity," Google is entitled to enforce the Mutual Arbitration Agreements as a nonsignatory for the same reasons discussed below with respect to the Temporary Contract Employee Agreements. Consequently, the Court should compel all claims and all parties to arbitration.

**B.      Even If The Temporary Contract Employee Agreements Contain The Controlling Arbitration Provision, All Parties And All Claims Should Be Compelled To Arbitration.**

Even if this Court determines that the Temporary Contract Employment Agreements superseded the Mutual Arbitration Agreements, Google is still entitled to enforce Plaintiffs' arbitration agreement.  Plaintiffs argue that, because Google did not sign the Temporary Contract Employment Agreements, Google cannot enforce the arbitration provision contained within those agreements.  For the reasons set forth below, Plaintiffs' efforts to avoid their agreement to arbitrate fail.

Initially, Plaintiffs seem to argue that they never agreed to arbitrate employment-related disputes that involve both ITC and Google.   But even a cursory review of the Temporary Contract Employment Agreements demonstrates the fallacy of that argument.  Unlike the Mutual Arbitration Agreements, which exclusively dealt with arbitration, the Temporary Contract Employment Agreements established all the contractual terms and conditions of the employment relationship between Plaintiffs and ITC. (*See* Dkt. 35-1 at 9-14, 15-20; 35-2 at 9-13, 14-18; 35-3 at 9-14, 15-19, 20-24).  The Temporary Contract Employment Agreements expressly stated that each employee's "Assignment" was to provide services ***exclusively*** for the benefit of ITC's client, Google.  (*See* Dkt. 35-1 at 9, 15; 35-2 at 9, 14; 35-3 at 9, 15, 20; Dkt. 49, ¶ 14).

The arbitration provision of the Temporary Contract Employment Agreements is clearly broad enough to encompass Plaintiffs' FLSA-based disputes with ITC and Google:

3

Employee agrees that **any dispute or controversy** which would otherwise require or allow resort to any court or other governmental dispute resolution forum, between Employee and the Company (or its owners, directors, and officers, and parties affiliated with its employee benefit and health plans) **arising from, related to, or having any relationship or connection whatsoever with** application for employment, **employment, or other association with, Company**, whether based in tort, contract, **statutory**, or equitable law, or otherwise, **shall be submitted to and determined by binding arbitration**.

(*See* Section 23 "Agreement to Arbitrate," Dkt. 35-1 at 13, 19; 35-2 at 13, 18; 35-3 at 13, 19, 24)

(emphasis added)).

The entire theory of Plaintiffs' case, as set forth in the First Amended Complaint, is that Google is/was a joint employer with ITC, including that:

- ITC employees work exclusively for Google (Dkt. 49, ¶ 14);

- Google has substantial control over the ITC employees (*Id*. ¶ 15);

- ITC employees use equipment owned by Google (*Id*. ¶ 16);

- ITC's operations are tailored to Google's precise demands (*Id*. ¶ 18);

- Google provides training to ITC employees (*Id*. ¶ 21);

- Google controls the techniques and manner in which ITC employees perform their duties (*Id*. ¶ 22);

- ITC employees have Google email addresses, security clearances, badges, and uniforms (*Id*. ¶¶ 23-24);

- Google screens ITC employees for hire, has ordered pay increases for ITC employees, conducts regular performance reviews, and has effectively recommended disciplinary action (*Id*. ¶ 25);

- Google has a tracking system to monitor ITC employees during the work day (*Id*. ¶ 27);

- ITC employees receive wage payments from Google that simply "pass through" ITC (*Id*. ¶ 30); and

- Google controls ITC's staffing levels and must pre-approve staffing level increases (*Id*. ¶ 35).

In short, Plaintiffs allege that Google and ITC were so intertwined as to form a single employer of the Plaintiffs.  Caselaw makes clear that, in such circumstances, Google is entitled to enforce Plaintiffs' arbitration agreement. This is especially true because "[a]ny doubts raised in construing contract language on arbitrability 'should be resolved in favor of arbitration.'" *CD Partners, LLC v. Grizzle*, 424 F. 3d 795, 798 (8th Cir. 2005) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

In their opposition, Plaintiffs argue that Google has failed to undertake the analysis mandated by "relevant and controlling Missouri law."  (Dkt. 61, at 4-5).  In support of their argument, Plaintiffs cite *King Cole Foods, Inc. v. SuperValu, Inc. (In re Wholesale Grocery Products Antitrust Litigation)*, 707 F. 3d 917 (8th Cir. 2013); *Tucker v. Vincent*, 471 S.W. 3d 787 (Mo. App. (E.D.) 2015); and *Jones v. Paradies*, 380 S.W. 3d 13 (Mo. App. (E.D.) 2012).  But those cases, and especially the most recent Missouri state court case, *Tucker v. Vincent*, only serve to reaffirm the arguments and authorities on which Google relies.

First, it is important to recognize that this is not a case in which Plaintiffs themselves have not signed an arbitration agreement.  Instead, "[t]his is a case where a nonsignatory with a close relationship to a signatory wants the other signatory to arbitrate a claim." *CD Partners v. Grizzle*, 424 F.3d 795, 799 (8th Cir. 2005).  As the Missouri Court of Appeals in *Tucker* recognized, in circumstances such as these there are several independent bases on which a nonsignatory can compel arbitration with a signatory, including:

> (1)  "when the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement be avoided." *Tucker*, 471 S.W. 3d at 796 (quoting *CD Partners*, 424 F.3d 795, 798;
>
> (2)  "when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the non-signatory." *Id*.; and

(3)   where the "non-signatory is a third-party beneficiary of the agreement." *Tucker*, 471 S.W. 3d at 796 n. 5 (citing *Nitro Distrb., Inc. v. Dunn*, 194 S.W. 3d 339, 345 (Mo. banc 2006).

Despite Plaintiffs' reference to cases articulating at least three different legal bases for a nonsignatory's enforcement of an arbitration agreement, Plaintiffs contend they should be relieved of their obligation to arbitrate solely because their FLSA claims are independent of the Temporary Contract Employment Agreement.  Thus, Plaintiffs attack only the second legal basis articulated in *Tucker*.   As discussed below, even that argument misses the mark, and the argument certainly does nothing to call into question enforcement under the first or third basis.

### 1.   The relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting Google to invoke arbitration may evisceration of the underlying arbitration agreement be avoided.

With respect to the "sufficiently close relationship" analysis, Plaintiffs essentially allege that ITC and Google were one and the same employer, and that they jointly violated the FLSA. Proof and defense of those claims will require discovery and trial related to the joint employer allegations, as well as the merits of the FLSA claims themselves.  This will include testimony from representatives of both Google and ITC, and documentary evidence from both Google and ITC.  In other words, ITC (and Google) would be forced to simultaneously defend the exact same claims in two different tribunals – arbitration and this Court. Moreover, to allow the simultaneous litigation of the exact same claims in two different venues could lead to inconsistent results and/or unwarranted double recovery.  Such an approach would unquestionably eviscerate the arbitration agreement Plaintiffs signed.

Indeed, as Google pointed out in its suggestions in support, the Eastern District of Missouri recently decided a case with nearly identical facts, *Arnold v. DirecTV, Inc.*, 2013 U.S. Dist. LEXIS 167064 (E.D. Mo. Nov. 25, 2013). Although Plaintiffs opted not to discuss *DirecTV* in their opposition, that court found the close relationship between the defendants, coupled with

plaintiffs' allegations of joint employment and joint violation of FLSA, meant that the arbitration agreements would be "practically eviscerated" if DirecTV was not permitted to compel arbitration.  2013 U.S. Dist. LEXIS 167064 at * 13-14.  The court further held that, even though DirecTV denied it was a joint employer, the plaintiffs could not be permitted to argue the defendants were joint employers while at the same time argue they were insufficiently related to permit DirecTV to compel arbitration.  *Id.* at * 12-14.

Plaintiffs also chose not to address the decisions from other courts throughout the country that have similarly relied on an estoppel theory in the context of joint employer allegations under the FLSA to hold that a nonsignatory defendant may enforce the arbitration agreement between the signatory plaintiff and his/her direct employer.  *See, e.g., Diaz v. Michigan Logistics, Inc*., 2016 U.S. Dist. LEXIS 27499, *17-18 (E.D.N.Y. March 1, 2016); *Sanchez v. CleanNet USA, Inc*., 78 F. Supp. 3d 747, 758 (N.D. Ill. 2015); *Carter v. MasTec Services Company, Inc*., 2010 U.S. Dist. LEXIS 10338, *13-14 (D. S.C. Feb. 5, 2010).

Plaintiffs cannot have their cake and eat it too by, on one hand, claiming that Google and ITC are their joint employer (*i.e.*, one and the same employer) and then, on the other, argue that Google cannot enforce the agreements controlling resolution of complaints "having any relationship or connection whatsoever with . . . [their] employment."  To allow otherwise would render the agreements meaningless and result in their "evisceration."

### 2. The fact that Plaintiffs' FLSA claims are not directly based on their employment agreement does not preclude Google from enforcing the arbitration provision in the employment agreement.

As noted above, the only argument advanced by Plaintiffs is that their FLSA claims are independent of the Temporary Contract Employment Agreements.  Google acknowledges that there is an independent statutory basis for Plaintiffs' claims.  But that does not end the inquiry.

7

As the *Tucker* court recognized, there is a difference between enforcement of an arbitration provision found in a limited purpose agreement, such as a onetime transfer of assets in a purchase agreement, as compared to enforcement of an arbitration provision found in an employment services agreement, which "contemplates an ongoing relationship in which the [employer's] promises only can be fulfilled by future (unspecified) acts of its employees or agents stretching well into an uncertain future." *Tucker*, 471 S.W. 3d at 797. Even though Plaintiffs do not assert breach of the Temporary Contract Employment Agreements, those agreements establish the employment relationship with ITC exclusively for the benefit of Google, which forms the context for Plaintiffs' claims. Consequently, Google is entitled to enforce the arbitration provision in the Temporary Contract Employment Agreements.

### 3.     Google is a third-party beneficiary of the arbitration agreements.

A nonsignatory may also enforce an arbitration agreement as a third-party beneficiary. *Tucker*, 471 S.W. 3d at 796 n. 5 (citing *Nitro Distrb., Inc. v. Dunn*, 194 S.W. 3d 339, 345 (Mo. banc 2006). Here, the Temporary Contract Employment Agreements expressly stated that each employee's "Assignment" was to provide services exclusively for the benefit of ITC's client, Google. (*See* Dkt. 35-1 at 9, 15; 35-2 at 9, 14; 35-3 at 9, 15, 20; Dkt. 49, ¶ 14). Thus, for this additional reason, Google is entitled to enforce the arbitration agreement.

### C.     The Court Should Dismiss Plaintiffs' Claims Or, At A Minimum, Stay All Further Proceedings On Their Claims.

For the reasons set forth in the suggestion in support of Google's motion, the Court should dismiss this action so that it may proceed in arbitration. *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769-70 (8th Cir. 2011) ("district courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration.").

**CONCLUSION**

For the reasons set forth above and in the suggestions in support of Google's motion, Google respectfully requests that the Court enter an order dismissing or, in the alternative, staying Plaintiffs' claims against Google, to enable the claims to proceed in arbitration.

Respectfully submitted,

/s/ *Daniel B. Boatright*

Daniel B. Boatright, #38803
S. Jane Preuss, #50952
Jason N.W. Plowman, #67495
LITTLER MENDELSON, P.C.
1201 Walnut, Suite 1450
Kansas City, MO  64106
Telephone: 816.627.4400
Facsimile: 816.627.4444
dboatright@littler.com
jpreuss@littler.com
jplowman@littler.com

ATTORNEYS FOR DEFENDANT
GOOGLE FIBER, INC.

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 4th day of May, 2016, I electronically filed the above and foregoing with the Court's CM/ECF electronic system which will send a notice of electronic filing to the following counsel of record:

Morgan L. Roach
Michael T. Miller
Nicholas S. Ruble
MCCAULEY & ROACH, LLC
527 West 39th Street, Suite 200
Kansas City, MO  64111
morgan@mccauleyroach.com
mike@mccauleyroach.com
nicholas@mccauley.roach.com

ATTORNEYS FOR PLAINTIFFS

Kyle B. Russell
Lindsey L. Poling
JACKSON LEWIS P.C.
7101 College Boulevard, Suite 1150
Overland Park, KS  66210
Kyle.Russell@jacksonlewis.com
Lindsey.Poling@jacksonlewis.com

and

Daniel P. O'Donnell, Jr.
JACKSON LEWIS P.C.
7733 Forsyth Boulevard, Suite 600
St. Louis, MO  63105
Daniel.ODonnell@jacksonlewis.com

ATTORNEYS FOR DEFENDANTS
ITC SERVICE GROUP, INC., TIM SAUER,
SCOTT MITCHELL, BOB GONZALEZ,
AND PATTI SANDERSON

/s/ *Daniel B. Boatright*
Attorney for Defendant
Google Fiber, Inc.