# EXHIBIT 82

# EXHIBIT 82

1    Debra I. Grassgreen (CA Bar No. 169978)
     Miriam Manning (CA Bar No. 178584)
2    PACHULSKI STANG ZIEHL & JONES LLP
     150 California Street, 15th Floor
3    San Francisco, CA 94111
     Telephone:    (415) 263-7000
4    Facsimile:    (415) 263-7010
     E-mail:       dgrassgreen@pszjlaw.com
5                  mmanning@pszjlaw.com

6    David J. Bradford (admitted *pro hac vice*)
     Terri L. Mascherin (admitted *pro hac vice*)
7    JENNER & BLOCK LLP
     353 N. Clark St.
8    Chicago, IL 60654
     Telephone: (312) 222-9350
9    E-mail: dbradford@jenner.com
             tmascherin@jenner.com
10

11   *Counsel for Uber Technologies, Inc.*

12                        **UNITED STATES DISTRICT COURT**
                         **NORTHERN DISTRICT OF CALIFORNIA**
13                           **SAN FRANCISCO DIVISION**

14   WAYMO LLC,                          Case No. 3:17-cv-00939-WHA

15                       Plaintiff,       **DEFENDANT UBER TECHNOLOGIES,**
                                          **INC.'S NOTICE OF MOTION AND**
16          v.                            **MOTION TO MODIFY THE INTERIM**
                                          **MODEL PROTECTIVE ORDER**
17   UBER TECHNOLOGIES, INC.,
     OTTOMOTTO LLC,  OTTO TRUCKING        **Hearing:**
18   LLC
                                          **Date:   December 10, 2020**
19                       Defendants.      **Time:   8:00 AM**
                                          **Place:  Courtroom 12, 19th Floor**
20
                                          **Judge:  Honorable William H. Alsup**
21

22   **TO PLAINTIFF WAYMO LLC, ALL OTHER PARTIES, AND THEIR COUNSEL OF**

23   **RECORD:**

24          PLEASE TAKE NOTICE[1] that on December 10, 2020, at 8:00 a.m., or as soon thereafter as

25   this matter may be heard, in the United States District Court for the Northern District of California,

26   

27   ―――――――――――――
     [1] Pursuant to GENERAL ORDER 72-6, In re: Coronavirus Disease Public Health Emergency, the Court will determine
28   whether to hold a hearing on the Motion or decide the matter on the papers.  If the Court decides to conduct a hearing,
     it will notify the parties prior to the hearing date.

―――――――――――――――――――――――――――――――――――――――――――――――――――――――――
                    MOTION TO MODIFY THE INTERIM MODEL PROTECTIVE ORDER

1  San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, California 94102, in

2  Courtroom 12, before the Honorable William H. Alsup, defendant Uber Technologies, Inc. does and

3  hereby move for an order granting its *Motion to Modify Interim Protective Order* ("**Motion**").  By

4  way of the Motion, Uber respectfully requests that the Court modify the "use" restrictions of

5  Paragraph 7 of the Interim Model Protective Order (the "**Protective Order**"), in the above-captioned

6  matter (the "**Litigation**") including subsections 7.1 through 7.4, to allow the parties to the separate

7  proceeding of *Anthony Levandowski v Uber Technologies, Inc.*, N.D. Cal. Bankr., Adv. Pro. No. 20-

8  03050 (HLB) (the "**Adversary Proceeding**") to (a) review the Protected Materials for the purpose of

9  evaluating whether they are relevant to the Adversary Proceeding, and (b) use (and produce in

10  discovery) such materials for prosecuting, defending, and attempting to settle the Adversary

11  Proceeding, pursuant to a substantially identical protective order already entered in the Adversary

12  Proceeding.  In the alternative, Uber seeks the same relief but limited to a subset of the Protected

13  Materials identified below.

14         The Motion is based on this notice of motion and supporting memorandum of points and

15  authorities, the supporting declaration of Debra Grassgreen and accompanying exhibits, as well as

16  other written or oral argument that Uber may present to the Court.

17  DATED: November 5, 2020                    PACHULSKI STANG ZIEHL & JONES LLP

18                                            By: */s/ Debra I. Grassgreen*
19                                            Debra I. Grassgreen
                                              Miriam Manning

20                                            and

21                                            JENNER & BLOCK LLP
22                                            David J. Bradford
                                              Terri L. Mascherin

23                                            *Counsel for Defendant*
                                              *Uber Technologies, Inc.*
24

25

26

27

28

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND ..........................................................................................................................1

ARGUMENT ...............................................................................................................................5

    I.      The Ninth Circuit Strongly Favors Providing Collateral Litigants
           Access to Discovery in the Interests of Judicial Economy. ....................................5

    II.     The Litigation Materials, or At Least A Significant Portion of
           Them, Are Relevant to the Adversary Proceeding Because There
           Is Substantial Overlap Between the Litigation and the Adversary Proceeding. ......7

    III.    The Relief Sought Will Promote Judicial Economy and Efficiency. .....................9

    IV.    In The Alternative, the Parties to the Adversary Proceeding Should
           Be Permitted to Review and Use Specified Testimony and Record Materials......11

CONCLUSION.............................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
 966 F.2d 470 (9th Cir. 1992).................................................................5, 6, 7, 10

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
 331 F.3d 1122 (9th Cir. 2003)..............................................................5, 6, 7, 10

*Olympic Refining Co. v. Carter*,
 332 F.2d 260 (9th Cir. 1964).........................................................................5, 6

*United Nuclear Corp. v. Cranford Ins. Co.*,
 905 F.2d 1424 (10th Cir. 1990)....................................................................5, 6

*Wilk v. Am. Med. Ass'n*,
 635 F.2d 1295 (7th Cir. 1980)...........................................................................5

**OTHER AUTHORITIES**

8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure §
 2044.1 (2d ed. 1994) .........................................................................................5

---

MOTION TO MODIFY THE INTERIM MODEL PROTECTIVE ORDER

**PRELIMINARY STATEMENT**

Through the relief sought in this Motion, Uber seeks to avoid the wasteful duplicative discovery that would result if it were forced to conduct the same discovery in the Adversary Proceeding that has already been conducted in this Litigation.  If this Court modifies Paragraph 7 of the Protective Order to permit use of materials designated Confidential in this Litigation for purposes of the Adversary Proceeding, the use of the Protected Materials will be governed by a protective order entered in the Adversary Proceeding that is almost identical to the one entered in this Litigation.  The protective order entered in the Adversary Proceeding contains the same categories of confidentiality and the same restrictions on the use and disclosure of the confidential materials.  Thus, for example, any materials marked Attorneys Eyes Only in this Litigation will continue to be treated as Attorneys Eyes Only in the Adversary Proceeding, subject to the very same restrictions on disclosure—but for the purpose of the Adversary Proceeding.  This will fully protect the confidentiality interests of any parties and non-party witnesses who testified or produced discovery in this Litigation.   In support of this Motion, Uber states as follows:

**BACKGROUND**

1.      This Court is familiar with the scope of this Litigation, which concerned allegations that Anthony Levandowski ("**Levandowski**") misappropriated trade secrets from Google and took them to Google's competitor, Uber.  The Litigation involved Levandowski's departure from Google, Uber's purchasing Ottomotto LLC ("**Otto**") in which Levandowski had a substantial interest, Uber's efforts to ensure that Levandowski did not bring any of Google's confidential information (including Waymo's confidential information) to Otto or Uber, and allegations that Google's and Waymo's confidential information nevertheless was used by Levandowski or others acting under his direction at Otto.  The parties settled the Litigation on February 8, 2018, through a settlement agreement signed by Uber, Otto, Google, Waymo (the business unit that now runs Google's self-driving car business), and Alphabet, Inc. ("**Alphabet**") (the parent company of both Google and Waymo).

2.      As this Court is aware, Google also sued Levandowski in private arbitration.  There, Google alleged (among other things) that Levandowski was disloyal while still employed at Google, and that he violated contractual, statutory, and other obligations to Google by competing and

---

Case 20-03050   Doc# 129-9   Filed: 02/24/21   Entered: 02/24/21 04:14:33   Page 6 of 22

soliciting Google employees.  Google sought and ultimately obtained disgorgement of all the compensation it had paid to Levandowski during the period when Levandowski was engaging in unlawful conduct and breaching his obligations to Google.  On December 23, 2019, the arbitration panel issued a corrected final award, *nunc pro tunc* as of December 6, 2019, finding that Levandowski had been disloyal and dishonest in his dealings with Google by concealing his competitive activities, and that he had obtained his $127 million Chauffeur Bonus only by concealing those competitive activities.  It ordered him to disgorge an approximately $127 million bonus, together with other compensation, interest, attorneys' fees, and costs.  On March 4, 2020, the California Superior Court confirmed the arbitration award as a judgment against Levandowski in the amount of approximately $179 million.

3.      On the same day the California Superior Court entered the judgment against Levandowski (March 4, 2020), Levandowski filed for bankruptcy in the United States Bankruptcy Court for the Northern District of California.  (*In re Anthony Scott Levandowski*, No. 20-30242 (HLB) (Bankr. N.D. Cal.).)  On April 1, 2020, Levandowski asserted claims against Uber for indemnification of the $179 million judgment and also sought damages for an alleged breach of contract.  On April 13, 2020, Uber answered those claims and sought, among other things, a declaration that the 2016 Indemnification Agreement that Levandowski relied on had been rescinded in full.  On July 6, 2020, Uber filed a proof of claim in Levandowski's bankruptcy proceeding, seeking, among other things, damages for Levandowski's fraudulently inducing Uber to enter into the Indemnification Agreement.  Ultimately, Uber and Levandowski agreed to resolve all of the disputes between them in the Adversary Proceeding.  Thereafter, Google was permitted to intervene with respect to one of Levandowski's adversary claims, which seeks a declaratory judgment that Uber may not rescind the Indemnification Agreement.

4.      On September 16, 2020, the Bankruptcy Court entered a protective order in the Adversary Proceeding ("**Adversary Proceeding Protective Order**") that is virtually identical to the Protective Order that was entered in this Litigation.  If the Court grants the Motion, Uber's use of the materials from this Litigation will be governed by the Adversary Proceeding Protective Order.

5. Many of the same events underlying the Litigation are now at issue in the Adversary Proceeding because Uber is defending against Levandowski's indemnification claim based in part upon Levandowski's misconduct that was at issue in this Litigation. (*See* Ex. A, *Uber's Answer and Counterclaims to First Amended Complaint in Adversary Proceeding*.) As discussed below, scores of witnesses who testified in this case have been identified in the Rule 26 disclosures in the Adversary Proceeding.

6. As the primary defendant in the Litigation, Uber already has possession of the complete record from the Litigation and all the materials produced in discovery. However, the Protective Order entered in this Litigation on March 16, 2017, which is the same as this Court's Model Order, contains restrictions that limit not only the disclosure of the Protected Material, but also its use by the parties to the Litigation. Specifically, Section 7 provides that "[a] Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case *only for prosecuting, defending, or attempting to settle this litigation*." (Dkt. 60, Protective Order 7.1 (emphasis added).)

7. Because of the indisputable relevance to the Adversary Proceeding of portions of the record and discovery in this Litigation, Uber seeks to review the record and discovery in this case that is already in Uber's possession and to use and produce relevant portions of it in the Adversary Proceeding.

8. Uber sought relief on this issue from Judge Blumenstiel, who is presiding over the Adversary Proceeding. Specifically, Uber sought the enforcement of two subpoenas that it had served on Waymo, requesting the production of materials from this Litigation for use in the Adversary Proceeding. Even though all these materials are already in Uber's possession, those subpoenas were sent to Waymo (at Waymo's request) based upon Waymo's representation that it would facilitate a possible agreement on such production if Uber made the request via subpoena. Waymo and Levandowski opposed Uber's requested relief before Judge Blumenstiel, as did Google. Judge Blumenstiel ruled that Uber's request was more properly presented to this Court, as the Judge who entered the Protective Order in the Litigation.

9.      Judge Blumenstiel wrote in her Order that although Waymo, Google, and Levandowski acknowledge that there is factual overlap between the Adversary Complaint and this Litigation, the entire record in this case cannot be relevant to the Adversary Proceeding.  (*See* Ex. E, Judge Blumenstiel's Order).  Uber submits that the optimal way for Uber to ascertain what material from this case is relevant to the Adversary Proceeding is for Uber to be permitted to review the entire record in this Litigation in order to make that assessment.  As a party, Uber already has the record from this Litigation in its possession, and permitting Uber's counsel to review it will not impose any burden on any other party or person.  In the alternative, Uber requests permission to review that portion of the record that Uber believes is most likely to be relevant: specifically, the testimony and document productions from witnesses identified in the Rule 26 disclosures in the Adversary Proceeding together with certain expert reports and depositions discussed below.

10.      To date, Levandowski has served document requests and two interrogatories in the Adversary Proceeding.  (*See* Ex. F, Levandowski First Req. Produc., First & Second Interrog. Uber).  The document requests require Uber to produce, among other things, materials that it may use or rely upon in the Adversary Proceeding.  The interrogatories request Uber to identify all facts and evidence that support its claim that Levandowski committed fraud or Post-Signing Specified Bad Acts.  Uber expects that testimony and evidence in this Litigation is responsive to both the interrogatories and the document requests, but Uber is currently prohibited from reviewing substantial parts of the record in this case in order to identify that evidence.  Although Waymo has consented to Uber reviewing a very small subset of materials from the Litigation relating to four expert witnesses, that permission does not encompass substantial responsive material in which Waymo or others have asserted confidentiality interests.  Moreover, once Uber has the ability to review the Waymo Litigation materials to determine what is responsive, Uber will need Levandowski and Google to have permission to review the materials as well, so that it may produce the materials in response to their discovery requests.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# ARGUMENT

## I.    The Ninth Circuit Strongly Favors Providing Collateral Litigants Access To Discovery In The Interests of Judicial Economy.

11.    The Ninth Circuit strongly favors allowing access to discovery materials to meet the needs of parties engaged in collateral litigation. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131-34 (9th Cir. 2003); *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475 (9th Cir. 1992); *Olympic Refining Co. v. Carter*, 332 F.2d 260, 264-66 (9th Cir. 1964).  As the Ninth Circuit has explained, "[a]llowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery." *Foltz,* 331 F.3d at 1131.  For that reason, "where an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification." *Id.* at 1132 (quoting *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1428 (10th Cir. 1990)); *see also Wilk v. Am. Med. Ass'n*, 635 F.2d 1295, 1299 (7th Cir. 1980) (noting that particularly when the original litigation was of a large magnitude, the extreme wastefulness that would result from duplication of discovery militates strongly in favor of modifying the protective order); 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2044.1 (2d ed. 1994) ("Once entered, protective orders need not remain in place permanently, and they are not immutable in their terms. . . .  Where modification is designed to enable litigants to use information in other cases, modification can serve important efficiency and litigation fairness goals.").

12.    The mere fact that a party or non-party relied upon the protective order in producing documents in the original litigation, without more, is not enough to justify a refusal to modify the protective order to "meet the reasonable needs of other parties in other litigation." *Beckman*, 966 F.2d at 475-76 (rejecting argument that protective order should not be modified because defendant had relied on it in voluntarily providing more disclosure than was required and in entering into consent decree).  Moreover, even where a party opposing the modification of a protective order demonstrates a substantial confidentiality interest, "legitimate interests in privacy can be protected

---

5

1   by putting the [collateral litigants] under the same restrictions as those contained in the original

2   protective order." *Id.* at 475(citing *United Nuclear*, 905 F.2d at 1428); *accord Foltz*, 331 F.3d at

3   1133-34.  In sum, "[w]here reasonable restrictions . . . will continue to protect an affected party's

4   legitimate interests in privacy, a collateral litigant's request to the issuing court to modify an

5   otherwise proper protective order . . . should generally be granted."  *Foltz*, 331 F.3d at 1132 (citing

6   *Beckman*, 966 F.2d at 475; *Carter*, 332 F.2d at 265-66).

7       13.     Here, allowing the parties to the Adversary Proceeding to use the Protected Materials

8   from the Litigation will avoid the extremely wasteful duplication of discovery.  As discussed further

9   in Part II, there is a substantial overlap between the two proceedings in terms of the core nucleus of

10  events, the parties, and the witnesses; therefore, much of the discovery taken in the Litigation will be

11  relevant to the Adversary Proceeding.  Furthermore, modifying the Protective Order will not

12  prejudice any party because the Adversary Proceeding is already governed by a protective order

13  equally as protective as the one entered in this Litigation.  Accordingly, the Court should modify the

14  Protective Order to allow the use of the Protected Material in the Adversary Proceeding.  *See Foltz*,

15  331 F.3d at 1132; *Beckman*, 966 F.2d at 475.

16      14.     At present, out of all the Litigation materials, Uber is permitted to review only (1) the

17  materials that bear no confidentiality designations by anyone other than Uber, and (2) a very small

18  set of materials (expert reports for four expert witnesses) that Waymo has consented to let Uber

19  review on an "attorneys' eyes only" basis.  Waymo has refused to agree to further access by Uber's

20  attorneys in the Adversary Proceeding.  Thus, even as to the testimony of and documents produced

21  on behalf of *Uber's own current and former employees and expert witnesses*, Uber is in the odd

22  predicament where its current outside counsel are not permitted to review un-redacted versions, for

23  the reason that the testimony touched upon information designated as confidential by Waymo or

24  Google.  Uber should be permitted to review these materials subject to the restrictions of the

25  protective order entered in the Adversary Proceeding, which affords the same level of protection as

26  did the Protective Order in the Litigation.  Furthermore, the other parties to the Adversary

27  Proceeding should be granted permission to review and use these materials as well, to facilitate the

28  most expeditious resolution of the Adversary Proceeding.

---

MOTION TO MODIFY THE INTERIM MODEL PROTECTIVE ORDER

## II.    The Litigation Materials, or At Least A Significant Portion of Them, Are Relevant to the Adversary Proceeding Because There Is Substantial Overlap Between the Litigation and the Adversary Proceeding.

15.    There is substantial overlap between the Litigation and the Adversary proceeding, not only as to the core facts and events, but also as to parties, witnesses, allegations, and issues.

16.    *First*, while there is not a perfect identity of parties between the two proceedings, all of the parties to the Litigation are effectively (if not technically) involved in the Adversary Proceeding. Uber, of course, is a party to both proceedings.  Ottomotto LLC and Otto Trucking LLC were parties to the Litigation, and both have been acquired by Uber or its affiliates, so they have no confidentiality interests distinct from Uber's.  Levandowski was a critical non-party in the Litigation and his conduct was important to this case; he is also a party to the Adversary Proceeding.  Finally, although Waymo is not technically a party to the Adversary Proceeding, its role in the Litigation was as successor-in-interest to Google, who *is* a party to the Adversary Proceeding (as an intervenor in one count).  Google was the actual entity involved in the events underlying the Litigation and the Adversary Proceeding; at the time the events occurred, it was *Google* information that was allegedly misappropriated and Levandowski's obligations to *Google* that were breached.  Waymo succeeded to Google's self-driving car business.  Waymo and Google remain affiliates owned by the same parent company, Alphabet Inc., and are characterized as merely different "business segments" of Alphabet.[2]  Further, Google and Alphabet are both signatories to the settlement agreement resolving the Litigation.  While a complete identity of parties between the matters is not required to justify a modification of the protective order, *see Foltz*, 331 F.3d at 1132; *Beckman*, 966 F.2d at 475, the overlap in parties that exists here strongly suggests that no prejudice will result from allowing the use of the materials in the Adversary Proceeding.

17.    *Second*, there is considerable overlap in the witnesses relevant to the Litigation and the Adversary Proceeding.  In its Rule 26 initial disclosures, Uber identified *thirty-five witnesses*

---

[2]  Alphabet, Inc. SEC Form 10-Q, June 30, 2020, at p. 31, *available at* https://www.sec.gov/Archives/edgar/data/1652044/000165204420000032/goog-20200630.htm.

1  who were deposed and/or testified in this Litigation.[3]  (*See* Ex. C, Uber Rule 26 Disclosures).  In his

2  disclosures, Levandowski listed *twenty witnesses* who were deposed and/or testified in this

3  Litigation, a number of whom were not on Uber's list.[4]  (*See* Ex. D Levandowski Rule 26

4  Disclosures.)  Certainly, the documents produced and testimony given by those witnesses in the

5  Litigation may be relevant to the Adversary Proceeding and their relevancy can only be determined

6  by review of the materials.

7        18.  *Third*, many of the core facts and events underlying the Litigation are relevant to the

8  Adversary Proceeding.  By way of example only, one of the major topics in the Litigation was the

9  forensic review performed by Stroz Friedberg LLC ("**Stroz**"), before Uber acquired Levandowski's

10  company, for the express purpose of preventing any Google confidential information from making

11  its way to Uber's systems.  In the Adversary Proceeding, at least three of Uber's counterclaims and

12  affirmative defenses to indemnification (rescission, "Excluded Claims," and "Post-Signing Specified

13  Bad Acts") will be informed by (a) whether Levandowski provided accurate and complete

14  information to Stroz during its review regarding his trade secret misappropriation and secret control

15  of a competing venture, and (b) whether Levandowski possessed or retained access to Google

16  confidential information after Uber signed the deal to acquire his company (on April 11, 2016).  (*See*

17  Ex. A at pp. 63-68, Defenses 4, 5, 7.)  Thus, the evidence and discovery related to the Stroz review is

18  relevant to the Adversary Proceeding.  As another example, the Litigation focused on whether Uber,

19  through the conduct of Levandowski and other employees, had misappropriated any Google or

20  Waymo trade secret or infringed upon any Google or Waymo patent.  In the Adversary Proceeding,

21  one of Uber's defenses is that the Indemnification Agreement is nullified by Levandowski's

22  inducing, directing, knowingly permitting, or failing to disclose acts that would constitute the

23   

24  [3]  Those witnesses are: Barton Sweeney, Andrew; Bentley, Adam; Boehmke, Scott; Burnette, Don; Chew, Hanley;

25  Cooper, Alex; Droz, Pierre Yves; Faulkner, Kevin; Friedberg, Eric; Fulginiti Genow, Mary; Gassend, Blaise; Haslim, James; Kalanick, Travis; Lenius, Sam; Levandowski, Anthony; Linaval, Asheem; Maugeri, Melanie; McCann, Will;

26  Meyhofer, Eric; Morgan, Rhian; Morriss, Zachary; Palomar, Matthew; Pennecot, Gaetan; Poetzscher, Cameron; Qi, Nina; Raduta, Radu; Ratner, Daniel; Ron, Lior; Schwarz, Brent; Sebern, Colin; Stojanovski, Ognen; Suhr, Justin; Tate,

27  Eric Akira; Ulrich, Drew; Wachter, Luke.

[4]  Those witnesses are: Bares, John; Chew, Hanley; Drummond, David; Friedberg, Eric; Fulginiti, Mary; Holden, Jeff;

28  Kalanick, Travis; Krafcik, John; Levandowski, Anthony; Maugeri, Melanie; McClendon, Brian; Padilla, Angela; Poetzscher, Cameron; Qi, Nina; Ron, Lior; Schwarz, Brent; Stojanovski, Ognen; Suhr, Justin; Tate, Eric; Xing, Michael.

transfer or use of Google confidential information, trade secrets, or intellectual property.  Thus, Litigation materials related to the alleged misappropriation of trade secrets or infringement of patents, and Levandowski's role in the same, are relevant to the Adversary Proceeding.  As another example, allegations in the Litigation encompassed the topic of whether Levandowski or those acting under his direction solicited other Google employees to leave and join Uber.  Likewise, one of Uber's defenses in the Adversary Proceeding hinges upon whether Levandowski participated in, facilitated, or knew of any solicitation of Google employees after April 11, 2016.  (*Id.* at pp. 63–65, Defense 4.)  Thus, the discovery in the Litigation about Levandowski's role in any such solicitation will be relevant to the Adversary Proceeding.  As another example, the discovery in the Litigation encompassed events related to felonious activity on the part of Levandowski—including but not limited to felony trade secret theft.  Likewise, one of Uber's defenses in the Adversary Proceeding is that California law prohibits indemnification for felonious conduct.  (*Id.* at pp.62–63, Defense 3.)  Thus, any discovery in the Litigation that relates to Levandowski's felonious activity is relevant to the Adversary Proceeding.

19.     *Fourth*, another of Uber's key defenses to indemnification in the Adversary Proceeding, the Post-Signing Bad Act defense, requires showing that bad acts committed by Levandowski were the "subject of" a claim by a former employer of Levandowski—regardless whether that claim was asserted directly against Levandowski.  (*See id.* at pp. 63–65, Defense 4) (asserting that Indemnification Agreement is nullified by "Post-Signing Specified Bad Acts" that was or were "the subject of a Former Employer Claim.").  For these purposes, Waymo qualifies as a Former Employer, including because the complaint in this case alleges that Levandowski was a manager of Waymo (*see, e.g.*, Am. Compl. ¶¶ 4, 41), and this Litigation qualifies as a Former Employer Claim.  Thus, the record in the Litigation is relevant not only in terms of showing whether Levandowski in fact committed a Post-Signing Specified Bad Act (as defined in the Indemnification Agreement), but also whether that bad act was the subject of a claim in this case.  (*Id.*)

**III.     The Relief Sought Will Promote Judicial Economy and Efficiency.**

20.     Because of the substantial overlap between the underlying events, parties, allegations, and issues in the Litigation and those in the Adversary Proceeding, much of the record and the

discovery from the Litigation is likely to be relevant to the Adversary Proceeding.  A substantial duplication of effort would result if Uber were forced to re-conduct all of the discovery anew; this would defy principles of judicial economy and efficiency and would result in needless waste.  The wastefulness would be particularly egregious given that Uber *already has the relevant materials in its possession*, and no additional production would be necessary for Uber to make use of those materials in the Adversary Proceeding.

21.     There is no countervailing concern weighing against the modification of the Protective Order because all the parties to the Litigation have a direct or indirect interest in the Adversary Proceeding.  And although it is possible that non-parties who produced information or testified in the Litigation may prefer that the Court not modify the Protective Order, those non-parties' confidentiality interests will be fully protected because an equally strong protective order has been entered in the Adversary Proceeding.  Indeed, all non-party information will be subject to the exact same level of protection that it was subject to in the Litigation.  (*See* Ex. B Adversary Proceeding Protective Order.)  Under these circumstances, "[w]here reasonable restrictions . . . will continue to protect an affected party's legitimate interests in privacy, a collateral litigant's request to the issuing court to modify an otherwise proper protective order . . . should generally be granted." *Foltz*, 331 F.3d at 1132.  And, as the Ninth Circuit held in *Beckman,* the fact that one or more non-parties (or even parties) produced information in reliance on the protective order is not enough, on its own, to justify refusing to modify the protective order.  *Beckman*, 966 F.2d at 475-76.

22.     Accordingly, Uber respectfully requests that the court modify Section 7 (including subsections 7.1 through 7.4) of the Protective Order in this Litigation to allow the parties to the Adversary Proceeding to use the Protected Material for prosecuting, defending, and attempting to settle the Adversary Proceeding.

23.     Uber recognizes that certain material produced in this Litigation may not be relevant to the Adversary Proceeding.  However, the optimal way for Uber to be certain it has identified all relevant materials is to review the entirety of the record in this case.  Without at least conducting keyword searches in the testimony of each witness, it is impossible for Uber to know what topics their testimony covered.

---

**IV.     In the Alternative, The Parties to the Adversary Proceeding Should Be Permitted to Review and Use Specified Testimony and Record Materials.**

24.     At minimum, and in the alternative, Uber and the other parties to the Adversary Proceeding should be permitted to review the testimony and documents that Uber believes—based on the minimal information available to it at present—are most likely to be relevant to the Adversary Proceeding.  That includes:

a.     The testimony of, and documents produced by, all of the witnesses who were identified in the Rule 26 disclosures in the Adversary Proceeding (*See generally,* Ex. C and D) by either Uber or Levandowski.  In those disclosures, Uber identified 35 witnesses who were deposed and/or testified in this Litigation, and Mr. Levandowski identified 20 such witnesses.  Thirteen of these witnesses overlapped.  The descriptions of these witnesses' expected testimony in the Adversary Proceeding reflects that these witnesses will testify about some of the same issues they likely testified about in this Litigation, including alleged solicitation of employees, alleged theft of trade secrets, and/or the business transactions related to Google's, Waymo's, Otto's and/or Uber's development of technology for autonomous vehicles.  Clearly some of the testimony of these witnesses in this Litigation is likely to be relevant, but that testimony cannot be precisely identified without reviewing the transcripts of their testimony.

b.     The testimony, reports, and related materials of the following expert witnesses retained by Waymo in the Litigation: Andrew Crain, Paul French, Lambertus Hesselink, Jonathan How, and Martin Rinard.  These experts are likely to have testified on matters relevant to the Adversary Proceeding because, on information and belief, Crain and French were forensic experts, Hesselink was a technology expert, and How and Rinard were trade secret experts.

c.     The testimony of, and documents produced by or on behalf of, then-Google-employees Gary Brown, Tim Willis, Sean Noyce, Jai Krishna, Dimitri Dolgov, and Sasha Zbrozek, as well as former Google/Waymo employees Bryan Salesky, Sebastian Thrun, and Chris Urmson.  These witnesses are likely to have information relevant to the Adversary

---

Proceeding because, with the exception of Zbrozek, each was identified by either Waymo or Google as having information related to the alleged misappropriation of trade secrets by Levandowski or other employees who left Google and came to Uber, and/or the development of those trade secrets.  (*See* Dkt. 797-2, 797-3.)  Zbrozek is likely to have relevant information about Google's investigation into what information Levandowski took from Google.  (*See, e.g.*, Dkt. 2658, Waymo opening statement.)

d.      The testimony of, and documents produced by or on behalf of, John Gardner, Stefanie Olsen, and Rudy Kim.  These witnesses are likely to have information relevant to the Adversary Proceeding because each was identified by Waymo as having information related to the alleged misappropriation of trade secrets by Levandowski or other employees. (*See* Dkt. 797-3.)

e.      The complete and un-redacted copy of the final report of J Christian Gerdes, dated 11/4/2019, and any and all materials and party submissions preceding or relating to that report.  These materials are likely to be relevant to the Adversary Proceeding because, upon information and belief, the findings of that report reflect and relate to a Post-Signing Specified Bad Act that nullifies the Indemnification Agreement.

f.      The documents and data produced by non-party Stroz Friedberg LLC.  These materials are almost certainly relevant to the Adversary Proceeding because they bear on whether Levandowski committed one or more Post-Signing Specified Bad Acts, and whether Levandowski made full and accurate disclosures prior to entering into the Indemnification Agreement.

g.      The testimony, reports, and related materials of the experts retained by *Uber* in the Litigation, notwithstanding the fact that they may refer to information or documents designated confidential by Waymo or another person/entity.  Uber has possession of these materials, but is in the odd predicament where its current outside counsel are not permitted to review them because they may reference documents or information that have been designated confidential by other parties or non-parties.  Uber's current outside counsel should be permitted to review these materials subject to the restrictions of the protective order entered

in the Adversary Proceeding, which affords the same level of protection as did the Protective
Order in the Litigation.

h.     The testimony of, and documents produced by or on behalf of, Uber's current
and former employees.  Again, Uber is in the odd predicament where its current outside
counsel are not permitted to review un-redacted versions of some of Uber's own employees'
testimony, and documents because they may reference documents or information that have
been designated confidential by other parties or non-parties.  Uber's current outside counsel
should be permitted to review these materials subject to the restrictions of the protective
order entered in the Adversary Proceeding, which affords the same level of protection as did
the Protective Order in the Litigation.

## **CONCLUSION**

For the foregoing reasons, Uber respectfully requests that this Court authorize the
modification of paragraph 7 of the Protective Order to permit the parties to the Adversary
Proceeding to review the record in this case for the limited purpose of determining its relevance to
the Adversary Proceeding and to use and produce relevant parts of the record subject to the
Adversary Proceeding Protective Order.  All confidentiality designations made in this Litigation will
apply as though they had been made in the Adversary Proceeding, unless the Designating Party
revises the designation or the designation is challenged pursuant to the terms of the Adversary
Proceeding Protective Order.   In the alternative, Uber requests that the Court authorize the
modification of the Protective Order to permit the parties to the Adversary Proceeding to review and
use, and produce as appropriate, the materials listed in Paragraph 24 above, subject to the Adversary
Proceeding Protective Order.

Respectfully submitted:

---

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED: November 5, 2020

PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ Debra I. Grassgreen*
Debra I. Grassgreen
Miriam Manning
and
JENNER & BLOCK LLP
David J. Bradford
Terri L. Mascherin
*Counsel for Defendant Uber Technologies, Inc.*

MOTION TO MODIFY THE INTERIM MODEL PROTECTIVE ORDER

14

1   STATE OF CALIFORNIA                )
                                       )
2   CITY OF SAN FRANCISCO              )

3       I, Oliver Carpio, am employed in the city and county of San Francisco, State of
    California.  I am over the age of 18 and not a party to the within action; my business address is
4   150 California Street, 15th Floor, San Francisco, California 94111-4500.

5       On November 5, 2020, I caused to be served the following documents in the manner
6   stated below:

7   • **DEFENDANT UBER TECHNOLOGIES, INC.'S NOTICE OF MOTION
      AND MOTION TO MODIFY THE INTERIM MODEL PROTECTIVE
      ORDER**
8   • **DECLARATION OF DEBRA GRASSGREEN IN SUPPORT OF
      DEFENDANT'S MOTION TO MODIFY THE INTERIM MODEL
9     PROTECTIVE ORDER**
10  • **[PROPOSED] ORDER GRANTING DEFENDANT'S MOTION TO
      MODIFY THE INTERIM MODEL PROTECTIVE ORDER**

11

12    (BY EMAIL) On **November 5, 2020,** I caused to be served the above-described
       documents by email to the parties indicated on the service list below at the
13      indicated email address.

14

| Attorneys for Google LLC | Attorneys for Anthony S. Levandowski |
|---|---|
| **MUNGER, TOLLES & OLSON LLP**<br>Thomas B. Walper (thomas.walper@mto.com)<br>John W. Berry (john.berry@mto.com)<br>Alexander S. Gorin (alex.gorin@mto.com)<br><br>**KEKER, VAN NEST & PETERS LLC**<br>Rachael E. Meny (rmeny@keker.com)<br>Thomas E. Gorman (tgorman@keker.com) | **KELLER BENVENUTTI KIM LLP**<br>Tobias S. Keller (tkeller@kbkllp.com)<br>Dara L. Silveira (dsilveira@kbkllp.com)<br><br>**GOODWIN PROCTER LLP**<br>Brett Schuman (bschuman@goodwinlaw.com)<br>Rachel M. Walsh (rwalsh@goodwinlaw.com)<br>Hong-An Vu (hvu@goodwinlaw.com) |
| **Counsel for Tyto Group** | **Counsel for Peak Trust** |
| **SAWYER & LABAR LLP**<br>Adrian Sawyer (sawyer@sawyerlabar.Com) | **JERMAIN, DUNNAGAN & OWENS, P.C.**<br>Diane F. Vallentine (dvallentine@jdolaw.com) |

23      I declare under penalty of perjury, under the laws of the State of California and the
24  United States of America that the foregoing is true and correct.

25      Executed on November 5, 2020 at San Francisco, California.

26              _____
                        */s/ Oliver Carpio*
27                      *Legal* Assistant

28

1
2
3
4
5
6
7
8
9
10
11
12

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

WAYMO LLC,

Case No. 3:17-cv-00939-WHA

Plaintiff,

**[PROPOSED] ORDER APPROVING**
**DEFENDANT'S MOTION TO MODIFY**
**THE INTERIM MODEL PROTECTIVE**
**ORDER**

v.

UBER TECHNOLOGIES, INC.
OTTOMOTTO LLC, OTTO TRUCKING
LLC

Defendants

13
14
15
16
17
18
19

    Defendant Uber Technologies, Inc. ("**Uber**") filed a Motion[1] to modify paragraph 7 of the

Interim Model Protective Order in the above-captioned matter (the "**Protective Order**") to allow the

parties to the bankruptcy proceeding entitled, *Anthony Levandowski v Uber Technologies, Inc.*, N.D.

Cal. Bankr., Adv. Pro. No. 20-03050 (HLB) (the "**Adversary Proceeding**") to (a) review the

Protected Materials for the purpose of evaluating whether they are relevant to the Adversary

Proceeding and (b) use (and produce in discovery) such materials for prosecuting, defending, and

attempting to settle the Adversary Proceeding, pursuant to a substantially identical Adversary

Proceeding Protective Order.  Upon consideration of the Motion and good cause shown,

27
28

---

[1]  Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

ORDER GRANTING MOTION TO MODIFY THE INTERIM MODEL PROTECTIVE ORDER
DOCS_SF:104452.1 85647/001

1.    Uber's Motion is **GRANTED.**

2.    Section 7 (including subsections 7.1 through 7.4) of the Protective Order entered in this case is modified to allow the parties to the Adversary Proceeding to (a) review the Protected Materials for the purpose of evaluating whether they are relevant to the Adversary Proceeding, and (b) use (and produce in discovery) such materials for prosecuting, defending, and attempting to settle the Adversary Proceeding, pursuant to the Adversary Proceeding Protective Order.  All confidentiality designations made in this Litigation shall apply as though they had been made in the Adversary Proceeding, unless the Designating Party revises the designation or the designation is challenged pursuant to the terms of the Adversary Proceeding Protective Order.

**IT IS SO ORDERED:**


Dated:   December ___, 2020          _____

                                                HON. WILLIAM H. ALSUP
                                                United States District Court Judge

---

ORDER GRANTING MOTION TO MODIFY THE INTERIM MODEL PROTECTIVE ORDER