# EXHIBIT 34

```
 1              UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3                 SAN FRANCISCO DIVISION
 4
 5   _____
 6   WAYMO LLC,                         )
 7                 Plaintiff,           )
 8        vs.                           ) Case No.
 9   UBER TECHNOLOGIES, INC.;           ) 17-cv-00939-WHA
10   OTTOMOTTO, LLC; OTTO TRUCKING LLC, )
11                 Defendants.          )
12   _____)
13
14      HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
15
16       VIDEOTAPED DEPOSITION OF ERIC FRIEDBERG
17                  New York, New York
18             Thursday, September 28, 2017
19                      Volume I
20
21   Reported by:
22   DANIELLE GRANT
23   Job No. 2714978
24
25   PAGES 1 - 304
```

Page 1

```
 1                UNITED STATES DISTRICT COURT
 2                NORTHERN DISTRICT OF CALIFORNIA
 3                   SAN FRANCISCO DIVISION
 4
 5     _____
 6     WAYMO LLC,                         )
 7                    Plaintiff,          )
 8         vs.                            ) Case No.
 9     UBER TECHNOLOGIES, INC.;           ) 17-cv-00939-WHA
10     OTTOMOTTO, LLC; OTTO TRUCKING LLC, )
11                    Defendants.         )
12     _____)
13
14
15
16          Videotaped Deposition of ERIC FRIEDBERG,
17     Volume I, taken on behalf of Defendants, at Quinn
18     Emanuel Urquhart & Sullivan, LLP, 51 Madison Avenue,
19     New York, New York, beginning at 9:38 a.m. and ending
20     at 6:15 p.m., on September 28, 2017, before DANIELLE
21     GRANT, Certified Shorthand Reporter and Notary Public
22     of the State of New York.
23
24
25
                                                        Page 2
```

```
 1   APPEARANCES:
 2
 3   For Plaintiff
 4
 5   QUINN EMANUEL URQUHART & SULLIVAN, LLP
 6   BY: PATRICK T. SCHMIDT, ESQ.
 7   Attorneys at Law
 8   865 South Figueroa Street
 9   10th Floor
10   Los Angeles, California 90017
11   patrickschmidt@quinnemanuel.com
12
13   For Defendant Uber
14
15   BOISE SCHILLER FLEXNER LLP
16   BY:  EDWARD H. TAKASHIMA, ESQ.
17   Attorney at Law
18   401 Wilshire Boulevard
19   Suite 850
20   Santa Monica, California 90401
21   etakashima@bsfllp.com
22   310-7522400
23
24
25
```

```
 1   APPEARANCES:
 2
 3   For Defendant Otto Trucking LLC
 4
 5   GOODWIN PROCTER LLP
 6   BY:   TODD MARABELLA, ESQ.
 7   Attorney at Law
 8   100 Northern Avenue
 9   Suite 850
10   Boston, Massachusettes 02210
11   tmarabella@goodwinlaw.com
12   617-5701174
13
14   Attorney for the Witness and Stroz Friedberg
15
16   LATHAM & WATKINS, LLP
17   BY:   MELANIE M. BLUNSCHI, ESQ.
18         WHITNEY WEBER, ESQ.
19   Attorney at Law
20   50 Montgomery
21   Suite 2000
22   San Francisco, California 94111-6538
23   melanie.blunschi@lw.com
24   415-391-0600
25
```

```
 1   APPEARANCES:
 2
 3   Attorney for Lior Ron
 4
 5   BY:  JONATHAN PATCHEN, ESQ.
 6   TAYLOR & PATCHEN, LLP
 7   One Ferry Building, Suite 355
 8   San Francisco, CA  94111
 9   (415) 788-8200
10   jpatchen@taylorpatchen.com
11
12   Attorney for Anthony Levandowski
13
14   RAMSEY & EHRLICH LLP
15   803 Hearst Ave
16   Berkeley, CA 94710
17   (510) 548-3600
18   miles@ramsey-ehrlich.com
19
20   Also Present:
21
22   ELIZABETH VERRIER, Global Chief Counsel for AON
23   Matthew Briteman, Videographer
24
25
```

Page 5

```
 1                      I N D E X
 2
 3    WITNESS                               EXAMINATION
 4    ERIC FRIEDBERG
 5    BY MR. SCHMIDT                                  8
 6
 7                    E X H I B I T S
 8    EXHIBIT             DESCRIPTION              PAGE
 9
10    Exhibit 7401        Subpoena                   14
11    Exhibit 7402        Bates stamped              62
12                        UBER00312489
13    Exhibit 7403        Bates stamped             122
14                        STROZ_0002633
15    Exhibit 7404        Bates stamped             145
16                        OTTOTRUCKING00022322
17    Exhibit 7405        Bates stamped             149
18                        STROZ_0012628
19    Exhibit 7406        Bates stamped             149
20                        STROZ_0000825
21    Exhibit 7407        Bates stamped             149
22                        UBER00312450
23    Exhibit 7408        Bates stamped             150
24                        UBER00312483
25
```

<pre>
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
</pre>

```
 1                       E X H I B I T S
 2     EXHIBIT                DESCRIPTION                  PAGE
 3
 4     Exhibit 7409           Bates stamped                152
 5                            UBER00322318
 6     Exhibit 7410           Bates stamped                167
 7                            UBER00312645
 8     Exhibit 7411           Bates stamped                199
 9                            UBER00312644
10     Exhibit 7412           Bates stamped                201
11                            STROZ_0007604
12     Exhibit 7413           Bates stamped                207
13                            OTTOTRUCKING00023987
14     Exhibit 7414           Bates stamped                213
15                            UBER00315509
16     Exhibit 7415           Bates stamped                214
17                            UBER00312684
18     Exhibit 7416           Bates stamped                228
19                            UBER00314635
20     Exhibit 7417           Bates stamped                237
21                            UBER00315747
22     Exhibit 7418           Bates stamped                245
23                            UBER00312638
24
25
```

```
 1                  New York, New York
                Thursday, September 28, 2017
 2                      9:34 a.m.
 3           VIDEOGRAPHER:  This is the                  09:36:08
 4      deposition on September 28, 2017.                09:36:09
 5      9:36 a.m.  The witness is Eric                   09:36:14
 6      Friedberg.  This case is Waymo                   09:36:16
 7      versus Uber Technologies, Number                 09:36:16
 8      CV00939WH1.  United States District              09:36:20
 9      Court of Northern California.                    09:36:28
10      Deposition is being held at Quinn                09:36:31
11      and Emanuel, 51 Madison Avenue, New              09:36:35
12      York City.  My name is Matthew                   09:36:40
13      Briteman.  I'm the videographer for              09:36:42
14      Veritext Legal Solutions.  The                   09:36:45
15      court reporter is Danielle Grant of              09:36:46
16      Veritext Legal Solutions.                        09:36:50
17      Attorneys please introduce                       09:36:50
18      yourself.                                        09:36:53
19           MR. SCHMIDT:  This is Patrick               09:36:54
20      Schmidt from Quinn Emanuel Urquhart              09:36:55
21      & Sullivan on behalf of the                      09:36:55
22      plaintiff, Waymo.                                09:36:58
23           MS. BLUNSCHI:  Melanie                      09:36:59
24      Blunschi from Latham and Watkins on              09:36:59
25      behalf of non-party Stroz Friedberg              09:37:05
```

| | | |
|---|---|---|
| 1 | and the witness. | 09:37:05 |
| 2 | MS. WEBER: Whitney Weber also | 09:37:07 |
| 3 | on behalf of non-party Stroz | 09:37:08 |
| 4 | Friedberg and the witness. | 09:37:10 |
| 5 | MR. TAKASHIMA: Edward | 09:37:12 |
| 6 | Takashima, Boies Schiller & Flexner | 09:37:12 |
| 7 | for Uber and Ottomotto. | 09:37:12 |
| 8 | MS. VERRIER: Elizabeth | 09:37:12 |
| 9 | Verrier, global chief counsel for | 09:37:12 |
| 10 | Aon Service Corporation and Stroz | 09:37:23 |
| 11 | Friedberg. | 09:37:23 |
| 12 | THE REPORTER: Will counsel on | 09:37:23 |
| 13 | the phone please identify | 09:37:30 |
| 14 | themselves. | 09:37:32 |
| 15 | MR. ERLICH: Yes. On the | 09:37:34 |
| 16 | telephone this is Miles Erlich from | 09:37:34 |
| 17 | Ramsey and Erlich on behalf of | 09:37:34 |
| 18 | non-party Anthony Levandowski. | 09:37:40 |
| 19 | MR. PATCHEN: Also on the | 09:37:45 |
| 20 | telephone, Jonathan Patchen, Taylor | 09:37:46 |
| 21 | and Patchen, on behalf of non-party | 09:37:46 |
| 22 | Lior Ron. | 09:37:48 |
| 23 | THE REPORTER: You may begin. | 09:37:51 |
| 24 | EXAMINATION | 09:37:51 |
| 25 | ERIC FRIEDBERG, called as a witness, having been | 09:37:51 |

| | | |
|---|---|---|
| 1 | first duly sworn by Danielle Grant, a | 09:37:51 |
| 2 | Notary Public within and for the State | 09:37:51 |
| 3 | of New York, was examined and testified | 09:37:51 |
| 4 | as follows: | 09:37:51 |
| 5 | EXAMINATION BY | 09:37:51 |
| 6 | MR. SCHMIDT: | 09:37:51 |
| 7 | Q   Good morning, sir. | 09:38:03 |
| 8 | A   Good morning. | 09:38:04 |
| 9 | Q   Could you please state and | 09:38:04 |
| 10 | spell your name for the record. | 09:38:05 |
| 11 | A   Eric Friedberg, E-R-I-C, | 09:38:08 |
| 12 | F-R-I-E-D-B-E-R-G. | 09:38:09 |
| 13 | Q   What is your city and state of | 09:38:10 |
| 14 | residence? | 09:38:12 |
| 15 | A   New York, New York. | 09:38:13 |
| 16 | Q   What's the city and state that | 09:38:14 |
| 17 | you regularly conduct business in person in? | 09:38:16 |
| 18 | A   New York, New York. | 09:38:20 |
| 19 | Q   Have you ever been deposed | 09:38:22 |
| 20 | before? | 09:38:23 |
| 21 | A   Yes. | 09:38:24 |
| 22 | Q   How many times? | 09:38:25 |
| 23 | A   Two or three. | 09:38:34 |
| 24 | Q   Were those in an expert | 09:38:36 |
| 25 | witness capacity or fact witness capacity? | 09:38:39 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1  diligence employees?  10:17:26
2     A  I wouldn't say they were  10:17:28
3  limitations. I would say -- there were two  10:17:29
4  instances where, after April 12, there was a  10:17:33
5  point in time where we had conducted what I  10:17:43
6  would say was a first level reviewed and  10:17:46
7  culled about a million-and-a-half documents  10:17:49
8  down to about 35,000 documents. And we  10:17:54
9  wanted a little more budget to just go back  10:18:07
10 to the non-relevant items and do a little  10:18:11
11 more sort of due diligence on sort of our  10:18:14
12 methodology, but at that point we were --  10:18:20
13 there was a hiatus in the review. And I  10:18:27
14 remember outside counsel thinking that it  10:18:36
15 wasn't really necessary to go back and do  10:18:41
16 that last bit of due diligence on the  10:18:44
17 non-relevant items that had been classified  10:18:47
18 in relativity. And we had sort of taken a  10:18:54
19 hiatus anyway. And when we came back to  10:18:57
20 finish up the review and review -- the  10:19:01
21 finalized reviewing of the 35,000 documents,  10:19:05
22 we just ended up doing our second level of  10:19:10
23 review and not doing that small piece of due  10:19:14
24 diligence. But I thought that was a  10:19:18
25 reasonable -- reasonable decision, it's a  10:19:21

Veritext Legal Solutions
866 299-5127

Case: 20-03050   Doc# 194-11   Filed: 03/26/21   Entered: 03/26/21 20:54:20   Page 12 of 20

```
 1   judgment call.                                    10:19:27
 2        Q    Your understanding of this              10:19:30
 3   decision was that it was budget driven?           10:19:31
 4        A    I don't --                              10:19:35
 5             MS. BLUNSCHI:  Object to the            10:19:36
 6        form.                                        10:19:36
 7             MR. TAKASHIMA:  I just want to          10:19:36
 8        caution the witness again, on the            10:19:46
 9        post April 11 or April 12 time               10:19:49
10        period, communications between               10:19:53
11        either counsel and both counsel and          10:19:55
12        Stroz Friedberg would be                     10:19:57
13        privileged.                                  10:19:57
14             MS. BLUNSCHI:  And this                 10:19:58
15        decision that you're talking about           10:19:59
16        was after April 12; is that                  10:19:59
17        correct?                                     10:20:03
18             THE WITNESS:  After April 12.           10:20:04
19        A    So I -- it's hard to answer             10:20:07
20   without talking about that.                       10:20:09
21        Q    How long did the hiatus, as             10:20:15
22   you put it, last?                                 10:20:17
23        A    Until July.                             10:20:19
24        Q    When did it begin?                      10:20:23
25        A    Around mid-April.                       10:20:31
```

Page 40

```
1    witness about any other matter.  And I don't           01:30:32
2    think we did.  I think the only thing we               01:30:34
3    really did is we didn't necessarily at that            01:30:37
4    time bring up to those three guys, hey,                01:30:39
5    there's this pending transaction which was             01:30:45
6    represented to us to be confidential as of             01:30:48
7    that time.                                             01:30:48
8            Q    When you talked about avoiding            01:30:51
9    educating witnesses about sensitive matters,           01:30:54
10   you weren't limiting that to just information          01:30:58
11   about the transaction, were you?                       01:31:01
12               MR. TAKASHIMA:  Objection to               01:31:06
13        form.                                             01:31:07
14          A    Yeah.  I see that the e-mail               01:31:23
15   continues to give other examples -- or one             01:31:24
16   other example.                                         01:31:28
17          Q    So for example, in the                     01:31:29
18   interviews of the diligence employees, you've          01:31:30
19   refrained from asking about destruction of             01:31:32
20   disks bearing Google source code, correct?             01:31:38
21               MS. BLUNSCHI:  Objection to                01:31:44
22        form.                                             01:31:45
23               MR. TAKASHIMA:  Objection to               01:31:45
24        form.                                             01:31:45
25          A    We absolutely did not,                     01:31:46
```

| | | |
|---|---|---|
| 1 | actually.  And if you read the Lior Ron | 01:31:46 |
| 2 | interview memorandum, you'll see that we | 01:31:50 |
| 3 | asked exactly about that.  And he explained | 01:31:52 |
| 4 | to it and also corroborated the entire story | 01:31:54 |
| 5 | about, you know -- not corroborated, but | 01:31:58 |
| 6 | spoke to, the whole story of the destruction | 01:32:00 |
| 7 | of the disks. | 01:32:02 |
| 8 |     Q   Did you ask the other | 01:32:03 |
| 9 | diligence employees? | 01:32:05 |
| 10 |     A   I don't remember that, but we | 01:32:08 |
| 11 | certainly -- you see, that's a perfect | 01:32:10 |
| 12 | example.  I think maybe we're trying to be | 01:32:10 |
| 13 | polite here, but we certainly didn't let that | 01:32:21 |
| 14 | limit our ability to ask people things about | 01:32:22 |
| 15 | important things.  That really pertinent | 01:32:26 |
| 16 | example, which is, e.g., the destruction of | 01:32:30 |
| 17 | disks bearing the Aspen source code, I could | 01:32:30 |
| 18 | tell you that we did do that, we did ask Lior | 01:32:37 |
| 19 | Ron about that.  We did question him, and he | 01:32:40 |
| 20 | did give us information about it.  I don't | 01:32:44 |
| 21 | remember if whether talked to the other three | 01:32:45 |
| 22 | about it.  But given the circumstances, they | 01:32:48 |
| 23 | didn't appear from our investigation to know | 01:32:53 |
| 24 | about it, but -- | 01:32:56 |
| 25 |     Q   But you didn't ask them right? | 01:33:04 |

```
 1   that we were zealously standing up for the,          01:36:27
 2   you know, sort of the independence and the           01:36:30
 3   scope of the investigation, and we worked            01:36:30
 4   through a number of issues.  And I would say         01:36:34
 5   that all of that was sort of within the norm         01:36:38
 6   of interactions again counsel and forensic           01:36:42
 7   examiners.                                           01:36:47
 8          Q   Mr. Gardner threatened Stroz              01:36:48
 9   Friedberg with a lawsuit during the                  01:36:51
10   pre-acquisition investigation, didn't he?            01:36:55
11              MS. BLUNSCHI:  Objection to               01:36:58
12          form.                                         01:36:58
13          A   That sounds familiar.  I don't            01:36:59
14   remember exactly, but he -- he -- he was             01:37:01
15   sometimes unnecessarily combative.  Let's put        01:37:15
16   it that way.  But, again, that happens.  I           01:37:17
17   mean, that didn't alter our course.                  01:37:19
18              (Whereupon, a Bates stamped
19          OTTOTRUCKING00022322 was marked as
20          Exhibit 7404 for identification, as
21          of this date.)
22              MS. BLUNSCHI:  Counsel, I'm               01:38:24
23          not sure if you want to revisit              01:38:25
24          this or not, but the timeline and             01:38:27
25          budget estimates you were asking              01:38:30
```

```
1         Q    Below this paragraph, there is              01:52:26
2    a list of external projects that Levandowski          01:52:28
3    disclosed during his interview; is that               01:52:34
4    correct?                                              01:52:36
5         A    Yes.                                        01:52:37
6         Q    Is it your understanding that               01:52:37
7    this list of external projects is -- or was           01:52:39
8    intended to be exhaustive?                            01:52:43
9              MR. TAKASHIMA:  Objection to                01:52:47
10         form.                                           01:52:47
11        A    I don't know what                           01:53:01
12   Levandowski's intention was.  I believe he            01:53:02
13   was asked, "What were your outside projects,"         01:53:08
14   and he listed them, and we recorded them.             01:53:11
15        Q    So what I'm trying to get at                01:53:14
16   is when this interview was conducted, was             01:53:15
17   this list intended to list all of his outside         01:53:18
18   projects, or is it reserving the possibility          01:53:22
19   that there may be some others?                        01:53:24
20             MR. TAKASHIMA:  Objection to                01:53:28
21         form.                                           01:53:29
22        A    I think was to generally meant              01:53:29
23   to elicit what his outside projects were.  It         01:53:30
24   wasn't a central issue of this, I don't think         01:53:35
25   so.                                                   01:53:39
```

| | | |
|---|---|---|
| 1 | Q    It was important enough to | 01:53:43 |
| 2 | include -- | 01:53:45 |
| 3 | A    Yeah. | 01:53:45 |
| 4 | Q    -- in this memorandum, | 01:53:45 |
| 5 | correct? | 01:53:47 |
| 6 | A    Yeah.  I don't know that -- in | 01:53:48 |
| 7 | other words, I don't know that we spent a lot | 01:53:49 |
| 8 | of time drilling down on, you know, pressing | 01:53:57 |
| 9 | somebody on whether -- is there anything | 01:53:58 |
| 10 | further?  Is there anything further?  We | 01:53:59 |
| 11 | asked him what his external projects were, he | 01:54:00 |
| 12 | responded, and we recorded it. | 01:54:03 |
| 13 | Q    If it was proven in this case | 01:54:05 |
| 14 | that Levandowski had external projects that | 01:54:08 |
| 15 | were not included on this list and were not | 01:54:12 |
| 16 | approved by Google, would you consider -- | 01:54:14 |
| 17 | would you -- strike that. | 01:54:21 |
| 18 | If it was proven in this case | 01:54:23 |
| 19 | that Levandowski had external projects that | 01:54:24 |
| 20 | were not included on this list and were not | 01:54:27 |
| 21 | approved by Google, would you believe that he | 01:54:29 |
| 22 | had deceived you during this interview? | 01:54:33 |
| 23 | MS. BLUNSCHI:  Object to the | 01:54:38 |
| 24 | form. | 01:54:38 |
| 25 | MR. TAKASHIMA:  Objection to | 01:54:39 |

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | form. | 01:54:39 |
| 2 | A    So our focus was on whether | 01:54:41 |
| 3 | there was -- to conduct an investigation of | 01:54:45 |
| 4 | whether he had brought any Google IP relating | 01:54:48 |
| 5 | to driverless cars from Google to Ottomoto | 01:54:52 |
| 6 | and Uber.  So I don't know whether he was | 01:54:57 |
| 7 | candid about the extent of his outside | 01:55:02 |
| 8 | projects, if he -- I don't know whether if he | 01:55:05 |
| 9 | wasn't candid about it whether it was an | 01:55:10 |
| 10 | inadvertence or not.  But since and unless | 01:55:12 |
| 11 | there was some outside project relating to | 01:55:16 |
| 12 | driverless cars technology and lidar, I | 01:55:21 |
| 13 | wouldn't necessarily consider that material. | 01:55:23 |
| 14 | And I wouldn't think anybody would have | 01:55:27 |
| 15 | drilled down on it that much. | 01:55:31 |
| 16 | Q    If there was an external | 01:55:33 |
| 17 | project that Levandowski was running related | 01:55:35 |
| 18 | to driverless car technology and lidar, would | 01:55:38 |
| 19 | you consider that material? | 01:55:42 |
| 20 | MS. BLUNSCHI:  Object to the | 01:55:44 |
| 21 | form. | 01:55:44 |
| 22 | MR. TAKASHIMA:  Join. | 01:55:44 |
| 23 | A    Well, so if he didn't -- this | 01:56:01 |
| 24 | is all hypothetical, so if he didn't bring | 01:56:03 |
| 25 | any Google IP to that side project, then that | 01:56:07 |

Page 158

```
 1                  CERTIFICATE
 2   STATE OF NEW YORK )
 3                    )ss:
 4   COUNTY OF RICHMOND)
 5       I, DANIELLE GRANT, a Certified Shorthand
 6   Reporter, and Notary Public within and
 7   for the State of New York, do hereby
 8   certify:
 9   That ERIC FRIEDBERG, the witness whose
10   deposition is hereinbefore set forth,
11   was duly sworn by me and that such
12   deposition is a true record of the
13   testimony given by such witness.
14   I further certify that I am not related
15   to any of the parties to this action by
16   blood or marriage and that I am in no
17   way interested in the outcome of this
18   matter.
19   In witness whereof, I have hereunto set
20   my hand this 2nd day of October, 2017.
21
22
23
24       [signature: Danielle Grant]
25       DANIELLE GRANT
```