Debra I. Grassgreen (CA Bar No. 169978)
Miriam Manning (CA Bar No. 178584)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Telephone: (415) 263-7000
Facsimile: (415) 263-7010
E-mail:      dgrassgreen@pszjlaw.com
             mmanning@pszjlaw.com

David J. Bradford (admitted *pro hac vice*)
Terri L. Mascherin (admitted *pro hac vice*)
Catherine Steege (admitted *pro hac vice*)
Katharine R. Ciliberti (admitted *pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
Telephone: (312) 222-9350
E-mail:      dbradford@jenner.com
             csteege@jenner.com
             tmascherin@jenner.com
             kciliberti@jenner.com

*Counsel for Uber Technologies, Inc.*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Case No. 20-30242 (HLB) |
| ANTHONY SCOTT LEVANDOWSKI, | Chapter 11 |
| Debtor. | Hon. Hannah L. Blumensteil |
| ANTHONY SCOTT LEVANDOWSKI, an individual, | Adv. Pro. No. 20-03050 (HLB) |
| Plaintiff, | **DECLARATION OF KATHARINE CILIBERTI IN SUPPORT OF UBER TECHNOLOGIES, INC.'S MOTION TO STRIKE OR, IN THE ALTERNATIVE, MOTION IN LIMINE TO EXCLUDE REBUTTAL EXPERT REPORTS AND TESTIMONY OF BENJAMIN ROSE AND JOSEPH SHAW** |
| v. | |
| UBER TECHNOLOGIES, INC. | |
| Defendant. | |
| | Date:    TBD (Pending Stipulation for OST) |
| | Time:    TBD |
| | Place:   (Telephonic Appearances Only) |
| | United States Bankruptcy Court |
| | 450 Golden Gate Ave. |
| | Courtroom 19, 16th Floor |
| | San Francisco, CA 94102 |
| | Objection Deadline:  TBD |

I, Katharine Ciliberti, hereby declare as follows:

1. I am co-counsel to Defendant Uber Technologies, Inc. ("Uber") in the above-entitled action and have personal knowledge of the facts contained in this Declaration, which are true and correct, and if sworn as a witness, I could and would testify competently thereto.

2. I submit this declaration in connection with Uber's Motion to Strike or, in the Alternative, Motion in Limine to Exclude Rebuttal Expert Reports and Testimony of Benjamin Rose and Joseph Shaw. Dr. Shaw's rebuttal expert report referenced in the Motion as **Exhibit A** is being provisionally filed under seal. Attached hereto as **Exhibit B** is a true and correct copy of Mr. Rose's rebuttal expert report.

3. On February 26, 2021, plaintiff Anthony Levandowski revealed his intent to offer a rebuttal report from Benjamin Rose, giving notice that he sought to provide Highly Confidential – AEO materials to Mr. Rose and requesting Uber's consent. Attached hereto as **Exhibit C** is a true and correct copy of a series of emails dated Feb. 26-Mar. 2, 2021.

4. Uber objected on the basis that Mr. Rose's report would not be proper rebuttal, because he would not be responding to any direct expert's report disclosed by Uber. (*Id.*)

5. The parties met and conferred on March 3, 2021, and were not able to reach an agreement regarding Uber's objection. Mr. Levandowski's counsel insisted that they could issue a "rebuttal" report that was not rebutting any expert.

6. After the meet and confer, Uber anticipated that Mr. Levandowski's counsel would issue an untimely report by Mr. Rose, notwithstanding Uber's objection to the same, in an effort to leave Uber without any opportunity to rebut that report. Accordingly, Uber prepared and submitted an expert report on March 22, 2021 by Robert DeCicco, addressing Stroz's forensic due diligence process, in anticipation of an untimely report by Mr. Rose on the same issues.

7. Mr. Levandowski is also in possession of forensic images of his devices and accounts that he provided to Stroz in 2016, which Mr. Rose relied on in his rebuttal report. Those forensic images have not been produced by Mr. Levandowski in this case. Mr. Levandowski's counsel has refused to agree to permit Uber to search those images, and has stated that "we understand that the materials are no longer in Stroz's possession and there is no common interest between Mr.

1   Levandowski and Uber. Under the circumstances, i.e., direct adversity, we do not think it is

2   appropriate for Uber to search through these images without any protections for Mr. Levandowski's

3   privileged and personal information." Attached hereto as **Exhibit D** is a true and correct copy of the

4   Dec. 15, 2020 email from Mr. Levandowski's counsel.

5         8.      Counsel for Uber and Mr. Levandowski met and conferred on this Motion on March

6   29, 2021. Uber requested that Mr. Levandowski withdraw the rebuttal expert reports of Benjamin

7   Rose and Joseph Shaw, and that Uber would agree to withdraw Robert DeCicco's expert report if

8   Mr. Levandowski agreed to withdraw Mr. Rose's report and testimony. The parties did not reach an

9   agreement. Uber requested that Mr. Levandowski agree to stipulate to a shortened time for the Court

10  to hear this Motion, and it is currently under consideration by Mr. Levandowski's counsel.

11        I declare under the penalty of perjury that the statements included in this Declaration are true

12  and correct.  Executed on this 29th day of March 2021 in Chicago, Illinois.

13

14                                              */s/ Katharine Ciliberti*
                                                Katharine Ciliberti

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOCS_SF:105293.2 85647/001

# **EXHIBIT A**

## **PROPOSED DOCUMENT FILED UNDER SEAL**

# EXHIBIT B

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>ANTHONY SCOTT LEVANDOWSKI,<br><br>Debtor.<br><br>──────────────────────────<br><br>ANTHONY LEVANDOWSKI, an individual,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>　　　　　Defendant. | Bankruptcy Case No. 20-30242 (HLB)<br>Chapter 11<br><br>Hon. Hannah L. Blumenstiel<br><br>**Adv. Pro. No. 20-03050 (HLB)** |

## <u>REBUTTAL EXPERT REPORT OF BENJAMIN ROSE<br>RELATING TO STROZ FRIEDBERG LLC'S INVESTIGATION</u>

This report is submitted pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure.

## I.      EXECUTIVE SUMMARY OF OPINIONS

1.      My name is Benjamin Rose.  I am the Founder and President of Carden Rose, Inc., Digital Evidence Experts in Cupertino, California.  My business address is 19925 Stevens Creek Blvd., Suite #100, Cupertino, CA 95014.  I am over eighteen years of age and I would otherwise be competent to testify as to the matters set forth herein if I am called upon to do so at trial.

2.      I have been retained by counsel for Anthony Levandowski ("Mr. Levandowski") as a technical expert witness with respect to the proceedings currently before the Court in the above-captioned matter.  My rate is between $350 and $450 per hour for my consulting, creating an expert report, and providing any testimony requested of me in this case.  My compensation is not affected by the outcome of this matter.

3.      For purposes of this Expert Report, I have been asked by Mr. Levandowski to provide an expert opinion as to whether Mr. Levandowski provided documents relating to Tyto LiDAR, previously known as Odin Wave,[1] on the devices and accounts provided by Mr. Levandowski to Stroz Friedberg LLC ("Stroz") around March 2016.  I was also asked to opine whether, based on my expertise as a forensic investigator, Mr. Levandowski provided information that would have led Stroz to either identify Tyto/Odin Wave-related files or generate investigative leads that would prompt further inquiry or examination about materials relating to Tyto/Odin Wave.

4.      Based on my analysis of the devices provided by Mr. Levandowski, I can confirm

---

[1] In this report, I will refer to both Tyto LiDAR and Odin Wave as "Tyto/Odin Wave."

that documents relating to Tyto/Odin are on Mr. Levandowski's devices and accounts. Specifically,

a.  A forensic examination of Mr. Levandowski's devices and accounts revealed documents and artifacts related to Tyto/Odin Wave on Mr. Levandowski's Macbook, Dropbox Account, and iPhone.

b.  The Tyto/Odin Wave documents were not concealed or encrypted and were visible to a forensic analyst by just viewing the folders that Mr. Levandowski specifically identified that Stroz should review.

c.  Mr. Levandowski's counsel provided keywords for searches that would have resulted in discovering Tyto/Odin Wave documents and/or revealed investigative leads to enable a forensic analyst to inquire further about documents and entities related to Tyto/Odin Wave.

5.  I note that I may be asked to create demonstratives as part of my testimony in Court that refer or relate to this report. I have not yet created such demonstrative exhibits.

## II. QUALIFICATIONS

6.  My qualifications for forming the opinions set forth in this Report are summarized here and further detailed in my *curriculum vitae*, which is attached hereto as **Exhibit A**.

7.  In 2014, I co-founded Carden Rose, Inc., a boutique firm specializing in digital evidence investigations and consulting.

8.  I attended the College of San Mateo from 1985 to 1987, where I studied Administration of Justice. While at the College of San Mateo, I completed the Reserve Peace Officer Academy.

9.  I worked in law enforcement for over a decade from 1987 to 2000. I worked for

the San Mateo County Sheriff's Office as a Reserve Deputy Sheriff and as a Correctional Officer. I volunteered in the Civil, Transportation and Detective Bureaus, and the Custody and Patrol Divisions. I obtained a Level I Reserve Certificate and worked in a solo patrol capacity, conducting preliminary investigations, and performing general law enforcement duties. As a Correctional Officer, I was assigned to all adult jail facilities in San Mateo County, performing supervision of inmates in daily living activities and performing administrative tasks in the Booking, Court Desk, and Inmate Release areas.

10.     I then transitioned to the Information Technology field, working as a System Administrator for New Era Of Networks, from 2000 to 2001. I was responsible for configuring and deploying computer systems, troubleshooting, resolving technology issues and assisting with network administration.

11.     I started working in the digital forensics field in 2005, as a digital forensics analyst for eFor Computer Forensics. I received in-house and vendor training. I performed digital evidence collections and conducted forensic examinations of digital evidence in Criminal, Civil and Family Law cases, as well as Corporate investigations related to Employment Law and Intellectual Property Theft and Misappropriation.

12.     I next obtained a position with Kaiser Foundation Health Plan as a Computer Forensic Analyst. I conducted internal investigations related to Fraud, Waste and Abuse, Conflicts of Interest, Regulatory matters, Criminal investigations and Labor and Employment Law cases. I was instrumental in creating and managing the organizations' Electronic Discovery Team. I conducted extremely sensitive investigations, occasionally reporting directly to Senior Leadership.

13.     In addition to my work experience, I am a member of numerous professional

organizations.  I am the Vice President of the San Joaquin County Sheriff's Foundation and am a member of the American Bar Association, the Forensic Expert Witness Association, the Alameda County Bar Association, the California Defense Investigators Association, and the National Defender Investigator Association.

14.     I have testified as an expert in fourteen cases:  *People v. Galvan-Martinez*, Case No. 19NF009837A; *Khurshid v. Zahra*, Case No. 19FL003084; *People v. Upshaw*, Case No. 468261A/C; *People v. Li* and *People v. Bayat*, Case Nos. 16-SF-005932B & C; *People v. Fitch* and *People v. Lachan*, Case Nos. C1515822; *Treadwell v. Caplener*, Case No. 110FL155480; *People v. McCoy*, Case No. 16SF010449A; *People v. Lightner*, Case No. 17-CR-018501; *People v. Saddozai*, Case No. 16NF001414a; *Campbell v. Yui*, Case No. PT23897; *People v. Fritz*, Case No. C1361775; *People v. Johnson*, Case No. 594464; *People v. Gaspar*, Case No. CC763122; and *People v. Dabi*, Case No. 06F06528.

15.     I have also been retained as an expert for purposes of providing deposition testimony in five cases: *Kaiser Foundation Health Plan et al. v. Prime Healthcare Services, Inc.*, Case No. 11-cv-2652-GPC-RBB; *Treadwell v. Caplener*, Case No. 110FL155480; *Kong v. Kong, et al.*, Case No. PFL20120481; *Gupta v. Kumar*, Case No. HF14751482; *Benchmark Wine Group v. Peirce*, Case No. 26-36301.

16.     I was engaged as an expert consultant in four cases: *People v. Castle*, Case No. 16015605; *Mendy v. City of Fremont, et al.*, Case No. 3:13-cv-04180-MMC; *Beck v. Boston Scientific Corporation*, Case No. BC515042B; *United States v. Satterlee*, Case No. 05305-0WWW.

17.     In addition to my work as an expert, I have delivered numerous presentations related to information technology, digital security, and digital forensics analysis including:

a. "Data Hygiene for Attorneys" to the Alameda County Bar Association in July 2019;

b. "Computer Forensics" to the Bay Area Legal Incubator in January 2019;

c. "Investigating Sexual Harassment through Social Media, from Allegation to Resolution with a focus on Digital Evidence" to the Sacramento County Bar Association in October 2018;

d. "Evidence 101: Cyber Stalking and Hacking" to the Association of Certified Family Law Specialists, Sacramento Chapter, in January 2018;

e. "Cyber Stalking/Cyber Security" to the Sacramento County Bar Association in October 2017;

f. "Digital Evidence, Forensics, Litigation, Data Breaches and more" to the California Association of Licensed Investigators, San Francisco District Meeting, in September 2017;

g. "Data Mining, Digging for Dirt" to the Western States Surety Conference in April 2017;

h. "Solo & Small Firm E-Discovery Panel" to the Bar Association of San Francisco in February 2017;

i. "From Bits to Bytes: Essentials of eDiscovery" to the Alameda County Bar Association in December 2016;

j. "Checking in on Evidence in the Courtroom" to the Los Angeles County Bar Association, Family Law Section, 38th Annual Child Custody Colloquium, in October 2016;

k. Keynote Speaker on Cyber Security for the Western Benefits Conference

in July 2016;

l.    "Digital Evidence – Unlocking the Secrets of Computers" for the 27th Annual Anti-Fraud Conference in March 2016;

m.    "Cyber Security" to the Western Pension & Benefits Council in March 2016;

n.    "Mobile Devices in Legal Matters, including Geolocation Information" to the Santa Clara County, CA Public Defender's Office in January 2016;

o.    "Everything You Wanted to Know About Digital Evidence but Where Afraid to Ask" to the Association of Workplace Investigators Annual Conference in October 2015;

p.    "Digital Evidence in Criminal Law Cases" to the San Mateo County Private Defender's Office in June 2015;

q.    "e-Discovery 201 Webinar: The Value of Expert Witnesses" to Guidance Software in May 2015;

r.    "Data Security Issues in Healthcare" to the Bay Area Chapter of Legal Nurse Consultants in November 2014;

s.    "Hot Topics in Electronic Discovery and Digital Evidence" to the Santa Clara County Bar Association in November 2014;

t.    "Digital Evidence in Criminal Law Cases" to the California Defense Investigators Association D.I.A. Fall Seminar in October 2014;

u.    "This is a hold up – Executing Legal Holds" to the e-Discovery Education Center in February 2013;

v.    "Overview of Electronic Discovery" to The Permanente Medical Group's

Legal Department in September 2012;

w.  "Electronic Discovery and Computer Forensics" to The Permanente Medical Group's Physician Human Resources Consultants (PHRC) in October 2011;

x.  "Computer Forensics & Investigations Overview" to Kaiser Permanente Information Security Organization in April 2011;

y.  "Overview of Computer Forensics" to Kaiser Permanente Human Resources Compliance Group in June 2009;

z.  "Electronic Discovery and Computer Forensics" to Kaiser Foundation Health Plan Legal Department in August 2008;

aa.  "Electronic Discovery & Document Storage: Management & Litigation Issues" to Lorman Education Services in April 2007;

bb.  "Overview of Computer Forensics" to the California Association of Licensed Investigators, Sacramento District, in May 2006; and

cc.  "Overview of Computer Forensics" to the Merced County Bar Association in April 2006.

18.  I have received hundreds of hours of additional training in information technology, digital security, and digital forensics analysis from organizations including: Cellebrite, Hawk Analytics, Blackbag Technologies, Nuix, Contoural, Guidance Software, e-fense, Cisco Systems, CompTIA, High Tech Crime Investigator Association (HTCIA), SANS, and the University System of Georgia.

19.  I have published two articles in legal journals. The first, "Raising the Bar on e-Discovery," was published in the August 2015 edition of "The Recorder," ALM's online

magazine published to Law.com. The second, "California's New E-Competence Rule," was printed in the Winter 2016 Newsletter of the American Bar Association's Sections on Litigation, Employment & Labor Relations Law.

## III. MATERIALS RELIED UPON

20.    I considered several materials in preparing my report, including:

a.    The information set that Mr. Levandowski provided to Stroz;

b.    Stroz Friedberg LLC's March 4, 2016 Engagement Letter and Protocol (DF00015111);

c.    Stroz's April 2, 2016, draft summary of its interview with Mr. Levandowski (STROZ_0001557);

d.    Exhibit 1 to this summary, which was a blank questionnaire that Stroz gave to Mr. Levandowski to complete prior to his interview (STROZ_0001516);

e.    Exhibit 2 to this summary, which was Mr. Levandowski's answers to that questionnaire (STROZ_0001520);

f.    Exhibit 3 to this summary, which was a February 1, 2016 letter from Google to Anthony regarding his continuing obligations to the company (including an agreement he signed) (STROZ_0001524);

g.    Exhibits 4-6 to this summary, which were lists of names described in the Interview Memo (STROZ_0001536);

h.    Mary Fulginiti and Melanie Maugeri's notes from their interview with Anthony Levandowski (STROZ_00021155; STROZ_0021100; STROZ_0021206);

i.      Morrison & Foerster LLP's "Detailed Questions for Interviews," which Uber's counsel provided to Stroz prior to Mr. Levandowski's interview (STROZ_0003117-3127);

j.      The "Aspen Side Letter" referenced in the Detailed Questions (STROZ_0003117);

k.      E-mails between Eric Tate, John Gardner, and Stroz employees regarding search results and strategies;

l.      Stroz Draft Review Guide (STROZ_0013632);

m.      July 28, 2016 e-mail from Eric Friedberg regarding the "new focus" of the data review (OMM0035841);

n.      July 28, 2016 outline of e-Discovery Document Review, which lays out a tiered system of review that Stroz employed (UBER00312677);

o.      July 28, 2016, Preliminary Forensic Findings, which is a report about which of Mr. Levandowski's devices and sources Stroz reviewed and generally what Stroz found (UBER-ZA00559679);

p.      August 5, 2016, Final Project Unicorn Investigation Summary;

q.      The 159 Exhibits on which the Final Project Unicorn Investigation Summary relied (STROZ_0013632);

r.      Appendix of Exhibits (UBER00312483; UBER-ZA00559671); and

s.      PDF of "Search results" for e-mails involving Judith Branham, Christine Gabitass, and Lucas Dmitri, all of whom were involved in developing the search strategies.

21.     The materials I have considered are listed in **Exhibit B**.

## IV.   RELEVANT FACTUAL BACKGROUND

22.     Based on my review of the First Amended Complaint and Uber's Answer to the First Amended Complaint and Counterclaims and materials provided, I understand that my opinion may be used as part of an adversary proceeding in the bankruptcy court wherein Mr. Levandowski seeks to enforce Uber's obligation in an Indemnification Agreement to indemnify Mr. Levandowski for a $179 million judgment his former employer, Google LLC ("Google") obtained against him.  Specifically, my opinion may be used to rebut allegations by Uber that to the extent Google's judgment arises from Tyto/Odin Wave related conduct, Uber is not required to indemnify Mr. Levandowski because he purportedly did not disclose Tyto/Odin Wave to Stroz.

23.     I understand that in early 2016, Uber and Mr. Levandowski were discussing an acquisition where Uber would acquire two companies started by Mr. Levandowski and a colleague, Lior Ron, Ottomotto LLC, and Otto Trucking LLC.

24.     I understand that as part of that transaction, Mr. Levandowski required that Uber indemnify him against claims that may be brought by Google.

25.     I also understand that prior to agreeing to provide indemnity, Uber hired Morrison & Foerster LLP to oversee a forensic investigation conducted by Stroz.

26.     According to the Stroz engagement letter, "[t]he purpose of the investigation is to ascertain facts that, in the opinion of Clients, bear on the issues of whether certain current or prospective employees (which for purposes of this Agreement includes non-employee service providers) of Ottomotto have improperly retained on devices or in storage repositories not belonging to former employers, confidential information belonging to former employers, and whether such current or prospective employees breached any fiduciary duty, duty of loyalty, or

other confidentiality, non-solicitation, non-competition or other obligations based in contract, statute or otherwise, as such obligations are defined to Stroz Friedberg by Clients, to former employers of such current or prospective employees of Ottomoto."[2]

27.     Based on the review protocol, Stroz was asked to "examine forensic images of smartphones, tablets, and computers, where applicable, belonging to the Diligenced Employees. Stroz Friedberg will analyze these images for evidence of copying, transfer, ongoing possession, or deletion of sensitive information from a prior employer, and for evidence of breaches of non-solicitation, non-compete, and fiduciary obligations to former employer(s). Stroz Friedberg will analyze active files, deleted files, unallocated space, and the host-controlled area for relevant information."[3]

28.     Mr. Levandowski provided 45 devices and accounts, including a Macbook laptop, iPhone, tablets, Dropbox account, email accounts etc. that he was using in March 2016.  I have been provided with a forensic image of the devices and accounts provided by Mr. Levandowski to the extent the materials were imaged by Stroz.[4]

29.     Stroz also interviewed Mr. Levandowski on March 22 and 23, 2016 and April 1, 2016 as part of its investigation. [5]

30.     In early April 2016, Uber requested that Stroz provide preliminary information so that it can decide whether to proceed with signing the Otto acquisition documents and Indemnification Agreement.[6]

31.     I understand that Stroz had not completed its investigation by early April 2016 but

---

[2] *See* Stroz Report (STROZ_0023050-STROZ_0023082), Ex. 4.
[3] *See id*., Ex. 1., 4, 22
[4] *See id*., Ex. 17.
[5] *See id*., Ex. 5.
[6] *See id*. .

provided to Uber what was available at the time: Mr. Levandowski's interview memo[7], last access reports[8], and an oral report regarding part of its investigation[9].

32.     I understand that Uber executed the Otto acquisition documents and the Indemnification Agreement on April 11, 2016.

33.     Although the transaction documents were signed, Stroz proceeded with its investigation, providing some preliminary findings on July 28, 2016[10].

34.     Stroz provided a formal written report on August 5, 2016[11].

35.     Uber closed on its acquisition of Otto on or about August 23, 2018.

36.     On October 28, 2016, Google sued Mr. Levandowski and Mr. Ron for breach of their employment agreements and breach of the duty of loyalty and other obligations to Google.

37.     Google ultimately obtained an arbitration award and then judgment based on some of its alleged claims in the arbitration.  I understand that this judgment was based on Mr. Levandowski's conduct relating to Tyto/Odin Wave and his formation of Otto and solicitation of Uber employees to come to Otto.[12]

38.     I understand that Mr. Levandowski seeks to enforce Uber's indemnity obligation to pay this judgment.

39.     As a response, I understand that Uber has alleged that Mr. Levandowski did not properly disclose Tyto/Odin Wave to Stroz during the investigation.

40.     Based on that alleged failure to disclose, I understand that Uber argues that it is not required to indemnify Mr. Levandowski for Google's judgment.

---

[7] *See id*., Ex. 5.
[8] *See id*. Exs. 10, 15,  16.
[9] *See id* at STROZ_0023052-STROZ_0023053.
[10] *See id*., Ex. 17
[11] *See id*. at STROZ_0023050.
[12] *See* Corrected Final Award at 45.

## V.    OPINIONS

41.    Uber alleges "to the extent that any of Levandowski's devices contained information related to Tyto/Odin Wave, Uber did not have access to and was not told about that material, and Levandowski did not disclose that information to Stroz."

42.    I disagree because Mr. Levandowski identified places on his Apple MacBook Pro laptop where Google-related information was stored, which communicated to Stroz to prioritize the materials in these locations.

43.    Files related to Tyto/Odin Wave were in plain sight within these same identified folders.  They were not misnamed, concealed, or obfuscated such that Tyto/Odin Wave documents would not have been found by Stroz in its search for Google related information and for "side projects."  A cursory review would have revealed folders and files related to Tyto/Odin Wave.

44.    The search terms provided by Mr. Levandowski's counsel also would have identified Tyto/Odin Wave documents, including in the places that Mr. Levandowski identified as locations to look for relevant information.

### A.    Opinion 1:  Mr. Levandowski's Devices and Accounts Contained Documents Relating to Tyto

45.    Counsel for Mr. Levandowski provided the following list of terms:

- Odin Wave
- Oden Wave
- Odinn
- Odenn
- Oden
- Tyto
- Haslim

- Schwarz
- Brent
- Ognen
- Stojanovski
- Bismuth
- Beryllium
- Sandstone

46.    I understand that these terms relate to Tyto, its employees, and investors and will refer to them as the "Tyto/Odin Wave Search Terms."

47.    I applied these search terms to the forensic images of Mr. Levandowski's devices and accounts in my possession and found that these terms hit on approximately at least 4,600 unique documents and artifacts:

    a.    976 unique files with at least one Tyto/Odin Wave Search Term were found on Mr. Levandowski's Macbook;

    b.    2,756 unique files with at least one Tyto/Odin Wave Search Term were found on Mr. Levandowski's Dropbox account; and

    c.    900 unique artifacts with at least one Tyto/Odin Wave Search Term were found on Mr. Levandowski's iPhone.

48.    **Exhibits C, D, and E** contain the keyword hits from these searches and where the Tyto/Odin Wave-related documents can be found.

49.    I have reviewed some of the search hits to confirm the documents relating to Tyto/Odin Wave were within the search hit results for the Tyto/Odin Wave Search Terms.[13]

_____

[13] I did not review all documents that had a hit for the Tyto Search Terms to eliminate all false positives.

**B.  Opinion 2:  Stroz Should Have Inquired About Tyto**

50.  I understand that the Tyto/Odin Wave Search Terms were provided with the knowledge that Tyto is relevant to this dispute.

51.  However, I believe based on the information provided by Mr. Levandowski in March and April 2016, Stroz should have discovered documents related to Tyto/Odin Wave and should have made further inquiries about Tyto/Odin Wave and other companies.

52.  In his interviews with Stroz, Mr. Levandowski identified three locations on his laptop where he stored Google related information:  (1) Downloads folder; (2) Dropbox folder; and (3) his Chauffeur folder.

53.  Mr. Levandowski also identified his Dropbox account as a location where he stored both personal and work files and that it was common practice at Google to share work files via Dropbox.

54.  Based on this disclosure, as a forensic investigator, I would have focused my examination on these folders, including Mr. Levandowski's Dropbox folder on his laptop and on the files in his Dropbox account.

**1.  Opinion 2A:  Mr. Levandowski's Macbook Dropbox Folder**

55.  Mr. Levandowski's Dropbox folder is in his MacBook User Profile. Screenshots of the folder structure are attached as **Exhibit F**.

56.  Mr. Levandowski's Dropbox Folder is found on his Desktop and the contents are accessible to review.

57.  When examining the contents of the Dropbox Folder, 14 sub-folders are visible upon access to that folder.  These sub-folders are named as follows:



*See* Ex. F-1.

58.     Based on Mr. Levandowski's interview, Stroz likely would have prioritized their review of the folders named "chauffeur" and "Otto."  However, it is my opinion that Stroz should have reviewed additional folders based on Mr. Levandowski's statements that he stored both personal and work files in the Dropbox Folder and did not provide further explanation as to how the folders were organized.

59.     As such, I would have examined—*i.e.* at least opened—all the other folders in the Dropbox Folder to better understand the contents and to determine whether to examine that folder further.

60.     Several of the subfolders in the Dropbox folder appear to be company names. Because Stroz discussed "side-projects" during Mr. Levandowski's interview, it is my opinion that Stroz should have asked Mr. Levandowski about the companies named in these folders if it was a material part of its investigation.  This is especially true when, for example, Tiramisu is a

folder within the Macbook Dropbox Folder and was one of the "side projects" Mr. Levandowski identified in his interview.

61. At the very least, it is my opinion that if side-projects were a key part of its investigation, Stroz would have inquired about the following folders as found in the first set of subfolders the user is presented upon accessing the Dropbox Folder that were not on the list of entities in the Stroz interview memo:

    a.     ASL-MR

    b.     Sandstone

    c.     Sandstone Group, LLC

62. Upon access to the ASL-MR folder, the user is immediately presented with nine subfolders:



*See* Ex. F-3.

63. The "Business" folder is a folder that would have caught my attention, because

again, Stroz had asked Mr. Levandowski questions about "side projects."

64.    Upon review of the contents of the "business" sub-folder, there are 48 subfolders, many of which appear to be names of businesses.  *See* Ex. F-7.

65.    Several of these businesses were identified by Mr. Levandowski during his interview, including Future Game, Nemo, 510 Systems, and Anthony's Robots.[14]

66.    Because of this overlap between the file names and business Mr. Levandowski identified, it is my opinion that Stroz should have inquired about the other businesses/folders to ask Mr. Levandowski why these other entities were not identified during his interview.  The following is a list of the folder names Stroz should have inquired further of Mr. Levandowski

        a.    BLAM
        b.    Dogwood Leasing
        c.    DriveMate
        d.    FlybyFuel
        e.    Narwhal
        f.    NGI (multiple folders)
        g.    Odin Wave
        h.    Pagemill Labs
        i.    RAD Constructio LLC
        j.    Signetron
        k.    Sixteenth Street Medical Center, LP
        l.    Stack Robotics,LLC
        m.    Temascal
        n.    Untamed Engineering, LLC
        o.    Ensco
        p.    LaRaison, LLC
        q.    Velodyne

67.    Time permitting, I believe that Stroz should have asked about each folder.  But with time or resource constraints, based on my experience, it is my opinion that Stroz should have at least focused on the above folders because they could be companies or projects as opposed to properties, which folders are identified as addresses.

---

[14] *See* Stroz Rep., Ex. 5 at 3.

68.　　As Odin Wave is one of the folders in this list, it is my opinion that had Stroz asked about the additional businesses in Mr. Levandowski's' Dropbox folder on his Macbook, they would have asked Mr. Levandowski specifically about Odin Wave.

69.　　In addition, the contents of the Odin Wave folder suggests technical development concerning "lasers" which was the technology discussed during Mr. Levandowski's interview. This should have been another investigative lead that should have led Stroz to ask Mr. Levandowski about Odin Wave.



*See* Ex. F-8, F-9.

70. Returning again to the top of the Dropbox folder, the Sandstone Group, LLC folder also stands out as a folder to review. As with the above Businesses folder, the use of "LLC" clearly suggests a business, which should have led Stroz to inquire further about this entity and why it was not listed in the interview if Stroz had in fact asked Mr. Levandowski to identify all "side projects" without any qualifications.[15]

71. Upon access to the Sandstone Group, LLC folder, the user is presented with the following four folders (Narwhal Energy LLC, Odin Wave, LLC, OW Inventory, and Sandstone Group LLC):



*See* Ex. F-14, F-15.

---

[15] As demonstrated by Exhibit F-20, the folder Sandstone also contains documents relating to what appear to be businesses, including a folder called "OW."

72.     As with the "Business" folders discussed above, Narwhal Energy, LLC, Odin Wave, LLC, and Sandstone Group, LLC suggest business entities.  It is my opinion that Stroz should have asked Mr. Levandowski about Narwhal, Odin Wave, and Sandstone, in particular, what these entities were, his relationship to those entities, and why they were not listed during his interview.

73.     In accessing the Odin Wave, LLC folder, the user is presented with the following folders:



*See* Ex. F-18, F-19.

74.     The folders, as labeled and organized, suggest to me business operation files, which would have been yet another investigative lead that should have prompted Stroz to inquire

further with Mr. Levandowski.

75.     **Exhibit G** contains another visual of the folder trees found in Exhibit F.  Exhibit G contains yellow tags showing where in the Dropbox Folder documents that hit on Tyto/Odin Wave Search Terms appear within that folder.

76.     In my experience as a forensic investigator, I would see these as investigative leads that would require further examination and a follow-up interview with Mr. Levandowski for clarification.

77.     Based on my experience as an investigator, the information provided by Mr. Levandowski relating to the Macbook laptop contained sufficient investigative leads that should have led Stroz to further inquiry with Mr. Levandowski that would have included questions specifically about Odin Wave and Sandstone.

78.     Files were not encrypted or inaccessible.  The Sandstone folder was one layer down from the Dropbox folder and the Odin Wave, LLC layer was one layer further down from the Dropbox folder.  Merely opening each folder would have revealed the Tyto/Odin Wave documents.

## 2.     Opinion 2B:  Mr. Levandowski's Dropbox Account

79.     Mr. Levandowski's Dropbox Account is another location that Mr. Levandowski specifically identified as having information relevant to Stroz's investigation.  Screenshots of Mr. Levandowski's Dropbox account as collected by Stroz are attached as **Exhibit H**.

80.     Mr. Levandowski's Dropbox account contained 14 folders visible upon access. These appear to be the same folders as found in Mr. Levandowski's Macbook Dropbox Folder.



*See* Ex. H-1.

81.     Because these are the same folders, it is my opinion that Stroz should have

inquired further about the same folders discussed above—ASL-MR, Sandstone, and Sandstone

Group, LLC.

82.     As with the Macbook Dropbox Folder, the ASL-MSR contains a similar

"Business" folder, which also contained a folder named "Odin Wave Doc."



*See* Ex. H-4.

83.     As such, I have the same opinion as stated in Opinion 2A—that this folder tree

was an investigative lead that should have led Stroz to inquire about Mr. Levandowski's

businesses in this folder, including, Odin Wave.[16]

84.     In addition, as with Mr. Levandowski's Macbook, the Sandstone Group, LLC folder leads to a folder named "Odin Wave, LLC" which should have prompted additional inquiry from Stroz.  In addition, the name "OW" has appeared in both the Macbook Dropbox folder and in the Dropbox Account that I believe Stroz should have asked what "OW" referred to.



*See* Ex. H-5.

---

[16] In fact, there are only 43 folders in the ASL-MR/Business folder in the Dropbox Account, fewer than in the corresponding Dropbox folder on the Macbook.

85.     It is my opinion that the folder structure and the names of the folders in Mr. Levandowski's Dropbox Account, which again, he identified as a priority location for review, provided sufficient investigative leads for further exploration.

**C.     Opinion 3:  The Search Terms Provided by Mr. Levandowski's Counsel Would Have Uncovered Tyto Documents**

86.      Stroz' investigation and interview of Mr. Levandowski revealed a number of personal devices both in his possession and in storage.

87.     Mr. Levandowski gave Stroz 45 separate devices and accounts, including his iPhone, Macbook, and Dropbox, which were determined by Stroz to have potentially relevant data.

88.     During the Stroz investigation, John Gardner, Mr. Levandowski's counsel, gave Stroz a specific list of search terms that could be applied to those devices. **Exhibit I** contains a true and correct copy of these terms.

89.     Logically, Stroz should have searched those terms on Mr. Levandowski's devices, including his Dropbox, Macbook, and iPhone.

90.     In my opinion, a diligent forensic investigator would have run those searches to confirm if any relevant information existed.

91.     I used a forensic tool named Magnet Forensics Axiom to run the Gardner Search Terms against the files in Mr. Levandowski's Dropbox Account which yielded 19,439 unique documents.

92.     I used the features of the Axiom tool to tag—*i.e.* identify—the Gardner Search Term Documents and color coded them in light green.

93.     As discussed above in Opinion 1, the Tyto Search Terms yielded 2,756 likely Tyto/Odin Wave-related documents in the Dropbox Account. I tagged these in blue using the Axiom tool.

94.     Magnet Axiom allows me to compare the files to show which documents in the Dropbox Account have both Gardner Search Terms and Tyto Search Terms.

95.     I identified 730 documents within the Dropbox Account that contain both the Gardner Search Terms and the Tyto/Odin Wave Search Terms.





*See* Ex. J.

96.     This leads me to conclude that the Gardner Search Terms, if applied to the Dropbox Account, would likely have included documents relating to Tyto in their results.

97.     Using the search terms and the folder trees from the Dropbox Account as discussed above, it is my opinion that Stroz would likely have found at least some Tyto/Odin Wave-related documents that would have prompted further inquiry.

98.     For example, in the screenshot above, a couple versions of an "Odin Wave Business Plan" are included in the results.  For a full listing of the 730 documents that have a hit for both the Tyto and Gardner Search Terms, please see **Exhibit K**.

99.     On Mr. Levandowski's Macbook, I again focused on Mr. Levandowski's Dropbox folder as he specifically identified it in his interview.

100.     I applied the Gardner Search Terms to the Dropbox Folder, which yielded 3,404 unique files. I tagged these files in light blue.

101.     As discussed above, the Tyto/Odin Wave Search Terms yielded 976 unique files within this Dropbox Folder. I tagged these files in pink.

102.     Using the Axiom tool, I identified 254 unique files that have at least one Gardner Search Term and one Tyto/Odin Wave Search Term.



*See* Ex. L.

103.    A complete listing of the 254 files that have a hit for both sets of terms can be found in **Exhibits M-N**.

104.    With respect to Mr. Levandowski's iPhone, I used a forensic tool called Cellebrite to conduct a similar comparison for the iPhone.

105.    Based on this comparison, I found 785 artifacts on the iPhone that have both Gardner and Tyto Search Terms.  **Exhibit O and P** are lists of these 785 artifacts.

## VI.    CONCLUSION

106.    Mr. Levandowski's Macbook, Dropbox Account, and iPhone contain Tyto related documents.

107.    It is my opinion that the Tyto documents were visible and would have been found by conducting a cursory review of the folder structure within the laptop computer and the Dropbox account.

108.    Applying the Gardner search terms to Mr. Levandowski's devices and accounts would have yielded search results that included Tyto-related documents.  Many of these files are found in Mr. Levandowski's Macbook Dropbox Folder and his Dropbox Account, specifically locations that Mr. Levandowski identified as having Google-related information and where he stored both work and personal files.

By:    _____

Dated: March 22, 2021                                          BENJAMIN ROSE

# EXHIBIT C

| From: | Vu, Hong-An <HVu@goodwinlaw.com> |
|---|---|
| Sent: | Tuesday, March 2, 2021 3:52 PM |
| To: | Ciliberti, Katharine R.; john.berry@mto.com; 'alex.gorin@mto.com' |
| Cc: | Bradford, David J.; Mascherin, Terri L.; Powell, Lina R.; Melanie.Blunschi@lw.com; Walsh, Rachel M.; Schuman, Brett; Chatterjee, Neel; 'tkeller@kbkllp.com'; 'dsilveira@kbkllp.com'; Whitney.Weber@lw.com; Sutton, Theresa Ann; Husain, Batoul |
| Subject: | RE: Levandowski v. Uber - Section 7.4(a)(2) Expert Disclosure |

External Email – Exercise Caution

Katie,

How about 11 Pacific tomorrow?  If other parties are interested in joining, please let us know if this time works as well.

The depositions we would like to discuss are the following:

Eric Tate: 2/9/2021

Eric Tate: 9/29/2017 (Waymo case)

Eric Friedberg: 9/28/2017 (Waymo case)

Hanley Chew: 10/6/2017 (Waymo case)

Mary Fulginiti Genow: 10/17/2017 (Waymo case)

Melanie Maugeri: 10/20/2017 (Waymo case)

Although I believe most of the Waymo depositions were designated by the parties for confidentiality, we do not have a set of designations for these witnesses.  If Uber has a copy of what has been designated as AEO from the Waymo litigation, if you can provide us a copy of those transcripts, the discussion will probably be more efficient.  We can also discuss a schedule for designating additional depositions from this Adversary Proceeding as we never set a deadline.

Thanks,
Hong-An

**Hong-An Vu**
*she/her/hers*

 **GOODWIN**

Goodwin Procter LLP
601 South Figueroa Street
Los Angeles, CA 90017
o  +1 213 426 2557
m +1 714 625 2669
f   +1 213 289 7728
HVu@goodwinlaw.com | goodwinlaw.com

**From:** Ciliberti, Katharine R. <KCiliberti@jenner.com>
**Sent:** Tuesday, March 2, 2021 12:48 PM
**To:** Vu, Hong-An <HVu@goodwinlaw.com>; john.berry@mto.com; 'alex.gorin@mto.com' <alex.gorin@mto.com>
**Cc:** Bradford, David J. <dbradford@jenner.com>; Mascherin, Terri L. <TMascherin@jenner.com>; Powell, Lina R. <LinaPowell@jenner.com>; Melanie.Blunschi@lw.com; Walsh, Rachel M. <RWalsh@goodwinlaw.com>; Schuman, Brett <BSchuman@goodwinlaw.com>; Chatterjee, Neel <NChatterjee@goodwinlaw.com>; 'tkeller@kbkllp.com' <tkeller@kbkllp.com>; 'dsilveira@kbkllp.com' <dsilveira@kbkllp.com>; Whitney.Weber@lw.com
**Subject:** RE: Levandowski v. Uber - Section 7.4(a)(2) Expert Disclosure

Hong-An,

We disagree with your arguments on a number of levels. Uber provided AEO materials to a number of experts with your and Google's consent while working with those experts and determining whether to issue an opening report by the appropriate deadline. All of that was proper. By contrast, you have now revealed an intent to provide information to Mr. Rose for an improper and impermissible purpose. That is not permitted by the protective order. However, we are available to discuss tomorrow other than from 1:00-3:00 CT.

With respect to the depositions of the Stroz investigators, if you are referring to the depositions from the Waymo case, then Waymo might need to be involved in a decision to down-designate. (In some cases, we cannot tell from our records who made the AEO designation.) Before looping them in, please specify exactly which transcripts you think this is necessary for.

As part of the discussion of down-designations of deposition transcripts, we have one or more depositions from this case that we think should be down-designated as well.

Thanks,
Katie

---

**From:** Vu, Hong-An <HVu@goodwinlaw.com>
**Sent:** Tuesday, March 2, 2021 9:27 AM
**To:** Ciliberti, Katharine R. <KCiliberti@jenner.com>; john.berry@mto.com; 'alex.gorin@mto.com' <alex.gorin@mto.com>
**Cc:** Bradford, David J. <dbradford@jenner.com>; Mascherin, Terri L. <TMascherin@jenner.com>; Powell, Lina R. <LinaPowell@jenner.com>; Melanie.Blunschi@lw.com; Walsh, Rachel M. <RWalsh@goodwinlaw.com>; Schuman, Brett <BSchuman@goodwinlaw.com>; Chatterjee, Neel <NChatterjee@goodwinlaw.com>; 'tkeller@kbkllp.com' <tkeller@kbkllp.com>; 'dsilveira@kbkllp.com' <dsilveira@kbkllp.com>; Whitney.Weber@lw.com
**Subject:** RE: Levandowski v. Uber - Section 7.4(a)(2) Expert Disclosure

External Email – Exercise Caution
Katie,

Your reliance on Section 7.2 and 7.3 is unsupported as nothing in those sections suggests that an expert must issue a report in order to have access to AEO information.  In fact, you disclosed a number of preliminary experts that ultimately did not provide reports who have had access to AEO information. As such, we maintain that your objection is not valid.  We also maintain that a report from our forensic expert is proper, and if Uber has an issue with the report, this is not the proper vehicle for that dispute.

Please let us know when you are available tomorrow to meet and confer tomorrow about access to AEO information under the protective order. In addition, we would like to meet and confer about down-designating the depositions of Eric Tate, Eric Friedberg, and the other depositions of the Stroz investigators as we believe that none of their testimony should be AEO.

Thanks,

Hong-An

**Hong-An Vu**
*she/her/hers*



Goodwin Procter LLP
601 South Figueroa Street
Los Angeles, CA 90017
o +1 213 426 2557
m +1 714 625 2669
f +1 213 289 7728
HVu@goodwinlaw.com | goodwinlaw.com

---

**From:** Ciliberti, Katharine R. <KCiliberti@jenner.com>
**Sent:** Monday, March 1, 2021 9:00 AM
**To:** Vu, Hong-An <HVu@goodwinlaw.com>; john.berry@mto.com; 'alex.gorin@mto.com' <alex.gorin@mto.com>
**Cc:** Bradford, David J. <dbradford@jenner.com>; Mascherin, Terri L. <TMascherin@jenner.com>; Powell, Lina R. <LinaPowell@jenner.com>; Melanie.Blunschi@lw.com; Walsh, Rachel M. <RWalsh@goodwinlaw.com>; Schuman, Brett <BSchuman@goodwinlaw.com>; Chatterjee, Neel <NChatterjee@goodwinlaw.com>; 'tkeller@kbkllp.com' <tkeller@kbkllp.com>; 'dsilveira@kbkllp.com' <dsilveira@kbkllp.com>; Whitney.Weber@lw.com
**Subject:** RE: Levandowski v. Uber - Section 7.4(a)(2) Expert Disclosure

Hong-An,

Uber's objection is valid. The Protective Order specifies in Sections 7.2 and 7.3 that Confidential or AEO material can only be disclosed to experts "to whom disclosure is reasonably necessary for this litigation." Because any expert report offered by Mr. Levandowski on forensic computer issues would be untimely and precluded, we do not believe that disclosing any Confidential or AEO information to such an expert is "reasonably necessary for this litigation."

Despite what you claim is "common practice," we believe the case law establishes that a rebuttal expert report is not permitted unless it responds to and attempts to rebut the opposing party's affirmative expert report.

Uber stands on this objection.

Best,
Katie

---

**From:** Vu, Hong-An <HVu@goodwinlaw.com>
**Sent:** Friday, February 26, 2021 4:50 PM
**To:** Ciliberti, Katharine R. <KCiliberti@jenner.com>; Bradford, David J. <dbradford@jenner.com>; Mascherin, Terri L. <TMascherin@jenner.com>; Powell, Lina R. <LinaPowell@jenner.com>; john.berry@mto.com; 'alex.gorin@mto.com' <alex.gorin@mto.com>; Melanie.Blunschi@lw.com; Whitney.Weber@lw.com
**Cc:** Schuman, Brett <BSchuman@goodwinlaw.com>; Chatterjee, Neel <NChatterjee@goodwinlaw.com>; Walsh, Rachel M. <RWalsh@goodwinlaw.com>; 'tkeller@kbkllp.com' <tkeller@kbkllp.com>; 'dsilveira@kbkllp.com' <dsilveira@kbkllp.com>
**Subject:** RE: Levandowski v. Uber - Section 7.4(a)(2) Expert Disclosure

External Email – Exercise Caution

Katie,

Your objection is not a valid objection under the Protective Order. As we have disclosed Mr. Rose since November 2020, please confirm that you do not object to his review of AEO materials.

In addition, as is common practice in the Northern District, we understand rebuttal expert reports to relate to issues where we do not have the burden of proof, but rather are responding to Uber's evidence. It does not matter whether that evidence is expert opinion or whether Uber disclosed an expert itself on that topic. We intend to have experts respond to anticipated testimony from Uber's witnesses as disclosed on your preliminary witness list provided in early January, including, for example, the Stroz investigators and technical witnesses on alleged Trade Secret 90. Uber followed this common practice in the Waymo case, where, for example, it disclosed Kevin Faulkner not by the opening disclosure deadline, but by the rebuttal deadline even though he was not responding to any Waymo experts. Similarly, Uber participated in revising the Laykin expert report that critiqued Waymo's investigation of Anthony Levandowski despite Waymo not disclosing a formal expert report on its own investigation. The evidence relating to Waymo's investigation was part of the discovery record and required expert opinion to respond to. This is the same as what we are doing here.

Thanks,
Hong-An

**Hong-An Vu**
*she/her/hers*

 GOODWIN

Goodwin Procter LLP
601 South Figueroa Street
Los Angeles, CA 90017
o  +1 213 426 2557
m +1 714 625 2669
f  +1 213 289 7728
HVu@goodwinlaw.com | goodwinlaw.com

---

**From:** Ciliberti, Katharine R. <KCiliberti@jenner.com>
**Sent:** Friday, February 26, 2021 11:14 AM
**To:** Vu, Hong-An <HVu@goodwinlaw.com>; Bradford, David J. <dbradford@jenner.com>; Mascherin, Terri L. <TMascherin@jenner.com>; Powell, Lina R. <LinaPowell@jenner.com>; john.berry@mto.com; 'alex.gorin@mto.com' <alex.gorin@mto.com>; Melanie.Blunschi@lw.com; Whitney.Weber@lw.com
**Cc:** Schuman, Brett <BSchuman@goodwinlaw.com>; Chatterjee, Neel <NChatterjee@goodwinlaw.com>; Walsh, Rachel M. <RWalsh@goodwinlaw.com>; 'tkeller@kbkllp.com' <tkeller@kbkllp.com>; 'dsilveira@kbkllp.com' <dsilveira@kbkllp.com>
**Subject:** RE: Levandowski v. Uber - Section 7.4(a)(2) Expert Disclosure

Hong-An,

Uber objects to this disclosure to Mr. Rose.

Mr. Levandowski did not issue an opening expert report by Mr. Rose by the deadline, so any possible report by him would be untimely and impermissible. To the extent Mr. Levandowski intends to try to issue a report by Mr. Rose styled as some kind of "rebuttal" expert report, that would be invalid and impermissible as well because, as you know, Uber did not serve an expert report on computer forensic issues or anything in that realm. Any such attempt would constitute an untimely opening expert disclosure.

Therefore, we do not see a permissible purpose for disclosing any Confidential or AEO information to Mr. Rose, and we object on that basis.

Regards,
Katie

---

**From:** Vu, Hong-An <HVu@goodwinlaw.com>
**Sent:** Friday, February 26, 2021 11:24 AM
**To:** Bradford, David J. <dbradford@jenner.com>; Ciliberti, Katharine R. <KCiliberti@jenner.com>; Mascherin, Terri L. <TMascherin@jenner.com>; Powell, Lina R. <LinaPowell@jenner.com>; john.berry@mto.com; 'alex.gorin@mto.com' <alex.gorin@mto.com>; Melanie.Blunschi@lw.com; Whitney.Weber@lw.com
**Cc:** Schuman, Brett <BSchuman@goodwinlaw.com>; Chatterjee, Neel <NChatterjee@goodwinlaw.com>; Walsh, Rachel M. <RWalsh@goodwinlaw.com>; 'tkeller@kbkllp.com' <tkeller@kbkllp.com>; 'dsilveira@kbkllp.com' <dsilveira@kbkllp.com>
**Subject:** Levandowski v. Uber - Section 7.4(a)(2) Expert Disclosure

External Email – Exercise Caution

All:

Although disclosed in our November 2020 preliminary expert disclosures, out of an abundance of caution, pursuant to Section 7.4(a)(2) of the Protective Order, we disclose Ben Rose as an expert and request that he may be given access to documents and information that may be designated Highly Confidential – Attorneys' Eyes Only in the categories described below.

1) We anticipate providing Mr. Rose with the following information that may be designated as Highly Confidential:
   a. Documents and communications relating to the Stroz investigation
   b. Testimony and exhibits from the depositions of representatives/employees of Stroz Friedberg
   c. Testimony and exhibits from the depositions of representatives/employees of Uber, including representative such as Mr. Tate and Mr. Suhr
2) Mr. Rose's CV is attached with the information requested un 7.4(a)(2)(2)-(6)

Given the 3/22 expert report deadline, we would appreciate prompt approval for this request.

Thanks,
Hong-An

**Hong-An Vu**
*she/her/hers*



Goodwin Procter LLP
601 South Figueroa Street
Los Angeles, CA 90017
o +1 213 426 2557
m +1 714 625 2669
f +1 213 289 7728
HVu@goodwinlaw.com



\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This message was sent from Goodwin Procter LLP and is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## Katharine R Ciliberti

**Jenner & Block LLP**
353 N. Clark Street, Chicago, IL 60654-3456  |  jenner.com
+1 312 840 7292 | TEL
+1 312 825 5190 | MOBILE
+1 312 840 7392 | FAX
KCiliberti@jenner.com
Download V-Card  |  View Biography

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.