Debra I. Grassgreen (CA Bar No. 169978)
Miriam Manning (CA Bar No. 178584)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Telephone: (415) 263-7000
Facsimile: (415) 263-7010
E-mail:     dgrassgreen@pszjlaw.com
            mmanning@pszjlaw.com

David J. Bradford (admitted *pro hac vice*)
Terri L. Mascherin (admitted *pro hac vice*)
Catherine Steege (admitted *pro hac vice*)
Katharine R. Ciliberti (admitted *pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
Telephone: (312) 222-9350
E-mail:     dbradford@jenner.com
            csteege@jenner.com
            tmascherin@jenner.com
            kciliberti@jenner.com

*Counsel for Uber Technologies, Inc.*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>ANTHONY SCOTT LEVANDOWSKI,<br><br>     Debtor. | Case No. 20-30242 (HLB)<br><br>Chapter 11 |
| ANTHONY SCOTT LEVANDOWSKI, an individual,<br><br>     Plaintiff,<br><br>   v.<br><br>UBER TECHNOLOGIES, INC.<br><br>     Defendant. | Adv. Pro. No. 20-03050 (HLB)<br><br>**UBER TECHNOLOGIES, INC.'S OPPOSITION TO GOOGLE'S MOTION TO STRIKE CONFIDENTIAL SETTLEMENT DISCUSSIONS** |

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................................1

II.     LEGAL STANDARD ...........................................................................................................4

III.    THE SETTLEMENT AGREEMENT .................................................................................4

IV.     STATEMENT OF FACTS ..................................................................................................5

    A.  Levandowski First Accesses the Confidential Settlement Agreement .......................5

    B.  Google Stands By When Levandowski Fails to Respect the Condition Upon Which He
        Was Able to Review the Settlement Agreement. ......................................................6

V.      ARGUMENT ........................................................................................................................9

    A.  The February 8, 2018 Settlement Agreement Superseded The Preliminary Agreement and
        Was Not Violated. ......................................................................................................9

    B.  Any Claim Under the Preliminary Agreement Was Waived. .................................13

    C.  Uber Did Not Violate the Preliminary Agreement And There Is No Basis For Striking The
        Evidentiary Submission .............................................................................................15

VI.     CONCLUSION ..................................................................................................................19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AlterG, Inc. v. Boost Treadmills LLC*,
No. 18-cv-07568, 2019 WL 4221599 (N.D. Cal. Sept. 5, 2019) ................................. 10, 11, 17

*Alvarado Orthopedic Rsch., L.P. v Linvatec Corp.*,
No. 11–CV–246, 2013 WL 2351814 (S.D. Cal. May 24, 2013) ................................... 13

*Apple Inc. v. Motorola Mobility, Inc.*,
No. 11-cv-178, 2012 WL 5416941 (W.D. Wis. Oct. 29, 2012).................................... 12, 17

*Aristocrat Techs. V. Int'l Game Tech.*,
No. C 06-3717, 2007 WL 9747650 (N.D. Cal. April 3, 2007) .................................... 13

*Coakley & Williams v. Structural Concrete Equip.*,
973 F.2d 349 (4th Cir. 1992)..................................................... 15

*Cook v. United Ins. Co. of Am.*,
No. C-11-1179, 2011 WL 2940713 (N.D. Cal. July 20, 2011)................................ 12

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
No. 11 C 4462, 2014 WL 1389041 (N.D. Ill. April 9, 2014) ................................. 16

*Epic Commc'ns, Inc. v. Richwave Tech., Inc.*,
237 Cal. App. 4th 1342 (2015) ................................................... 17

*Facebook, Inc. v. Pacific Nw. Software, Inc.*,
640 F.3d 1034 (9th Cir. 2011)................................................ 11, 16, 17

*Grey v. American Mgmt. Servs.*,
139 Cal. Rptr. 3d 210 (2012) ................................................... 9

*Harrison-Van Horn, Inc. v. Charles Hill Agency*,
No. B212932, 2020 WL 377939 (Cal. Ct. App. Feb. 4, 2010) ............................. 17

*Hasbro, Inc. v. Sweetpea Ent. Inc.*,
No. CV 13-03406, 2013 WL 12120078 (C.D. Cal. Aug. 16, 2013) ....................... 15

*Johnson v. Am. Online, Inc.*,
280 F. Supp. 2d 1018 (N.D. Cal. 2003) ........................................ 12

*Johnson v. Nguyen*,
No. 190CV006170, 2020 WL 7495179 (N.D. Cal. Dec. 21, 2020)........................ 4

*Medtech Prods., Inc. v. Ranir LLC*,
596 F. Supp. 2d 778 (S.D.N.Y. 2008) .......................................... 9

ii

*OEM-Tech v. Video Gaming Techs., Inc.*,
   No. C 10-04368, 2012 WL 12920087 (N.D. Cal. July 31, 2012) ...................................... 12, 15

*Rhoades v. Avon Products, Inc.*,
   504 F.3d 1151 (9th Cir. 2007) ................................................................................................... 4

*San Joaquin Regional District v. Vuong*,
   No. C046570, 2005 WL 2304601 (Cal. Ct. App. Sept. 22, 2005) ................................... 12, 15

*Sulit v. Slep-Tone Ent.*,
   No. C06-00045, 2007 WL 4169762 (N.D. Cal Nov. 20, 2007) ................................................. 4

*In re Twitter Inc. Secs. Litig.*,
   No. 16-cv-05314, 2020 WL 485547 (N.D. Cal. Jan. 30, 2020) .............................................. 12

*Ulyssix Techs., Inc. v. Orbital Network Eng'g, Inc.*,
   No. 10–2091, 2013 WL 453229 (D. Md. Feb. 4, 2013) ......................................................... 16

iii

Uber Technologies, Inc. ("**Uber**") objects to the Motion to Strike Confidential Settlement Discussions (the "**Motion**") filed by Google LLC ("**Google**").

## I. INTRODUCTION

Google and Uber entered into a Settlement Agreement that does not name Mr. Levandowski as a beneficiary and that was, by its terms, to remain confidential, including from Mr. Levandowski. In the *Google v. Levandowski* arbitration, Levandowski was allowed to see and use a copy, but the Arbitration Panel conditioned its ruling on his using it only for purposes of that arbitration. Mr. Levandowski ignored the Arbitration Panel's conditions and used the Settlement in this action by claiming the release Uber granted to Google and Waymo works in his favor. Google stands down in this action while Levandowski attempts to use the Settlement Agreement to preclude any defenses to his indemnification claims against Uber, and stood silent and even participated while Mr. Levandowski pursued substantial discovery into the settlement negotiations. But now Google, which is not even a party to the claim at issue, seeks to hinder Uber's ability to defend itself against Levandowski's use of the Settlement Agreement to which he was not even a party, by attempting to enforce a purported prior and superseded confidentiality obligation in favor of itself. To do so, Google attempts to parlay an unfounded objection to four exhibits and several sentences in the declaration of Uber's Chief Legal Officer, Derek Anthony West, into a request that the Court strike large swaths of Uber's Opposition to Mr. Levandowski's Motion for Partial Summary Judgment Based upon the Waymo Settlement Agreement. Google's Motion to Strike is unfounded in its entirety for three reasons.

*First*, Google's Motion proceeds from a false premise—that the September 2017 email exchange ("**Preliminary Agreement**") survived the integration clause in the February 8, 2018 Settlement Agreement between Google, Uber and others ("**Settlement Agreement**"). It did not. Google expressly agreed that ███████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████████████████ (*see id.* § 10). The final Settlement Agreement also █████████████████████████████████████

██████████████████████████████████████ (*Id*. § 8a.)  Well-established case law holds that a later confidentiality agreement between the same parties, that contains an integration clause, like the Settlement Agreement does here, necessarily supersedes and eliminates any obligations under any prior confidentiality agreements.  *See, e.g., Grey v. American Mgmt. Servs.*, 139 Cal. Rptr. 3d 210, 212 (Cal. Ct. App. 2012).  The "subject matter" of the Settlement Agreement includes the topic of confidentiality, including in the context of the use of the Settlement Agreement to ████████ ████████████████████████████████████ ████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████ (Ciliberti Decl. Ex. U-1, §10.)[1]

**Second**, even if the alleged Preliminary Agreement had not been superseded, which it was, Google waived its right to enforce its provisions because it permitted Uber to produce to Mr. Levandowski all four disputed documents and the limited disputed substance of paragraph 8 of the West declaration during discovery, without objection.  With respect to the four documents at issue, Mr. Levandowski served Google with its document requests seeking all settlement communications; Uber responded and produced approximately 150 documents reflecting or relating to settlement communications, including the four exhibits that Google now seeks to strike.  (Ciliberti Decl. ¶¶ 15-17, Exs. U-13, U-14, U-15.)  Google never once raised the Preliminary Agreement or objected to the production of these documents to Mr. Levandowski; nor did it seek to claw them back on any basis, including on the basis of the argument it makes now.  Similarly, Google did not object when Mr. Levandowski issued a Rule 30(b)(6) notice to Uber asking for an Uber corporate representative (Mr. Poetzscher) to testify on the broad topic of "settlement communications" with Google. Google participated in Mr. Poetzscher's deposition and even asked its own questions on other topics, and never once raising the Preliminary Agreement as a basis to end any questioning.  It did not object in any other way to Mr. Levandowski soliciting testimony from Uber about these very same settlement discussions that it now contends the Court cannot review.  During that deposition, Uber's corporate

---

[1] Google failed to include the Settlement Agreement among the exhibits it filed in support of its Motion.  Having acknowledged in its Motion that Uber's position was that the Settlement Agreement superseded the Preliminary Agreement and having argued against that position in its Motion (Mot. at 10), it was incumbent upon Google to present the Settlement Agreement with its moving papers.

2

representative recounted the same settlement discussions as are described in Paragraph 8 of Mr. West's declaration.

By failing to object to the production of this supposedly confidential material to a non-party to the settlement discussions, Google waived any confidentiality objection over these materials and cannot now attempt to shield those same discussions from the Court. *See, e.g.*, *OEM-Tech v. Video Gaming Techs., Inc*., No. C 10-04368, 2012 WL 12920087, at *7 (N.D. Cal. July 31, 2012). Put more bluntly, it is wholly unfair for Google to take the position that it is acceptable for confidentiality to be waived if the waiver is in favor of the party whose position Google prefers, but unacceptable for Google's adversary to use the same documents to defend itself. Google's selective use of confidentiality as a litigation strategy should be rejected.

***Third***, even if the Preliminary Agreement had not been superseded (which it was) and even if Google's objection had not been waived (which it was), Uber has not violated the Preliminary Agreement. Google itself recognizes that the Preliminary Agreement does not bar Uber from offering evidence of its own intent—to dispute an assertion about that intent. Google acknowledges that **"***it is not asking the Court to strike any part of Uber's opposition papers or Mr. West's declaration that speaks to Uber's intent regarding the Settlement Agreement, because that is not barred under the terms of the [Preliminary] Agreement.***"** (Mot. at 11.)

But that is, in fact, precisely what Google seeks to do. The communications between Uber and Google are offered by Uber solely to show Uber's intent not to release Mr. Levandowski, by demonstrating that (a) Uber never discussed giving Mr. Levandowski a release; and (b) to the contrary, Google requested the very opposite of a release of Mr. Levandowski—it requested that Uber dispute any obligation to indemnify Mr. Levandowski. Tellingly, Google had no objection when Mr. Poetzscher testified at his Rule 30(b)(6) deposition to the same statements by Google:

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████

Moreover, ███████████████████████████████████

███████████████████████████████████████████████

1 ████████████████████████████████████████████████

2 ████████████████████████████████████████████████

3 █████████████████████████████████  █████████████

4 ████████████████████ Uber did not violate either restriction. Uber did not publicly disclose

5 any settlement discussions, because it submitted the disputed exhibits and Mr. West's declaration

6 under seal, with a sealing request. Nor did Uber submit to this Court any ██████████ provided by

7 Google. Additionally, many of the passages in Uber's brief, which Google seeks to strike, do not

8 even refer to Google's settlement communications, and others are supported independently by the

9 Settlement Agreement itself and/or Mr. Poetzscher's testimony. (*See infra* Section IV.C.)

10 In short, Google's efforts to prevent this Court from reviewing and hearing the very same

11 evidence Mr. Levandowski was permitted to solicit during discovery, without objection from Google,

12 should be rejected.

## II. LEGAL STANDARD

14 "Motions to strike are generally disfavored and should not be granted unless the matter to be

15 stricken clearly could have no possible bearing on the subject of the litigation." *Johnson v. Nguyen*,

16 No. 190CV006170, 2020 WL 7495179 at *1 (N.D. Cal. Dec. 21, 2020) (denying motion to strike.)

17 Generally, statements made during settlement negotiations may be admissible to prove the

18 intent of the parties or for purposes other than attempting to prove liability of the settling party. *See,*

19 *e.g., Sulit v. Slep-Tone Ent.*, No. C06-00045, 2007 WL 4169762, at *3 n.12 (N.D. Cal Nov. 20, 2007)

20 (holding that "Rule 408 does not prohibit use of settlement evidence that is not offered to prove

21 liability or invalidity of the claim or its amount"); *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1161

22 (9th Cir. 2007) (holding that "Rule [408], by its own terms, is one of limited applicability"; "[w]hen

23 statements made during settlement are introduced for a purpose unrelated to liability, the policy

24 underlying the rule is not injured").

## III. THE SETTLEMENT AGREEMENT

26 The relevant facts related to the settlement negotiations that culminated in the Settlement

27 Agreement are recounted in Uber's *Opposition to Plaintiff's Motion for Partial Summary Judgment*

28 *Based Upon Waymo Settlement* (Dkt. 150), and are incorporated here by reference.

4

The relevant parts of the Settlement Agreement are confidentiality (Ciliberti Decl. Ex. U-1, Settlement Agreement § 22), integration (*id.* § 10), and (*id.* § 8). ███████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

███████████████████████

█ █

███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████

## IV.     STATEMENT OF FACTS

### A.     Levandowski First Accesses the Confidential Settlement Agreement.

Mr. Levandowski first sought access to the Settlement Agreement in the Arbitration Proceeding, to which Uber was not a party. ███████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████ The Protective Order prohibited the use of any AEO document in any other litigation. (*See* Ciliberti Decl. Ex. U-5, Google Arbitration Protective Order § V.A.) █████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

5



**B.** **Google Stands By When Levandowski Fails to Respect the Condition Upon Which He Was Able to Review the Settlement Agreement.**

Mr. Levandowski ignored the Arbitration Protective Order and the Panel's September 25, 2019 Order, by using the Settlement Agreement in other litigation—asserting in this adversary proceeding the affirmative defense of release based upon the Settlement Agreement. (*See, e.g.*, Dkt. No. 78, Pl. Answ. Countercls. Affirm. Defenses at ¶¶ 264-69, Ex. 2.) Uber objected to Mr. Levandowski's use of the Settlement Agreement in this litigation, stating, "Mr. Levandowski was permitted [by the Panel] to see the settlement agreement by reason of his agreeing to a confidentiality designation that precluded its use by him in other proceedings, which necessarily precludes his use of that [settlement] agreement in this case. To the extent that any of Mr. Levandowski's current pleadings are inconsistent with those limitations on use, Uber reserves all rights and defenses." (*See* Ciliberti Decl. Ex. U-10, Sept. 22, 2020 email from D. Bradford to H. Vu, with cc to J. Berry.) Google, which had standing to enforce the Arbitration Protective Order and prevent the use of the Settlement Agreement in this litigation, however, took no steps to enforce the Arbitration Protective

Order so as to prevent Mr. Levandowski from violating its terms through his use of the Final Settlement Agreement in this litigation.

Mr. Levandowski then sought discovery about the settlement negotiations that resulted in the Settlement Agreement. Google has never objected to any of Mr. Levandowski's discovery into the negotiations leading up to the Settlement Agreement. For example, on October 23, 2020, Mr. Levandowski served his "First Set of Requests for Production of Documents To Uber Technologies, Inc." (the "First RFP") on Uber and Google. (Ciliberti Decl. Ex. U-11, First RFP.) The First RFP sought: (i) *[a]ll documents and communications regarding the Waymo Settlement*"; and (i) "[a]ll documents and communications regarding Uber's settlement offers made to Waymo and/or Google as related to the Waymo Litigation settlement agreement, the Google Arbitration, or any global settlement of issues and disputes between Uber, Google, Waymo, and Anthony Levandowski." (*See id.* at 8-9 (emphasis added).) Google did not object to the First RFP or seek a protective order barring Uber from responding. On November 23, 2020, Uber served its response to the First RFP on Mr. Levandowski and Google, and subsequently served its production with respect to the same on December 16, 2020, January 7, 2021, and January 19, 2021. (*See* Ciliberti Decl. Ex. U-12, Resp. First RFP; *see also* Ciliberti Decl. ¶¶ 15-17, Exs. U-13, U-14, U-15.) Uber produced approximately 150 responsive documents related to settlement negotiations. (Ciliberti Decl. ¶¶ 15-17, Exs. U-13, U-14, U-15.) Each of the three exhibits that Google moves to strike (Adv. Dkt. 151 (Ex. U-43, U-44, and U-45)) as well as the exhibit to Mr. West's declaration (*id.*, Ex. U-74, West Ex. A), were among the approximately 150 documents produced to Mr. Levandowski and Google in response to these document requests, as reflected by their bate-stamps. Google never objected to the production of any of these documents to Mr. Levandowski or sought a protective order seeking to have those documents clawed back. (Ciliberti Decl. ¶ 18.)

Mr. Levandowski again raised the topic of the negotiations leading to the Settlement Agreement on December 18, 2020, when he served his "Notice of Taking of Rule 30 (B)(6) Deposition of Uber Technologies, Inc." (the "Notice") on Uber and Google. (Ciliberti Decl. Ex. U-16, Notice.) The Notice included a request for Uber to "produce for deposition one or more officers, directors, managing agents, employees, or other designated persons who can testify on its behalf with

respect to . . . 17. '*Negotiations with Waymo and Google regarding Levandowski, including negotiations to settle the Prior Litigation* and whether Uber communicated to Google or Waymo any of the proposals or constructs made by Levandowski to Uber regarding a global settlement of the Prior Litigation.'" ("Topic 17") (*Id.* at 2, 8 (emphasis added).) Mr. Levandowski served the Notice on Google. (*See id.* at 10.) Although Google participated in at least one meet and confer related to this notice, Google did not object to this deposition topic or file a motion for a protective order to bar this discovery. (Ciliberti Decl. ¶ 20.)

On January 26, 2021, Mr. Levandowski took the deposition of Cameron Poetzscher, who was designated as Uber's 30(b)(6) witness. (*See* Ciliberti Decl. Ex. U-2, 30(b)(6) Poetzscher Dep. Tr.) Counsel for Google participated throughout the entire deposition, and asked approximately one hour of questions of Mr. Poetzscher, after Mr. Levandowski's examination. Mr. Levandowski questioned Mr. Poetzscher ███████████████████████████████████████ (*Id.*) Although Google notes that Mr. Poetzscher testified that his personal involvement in those discussions was limited, he was testifying as a Rule 30 witness, not a fact witness, and Mr. Levandowski has not suggested he failed to fulfill his obligations to familiarize under Rule 30. Google never objected to Uber's corporate representative testifying on this topic, nor to a single question asked of Mr. Poetzscher.



Case: 20-03050   Doc# 217   Filed: 03/29/21   Entered: 03/29/21 23:59:47   Page 12 of 24

[REDACTED] Google did not object to these questions (*see id.*) and, following the Rule 30 examination, Google did not move for a protective order to bar the use of this testimony in this case.

## V.   ARGUMENT

### A.   The February 8, 2018 Settlement Agreement Superseded The Preliminary Agreement and Was Not Violated.

The entire premise of Google's argument—that the Preliminary Agreement bars Uber's use of the four documents and parts of Mr. West's testimony—is faulty because the Preliminary Agreement is no longer in effect. Any confidentiality obligations imposed by the Preliminary Agreement were superseded by the final Settlement Agreement itself, which contains a confidentiality clause, [REDACTED]

[REDACTED] In short, the confidentiality provision in the Settlement Agreement is the only operative confidentiality agreement between the parties and Google does not and cannot contend that Uber has violated it.

It is well-established California law that when the parties to a contract agree to an integration clause, like the clause included in the Settlement Agreement, any prior agreements between the parties related to the same subject are superseded and no longer effective.  Thus, in *Grey v. American Mgmt. Servs.*, 139 Cal. Rptr. 3d 210, 213 (Cal. Ct. App. 2012), the Court recognized that under California law, an integration clause "*has been held conclusive on the issue of integration, so that parole evidence to show that the parties did not intend the writing to constitute the sole agreement will be excluded.*"  *Id.* at 213 (emphasis added).  In *Grey*, the court recognized that an integration clause reflects that "the parties intended the [subsequent] contract to be the final and exclusive

9

embodiment of their agreement." *Id*. The court held that the party seeking to rely on a prior agreement, in lieu of a subsequent agreement with an integration clause, was barred from doing so, and could not even "use the [prior agreement] as extrinsic evidence that the parties did not intend the [subsequent agreement] to be the sole agreement because [that argument] contradicts the plain terms of the contract's integration clause." *Id*. at 214; *see also*, *Medtech Prods., Inc. v. Ranir LLC*, 596 F. Supp. 2d 778, 792-94 (S.D.N.Y. 2008) (dismissing claims that defendant breached a confidentiality clause in an agreement relating to proprietary information where the provision had been superseded by a confidentiality provision in a subsequent general release.)

Google incorrectly relies on *AlterG, Inc. v. Boost Treadmills LLC,* No. 18-cv-07568, 2019 WL 4221599, at *6 (N.D. Cal. Sept. 5, 2019) as its sole authority on the effect of the integration clause in the Settlement Agreement. (Mot. at 10.) Google only discusses part of the holding in *AlterG,* ignoring the part of that decision that is most relevant to this Motion. The plaintiff in *AlterG* alleged that three former employees who started a competing business breached the confidentiality provisions of several contracts. *AlterG*, 2019 WL 4221599, at *1. The case concerned twelve different agreements made over a span of eleven years, where some of the contracts dealt with completely different subject matter. *Id*. at *6. All three defendants argued that their "most recent agreement superseded the confidentiality provisions in their earlier agreements, so [plaintiff's] claims based on the earlier agreements must be dismissed." *Id*. The court rejected the argument as to one defendant, but agreed with the argument as to two defendants, finding that the breach of confidentiality claim was based on superseded contracts. *Id*. at *8-9.

The *AlterG* court began its analysis by stating the California rule: "the crucial issue in determining whether there has been an integration [that superseded prior contracts] is whether the parties intended their writings to serve as the exclusive embodiment of their agreement. The existence of an integration clause is a key factor in divining that intent." *Id*. at *7 (internal citation omitted). In the part of the decision upon which Google relies, the court concluded that the confidentiality provision in a "*consultant* contract" did not supersede the confidentiality provision in an earlier "*employment* contract" covering a completely different time period and different relationship, because the contracts did "not concern the same subject matter." *Id*. at *8.

10

In the part of the opinion in *AlterG* that Google ignores, however, the Court applied the integration clause to preclude consideration of a prior agreement. *Id*. at *8-9. The confidentiality provisions at issue were all in employment contracts, spread out over several years. The court held that the most recent employment contracts with their differing confidentiality clauses superseded the earlier employment contracts because the integration clause in the last agreement stated that the last employment contract "sets forth the entire agreement and understanding between [the parties] with respect to the subject matter herein and supersedes all prior written and oral agreements, discussions, or representations between us." *Id*. In reaching this conclusion, the court rejected plaintiff's argument that the earlier contracts should still apply because the differing confidentiality provisions were not inconsistent with one another, holding that the existence of the confidentiality clause in the last agreement, even if not inconsistent with earlier such clauses, meant that all earlier agreements on the subject of confidentiality were superseded and no longer in effect. *Id*. at *8-9.

Google's contention that the Settlement Agreement in this case concerned a different "subject matter" than the Preliminary Agreement is inconsistent with the decision in *AlterG*. ████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ █████████████████████████████████         ██████████████████████ ███████████████████████         ████████████████████████████████ ██████████████████████████████         █████████████████████████ ████████████████████████████████

The balance of Google's authority are inapposite. For example, Google cites *Facebook, Inc. v. Pacific Nw. Software, Inc.*, 640 F.3d 1034, 1037 (9th Cir. 2011) for the proposition that courts enforce independent confidentiality agreements. (Mot. at 6.) But the facts there are strikingly different. In *Facebook*, the later settlement agreement was a "hand written, one-and-a third-page" long agreement, and there is no indication in the decision that this agreement contained a

11

confidentiality provision or integration clause. 640 F.3d at 1037. Additionally, in *Facebook*, the Court held the evidence of prior discussions could not be used to support a fraud claim, but did not suggest it would be inadmissible to resolve a dispute about the intent of the parties to the final agreement. *Id.* at 1041.

Equally inapposite are the four decisions Google cites for the proposition that courts will refuse to consider evidence offered in violation of a confidentiality agreement. (Mot. at 7-8.) None of these cases involved a later agreement containing an integration clause that rendered the confidentiality agreement superseded, and none involved an attempted use of evidence of prior negotiations to prove intent.[2] And two of these decisions hold that confidentiality agreements should be construed narrowly. *See e. g.*, *Cook* , 2011 WL 2940713, at *2 (suggesting confidentiality agreements should be construed narrowly); *Apple,* 2012 WL 5416941, at *5-7 (narrowly construing scope of NDA to limit confidentiality to "explicit prohibitions").

In short, the parties here agreed to certain confidentiality restrictions in their Preliminary Agreement, at a time when they did not know if they would reach a final settlement agreement. When they did reach a final agreement, they agreed to embody all of their obligations and duties in that one contract. ██████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████ ██████ ████ ███████████████
████████████████████████████████████████████████████████████████████
████████████████

Because Google has not asserted that Uber violated the ████████ agreement governing its confidentiality duties to Google, its Motion should be denied.

---

[2] *See, e.g.*, *Cook v. United Ins. Co. of Am.*, No. C-11-1179, 2011 WL 2940713, at *2 (N.D. Cal. July 20, 2011) (involving only a single mediation agreement); *In re Twitter Inc. Secs. Litig.*, No. 16-cv-05314, 2020 WL 485547, at *1, n.1 (N.D. Cal. Jan. 30, 2020) (same); *Johnson v. Am. Online, Inc.*, 280 F. Supp. 2d 1018, 1027 (N.D. Cal. 2003) (same); *Apple Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178, 2012 WL 5416941, at 5-6 (W.D. Wis. Oct. 29, 2012) (involving single confidentiality agreement).

### B. Any Claim Under the Preliminary Agreement Was Waived.

Even if the Preliminary Agreement had not been superseded, Google waived any objection to the use of documents produced in discovery in this case and Rule 30 deposition testimony in this case that covered the same topic, to which it did not object.

Basic principles of waiver apply with equal force to confidentiality agreements. In *OEM-Tech v. Video Gaming Techs., Inc*., No. C 10-04368, 2012 WL 12920087, at *7 (N.D. Cal. July 31, 2012), for example, the court found that the failure to object to a disclosure prohibited by a non-disclosure agreement "would appear to constitute a prima facie case of waiver," as waiver of such an agreement "may be implied from the acts and conduct of the parties." *Id*. at *8 (internal citations omitted). Similarly, in *San Joaquin Reg'l Dist. v. Vuong*, No. C046570, 2005 WL 2304601, at *3-5 (Cal. Ct. App. Sept. 22, 2005), the court held that the failure to object to a violation of a confidentiality agreement waived any objection to the use of the confidential information as evidence. *See also*, *Alvarado Orthopedic Rsch., L.P. v Linvatec Corp*., No. 11–CV–246, 2013 WL 2351814, at *4 (S.D. Cal. May 24, 2013) ("where the subsequent conduct of parties is inconsistent with and clearly contrary to provisions of the written agreement, the parties' modification setting aside the written provisions will be implied") (citations omitted); *Aristocrat Techs. V. Int'l Game Tech.*, No. C 06-3717, 2007 WL 9747650, at *5 (N.D. Cal. April 3, 2007) (defendant waived confidentiality agreement with expert by allowing him to testify in a different case.)

Here, Google waived any objections to the use of the evidence in question based on its confidentiality. It is undisputed that Google had notice that Mr. Levandowski propounded discovery that required the production by Uber of settlement agreement drafts and communications, and Google did not object either to that discovery or to Uber's responding to it by producing settlement communications. Additionally, Google participated in a Rule 30 deposition of an Uber representative on the very topic of these settlement communications. Two Google attorneys represented Google at the Rule 30 deposition and neither objected when Mr. Poetzscher testified about the settlement discussions that were subsequently addressed in Mr. West's declaration. Google also never sought any protective orders to bar this discovery.

13

Google allowed Mr. Levandowski to use the confidential Settlement Agreement in this litigation, even though it could have objected to his doing so based upon the Panel's Order, limiting his use of the Settlement Agreement to the Arbitration. Google also made a choice not to object to Mr. Levandowski's pursuing extensive discovery into the very settlement communications that Google now seeks to strike. Google permitted Mr. Levandowski to have access to and use all this confidential information, when it served Mr. Levandowski's (and Google's) perceived interests to allow him to do so. Having made those choices, Google should not be allowed to shield the very same documents and communications from review by this Court, when they are offered to refute Mr. Levandowski's unfounded allegation that he was an intended beneficiary of the Settlement Agreement. Confidentiality rights are not a weapon to be used when it suits a party's interest, and ignored when they do not.

Google attempts to minimize its waiver by contending that the Preliminary Agreement prohibited Uber from using or attributing any information obtained in the settlement discussions to Google, and that Uber's summary judgment opposition brief was the first time it "used" information obtained from Google. (Mot. at 11.) But, as discussed below (*see infra* at 15-16), Uber's opposition brief did not cite or refer to any "information" that was shared during those discussions. Rather, Uber limited its discussion of the settlement negotiations to recounting Uber's intent, ██████████ ████████████████████████████████████████████████████████ ███████████████████████████████████████████████

Apart from attaching four exhibits produced in discovery, the only "attribution" of a statement to Google was that Mr. West recounted, ████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████ This statement is not offered to prove liability or for the truth of the matter asserted. Rather, it is offered to prove that Uber did not believe that it was agreeing to release any claims or defenses against Mr. Levandowski, ████████████████ ████████████████████████ Google does not explain how it is permissible for Mr. Levandowski to be provided with documents and testimony that were supposedly strictly

confidential, but somehow impermissible for Uber to provide those same documents under seal to this Court to establish the truth about the intent of the parties to this settlement agreement.

Google also argues that there was no waiver because there was "little discovery on the settlement discussions." (Mot. at 11.) But Uber produced approximately 150 responsive non-privileged documents related to the substance of these settlement negotiations, without an objection from Google. (Ciliberti Decl. ¶¶15-18.) Each of the four documents that Google now seeks to strike were among the approximately 150 documents, produced in discovery without objection. And Mr. West's declaration is only 8 paragraphs long, with only one of those paragraphs (paragraph 8) referring to something that Google said during the negotiations. Further, as noted, that paragraph refers only to the same Google position that Mr. Poetzscher covered in his Rule 30 testimony, without objection.

By not only failing to object, but actually participating in discovery into these same communications without objecting or moving to strike deposition testimony or claw back documents, Google has waived any objection to the use of documents or deposition testimony. *See, e.g.*, *OEM-Tech,* 2012 WL 12920087, at *7; *San Joaquin Reg. Dist.*, 2005 WL 2304601, at *3-5.

### C. Uber Did Not Violate the Preliminary Agreement And There Is No Basis For Striking The Evidentiary Submission.

The courts have recognized that confidentiality provisions do not prevent a party from defending itself against claims that a party is within the scope of a release, by presenting evidence as to the intent of the parties to the agreement. For example, the 2006 Advisory Committee Notes to Rule 408 cite *Coakley & Williams Constr. Co. v. Structural Concrete Equip.*, 973 F.2d 349 (4th Cir. 1992) as recognizing that "evidence of settlement [negotiations] is not precluded by Rule 408 *where offered to prove a party's intent with respect to the scope of a release.*" *See* Fed. R. Evid. 408 2006 advisory committee's notes (emphasis added). *See also*, *Hasbro, Inc. v. Sweetpea Ent. Inc.*, No. CV 13-03406, 2013 WL 12120078, at *2 n.1 (C.D. Cal. Aug. 16, 2013) (recognizing parties to a dispute "may submit . . . evidence of intent of the drafters when interpreting a settlement agreement in an action for its enforcement."). Google also admits that *"it is not asking the Court to strike any part of Uber's opposition papers or Mr. West's declaration that speaks to Uber's intent regarding the*

*Settlement Agreement, because that is not barred under the terms of the [Preliminary] Agreement."* (Mot. at 11:1-4 (emphasis added).)

But all of the evidence that Google seeks to strike was offered for this simple and permissible purpose: to demonstrate that Uber never intended to ███████ releasing Mr. Levandowski. Mr. West's declaration as to Uber's intent, which was to preserve (not release) its claims and defenses against Mr. Levandowski, is supported by the four documents that Google seeks to strike. These documents are offered only to show that ███████████████████ ███████████ and therefore would not and did not ask Uber to waive any claims or defenses against Mr. Levandowski. To the extent they contain information extraneous to ascertaining Uber's intent, this Court may ignore that information for purposes of resolving this Motion. To the extent they contain information relevant to Uber's intent, Google has conceded that use of the information does not violate the Preliminary Agreement.

Relatedly, a court that is asked to decide whether a Settlement Agreement has resolved the case before it (as Mr. Levandowski contends to be the circumstance here), has inherent authority to consider the intent of the parties to that settlement agreement, notwithstanding any confidential agreement between them. *See e.g.*, *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11 C 4462, 2014 WL 1389041 at *4 (N.D. Ill. April 9, 2014) (party waives "any confidentiality argument by filing a motion to enforce the parties' purported settlement agreement, and there is no reason why [opponent] will not be able to introduce evidence to show that the term sheet was not a final settlement"); *see also Ulyssix Techs., Inc. v. Orbital Network Eng'g, Inc.*, No. 10–2091, 2013 WL 453229 at *2 (D. Md. Feb. 4, 2013) ("even if some dispute resolution communications had not already been disclosed, it is likely that [plaintiff] necessarily waived the confidentiality protections of Local Rule 607.4 by placing in issue the question of whether a binding settlement was achieved, and asking [the court] to resolve the dispute. Just as a plaintiff cannot sue to recover emotional distress damages and simultaneously insist on the protection of psychotherapist-patient privilege, or sue his lawyer for professional malpractice and maintain attorney-client privilege with respect to his communications with that lawyer, [plaintiff] cannot seek to vacate a settlement order on the basis of disclosures (or failures to disclose) in settlement negotiations while simultaneously insisting that the

16

communications on which it relies cannot be disclosed to the Court, or compel disqualification of the Court.").

California courts generally recognize that even when a contract has an integration clause, parole evidence is admissible to assist the Court in ascertaining whether the parties intended to release a non-party to the contract. *See Epic Commc'ns, Inc. v. Richwave Tech., Inc.,* 237 Cal. App. 4th 1342, 1354 (2015) (holding that "it is proper to consult extrinsic evidence to determine the parties intent" with respect to whether they released a non-party to the contract, even when the contract has an integration clause); *see also Harrison-Van Horn, Inc. v. Charles Hill Agency,* No. B212932, 2020 WL 377939 at *3 (Cal. Ct. App. Feb. 4, 2010) ("Because the court must consider the circumstances of the contracting parties' negotiations to determine whether a third party not named in the release was an intended beneficiary, it will seldom be sufficient for the third party simply to rely on a literal application of the terms of the release.").

Google's cases involving enforcement of prior confidentiality agreements concern attempted uses of prior communications for collateral purposes *other than* interpreting a final Agreement or proving the parties' intent in entering into that agreement. For example, in *Facebook*, 640 F.3d at 1041, the Court enforced the agreement in one part of its opinion, and then enforced a mediation confidentiality agreement to prevent intervenors from relying upon mediation discussions to assert a fraud claim. Google cites no case holding that a Court construing the intent of the parties to a Settlement Agreement may be prohibited, by a separate contract between the parties, from considering evidence of the parties' prior negotiations to the extent relevant to ascertaining that intent.

Additionally, the submission—under seal—of Mr. West's declaration and the four related documents that Google seeks to strike, did not violate any the terms of the Preliminary Agreement, even if they had not been superseded. Google cites three provisions in the Preliminary Agreement that it contends were violated: ███████████████████

The cases cited in Google's Motion make clear that "statements" or "communications" are not the same as "information." *See Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178, 2012 WL 5416941, at *5-7 (W.D. Wis. 29, 2012) (the agreement contained prohibitions relating to "the use of Confidential Information exchanged during settlement negotiations. . . *as well* as restrictions on the use of *communications* and documents exchanged . . . in furtherance of their joint negotiation efforts," but did not bind the parties "beyond th[ese] explicit prohibitions") (emphasis added); *Facebook*, 640 F.3d at 1041 (the agreement prohibited the parties from using "*[a]ll statements* made during the course of mediation"); *AlterG*, 2019 WL 4221599, at *7 (the confidentiality provision used the word "information" rather than "statement" or "communication" because it was intended to prevent the defendant from "disclos[ing] any of [the plaintiff's] proprietary information"); *see also Cornell Univ. Illumina, Inc.*, No. 10-433, 2013 WL 3216087, at *2 (D. Del. June 25, 2013)(relying upon Rule 408, not an agreement, to exclude statements used to prove liability.), *report and recommendation adopted*, 2014 WL 12601516 (N.D. Cal. Sept. 29, 2014).

Additionally,

By its terms,

and did not preclude reference to positions taken with respect to Mr. Levandowski, which are offered solely to demonstrate that Uber did not intend to release Mr. Levandowski. Google's settlement proposals,

18

which Google seeks to strike, are relevant to Uber's intent in entering into the Settlement Agreement,

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████ In short, Uber's submission of four documents produced in discovery and an eight-paragraph declaration from Mr. West were submitted for the limited purpose of showing Uber's intent, and contained no information that was not disclosed in discovery.

Additionally, much of the argument in Uber's Opposition Brief that Google moves to strike does not exclusively rely upon the disputed exhibits or disputed sentences in Mr. West's declaration, but merely expounds upon Uber's position with respect to its arguments based on the Settlement Agreement itself. (*See e.g.,* Dkt. 150, Opp'n. Mot. Summ. J. Waymo Settlement at 3:11-22, 4:23-24; 4:26-5:9, 5:16-23, 5:24-26, 5:28-6:11, 16:13-24, 17:2-5.) Moreover, several of the passages that Google seeks to strike are supported by testimony from Uber's Rule 30(b)(6) Representative, Mr. Poetzscher, who testified to these very same settlement discussions, at a deposition in which Google participated without objection. (*Compare* Mot. at 12 (citing Dkt. 150 at 3:11-22, 5:10-15, 9:7-17, 17:13-19, 17:24-27, 18:25-28) *with* Ciliberti Decl. Ex. U-2, 30(b)(6) Poetzscher Dep. Tr. at 31:4-22, 34:22-35:3.) For these reasons, even if the Court were to strike any of these four documents or any sentence from Mr. West's declaration, it should not strike any of these passages in Uber's brief.

Given that the evidence submitted by Uber is, at minimum, relevant to Uber's intent, none of it should be stricken. At most, even if the Preliminary Agreement had not been superseded and even if Google's objections had not been waived, this Court should allow the record and Uber's brief to stand and limit its consideration of any of the disputed evidence to ascertaining Uber's intent in entering into the Settlement Agreement.

## VI.    CONCLUSION

This Court should deny Google's Motion to Strike, so as to afford Uber a full and fair opportunity to provide evidence demonstrating that its intent in entering into the Settlement Agreement was not to release its own claims and defenses against Mr. Levandowski.

19

Dated: March 29, 2021

Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ Debra I. Grassgreen*

Debra I. Grassgreen (CA Bar No. 169978)
Marion Manning (CA Bar No. 17854)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Telephone:      (415) 263-7000
Facsimile:       (415) 263-7010
E-mail:           dgrassgreen@pszjlaw.com
                    jrichards@pszjlaw.com

David J. Bradford (admitted *pro hac vice*)
Terri L. Mascherin (admitted *pro hac vice*)
Catherine Steege (admitted *pro hac vice*)
Katherine R. Ciliberti (admitted *pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
Telephone: (312) 222-9350
E-mail: dbradford@jenner.com
             tmscherin@jenner.com
        csteege@jenner.com
        kciliberti@jenner.com

*Counsel for Uber Technologies, Inc.*

Case: 20-03050    Doc# 217    Filed: 03/29/21    Entered: 03/29/21 23:59:47    Page 24 of 24