1  Debra I. Grassgreen (CA Bar No. 169978)
   Miriam Manning (CA Bar No. 178584)
2  PACHULSKI STANG ZIEHL & JONES LLP
   150 California Street, 15th Floor
3  San Francisco, CA 94111
   Telephone:    (415) 263-7000
4  Facsimile:    (415) 263-7010
   E-mail:       dgrassgreen@pszjlaw.com
5                mmanning@pszjlaw.com

6  David J. Bradford (admitted *pro hac vice*)
   Catherine Steege (admitted *pro hac vice*)
7  Terri L. Mascherin (admitted *pro hac vice*)
   Katharine Ciliberti (admitted *pro hac vice*)
8  JENNER & BLOCK LLP
   353 N. Clark St.
9  Chicago, IL 60654
   Telephone: (312) 222-9350
10 E-mail: dbradford@jenner.com
           csteege@jenner.com
11         tmascherin@jenner.com
           kciliberti@jenner.com

12

13 *Counsel for Uber Technologies, Inc.*

14

15                UNITED STATES DISTRICT COURT

16          FOR THE NORTHERN DISTRICT OF CALIFORNIA

17                  SAN FRANCISCO DIVISION

18 | In re:                                  | Bankruptcy Case No. 20-30242 (HLB)

19 | ANTHONY SCOTT LEVANDOWSKI,               | Chapter 11

20 | Debtor.                                  | Hon. Hannah L. Blumenstiel

21 |_____|

22 | ANTHONY LEVANDOWSKI, an individual,      | **Adv. Pro. No. 20-03050 (HLB)**

23 |               Plaintiff,                 | **DECLARATION OF KATHARINE
                                              | CILIBERTI IN SUPPORT OF UBER
24 |          v.                              | TECHNOLOGIES, INC.'S OPPOSITION
                                              | TO GOOGLE LLC'S MOTION TO
25 | UBER TECHNOLOGIES, INC.,                 | STRIKE CONFIDENTIAL
                                              | SETTLEMENT DISCUSSIONS
26 |               Defendant.                 |

27

28

I, Katharine Ciliberti, hereby declare as follows:

1.       I am an attorney at the law firm Jenner & Block LLP, which represents Uber Technologies, Inc. ("Uber') in the above-captioned proceeding. I have personal knowledge of the facts set forth in this Declaration, which are true and correct, and if sworn as a witness, I could and would testify competently.

2.       I submit this declaration in support of Uber's Opposition to Google LLC's Motion to Strike Confidential Settlement Discussions.

3.       Attached hereto as **Exhibit Uber 1** is a true and correct copy of the Settlement Agreement in *Waymo LLC v. Uber Technologies, Inc.,* Case No. 3:17-cv-00939-WHA (N.D. Cal.) (the "Waymo Litigation"), dated February 8, 2018 (GOOG-CHFR-00023976) ("Waymo Settlement Agreement").

4.       Attached hereto as **Exhibit Uber 2** is a true and correct copy of relevant excerpts from the deposition transcript of Uber's Rule 30(b)(6) witness, Cameron Poetzscher, dated January 26, 2021.

5.       Attached hereto as **Exhibit Uber 3** is a true and correct copy of Anthony Levandowski's Letter Motion to Compel Production of the Waymo Settlement Agreement, dated February 26, 2018 in *Google LLC v. Anthony Scott Levandowski and Lior Ron*, JAMS Arbitration Case Reference No. 1100086069, and *Google v. Levandowski*, JAMS Arbitration Case Reference No. 110008603 (the "Google Arbitration").

6.       Attached hereto as **Exhibit Uber 4** is a true and correct copy of a Google LLC letter dated April 30, 2019, regarding the production of the Waymo Settlement Agreement in the Google Arbitration.

7.       Attached hereto as **Exhibit Uber 5** is a true and correct copy of the protective order entered in the Google Arbitration.

8.       Attached hereto as **Exhibit Uber 6** is a true and correct copy of an Order Denying Respondents' Motion for Offset, dated June 17, 2019, in the Google Arbitration.

9.      Attached hereto as **Exhibit Uber 7** is a true and correct copy of Anthony Levandowski's Letter Motion Requesting De-Designation of the Waymo Settlement Agreement, dated August 16, 2019, in the Google Arbitration.

10.     Attached hereto as **Exhibit Uber 8** is a true and correct copy of Google LLC's Opposition to Anthony Levandowski's August 16, 2019 De-Designation Motion, dated August 28, 2019.

11.     Attached hereto as **Exhibit Uber 9** is a true and correct copy of an Order Denying Respondents' Motion to De-Designate the Waymo Settlement Agreement, dated September 25, 2019.

12.     Attached hereto as **Exhibit Uber 10** is a true and correct copy of an email from D. Bradford to H. Vu, copying J. Berry, dated September 22, 2020.

13.     Attached hereto as **Exhibit Uber 11** is a true and correct copy of Anthony Levandowski's First Set of Requests for Production of Documents in this adversary proceeding, dated October 23, 2020.

14.     Attached hereto as **Exhibit Uber 12** is a true and correct copy of Uber's Response to Anthony Levandowski's First Set of Requests for Production of Documents in this adversary proceeding, dated November 23, 2020.

15.     Attached as **Exhibit Uber 13** is a true and correct copy of a production transmittal for Uber's production labeled Uber-AL004.  On December 16, 2020, my firm transmitted Uber Production Uber-AL004 to counsel for Google LLC as well as Plaintiff.  Uber-AL004 was responsive to Plaintiff Anthony Levandowski's First Set of Requests for Production of Documents (the "First RFP") and contained, in part, approximately 33 documents related to the Waymo Settlement Agreement.

16.     Attached as **Exhibit Uber 14** is a true and correct copy of a production transmittal for Uber's production labeled Uber-AL008. On January 8, 2021, my firm transmitted Uber Production Uber-AL008 to counsel for Google LLC as well as Plaintiff.  Uber-AL008 was responsive to the First RFP and contained, in part, approximately 100 documents related to the Waymo Settlement Agreement.

17.     Attached hereto as **Exhibit Uber 15** is a true and correct copy of a production transmittal for Uber's productions labeled Uber-AL 010 and Uber-AL011.  On January 19, 2021, my firm transmitted Uber Production Uber-AL010 and Uber-AL011 to counsel for Google LLC as well as Plaintiff.  Uber-AL010 was responsive to the First RFP and contained, in part, approximately 13 documents related to the Waymo Settlement Agreement.

18.     Prior to filing its Motion to Strike, Google never objected to the production of any of these settlement-related documents to Mr. Levandowski, nor did it seek a protective order or try to have those documents clawed back.

19.     Attached hereto as **Exhibit Uber 16** is a true and correct copy of Anthony Levandowski's Notice of Taking of Rule 30(B)(6) Deposition of Uber Technologies, Inc. in this adversary proceeding, dated December 18, 2020 ("30(b)(6) Deposition Notice").

20.     Google was present for and participated in at least one meet-and-confer discussion related to Mr. Levandowski's 30(b)(6) Deposition Notice, but did not object to Uber's presenting a witness on the topic related to settlement negotiations.

I declare under the penalty of perjury that the statements included in this Declaration are true and correct.  Executed on this 29th day of March 2021 in Chicago, Illinois.

_/s/ Katharine Ciliberti_____
Katharine Ciliberti

# EXHIBIT 1
# FILED UNDER SEAL

# EXHIBIT 2

# FILED UNDER SEAL

# EXHIBIT 3

# FILED UNDER SEAL

# EXHIBIT 4

# FILED UNDER SEAL

# EXHIBIT 5

**JAMS ARBITRATION**

GOOGLE INC.,

           Claimant,

    v.

ANTHONY LEVANDOWSKI and LIOR RON,

           Respondents.

JAMS Ref. No. 1100086069

GOOGLE INC.,

           Claimant,

    v.

ANTHONY LEVANDOWSKI,

           Respondent.

JAMS Ref. No. 1100086032

**(Consolidated for All Purposes)**

**SECOND AMENDED
AGREED PROTECTIVE ORDER**

Second Amended Agreed Protective Order
1167806

1         To expedite the production of discovery material, to facilitate the prompt resolution of

2   disputes over confidentiality of discovery material, to adequately protect information that the

3   parties are entitled to keep confidential, to ensure that only the materials the parties are entitled to

4   keep confidential are subject to such treatment, and to ensure that the parties are permitted

5   reasonably necessary uses of confidential discovery material in preparation for and in the conduct

6   of this litigation, it is hereby ORDERED THAT:

7   **I.**     **INFORMATION SUBJECT TO THIS PROTECTIVE ORDER**

8       **A.**     **PROTECTED INFORMATION Generally**

9          1.     All documents, electronically stored information, tangible things, physical

10   objects, written discovery responses, testimony, or other information produced by the producing

11   party in this litigation is considered "**DISCOVERY MATERIAL**." Any DISCOVERY

12   MATERIAL containing or including confidential information may be designated as such, by any

13   party or non-party with a propriety interest in the PROTECTED INFORMATION, by marking it

14   "CONFIDENTIAL" or "CONFIDENTIAL—OUTSIDE COUNSEL ONLY" and shall be treated

15   in accordance with the terms of this Protective Order. Each of the identified categories of

16   confidential DISCOVERY MATERIAL shall be identified collectively in this Protective Order as

17   "**PROTECTED INFORMATION**."

18          2.     All PROTECTED INFORMATION not reduced to documentary,

19   electronic, tangible or physical form, or which cannot be conveniently designated as set forth in

20   paragraph I.A.1 or pursuant to another confidentiality designation set forth in this Protective

21   Order, shall be designated by the designating party by informing all other parties of the

22   designation in writing (and where appropriate, applying an appropriate confidentiality legend

23   and/or a CONFLABEL tag).

24          3.     Any DISCOVERY MATERIAL made available for inspection shall

25   initially be considered, as a whole, to constitute the highest designation of PROTECTED

26   INFORMATION (unless otherwise designated at the time of inspection) and shall be subject to

27   this Protective Order. Thereafter, the designating party shall have a reasonable time to review

28   and designate the DISCOVERY MATERIAL in accordance with this Protective Order.

1    4.    Any PROTECTED INFORMATION that is obtained by any party from

2    any person pursuant to discovery in this litigation shall be used solely for purposes of this

3    litigation.

4    5.    This Protective Order applies not only to DISCOVERY MATERIAL

5    produced in this litigation, but also to any other form of information that could reveal

6    PROTECTED INFORMATION, including: (a) any information copied or extracted from

7    PROTECTED INFORMATION; (b) all copies, excerpts, summaries, or compilations of

8    PROTECTED INFORMATION; and (c) any testimony, conversations, or presentations by parties

9    or COUNSEL OF RECORD that might reveal PROTECTED INFORMATION.

10    6.    PROTECTED INFORMATION shall **not** include: (a) any information that

11    is, or after its disclosure to a receiving party becomes, part of the public domain as a result of

12    publication not involving a violation of this Protective Order; (b) any information known to the

13    receiving party prior its disclosure to a receiving party; (c) any information that is or was

14    independently developed by a receiving party; and (d) any information obtained lawfully by a

15    receiving party after the disclosure from a source who obtained the information lawfully and

16    under no obligation of confidentiality to the designating party.

17    **B.    PROTECTED INFORMATION Designated CONFIDENTIAL**

18    1.    For purposes of this Protective Order, PROTECTED INFORMATION

19    designated **CONFIDENTIAL** shall mean all DISCOVERY MATERIAL that a party believes in

20    good faith is entitled to confidential treatment under applicable law, including confidential or

21    commercially sensitive technical sales, marketing, personal, or financial information of the

22    designating party (including any party to this action and any non-party producing information or

23    material voluntarily or pursuant to a subpoena or a court order in connection with this action), or

24    information that the producing party is under a legal obligation to maintain as confidential.

25    2.    PROTECTED INFORMATION designated CONFIDENTIAL and the

26    contents therein shall be available only to:

27

28

1              a.       **COUNSEL OF RECORD**[1] and supporting personnel employed in

2 the law firm(s) of COUNSEL OF RECORD to whom it is reasonably necessary to disclose the

3 information, such as attorneys, paralegals, legal translators, legal secretaries, law clerks, project

4 managers, and litigation support personnel;

5              b.       In-house counsel of a party to this arbitration with responsibility for

6 managing this litigation, and supporting personnel employed by the legal department of any party

7 to this arbitration, to whom disclosure is reasonably necessary for this litigation, provided that

8 such individuals have first been given a copy of this Protective Order and have executed the

9 Confidentiality Agreement attached hereto as Attachment A;

10              c.       The officers, directors, and employees of a party, to whom

11 disclosure is reasonably necessary for this litigation, provided that such individuals have first

12 been given a copy of this Protective Order and have executed the Confidentiality Agreement

13 attached hereto as Attachment A;

14              d.       DESIGNATED EXPERTS (and their necessary support personnel)

15 engaged by COUNSEL OF RECORD, subject to the provisions of section III herein, and

16 provided that such individuals have first been given a copy of this Protective Order and have

17 executed the Confidentiality Agreement attached hereto as Attachment A. The term

18 **"DESIGNATED EXPERTS"** shall mean independent outside expert witnesses, consulting

19 experts, or technical consultants (none of whom are employees or colleagues of a party) retained

20 by COUNSEL OF RECORD, who are deemed reasonably necessary to assist such counsel in

21 connection with this litigation;

22              e.       Independent litigation-support contractors engaged by the parties,

23 to the extent reasonably necessary to assist counsel in connection with this litigation, including

24 but not limited to: (i) legal translators retained to translate in connection with this action;

25

---

26 [1] COUNSEL OF RECORD shall mean attorneys who are not employees of a party to this action, but instead are outside counsel retained to represent or advise a party in this action, and who are

27 from the following law firms: Keker, Van Nest & Peters LLP; Donahue Fitzgerald LLP; Levine & Baker LLP, Goodwin Procter LLP, and Taylor & Patchen LLP.

28

1   (ii) independent stenographic reporters and videographers retained to record and transcribe

2   testimony in connection with this action; (iii) graphics or design service providers retained to

3   prepare demonstrative or other exhibits for deposition, hearing, or other arbitration proceedings in

4   the litigation; (iv) non-technical jury or trial consulting service providers, not including mock

5   jurors; (v) electronic discovery vendors retained to assist with the organization and management

6   of electronic discovery; and (vi) private investigators, provided that such persons or entities have

7   first been given a copy of this Protective Order and either have executed the Confidentiality

8   Agreement attached hereto as Attachment A, and a signed copy has been provided to the

9   designating party, or are contractually bound to adhere to the terms of this Protective Order;

10          f.      The author or previously authorized recipient of a document

11  containing the CONFIDENTIAL information, or another person who otherwise was previously

12  authorized to possess or know the CONFIDENTIAL information, provided that such individuals

13  have first been given a copy of this Protective Order and have executed the Confidentiality

14  Agreement attached hereto as Attachment A;

15          g.      Fact witnesses, only in accordance with the provisions of section V

16  herein; and

17          h.      The Arbitration Panel, their personnel, any other person (such as a

18  master or mediator) who serves in a judicial or quasi-judicial function, and professional

19  stenographic reporters engaged to transcribe testimony (under seal or with other suitable

20  precautions determined by the Arbitration Panel).

21  **C.      PROTECTED INFORMATION Designated CONFIDENTIAL – OUTSIDE
            COUNSEL ONLY**

22

23          1.      For purposes of this Protective Order, PROTECTED INFORMATION

    designated **CONFIDENTIAL – OUTSIDE COUNSEL ONLY** shall mean all DISCOVERY

24  MATERIAL that contains extremely sensitive CONFIDENTIAL information or items, disclosure

25  of which to another Party or Non-Party would create a substantial risk of serious harm that could

26  not be avoided by less restrictive means.

27

28

Case: 20-03050   Doc# 218   Filed: 03/30/21   Entered: 03/30/21 00:01:50   Page 14 of 95

1            2.      PROTECTED INFORMATION designated CONFIDENTIAL –

2 OUTSIDE COUNSEL ONLY and the contents therein shall be available only to:

3                    a.      COUNSEL OF RECORD and supporting personnel employed in

4 the law firm(s) of COUNSEL OF RECORD to whom it is reasonably necessary to disclose the

5 information, such as attorneys, paralegals, legal translators, legal secretaries, law clerks, project

6 managers, and litigation support personnel;

7                    b.      Up to three in-house counsel of a party with responsibility for

8 managing this litigation, and supporting personnel employed by the legal department of any party

9 to this arbitration, provided that such individuals have first been given a copy of this Protective

10 Order and have executed the Confidentiality Agreement attached hereto as Attachment A;

11                    c.      DESIGNATED EXPERTS (and their necessary support personnel)

12 engaged by COUNSEL OF RECORD, subject to the provisions of section III herein, and

13 provided that such individuals have first been given a copy of this Protective Order and have

14 executed the Confidentiality Agreement attached hereto as Attachment A;

15                    d.      Independent litigation-support contractors engaged by COUNSEL

16 OF RECORD, to the extent reasonably necessary to assist such counsel in connection with this

17 litigation, including but not limited to (i) legal translators retained to translate in connection with

18 this action; (ii) independent stenographic reporters and videographers retained to record and

19 transcribe testimony in connection with this action; (iii) graphics or design services retained by

20 counsel for purposes of preparing demonstrative or other exhibits for deposition, hearing, or other

21 arbitration proceedings in the actions; (iv) non-technical jury or trial consulting services not

22 including mock jurors; (v) electronic discovery vendors retained to assist with the organization

23 and management of electronic discovery; and (vi) private investigators, provided that such

24 persons or entities have first been given a copy of this Protective Order and have executed the

25 Confidentiality Agreement attached hereto as Attachment A, and a signed copy has been provided

26 to the designating party, or are contractually bound to adhere to the terms of this Protective Order;

27                    e.      The author or previously authorized recipient of the document

28 containing the CONFIDENTIAL – OUTSIDE COUNSEL ONLY information, or another person

Case: 20-03050    Doc# 218    Filed: 03/30/21    Entered: 03/30/21 00:01:50    Page 15 of 95

1   who otherwise was previously authorized to possess or know the CONFIDENTIAL – OUTSIDE

2   COUNSEL ONLY information, provided that such individuals have first been given a copy of

3   this Protective Order and have executed the Confidentiality Agreement attached hereto as

4   Attachment A;

5               f.      Fact witnesses only in accordance with the provisions of section V

6   herein; and

7               g.      The Arbitration Panel, their personnel, any other person (such as a

8   master or mediator) who serves in a judicial or quasi-judicial function, and professional

9   stenographic reporters engaged to transcribe testimony (under seal or with other suitable

10  precautions determined by the Arbitration Panel).

11          3.      In determining whether PROTECTED INFORMATION should be

12  designated as CONFIDENTIAL – OUTSIDE COUNSEL ONLY, each party or non-party agrees

13  to use such designation only in good faith.

14  **II.     USE OF PROTECTED INFORMATION IN RELATED COURT PROCEEDINGS**

15          In any court proceeding that is related to this arbitration (e.g., a petition to confirm or

16  vacate a final arbitration award), all parties shall file under seal, to the greatest extent possible

17  under that court's rules, all documents that contain PROTECTED INFORMATION designated

18  by another party or non-party in this arbitration.

19  **III.    DESIGNATED EXPERTS**

20          **A.      Purpose**

21          PROTECTED INFORMATION designated by a party or non-party and such copies of

22  PROTECTED INFORMATION as are reasonably necessary for maintaining, defending, or

23  evaluating this litigation may be furnished and disclosed to the receiving party's DESIGNATED

24  EXPERTS and their necessary support personnel, who are based in the United States.

25          **B.      No Disclosure Without Protective Order Subscription**

26          No disclosure of PROTECTED INFORMATION to a DESIGNATED EXPERT or their

27  necessary support personnel shall occur unless that person is located in the United States, unless

28  that person agrees not to transmit the information outside of the United States, and until that

SECOND AMENDED AGREED PROTECTIVE ORDER                                                6

1  person has signed the Confidentiality Agreement attached hereto as Attachment A, and a signed

2  copy has been provided to the designating party; and to the extent there has been an objection

3  under section III.D, that objection is resolved according to the procedures set forth below.

4     **C.**    **Prior Notice of Intent to Disclose PROTECTED INFORMATION to a DESIGNATED EXPERT**

5     A party desiring to disclose PROTECTED INFORMATION to a DESIGNATED

6  EXPERT[2] also shall give prior written notice of the intended disclosure by email to COUNSEL

7  OF RECORD, and the designating party shall have 10 business days after such notice is given to

8  object in writing to the disclosure. The party desiring to disclose PROTECTED INFORMATION

9  to a DESIGNATED EXPERT must provide the following information for each DESIGNATED

10  EXPERT: name, address, curriculum vitae, current employer, employment history for the past 10

11  years, and a listing of cases in which the witness has testified as an expert at trial, in arbitration,

12  or by deposition within the preceding 5 years. No PROTECTED INFORMATION shall be

13  disclosed to such a DESIGNATED EXPERT until after the expiration of the foregoing notice

14  period and resolution of any objection.

15     **D.**    **Objections to DESIGNATED EXPERTS**

16     A party objecting to disclosure of PROTECTED INFORMATION to a DESIGNATED

17  EXPERT shall state with particularity the ground(s) of the objection. The objecting party's

18  consent to the disclosure of PROTECTED INFORMATION to a DESIGNATED EXPERT shall

19  not be unreasonably withheld, and its objection must be based on that party's good faith belief

20  that disclosure of its PROTECTED INFORMATION to the DESIGNATED EXPERT is likely to

21  result in specific business or economic harm to that party.

22     **E.**    **Resolution of Objections to DESIGNATED EXPERTS**

23     If after consideration of the objection, the party desiring to disclose the PROTECTED

24  INFORMATION to a DESIGNATED EXPERT refuses to withdraw the DESIGNATED

25  EXPERT, that party shall provide notice to the objecting party. Thereafter, the objecting party

26

27  _____

28  [2] The term "DESIGNATED EXPERT" includes the expert's necessary support personnel.

1  shall move the Arbitration Panel, within 10 business days of receiving such notice, for a ruling on
2  its objection. A failure to file a motion within the 10 business day period, absent an agreement of
3  the parties to the contrary or for an extension of such 10 business day period, shall operate as an
4  approval of disclosure of the PROTECTED INFORMATION to the DESIGNATED EXPERT.
5  The parties agree to cooperate in good faith to shorten the timeframes set forth in this paragraph if
6  necessary to abide by any discovery or briefing schedules.

7       **F.    Burden for Objections to DESIGNATED EXPERTS**

8               1.    The objecting party or non-party shall have the burden of showing to the
9  Arbitration Panel that there is "good cause" for preventing the disclosure of its PROTECTED
10 INFORMATION to the DESIGNATED EXPERT. For purposes of this paragraph, "good cause"
11 includes, but is not limited to, a particularized showing that: (a) disclosure of the PROTECTED
12 INFORMATION is likely to create a reasonable risk of harm to the objecting party's business, or
13 (b) the challenged DESIGNATED EXPERT currently has, previously had, or is reasonably likely
14 in the future to develop, a relationship with a competitor of the designating party that would
15 create a reasonable risk of disclosure, whether intentional or not, of the PROTECTED
16 INFORMATION or any part of it to that competitor.

17              2.    A party who has not previously objected to disclosure of PROTECTED
18 INFORMATION to a DESIGNATED EXPERT or whose objection has been resolved with
19 respect to previously produced PROTECTED INFORMATION shall not be precluded from
20 raising an objection to a DESIGNATED EXPERT at a later time with respect to PROTECTED
21 INFORMATION that is (i) produced after the time for objecting to such a DESIGNATED
22 EXPERT has expired, or (ii) if the DESIGNATED EXPERT will review an additional category
23 of PROTECTED INFORMATION that could not have been reasonably anticipated or known by
24 the designating party when the time for objection had expired. Any such objection shall be
25 handled in accordance with the provisions set forth above.

26
27
28

Case: 20-03050    Doc# 218    Filed: 03/30/21    Entered: 03/30/21 00:01:50    Page 18 of
95

# IV. CHALLENGES TO CONFIDENTIALITY DESIGNATIONS

## A. Use of Reasonable Care and No Waiver

The parties shall use reasonable care when designating PROTECTED INFORMATION. Nothing in this Protective Order shall prevent a receiving party from designating information produced by another party or contending that any PROTECTED INFORMATION has been improperly designated. A party may at any time request that the designating party cancel or modify the PROTECTED INFORMATION designation with respect to any document or any information contained therein.

## B. Objections to Confidentiality Designations

A party shall not be obligated to challenge the propriety of a designation of any category of PROTECTED INFORMATION at the time of production, and a failure to do so shall not preclude a subsequent challenge thereto. In the event that a party objects to the designation of PROTECTED INFORMATION, such a challenge shall be in writing, shall be served on counsel for the designating party, and shall particularly identify the PROTECTED INFORMATION that the receiving party contends should be differently designated. The parties shall use their best efforts to resolve promptly and informally such disputes and shall advise one another of both the factual and legal basis for their respective positions. If an agreement cannot be reached, the party objecting to the designation shall request that the Arbitration Panel cancel or modify a designation. The burden of demonstrating the confidential nature of PROTECTED INFORMATION shall at all times be and remain on the designating party.

## C. Treatment of PROTECTED INFORMATION During Challenge to a Designation

Unless otherwise resolved by agreement between the parties, until a determination by the Arbitration Panel, the PROTECTED INFORMATION at issue shall be treated as having been properly designated and subject to the terms of this Protective Order.

Case: 20-03050    Doc# 218    Filed: 03/30/21    Entered: 03/30/21 00:01:50    Page 19 of 95

**V.    LIMITATIONS ON THE USE OF PROTECTED INFORMATION**

      **A.    Restrictions on Use of PROTECTED INFORMATION**

All PROTECTED INFORMATION shall be held in confidence by each person to whom it is disclosed, and such PROTECTED INFORMATION (including the existence of such PROTECTED INFORMATION) and the knowledge of the existence of such PROTECTED INFORMATION shall be used only for purposes of this litigation, shall not be used for any business purpose or in connection with any other legal or administrative proceeding, and shall not be disclosed to any person who is not entitled to receive such PROTECTED INFORMATION as herein provided.  All produced PROTECTED INFORMATION shall be carefully maintained so as to preclude access by persons who are not entitled to receive such PROTECTED INFORMATION.

      **B.**    Examinations and Arbitration Filings Concerning PROTECTED INFORMATION

Except as may be otherwise ordered by the Arbitration Panel, any person may be examined as a witness at depositions and hearing and may testify concerning all PROTECTED INFORMATION of which such person has prior personal knowledge.  Without in any way limiting the generality of the foregoing:

      1.    A present director, officer, and/or employee of a designating party or non-party may be examined and may testify concerning all PROTECTED INFORMATION which has been produced by that party or non-party;

      2.    A former director, officer, agent and/or employee of a designating party or non-party may be interviewed, examined and may testify concerning all PROTECTED INFORMATION of which he or she has personal knowledge, including any PROTECTED INFORMATION that refers to matters of which the witness has personal knowledge, which has been produced by that party or non-party and which pertains to the period or periods of his or her employment; and

      3.    Non-parties may be examined or testify concerning any PROTECTED INFORMATION of a designating party, which appears on its face (or from other documents or testimony) to have been received from or communicated to the non-party as a result of any

contact or relationship with the designating party or a representative of the designating party.
Any person other than the witness, his or her attorney(s), or any person qualified to receive
PROTECTED INFORMATION under this Protective Order shall be excluded from the portion of
the examination concerning such PROTECTED INFORMATION, unless the designating party
consents to persons other than qualified recipients being present at the examination. If the
witness is represented by an attorney who is not qualified under this Protective Order to receive
such PROTECTED INFORMATION, then prior to the examination, the attorney must provide a
signed agreement, in the form of Attachment A hereto, that he or she will comply with the terms
of this Protective Order and maintain the confidentiality of PROTECTED INFORMATION
disclosed during the course of the examination.

4.     Every fact witness shall be informed at the start of a deposition that he or
she may be shown documents designated as PROTECTED INFORMATION in this litigation,
and that such PROTECTED INFORMATION and the contents therein are being furnished to the
witness solely for use in this litigation. Every fact witness shall be shown a copy of this
Protective Order. No fact witness may retain any material designated as PROTECTED
INFORMATION except to the extent such PROTECTED INFORMATION was already in
possession of such fact witness prior to and independent of this litigation.

5.     Outside litigation attorneys for the parties to this Arbitration are hereby
authorized to be the persons who may retrieve confidential exhibits and/or other confidential
matters filed with the Arbitration Panel upon termination of this litigation without further order of
the Arbitration Panel, and are the persons to whom such confidential exhibits or other confidential
matters may be returned by JAMS, if they are not so retrieved.

6.     PROTECTED INFORMATION shall not be copied or otherwise produced
by a receiving party, except for transmission to qualified recipients, without the written
permission of the designating party, or, in the alternative, by further order of the Arbitration
Panel. Nothing herein shall, however, restrict a qualified recipient from making working copies,
abstracts, digests, and analyses of PROTECTED INFORMATION for use in connection with this
litigation, and such working copies, abstracts, digests, and analyses also shall be deemed

Case: 20-03050     Doc# 218     Filed: 03/30/21     Entered: 03/30/21 00:01:50     Page 21 of
95

1   PROTECTED INFORMATION under the terms of this Protective Order. Further, nothing herein
2   shall restrict a qualified recipient from converting or translating PROTECTED INFORMATION
3   into machine-readable form for incorporation into a data retrieval system used in connection with
4   this action, provided that access to that PROTECTED INFORMATION, in whatever form stored
5   or reproduced, shall be limited to qualified recipients.

6           7.      Testimony given at deposition may be designated as PROTECTED
7   INFORMATION by outside litigation counsel by making a statement orally to that effect on the
8   record at any time during the deposition. Within 15 business days of receipt of the final certified
9   transcript of any deposition, the designating party may request that the original and all copies of
10  the deposition transcript, in whole or in part, be marked with an appropriate confidentiality
11  designation. Confidentiality designations shall be made by notifying all parties in writing of the
12  specific pages and lines of the transcript that should be treated as PROTECTED
13  INFORMATION. Deposition transcripts shall be treated by default as HIGHLY
14  CONFIDENTIAL - ATTORNEYS' EYES ONLY until the expiration of the time to make a
15  confidentiality designation unless otherwise agreed to by the parties. Any portions so designated
16  shall thereafter be treated in accordance with the terms of this Protective Order. Objections to
17  confidentiality designations under this paragraph shall be governed by the procedure set forth in
18  section IV above.

19          **C.     Unauthorized Disclosure of PROTECTED INFORMATION**

20          If any party or non-party learns that, by inadvertence or otherwise, it has disclosed
21  PROTECTED INFORMATION to any person or in any circumstance not authorized under this
22  Protective Order, that party or non-party must immediately: (1) notify in writing the designating
23  party of the unauthorized disclosure(s); (2) use its best efforts to retrieve all copies of the
24  PROTECTED INFORMATION; (3) inform the person or persons to whom unauthorized
25  disclosures were made of all the terms of this Protective Order; and (4) request that such person
26  or persons execute the Confidentiality Agreement attached hereto as Attachment A.

27
28

**D. Violations**

If any party or non-party violates the limitations on the use of PROTECTED INFORMATION as described above, the party or non-party violating this Protective Order may be sanctioned as ordered by the Arbitration Panel. In the event motion practice is required to enforce the terms of this Protective Order, the prevailing party on such a motion may in the discretion of the Arbitration Panel be awarded reasonable costs, expenses, and fees, including reasonable fees for attorneys or other professionals, incurred in connection with the discovery of the violation and the preparation, filing, and arguing of the motion or any other proceedings resulting from the violation.

**VI. NON-PARTY USE OF THIS PROTECTIVE ORDER**

**A. Purpose**

A non-party producing DISCOVERY MATERIAL voluntarily or pursuant to a subpoena or a court order may designate such DISCOVERY MATERIAL as PROTECTED INFORMATION pursuant to the terms of this Protective Order.

**B. Non-Party Access**

A non-party's use of this Protective Order to protect its PROTECTED INFORMATION does not entitle that non-party access to the PROTECTED INFORMATION produced by any party or non-party in this case.

**VII. NO WAIVER OF PRIVILEGE AND CLAWBACK PROCEDURE**

**A. No Waiver**

Nothing in this Protective Order shall require production of information that a party or non-party contends is protected from disclosure by the attorney-client privilege, the work-product doctrine, the common-interest privilege, or any other privilege, doctrine, right, or immunity. For example, disclosures among Respondents' attorneys of work product or other communications relating to issues of common interest shall not affect or be deemed a waiver of any applicable privilege or protection from disclosure. The production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. This provision shall be

1   interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d) and

2   any similar state-law rules. For example, the mere production of privileged or work-product-

3   protected documents in this case as part of a larger production is not itself a waiver in this case or

4   any other federal or state proceeding. A party or non-party that asserts that it inadvertently

5   produced privileged or protected documents shall not be required to provide discovery on its

6   internal procedures for conducting privilege reviews prior to production, and it shall not be

7   required to demonstrate that such procedures were sufficiently rigorous.

8        **B.**   **Clawback Procedure**

9        A designating party or non-party may assert privilege or protection over produced

10   documents at any time by providing written notice of the assertion of privilege or protection.

11   When a producing party or non-party gives notice to the receiving party, or the receiving party

12   otherwise becomes aware that certain inadvertently produced material is subject to a claim of

13   privilege or other protection, the receiving party must either return the documents at issue or

14   destroy them. The producing party or non-party must preserve the information until the claim is

15   resolved. If such a motion is not filed within 10 business days, then the documents must be

16   destroyed or returned. In addition, information that contains privileged matter or attorney-work-

17   product shall be immediately returned if the receiving party finds that such information appears

18   on its face to have been inadvertently produced.

19   **VIII.**   **MISCELLANEOUS PROVISIONS**

20        **A.**   **Waiver**

21        Any of the notice requirements herein may be waived, in whole or in part, but only in

22   writing signed by an attorney for the party against whom such waiver will be effective.

23        **B.**   **Inadvertent or Unintentional Production of PROTECTED INFORMATION**

24        Inadvertent or unintentional production of documents or things containing PROTECTED

25   INFORMATION which are not designated as one or more categories of PROTECTED

26   INFORMATION at the time of production shall not be deemed a waiver, in whole or in part, of a

27   claim for confidential treatment. With respect to documents, the producing or designating party

28   or non-party shall immediately upon discovery notify the other parties of the error in writing and

1  provide replacement pages bearing the appropriate confidentiality legend. In the event of any
2  disclosure of PROTECTED INFORMATION other than in a manner authorized by this
3  Protective Order, including any unintentional or inadvertent disclosure, counsel for the party or
4  non-party responsible for the disclosure shall immediately notify opposing counsel of all of the
5  pertinent facts, and make every effort to further prevent unauthorized disclosure including,
6  retrieving all copies of the PROTECTED INFORMATION from the recipient(s) thereof, and
7  securing the agreement of the recipients not to further disseminate the PROTECTED
8  INFORMATION in any form. Compliance with the foregoing shall not prevent the designating
9  party from seeking further relief from the Arbitration Panel.

10  **C.      Testifying Experts**

11  Testifying experts shall not be subject to discovery of any draft reports that they may
12  prepare in this case, and any such draft reports, notes, outlines, or any other writings leading up to
13  an issued report(s) in this litigation are exempt from discovery. In addition, all communications
14  between counsel for a party and that party's testifying expert, and all materials generated by a
15  testifying expert with respect to that person's work, are exempt from discovery unless discovery
16  of those communications is necessary to identify facts, data, or assumptions relied upon by the
17  testifying expert in forming any opinions in this litigation and such information is not already
18  disclosed in the testifying expert's report.

19  **D.      Conclusion of Litigation**

20  1.       Within 60 business days after the entry of a final non-appealable judgment
21  or order that confirms, enforces, or vacates a final arbitration award rendered in this matter, or the
22  expiration of the deadline for any party to appeal any such final judgment or order, or the
23  complete settlement of all claims asserted against all parties in this action, each party shall, at the
24  option of the designating party, either return or destroy all physical objects and documents which
25  embody PROTECTED INFORMATION that it has received, and it shall destroy in whatever
26  form stored or reproduced, all other objects and documents, including but not limited to, email,
27  correspondence, memoranda, notes and other work product materials, which contain or refer to
28  any category of PROTECTED INFORMATION. All PROTECTED INFORMATION not

Case: 20-03050    Doc# 218    Filed: 03/30/21    Entered: 03/30/21 00:01:50    Page 25 of
95

1 embodied in physical objects and documents shall remain subject to this Protective Order.

2         2.     In the event that a party is dismissed before the entry of a final non-

3 appealable judgment or order, this same procedure shall apply to any PROTECTED

4 INFORMATION produced to the dismissed party.

5         3.     Notwithstanding this provision, outside litigation counsel are not required

6 to delete PROTECTED INFORMATION that may reside on their respective firm's electronic

7 back-up systems that are over-written in the normal course of business. Notwithstanding the

8 foregoing, outside litigation counsel shall be entitled to maintain an electronic copy, for archival

9 purposes only, of all pleadings, motions, and hearing briefs (including all supporting and

10 opposing papers and exhibits thereto), written-discovery requests and responses, deposition

11 transcripts (and exhibits thereto), hearing transcripts, and exhibits offered or introduced into

12 evidence at any hearing, and their attorney work product which refers or is related to any

13 PROTECTED INFORMATION.

14         4.     If the designating party requests that PROTECTED INFORMATION be

15 destroyed, the receiving party must provide a certificate of destruction to the designating party.

16     **E.**     **Subpoenas**

17     If at any time documents containing PROTECTED INFORMATION are subpoenaed by

18 any court, arbitral, administrative, or legislative body, or are otherwise requested in discovery, the

19 person to whom the subpoena or other request is directed shall immediately give written notice

20 thereof to every party or non-party who has produced such documents and to its counsel, and

21 shall provide each such party with an opportunity to object to the production of such documents.

22 If a producing party does not take steps to prevent disclosure of such documents within 10

23 business days of the date written notice is given, the party to whom the referenced subpoena is

24 directed may produce such documents in response thereto, but shall take all reasonable measures

25 to have such documents treated in accordance with terms of this Protective Order.

26     **F.**     **Post-Filing Communications**

27     No party shall be required to identify on their respective privilege log (1) any document or

28 communication dated on or after the filing of the arbitration, or (2) any communication that

Case: 20-03050    Doc# 218    Filed: 03/30/21    Entered: 03/30/21 00:01:50    Page 26 of 95

1   (a) the party exchanged with COUNSEL OF RECORD, and (b) relates to the litigation of this
2   arbitration or any related investigation.  The parties shall exchange their respective privilege
3   document logs at a time to be agreed upon by the parties following the production of documents.

4   **G.    Modification of Protections**

5   This Protective Order is entered without prejudice to the right of any party or non-party,
6   either by agreement with other parties to this action, or by applying to the Arbitration Panel if
7   agreement cannot be reached among parties, to extend additional protection, or to reduce or
8   rescind the restrictions of this Protective Order, when convenience or necessity requires.
9   Furthermore, without application to the Arbitration Panel, any party that is a beneficiary of the
10  protections of this Protective Order may enter a written agreement releasing any other party
11  hereto from one or more requirements of this Protective Order.

12  **H.    No Agreement Concerning Discoverability**

13  The identification or agreed upon treatment of certain types of DISCOVERY MATERIAL
14  does not reflect agreement by the parties that the disclosure of such categories of DISCOVERY
15  MATERIAL is required or appropriate in this action.  The parties reserve the right to argue that
16  any particular category of DISCOVERY MATERIAL should not be produced.

17  **I.    No Limitation on Legal Representation**

18  Nothing in this Protective Order shall preclude or impede outside litigation counsel's
19  ability to communicate with or advise their client in connection with this litigation based on such
20  counsel's review and evaluation of PROTECTED INFORMATION, provided however, that such
21  communications or advice shall not disclose or reveal the substance or content of any
22  PROTECTED INFORMATION other than as permitted under this Protective Order.

23  **J.    Agreement Upon Execution**

24  Each of the parties agrees to be bound by the terms of this Protective Order as of the date
25  counsel for such party executes this Protective Order, even if prior to entry of this order by the
26  Arbitration Panel.

27  **K.    Interpretation, Enforcement, and Continuing Jurisdiction**

28  The duly appointed JAMS Arbitration Panel is responsible for the interpretation and

Case: 20-03050   Doc# 218   Filed: 03/30/21   Entered: 03/30/21 00:01:50   Page 27 of
95

1    enforcement of this Protective Order. After termination of this litigation, the provisions of this

2    Protective Order shall continue to be binding except with respect to any DISCOVERY

3    MATERIAL that becomes a matter of public record. JAMS retains and shall have continuing

4    jurisdiction over the parties and recipients of the PROTECTED INFORMATION for enforcement

5    of the provision of this Protective Order following termination of this litigation. All disputes

6    concerning PROTECTED INFORMATION produced under the protection of this Protective

7    Order shall be resolved by the Arbitration Panel.

8    //

9    //

10    //

11    //

12    //

13    //

14    //

15    //

16    //

17    //

18    //

19    //

20    //

21    //

22    //

23    //

24    //

25    //

26    //

27    //

28    //

Dated: May 25, 2017

KEKER, VAN NEST, & PETERS LLP

By: _____

Attorneys for Claimant Google Inc.

Dated: June 7, 2017

GOODWIN PROCTER LLP

By: _____

Attorneys for Respondent Levandowski

Dated: ~~May~~ June 7 , 2017

DONAHUE FITZGERALD LLP

By: _____

Attorneys for Respondent Levandowski

Dated: May ___, 2017

LEVINE & BAKER LLP

By: _____

Attorneys for Respondent Ron

Dated: May ___, 2017

TAYLOR & PATCHEN LLP

By: _____

Attorneys for Respondent Ron

PURSUANT TO AGREEMENT, IT IS SO ORDERED.

Date: _____

_____

Case: 20-03050   Doc# 218   Filed: 03/30/21   Entered: 03/30/21 00:01:50   Page 29 of 95

Dated: May 25, 2017

KEKER, VAN NEST, & PETERS LLP

By: _____

Attorneys for Claimant Google Inc.

Dated: May ___, 2017

GOODWIN PROCTER LLP

By: _____

Attorneys for Respondent Levandowski

Dated: May ___, 2017

DONAHUE FITZGERALD LLP

By: _____

Attorneys for Respondent Levandowski

June 7, 2017
Dated: May ___, 2017

LEVINE & BAKER LLP

By: _____

Attorneys for Respondent Ron

Dated: ~~May~~ June 6, 2017

TAYLOR & PATCHEN LLP

By: _____

Attorneys for Respondent Ron

PURSUANT TO AGREEMENT, IT IS SO ORDERED.

Date: June 8, 2017

_____

SECOND AMENDED AGREED PROTECTIVE ORDER

19

## ATTACHMENT A TO THE PROTECTIVE ORDER

## CONFIDENTIALITY AGREEMENT

1.  My name is _____ .

2.  My address is _____ .

3.  My present employer is _____ .

4.  My present occupation or job description is _____ .

5.  I have been engaged as _____
    on behalf of _____
    in the preparation and conduct of litigation styled *Google Inc. v. Anthony Levandowski and Lior Ron*.

6.  I have received a copy of the Protective Order, dated _____ , 2017, and I have carefully read and understand its provisions. I agree to comply with and be bound by all the provisions of the Protective Order. I understand that I am to retain all copies of any documents designated as PROTECTED INFORMATION, or any similar designation, in a secure manner and in accordance with the terms of the Protective Order, and that all copies are to remain in my personal custody until I have completed my assigned duties, whereupon the copies and any writings prepared by me containing any information containing any PROTECTED INFORMATION are to be returned to counsel who provided me with such material.

7.  I will not divulge PROTECTED INFORMATION to persons other than those specifically authorized by the Protective Order, and I will not copy or use, except solely for the purpose of this action, any PROTECTED INFORMATION obtained pursuant to the Protective Order, except as provided in the Protective Order. I also agree to notify any stenographic or clerical personnel who are required to assist me of the terms of the Protective Order.

8.  In accordance with section III.C of the Protective Order (if applicable), I have attached to this Confidentiality Agreement my curriculum vitae and any other required information sufficient to identify my current employer and employment history for the past 10 years, and a listing of cases in which I have testified as an expert at trial, at an arbitration hearing, or by deposition within the preceding five years.

9.  I state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

By: _____

Executed on _____ , 20_____

# EXHIBIT 6

# FILED UNDER SEAL

# EXHIBIT 7

# FILED UNDER SEAL

# EXHIBIT 8

# FILED UNDER SEAL

# EXHIBIT 9

# FILED UNDER SEAL

# EXHIBIT 10

| | |
|---|---|
| **From:** | Bradford, David J. |
| **Sent:** | Tuesday, September 22, 2020 8:33 AM |
| **To:** | Vu, Hong-An; Schuman, Brett |
| **Cc:** | john.berry@mto.com; Debra Grassgreen; DL_Uber – AL Team; Miriam Manning |
| **Subject:** | Levandowski adversary complaint - Answer and settlement agreement -attorneys eyes only designation |
| **Attachments:** | UNREDACTED AEO Uber - Answer to Adversary Complaint.pdf; 2018 02 06 Waymo-Uber Settlement Agreement AEO.pdf |

Hong An,

Thank you for forwarding to us the rulings of the arbitration panel with respect to the provision of the Waymo-Uber settlement agreement to Mr. Levandowski.  As we understand the rulings, Mr. Levandowski was permitted to see the settlement agreement by reason of his agreeing to a confidentiality designation that precluded its use by him in other proceedings, which necessarily precludes his use of that agreement in this case.  To the extent that any of Mr. Levandowski's current pleadings are inconsistent with those limitations on use, Uber reserves all rights and defenses.   If you believe we have misunderstood the panel's rulings, please advise us.

 We believe that, in light of the panel's rulings, it is appropriate for us to provide you, pursuant to an attorneys eyes only designation, the redacted portions of the answer to the adversary complaint as well as to share the settlement agreement. We do not at this time agree to your sharing the redacted portions of the complaint or any part of the settlement agreement with Mr. Levandowski; because he is subject to a use restriction with respect to that settlement agreement, there is no basis for him to use the same in this litigation.

Pursuant to the foregoing and your request,  please find attached an unredacted amended answer to the adversary complaint and a copy of the Waymo-Uber settlement agreement which are both designated as Attorneys Eyes only, and which should not be shared with your client.

As you know, Uber is amenable to various stipulations that would lift use restrictions entered in other litigation and is willing to discuss the lifting of such a use restriction with respect to the settlement agreement as part of a more comprehensive and consistent resolution of that issue.

Thank you for your cooperation, David

Ps.  I have copied John Berry on this email so as to keep him apprised.

——————————————————————————————————————————————
————————————————

David J. Bradford

Jenner & Block LLP
353 N. Clark Street, Chicago, IL 60654-3456 | jenner.com
+1 312 923 2975  |  TEL
+1 847 721 9350  |  MOBILE
+1 312 527 0484  |  FAX
dbradford@jenner.com

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

——————————————————————————————————————————————
————————————————

# EXHIBIT 11

**KELLER BENVENUTTI KIM LLP**
TOBIAS S. KELLER (Cal. Bar No. 151445)
(tkeller@kbkllp.com)
DARA L. SILVEIRA (Cal. Bar No. 274923)
(dsilveira@kbkllp.com)
650 California Street, Suite 1900
San Francisco, California 94108
Telephone: (415) 364-6793
Facsimile: (650) 636-9251

BRETT M. SCHUMAN (SBN 189247)
bschuman@goodwinlaw.com
RACHEL M. WALSH (SBN 250568)
rwalsh@goodwinlaw.com
**GOODWIN PROCTER LLP**
Three Embarcadero Center
San Francisco, California 94111
Tel.: +1 415 733 6000
Fax.: +1 415 677 9041

HONG-AN VU (SBN 266268)
hvu@goodwinlaw.com
**GOODWIN PROCTER** LLP
601 S. Figueroa Street, 41st Flr.
Los Angeles, California 90017
Tel.: +1 213 426 2500
Fax: +1 213 623 1673

Attorneys for Plaintiff and Debtor and
Debtor in Possession Anthony S. Levandowski

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 20-30242 (HLB) |
| ANTHONY SCOTT LEVANDOWSKI, | Chapter 11 |
| Debtor. | |
| ANTHONY LEVANDOWSKI, an individual, | **Adv. Pro. No. 20-03050 (HLB)** |
| Plaintiff, | **PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO UBER TECHNOLOGIES, INC.** |
| v. | |
| UBER TECHNOLOGIES, INC. | |
| Defendant. | |

PROPOUNDING PARTY:   Plaintiff Anthony Levandowski

RESPONDING PARTY:    Defendant Uber Technologies, Inc.

SET NO.:             One

Pursuant to Rules 7026 and 7034 of the Federal Rules of Bankruptcy Procedure, and Rules 26 and 34 of the Federal Rules of Civil Procedure and the parties' Rule 26 Report and Discovery Plan (ECF No. 41-1), Plaintiff Anthony Levandowski ("Plaintiff") hereby requests that Defendant Uber Technologies, Inc. ("Defendant") respond to Plaintiff's First Set of Requests for Production of Documents ("Requests") within thirty (30) days from the date of service of the Requests. Plaintiff further requests that Defendant produce and/or make available for inspection copies of the documents and things requested below at the offices of Goodwin Procter LLP, Three Embarcadero Center, San Francisco, California 94111, or through acceptable electronic means, within thirty (30), or such other time as the parties agree or the Court orders.

## DEFINITIONS

1.      "You," "your," "Uber," or "Defendant" refers to Defendant Uber Technologies, Inc. and all others acting or purporting to act on its behalf, including (a) any of their predecessors and successors in interest, their present and former officers, directors, employees, agents, representatives, accountants, investigators, consultants, attorneys, and any affiliated entities that were in existence during the applicable period of time covered by these requests; and (b) any other Person who is, or was, acting on its behalf or under its control.

2.      "Google" refers to Google Inc. and all others acting or purporting to act on its behalf, including (a) any of their predecessors and successors in interest, their present and former officers, directors, employees, agents, representatives, accountants, investigators, consultants, attorneys, and any affiliated entities that were in existence during the applicable period of time covered by these requests; and (b) any other Person who is, or was, acting on its behalf or under its control.

3.      "Otto" refers to OttoMotto LLC and all others acting or purporting to act on their behalf, including (a) any of their predecessors and successors in interest, their present and former

Goodwin Procter LLP
Attorneys at Law
Silicon Valley

REQUESTS FOR PRODUCTION OF DOCUMENTS (SET ONE)

officers, directors, employees, agents, representatives, accountants, investigators, consultants, attorneys, and any affiliated entities that were in existence during the applicable period of time covered by these requests; and (b) any other Person who is, or was, acting on its behalf or under their control.

4. "Otto Trucking" refers to Otto Trucking LLC and all others acting or purporting to act on its behalf, including (a) any of their predecessors and successors in interest, their present and former officers, directors, employees, agents, representatives, accountants, investigators, consultants, attorneys, and any affiliated entities that were in existence during the applicable period of time covered by these requests; and (b) any other Person who is, or was, acting on its behalf or under its control.

5. "Waymo" refers to Waymo LLC and all others acting or purporting to act on its behalf, including (a) any of their predecessors and successors in interest, their present and former officers, directors, employees, agents, representatives, accountants, investigators, consultants, attorneys, and any affiliated entities that were in existence during the applicable period of time covered by these requests; and (b) any other Person who is, or was, acting on its behalf or under its control.

6. "Waymo Settlement" refers to the Settlement Agreement dated February 8, 2018 entered into between Waymo, Google, and Alphabet Inc., on the one hand, and Uber on the other hand.

7. "Tyto" refers to Tyto Lidar LLC, formerly known as Odin Wave LLC, and all others acting or purporting to act on its behalf, including (a) any of their predecessors and successors in interest, their present and former officers, directors, employees, agents, representatives, accountants, investigators, consultants, attorneys, and any affiliated entities that were in existence during the applicable period of time covered by these requests; and (b) any other Person who is, or was, acting on its behalf or under its control.

8. "Stroz" refers to Stroz Friedberg, LLC and all others acting or purporting to act on its behalf, including (a) any of their predecessors and successors in interest, their present and former officers, directors, employees, agents, representatives, accountants, investigators,

consultants, attorneys, and any affiliated entities that were in existence during the applicable period of time covered by these requests; and (b) any other Person who is, or was, acting on its behalf or under its control.

9.     "Due diligence" refers to any investigation conducted by Stroz relating to the Indemnification Agreement or Uber's acquisition of Otto or Otto Trucking.

10.     "Plaintiff" or "Levandowski" refers to Anthony Scott Levandowski.

11.     "Indemnification Agreement" refers to the Indemnification Agreement between Uber and Levandowski, dated April 11, 2016.

12.     "Google Arbitration" refers to the prior disputes entitled, *Google LLC v. Anthony Scott Levandowski and Lior Ron*, JAMS Arbitration Case Reference No. 1100086069 and *Google v. Levandowski*, JAMS Arbitration Case Reference No, 1100086032.

13.     "Waymo Litigation" refers to the prior dispute entitled, *Waymo LLC v. Uber Technologies, Inc., et al*.

14.     "Prior Litigation" refers to the Google Arbitration and Waymo Litigation collectively.

15.     "Document(s)" is/are intended to be comprehensive and shall mean every original (or an identical copy if the original is unavailable), and every copy which differs in any way from the original, of every writing, recording (e.g., photograph, videotape, audiotape), or other tangible expression, whether handwritten typed, drawn, sketched, printed, or recorded by any other physical, mechanical, electronic, or electrical means whatsoever, and shall include, without limitation:

    a.     Any agreement, personnel record, personnel file or portion thereof, letter, report, record, list, summary, memorandum, note, study, chart, analysis, graph, data sheet, statistical record, correspondence, bill, check, invoice, contract, agreement, prescription, notebook, diary, personal website, drawing, blueprint, diagram, photograph, form, book, telegram, publication, newspaper clipping, advertisement, manager's report, management report, activity report, incident report and all other writings of any kind or character including drafts and copies of the foregoing, as

Goodwin Procter LLP
Attorneys at Law
Silicon Valley

4

well as reproduction or other facsimiles thereof by whatever means made, and all copies which are not identical for any reason, including but not limited to any marking, note or modification.

    b.  Any data or information that is, has been, or is suitable to be kept, located or stored in, with or in the vicinity of a computer, computer records, or of computer-related instrumentalities, whether kept, located or stored on print-out paper or other paper, on CD-ROM, on floppy discs, on the software on or in the memory banks of the computer itself, on the world wide web, or elsewhere.

    c.  Any photographs, videotapes, websites, cassette tapes, films, moving pictures, computer tapes, drawings, raw data, diagrams, surveys, sketches, computer-generated images, oscillographs, or any other matter however produced or reproduced, including any copies thereof.

16.   "Thing" means any physical specimen or other tangible item, other than a Document.

17.   "Communication" shall mean any exchange or transfer of information in the form of facts, ideas, inquiries, or otherwise, whether written, oral, or in any form.

18.   "Date" shall mean the exact day, month, and year, if ascertainable; if not, the best approximation including relationships to other events.

19.   "Date" shall mean the exact day, month, and year, if ascertainable; if not, the best approximation including relationships to other events.

20.   "Concerning," "Concern," "Relating to," "Relate to," and "Related to," and any variation of these terms, shall mean concerning, relating to, involving, discussing, regarding, pertaining to, mentioning, commenting on, connected with, describing, depicting, demonstrating, analyzing, explaining, summarizing, showing, evidencing, reflecting, identifying, setting forth, dealing with, embodying, comprising, consisting of, containing, constituting, supporting, refuting, contradicting, resulting from, recording, or in any way relevant to a particular subject, directly or indirectly, in whole or in part.

21.   "And" and "or" shall be construed conjunctively and disjunctively to mean either

"and" or "or," whichever shall be the more inclusive in the context in which it is used.

22.     "Relating to," "related," "in relation to," "regarding," and "concerning" shall mean directly or indirectly mentioning, describing, pertaining to, relating to, concerning, connecting with, or reflecting upon a stated subject matter.

23.     "All" and "each" when used separately shall be construed as "all and each."

## INSTRUCTIONS

1.     The responses to these requests shall be in accordance with Federal Rule of Civil Procedure 34 and the parties Rule 26 Report and Discovery Plan.

2.     The Requests for Production shall be deemed to impose a continuing duty upon Defendant to properly serve supplemented and/or amended responses as Defendant acquire additional knowledge and/or information relating to these Requests for Production.

3.     These Requests for Production are intended to cover any and all documents and things in Defendant's global charge and/or possession, as well as those subject to Defendant's custody and/or control, whether in Defendant's possession, at the office of Defendant's attorneys, and/or at any other place and/or at the possession of any other person and/or entity subject to Defendant's control.

4.     All Documents are to be produced as kept in the usual course of business, or as organized and labeled to correspond to the specific requests set forth below, or as otherwise agreed in writing by the Parties.

5.     All drafts of a responsive Document must be produced, as well as all non-identical copies of the Document.  Any comment, notation, or other marking shall be sufficient to distinguish Documents that are otherwise similar in appearance and to make them separate Documents for purposes of Defendant's response.  Any preliminary form, intermediate form, superseded version, or amendment of any Document is to be considered a separate Document.

6.     The file folder or other container in which a Document is kept is deemed to be an integral part of the Document and shall be produced with the Document.

7.     Each paragraph and subparagraph of these instructions and the requests for production, as well as the definitions herein, shall be construed independently, and no paragraph

1  or subparagraph or definition shall limit the scope of any other.

2      8.     In responding to these requests, Defendant is requested to state which documents

3  and things she will produce for inspection and copying.  If Defendant objects to a particular

4  request, Defendant is requested to state the precise grounds upon which its objections rest.

5      9.     As agreed in the Rule 26 Report and Discovery Plan, privilege logs will not be

6  required at this time, but Plaintiff reserves the right to request that the parties mutually provide

7  privilege logs on a given subject matter as necessary. These requests shall be deemed to be

8  continuing in accordance with Federal Rule of Civil Procedure 26(e), so that Defendant is

9  required to supplement its response and production if Defendant comes into the possession,

10  custody, or control of additional responsive Documents between the time of initial production and

11  the time of trial.

12  **REQUESTS FOR PRODUCTION OF DOCUMENTS**

13  **REQUEST FOR PRODUCTION OF DOCUMENTS NO. 1:**

14  All documents, things, and communications you intend to rely on to support your

15  counterclaims or defenses.

16  **REQUEST FOR PRODUCTION OF DOCUMENTS NO. 2:**

17  All documents and communications exchanged between You or any Person acting on

18  Your behalf, on the one hand, and Waymo, Google, Alphabet Inc., or any Person acting on behalf

19  of any of these entities, on the other, regarding Waymo Settlement, including, drafts of that

20  settlement agreement, its terms, performance under the settlement agreement, any term sheets

21  exchanged, and offers made as part of settlement negotiations.

22  **REQUEST FOR PRODUCTION OF DOCUMENTS NO. 3:**

23  All documents and communications relating to Uber's knowledge that Levandowski was

24  asserting his Fifth Amendment Right not to testify in the Google Arbitration, including

25  communications between Uber or its counsel on the one hand, and Levandowski or his counsel on

26  the other, and communications between Uber and its own counsel regarding Levandowski's Fifth

27  Amendment assertion.

28

GOODWIN PROCTER LLP
ATTORNEYS AT LAW
SILICON VALLEY

7

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 4:**

All documents and communications relating to Levandowski's role in Tyto, including any documents or communications relating to Uber's allegation that he failed to disclose any interest or conduct related to Tyto.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 5:**

All documents and communications between Uber and Tyto prior to Otto's acquisition of Tyto, including any investigation conducted by Uber or Tyto, its owners or employees, or its products.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 6:**

All documents and communications relating to Otto's acquisition of Tyto, including all communications or documents referring or relating to Uber's approval for that transaction.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 7:**

All documents and communications relating to any Post-Signing Specified Bad Act, as defined in Exhibit A of the Indemnification Agreement, Uber alleges was committed by Levandowski, including all communications or documents reflecting when Uber first became aware of any alleged Post-Signing Specified Bad Act.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 8:**

All documents and communications relating to the due diligence by Stroz conducted on behalf of Uber relating to the Otto acquisition transaction, including all communications between Uber and Stroz regarding the due diligence by Stroz, all interim reports delivered by Stroz to Uber, and any final reports delivered by Stroz to Uber.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 9:**

All documents and communications regarding Uber's settlement offers made to Waymo and/or Google as related to the Waymo Litigation settlement agreement, the Google Arbitration, or any global settlement of issues and disputes between Uber, Google, Waymo, and Anthony Levandowski.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 10:**

GOODWIN PROCTER LLP
ATTORNEYS AT LAW
SILICON VALLEY

All documents and communications regarding Uber's negotiations with Waymo and/or Google regarding Levandowski.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 11:**

All documents and communications regarding any and all agreements or understandings between Lior Ron and Uber relating to any settlement with Google, including any settlement reached with Google or any written agreements between Lior Ron and Uber regarding any settlement with Google.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 12:**

All documents and communications regarding the Waymo Settlement.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 13:**

All documents and communications regarding Uber's performance of its obligations in the Waymo Settlement.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 14:**

All documents and communications relating to Uber's purported rescission of the Indemnification Agreement with respect to any other Diligenced Employee, as defined in the Indemnification Agreement.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 15:**

All documents and communications relating to the negotiation and execution of the Indemnification Agreement.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 16:**

All documents and communications related to Uber's knowledge of any purported Pre-Signing Bad Acts, as defined in Section 1 of the Indemnification Agreement.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 17:**

All documents and communications related to any facts or circumstances Uber claims were not disclosed by Levandowski to Stroz during Stroz's investigation.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 18:**

All Uber board presentations, meeting summaries or resolutions relating or referring to any of the events at issue in this action and in the Prior Litigation, including, but not limited to, all

GOODWIN PROCTER LLP
ATTORNEYS AT LAW
SILICON VALLEY

Uber board presentations, meeting summaries or resolutions relating to the 2016 acquisition of Otto, or Tyto/Odin Wave, the Waymo Litigation, the Google Arbitration, Levandowski's termination from Uber, Levandowski's Plea Agreement, the Indemnification Agreement and its provisions, and/or Stroz and its report.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 19:**

All documents and communications related to Uber's knowledge, belief, or suspicion of any purported fraud Uber alleges induced it to enter into the Indemnification Agreement, or information that otherwise would have put Uber or its agents on notice of any such purported fraud.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 20:**

All documents and communications relating to any alleged fraud Uber alleges induced it to enter into the Indemnification Agreement, including all communications or documents reflecting when Uber first became aware of any alleged fraud.

Dated: October 13, 2020

Respectfully submitted,

By: _/s/ Brett Schuman_
Brett M. Schuman (SBN 189247)
*bschuman@goodwinlaw.com*
Rachel M. Walsh (SBN 250568)
*rwalsh@goodwinlaw.com*
**GOODWIN PROCTER LLP**
Three Embarcadero Center
San Francisco, California 94111
Tel.: +1 415 733 6000
Fax.: +1 415 677 9041

Hong-An Vu (SBN 266268)
*HVu@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 S. Figueroa Street, 41st Flr.
Los Angeles, California 90017
Tel.: +1 213 426 2500
Fax: +1 213 623 1673

TOBIAS S. KELLER
(*tkeller@kbkllp.com*)
DARA L. SILVEIRA

GOODWIN PROCTER LLP
ATTORNEYS AT LAW
SILICON VALLEY

10

1                                     (*dsilveira@kbkllp.com*)
650 California Street, Suite 1900

2                                     San Francisco, California  94108

3

4                                     Attorneys for Plaintiff and Debtor and Debtor
In Possession Anthony Levandowski

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Goodwin Procter LLP
Attorneys at Law
Silicon Valley

11

REQUESTS FOR PRODUCTION OF DOCUMENTS (SET ONE)

1

**PROOF OF SERVICE**

2
      I am employed in the County of Los Angeles, State of California.  I am over the age of 18

3
and not a party to the within action.  My business address is:  601 South Figueroa Street, Floor
41, Los Angeles, CA 90017 .

4
      On **October 23, 2020**, I served the following documents by placing a true copy thereof in a
sealed envelope(s) on the persons below as follows:

5

6
**PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
TO UBER TECHNOLOGIES, INC.**

7
David J. Bradford                                                Counsel for: *Uber Technologies, Inc.*
Terri L. Mascherin                                                               Tel.: (312) 222-9350

8
Katharine R. Ciliberti,                                                          Fax: (312) 527-0484
Jenner & Block, LLP                                                        *dbradford@jenner.com*

9
353 N. Clark Street                                                     *TMascherin@jenner.com*
Chicago, IL 60654-3456                                                  *KCiliberti@jenner.com*

10

11
Debra I. Grassgreen                                            Counsel for: *Uber Technologies, Inc.*
John William Lucas                                                              Tel.: (415) 263-7000

12
Miriam Manning                                                                  Fax: (415) 263-7010
Pachulski, Stang, Ziehl, and Jones LLP                               *dgrassgreen@pszjlaw.com*

13
150 California St. 15th Fl.                                                  *jlucas@pszjlaw.com*
San Francisco, CA 94111-4500                                          *mmanning@pszjlaw.com*

14

15
John W. Berry                                                       Counsel for: *Google, LLC*
Seth Goldman                                                                    Tel.: (213) 683-9571

16
Alexander S. Gorin
Munger, Tolles and Olson, LLP                                             *john.berry@mto.com*

17
350 S. Grand Ave., 50th Fl.                                               *seth.goldman@mto.com*
Los Angeles, CA 90071                                                     *alex.gorin@mto.com*

18

19
Thomas E. Gorman                                                   Counsel for: *Google, LLC*
Keker, Van Nest & Peters LLP                                                 Tel.: (415) 391-5400

20
633 Battery St.
San Francisco, CA 94111                                                    *tgorman@keker.com*

21

22

23
            ☐      (MAIL). I placed the envelope for collection and mailing, following our
                   ordinary business practices.  I am readily familiar with this firm's practice for

24
                   collecting and processing correspondence for mailing.  On the same day that
                   correspondence is placed for collection and mailing, it is deposited in the ordinary

25
                   course of business with the United States Postal Service, in a sealed envelope with
                   postage fully prepaid.  I am a resident or employed in the county where the mailing

26
                   occurred.  The envelope or package was placed in the mail at San Francisco,
                   California.

27

28

Goodwin Procter LLP
Attorneys at Law
Silicon Valley

REQUESTS FOR PRODUCTION OF DOCUMENTS (SET ONE)

1    ☐       (OVERNIGHT DELIVERY). I deposited in a box or other facility
2           regularly maintained by FedEx, an express service carrier, or delivered to a courier
          or driver authorized by said express service carrier to receive documents,
3           a true copy of the foregoing document in sealed envelopes or packages designated
          by the express service carrier, addressed as stated above, with fees for overnight
          delivery paid or provided for.

4    **X**       **(E-MAIL or ELECTRONIC TRANSMISSION).** Based on a court order
5           or an agreement of the parties to accept service by e-mail or electronic
          transmission, I caused the documents to be sent to the persons at the e-mail
6           addresses listed. I did not receive, within a reasonable time after the transmission,
          any electronic message or other indication that the transmission was unsuccessful.

7

8      I declare under penalty of perjury that I am employed in the office of a member of the
bar of this Court at whose direction this service was made and that the foregoing is true and
correct.

9      Executed on **October 23, 2020**, at Los Angeles, California.

10

11                Lupe Parra                    */s/ Lupe Parra*
             (Type or print name)                    (Signature)

Case: 20-03050    Doc# 218    Filed: 03/30/21    Entered: 03/30/21 00:01:50    Page 52 of 95

# EXHIBIT 12

Debra I. Grassgreen (CA Bar No. 169978)
Miriam Manning (CA Bar No. 178584)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Telephone: (415) 263-7000
Facsimile: (415) 263-7010
E-mail:    dgrassgreen@pszjlaw.com
           mmanning@pszjlaw.com

David J. Bradford (admitted *pro hac vice*)
Terri L. Mascherin (admitted *pro hac vice*)
Catherine Steege (admitted *pro hac vice*)
Katharine R. Ciliberti (admitted *pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
Telephone: (312) 222-9350
E-mail:    dbradford@jenner.com
           csteege@jenner.com
           tmascherin@jenner.com
           kciliberti@jenner.com

*Counsel for Uber Technologies, Inc.*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>ANTHONY SCOTT LEVANDOWSKI,<br><br>Debtor. | Bankruptcy Case<br>No. 20-30242 (HLB)<br>Chapter 11<br><br>**Adv. Pro. No. 20-03050 (HLB)** |
| ANTHONY LEVANDOWSKI, an individual,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.<br><br>Defendant. | **DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |

**DEFENDANT'S RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS (SET ONE)**

1     PROPOUNDING PARTY:     PLAINTIFF, Anthony Levandowski

2     RESPONDING PARTY:     DEFENDANT, Uber Technologies, Inc.

3     SET NO.:     ONE

4     Defendant Uber Technologies, Inc. (hereinafter "Uber" or "Defendant") by and through its

5 undersigned counsel, hereby responds to plaintiff Anthony Levandowski's (hereinafter "Plaintiff" or

6 "Levandowski") First Set of Requests for Production of Documents ("Requests for Production") as

7 follows:

8 **PRELIMINARY STATEMENT**

9     Uber has not completed its investigation, discovery, or preparation for trial in this action.

10 Accordingly, all Responses below are based only upon such information and documents as are

11 presently available and specifically known to Uber. All Responses to the Requests for Production are

12 provided without prejudice to Uber's rights: (a) to produce documents, evidence of any subsequently

13 discovered fact or facts, or analyses not yet obtained or completed; (b) to otherwise assert factual

14 and legal contentions as additional facts are ascertained, analyses are made, and legal research is

15 completed; and (c) to amend or withdraw any Responses accordingly.

16     Uber makes no implied admissions regarding the contents of the Responses below. That Uber

17 has responded or objected to a Request for Production in whole or in part should not be taken as an

18 admission by Uber as to the existence of any facts stated or assumed by the Requests for Production,

19 that such Response or objection constitutes evidence admissible against Uber, or that Uber agrees to

20 the relevance or admissibility of any documents or information produced in response to any

21 Requests for Production.

22 **GENERAL OBJECTIONS**

23     Uber's general objections to Plaintiff's Requests for Production are set forth below. To avoid

24 the necessity of restating in full each objection, these General Objections, as well as the limitations

25 and restrictions noted in the Preliminary Statement above, are incorporated by reference into Uber's

26 Response to the Requests for Production as if fully set forth therein.

27

28

The assertion of additional specific objections to the Requests for Production shall not be construed as waiving any general objection. Furthermore, neither the general objections to Plaintiff's Requests for Production nor the assertion of additional specific objections to the Request shall waive Uber's right to challenge the relevance, materiality, and admissibility of the information provided or to object to the use of such information in any subsequent proceeding or hearing in this action.

1. Uber objects to each instruction, definition, and document request to the extent that it purports to impose any requirements on Uber beyond or inconsistent with the Federal Rules of Civil Procedure, the Local Rules of the Northern District of California, the Federal Rules of Bankruptcy Procedures, the Local Bankruptcy Rules of the Northern District of California, or any applicable rules, statutes, or common law. Uber is responding to the Requests for Production based on information maintained in the ordinary course of business and to the extent required by the Federal Rules of Civil Procedure, the Local Rules of the Northern District of California, the Federal Rules of Bankruptcy, the Local Bankruptcy Rules of the Northern District of California, and any other applicable rules, statutes, or common law.

2. Uber objects to the Requests for Production to the extent they seek material protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege, doctrine, or exemption. The inadvertent production of any privileged information shall not be deemed to be a waiver of any applicable privilege with respect to such information or any other information, or the subject matter thereof.

3. Uber objects to the Requests for Production to the extent they seek material that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence of this action. By responding to the Requests for Production, Uber does not concede that any such information or materials are admissible in evidence or relevant to issues in this action. Uber reserves any and all objections to the use or admission of any information, materials or documents contained, identified or produced in response to the Requests for Production.

4. Uber does not, by responding to the Requests for Production, accept or agree with any descriptions or assumptions contained therein.

5.      Uber objects to the Requests for Production to the extent they seek documents or information that is more readily or more accessible to Plaintiff from Plaintiff's own files, or that can be obtained from other sources in a manner that is less burdensome, more convenient, and/or less expensive.    Responding to such requests would be oppressive, unduly burdensome, and unnecessarily expensive.

6.      Uber objects to the Requests for Production to the extent they seek materials that Uber already produced in connection with either the matter of *Google LLC v. Anthony Scott Levandowski and Lior Ron*, JAMS Arbitration Case Reference No. 1100086069, and *Google v. Levandowski*, JAMS Arbitration Case Reference No. 1100086032, or the matter of *Waymo LLC v. Uber Technologies, Inc.*, Case No. 3:17-cv-00939-WHA (N.D. Cal.).

7.      Uber objects to the Requests for Production to the extent they seek materials not in Uber's possession, custody, or control.

8.      Uber objects to the Requests for Production to the extent they are ambiguous, vague, cumulative, or duplicative of other requests.

9.      Uber is responding to Plaintiff's Requests for Production as Uber reasonably interprets and understands the language of the requests. If Plaintiff subsequently asserts an interpretation of the Requests for Production that differs from Uber's reasonable understanding, Uber reserves its right to supplement the Response and/or objections herein.

10.      Uber's Response to Plaintiff's  Requests for Production shall not be construed in any way as an admission that any definition provided by Plaintiff or any assertion made is either factually correct or legally binding upon Uber, or a waiver of any of Uber's objections, including but not limited to objections regarding privilege, confidentiality, and discoverability.

11.      Uber incorporates by reference every general objection set forth above into each specific response set forth below. A specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response does not waive any general objection to that request. Moreover, Uber does not waive its right to amend its responses.

**DEFENDANT'S RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS (SET ONE)**
DOCS_SF:105577.1 85647\001

1    12. Uber objects to the definition of the terms "You" and "your" in Definition 1 as overly

2 broad and unduly burdensome because it seeks to require Uber to search files maintained by "all

3 others acting or purporting to act on its behalf," including "accountants, investigators, consultants,

4 [and] attorneys," even though (1) such entities and persons are not parties to this action, and (2) such

5 files may not be considered to be within the possession, custody, or control of Uber.

6    13. Uber objects to the definition of "Document" in Definition 15 of the Plaintiff's

7 Requests for Production as overly broad and unduly burdensome, especially to the extent such

8 definition purports to impose on Uber an obligation to search for and produce all of the kinds of

9 information and documents identified in the definition, without regard to whether such information

10 or documents are within Uber's possession, custody, or control, or whether such information or

11 documents can be located or searched without undue burden or expense.

12    14. Uber objects to the definition of "Communication" in Definition 17 of the Plaintiff's

13 Requests for Production as overly broad and unduly burdensome, especially to the extent such

14 definition implies that Uber somehow should be able to produce oral communications that were

15 never reflected in any document or writing.

16 **<u>RESPONSES</u>**

17 **<u>REQUEST FOR PRODUCTION OF DOCUMENTS NO. 1:</u>**

18 All documents, things, and communications you intend to rely on to support your

19 counterclaims or defenses.

20 **<u>RESPONSE:</u>** Uber objects to this Request on the basis that it is premature, as Uber has

21 not completed its investigation or discovery in this case. Uber further objects that the Request is

22 overly broad and unduly burdensome, as it seeks "*all* documents, things, and communications" that

23 Uber intends to rely on in support of its counterclaims or defenses" (emphasis added). Uber further

24 objects to this Request to the extent it seeks information protected by the attorney-client privilege,

25 attorney work-product doctrine or any other applicable privilege or exemption.

26 Subject to and without waiving the foregoing objections or its General Objections, Uber

27 states that it will produce and/or has already produced the relevant, non-privileged documents

28

responsive to the Request that are within Uber's possession, custody, or control. By its production, Uber does not waive any right to modify the materials it may rely on to support its counterclaims or defenses.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 2:**

All documents and communications exchanged between You or any Person acting on Your behalf, on the one hand, and Waymo, Google, Alphabet Inc., or any Person acting on behalf of any of these entities, on the other, regarding Waymo Settlement, including, drafts of that settlement agreement, its terms, performance under the settlement agreement, any term sheets exchanged, and offers made as part of settlement negotiations.

**RESPONSE:** Uber objects on the basis that this Request is not reasonably calculated to lead to the discovery of admissible evidence, as Federal Rule of Evidence 408 bars admission of the requested materials. Uber further objects that the Request is overly broad and unduly burdensome, as it seeks "*all* documents and communications" (emphasis added). Uber further objects that this Request seeks documents that are not within Uber's possession, custody, or control. Uber further objects to this Request to the extent it seeks information protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege or exemption.

Subject to and without waiving the foregoing objections or its General Objections, Uber states that it will produce and/or has already produced the relevant, non-privileged documents responsive to the Request that are within Uber's possession, custody, or control.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 3:**

All documents and communications relating to Uber's knowledge that Levandowski was asserting his Fifth Amendment Right not to testify in the Google Arbitration, including communications between Uber or its counsel on the one hand, and Levandowski or his counsel on the other, and communications between Uber and its own counsel regarding Levandowski's Fifth Amendment assertion.

**RESPONSE:** Uber objects to this Request on the basis that it seeks information protected by the attorney-client privilege and the attorney work-product doctrine to the extent it seeks

**DEFENDANT'S RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS (SET ONE)**

communications between Uber and its own counsel regarding Mr. Levandowski's assertion of his Fifth Amendment Right in connection with ongoing litigation. Uber will not produce such materials.

Uber further objects that the Request is overly broad and unduly burdensome, as it seeks "*all* documents and communications" (emphasis added).

Uber also objects to this Request as unduly burdensome to the extent it seeks materials that are already in Plaintiff's possession and/or materials that can be obtained from other sources in a manner that is less burdensome, more convenient, and/or less expensive. Upon information and belief, Levandowski and his current counsel already have in their possession the relevant, non-privileged communications responsive to this Request. On these bases, Uber will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 4:**

All documents and communications relating to Levandowski's role in Tyto, including any documents or communications relating to Uber's allegation that he failed to disclose any interest or conduct related to Tyto.

**RESPONSE:** Uber objects to this Request because it is overly broad and unduly burdensome, as it seeks "*all* documents and communications" (emphasis added). Uber further objects that this Request seeks documents and communications that are not in its possession, custody, or control. Uber further objects to this Request to the extent it seeks information protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege or exemption. Uber also objects to this Request as unduly burdensome to the extent it seeks materials that are already in Plaintiff's possession.

Uber further objects that, upon information and belief, documents responsive to this Request were produced in either the Google Arbitration or the Waymo Litigation, or both, and the Parties agreed in the joint scheduling order that the "Plaintiff and Defendant will only serve Requests for Production upon each other for documents not already produced through the provision of records from the Prior Litigation." (Scheduling Order, "Fact Discovery," ¶ 3.) Mr. Levandowski has access to all documents responsive to this Request that were produced in the Google Arbitration. Uber will

**DEFENDANT'S RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS (SET ONE)**

provide access to the documents responsive to this Request that Uber produced in the Waymo Litigation and that Uber has authority to disclose or is granted permission to disclose for the purpose of this Adversary Proceeding. To the extent that Uber identifies any responsive, non-privileged documents that are not encompassed in the foregoing productions, it will produce the same.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 5:**

All documents and communications between Uber and Tyto prior to Otto's acquisition of Tyto, including any investigation conducted by Uber or Tyto, its owners or employees, or its products.

**RESPONSE:**  Uber objects to this Request as vague and ambiguous, particularly because the terms "investigation," "products," and "acquisition" are undefined, and are not reasonably capable of being understood in the context of this Request for Production. Uber further objects that the Request is overly broad and burdensome as it seeks "*all* documents and communications" (emphasis added). Uber further objects to this Request to the extent it seeks information protected by the attorney-client privilege, attorney work-product doctrine or any other applicable privilege or exemption. Uber also objects to this Request to the extent it seeks materials not within Uber's possession, custody or control.

Uber further objects that, upon information and belief, documents responsive to this Request were produced in either the Google Arbitration or the Waymo Litigation, or both, and the Parties agreed in the joint scheduling order that the "Plaintiff and Defendant will only serve Requests for Production upon each other for documents not already produced through the provision of records from the Prior Litigation." (Scheduling Order, "Fact Discovery," ¶ 3.) Mr. Levandowski has access to all documents responsive to this Request that were produced in the Google Arbitration. Uber will provide access to the documents responsive to this Request that Uber produced in the Waymo Litigation and that Uber has authority to disclose or is granted permission to disclose for the purpose of this Adversary Proceeding. To the extent that Uber identifies through a reasonable search any non-privileged documents and communications between Uber and Tyto prior to Otto's acquisition of Tyto that are not encompassed in the foregoing productions, it will produce the same.

**DEFENDANT'S RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS (SET ONE)**
DOCS_SF:105577.1 85647/001

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 6:**

All documents and communications relating to Otto's acquisition of Tyto, including all communications or documents referring or relating to Uber's approval for that transaction.

**RESPONSE:** Uber objects to this Request because it is vague and ambiguous, particularly because the term "approval" is undefined and is not reasonably capable of being understood in the context of this Request for Production. Uber further objects that the Request is overly broad and unduly burdensome as it seeks "*all* documents and communications" (emphasis added). Uber also objects to this Request to the extent it seeks materials not within Uber's possession, custody or control. In particular, this Request seeks documents and communications related to a third-party's acquisition of another entity, neither of which Uber owned or controlled at the time. (*See* Pl. First Am. Compl. ¶ 20) ("Otto, which later acquired Tyto before Otto was acquired by Uber.") Uber objects to this Request to the extent that it seeks materials that can be obtained from other sources in a manner that is less burdensome, more convenient, and/or less expensive.

Uber further objects to this Request to the extent it seeks information protected by the attorney-client privilege, attorney work-product doctrine or any other applicable privilege or exemption.

Uber further objects that, upon information and belief, documents responsive to this Request were produced in either the Google Arbitration or the Waymo Litigation, or both, and the Parties agreed in the joint scheduling order that the "Plaintiff and Defendant will only serve Requests for Production upon each other for documents not already produced through the provision of records from the Prior Litigation." (Scheduling Order, "Fact Discovery," ¶ 3.) Mr. Levandowski has access to all documents responsive to this Request that were produced in the Google Arbitration. Uber will provide access to the documents responsive to this Request that Uber produced in the Waymo Litigation and that Uber has authority to disclose or is granted permission to disclose for the purpose of this Adversary Proceeding. To the extent that Uber identifies any responsive, non-privileged documents that are not encompassed in the foregoing productions, it will produce the same.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 7:**

All documents and communications relating to any Post-Signing Specified Bad Act, as defined in Exhibit A of the Indemnification Agreement, Uber alleges was committed by Levandowski, including all communications or documents reflecting when Uber first became aware of any alleged Post-Signing Specified Bad Act.

**RESPONSE:** Uber objects to this Request because it is vague and ambiguous, particularly because the phrase "Uber first became aware" is undefined and is not reasonably capable of being understood within the context of this Request for Production. Uber further objects on the basis that the Request is overly broad and burdensome as it seeks "*all* documents and communications" (emphasis added). Uber further objects to this Request to the extent it seeks information protected by the attorney-client privilege, attorney work-product doctrine or any other applicable privilege or exemption.

Uber further objects that, upon information and belief, documents responsive to this Request were produced in either the Google Arbitration or the Waymo Litigation, or both, and the Parties agreed in the joint scheduling order that the "Plaintiff and Defendant will only serve Requests for Production upon each other for documents not already produced through the provision of records from the Prior Litigation." (Scheduling Order, "Fact Discovery," ¶ 3.) Mr. Levandowski has access to all documents responsive to this Request that were produced in the Google Arbitration. Uber will provide access to the documents responsive to this Request that Uber produced in the Waymo Litigation and that Uber has authority to disclose or is granted permission to disclose for the purpose of this Adversary Proceeding. To the extent that Uber identifies any responsive, non-privileged documents that are not encompassed in the foregoing productions, it will produce the same.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 8:**

All documents and communications relating to the due diligence by Stroz conducted on behalf of Uber relating to the Otto acquisition transaction, including all communications between Uber and Stroz regarding the due diligence by Stroz, all interim reports delivered by Stroz to Uber, and any final reports delivered by Stroz to Uber.

**RESPONSE:** Uber objects to this Request as vague and ambiguous, particularly because "Otto acquisition transaction," "interim reports," and "final reports" are undefined and are not reasonably capable of being understood within the context of this Request for Production. Uber further objects that the Request is overly broad and burdensome as it seeks "*all* documents and communications" (emphasis added). Uber further objects that the Request seeks documents and communications that are not in its possession, custody, or control. Uber further objects to this Request to the extent it seeks information protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege or exemption.

Uber further objects that, upon information and belief, documents responsive to this Request were produced in either the Google Arbitration or the Waymo Litigation, or both, and the Parties agreed in the joint scheduling order that the "Plaintiff and Defendant will only serve Requests for Production upon each other for documents not already produced through the provision of records from the Prior Litigation." (Scheduling Order, "Fact Discovery," ¶ 3.) Mr. Levandowski has access to all documents responsive to this Request that were produced in the Google Arbitration. Uber will provide access to the documents responsive to this Request that Uber produced in the Waymo Litigation and that Uber has authority to disclose or is granted permission to disclose for the purpose of this Adversary Proceeding. To the extent that Uber identifies any responsive, non-privileged documents that are not encompassed in the foregoing productions, it will produce the same.

### REQUEST FOR PRODUCTION OF DOCUMENTS NO. 9:

All documents and communications regarding Uber's settlement offers made to Waymo and/or Google as related to the Waymo Litigation settlement agreement, the Google Arbitration, or any global settlement of issues and disputes between Uber, Google, Waymo, and Anthony Levandowski.

**RESPONSE:** Uber objects that this Request is not reasonably calculated to lead to the discovery of admissible evidence, as Federal Rule of Evidence 408 bars admission of some of the requested materials. Uber further objects that this Request is overly broad and unduly burdensome, as it seeks "*all* documents and communications" (emphasis added). Uber further objects that this

Case: 20-03050   Doc# 218   Filed: 03/30/21   Entered: 03/30/21 00:01:50   Page 64 of 95

Request seeks documents and communications that are not in its possession, custody, or control. Uber also objects to this Request as vague and ambiguous, particularly because "global settlement of issues and disputes" is undefined and is not reasonably capable of being understood within the context of this Request.

Uber further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or exemption. Uber also objects to the extent this Request seeks materials that are already in Levandowski's possession and/or materials that can be obtained from other sources in a manner that is less burdensome, more convenient, and/or less expensive.

Subject to and without waiving the forging objections or its General Objections, Uber states that it will produce the relevant, non-privileged documents that are within Uber's possession, custody, or control and that relate to any settlement offers Uber made to Waymo and/or Google related to the Waymo Litigation, the Google Arbitration, or a global settlement between Uber and Google/Waymo, with the exception of any settlement offers relating to the present Adversary Proceeding.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 10:**

All documents and communications regarding Uber's negotiations with Waymo and/or Google regarding Levandowski.

**RESPONSE:** Uber objects to this Request because it is overly broad and unduly burdensome, and seeks documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. In addition, Uber objects to this Request as vague and ambiguous, particularly because the phrase "negotiations . . . regarding Levandowski" is undefined and is not reasonably capable of being understood in the context of this Request for Production.

Uber further objects that the Request is overly broad and unduly burdensome, as it seeks "*all* documents and communications" (emphasis added). Uber further objects that this Request seeks documents that are not in its possession, custody, or control.

**DEFENDANT'S RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS (SET ONE)**

Uber further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or exemption.

Subject to and without waiving the forging objections or its General Objections, Uber states that it will produce the relevant, non-privileged documents responsive to the Request that are within Uber's possession, custody, or control, with the exception of settlement communications or negotiations related to the present Adversary Proceeding.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 11:**

All documents and communications regarding any and all agreements or understandings between Lior Ron and Uber relating to any settlement with Google, including any settlement reached with Google or any written agreements between Lior Ron and Uber regarding any settlement with Google.

**RESPONSE:**    Uber objects to this Request because it seeks documents that are neither relevant to any claim or defense in this action nor reasonably calculated lead to the discovery of admissible evidence. Uber further objects that this Request is overly broad and unduly burdensome, as it seeks "*all* documents and communications" (emphasis added).  Uber further objects that this Request seeks documents and communications that are not in Uber's possession, custody, or control. Uber also objects to this Request as vague and ambiguous, particularly because the phrase "agreements or understandings" is undefined and is not reasonably capable of being understood in the context of this Request. Uber further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or exemption.

Uber objects to this Request as irrelevant, as Mr. Levandowski has not sufficiently articulated how any potential agreement or understanding with Lior Ron related to a settlement with Google would have any relevance to the current Adversary Proceeding.  Subject to and without waiving these objections, Uber will produce documents sufficient to establish that it paid certain

**DEFENDANT'S RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS (SET ONE)**
DOCS_SF:104507.1 85647/001

amounts on behalf of or for the benefit of Lior Ron and that Lior Ron assigned to Uber his rights for contribution from Levandowski.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 12:**

All documents and communications regarding the Waymo Settlement.

**RESPONSE:**    Uber objects to this Request because it is not reasonably calculated to lead to the discovery of admissible evidence, as Federal Rule of Evidence 408 bars admission of some of the requested materials. Uber further objects that the Request is overly broad and unduly burdensome, as it seeks "*all* documents and communications" (emphasis added). Uber further objects that the Request seeks documents and communications that are not in its possession, custody, or control. Uber further objects to this Request to the extent it seeks information protected by the attorney-client privilege, attorney work-product doctrine or any other applicable privilege or exemption. Uber objects that this request is duplicative of Requests 2, 9, and 10.

Subject to and without waiving the forging objections or its General Objections, Uber states that it will produce documents consistent with Uber's responses to Requests 2, 9, and 10.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 13:**

All documents and communications regarding Uber's performance of its obligations in the Waymo Settlement.

**RESPONSE:**    Uber objects to this Request because it is not reasonably calculated to lead to the discovery of admissible evidence. Uber objects that the Request is overly broad and unduly burdensome, as it seeks "*all* documents and communications" (emphasis added). Uber further objects that the Request seeks documents and communications that are not in its possession, custody, or control. Uber also objects to this Request as vague and ambiguous, particularly because the term "obligations" is undefined and not reasonably capable of being understood in the context of this Request for Production. Uber further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or exemption.

**DEFENDANT'S RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS (SET ONE)**

DOCS_SF:105577.1 85647/001

Case: 20-03050    Doc# 218    Filed: 03/30/21    Entered: 03/30/21 00:01:50    Page 67 of 95

Uber objects to this Request as irrelevant, as Mr. Levandowski has not sufficiently articulated how Uber's performance of its obligations in the Waymo Settlement is relevant to the Adversary Proceeding, let alone to Phase I of the Adversary Proceeding, which does not include discovery on the Otto Trucking-related topics. Accordingly, Uber will not produce any documents in response to this Request.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 14:**

All documents and communications relating to Uber's purported rescission of the Indemnification Agreement with respect to any other Diligenced Employee, as defined in the Indemnification Agreement.

**RESPONSE:** Uber objects that this Request is overly broad and unduly burdensome, as it seeks "*all* documents and communications" (emphasis added). Uber further objects that this Request seeks documents and communications that are not in its possession, custody, or control. Uber further objects to this Request to the extent it seeks information protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege or exemption.

Uber objects to this Request as irrelevant, as Mr. Levandowski has not sufficiently articulated how any rescission of the Indemnification Agreement as to any Diligenced Employee other than Mr. Levandowski would be relevant to the Adversary Proceeding. Subject to and without waiving the foregoing objections or General Objections, Uber will produce its communication with counsel for Lior Ron with respect to the topic of rescission of the Indemnification Agreement as to Mr. Ron. Uber does not believe it communicated with counsel for any other Diligenced Employee other than Mr. Levandowski and Mr. Ron on that topic, but its investigation continues.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 15:**

All documents and communications relating to the negotiation and execution of the Indemnification Agreement.

**RESPONSE:** Uber objects to this Request because it is overly broad, unduly burdensome, vague, and ambiguous, as it seeks "*all* documents and communications" (emphasis

**DEFENDANT'S RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS (SET ONE)**
DOCS_SF:104567.1 85647/001

added) without limitation as to the custodian or participant in the communication. Uber further objects that the Request seeks documents and communications that are not in its possession, custody, or control. Uber further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or exemption.

Uber also objects to this Request as unduly burdensome to the extent it seeks materials that are already in Plaintiff's possession and/or materials that can be obtained from other sources in a manner that is less burdensome, more convenient, and/or less expensive.

Uber further objects that, upon information and belief, documents responsive to this Request were produced in either the Google Arbitration or the Waymo Litigation, or both, and the Parties agreed in the joint scheduling order that the "Plaintiff and Defendant will only serve Requests for Production upon each other for documents not already produced through the provision of records from the Prior Litigation." (Scheduling Order, "Fact Discovery," ¶ 3.) Mr. Levandowski has access to all documents responsive to this Request that were produced in the Google Arbitration. Uber will provide access to the documents responsive to this Request that Uber produced in the Waymo Litigation and that Uber has authority to disclose or is granted permission to disclose for the purpose of this Adversary Proceeding. To the extent that Uber identifies any responsive, non-privileged documents that are not encompassed in the foregoing productions, it will produce the same.

## REQUEST FOR PRODUCTION OF DOCUMENTS NO. 16:

All documents and communications related to Uber's knowledge of any purported Pre-Signing Bad Acts, as defined in Section 1 of the Indemnification Agreement.

**RESPONSE:** Uber objects that this Request is overly broad and unduly burdensome, as it seeks "*all* documents and communications" (emphasis added). Uber further objects that the Request seeks documents and communications that are not in its possession, custody, or control. Uber further objects to this Request to the extent it seeks information protected by the attorney-client privilege, attorney work-product doctrine or any other applicable privilege or exemption.

Uber further objects that, upon information and belief, documents responsive to this Request were produced in either the Google Arbitration or the Waymo Litigation, or both, and the Parties agreed in the joint scheduling order that the "Plaintiff and Defendant will only serve Requests for Production upon each other for documents not already produced through the provision of records from the Prior Litigation." (Scheduling Order, "Fact Discovery," ¶ 3.) Mr. Levandowski has access to all documents responsive to this Request that were produced in the Google Arbitration. Uber will provide access to the documents responsive to this Request that Uber produced in the Waymo Litigation and that Uber has authority to disclose or is granted permission to disclose for the purpose of this Adversary Proceeding. To the extent that Uber identifies any responsive, non-privileged documents that are not encompassed in the foregoing productions, it will produce the same.

## REQUEST FOR PRODUCTION OF DOCUMENTS NO. 17:

All documents and communications related to any facts or circumstances Uber claims were not disclosed by Levandowski to Stroz during Stroz's investigation.

**RESPONSE:** Uber objects that this Request is overly broad and unduly burdensome, as it seeks "*all* documents and communications" (emphasis added). Uber further objects that the Request seeks documents and communications that are not in its possession, custody, or control. Uber further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or exemption.

Uber further objects that, upon information and belief, documents responsive to this Request were produced in either the Google Arbitration or the Waymo Litigation, or both, and the Parties agreed in the joint scheduling order that the "Plaintiff and Defendant will only serve Requests for Production upon each other for documents not already produced through the provision of records from the Prior Litigation." (Scheduling Order, "Fact Discovery," ¶ 3.) Mr. Levandowski has access to all documents responsive to this Request that were produced in the Google Arbitration. Uber will provide access to the documents responsive to this Request that Uber produced in the Waymo Litigation and that Uber has authority to disclose or is granted permission to disclose for the purpose

**DEFENDANT'S RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS (SET ONE)**

of this Adversary Proceeding. To the extent that Uber identifies any responsive, non-privileged documents that are not encompassed in the foregoing productions, it will produce the same.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 18:**

All Uber board presentations, meeting summaries or resolutions relating or referring to any of the events at issue in this action and in the Prior Litigation, including, but not limited to, all Uber board presentations, meeting summaries or resolutions relating to the 2016 acquisition of Otto, or Tyto/Odin Wave, the Waymo Litigation, the Google Arbitration, Levandowski's termination from Uber, Levandowski's Plea Agreement, the Indemnification Agreement and its provisions, and/or Stroz and its report.

**RESPONSE:** Uber objects to this Request because it is overly broad, unduly burdensome, and not proportionate to the scope of this dispute. Uber further objects to this Request for Production because it is vague and ambiguous, particularly because the term "events at issue," is undefined and not reasonably capable of being understood in the context of this Request for Production.

Uber further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or exemption.

Uber further objects that, upon information and belief, documents responsive to this Request were produced in either the Google Arbitration or the Waymo Litigation, or both, and the Parties agreed in the joint scheduling order that the "Plaintiff and Defendant will only serve Requests for Production upon each other for documents not already produced through the provision of records from the Prior Litigation." (Scheduling Order, "Fact Discovery," ¶ 3.) Mr. Levandowski has access to all documents responsive to this Request that were produced in the Google Arbitration. Uber will provide access to the documents responsive to this Request that Uber produced in the Waymo Litigation and that Uber has authority to disclose or is granted permission to disclose for the purpose of this Adversary Proceeding. To the extent that Uber identifies any responsive, non-privileged documents that are not encompassed in the foregoing productions, it will produce the same.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 19:**

All documents and communications related to Uber's knowledge, belief, or suspicion of any purported fraud Uber alleges induced it to enter into the Indemnification Agreement, or information that otherwise would have put Uber or its agents on notice of any such purported fraud.

**RESPONSE:** Uber objects to this Request because it is vague, and overly broad and unduly burdensome, as it seeks "*all* documents and communications" (emphasis added). Uber further objects to the extent that the Request seeks documents and communications that are not in its possession, custody, or control. Uber further objects to this Request to the extent it seeks information protected by the attorney-client privilege, attorney work-product doctrine or any other applicable privilege or exemption.

Uber further objects that, upon information and belief, documents responsive to this Request were produced in either the Google Arbitration or the Waymo Litigation, or both, and the Parties agreed in the joint scheduling order that the "Plaintiff and Defendant will only serve Requests for Production upon each other for documents not already produced through the provision of records from the Prior Litigation." (Scheduling Order, "Fact Discovery," ¶ 3.) Mr. Levandowski has access to all documents responsive to this Request that were produced in the Google Arbitration. Uber will provide access to the documents responsive to this Request that Uber produced in the Waymo Litigation and that Uber has authority to disclose or is granted permission to disclose for the purpose of this Adversary Proceeding. To the extent that Uber identifies any responsive, non-privileged documents that are not encompassed in the foregoing productions, it will produce the same.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 20:**

All documents and communications relating to any alleged fraud Uber alleges induced it to enter into the Indemnification Agreement, including all communications or documents reflecting when Uber first became aware of any alleged fraud.

**RESPONSE:** Uber objects to this Request because it is overly broad and unduly burdensome, as it seeks "*all* documents and communications" (emphasis added). Uber further objects to the extent that the Request seeks documents and communications that are not in its

**DEFENDANT'S RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS (SET ONE)**

possession, custody, or control. Uber further objects to this Request for Production to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or exemption.

Uber further objects that, upon information and belief, documents responsive to this Request were produced in either the Google Arbitration or the Waymo Litigation, or both, and the Parties agreed in the joint scheduling order that the "Plaintiff and Defendant will only serve Requests for Production upon each other for documents not already produced through the provision of records from the Prior Litigation." (Scheduling Order, "Fact Discovery," ¶ 3.) Mr. Levandowski has access to all documents responsive to this Request that were produced in the Google Arbitration. Uber will provide access to the documents responsive to this Request that Uber produced in the Waymo Litigation and that Uber has authority to disclose or is granted permission to disclose for the purpose of this Adversary Proceeding. To the extent that Uber identifies any responsive, non-privileged documents that are not encompassed in the foregoing productions, it will produce the same.

DATED: November  23, 2020

PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ Debra I. Grassgreen*
    Debra I. Grassgreen
    -and-
    JENNER & BLOCK LLP
    David J. Bradford
    Catherine Steege
    Terri L. Mascherin
    Katharine R. Ciliberti

    *Counsel for Defendant*
    *Uber Technologies, Inc.*

19

**DEFENDANT'S RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS (SET ONE)**

STATE OF CALIFORNIA          )
                             )
CITY OF SAN FRANCISCO        )

I, Miriam Manning, am employed in the city and county of San Francisco, State of California. I am over the age of 18 and not a party to the within action; my business address is 150 California Street, 15th Floor, San Francisco, California 94111-4500.

On November 23, 2020, I caused to be served the following documents in the manner stated below:

- **DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

☑ (BY EMAIL)  I caused the above-described document(s) to be sent by e-mail to the parties identified below at the e-mail addresses listed.

| Attorneys for Google LLC | Attorneys for Anthony S. Levandowski |
|---|---|
| **MUNGER, TOLLES & OLSON LLP**<br>Thomas B. Walper (thomas.walper@mto.com)<br>John W. Berry (john.berry@mto.com)<br>Alexander S. Gorin (alex.gorin@mto.com) | **KELLER BENVENUTTI KIM LLP**<br>Tobias S. Keller (tkeller@kbkllp.com)<br>Dara L. Silveira (dsilveira@kbkllp.com) |
| **KEKER, VAN NEST & PETERS LLC**<br>Rachael E. Meny (rmeny@keker.com)<br>Thomas E. Gorman (tgorman@keker.com) | **GOODWIN PROCTER LLP**<br>Brett Schuman (bschuman@goodwinlaw.com)<br>Rachel M. Walsh (rwalsh@goodwinlaw.com)<br>Hong-An Vu (hvu@goodwinlaw.com) |

I declare under penalty of perjury, under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on November 23, 2020 at San Francisco, California.

_____
                    */s/ Miriam Manning*

# EXHIBIT 13

| | |
|---|---|
| **From:** | JBsecureFTP Admin |
| **Sent:** | Wednesday, December 16, 2020 8:02 PM |
| **To:** | Kras, Cheryl J.; Ciliberti, Katharine R.; Caracci, Catherine R.; thomas.walper@mto.com; john.berry@mto.com; dgrassgreen@pszjlaw.com; rmeny@keker.com; tgorman@keker.com; mmanning@pszjlaw.com; hvu@goodwinlaw.com; rwalsh@goodwinlaw.com; nswithers@keker.com; dsilveira@kbkllp.com; ccrane@keker.com; tkeller@kbkllp.com; jvaldes@goodwinlaw.com; bschuman@goodwinlaw.com; hphan@pszjlaw.com; alex.gorin@mto.com; rmullen@keker.com; nchatterjee@goodwinlaw.com |
| **Subject:** | Levandowski v. Uber - UBER-AL004 (UBER-AL_00000337 - UBER-AL_00000602) |

## JENNER & BLOCK LLP

# ckras@jenner.com sent a message related to the "Levandowski v. Uber - UBER-AL004 (UBER-AL_00000337 - UBER-AL_00000602)" folder

**Access folder**

Dear Counsel:

Please find below a link to download VOL 004 of Uber's production, containing Bates numbers UBER-AL_00000337 - UBER-AL_00000602. These documents are subject to the Protective Order entered in this case

Secured by Accellion

This computer system is the property of Jenner & Block LLP (the "firm") and may only be accessed by users authorized by the firm. All use of this system is monitored and logged. By accessing this system you consent to such monitoring and logging by the firm. You further agree and understand you have no expectation of privacy with respect to the firm's monitoring of your use of this system. Unauthorized use of this system is strictly prohibited and may subject the violator to civil liability and/or criminal

prosecution. By accessing and using this system you acknowledge and agree to these terms and conditions.

# EXHIBIT 14

| From: | Kras, Cheryl J. |
|---|---|
| Sent: | Friday, January 8, 2021 4:57 PM |
| To: | thomas.walper@mto.com; john.berry@mto.com; dgrassgreen@pszjlaw.com; rmeny@keker.com; tgorman@keker.com; mmanning@pszjlaw.com; hvu@goodwinlaw.com; rwalsh@goodwinlaw.com; nswithers@keker.com; dsilveira@kbkllp.com; ccrane@keker.com; tkeller@kbkllp.com; jvaldes@goodwinlaw.com; bschuman@goodwinlaw.com; hphan@pszjlaw.com; alex.gorin@mto.com; rmullen@keker.com; nchatterjee@goodwinlaw.com |
| Cc: | Ciliberti, Katharine R.; Caracci, Catherine R. |
| Subject: | RE: Levandowski v. Uber - UBER-AL008 (UBER-AL_00003337 - UBER-AL_00004190) |

Dear Counsel:

Soon you will receive a link to download VOL 008 of Uber's production, containing Bates numbers UBER-AL_00003337 - UBER-AL_00004190. The password for the zip file is k35b#S3zwpZgTTMbf
These documents are subject to the Protective Order entered in this case.

---

**Cheryl J. Kras**
Senior Paralegal

**Jenner & Block LLP**
353 N. Clark Street, Chicago, IL 60654-3456 | jenner.com
+1 312 840 7856 | TEL
+1 312 964 2766 | MOBILE
+1 312 527 0484 | FAX
CKras@jenner.com
Download V-Card

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

| | |
|---|---|
| **From:** | JBsecureFTP Admin |
| **Sent:** | Friday, January 8, 2021 4:59 PM |
| **To:** | Ciliberti, Katharine R. |
| **Subject:** | ckras@jenner.com gave you secure access to the "Levandowski v. Uber - UBER-AL008 (UBER-AL_00003337 - UBER-AL_00004190)" folder |

## JENNER & BLOCK LLP

# ckras@jenner.com gave you secure access to the folder "Levandowski v. Uber - UBER-AL008 (UBER-AL_00003337 - UBER-AL_00004190)"

Access folder

Secured by Accellion

This computer system is the property of Jenner & Block LLP (the "firm") and may only be accessed by users authorized by the firm. All use of this system is monitored and logged. By accessing this system you consent to such monitoring and logging by the firm. You further agree and understand you have no expectation of privacy with respect to the firm's monitoring of your use of this system. Unauthorized use of this system is strictly prohibited and may subject the violator to civil liability and/or criminal prosecution. By accessing and using this system you acknowledge and agree to these terms and conditions.

# EXHIBIT 15

| From: | Kras, Cheryl J. |
|-------|-----------------|
| Sent: | Tuesday, January 19, 2021 7:41 PM |
| To: | thomas.walper@mto.com; john.berry@mto.com; dgrassgreen@pszjlaw.com; rmeny@keker.com; tgorman@keker.com; mmanning@pszjlaw.com; hvu@goodwinlaw.com; rwalsh@goodwinlaw.com; nswithers@keker.com; dsilveira@kbkllp.com; ccrane@keker.com; tkeller@kbkllp.com; jvaldes@goodwinlaw.com; bschuman@goodwinlaw.com; hphan@pszjlaw.com; alex.gorin@mto.com; rmullen@keker.com; nchatterjee@goodwinlaw.com |
| Cc: | Ciliberti, Katharine R.; Caracci, Catherine R. |
| Subject: | RE: Levandowski v. Uber - UBER-AL010 and UBER-AL011  (UBER-AL_00004235 - UBER-AL_00005762) |

Dear Counsel:

Soon you will receive a link to download VOL 010 and VOL 011 of Uber's production, containing Bates numbers UBER-AL_00004235 - UBER-AL_00005762. The passwords for the zips are:

VOL010: LPPFu3TKH#wYZM7Fg
VOL011: vX799xZwUVE3B2Cj$

These documents are subject to the Protective Order entered in this case.

---

**Cheryl J. Kras**
Senior Paralegal

**Jenner & Block LLP**
353 N. Clark Street, Chicago, IL 60654-3456 | jenner.com
+1 312 840 7856 | TEL
+1 312 964 2766 | MOBILE
+1 312 527 0484 | FAX
CKras@jenner.com
Download V-Card

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

# JENNER&BLOCK LLP

# ckras@jenner.com gave you secure access to the folder "Levandowski v. Uber - UBER-AL010 and UBER-AL011 (UBER-AL_00004235 - UBER-AL_00005762)"

**Access folder**

Secured by Accellion

This computer system is the property of Jenner & Block LLP (the "firm") and may only be accessed by users authorized by the firm. All use of this system is monitored and logged. By accessing this system you consent to such monitoring and logging by the firm. You further agree and understand you have no expectation of privacy with respect to the firm's monitoring of your use of this system. Unauthorized use of this system is strictly prohibited and may subject the violator to civil liability and/or criminal prosecution. By accessing and using this system you acknowledge and agree to these terms and conditions.

# EXHIBIT 16

1   **KELLER BENVENUTTI KIM LLP**
    TOBIAS S. KELLER (Cal. Bar No. 151445)
2   *tkeller@kbkllp.com*
    DARA L. SILVEIRA (Cal. Bar No. 274923)
3   *dsilveira@kbkllp.com*
    650 California Street, Suite 1900
4   San Francisco, California 94108
    Telephone: (415) 364-6793
5   Facsimile: (650) 636-9251

6   BRETT SCHUMAN, (SBN 189247)
    *BSchuman@goodwinlaw.com*
7   RACHEL M. WALSH, (SBN 250568)
    *RWalsh@goodwinlaw.com*
8   **GOODWIN PROCTER** LLP
    Three Embarcadero Center
9   San Francisco, California 94111
    Tel.: +1 415 733 6000
10  Fax: +1 415 677 9041

11  HONG-AN VU (SBN 266268)
    *hvu@goodwinlaw.com*
12  **GOODWIN PROCTER** LLP
    601 S. Figueroa Street, 41st Flr.
13  Los Angeles, California 90017
    Tel.: +1 213 426 2500
14  Fax: +1 213 623 1673

15  Attorneys for Plaintiff and Debtor and
    Debtor in Possession
16  ANTHONY S. LEVANDOWSKI

17              **UNITED STATES DISTRICT COURT**

18              **NORTHERN DISTRICT OF CALIFORNIA**

19                  **SAN FRANCISCO DIVISION**

20  In re:                              Bankruptcy Case No. 20-30242 (HLB)
                                        Chapter 11
21  ANTHONY SCOTT LEVANDOWSKI,
                                        Hon. Hannah L. Blumenstiel
22  Debtor.
                                        **Adv. Pro. No. 20-03050 (HLB)**
23
    ANTHONY LEVANDOWSKI, an individual,,  **NOTICE OF TAKING OF RULE
24                                        30(B)(6) DEPOSITION OF UBER
                    Plaintiff,           TECHNOLOGIES, INC.**
25
            v.
26
    UBER TECHNOLOGIES, INC.,
27
                    Defendant.
28

TO:     ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Rule 7030 of the Federal Rules of Bankruptcy Procedure, Rule 30 of the Federal Rules of Civil Procedure, and Local Rule 30-1, Plaintiff Anthony Levandowski ("Mr. Levandowski"), will take the deposition upon oral examination of defendant Uber Technologies, Inc. ("Uber").  Pursuant to Fed. R. Civ. Proc. 30(b)(6), Uber shall produce for deposition one or more officers, directors, managing agents, employees, or other designated persons who can testify on its behalf with respect to the topics set forth in the attached Schedule A, and the person(s) so designated shall be required to testify as to each of those matters known or reasonably available to the corporation. Mr. Levandowski will meet and confer with Uber to schedule an appropriate date for the deposition(s).  Uber shall identify the person (or persons) designated to testify regarding each of the categories set forth in Schedule A, at least three (3) business days before the deposition begins.  For each such person, Uber shall designate the particular matters on which each such person will testify.  Mr. Levandowski reserves the right to depose Uber on further Rule 30(b)(6) topics as discovery progresses.

PLEASE TAKE FURTHER NOTICE the deposition will be by Zoom before a court reporter authorized to administer oaths and will be recorded stenographically and by sound and video recording.  The deposition may be recorded using real time instant visual display of testimony.  Mr. Levandowski reserves the right to use the recorded deposition at trial.

//

| | |
|---|---|
| 1 | Dated: December 18, 2020 |

Dated: December 18, 2020                    GOODWIN PROCTER LLP


By:*/s/ Brett M. Schuman*
      Brett M. Schuman
      *BSchuman@goodwinlaw.com*
      Rachel M. Walsh
      *RWalsh@goodwinlaw.com*
      Hong-An Vu
      *HVu@goodwinlaw.com*
      **GOODWIN PROCTER** LLP

      Tobias S. Keller
      *tkeller@kbkllp.com*
      Dara L. Silveira
      *dsilveira@kbkllp.com*
      **KELLER BENVENUTTI KIM LLP**

      *Attorneys for Plaintiff and Debtor and*
      *Debtor in Possession*
      ANTHONY S. LEVANDOWSKI

**SCHEDULE A**

**DEFINITIONS**

3    1.    You," "your," "Uber," or "Defendant" refers to Defendant Uber Technologies, Inc.

4    and all others acting or purporting to act on its behalf, including (a) any of their predecessors and

5    successors in interest, their present and former officers, directors, employees, agents,

6    representatives, accountants, investigators, consultants, attorneys, and any affiliated entities that

7    were in existence during the applicable period of time covered by these requests; and (b) any

8    other Person who is, or was, acting on its behalf or under its control.

9    2.    "Google" refers to Google Inc. and all others acting or purporting to act on its

10   behalf, including (a) any of their predecessors and successors in interest, their present and former

11   officers, directors, employees, agents, representatives, accountants, investigators, consultants,

12   attorneys, and any affiliated entities that were in existence during the applicable period of time

13   covered by these requests; and (b) any other Person who is, or was, acting on its behalf or under

14   its control.

15   3.    "Otto" refers to OttoMotto LLC and all others acting or purporting to act on their

16   behalf, including (a) any of their predecessors and successors in interest, their present and former

17   officers, directors, employees, agents, representatives, accountants, investigators, consultants,

18   attorneys, and any affiliated entities that were in existence during the applicable period of time

19   covered by these requests; and (b) any other Person who is, or was, acting on its behalf or under

20   their control.

21   4.    "Otto Trucking" refers to Otto Trucking LLC and all others acting or purporting to

22   act on their behalf, including (a) any of their predecessors and successors in interest, their present

23   and former officers, directors, employees, agents, representatives, accountants, investigators,

24   consultants, attorneys, and any affiliated entities that were in existence during the applicable

25   period of time covered by these requests; and (b) any other Person who is, or was, acting on its

26   behalf or under their control.

27   5.    "Waymo" refers to Waymo LLC and all others acting or purporting to act on its

28   behalf, including (a) any of their predecessors and successors in interest, their present and former

officers, directors, employees, agents, representatives, accountants, investigators, consultants, attorneys, and any affiliated entities that were in existence during the applicable period of time covered by these requests; and (b) any other Person who is, or was, acting on its behalf or under its control.

6. "Waymo Settlement" refers to the Settlement Agreement dated February 8, 2018 entered into between Waymo, Google, and Alphabet Inc., on the one hand, and Uber on the other hand.

7. "Bad Act(s)" or "Post-Signing Specified Bad Act(s)" refers to the term as used in the Indemnification Agreement.

8. "Investigation(s)" means an investigation, inquiry, research, due diligence, or surveillance of a Person or entity.

9. "Tyto," "Tyto LiDAR," or "Saturn" refers to Tyto Lidar LLC, formerly known as Odin Wave LLC, and all others acting or purporting to act on its behalf, including (a) any of their predecessors and successors in interest, their present and former officers, directors, employees, agents, representatives, accountants, investigators, consultants, attorneys, and any affiliated entities that were in existence during the applicable period of time covered by these requests; and (b) any other Person who is, or was, acting on its behalf or under its control.

10. "OWL LiDAR" means the LiDAR product sold by Tyto.

11. "Otto Planner" means the technology referenced to in Uber's Response to Levandowski's First Set of Interrogatories.

12. "Stroz" refers to Stroz Friedberg, LLC and all others acting or purporting to act on its behalf, including (a) any of their predecessors and successors in interest, their present and former officers, directors, employees, agents, representatives, accountants, investigators, consultants, attorneys, and any affiliated entities that were in existence during the applicable period of time covered by these requests; and (b) any other Person who is, or was, acting on its behalf or under its control.

13. "Due diligence" refers to any investigation conducted by Stroz relating to the Indemnification Agreement or Uber's acquisition of Otto or Otto Trucking.

14.  "Plaintiff" or "Levandowski" refers to Anthony Scott Levandowski.

15.  "Indemnification Agreement" refers to the Indemnification Agreement between Uber and Levandowski, dated April 11, 2016.

16.  "Diligenced Employee" refers to the definition of "Diligenced Employee" found in the Indemnification Agreement.

17.  "Former Employer" refers to the definition of "Former Employer" found in the Indemnification Agreement.

18.  "Google Arbitration" refers to the prior disputes entitled, *Google LLC v. Anthony Scott Levandowski and Lior Ron*, JAMS Arbitration Case Reference No. 1100086069 and *Google v. Levandowski*, JAMS Arbitration Case Reference No, 1100086032.

19.  "Waymo Litigation" refers to the prior dispute entitled, *Waymo LLC v. Uber Technologies, Inc., et al.*

20.  "Prior Litigation" refers to the Google Arbitration and Waymo Litigation collectively.

21.  "Person(s)" shall mean any natural person or any corporation, partnership, or other business, legal, or governmental entity or association, as well as its officers, directors, employees, agents, representatives, consultants, and attorneys.

22.  "MoFo" means the law firm Morrison & Foerster and its partners, attorneys, employees, and representatives.

23.  "Boies" means the law firm Boies Schiller Flexner LLP and its partners, attorneys, employees, and representatives.

24.  "Gerdes Report" means the Waymo-Uber Independent Software Expert Review provided by J Christian Gerdes dated November 4, 2019.

## **TOPICS**

1.  Uber's acquisition of Otto and how that acquisition related to the Indemnification Agreement, including but not limited to the negotiations of the April 11, 2016 acquisition documents, the terms of the acquisition documents, Uber's material considerations in acquiring Otto, the anticipated impact of Uber's acquisition of Otto on Uber's self-driving car program, and

Uber's decision to proceed with the Otto transaction.

2.     The Indemnification Agreement, including but not limited to the negotiations relating to the Indemnification Agreement, Levandowski's requirement for indemnity, Uber's decision to enter into the Indemnification Agreement, and the parties' respective rights and obligations under the Indemnification Agreement.

3.     The materiality of any information disclosed or not disclosed by Levandowski to Uber's decision to proceed with the Otto acquisition and to provide indemnity and Uber's reliance on any information or representations provided by Levandowski to Stroz, MoFo, and/or Uber.

4.     Uber's knowledge of any Bad Acts committed by Levandowski or any Diligenced Employee, and when Uber acquired that knowledge.

5.     Stroz's investigations, including but not limited to, information Uber received relating to Stroz's investigations, information or issues Stroz chose not to investigate, instructions given by Uber or MoFo to Stroz, the status of Stroz's investigation as of April 11, 2016, and any findings or conclusions reached by Stroz before April 11, 2016, before August 18, 2016, after the Prior Litigation was initiated.

6.     Any Investigation of Levandowski or any Diligenced Employee Uber conducted or commissioned relating to the Indemnification Agreement, allegations made about them in the Prior Litigation, any solicitation of employees of a Former Employer, or retention or use of trade secret or confidential information of a Former Employer.

7.     Uber's knowledge of Tyto and/or Saturn, Levandowski's retention of Former Employer materials or any other information relating to the fraud Uber alleges Mr. Levandowski committed, and when Uber acquired such knowledge.

8.     Communications with MoFo regarding Mr. Levandowski or any Diligenced Employee, their conduct, Stroz's investigations, and any subsequent investigations of Levandowski or any Diligenced Employee.

9.     Any communications between Levandowski or his representatives, on the one hand, and Uber or its representatives (including MoFo and Boies), on the other, regarding the

Indemnification Agreement, the Fifth Amendment assertion, Tyto, the Otto Planner, or Former Employer trade secrets or confidential information.

10.     Uber's decision to rescind the Indemnification Agreement, including when to provide notice of rescission, any prior considerations to rescind, any communications with Mr. Levandowski about rescission, whether Uber was required to return the consideration it received, and Uber's basis for rescission.

11.     Any Post-Signing Specified Bad Acts Uber contends either Levandowski committed or knew had been committed by anyone other than Levandowski that Uber contends allows it to void or nullify the Indemnification Agreement.

12.     Tyto LiDAR, including Uber's investigation and consideration of Tyto for acquisition, Otto's acquisition of Tyto LiDAR, Uber's knowledge of Tyto's OWL LiDAR, Uber's knowledge of any relationship between Levandowski and Tyto, and Uber's knowledge and/or approval of Otto's acquisition of Tyto.

13.     Uber's positions/statements in the Waymo Litigation regarding trade secrets, the sufficiency of its efforts to prevent any alleged Waymo trade secrets from being used at Uber, Levandowski, and/or any conduct of Levandowski or any employees of Otto.

14.     The Otto Planner and the Gerdes Report, including positions taken by Uber with respect to the Otto Planner, any materials provided to the expert as part of the Gerdes Report, Uber's positions with respect to the findings in the Gerdes Report, and any investigation conducted by Uber into the Otto Planner and the conduct of Don Burnette with respect to the Otto Planner or any component of the Otto Planner.

15.     Uber's knowledge of Levandowski's assertion of the Fifth Amendment privilege, including when Uber was aware Levandowski was going to assert this privilege, Uber's response to Levandowski's assertion of the Fifth Amendment privilege, and any request under the Indemnification Agreement that Levandowski testify.

16.     Uber's demand that Levandowski contribute to the Uber's settlement of the Waymo Litigation and/or any offset it alleges it is entitled to.

17.     Negotiations with Waymo and Google regarding Levandowski, including

negotiations to settle the Prior Litigation and whether Uber communicated to Google or Waymo any of the proposals or constructs made by Levandowski to Uber regarding a global settlement of the Prior Litigation.

18. Uber's provision of indemnity for any Diligenced Employee other than Levandowski, whether under the Indemnification Agreement or another arrangement.

19. Uber's development and use of Greyball.

20. Surfcam, Hell, Competitive Intelligence/COIN, Strategic Services Group, Marketplace Analytics, and any other programs or policies regarding espionage of competitors, employees, and potential hires.

9

<u>**PROOF OF SERVICE**</u>

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is: 601 South Figueroa Street, Floor 41, Los Angeles, CA 90017 .

On **December 18, 2020**, I served the following documents by placing a true copy thereof in a sealed envelope(s) on the persons below as follows:

**NOTICE OF TAKING OF RULE 30(B)(6) DEPOSITION OF UBER TECHNOLOGIES, INC.**

| | |
|---|---|
| David J. Bradford<br>Terri L. Mascherin<br>Katharine R. Ciliberti,<br>Jenner & Block, LLP<br>353 N. Clark Street<br>Chicago, IL 60654-3456 | Counsel for: *Uber Technologies, Inc.*<br>Tel.: (312) 222-9350<br>Fax: (312) 527-0484<br>*dbradford@jenner.com*<br>*TMascherin@jenner.com*<br>*KCiliberti@jenner.com* |
| Debra I. Grassgreen<br>John William Lucas<br>Miriam Manning<br>Pachulski, Stang, Ziehl, and Jones LLP<br>150 California St. 15th Fl.<br>San Francisco, CA 94111-4500 | Counsel for: *Uber Technologies, Inc.*<br>Tel.: (415) 263-7000<br>Fax: (415) 263-7010<br>*dgrassgreen@pszjlaw.com*<br>*jlucas@pszjlaw.com*<br>*mmanning@pszjlaw.com* |
| John W. Berry<br>Seth Goldman<br>Alexander S. Gorin<br>Munger, Tolles and Olson, LLP<br>350 S. Grand Ave., 50th Fl.<br>Los Angeles, CA 90071 | Counsel for: *Google, LLC*<br>Tel.: (213) 683-9571<br><br>*john.berry@mto.com*<br>*seth.goldman@mto.com*<br>*alex.gorin@mto.com* |
| Thomas E. Gorman<br>Reid Mullen<br>Keker, Van Nest & Peters LLP<br>633 Battery St.<br>San Francisco, CA 94111 | Counsel for: *Google, LLC*<br>Tel.: (415) 391-5400<br><br>*tgorman@keker.com*<br>*rmullen@keker.com* |

☐ (MAIL). I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at San Francisco, California.

1

☐        (OVERNIGHT DELIVERY). I deposited in a box or other facility regularly maintained by FedEx, an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, a true copy of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed as stated above, with fees for overnight delivery paid or provided for.

2

3

4

**X**     **(E-MAIL or ELECTRONIC TRANSMISSION).** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

5

6

7

    I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction this service was made and that the foregoing is true and correct.

8

9

    Executed on **December 18, 2020**, at Los Angeles, California.

10

11

          Lupe Parra                  */s/ Lupe Parra*
       (Type or print name)               (Signature)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11