1  Debra I. Grassgreen (CA Bar No. 169978)
   Miriam Manning (CA Bar No. 178584)
2  PACHULSKI STANG ZIEHL & JONES LLP
3  150 California Street, 15th Floor
   San Francisco, CA 94111
4  Telephone:     (415) 263-7000
   Facsimile:     (415) 263-7010
5  E-mail:        dgrassgreen@pszjlaw.com
                  mmanning@pszjlaw.com
6
7  David J. Bradford (admitted *pro hac vice*)
   Terri L. Mascherin (admitted *pro hac vice*)
8  Catherine Steege (admitted *pro hac vice*)
   JENNER & BLOCK LLP
9  353 N. Clark St.
   Chicago, IL 60654
10 Telephone: (312) 222-9350
   E-mail: dbradford@jenner.com
11         csteege@jenner.com
           tmscherin@jenner.com
12
13 *Counsel for Uber Technologies, Inc.*

14
                    **UNITED STATES BANKRUPTCY COURT**
15                  **NORTHERN DISTRICT OF CALIFORNIA**
                    **SAN FRANCISCO DIVISION**
16

| | |
|---|---|
| In re: | Bankruptcy Case No. 20-30242 (HLB) |
| ANTHONY SCOTT LEVANDOWSKI, | Chapter 11 |
| Debtor. | Hon. Hannah L. Blumenstiel |
| ANTHONY SCOTT LEVANDOWSKI, | Adv. Pro. No. 20-03050 |
| Plaintiff, | **UBER TECHNOLOGIES, INC.'S OBJECTION TO GOOGLE LLC'S MOTION TO REDEFINE THE PARAMETERS OF ITS INTERVENTION** |
| v. | |
| UBER TECHNOLOGIES, INC., | Date:   April 22, 2021 |
| Defendant. | Time:   2:00 p.m. (PST) |
| | Place:  Video/Telephonic Only |
| | United States Bankruptcy Court |
| | 450 Golden Gate Ave. |
| | Courtroom 19, 16th Floor |
| | San Francisco, CA 94102 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

I.      INTRODUCTION ........................................................................................1

II.     ARGUMENT .............................................................................................3

        A.      LEGAL STANDARD.........................................................................3

        B.      GOOGLE HAS NOT SATISFIED THE EXACTING STANDARD FOR
                RECONSIDERATION. .........................................................................4

                1.      The Court Has Already Considered And Rejected Google's
                        Economic Stake Argument. ..........................................................4

                2.      Google's "Meat and Potatoes" Argument Fails.........................................7

                3.      Uber Would Be Harmed If Google's Intervention Were Expanded.............9

                4.      Google Intervention Is Not Warranted Under Rule 24's Other
                        Provisions.....................................................................................9

III.    CONCLUSION...........................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of the West v. Super. Ct.*,
  2 Cal. 4th 1254 (1992) ...............................................................................................................6

*In re Catholic Bishop of N. Alaska*,
  No. 08-cv-90019, 2009 WL 8446700 (Bankr. D. Alaska March 25, 2009) ............................5

*Ctr. for Biological Diversity v. Kempthorne*,
  No. 08-CV-1339 CW, 2008 WL 4542943 (N.D. Cal. Oct. 2, 2008) .......................................4

*Christianson v. Colt Indus. Operating Corp.*,
  486 U.S. 800 (1988)................................................................................................................3

*de Leon v. Clorox Co.*,
  No. 19-MC-80296-DMR, 2020 WL 6381351 (N.D. Cal. Oct. 30, 2020) ................................5

*Greene v. U.S.*,
  996 F.2d 973 (9th Cir. 1993) ..................................................................................................5

*Sherman v. Yahoo! Inc.*,
  997 F. Supp. 2d 1129 (S.D. Cal. 2014)...........................................................................1, 3, 4

*U.S. v. Alisal Water Corp.*,
  370 F.3d 915 (9th Cir. 2004) ..................................................................................................5

*U.S. v. Blue Lake Power, LLC*,
  215 F. Supp. 3d 838 (N.D. Cal. 2016) .................................................................................1, 9

**Statutes**

11 U.S.C. § 541(a) ...............................................................................................................1, 8

11 U.S.C. § 1109(b) ..................................................................................................................1

**Other Authorities**

6 MOORE'S FED. PRAC. § 24.03 (2020)......................................................................................5

Uber Technologies, Inc. ("**Uber**") objects to the *Motion to Redefine The Parameters Of Its Intervention* (Adv. Dkt. 157) (the "**Motion**") filed by Google LLC ("**Google**").

## I.     INTRODUCTION

Twice before Google has urged this Court to allow it to intervene in Mr. Levandowski's breach of contract claims against Uber and in both instances the Court rejected this request. (*See* Adv. Dkt. 40 ("**9/3/20 Tr**."), 40-42); Adv. Dkt. 72 ("**10/8/20 Tr**."), 7, 36).) Instead, the Court exercised what Google agrees is the Court's very broad discretion over intervention (Motion at 11), to limit Google's participation in this adversary proceeding to the now-dismissed rescission claim and related affirmative defenses. *See U.S. v. Blue Lake Power, LLC*, 215 F. Supp. 3d 838, 844 (N.D. Cal. 2016). In doing so, this Court balanced Google's interest as a creditor under 11 U.S.C. § 1109(b) to *defensively* address what amounted to a property of the estate question under 11 U.S.C. § 541(a)—whether the April 11, 2016 Indemnification Agreement (the "**Contract**") existed as an asset of the estate or was validly rescinded—against allowing Google to participate *offensively* in affirmative claims against Uber in violation of the February 8, 2018 Waymo-Uber Settlement Agreement (the "**Waymo Settlement**"). (9/3/20 Tr. 29.) Recognizing that Google's participation in affirmative claims against Uber would cause delay as Uber and Google litigated that dispute in arbitration, the Court limited Google's participation in this proceeding.

With rescission out of the case, Google again asks the Court to expand its role. Nothing, however, has changed to justify reconsideration of the Court's prior ruling. *See Sherman v. Yahoo! Inc.*, 997 F. Supp. 2d 1129, 1139 (S.D. Cal. 2014). Google contends that the dismissal of the rescission claim is that change, but at the scheduling conference where the Court restated its ruling that Google would only be allowed to intervene in Mr. Levandowski's rescission claim and any related affirmative defenses, Mr. Levandowski's lawyers told the Court that he would be "fil[ing] a motion on rescission . . . sooner rather than later." (10/8/20 Tr. 23.) Instead of causing the Court to expand Google's role, this comment prompted the opposite response; the Court itself stated that if it tried only the rescission claim first, that would end the debate about the scope of Google's discovery rights, assuming the case continued, because "Google's not involved anymore." (10/8/20 Tr. 21-22.) In short, it was contemplated at the very start of this proceeding that Mr.

1  Levandowski's *defense* against rescission might be resolved before trial, leaving only the pursuit

2  of his affirmative claims against Uber. That did not cause the Court to expand Google's role then,

3  and it should not persuade it to do so now.[1]

4     The same reasons that led the Court to limit Google's participation to Mr. Levandowski's

5  defensive claim that the Contract was not rescinded continue to exist today. Google contracted

6  away its right to sue Uber for an affirmative recovery in the Waymo Settlement and agreed that

7  any dispute over a breach would be subject to mandatory arbitration. Allowing Google to intervene

8  in the affirmative claims Mr. Levandowski brings would be introducing a dispute over whether

9  Google has breached the Waymo Settlement into this case, making an expansion of Google's role

10  improper.

11     And contrary to Google's argument, neither Mr. Levandowski nor Google will be

12  prejudiced if the Court declines to reconsider its prior Order. (Motion at 14.) Google can continue

13  to assist Mr. Levandowski as it has done since the start of this proceeding. Google can give Mr.

14  Levandowski advice on strategy, witness preparation and examinations, arguments to be made,

15  and the like. It can even ghost-write Mr. Levandowski's briefs. Google can attend trial just like

16  any other creditor (or member of the public) and consult as much as it wants with Mr.

17  Levandowski. And if the Court seals the courtroom for any reason, Uber will not object to Google

18  remaining in the virtual courtroom. In short, Google can continue to do virtually everything it is

19  doing now.

20     Contrary to Google's arguments, that also in no way prejudices Mr. Levandowski and his

21  very capable trial team who have demonstrated that they need no help in preparing for trial. Mr.

22  Levandowski's counsel not only represented him throughout the arbitration hearing, but they also

23  represented Otto Trucking in the Waymo litigation. As a result, Mr. Levandowski's trial team has

24

25  _____

26  [1] Mr. Levandowski did eventually move for summary judgment on the rescission claim, advocating
   for the elimination of the only claim where Google was allowed to participate. (Adv. Dkt. 116.)
   While Uber disputes that this motion would have been granted, it is incorrect for Google to suggest
27  that Uber sought to dismiss its rescission claim to eliminate its participation in the case. (Motion
   at 7.) It did so for the reasons stated in its Rule 41 motion—to streamline what will already be a
28  complicated trial with many witnesses and exhibits and because its other defenses provide
   adequate relief.

1  participated in hundreds of depositions relevant to this matter, has a working familiarity with the

2  arbitration record and most of the Waymo record, and was therefore familiar with most of the key

3  documents and expert reports and testimony from those cases, even before this adversary

4  proceeding began. And despite the suggestion that Mr. Levandowski cannot pay for his defense,

5  it is important to note that before it realized the extent of Mr. Levandowski's contractual breaches

6  and misrepresentations, Uber paid the Goodwin firm over $10 million to represent Mr.

7  Levandowski in the related arbitration, and Mr. Levandowski has also paid Goodwin more than

8  $1 million to prepare for trial. (Bankr. Dkt. 29, ¶23; Bankr. Dkt. 288, at 5 n.5.) Further, Mr.

9  Levandowski reports over $60 million in assets in his bankruptcy schedules. (Bankr. Dkt. 375.)

10  This simply is not a situation where Goodwin has not been compensated to learn this case or faces

11  a significant risk of non-payment such that one might question the vigor of counsel's

12  representation.

13      Accordingly, the Court should decline Google's invitation to reconsider its September 3,

14  2021 *Order Granting In Part And  Denying In Part Google LLC's Motion to Intervene* (Adv. Dkt.

15  35).

16  **II.    ARGUMENT**

17      **A.    Legal Standard**

18      Google suggests that the Court's Intervention Order contemplated it might move to

19  reconsider and infers that the Court changed the exacting standard for such relief. (Motion at 9.)

20  To the contrary, the Court's prior Order simply stated that "[n]othing in this order should be

21  construed as restricting Google's right, *if any*, to seek reconsideration of or relief from this order,

22  or to appeal this order." (Adv. Dkt. 35, ¶4 (emphasis added).) So while the Court's Order did not

23  restrict Google's rights, it also did not grant Google any new rights or importantly change the

24  standard by which Google's motion for reconsideration should be judged.

25      The standard for reconsideration of an interlocutory ruling is exacting. Both "the 'law of

26  the case' doctrine and public policy dictate that the efficient operation of the judicial system

27  requires the avoidance of re-arguing questions that have already been decided." *Sherman.*, 997 F.

28  Supp. 2d at 1139; *accord Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 831 (1988)

1   (while court has the power to revisit its prior decision, "as a rule courts should be loathe to do so

2   in the absence of extraordinary circumstances such as where the initial decision was "'clearly

3   erroneous and would work a manifest injustice"'"). "As such, most courts adhere to a fairly narrow

4   standard by which to reconsider their interlocutory rulings. This standard requires that the party

5   show: (1) an intervening change in the law; (2) additional evidence that was not previously

6   available; or (3) that the prior decision was based on clear error or would work manifest injustice."

7   *Sherman*, 997 F. Supp. 2d at 1139.; *see also Ctr. for Biological Diversity v. Kempthorne*, No. 08-

8   CV-1339 CW, 2008 WL 4542943 (N.D. Cal. Oct. 2, 2008) (denying motion to expand intervenor's

9   role because intervenor had not shown that a "material difference in fact or law exists from that

10  which was presented to the Court" previously).

11          Google has not and cannot meet that standard here.

12          **B.      Google Has Not Satisfied The Exacting Standard For Reconsideration.**

13          Google does not argue that there has been a change in the law. Google does not argue that

14  the Court's two prior orders were clearly erroneous. Google does not argue that there is new

15  information not known at the time of the Court's original intervention ruling that should alter the

16  Court's original Intervention Order. Instead it offers a straw man, arguing that the question is not

17  whether it may intervene, but whether the conditions the Court placed on its intervention should

18  be altered. (Motion at 11.) But however one frames the question, the fact is that Google is asking

19  this Court to reconsider its prior ruling that set those conditions. And none of the four arguments

20  it advances for doing so justifies reconsideration here.

21

22                  **1.      The Court Has Already Considered And Rejected Google's Economic
                            Stake Argument.**

23          *First,* Google suggests that it has a significant economic stake in the outcome of the

24  adversary proceeding that justifies its participation in Mr. Levandowski's affirmative claims

25  against Uber. (Motion at 2-4.) Every creditor can argue that it has an economic stake in the

26  outcome of an estate lawsuit, and this is the same argument Google made before, when it

27  previously asked the Court to allow it to intervene in all of Mr. Levandowski's claims against

28  Uber. (*See* Adv. Dkt. 15, ¶3 ("[t]he Debtor's only prospect of fully satisfying its liability to Google

in this bankruptcy is to recover under the [Contract] . . . ."); *see also id.* ¶¶ 22-23.) The Court correctly rejected that argument previously, and it is improper for Google to raise this same argument again. *de Leon v. Clorox Co.*, 19-MC-80296-DMR, 2020 WL 6381351, at \*3 (N.D. Cal. Oct. 30, 2020) (a party seeking reconsideration of an earlier order "may not reargue any written or oral argument previously asserted to the court") (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).[2]

In its current Motion, Google offers a new twist on its prior argument, suggesting that its "economic" interest is unique because the Court has already pre-determined *before* the first witness has even testified that Google ███████████ and that the Court's primary concern must be with making sure Google is paid in full by Uber. (Motion at 2 (quoting Adv. Dkt. 84 ("**11/24/20 Tr.**"), 8.) Google infers that because Google's interests are supposedly the ██████████ for the Court, its intervention must be allowed. (*Id.* at 2.) But Google unfairly takes the Court's comments out of context. As Uber understands what the Court said, including the Court's subsequent colloquy with counsel, the Court was simply making the point that █████████ ████████████████████████████████████████████████ ███████████████████████████ (11/24/20 Tr. 9, *see also* 60-61 (noting standard for Rule 12(c) motions).)[3]

Further, if Google is a "victim," it is a "victim" *of Mr. Levandowski,* not Uber. Although

---

[2] The Ninth Circuit has long rejected Google's argument that a creditor of a plaintiff has a right to intervene in the plaintiff's lawsuit based on the fact that the plaintiff's success in litigation will facilitate payment of the creditor's claim. *See U.S. v. Alisal Water Corp.*, 370 F.3d 915, 920 (9th Cir. 2004); *Greene v. U.S.*, 996 F.2d 973, 976 (9th Cir. 1993); *see also* 6 MOORE'S FED. PRAC. §24.03 (2020); *accord In re Catholic Bishop of N. Alaska*, No. 08-cv-90019, 2009 WL 8446700, at \*2 (Bankr. D. Ala. March 25, 2009).

[3] Although it is not relevant to the intervention question, Mr. Levandowski's most recently filed schedules show that he is holding in excess of $60 million in assets, the net amount of his compensation from Google after payment of taxes, without accounting for various transfers that Mr. Levandowski made that should be avoided for the benefit of his estate. (Bankr. Dkt. 375.) And while Google complains that some of these assets are claimed as exempt, Uber has objected to the largest of the exemptions—$17 million held in a Roth IRA. (Bankr. Dkt. 421.) In addition, if Mr. Levandowski disgorges his compensation to Google, he may also be able to seek a tax refund. Thus, it simply is not accurate for Google to contend that it will be left without recourse if it does not collect from Uber.

Google does not refer to it in its Motion, most of the $127 million in compensation that the arbitration panel ordered *Mr. Levandowski* to disgorge was awarded because █████████ ████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████[4] Uber had absolutely nothing to do with Mr. Levandowski's █████████████████████ Tyto and did not cause Google's injury; in fact, Mr. Levandowski concealed his involvement in Tyto from Uber as well. ████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ This is consistent with the legal principle that an award of disgorgement is not intended to make the plaintiff whole; it is instead intended to ensure that a wrongdoer is not allowed to retain his wrongfully-obtained gains. *Bank of the West v. Super. Ct.*, 2 Cal. 4th 1254, 1269 (1992). In fact, ███████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████ making proof of any damage to Google a virtual impossibility.

As to Google's attempts to argue that it was victimized by Uber because Uber negotiated with and then bought Otto, Google repeats a theme it asserted in the now-settled Waymo litigation. Google is barred by the Settlement Agreement from asserting those claims a second time and its attempts to do so run squarely into the issue which caused this Court to limit the scope of its intervention.

In this case, Uber will establish at trial that it also was a "victim" of Mr. Levandowski: that Mr. Levandowski's fraud and misconduct caused Uber to incur hundreds of millions of dollars in

---

[4] In an effort to prejudice the Court against Uber and elide over the fact that Mr. Levandowski's Tyto misconduct is an Excluded Claim under the Contract for which there is no indemnification, Google argues that Mr. Levandowski's misconduct towards Google "all started back in 2015 and early 2016 when, Mr. Levandowski, while still a Google employee, entered into 'secret negotiations with Uber' to create a new company, Ottomotto LLC ('Otto') that would compete with Google, be staffed with Google engineers and sold to Uber after he left Google in January 2016." (Motion at 2.) This is false. The arbitration panel actually found that Mr. Levandowski was disloyal going back to the spring of 2012 when he secretly started Tyto, something he concealed from both Google and Uber. (*See* Adv. Dkt. 181-1, U-1 at 31-34.) Virtually all of the compensation that the arbitration panel ordered disgorged was earned during the time period when Mr. Levandowski's only misconduct was his secret control of Tyto.

damages. But, more importantly, Google's right to participate in the trial does not turn on "who was the victim." The sole questions in this case are whether the conditions for indemnification are met, and whether Mr. Levandowski wrongfully injured Uber.

With rescission out of the case, this trial is about: (i) whether Google's arbitration award against Mr. Levandowski was based upon an "Excluded Claim" within the meaning of section 2.1 of the Contract; (ii) whether Mr. Levandowski committed a "post-signing bad act" within the meaning of section 2.1 and Exhibit A to the Indemnification Agreement; (iii) whether Uber is entitled to contribution for the very substantial amounts Uber has already paid to Waymo and Google for Mr. Levandowski's misconduct; and (iv) whether Mr. Levandowski committed fraud or other tortious conduct that damaged Uber. As a creditor of Mr. Levandowski, Google has no special perspective on or right to litigate these issues. To the contrary, permitting it to do so would be inconsistent with the Waymo Settlement and release between Uber and Google. In short, this is a two-party dispute that does not depend upon or require Google's participation, which will only result in disruption and delay. The conditions the Court set in its Intervention Order should not be modified.

### 2. Google's "Meat and Potatoes" Argument Fails.

*Second*, Google takes another of the Court's comments out of context, arguing that the Court wanted to ensure it was able to participate in the "meat and potatoes" of the adversary proceeding and, with the rescission claim gone, it should now be allowed to participate in Mr. Levandowski's affirmative claims for relief against Uber. (Motion at 1, 6, 12 (quoting 9/3/20 Tr. 29.))



1 ██████████████████████████ What the Court termed the "meat and potatoes" of this lawsuit

2 was whether the Contract was still in force or had been rescinded—a dispute over the existence of

3 estate property under § 541. Mr. Levandowski's efforts to make Uber pay is different; unlike the

4 Contract itself, Mr. Levandowski's estate does not include Uber's cash. Mr. Levandowski's

5 affirmative claims to recover a monetary judgment against Uber are therefore different than a

6 dispute over whether a Contract exists. If Google were allowed to participate in Mr.

7 Levandowski's affirmative claims, it would, as the Court appreciated, trigger an arbitration and

8 unnecessarily complicate this adversary proceeding, justifying the conditions the Court imposed

9 on Google's intervention.

10 Further, during the initial hearing on the intervention ██████████████████████

11 ████████████████████████████████████████████████████████████████

12 ██████████████████████████████████████ It was apparent then, as it is today, that

13 if Uber was not allowed to rescind the Contract, Mr. Levandowski's other affirmative claims for

14 breach of contract would come into play. Yet, the Court did not rule that if rescission was not the

15 deciding issue, it would expand Google's intervention. Instead, Uber's understanding of the

16 Court's comment was that ████████████████████████████████████████

17 ████████████████████████████████████████████████████████████████

18 ███████████

19 Underscoring this point is the fact that at the next hearing in the case, when Google again

20 argued it should be allowed to intervene in all of Mr. Levandowski's Contract claims, Mr.

21 Levandowski argued that he intended to "file a motion on rescission . . . sooner rather than later."

22 (10/8/20 Tr. 23.) That did not persuade the Court to expand Google's role. Instead, the Court itself

23 commented that if it tried only the rescission claim first, that would end the debate about the scope

24 of Google's discovery rights, assuming the case continued, because "Google's not involved

25 anymore." (10/8/20 Tr. 21-22.) Exactly what has happened here was understood from the start to

26 be a possibility—and thus Google has not shown a change in circumstance justifying

27 reconsideration.

28

### 3. Uber Would Be Harmed If Google's Intervention Were Expanded.

***Third***, Google also argues that Uber would not be harmed if Google were allowed to intervene in Mr. Levandowski's affirmative claims for relief against Uber. (Motion at 13.) But that simply is not true. Because of Mr. Levandowski's misconduct, which he hid from Uber, Uber paid $250 million to Waymo. In return for that payment, Uber received a release from Google; in other words, it bargained never to see Google in a court-room again about anything related to Mr. Levandowski. Losing the benefit of that bargain prejudices Uber.

Google, on the other hand, will not be prejudiced at all if the Court declines to reconsider its ruling. Mr. Levandowski has an excellent trial team that has left no stone unturned. Mr. Levandowski's lawyers engaged in extensive discovery (including taking eleven depositions), served three expert reports, and filed four summary judgment motions. They also have hired a firm, with this Court's approval, to assist with trial preparation. (Bankr. Dkt. 400.) Mr. Levandowski has worked in lockstep with Google, as Google admits in its Motion. (Motion at 14.) The Court also can observe that Google and Mr. Levandowski have never once taken different positions in this proceeding. In short, there is no basis to believe that Google will be prejudiced in any way if the Court denies its request for reconsideration.

### 4. Google Intervention Is Not Warranted Under Rule 24's Other Provisions.

***Finally***, Google argues that it has a right to intervene under Rule 24(a)(2) or (b), grounds the Court did not reach previously, pointing to its first intervention motion. (Motion at 14-15.) While Uber disagrees that this is so for the reasons set forth in its response to that Motion (Adv. Dkt. 29), this argument is beside the point because it ignores the Court's very broad discretion to condition intervention. *See Blue Lake Power,* 215 F. Supp. 3d at 844. Previously, this Court determined that the proper exercise of its discretion was to limit Google's intervention to the rescission claim. Addressing whether there are other grounds under which intervention might be warranted (and there are not) would not alter the reasons why the Court exercised its discretion in the manner it did in the first place. Therefore, urging the Court to address the issues it previously did not reach is not a basis for reconsideration of the Court's Intervention Order.

# III.    CONCLUSION

For all of the foregoing reasons, Uber respectfully requests that the Court deny the Motion.

Dated: March 30, 2021

Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP


By: */s/ Debra I. Grassgreen*

Debra I. Grassgreen (CA Bar No. 169978)
Marion Manning (CA Bar No. 17854)
PACHULSKI STANG ZIEHL & JONES
LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Telephone:     (415) 263-7000
Facsimile:     (415) 263-7010
E-mail:        dgrassgreen@pszjlaw.com
               jrichards@pszjlaw.com

David J. Bradford (admitted *pro hac vice*)
Terri L. Mascherin (admitted *pro hac vice*)
Catherine Steege (admitted *pro hac vice*)
Katherine R. Ciliberti (admitted *pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
Telephone: (312) 222-9350
E-mail: dbradford@jenner.com
        tmscherin@jenner.com
        csteege@jenner.com
        kciliberti@jenner.com

*Counsel for Uber Technologies, Inc.*