Debra I. Grassgreen (CA Bar No. 169978)
Miriam Manning (CA Bar No. 178584)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Telephone: (415) 263-7000
Facsimile: (415) 263-7010
E-mail:     dgrassgreen@pszjlaw.com
            mmanning@pszjlaw.com

David J. Bradford (admitted *pro hac vice*)
Terri L. Mascherin (admitted *pro hac vice*)
Catherine Steege (admitted *pro hac vice*)
Katharine R. McLaughlin (admitted *pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
Telephone: (312) 222-9350
E-mail:     dbradford@jenner.com
            csteege@jenner.com
            tmascherin@jenner.com
            kmclaughlin@jenner.com

*Counsel for Uber Technologies, Inc.*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>ANTHONY SCOTT LEVANDOWSKI,<br><br>                    Debtor. | Case No. 20-30242 (HLB)<br><br>Chapter 11 |
| ANTHONY SCOTT LEVANDOWSKI, an individual,<br><br>                    Plaintiff,<br><br>        v.<br><br>UBER TECHNOLOGIES, INC.<br><br>                    Defendant. | Adv. Pro. No. 20-03050 (HLB)<br><br>**UBER TECHNOLOGIES, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE, OR, IN THE ALTERNATIVE, EXCLUDE THE EXPERT REPORT AND TESTIMONY OF J. CHRISTIAN GERDES[1]** |

---

[1] The redactions to the Opposition have been modified pursuant to the *Third Omnibus Order Re Motions To File Documents Under Seal* (Dkt 341).

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................1

II.  BACKGROUND ..................................................................................................3

    A.   Dr. Gerdes Reached an Opinion that the Planner Code, Which Mr. Levandowski Caused to be Transferred to Uber on May 10, 2016, Contained Waymo/Google Trade Secrets and Confidential Information. ................... 3

    B.   Uber Obtained Waymo's Express Written Consent for Dr. Gerdes to Testify in this Case Both at a Deposition and at Trial. ................................. 4

    C.   Uber Could Not Use, Disclose, or Even Access Key Information Related to Dr. Gerdes During The Fall of 2020. ............................................................. 5

    D.   Mr. Levandowski Had Ample Notice of Dr. Gerdes' Opinions and Uber's Intent to Call Him as a Witness............................................................................. 5

    E.   In January 2021, the Parties Agreed on Production in this Case of Dr. Gerdes' November 4, 2019 Report and Related Materials and Agreed That Dr. Gerdes May Be Deposed During Expert Discovery in this Case. ......................... 6

    F.   Dr. Gerdes Provided a Timely Expert Report as Required By Rule 26(a)(2)(B) and Provided a Full and Unimpeded Deposition...................................... 7

III. ARGUMENT .......................................................................................................8

    A.   Dr. Gerdes' Testimony is not Barred Under California Evidence Code § 703.5 Because That Rule does not Apply Here and Because Both Uber and Waymo Have Consented to His Testimony. ......................................................... 8

        1.   Section 703.5 Does Not Apply To A Consulting Expert Who Did Not Preside Over a Proceeding. .......................................................... 9

        2.   Both Parties to the Prior Engagement and Dr. Gerdes Have Consented to Dr. Gerdes Testifying at Trial in This Case. ............................ 11

        3.   Even if it Applied and Was Not Waived, Section 703.5 Should Not Preclude Dr. Gerdes From Testifying to His Expert Opinions. ..................... 13

    B.   Dr. Gerdes' Opinions Are Relevant to Uber's PSBA Claim and Defense. ............... 13

    C.   Uber Timely Provided an Expert Report From Dr. Gerdes and any Failure to Identify Him Earlier as an Expert Was Substantially Justified and Not Prejudicial. ................................................................................................ 15

        1.   Mr. Levandowski Cites No Authority for Excluding, on the Basis of Timeliness, an Expert Who Provided a Timely Expert Report. ................ 15

        2.   Any Delay in Formally Disclosing Dr. Gerdes as a Witness Was Substantially Justified by the Protective Order and Confidentiality Agreements in the Waymo Litigation............................................................. 16

Case: 20-03050   Doc# 351   Filed: 09/23/21   Entered: 09/23/21 21:56:57   Page 2 of
32

3. Mr. Levandowski Suffered no Surprise or Prejudice From the Timing of Uber's Disclosure of Dr. Gerdes as an Expert. ............................. 17

D. Dr. Gerdes' Opinions Are Not Inadmissible Under *Daubert*. .................................... 19

1. The Case Law Does Not Support the Exclusion of an Expert Who, Like Dr. Gerdes, Used Well Accepted Expert Methods. ............................. 19

2. The Relevant Materials that Dr. Gerdes Relied Upon Have Been Memorialized and Preserved. .......................................................... 22

3. Uber Did Not Improperly Instruct Dr. Gerdes Not to Answer Questions. ................................................................................. 24

IV. CONCLUSION ............................................................................................25

ii

Case: 20-03050    Doc# 351    Filed: 09/23/21    Entered: 09/23/21 21:56:57    Page 4 of
32

## Table of Authorities

**Page(s)**

**Cases**

*In re Application of Republic of Ecuador,*
    280 F.R.D. 506 (N.D. Cal. 2012) ................................................................................24

*Atmel Corp. v. Information Storage Devices, Inc.,*
    189 F.R.D. 410 (N.D. Cal. 1999) ................................................................................20

*Bona Fide Conglomerate, Inc. v. SourceAmerca,*
    No. 3:14-cv-00751, 2019 WL 1369007 (S.D. Cal. Mar. 26, 2019) ................................21

*Cassel v. Super. Court,*
    51 Cal. 4th 113, 127 (2011) ................................................................................12

*City of Pomona v. SQM North America Corp.,*
    750 F.3d 1046 (9th Cir. 2014) ................................................................................2, 19, 20

*Farmers Ins. Exchange v. Super. Court,*
    159 Cal. Rptr. 3d 580 (2013) ................................................................................11

*Foxgate Homeowners' Ass'n v. Bramalea,*
    26 Cal. 4th (2001) ................................................................................9, 12

*Hayhoe v. Cole,*
    No. C 96 2333, 1996 WL 590610 (N.D. Cal. Oct. 8, 1996) ................................15

*Hutchinson v. Hamlet,*
    No. C 02-974, 2006 WL 1439784 (N.D. Cal. May 23, 2006) ................................23, 24

*Lanard Toys Ltd. v. Novelty, Inc.,*
    375 Fed. App'x 705 (9th Cir. 2010) ................................................................................15, 16, 19

*Lee v. California Capital Ins. Co.,*
    237 Cal. App. 4th 1154 (2015) ................................................................................10

*McCloud v. Goodyear Dunlop Tires. N. Am., Ltd.,*
    No. 04-1118, 2007 WL 2584250 (C.D. Ill. Aug. 21, 2007) ................................19

*Mfg. Automation and Software Sys., Inc. v. Hughes,*
    No. 2:16-cv-08962, 2018 WL 3197696  (C.D. Cal. June, 25, 2018) ................................20

*Montgomery v. Wal-Mart Stores, Inc.,*
    No. 12CV3057, 2015 WL 11233382 (S.D. Cal. Sept. 24, 2015) ................................16

*Olam v. Congress Mortg. Co.*,
  68 F. Supp. 2d 1110 (N.D. Cal. 1999) ...................................................11, 12

*Parker v. Twentieth Century-Fox Film Corp.*,
  118 Cal. App. 3d 895 (1981)..................................................................10

*Patel v. Verde Valley Med. Ctr.*,
  No. CV-05-1129, 2009 WL 5842048 (D. Ariz. Mar. 31, 2009) ...................21

*Paulissen v. U.S. Life Ins. Co. in the City of New York*,
  205 F. Supp. 2d 1120 (C.D. Cal. 2002)...................................................16

*Pineda v. City & Cnty. Of San Francisco*,
  280 F.R.D. 517 (N.D. Cal. 2012)............................................................15

*Primiano v. Cook*,
  598 F.3d 558 (9th Cir. 2010)..................................................................20

*Reed v. Lieurance*,
  863 F.3d 1196 (9th Cir. 2017)................................................................20

*Rinaker v. Super. Court*,
  62 Cal. App. 4th 155 (1998)..............................................................11, 12

*Saeta v. Super. Court*,
  117 Cal. App. 4th 261 272 (2d Dist. 2004) .......................................9, 11, 12

*U.S. v. Lam*,
  No. CR 18-0527, 2020 WL 4349851 (N.D. Cal. July 29, 2020) ...................13

*Walters v. Boustead Sec., LLC*,
  No. G056250, 2019 WL 3024489 (Cal. Ct. App. July 11, 2019) ...................11

*Waymo LLC v. Uber Technologies, Inc.*,
  No. 17-cv-939 (N.D. Cal.) .............................................................. *passim*

*Whoop, Inc. v. Dyno Prods., Inc.*,
  75 Cal. Rptr. 90 (1998) ........................................................................11

*Wyatt Technology Corp. v. Malvern Instruments, Inc.*,
  No. CV 07-8298, 2010 WL 11505684 (C.D. Ill. Jan. 25, 2010)...................22

**Statutes**

California Arbitration Act, Cal. Civ. Code § 1282.2 *et seq.*.................................12

California Evid. Code § 703.5....................................................... *passim*

Unif. Arbitration Act § 1.2 (Unif. Law Comm'n 2000)..................................10

iv

**Court Rules**

Fed. R. Evid. 702 .................................................................................................................19

Fed. R. Civ. P. 16(f) ..........................................................................................................19

Fed. R. Civ. P. 26 ........................................................................................................ *passim*

Fed. R. Civ. P. 37(c).....................................................................................................15, 19

Case: 20-03050    Doc# 351    Filed: 09/23/21    Entered: 09/23/21 21:56:57    Page 6 of 32

# I.    INTRODUCTION

Mr. Levandowski's Motion to Strike or, in the Alternative, Exclude the Expert Report and Testimony of J. Christian Gerdes (the "Motion" or "Mot.") is based on a complete distortion of the record and four unfounded assertions.

First, California Evidence Code Section 703.5, which bars persons presiding over certain proceedings from later testifying about those proceedings, does not preclude Dr. Gerdes from testifying in this case. Dr. Gerdes served previously only as a "consulting expert" and did not "preside" over any "proceeding." Additionally, both parties to Dr. Gerdes' prior expert engagement, Waymo and Uber, expressly consented in writing to Dr. Gerdes testifying both at a deposition (which he did) and at trial in this case. Contrary to Mr. Levandowski's assertion, Waymo's consent was not limited to Dr. Gerdes providing factual, but not expert, testimony. Finally, even if it applied, Section 703.5 only precludes testimony about statements, conduct, decisions or rulings that occurred during a prior proceeding, and should not preclude Dr. Gerdes from testifying to expert opinions in this case.

Second, contrary to Mr. Levandowski's argument, Dr. Gerdes' testimony is directly relevant to this case. Mr. Levandowski expressly agreed in the "Post-Signing Specified Bad Act" ("PSBA") provision that he would forfeit any indemnification claim if, among other things, he caused Google or Waymo confidential information to be transferred to Uber after April 11, 2016.[2] A wealth of evidence, including Mr. Levandowski's own testimony, establishes that he directed his company, Ottomotto ("Otto") to transfer autonomous vehicle motion planner code to Uber on May 10, 2016. Dr. Gerdes, a leading expert on autonomous vehicle motion planning, testified at his deposition in this case that this motion planner code included Google/Waymo trade secrets and confidential information. Dr. Gerdes' testimony is directly relevant to proving Mr. Levandowski forfeited any claim to indemnification.[3]

---

[2] By reason of their affiliation with each other, Waymo and Google are both Former Employers of Mr. Levandowski under the Agreement. (Ciliberti Decl. Ex. 27, Stipulation.)

[3] Mr. Levandowski's narrative distorts the underlying facts. The evidence at trial will show that months before Uber had any reason to know that the planner code was tainted with Google confidential information, Mr. Levandowski had instructed Otto employees to transfer the code to Uber as quickly as possible, instructed them to work closely with Uber's engineers to integrate the code, and then tried to hide his involvement in the process. He did so even though Uber had been abundantly clear that it did not want any Google data or intellectual property anywhere near Uber and conditioned the

1

Third, Mr. Levandowski's argument that Uber violated disclosure deadlines with respect to Dr. Gerdes is specious. Uber did not list Dr. Gerdes as a potential expert only during a period of time when (a) it was precluded by both a protective order in *Waymo LLC v. Uber Technologies, Inc.*, No. 17-cv-939 (N.D. Cal.) (the "Waymo Litigation"), and confidentiality agreements associated with that matter, from disclosing Dr. Gerdes' opinions, and (b) Uber's counsel did not have access to an unredacted copy of Dr. Gerdes' prior opinions or the materials underlying them, and so could not fully evaluate his potential testimony. Uber diligently pursued and obtained permission to review these materials, then promptly identified Dr. Gerdes on its "will call" witness list. Uber also diligently obtained permission to present Dr. Gerdes' testimony in this case and then timely served an expert report from Dr. Gerdes, in full compliance with Rule 26(a)(2)(B). Uber made Dr. Gerdes available for a full day of deposition testimony during the expert discovery period set by the Court. Mr. Levandowski was aware of all of Uber's efforts related to Dr. Gerdes' work since September 2020, knew how Dr. Gerdes' analysis supported Uber's PSBA defense since October 2020, and argued since December 2020 that Dr. Gerdes should be deposed during the expert discovery phase. Mr. Levandowski was not in the least bit surprised or prejudiced by the timing of Uber's disclosure of Dr. Gerdes as an expert witness.

Fourth, Mr. Levandowski's argument that Dr. Gerdes should be excluded because his opinions cannot be "replicated" or "tested" (Mot. at 18-20) is legally and factually unfounded. Under well-established case law, "testing" or "replicating" an expert's analysis is but one of several alternative means of establishing its reliability. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1046 (9th Cir. 2014). Under *Daubert*, courts will not exclude a qualified expert when the expert employs recognized scientific methods and memorializes any relevant information in a written report, as did Dr. Gerdes. Additionally, the factual premise of Mr. Levandowski's "document destruction" argument is misleading. Although Dr. Gerdes was required to destroy *his copy* of certain materials, counsel in the Waymo Litigation were permitted to retain archival copies of virtually all materials, and Dr. Gerdes memorialized all information that he relied upon in his report.

---

indemnification agreement on Mr. Levandowski forfeiting any indemnification rights if he caused such a transfer. Mr. Levandowski now grasps at straws to try to avoid the consequences of having violated the single most important condition placed upon Uber's agreement to indemnify him.

Case: 20-03050    Doc# 351    Filed: 09/23/21    Entered: 09/23/21 21:56:57    Page 8 of
32

For all of these reasons and as discussed further below, the Court should deny Mr. Levandowski's motion to strike or exclude Dr. Gerdes' report and testimony.

## II.    BACKGROUND

### A.    Dr. Gerdes Reached an Opinion that the Planner Code, Which Mr. Levandowski Caused to be Transferred to Uber on May 10, 2016, Contained Waymo/Google Trade Secrets and Confidential Information.

█████████████████████████████████████████████████████ Waymo and Uber entered into a "Consultant Services Engagement Agreement" to retain Stanford Professor, Dr. J. Christian Gerdes "to serve as an expert." (Vu Decl. Ex. 1, June 28, 2018 Engagement Agreement.) The Engagement Agreement set forth the "subject" of Dr. Gerdes' "consultancy" as a "review of Uber's current planner software to determine whether it embodies any misappropriation of Waymo planner software trade secrets." (Id. at 1.) Dr. Gerdes was uniquely qualified to provide this expert consultation. He previously served as the first Chief Innovation Officer in the U.S. Department of Transportation, has authored over 200 articles related to motion planning and other aspects of autonomous vehicles, has taught multiple courses on vehicle dynamics and control at Stanford, has worked for approximately 25 years in designing self-driving vehicles and has been awarded 11 related patents.

Pursuant to this joint expert engagement, Dr. Gerdes analyzed whether Uber had received or used some 33 different alleged Waymo trade secrets. Although both Uber and Waymo submitted extensive materials to Dr. Gerdes pursuant to a joint protocol, there was no judicial or quasi-judicial proceeding or hearing. Among other things, Dr. Gerdes compared Waymo's alleged trade secrets with code that Otto transferred to Uber in May 2016, and compared that code to the state of the art based on a review of scientific literature.

An autonomous vehicle motion planner makes decisions about a vehicle's motions. In an expert report dated November 4, 2019, Dr. Gerdes opined that the combination of three alleged Waymo trade secrets ("TS 1-3") constituted a single trade secret related to the planner for an autonomous vehicle. (Ciliberti Decl. Ex. 1, Gerdes Dep. 250:4-10, 256:9-19.) ████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

3

[REDACTED]

Don Burnette, a former Google employee who co-founded Otto with Mr. Levandowski,

[REDACTED] On May 10, 2016, Mr.

Levandowski instructed Jur van den Berg (another Otto employee) to transfer this Otto planner code to Uber, without disclosing that it incorporated a Google trade secret and Google confidential information. (Ciliberti Decl. Ex. 4, van den Berg Dep. 72:20-75:15.) Dr. Gerdes testified at his deposition in this case that the transmission of the code should have "raise[d] IP concerns on the part of Mr. Levandowski as a lead officer of Otto[.]" (Ciliberti Decl. Ex. 1, Gerdes Dep. 275:19-24.)

**B.** **Uber Obtained Waymo's Express Written Consent for Dr. Gerdes to Testify in this Case Both at a Deposition and at Trial.**

On February 13, 2021, with full notice that Uber was seeking to present Dr. Gerdes as both a fact and an expert witness in this case, Waymo consented to Dr. Gerdes' testifying both at deposition and at trial, and consented to Uber compensating Dr. Gerdes at his current expert rate of $1250 an hour. The engagement letter provides, among other things:

> You [Dr. Gerdes] have agreed to accept a trial subpoena and deposition subpoena in the Adversary Proceeding and have **agreed to prepare for and to provide a deposition as well as to appear at trial and provide trial testimony**. . . . Uber expects that your testimony will be limited to the substance of the statements made in your written November 4, 2019 Final Report with respect to Trade Secrets 1-3, as well as to explaining the process by which You made your determinations with respect to matters related to Trade Secrets 1-3. **Waymo has consented to your providing this testimony in response to Uber's subpoenas, provided your work and Waymo's confidential information are maintained as "Highly Confidential - Attorneys Eyes Only" under the Protective Order entered in the Adversary Proceeding on September 16, 2020 (the "Protective Order") (a copy of which is attached as Exhibit A).**

(Vu Decl. Ex. 7, Feb. 13, 2021 Engagement Letter at 1 (emphasis added).) That agreement further provides that nothing in the June 2018 engagement letter among Waymo, Uber and Dr. Gerdes would "preclude [Dr. Gerdes] from providing deposition or trial testimony in the Adversary Proceeding, pursuant to the terms of this [February 2021] Engagement and limited to the terms of Waymo's

4

consent." (*Id.*) Waymo expressly consented in writing to this new engagement (*id.* at 1-2, 4), knowing that five days earlier, Uber stated in an email to counsel for Mr. Levandowski, Waymo, and Google that Dr. Gerdes "is both an expert witness and [*sic*] a fact witness who may offer opinions." (Ciliberti Decl. Ex. 5, Feb. 8, 2021 Bradford Email.)

### C.     Uber Could Not Use, Disclose, or Even Access Key Information Related to Dr. Gerdes During The Fall of 2020.

At the outset of discovery, Uber could not fully access or evaluate Dr. Gerdes' prior expert work for purposes of this case. Uber was prohibited by confidentiality agreements with Waymo from using or disclosing, in this case, Dr. Gerdes' prior expert analysis. (Vu Decl. Ex. 1, June 28, 2018 Gerdes Engagement Letter, at 2-4.) In addition, Uber was prohibited by the protective order in the Waymo Litigation from reviewing for use in this case any Waymo Litigation materials that had been designated confidential by Waymo, including an un redacted copy of Dr. Gerdes' analysis, and the deposition transcripts of two key witnesses, Don Burnette and Jur van den Berg, which were important to understanding Dr. Gerdes' analysis. *Waymo LLC v. Uber Technologies, Inc.*, No. 17-cv-939 (N.D. Cal.), Dkt. 60 at § 7.1. While these restrictions were in place, Uber could not fairly assess Dr. Gerdes as a potential witness for this case. Uber diligently worked to remove these barriers to its review and use of Dr. Gerdes' work and related materials, but as discussed further below, was not able to clear the last significant hurdle until mid-February 2021.

### D.     Mr. Levandowski Had Ample Notice of Dr. Gerdes' Opinions and Uber's Intent to Call Him as a Witness.

Nevertheless, since September, Mr. Levandowski had notice of Uber's intent to secure Dr. Gerdes' analysis and of its relevance to Uber's PSBA defense and counterclaim. On September 23, 2020, Uber notified Mr. Levandowski that it had served a subpoena on Waymo seeking Dr. Gerdes' 2019 report and related materials for use in this case. (Ciliberti Decl. Ex. 6, Notice of Subpoena.) On October 7, 2020, Uber moved to compel Waymo to produce those documents, arguing the materials "appear highly relevant to Uber's Post-Signing Specified Bad Acts defense." (Ciliberti Decl. Ex. 7, Bradford Letter at 4.) On October 20, 2020, Uber served an interrogatory answer asserting "[o]n information and belief" that on May 10, 2016, "Otto possessed confidential Google information and trade secrets" related to the planner, and that Mr. Levandowski had committed a PSBA with respect to

5

the planner because he "directed" the "use of that confidential Google information and trade secret." (Ciliberti Decl. Ex. 8, Uber Interrog. Resp. at 14-15.) Uber explained that it could not provide more detail at that time because: "Waymo has objected to Uber reviewing or using certain parts of the Waymo Litigation record related to the planner. For that additional reason, Uber reserves the right to supplement or amend this answer." (*Id.* at 15.)

By November 24, 2020, Mr. Levandowski recognized that "Uber has put at issue the Gerdes report and issues relating to the Otto Planner." (Ciliberti Decl. Ex. 9, Nov. 24, 2020 Vu Email.) By December 14, 2020, Uber obtained consent from Waymo to produce the redacted version of Dr. Gerdes' 2019 report to Mr. Levandowski. (Ciliberti Decl. Ex. 10, Dec. 14, 2020 Jaffe Email.) Uber provided the redacted report to him two days later, on December 16, 2020. (Ciliberti Decl. Ex. 11, Dec. 16, 2020 Ciliberti Email.) That same day, Uber produced to Mr. Levandowski numerous emails demonstrating that Mr. Levandowski had caused, induced, and directed his Otto employees to transfer the Otto planner to Uber and instructed his employees to help Uber's personnel to integrate it into their systems. (Ciliberti Decl. Ex. 12, Dec. 16, 2020 Uber's production transmittal.)

On December 22, 2020, Uber obtained an Order from Judge Alsup allowing it to review critical materials from the Waymo Litigation for purposes of this case, which finally allowed Uber's counsel to review the critical Burnette and van den Berg deposition transcripts. *Waymo LLC v. Uber Technologies, Inc.*, No. 17-cv-939 (N.D. Cal.), at Dkt. 2733.[4] That same day, Mr. Levandowski listed Dr. Gerdes among the people that he planned to depose. (Ciliberti Decl. Ex. 13, Dec. 22, 2020 Vu Email.) And on January 6, 2021, Uber identified Dr. Gerdes on its preliminary "will call" witness list for trial. (Ciliberti Decl. Ex. 14, Jan. 6, 2021 Ciliberti Email.)

**E.    In January 2021, the Parties Agreed on Production in this Case of Dr. Gerdes' November 4, 2019 Report and Related Materials and Agreed That Dr. Gerdes May Be Deposed During Expert Discovery in this Case.**

---

[4] On October 23, 2020, this Court ruled any request to use confidential information from the Waymo Litigation in this case should be presented to Judge Alsup. (Dkt. 75.) On November 5, 2020, Uber moved to modify the Waymo Litigation protective order to allow for the review and use of materials from that proceeding in this case. *See Waymo LLC v. Uber Technologies, Inc.*, No. 17-cv-939 (N.D. Cal.), at Dkt. 2726.

6

Despite Judge Alsup's order, Uber still did not have access to an unredacted copy of Dr. Gerdes' report, or permission to produce it to Mr. Levandowski.

On January 6, 2021, Waymo, Uber, and Mr. Levandowski agreed that Waymo would produce the 2019 Gerdes report and supporting materials without redactions of the portions related to Trade Secrets 1-3. (Ciliberti Decl. Ex. 15, Jan. 7, 2021 Ciliberti Email confirming agreement.) Pursuant to that agreement, on January 14, 2021, for the first time, Waymo produced to Uber and Mr. Levandowski the 2019 Gerdes report with the full analysis of TS 1-3 visible. (Ciliberti Decl. Ex. 16, Jan. 14, 2021 Jaffe Email.) On January 15 and 19, 2021, Waymo produced certain supporting materials. (*Id.*, Jan. 15 and 19, 2021 production transmittal emails.)

Throughout January, counsel for Uber, Waymo, Google, and Levandowski also negotiated extensively about Dr. Gerdes' deposition and trial testimony. (*E.g.*, Ciliberti Decl. Ex. 17 (Jan. 19, 2021 Ciliberti Email); Ex. 18 (Jan. 26, 2021 Bradford Email); Ex. 19 (Feb. 1, 2021 Vu Email).) Uber sought to elicit testimony from both Dr. Gerdes and Waymo regarding the planner software, but offered to forgo Waymo's deposition if Waymo consented to Dr. Gerdes testifying in this case. (*See id.*) During those negotiations, Mr. Levandowski's counsel actively sought to depose Dr. Gerdes during expert discovery. (*See* Ciliberti Decl. Ex. 20 (Jan. 12, 2021 Vu Email); Ex. 19 (Feb. 1, 2021 Vu Email).)

On February 5, 2021, Uber's counsel confirmed, through communications in which Waymo's counsel participated, that Dr. Gerdes would agree to testify both at deposition and trial in this case. (Ciliberti Decl. Ex. 21, Feb. 5, 2021 Bradford Email.) And on February 13, 2021, Waymo consented to Dr. Gerdes' testifying both at deposition and trial. (Vu Decl. Ex. 7, Feb. 13, 2021 Engagement Letter.) In exchange, Uber agreed not to depose Waymo on the Planner issues. (*See* Ciliberti Decl. Ex. 22, Feb. 9, 2021 Bradford Email.)

### F. Dr. Gerdes Provided a Timely Expert Report as Required By Rule 26(a)(2)(B) and Provided a Full and Unimpeded Deposition.

On February 22, 2021, the date for the exchange of expert disclosures under the amended Trial Scheduling Order , Dr. Gerdes provided an expert report as required by Rule 26(a)(2)(B). (Vu Decl. Ex. 8, Feb. 22, 2021 Gerdes Report.) The report disclosed the opinions to be offered by Dr. Gerdes in this case, and also attached and incorporated ██████████████████████████ (*Id.*) On

March 2, 2021, Waymo objected to the expert report, contending that it and any communication related to its preparation went beyond the scope of the February 13, 2021 engagement letter. (Ciliberti Decl. Ex. 23 at 2-3, March 2, 2021 Jaffe Email.) Uber conferred with Waymo, pointing out that Waymo had consented to Dr. Gerdes' "preparing for" and "providing" both deposition and trial testimony, and that his expert report was a prerequisite to Dr. Gerdes' ability to give expert testimony at trial. (*See id.* at 1-2, March 3, 2021 Bradford Email.) In an effort to avoid further misunderstanding, Uber agreed not to communicate again with Dr. Gerdes prior to his trial testimony, absent certain circumstances not relevant to this motion. (Ciliberti Decl. Ex. 24, March 19, 2021 Bradford Email.)

On March 4, 2021, Mr. Levandowski and Google deposed Dr. Gerdes for approximately 7 hours regarding the opinions in his February 22, 2021 report, as well as opinions in his November 4, 2019 report. As discussed below, Uber did not improperly instruct Dr. Gerdes not to answer any permissible questions, and, following the deposition, repeatedly offered to make Dr. Gerdes available for further deposition if Mr. Levandowski identified any instance of improper instruction. (Ciliberti Decl. Ex. 25 at 1 (Mar. 31, 2021 Bradford Email), 3 (Mar. 15, 2021 Bradford Email), 4 (Mar. 11, 2021 Bradford Email).) Mr. Levandowski did not respond to that invitation. (*See id.*)

## III.    ARGUMENT

### A.    Dr. Gerdes' Testimony is not Barred Under California Evidence Code § 703.5 Because That Rule does not Apply Here and Because Both Uber and Waymo Have Consented to His Testimony.

Mr. Levandowski seeks to prevent this Court from hearing Dr. Gerdes' testimony altogether based on California Evidence Code Section 703.5. But that provision only prevents mediators, arbitrators and persons presiding over quasi-judicial proceedings from testifying to the substance of those proceedings. It states only that "[n]o person presiding at any judicial or quasi-judicial proceeding, and no arbitrator or mediator, shall be competent to testify, in any subsequent civil proceeding, as to any statement, conduct, decision, or ruling, occurring at or in conjunction with the prior proceeding." Cal. Evid. Code § 703.5. Furthermore, the policy considerations underlying Section 703.5 serve only to protect the parties and the neutral to the prior proceeding—not a third party who was a stranger to that proceeding. Section 703.5 does not bar Dr. Gerdes' testimony in this case for at least three reasons.

### 1. Section 703.5 Does Not Apply To A Consulting Expert Who Did Not Preside Over a Proceeding.

First, Section 703.5 applies only to mediators, arbitrators and others who preside over a "proceeding," and not to the work of a jointly retained consulting expert like Dr. Gerdes. Most of the cases addressing Section 703.5 concern mediators and arbitrators. *See, e.g.*, *Foxgate Homeowners' Ass'n v. Bramalea*, 26 Cal. 4th 1, 15 (2001) (treating 703.5 as part of the confidentiality privileges applicable to mediation); *Saeta v. Super. Ct.*, 117 Cal. App. 4th 261, 274 (2004) (finding the privilege in Section 703.5 did not apply to a review board). Although stated as a rule of witness competence, Section 703.5 has been treated by many courts as a confidentiality privilege, and under California law, "privileges are narrowly construed so as to keep them within the limits of the statutes because they operate to prevent the admission of relevant evidence and impede the correct determination of issues." *Saeta*, 117 Cal. 4th at 272 (discussing Section 703.5).

Mr. Levandowski cites no case applying this "prior proceedings" privilege to a jointly retained consulting expert.[5] Mr. Levandowski cannot dispute that Dr. Gerdes was not serving in a quasi-judicial role. According to a case that Mr. Levandowski cites, "A quasi-judicial proceeding is held before a governmental or administrative board or officer vested with limited judicial powers." *Saeta*, 117 Cal. App. 4th at 167 at n.1 (citing *B.C. Cotton, Inc. v. Voss*, 33 Cal. App. 4th 929 (1995)). Dr. Gerdes was not vested with judicial powers and was not a governmental or administrative officer.

Nor did Dr. Gerdes act as an arbitrator or conduct an arbitration. In *Saeta*, in determining that a review board did not conduct an arbitration, the court noted that arbitrations involve decisions made "after a hearing" (quoting Black's Law Dictionary) and that neither party had sought to confirm the review board's recommendation as an arbitration award under Section 1285. *Id.* at 268. Dr. Gerdes did not make a decision after a hearing, nor did any party seek to confirm his opinion under Section 1285. Further, by the terms of his "Consultant Services Engagement Agreement," Dr. Gerdes was engaged "as an expert," not an arbitrator. (Vu Decl. Ex. 1, 2019 Engagement Letter at 1.) There is no

---

[5] Contrary to Mr. Levandowski's argument (*see* Mot. at 12-13), the California Supreme Court in *Foxgate* did not recognize various additional categories of neutrals as "arbitrators," but rather collected and cited various statutory confidentiality requirements not related to Section 703.5. *See Foxgate,* 26 Cal. 4th at 15, n.11.

Case: 20-03050   Doc# 351   Filed: 09/23/21   Entered: 09/23/21 21:56:57   Page 15 of 32

reference in the Engagement Agreement to an arbitration or mediation. (*See generally id.*) And under the Uniform Arbitration Act, an "Arbitrator" is "an individual appointed to render an award . . . in a controversy that is subject to an agreement to arbitrate."[6] Dr. Gerdes was not appointed to render an award and did not preside over a proceeding that was the subject of an agreement to arbitrate.

Further, although Uber and Waymo agreed that Dr. Gerdes' final opinion would be binding, the proceedings before him did not include many of the essential elements of an arbitration. Under the California Arbitration Act (the "Act"), an arbitration requires a hearing (Cal. Civil Code § 1282.2(a)(1)) at which the parties have a right to present witnesses (*id.* §§ 1282.2(a)(2)(A), 1282.2(d)). Additionally, under the Act, the arbitrator has authority to rule on the admission or exclusion of evidence and other procedural matters (*id.* § 1282.2(c)), to approve or disapprove attorney appearances (*id.* §1282.4(d)), to issue subpoenas (*id.* § 1282.6), and to administer oaths (*id.* § 1282.8).

(*See* Vu Decl. Ex. 1, June 28, 2018 Engagement Letter;

The only decisions Mr. Levandowski cites in which Section 703.5 was applied to exclude testimony from someone other than a mediator or arbitrator involved the unique circumstances of an appraisal arbitration proceeding or a court-appointed referee with authority to act as a judge. In *Khorsand*, the appellate court applied section 703.5 to a member of a statutorily mandated insurance appraisal panel, relying, without analysis, on the assumption that "appraisals are agreement-based arbitration proceedings subject to the statutory scheme regulating nonjudicial arbitration." *Khorsand*, 20 Cal. App. 5th at 1037.[7] At least one other decision has recognized, however, that even an appraisal proceeding should not be considered an arbitration unless the parties expressly intended to arbitrate.

---

[6]Unif. Arbitration Act § 1.2 (Unif. Law Comm'n 2000), available at www.uniformlaws.org/HigherLogic/System/DownloadDocumentFile.ashx?DocumentFileKey=cf35cea8-4434-0d6b-408d-756f961489af.

[7] Mr. Levandowski also cites *Lee v. California Capital Ins. Co.*, 237 Cal. App. 4th 1154 (2015), another appraisal case, but *Lee* did not deal with the admissibility of testimony. *Id.* at 1165. And he cites *Parker v. Twentieth Century-Fox Film Corp.*, 118 Cal. App. 3d 895 (1981), which involved an outside accountant, but which also did not determine the admissibility of the accountant's testimony; rather, it addressed whether a court improperly ignored a dispute resolution provision when it submitted a net profits issue to the court, instead of to an outside accountant. *Id.* at 902-05.

*See Walters v. Boustead Sec., LLC*, No. G056250, 2019 WL 3024489, at *5 (Cal. Ct. App. July 11, 2019) (unpublished decision). Here, as noted, there was no intention to arbitrate, no agreement to arbitrate, no hearing, and no award. In short, Uber and Waymo are sophisticated parties who knew how to enter into an agreement to arbitrate, but chose not to do so.

Finally, in straining to expand Section 703.5 to bar expert testimony, Mr. Levandowski relies on a *depublished* opinion that "no longer exists" as a matter of law, *Whoop, Inc. v. Dyno Prods., Inc.*, 75 Cal. Rptr. 2d 90, 100 (1998).[8] *Whoop* was not only depublished, but it concerned the appointment of a retired judge (referred to both as a "referee" and "production consultant") under Code of Civil Procedure 638, who was authorized to act with "all the jurisdiction and authority" of a sitting "Judge of the Superior Court," and to "conduct all proceedings according to all applicable procedural rules and ethical considerations as if he were presiding as a judge of the Superior Court." *Whoop, Inc.*, 75 Cal. Rptr. 2d at 93. Here, Dr. Gerdes was not acting as a judge nor authorized by a court to do so; nor did he conduct any proceedings of follow any Code of Civil Procedure.

This Court should reject Mr. Levandowski's invitation to make new law by extending this evidentiary privilege to prevent a qualified expert from testifying. In determining, as matter of first impression, whether to extend Section 703.5 to bar testimony from a prior consulting expert, this Court should recognize that "the privileges contained in the Evidence Code are exclusive and the courts are not free to create new privileges as a matter of judicial policy." *See Saeta*, 117 Cal. App. 4th at 272. Such an unprecedented extension of this privilege is unwarranted in this case.

### 2. Both Parties to the Prior Engagement and Dr. Gerdes Have Consented to Dr. Gerdes Testifying at Trial in This Case.

Second, the California Supreme Court has recognized that Section 703.5 and other privileges protecting the confidentiality of mediations may be waived by consent. In fact, at least one court has **required** a neutral to testify—even over the neutral's objection—when the parties to the prior proceeding expressly waived confidentiality. *Olam v. Cong. Mortg. Co.*, 68 F. Supp. 2d 1110, 1130 (N.D. Cal. 1999); *see also Rinaker v. Super. Court*, 62 Cal. App. 4th 155, 167 (1998) (compelling a

---

[8] The depublished *Whoop* opinion, at 75 Cal. Rptr. 2d 90, was "[d]eleted on direction of Supreme Court by order dated August 12, 1998." "Without precedential value, a depublished opinion is no longer part of the law and thus ceases to exist." *Farmers Ins. Exch. v. Super. Ct.*, 218 Cal. App. 4th 96, 110 (2013).

11

mediator to testify); *Cassel v. Super. Court*, 51 Cal. 4th 113, 127 (2011) (citing *Olam* and *Rinaker* with approval); *Foxgate*, 26 Cal. 4th at 16-17 (recognizing that express waiver is inapplicable where one party had not waived confidentiality).

Unlike any case cited by Mr. Levandowski, in this case, both parties to Dr. Gerdes' prior engagement, Uber and Waymo, as well as Dr. Gerdes himself, have consented to his testifying at deposition and trial in this case. In all the reported cases, only a party to the prior proceeding—or the neutral—have been allowed to invoke Section 703.5. *See Olam,* 68 F. Supp. 2d at 1130 ("section 703.5 . . . has the effect of making a mediator the holder of an independent privilege"); *Saeta*, 117 Cal. App. 4th at 265, 271-72 (construing section 703.5 as a privilege which may be invoked by an arbitrator or mediator); *Foxgate*, 26 Cal. 4th at 5, n.12 (describing section 703.5 as a "testimonial immunity privilege"). Mr. Levandowski cites no case where both parties to the prior engagement, plus the neutral, all agreed that the neutral could testify in a subsequent proceeding, but the court barred the testimony based on the objection of an outside party who took issue with the substance of the proposed testimony because it was damaging to his case on the merits.

In fact, in *Olam*, the Court permitted such testimony without the consent of the mediator. In *Olam,* both parties waived the confidentiality of a prior mediation, but the court assumed that the mediator was invoking Section 703.5 and preferred not to testify. 68 F. Supp. 2d at 1130. The court nonetheless concluded that consent of the parties coupled with the need for the testimony outweighed the confidentiality interests underlying Section 703.5, and it compelled the mediator's testimony. *Id.* at 1136. Here, because Dr. Gerdes has also consented to testifying, none of the public policy concerns underlying Section 703.5—namely protecting the confidentiality of certain prior proceedings and protecting certain neutrals from appearing involuntarily in later proceedings—would be served by precluding Dr. Gerdes from testifying. The Court should not forge new ground by prohibiting testimony based on Section 703.5 when both the parties to the prior engagement and the "neutral" witness have all consented to the testimony and it is highly relevant on the merits.

### 3. Even if it Applied and Was Not Waived, Section 703.5 Should Not Preclude Dr. Gerdes From Testifying to His Expert Opinions.

Third, even if Section 703.5 applied and was not waived by consent, it would only preclude testimony about what was said or done during a prior "proceeding." The reference in Section 703.5 to "conduct . . . occurring at or in conjunction with a prior proceeding" concerns only what was said and done at the proceeding, not the underlying events or information that were the subject of the hearing.[9]

At minimum, Dr. Gerdes should be permitted to testify, without referencing that prior proceeding, about his opinion that the planner code contained Google confidential information. Dr. Gerdes has made clear that he would reach this same opinion today based only upon Don Burnette's 2017 deposition, which was taken in the Waymo Litigation and not in connection with Dr. Gerdes' engagement. (*See* Ciliberti Decl. Ex. 1, Gerdes Dep. 256:9-19: "Fair to say . . . Don Burnette's deposition itself established that the Otto planner utilized ATS or Trade Secrets 1-3.")

Thus, even if this Court were to extend Section 703.5 beyond its statutory scope, it should nonetheless allow Dr. Gerdes to testify and at most prohibit him from disclosing what was said or done during a prior "proceeding."

### B. Dr. Gerdes' Opinions Are Relevant to Uber's PSBA Claim and Defense.

Mr. Levandowski's argument that Dr. Gerdes should be barred from testifying because Dr. Gerdes "makes no findings with respect to any actions by Mr. Levandowski," (Mot. at 5), is beyond bizarre and does not speak to admissibility.

Mr. Levandowski agreed that his Indemnification "Agreement shall immediately become null and void and of no further force and effect and there shall be no liability on the part of [Uber] to

---

[9] If the provision applied to the underlying conduct at issue in the prior proceeding, then an exception to Section 703.5 would allow for testimony related to the transfer of the planner code. An exception in Section 703.5 states that it does not apply to "conduct that could . . . (b) constitute a crime." Section 703.5. Here, both the transfer and facilitation of the transfer of the planner "could constitute" criminal theft of trade secrets. *See, e.g.*, *U.S. v. Lam*, No. CR 18-0527 WHA, 2020 WL 4349851, at *1 (N.D. Cal. July 29, 2020) (facilitating a transfer of a former employer's trade secret is a crime).

13

indemnify [Mr. Levandowski] for *any* Indemnified Claims" if Mr. Levandowski committed any PSBA. (Ciliberti Decl. Ex. 26, Indemnification Agreement, Section 2.1(a).) The agreed definition of a PSBA is broad, and includes the transfer of Google or Waymo "trade secrets" or "confidential information." (*Id.* at Ex. A, §§ 2-3.) It includes both transfers by Mr. Levandowski and transfers that he "directed, caused, induced, knowingly contributed to, or knowingly permitted someone else to [m]ake." (*Id.* at Ex. A, § 1, definition of "Act.") Thus, to prove Mr. Levandowski committed a PSBA and forfeited his indemnification claim, Uber need only prove that Mr. Levandowski directed, caused or induced someone else to transfer to Uber <u>either</u> a trade secret <u>or</u> confidential information belonging to Waymo or Google. (*Id.* at Ex. A, definition of "Post-Signing Specified Bad Acts.")

Dr. Gerdes' testimony supplies an important aspect of this proof: he will testify that ███████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ Under Federal Rule of Evidence 401, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Dr. Gerdes' testimony undoubtedly tends to make a fact of consequence to the action ████████ ███████████████████████████████████████████████████████ more probable. Accordingly, it is relevant.

Testimony from others, together with contemporaneous documents, will establish the other important part of the PSBA defense: that Mr. Levandowski directed Mr. van den Berg to make this transfer to Uber on May 10, 2016. Mr. van den Berg testified that he sent the planner code to Uber because he "was asked by Anthony Levandowski" to do so. (Ciliberti Decl. Ex. 4, van den Berg Dep. at 72:20-73:10, 144:15-145:9.) Mr. Burnette testified that Mr. Levandowski asked him to show Uber how the Otto planning software worked. (Ciliberti Decl. Ex. 2, Burnette Dep. 97:12-25; *see also id.* at 188:12-189:2.) Mr. Levandowski himself testified that he asked "Don [Burnette] to give [Uber] access to everything" and that his "intention [was] to give [Uber] access to [Otto's] code base." (Ciliberti Decl. Ex. 28, Levandowski Dep. 431:13-435:8.) Numerous contemporaneous emails also demonstrate Mr. Levandowski's role in this transfer. (*See, e.g.*, Ciliberti Decl. Ex. 29, Uber-AL_0000361, (June 16, 2016 Email from D. Burnette: "We've been trying to push planner changes to [Uber] . . . . Anthony

[Levandowski] has requested that we provide [Uber] . . . full code repository access."); Ex. 30, UBER-AL_00000978 (May 30, 2016 Email from A. Levandowski: "We've provided our planner to these same folks and we will be pushing more updates to them . . . thanks to Jur and Don for making this happen"); *see also* Ex. 31, Interrogatory Response at 14-15 (listing documents).)

Thus, Dr. Gerdes' testimony is not only relevant—it is fatal to Mr. Levandowski's indemnification claim. It establishes that Mr. Levandowski committed a PSBA and thereby rendered the indemnification agreement "null and void" and eliminated any "liability on the part of [Uber] to indemnify" him. For these reasons, Mr. Levandowski's relevance argument should be rejected.

### C. Uber Timely Provided an Expert Report From Dr. Gerdes and any Failure to Identify Him Earlier as an Expert Was Substantially Justified and Not Prejudicial.

Uber worked diligently and transparently to obtain access to and permission to use and disclose Dr. Gerdes' analysis, and timely provided a compliant expert report from Dr. Gerdes. Any delay in identifying Dr. Gerdes as a potential expert was substantially justified and not prejudicial.

#### 1. Mr. Levandowski Cites No Authority for Excluding, on the Basis of Timeliness, an Expert Who Provided a Timely Expert Report.

Mr. Levandowski cites no authority for excluding an expert who, as did Dr. Gerdes, provided a timely expert report under Rule 26(a)(2)(B). Mr. Levandowski cites only one case in support of this exclusion argument (Mot. at 16), *Pineda v. City & Cnty. Of San Francisco*, 280 F.R.D. 517 (N.D. Cal. 2012), but that case, unlike this one, involved both an untimely and deficient expert report. And even in *Pineda*, the court rejected the "harsh sanction of exclusion," and instead permitted a supplemental report from one of the experts.[10]

Even as to untimely expert reports, Rule 37(c)(1)"contains an express exception under which a failure timely to serve an expert report may be excused if the failure was substantially justified or is harmless." *Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. App'x 705, 713 (9th Cir. 2010) (citing *Yeti by*

---

[10] Mr. Levandowski also cites *Hayhoe v. Cole*, No. C 96 2333 TEH, 1996 WL 590610, at *4 (N.D. Cal. Oct. 8, 1996), but that case is inapposite for a number of reasons. First, it did not involve the exclusion of an expert witness at all. Second, the plaintiff in that case violated a critical pre-trial deadline, 10 days before trial was set to begin, for serving trial briefs, witness lists, and exhibit lists—and ultimately served these critical documents only 3 days before the start of trial. And notably, even in that extreme case—very unlike the circumstances here—the district court held that the bankruptcy court *should not have excluded* the tardily-disclosed evidence because the defendant was not prejudiced. *Id.* at *3-4.

*Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)); *see also* Fed. R. Civ. P. 37(c)(1). In *Lanard Toys*, the Ninth Circuit considered four factors in deciding that exclusion of an expert was not warranted because of an untimely report: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." 375 Fed. App'x at 713; *see also Paulissen v. U.S. Life Ins. Co. in the City of New York*, 205 F. Supp. 2d 1120, 1126 (C.D. Cal. 2002) (refusing to exclude expert based on "untimely designation" where plaintiff was on notice and thus "not surprised or caught unprepared by the late designation"; "[i]n order to exclude expert testimony, the opposing party must be prejudiced"); *Montgomery v. Wal-Mart Stores, Inc.*, No. 12CV3057, 2015 WL 11233382, at *2 (S.D. Cal. Sept. 24, 2015) (declining to exclude an expert despite his untimely identification, because, as here, the expert's report was timely served).

Here, not only was Dr. Gerdes' report timely, but all four factors militate against exclusion. As discussed in Section 2 below, any non-identification of Dr. Gerdes as an expert at the earlier dates for *preliminary* identification of experts was substantially justified and not a product of bad faith. As discussed in Section 3 below, Mr. Levandowski was not in the least bit prejudiced by the omission of Dr. Gerdes' names from the preliminary disclosures; thus, there was no prejudice to cure. Further, the trial schedule was not impacted.

### 2. Any Delay in Formally Disclosing Dr. Gerdes as a Witness Was Substantially Justified by the Protective Order and Confidentiality Agreements in the Waymo Litigation.

Despite Uber's timely compliance with the deadline for serving expert disclosures, Mr. Levandowski complains that Uber did not identify Dr. Gerdes on its September 25, 2020 list of persons likely to have relevant information, or on its preliminary list of potential experts in November 2020. (Mot. at 17.) Any delay in identifying Dr. Gerdes as a witness was substantially justified because Uber was precluded, by both confidentiality agreements and the Waymo Litigation protective order, from fairly evaluating Dr. Gerdes as a potential witness in this case, and from disclosing information related to Dr. Gerdes' prior work, when it made those preliminary witness disclosures. Uber made this clear in its September 25 disclosures:

> These initial disclosures are based on information currently available to Uber. These disclosures are made ...**without the ability to analyze information in the matter of** *Waymo LLC v. Uber Technologies, Inc.*, **No. 3:17-cv-00939-WHA (N.D. Cal. Feb. 23, 2017) ("Waymo Litigation"),** that has been identified as confidential by any party other than Uber....Uber makes these disclosures without prejudice to its right to supplement these disclosures if additional responsive information becomes available... and to use the amended or supplemental information to support its defenses during discovery, pretrial and trial, and for supporting motions.

(Vu Decl., Ex. 3 at 1 (emphasis added).) Uber reiterated these points in its November 13 preliminary expert disclosures. (Vu Decl., Ex. 4 at 2.) It was not until December 22, 2021, that Judge Alsup modified the protective order in the Waymo Litigation to allow Uber to review, for possible use in this case, materials from the Waymo Litigation, including critical information underlying Dr. Gerdes' analysis. Thereafter, Uber promptly identified Dr. Gerdes as a "will call" trial witness on January 6, 2021.

Even then, Uber's ability to evaluate Dr. Gerdes' prospective testimony was severely limited by Waymo's confidentiality rights. Waymo did not produce a full copy of Dr. Gerdes' opinions with respect to Trade Secrets 1-3 until January 14, 2021; Waymo did not finish producing supporting materials until January 19, 2021; and Waymo continued to object to Uber's *use* of those materials in this proceeding even after producing them. Indeed, as late as January 27, 2021, Waymo claimed that Uber's Rule 30(b)(6) corporate representative could not look at the newly produced Gerdes report in preparation for or during her deposition. (Ciliberti Decl. Ex. 32 (Jan. 27, 2021 email chain).) Until the new engagement agreement between Uber, Dr. Gerdes, and Waymo was signed on February 13, 2021, it was not clear that Uber or Dr. Gerdes could disclose information related to Dr. Gerdes' 2019 work in this case. Nine days later, Uber provided a timely expert report from Dr. Gerdes by the expert report deadline of February 22, 2021. Uber also made him available for deposition.

For these reasons, any failure to identify Dr. Gerdes at an earlier time as a fact witness or expert witness was substantially justified.

### 3. Mr. Levandowski Suffered no Surprise or Prejudice From the Timing of Uber's Disclosure of Dr. Gerdes as an Expert.

Mr. Levandowski suffered no surprise or prejudice from the timing of Uber's disclosure of Dr. Gerdes as an expert witness in this case. Uber made clear to Mr. Levandowski from the outset of

17

discovery that (a) Uber was seeking authority to review Dr. Gerdes' full expert analysis and related testimony from Mr. Burnette and others for possible use in this case; and (b) Uber reserved the right to identify additional witnesses and experts who were involved in the Waymo Litigation (including Dr. Gerdes) once Uber had the ability to review the confidential portions of that record.

First, Mr. Levandowski was not prejudiced by Uber's failure to list Dr. Gerdes in its initial Rule 26 disclosures on September 25, 2020. At that time, Mr. Levandowski was already aware that Uber had subpoenaed Dr. Gerdes' expert report and related materials from Waymo. (Ciliberti Decl. Ex. 6, Sept. 23, 2020 Notice of Subpoena.) The notice of subpoena provided Mr. Levandowski the very same information that he claims should have been set forth in the Rule 26 disclosures: that Dr. Gerdes might have relevant knowledge. Accordingly, he cannot show any prejudice.

Second, Mr. Levandowski was not prejudiced by Uber's not listing Dr. Gerdes' name on its initial list of potential experts on November 13. By that time, Uber had explained that it believed that Mr. Levandowski had committed a PSBA by authorizing the transfer of the planner code on May 10, 2016, and that Dr. Gerdes' prior opinion appeared to support that conclusion. (Ciliberti Decl. Ex. 7, Oct. 7, 2020 Bradford Letter; Ex. 8, Oct. 20, 2020, Uber Interrog. Resp. at 14-15.) Nor was Mr. Levandowski prejudiced by Uber's not having supplemented its potential expert list on December 2. Prior to that date, on November 24, 2020, Mr. Levandowski had already acknowledged that Uber had put Dr. Gerdes' report at issue in the case. And by December 2020, Mr. Levandowski was seeking Dr. Gerdes' deposition and insisting that it should take place during the expert discovery phase.

Mr. Levandowski suffered no prejudice from any of this timing. Mr. Levandowski had possession of a redacted version of Dr. Gerdes' prior report by December 16, 2020, related emails by the same date, and an un-redacted version of Dr. Gerdes' prior opinions on TS 1-3 by January 14, 2021. Uber supplemented its Response to Mr. Levandowski's First Set of Interrogatories on January 18, 2021 to detail Mr. Levandowski's role in causing the transfer of the planner to Uber. (Ciliberti Decl. Ex. 31, Interrogatory Response.) This was still well over a month prior to the expert report deadline, and well over two months prior to the rebuttal report deadline. Mr. Levandowski had a full expert disclosure from Dr. Gerdes in hand by the expert disclosure deadline of February 22, 2021, and had a full and fair opportunity to depose Dr. Gerdes on March 4, 2021, within the timeframe set for expert discovery, as

he had requested. And the trial schedule itself was not disrupted due to the timing of Uber's disclosure of Dr. Gerdes. Thus, the harsh sanction of excluding Dr. Gerdes is not warranted under Rule 37(c) or Rule 16(f). *See Lanard Toys*, 375 Fed. App'x at 713; *see also McCloud v. Goodyear Dunlop Tires. N. Am., Ltd.*, No. 04-1118, 2007 WL 2584250 at *2 (C.D. Ill. Aug. 21, 2007) (permitting an otherwise belatedly-disclosed expert to testify to the "issues which were discussed in [the] deposition").

### D. Dr. Gerdes' Opinions Are Not Inadmissible Under *Daubert.*

Finally, Mr. Levandowski seeks to disqualify Dr. Gerdes on the ground that "his opinions cannot be replicated or tested" because Dr. Gerdes was required, under his 2019 engagement letter, to destroy *his* copies of confidential documents and because he was properly instructed not to answer an handful of deposition questions seeking privileged information. (Mot. at 18-21.) However, as set forth in Section 1 below, under well-established case law, whether an expert's opinion can be tested or replicated is but one possible method for determining whether the expert's opinions are reliable. *City of Pomona*, 750 F.3d 1046. Mr. Levandowski does not challenge the multiple other grounds for finding Dr. Gerdes' opinions are reliable, including that he is a qualified expert who used commonly accepted methodologies in comparing source code and reviewing academic literature. Additionally, as set forth in Section 2 below, the factual premise of Mr. Levandowski's "inability to replicate" argument is misleading. Although Dr. Gerdes was required to destroy *his copy* of confidential materials, counsel in the Waymo Litigation were permitted to retain "archival copies" of virtually all those materials (*Waymo LLC v. Uber Technologies, Inc.*, No. 17-cv-939 (N.D. Cal.) (Dkt. 60 at § 15), and Mr. Levandowski cannot establish that the materials upon which Dr. Gerdes relied are no longer available. Finally, as set forth in Section 3 below, the limited instructions Uber's counsel gave to Dr. Gerdes at his deposition were proper based upon Federal Rule of Civil Procedure 26(b)(4)(B) and (C), and Mr. Levandowski failed even to respond to repeated invitations to depose Dr. Gerdes further.

### 1. The Case Law Does Not Support the Exclusion of an Expert Who, Like Dr. Gerdes, Used Well Accepted Expert Methods.

Under Federal Rule 702, relevant expert opinion evidence is generally admissible if the expert is sufficiently qualified and the testimony is reliable. *City of Pomona*, 750 F.3d at 1044. The test for reliability is a flexible one, and may be satisfied by assessing the expert's reasoning and methodology

using appropriate criteria such as "general acceptance." *Id*. The "testability" of the expert's analysis is just one factor that may be considered. *Id. See also Primiano v. Cook*, 598 F.3d 565, 68 (9th Cir. 2010) (reversing district court exclusion of expert testimony and finding the "inquiry must be flexible"); *Reed v. Lieurance,* 863 F.3d 1196, 1208-09 (9th Cir. 2017) (court abused "discretion in excluding the entirety of [the expert's] testimony" even when there was a "proper basis to exclude portions").

Mr. Levandowski contends that an expert's testimony should be excluded if someone else, using the same data and methods, cannot replicate their analysis, citing three cases in purported support of that argument. (*See* Mot. at 18 (citing cases).) But that ignores the well-established Ninth Circuit case law, including one of the cases he cites, *City of Pomona*, 750 F.3d 1046 (Mot. at 18), which holds that the "testability" of an expert's opinion is but one factor in determining whether the analysis is sufficiently reliable to be of assistance to the trier of fact. In *City of Pomona,* the Ninth Circuit found the district court erred in excluding an expert on the ground that the expert's analysis was not "testable," when the expert's method of analysis had other indicia of reliability, including that the expert used a method commonly practiced by others in the field. *Id.*

Like the expert in *City of Pomona*, Dr. Gerdes is a highly qualified expert who used commonly-accepted expert methodologies. Dr. Gerdes analyzed whether:

Dr. Gerdes answered these questions by using two commonly accepted scientific techniques: he compared the two technologies and he reviewed publicly available scientific literature. *See, e.g.*, *Mfg. Automation and Software Sys., Inc. v. Hughes*, No. 2:16-cv-08962, 2018 WL 3197696, at *2 (C.D. Cal. June 25, 2018) (denying a motion to exclude an expert witness that was qualified to "compare and opine on software products—including source code," based on a side-by-side comparison); *Atmel Corp. v. Info. Storage Devices, Inc*., 189 F.R.D. 410, 412-16 (N.D. Cal. 1999) (excluding expert testimony in trade secrets case where expert "*did not* search the relevant literature" to determine what was "generally known" in the field) (emphasis added).

20

Dr. Gerdes not only based his analysis upon a well-recognized methodology, he relied upon documents and information that remain available and/or were memorialized in his report. Dr. Gerdes compared Waymo's description of its alleged trade secrets (WAYMO-LEVUBER00000001-00000036), the information in Don Burnette's handwritten notes written the day after he left Google (Ciliberti Decl. Ex. 3, Burnette Dep. Ex. 7902), and the code that was transferred to Uber (Ciliberti Decl. Ex. 33, Gerdes Dep. Ex. 8 (May 10, 2016 transmittal), all of which are preserved. He found that

███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████

Dr. Gerdes' opinion is supported by Don Burnette's deposition testimony that he wrote down the "recipe" for the Google planner in Ex. 7902, the day after he left Google/Waymo. (Ciliberti Decl. Ex. 2, Burnette Dep. 236:14-266:7; *see also id.* at 261:7-12 (Ex. 7902 reflected "the approach [Burnette] came up with at Waymo.").)

███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████

Mr. Levandowski complains that Dr. Gerdes was required to destroy his personal notes. (Mot. at 2, 18-21.) But that is not enough to exclude an expert where, as here, the expert included the substance of anything important in the expert's written report. For example, in *Bona Fide Conglomerate, Inc. v. SourceAmerca*, No. 3:14-cv-00751, 2019 WL 1369007 (S.D. Cal. Mar. 26, 2019), the court found the "failure to preserve [an expert's notes] was harmless and exclusion sanctions are therefore not necessary," where the expert testified that the substance of any destroyed notes were incorporated into the final report. *Id*. at *19-20; *see also Patel v. Verde Valley Med. Ctr.*, No. CV-05-1129, 2009 WL 5842048, at *1 (D. Ariz. Mar. 31, 2009) (denying motion to exclude expert testimony "merely because [the expert] discarded his notes"; the defendants were "free to raise this issue as a means of attacking [the expert's] credibility with the jury if they so desire"). Here, Dr. Gerdes testified that "things that I felt would be relevant to try and reconstruct my work, I cited or included in the final

report" (Ciliberti Decl. Ex. 1, Gerdes Dep. at 212:14-16), and that "if anything was important" in his notes, he "made a point to reflect that information in [his] actual written report" (*id.* at 243:19-24).

The other cases cited by Mr. Levandowski also do not support exclusion in these circumstances. In *Hutchinson v. Hamlet*, No. C 02-974, 2006 WL 1439784, at *1 (N.D. Cal. May 23, 2006) (Mot. at 18), the court excluded testimony from a video engineer who had no training in either statistics or margins of error and had never testified as an expert, but nonetheless sought to quantify the effect a person's posture might have on their apparent height in a photograph. Although this purported expert did not preserve his photographs, he was excluded not because of a lack of data, but because his untested methodology did "not comport with proper scientific methodology." *Id.* at 4. And in *Wyatt Tech. Corp. v. Malvern Instruments, Inc.*, No. CV 07-8298, 2010 WL 11505684, at *6 (C.D. Ill. Jan. 25, 2010), the court excluded certain testimony about antibody experiments because the expert failed even to identify the antibody that he purportedly tested. *Id.* at 7. Here, by contrast, Dr. Gerdes identified the relevant trade secret at issue, memorialized his analysis, and could explain it fully.

### 2. The Relevant Materials that Dr. Gerdes Relied Upon Have Been Memorialized and Preserved.

Mr. Levandowski's argument that he cannot fairly examine Dr. Gerdes because Dr. Gerdes was required to destroy his documents at the conclusion of his 2019 engagement is factually unfounded.

Although Dr. Gerdes was required to destroy *his copy* of relevant documents, under the Waymo Litigation protective order, counsel to the parties (Uber and Waymo) were entitled to "retain an archival copy of all . . . correspondence . . . expert reports . . . and consultant and expert work product. . . ." (*Waymo LLC v. Uber Technologies, Inc.*, No. 17-cv-939 (N.D. Cal.), Dkt. 60 at § 15.) Mr. Levandowski complains only that he subpoenaed *Dr. Gerdes* and that *Dr. Gerdes* personally did not have any responsive documents. (Mot. at 19.) Mr. Levandowski did not subpoena documents from Waymo, and makes no showing that Waymo failed to retain copies of any documents that Dr. Gerdes relied upon. Additionally, over a month before Dr. Gerdes' deposition, Uber asked Mr. Levandowski to identify any materials that he would like Dr. Gerdes to review prior to his deposition and Mr. Levandowski never responded. (Ciliberti Decl. Ex. 34, Jan. 29, 2021 Bradford Email.)

Nor can Mr. Levandowski identify any consequential information that was not memorialized in Dr. Gerdes' report. For example, Mr. Levandowski complains that ████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████ Mr. Levandowski suggests that Dr. Gerdes did not preserve Waymo's "change logs" (Mot. at 19), but Dr. Gerdes testified that he "wrote down relevant pieces of the change logs and those appear in [the] timeline [in his report]." (Ciliberti Decl. Ex. 1, Gerdes Dep. 207:4-7.) He further testified, "I'm not aware that there's . . . any information about the change logs that . . . I found relevant that didn't end up in the timeline[.]" (*Id.* at 207:14-18; *see also id.* at 211:8-10 ("[T]he notes I took when I was evaluating the change logs . . . are in the redacted report[.]").) Moreover, Dr. Gerdes testified that he never had possession of the change logs—Waymo merely gave him a password to access them electronically. (*Id.* at 215:23-25.) Mr. Levandowski offers no evidence that Waymo did not preserve the change logs.

Mr. Levandowski complains that Dr. Gerdes did not preserve documents relied upon in preparing ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████ WAYMO-LEVUBER000000011-21.) Mr. Levandowski's Motion does not demonstrate (or even claim) that Waymo destroyed those materials or that they are not quoted accurately in Dr. Gerdes' report.

Finally, Mr. Levandowski complains that Dr. Gerdes' interviews of Mr. Burnette and Mr. van den Berg were not preserved. (Mot. at 19.) But the interviews were audio recorded by counsel (Ciliberti Decl. Ex. 1, Gerdes Dep. at 205:18-20), and Mr. Levandowski offers no proof that Waymo's counsel did not retain an archival copy of them. Additionally, ████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████

█████████████████ which are available. (Vu Decl. Ex. 8, Feb. 22, 2021 Gerdes Report at 15.)  In any event, Mr. Burnette and Mr. van den Berg are on Mr. Levandowski's trial witness list and are available for further examination.   Indeed, Mr. Levandowski himself can testify and can call others to testify about their personal knowledge of many of the same facts at issue related to planner software.

In short, Mr. Levandowski has not shown that he has been prejudiced by the destruction of any materials so as to warrant the exclusion of Dr. Gerdes' opinions and testimony.

### 3. Uber Did Not Improperly Instruct Dr. Gerdes Not to Answer Questions.

Uber's limited instructions not to answer certain deposition questions were proper, and they do not provide a basis for excluding Dr. Gerdes.  "Rule 26 expressly provides work product protection for expert witness materials including drafts of an expert's report (Rule 26(b)(4)(B)) and communications between the party's counsel and reporting experts (Rule 26(b)(4)(C)). . . ."  *In re Application of Republic of Ecuador*, 280 F.R.D. 506, 510 (N.D. Cal. 2012); *see also* Fed. R. Civ. P. 26(b)(4)(B)-(C). Uber narrowly and carefully instructed Dr. Gerdes not to answer a limited number of questions that sought information protected from disclosure under this Rule.  Dr. Gerdes answered every question that asked him to identify his opinions and the bases for them.  Additionally, after the deposition concluded, Mr. Levandowski's counsel failed to respond to Uber's repeated offers to make Dr. Gerdes available for further questions if Mr. Levandowski's counsel identified any improper instructions by page and line number.[11]   Mr. Levandowski belatedly identifies three instructions not to answer.  (*See* Mot. at 10, 20.)  But these instructions were appropriate.

*First*, as to questions related to counsel's role in drafting Dr. Gerdes' report, Rules 26(b)(4)(B) and (C) expressly protect communications with counsel regarding the drafting of an expert report, and Uber nonetheless permitted Dr. Gerdes to testify that he drafted his report based upon an initial draft provided by Uber's counsel.  (*See* Ciliberti Decl. Ex. 1, Gerdes Dep. 20:18-21:2 ("I received a draft version from Uber counsel. [A]nd then I took a brief look on Friday, a closer look on Saturday and finished up on Sunday."); *see also id.* at 183:1-4 (repeating that testimony).)

---

[11] (*See* Ciliberti Decl. Ex. 25, at 4 (March 11, 2021 D. Bradford email), 1 (March 31, 2021 D. Bradford email).)

24

*Second*, contrary to Mr. Levandowski's assertion, Dr. Gerdes did answer questions related to why certain portions of the 2019 Report (pages 1-18, 35-36) were omitted from his 2021 Report. (*See* Mot. at 10, 20.) He repeatedly explained all of his 2019 report was fully incorporated into the 2021 Report. (*See* Ciliberti Decl. Ex. 1, Gerdes Dep. at 120:6-8, 12-16 ("[B]y incorporating the 2019 report in full in this disclosure, it was included in full . . . the [2019] report was included in full[.]"); *id.* at 193:15-17 ("[I]n my view, the 2019 report was included in its entirety."); (*id.* at 110:21-25, 111:19-23, 194:11-15) (willing to answer any questions put to him at trial "on any aspect of the 2019 report" as well as the 2021 report).)

*Finally*, questions regarding whether Dr. Gerdes discussed Waymo confidential information with Uber's counsel in preparing his report (*see* Mot. at 10, 20) are squarely foreclosed by Rule 26(b)(4)'s prohibition on questions pertaining to communications between counsel and the expert, but Uber nonetheless permitted Dr. Gerdes to answer a number of questions on this topic.[12]

In short, none of these instructions was improper. And if an instruction was improper, the remedy would be to require Dr. Gerdes to answer it at a further deposition (as Uber's counsel previously offered), not to exclude Dr. Gerdes' testimony altogether.

## IV. CONCLUSION

For all of the foregoing reasons, Uber respectfully requests that the Court deny the Motion and grant such other relief as may be just.

---

[12] *See* Ciliberti Decl. Ex. 1, Gerdes Dep. 197:21-198:2 ("Q. [D]id you have any communications of any form with anyone at Uber or on behalf of Uber about Waymo confidential information leading up to the issuance of the 2021 disclosure? A. I had no communications other than those that I mentioned with-with Jordan Jaffe [Waymo's counsel] involved."); *id.* at 198:3-9 (Q. "Okay. Well, after signing the 2021 engagement, did you have any communications of form with anyone at Uber or Jenner & Block about Waymo confidential information, as that term is defined in that engagement letter from 2018? A. I had communications with respect to preparing the—disclosure."); *id.* at 199:1-5 (Q: "Did you have any oral conversations with anyone at Uber or Jenner & Block about Waymo confidential information after signing the February 2021 engagement? A: I did not.").

25

Dated:    September 23, 2021                 PACHULSKI STANG ZIEHL & JONES LLP

                                           By:   _/s/ Debra I. Grassgreen_____
                                                 Debra I. Grassgreen
                                                 Miriam Manning

                                                 and

                                                 JENNER & BLOCK LLP
                                                 David J. Bradford
                                                 Catherine Steege
                                                 Terri L. Mascherin
                                                 Katharine R. McLaughlin

                                                 *Attorneys for Uber Technologies, Inc.*

26