Debra I. Grassgreen (CA Bar No. 169978)
Miriam Manning (CA Bar No. 178584)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Telephone: (415) 263-7000
Facsimile: (415) 263-7010
E-mail: dgrassgreen@pszjlaw.com
mmanning@pszjlaw.com

David J. Bradford (admitted *pro hac vice*)
Catherine Steege (admitted *pro hac vice*)
Terri L. Mascherin (admitted *pro hac vice*)
Katharine McLaughlin (admitted *pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
Telephone: (312) 222-9350
E-mail: dbradford@jenner.com
csteege@jenner.com
tmascherin@jenner.com
kmclaughlin@jenner.com

Attorneys for Defendant
Uber Technologies, Inc.

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>ANTHONY SCOTT LEVANDOWSKI,<br><br>Debtor. | Case No. 20-30242 (HLB)<br><br>Chapter 11 |
| ANTHONY SCOTT LEVANDOWSKI, an individual,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.<br><br>Defendant. | Adv. Pro. No. 20-03050 (HLB)<br><br>**UBER'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE UNTIMELY DISCOVERY OR, IN THE ALTERNATIVE TO REOPEN DISCOVERY TO TAKE LIMITED DEPOSITIONS** |

## I. INTRODUCTION

Anthony Levandowski's ("Mr. Levandowski") motion ("Motion") seeks without basis to exclude four identified trial witnesses, even though the deadline for identifying trial witnesses has not passed and even though Uber Technologies, Inc. ("Uber") has agreed to Mr. Levandowski's alternative requests to depose two of them. Mr. Levandowski's Motion cites no applicable authority for the extraordinary relief he seeks: excluding a trial witness who is identified before trial witness lists are due and who is made available for deposition prior to trial.

As explained below, the deadline for identifying trial witnesses is 14 days prior to trial. In an effort to prevent this Court from hearing testimony from four key witnesses, Mr. Levandowski complains they were not identified in Uber's initial disclosures. But as Mr. Levandowski knows, initial disclosures are not trial witness lists. And when initial disclosures were made in this case in September 2020, Uber's counsel did not have access to and could not discuss with Uber key portions of the Arbitration Award and the Waymo Litigation record because of then unresolved third party confidentiality objections. Thus, Uber made clear in its initial disclosures that it would later supplement its disclosures to include additional witnesses—which it did, including after assertions made in Mr. Levandowski's expert reports and summary judgment briefs interjected new issues into the case.

In an effort to claim "prejudice" related to the initial disclosures, Mr. Levandowski references an agreed January 6, 2021 "non-binding" and "preliminary" identification of trial witnesses that was made solely to inform discussions about depositions. Mr. Levandowski claims that if Uber had identified these witnesses in this preliminary, non-binding list, then he supposedly would have deposed them in lieu of four other depositions he selected for his permitted ten depositions. (Mr. Levandowski does not identify the four depositions he supposedly would have forsaken in favor of these four.) But Mr. Levandowski himself identified both Tony West and Angela Padilla in his own initial disclosures in September 2020, and *Uber identified Ms. Padilla* in its January 6, 2021 non-binding witness list, and yet he chose not to depose either of them. And, as explained below, the importance of testimony from the other two disputed witnesses, Judith Branham (from Stroz) and Jur van den Berg (who was deposed in the Waymo case with Goodwin

1

Procter participating) became apparent as a result of positions taken in summary judgment briefs and an expert report submitted after fact discovery concluded. Additionally, both witnesses were well known to Mr. Levandowski and his counsel before depositions commenced. Nonetheless to avoid any dispute about unfair prejudice or surprise from their trial testimony, Uber agreed even before this Motion was filed that Mr. Levandowski may subpoena and depose them in this case.

## BACKGROUND

### A. Uber's and Mr. Levandowski's Initial Disclosures.

Mr. Levandowski filed an Adversary Complaint on July 16, 2020. (Dkt. 1.) On September 25, 2020, Uber and Mr. Levandowski served initial disclosures. (Vu Decl., Ex. A (Uber Initial Disclosures); Powell Decl., Ex. 1 (Levandowski Initial Disclosures).) At the time, because of third party confidentiality assertions, Uber had not been granted access to the full records of the prior, related proceedings, namely *Google LLC v. Levandowski* (Reference #1100086069) (the "Google Arbitration") and *Waymo LLC v. Uber Technologies, Inc.*, No. 3:17-cv-939 (N.D. Cal. Feb. 23, 2017) (the "Waymo Litigation"). The Waymo Litigation protective order explicitly excluded Uber's current counsel from using (and thus even reviewing) confidential materials. It was not until December 22, 2020, that Judge Alsup modified the protective order in the Waymo Litigation to allow Uber's current counsel to review, for possible use in this case, materials from the Waymo Litigation. (Waymo Litigation, No. 17-cv-939 (N.D. Cal.), Dkt. 2733.) With respect to certain materials, such as an un-redacted copy of Dr. J. Christian Gerdes' analysis and related documents, Uber did not even gain access until mid-January 2021, and was unable to remove the final barriers to his testimony until mid-February 2021. (Dkt. 351 at 7 (Uber Opp. to Mot. to Strike Gerdes Report).) Thus, in September 2020, Uber specifically reserved the right to supplement its initial disclosures after it received and analyzed the records in those prior proceedings:

> Based upon analysis of each witness's testimony in the Google Arbitration and in the Waymo Litigation (if they also testified in that case), **Uber may identify additional witnesses, including potentially additional witnesses associated with Google LLC ("Google"), Waymo LLC ("Waymo"), Stroz Friedberg LLC ("Stroz Friedberg"), and/or Tyto LiDAR, LLC ("Tyto"), as well as additional topics as to the witnesses who have been identified. These additional witnesses may include witnesses who were deposed or testified in the Waymo Litigation, following authorization to review the testimony of witnesses (other than Uber witnesses) for purposes of this case.**

(Vu Decl., Ex. A (Uber Initial Disclosures at 1-2) (emphasis added).)

Testimony related to Ms. Branham and the depositions of Mr. van den Berg and Ms. Padilla were all part of the confidential Waymo Litigation record. And given that there were 151 depositions taken in the Waymo Litigation (*see* Powell Decl. ¶ 11), it took Uber's current counsel substantial time to analyze relevant portions of that record.

### B. Preliminary Trial Witness Lists.

Under this Court's Trial Scheduling Order, trial witness lists are not yet due. They will be due "14 calendar days before the Date and Time of Trial." (Dkt. 81 at 6-7, Trial Scheduling Order.) Nonetheless, even before depositions were taken and as part of a meet and confer process, the parties voluntarily agreed to exchange "preliminary" and "non-binding" drafts of witness lists to inform their discussions of who to depose. (Vu Decl., Ex. B (Jan. 6, 2021 Uber Witness List); Powell Decl., Ex. 2 (Jan. 6, 2021 Levandowski Witness List).) This exchange occurred on January 6, 2021, only seven business days after Uber's current counsel first gained access to the confidential Waymo Litigation record. Mr. Levandowski expressly stated his list was "preliminary" (*see* Powell Decl., Ex. 2), and Uber stated:

> **In order to help inform discussions** regarding depositions in this case, the following are Uber's good faith and **non-binding** "will call" and "may call" fact witness lists for trial. **Uber reserves the right to amend or supplement these lists as discovery and trial preparation continues.**

(Vu Decl., Ex. B.)

On January 6, 2021, *Uber* listed Ms. Padilla on its preliminary witness list. (*Id.*) Both parties have since updated their lists, as they worked through discovery, expert reports and motion practice—all long before final witness lists are due. On March 29, 2021, Mr. Levandowski updated his non-binding list to include Mr. van den Berg as a "may call" witness. (Powell Decl., Ex. 3, (March 29, 2021 Levandowski Witness List).) Uber again listed Ms. Padilla and added Mr. West. (*Id.*, Ex. 4 (March 29, 2021 Uber Witness List).)

Consistent with this course of updating, on June 23, 2021, Uber served Amended and Supplemental Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1) ("Supplemental Disclosures"). (Vu Decl. Ex. C.) Uber also again provided Mr. Levandowski's counsel with an updated non-

binding preliminary trial witness list. (Vu Decl., Ex. E (McLaughlin June 23, 2021 email).) Uber's updated preliminary witness list and its Supplemental Disclosures identified Ms. Branham, Ms. Padilla, Mr. Van den Berg, and Mr. West. (Vu Decl., Exs. C & E.).[1]

### C. Uber Agrees the Disputed Witnesses May Be Deposed.

Approximately three weeks after Uber served its Supplemental Disclosures, Mr. Levandowski requested the opportunity to depose these four witnesses.[2] (Powell Decl., Ex. 5 (Vu July 12, 2021 email).) Uber promptly agreed to depositions of Ms. Branham and Mr. van den Berg, while seeking to reach a broader agreement that would resolve pending motions seeking to strike certain expert witnesses. (*Id.* (July 19 & 26, 2021 McLaughlin emails).) Mr. Levandowski then agreed that he did not need to depose Ms. Padilla, if Uber would agree to limit the scope of her trial testimony to deposition testimony and declarations in the Waymo Litigation. (*Id.* (Aug. 2, 2021 Vu email).) Uber promptly made a further offer to avoid needless motion practice, including by agreeing again to depositions of Ms. Branham and Mr. van den Berg. (*Id.* (Aug. 5, 2021 McLaughlin email).)

After radio silence from Mr. Levandowski's counsel for over a month, Mr. Levandowski unexpectedly filed the instant motion on September 10, 2021. On September 13, 2021, Uber repeated its offer to resolve this Motion through providing additional depositions. (*Id.* (Sept. 13, 2021 Bradford email).) Mr. Levandowski never responded to that offer.

---

[1] Mr. Levandowski argues that Uber added "17 new witnesses" to its Supplemental Disclosures. But these individuals are hardly "new"—in fact, apart from the four witnesses discussed in his Motion, seven of them provided testimony in the Google Arbitration and were disclosed by Uber in its January 6, 2021 witness list, and of the remaining six persons: Arturo Gonzalez was identified in Mr. Levandowski's September 2020 initial disclosures and on Mr. Levandowski's subsequent preliminary witness lists; John Gardner was disclosed on both Mr. Levandowski's and Uber's Jan. 6 and March 29 preliminary witness lists and was deposed by Uber; Randy Miller was identified on Mr. Levandowski's Jan. 6 witness list, deposed by Uber, and subsequently disclosed on both parties' March 29 preliminary witness lists; Ann O'Regan was disclosed on Uber's Jan. 6 witness list and deposed by Mr. Levandowski as Uber's R. 30(b)(6) witness; Tony Stentz was deposed by Mr. Levandowski and disclosed by both parties on their March 29 witness lists; and Cecilia Yoshida was disclosed on Uber's March 29 witness list. (*See* Powell Decl., Exs. 1, 2, 3, & 4; Vu Decl., Ex. B.)

[2] Mr. Levandowski's current Motion mentions that he may later seek to depose Mary Fulginiti-Genow. Uber will not address the merits of such a request here but reserves its right to respond to any motion related to Ms. Fulginiti-Genow.

## II. ARGUMENT

### A. Supplemental Disclosures of Witnesses Are Not a Violation of the Federal Rules.

Mr. Levandowski argues that Uber's Supplemental Disclosures violate this Court's Trial Scheduling Order and Fed. R. Civ. P. 16 and 37, because the "Court's Scheduling Order gave the parties until September 25, 2020 to make initial disclosures." (Mot. at 3.) But, by Mr. Levandowski's logic, a party could never supplement or amend its initial disclosures, even as case strategy develops and discovery progresses. Moreover, the Court set a separate deadline for disclosure of trial witnesses, which is not until "14 calendar days before the Date and Time of Trial," (which has not yet been set) and any preliminary trial lists exchanged by the parties are not binding on the parties. (Dkt. 81 at 6-7, Trial Scheduling Order.)

Mr. Levandowski's Motion conflates *initial* disclosures (which are expressly described in Rule 26 as "initial" for a reason) with *final* trial witness lists. While initial disclosures are meant to assist the parties and the court with a discovery plan, initial disclosures of witnesses are not meant to be a binding and final trial witness list. *See Hitchcock v. Cahill*, No. CV13-0376, 2013 WL 12116584, at *1 (C.D. Cal. June 26, 2013) ("The parties' initial disclosures are not meant to encompass all discovery that may later need to be produced."); *Jimena v. UBS AG Bank, Inc.*, No. 1:07-CV-00367, 2011 WL 587309, at *3 (E.D. Cal. Feb. 9, 2011) ("The initial disclosures do not encompass all evidence a party possesses or will ultimately submit."); *Bank of New York v. Fremont Gen. Corp.*, No. CV03-9238, 2005 WL 5957824, *1 (C.D. Cal. June 27, 2005) (refusing to exclude witnesses simply on the basis that they were disclosed on a "witness list" but were "not disclosed in . . . [the] Rule 26(a) disclosures"); *London v. University of Redlands*, No. CV17-1143, 2018 WL 6190308, at *4 (C.D. Cal. Jan. 25, 2018) (declining to "prohibit[] depositions of persons not identified in the initial disclosures," and noting that the defendant cite[d] "no authority to support its position that only depositions of persons identified in initial disclosures should be allowed").

California federal courts do not generally exclude witnesses merely because they were added to initial disclosures after the fact discovery deadline. *See Ashman v. Solectron, Inc.*, No. CV 08-1430, 2010 WL 3069314, at *4 (N.D. Cal. Aug. 4, 2010) (allowing supplemental disclosure of a witness after the discovery cut-off because the moving party "knew that [the late-disclosed witness]

was a likely witness and was aware of the scope of her possible testimony"); *Guzik Tech. Enters., Inc. v. W. Digit. Corp.*, No. 5:11-cv-03786, 2013 WL 6070414, at *7 (N.D. Cal. Nov. 18, 2013) (holding the plaintiff's motion to "strik[e] the late-added witnesses [was] not warranted" because the "court's goal always is to resolve the case on the merits so long as undue prejudice can be avoided," and any prejudice could be mitigated by allowing the plaintiff to depose the three late-added witnesses). In determining whether to exclude a witness not mentioned in initial disclosures, California federal courts consider: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Id.* at *4.

Mr. Levandowski's cases are inapposite and do not stand for the proposition that a party must seek leave of court to supplement or amend its Rule 26 initial disclosures.[3] Nor do the cases cited by Mr. Levandowski support exclusion when the witness is disclosed prior to the deadline to identify trial witnesses and is made available for deposition prior to trial. Mr. Levandowski relies on *Accentra Inc. v. Staples, Inc.*, No. CV 07-5862, 2010 WL 8450890, at *7 (C.D. Cal. Sept. 22, 2010), and *Ford v. Maricopa Cnty. Super. Ct. Dep't of Adult Prob.*, No. CV 08–1977, 2010 WL 2266719, at *3 (D. Ariz. June 4, 2010). But in *Accentra*, the court noted that there was no opportunity to depose the witnesses—which is not the case here. *See Accentra Inc.*, 2010 WL 8450890, at *7. And in *Ford*, the court did not exclude eight of the nine additional witnesses that were the subject of amended disclosures. *Ford*, 2010 WL 2266719, at *3. Mr. Levandowski seizes on the *Ford* court's exclusion of a ninth witness who sought to offer entirely "new facts" following the close of discovery. *Id.* at *3. But here, these four witnesses were all known to Mr.

---

[3] *See STMicroelectronics, Inc. v. Motorola, Inc.*, 307 F. Supp. 2d 845, 848-52 (E.D. Tex. 2004) (finding that the *patent* local rules—which are exceptions to the federal rules—required plaintiff to obtain the court's permission to amend certain provisions and that the delay was "gamesmanship"); *Tesoro Ref. & Mktg. Co. v. Pac. Gas & Elec. Co.*, No. 14-cv-00930, 2016 WL 158874, at *9-11 (N.D. Cal. Jan. 14, 2016) (holding that where the defendant's attempt to supplement an expert report fell "*outside the Scope of Rule 26*," the defendant's only available recourse was to seek leave of the court to modify the scheduling order under Rule 16) (emphasis added); *Neev v. Abbot Med. Optics Inc.*, No. CV 15-01992, 2016 WL 9047151, at *2-3 (C.D. Cal. Nov. 18, 2016) (finding that a "party seeking to amend *pleadings* after a scheduling deadline must satisfy the standard for modifying the scheduling order under Rule 16(b)") (emphasis added); *Rahbarian v. Cawley*, No. 2:10-cv-00767, 2013 WL 6271865, at *5-7 (E.D. Cal. Dec. 4, 2013) (sanctioning attorney for violating Rule 16(f) for refusing to produce documents prior to discovery deadline).

Levandowski, including because his current counsel participated in depositions of Mr. van den Berg and Ms. Padilla in the Waymo Litigation, and, as discussed below, none of them will testify to "entirely new evidence." (*See* Mot. at 7). The importance of Ms. Branham's testimony became apparent only after Mr. Levandowski submitted an expert report from Ben Rose on March 22, 2021.

### B. The Four Witnesses Are Not a Surprise to Mr. Levandowski, Will Not Interject Entirely New Facts, and Will Not Cause Undue Prejudice to Mr. Levandowski.

Mr. Levandowski does not face any prejudice if the Court allows these witnesses to testify. As discussed below, Mr. Levandowski has been aware of all four of the witnesses' significance to this litigation since at least the outset of this case.

**Judith Branham**: Mr. Levandowski has known since at least 2016 that Ms. Branham participated, as a Stroz employee, in the 2016 forensic review of Mr. Levandowski's devices because Ms. Branham communicated directly with Mr. Levandowski's then counsel, John Gardner. (*See, e.g.,* Powell Decl., Ex. 6 (Stroz R. 30(b)(6) Dep. 73-84) (discussing communications between Ms. Branham and Mr. Gardner during the due diligence process regarding search terms for forensic review).) Mr. Levandowski's current law firm, Goodwin Procter, participated in Waymo Litigation depositions in which Stroz witnesses testified about Ms. Branham's specific involvement in the process, and Stroz's Rule 30(b)(6) witness, who Mr. Levandowski deposed in this case, testified to Ms. Branham's role in the forensic due diligence review.[4] Additionally, Mr. Levandowski identified by category in his initial disclosures all persons who participated in the Stroz diligence process, and knew then that Ms. Branham was one of those persons. (*See id..*, Ex. 1.)

Although Mr. Levandowski had prior dealings with Ms. Branham, her critical role as a witness in the present litigation was not apparent to Uber until after Mr. Levandowski submitted an expert report from Mr. Rose on March 22, 2021, which is the subject of a pending motion to strike. (*See* Dkt. 203.) In that report, Mr. Rose seeks to refer to certain documents located on Mr. Levandowski's devices. That report seeks to support Mr. Levandowski's unfounded argument, made in Mr. Levandowski's motions for summary judgment, that he could defeat Uber's Excluded

---

[4] *See* Powell Decl., Ex. 7 (Mary Fulginiti-Genow Dep. 85-86, 105-06 (Oct. 17, 2017)); *id.*, Ex. 8 (Eric Friedberg Dep. 44, 286-89 (Sept. 28, 2017)); *id.*, Ex. 6 (Stroz R. 30(b)(6) Witness (Eric Friedberg) Dep. 62-64, 72-84 (Feb. 10, 2021)).

Claim defense by showing that documents located somewhere in the "virtual haystack" he provided Stroz mentioned "Odin Wave," *e.g.* Tyto, even though Stroz did not flag those documents because, among other reasons, Mr. Levandowski failed to truthfully disclose his role in Tyto in response to relevant inquiries and did not provide any guidance with respect to search terms related to Odin Wave and Tyto. (Dkt. 118 at 8-10 (Levandowski Summ. J. Mot.).)[5]

The Rose report coupled with Mr. Levandowski's summary judgment argument made apparent for the first time that Uber may be required to present evidence at trial to explain why it was reasonable and expected that Stroz would not review certain documents, later found by Mr. Rose on Mr. Levandowski's devices, that contained references to Odin Wave/Tyto. Uber has ascertained that certain documents were not reviewed because Mr. Levandowski's counsel had prevented Stroz from doing so by asserting that the documents were privileged. Uber then determined that Ms. Branham was the point of contact for implementing these privilege assertions and that she was uniquely qualified to testify that Mr. Levandowski shielded from review certain documents addressed in Mr. Rose's report. Once Uber became aware that Mr. Levandowski expected to present evidence of what was in the un-reviewed data set through Mr. Rose, it acted diligently in conducting further factual investigation and promptly disclosed Ms. Branham by name. As noted, Uber has also agreed that she may be deposed.

Mr. Levandowski cannot claim surprise when he has introduced this new issue into the case by way of an expert report and summary judgment argument when he was aware of Ms. Branham's role in the due diligence process precisely because his counsel communicated his privilege assertions to her. During the Stroz Rule 30(b)(6) deposition in this case, Mr. Levandowski's counsel even asked the deponent about communications between Ms. Branham and Mr. Levandowski's counsel during the due diligence. (*See generally* Powell Decl., Ex. 6 (R. 30(b)(6) Dep. 62-64, 72-84).)

---

[5] As this Court knows, the Excluded Claim provision states that a claim is excluded from indemnification if *either* (a) Mr. Levandowski fails to truthfully disclose his role in Tyto in response to Stroz's questions *or* (b) his role in Tyto was not disclosed in materials provided to Stroz. (*Id.*; *see also* Dkt. 149 at 13-14 (Uber Opp.); Dkt. 350-26, Ex. 26 (Indemnification Agreement, § 2.1(b)(ii)).)

**Jur van den Berg**: Mr. van den Berg's testimony will not introduce any new facts into the case. Uber expects to elicit only that testimony that Mr. van den Berg previously provided in a deposition in the Waymo Litigation: that he sent the Planner Code to Uber in 2016 only because Mr. Levandowski directed him to do so. (*See* Dkt. 350-4, Exhibit 4 to Uber Opp. to Mot. to Strike Gerdes Report (Aug. 2, 2017 van den Berg Dep. 72:20-75:15, 144:15-145:9).)[6] Three Goodwin Procter attorneys who were counsel of record in the Waymo Litigation (then for Otto Trucking) are now counsel of record for Mr. Levandowski in this case. *Compare Waymo LLC v. Uber Techs., Inc.*, No. 3:17-cv-939 (N.D. Cal. Feb. 23, 2017) *with Levandowski v. Uber Techs., Inc.*, No. 20-03050 (N.D. Cal. July 16, 2020). They cannot be surprised by this simple and limited testimony. Nor can Mr. Levandowski complain that Mr. van den Berg will be a "surprise" witness, when Mr. Levandowski himself previously identified him as a trial witness. (*See* Powell Decl., Ex. 3.)

Additionally, the importance of Mr. van den Berg's testimony became more apparent on June 15, 2021, when Mr. Levandowski suggested in briefing that he would deny any role in transferring the planner code to Uber, when he argued that "Dr. Gerdes' months-long investigation . . . never uncovered any evidence that Mr. Levandowski had any involvement in the planner code transfer." (Dkt. 347 at 10 (Levandowski Reply to Mot. to Strike Gerdes Report).) Mr. van den Berg's testimony is necessary to refute this misleading assertion and ensure this Court is provided a fully accurate account of Mr. Levandowski's direct involvement in that transfer. Additionally, any arguable prejudice from the timing of Uber's identification would be cured by Uber's agreement that Mr. Levandowski can take another deposition of Mr. van den Berg (in addition to the one taken in the Waymo Litigation).

**Angela Padilla**: Ms. Padilla was listed on *both* Uber's January 6 and March 29 preliminary non-binding witness lists, and thus Mr. Levandowski has no plausible claim of surprise or prejudice. (Vu Decl., Ex. B; Powell Decl., Ex. 4.) Additionally, Ms. Padilla was deposed twice in the Waymo Litigation, with Goodwin Procter present for both depositions, testifying to Mr.

---

[6] As this Court knows, Mr. Levandowski's Indemnification "Agreement shall immediately become null and void and of no further force and effect and there shall be no liability on the part of [Uber] to indemnify [Mr. Levandowski] for *any* Indemnified Claims" if—as Mr. van den Berg's testimony will establish—Mr. Levandowski "directed, caused, [or] induced" someone to transfer Google confidential information to Uber. (*See* Dkt. 350-26, Ex. 26 (Indemnification Agreement, § 2.1(a) & Ex. A.)

Levandowski's representations as to why he had downloaded Waymo confidential documents. (*See* Dkt. 344 at 10-11 (Order re Mot. Summ. J.).) Moreover, Ms. Padilla was listed in *Mr. Levandowski's* Rule 26 initial disclosures in September 2020. (Powell Decl., Ex. 1.) Ms. Padilla's testimony is important: she has unique and direct knowledge of Mr. Levandowski's lies to Uber and lack of cooperation during the Waymo Litigation. Implicitly recognizing that he has suffered no surprise or prejudice, Mr. Levandowski's counsel has represented to Uber that he would "dispense with [Ms. Padilla's] deposition if Uber agrees that her testimony will be limited to the contents of her August 4, 2017 declaration and deposition in the Waymo litigation." (*Id.*, Ex. 5 (Aug. 2, 2021 Vu email).) Uber expects her testimony in this case will be consistent with her prior testimony and declaration, but there is no basis to so limit the scope of her trial testimony.

**Tony West**: Mr. West is not a surprise witness. To the contrary, Mr. Levandowski identified Mr. West in his September 2020 initial disclosures. (*Id.*, Ex. 1.) And Mr. West was thereafter identified on Uber's March 29, 2021 witness list, five months before Mr. Levandowski filed this Motion. (*Id.*, Ex. 4.) Mr. West is expected to testify that Mr. Levandowski's misconduct was the principal reason that Uber was forced to provide approximately $250 million in value to settle the Waymo Litigation, and to the role that Mr. Levandowski's misconduct and refusal to cooperate with Uber played in exposing Uber to Waymo's claims. There is no basis to exclude Mr. West's testimony nor to compel an additional deposition of a witness that Mr. Levandowski himself identified in his initial disclosures and then chose not to depose.

## III. CONCLUSION

For all the foregoing reasons, Uber respectfully requests that the Court deny Mr. Levandowski's Motion to Strike Untimely Discovery or, in the Alternative to Reopen Discovery to Take Limited Depositions, based on Uber's agreement that Mr. Levandowski may subpoena and depose Ms. Branham and Mr. van den berg.

Respectfully Submitted,

Dated: September 24, 2021          PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ Debra I. Grassgreen*
Debra I. Grassgreen