Debra I. Grassgreen (CA Bar No. 169978)
Miriam Manning (CA Bar No. 178584)
PACHULSKI STANG ZIEHL & JONES LLP
One Market Plaza, Spear Tower
40th Floor, Suite 4000
San Francisco, CA 94105-1020
Telephone: (415) 263-7000
Facsimile: (415) 263-7010
E-mail: dgrassgreen@pszjlaw.com
mmanning@pszjlaw.com

David J. Bradford (admitted *pro hac vice*)
Catherine Steege (admitted *pro hac vice*)
Terri L. Mascherin (admitted *pro hac vice*)
Katharine R. McLaughlin (admitted *pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
Telephone: (312) 222-9350
E-mail: dbradford@jenner.com
csteege@jenner.com
tmascherin@jenner.com
kmclaughlin@jenner.com

*Attorneys for Defendant
Uber Technologies, Inc.*

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>ANTHONY SCOTT LEVANDOWSKI,<br><br>Debtor. | Case No. 20-30242 (HLB)<br><br>Chapter 11 |
| ANTHONY SCOTT LEVANDOWSKI, an individual,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.<br><br>Defendant. | Adv. Pro. No. 20-03050 (HLB)<br><br>**UBER TECHNOLOGIES, INC.'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND ARGUMENT IN SUPPORT OF UBER'S EQUITABLE INDEMNITY COUNTERCLAIMS** |

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................................i

TABLE OF AUTHORITIES ...........................................................................................................ii

I. INTRODUCTION ...............................................................................................................1

II. ARGUMENT ......................................................................................................................2

    A. Levandowski's Disclosure Arguments Are Without Merit. ..................................2

        1. Uber Disclosed In Multiple Ways The Amounts It Seeks To Recover On Account Of Its Equitable Indemnity Claims. ...................................................................................2

        2. Because Uber Disclosed The Amounts It Is Seeking To Recover On Account Of Its Equitable Indemnity Claims, Levandowski Cannot Establish That He Has Suffered Any Prejudice Whatsoever. ........................................................................................6

    B. Levandowski's Motion Is Not A Proper Motion *In Limine*. ..................................9

    C. Uber Has Admissible Evidence To Support Its Equitable Indemnity Claims. .....................10

III. CONCLUSION .................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
  11-CV-01846-LHK, 2012 WL 2571719 (N.D. Cal. June 30, 2012) ........................................7

*Baird v. Jones*,
  21 Cal. App. 4th 684 (4th Dist. 1994) ..................................................................................8

*Berman v. Freedom Fin. Network, LLC*,
  400 F. Supp. 3d 964 (N.D. Cal. 2019) ..................................................................................8

*Dux Cap. Mgmt. v. Chen*,
  No. C 03-00540 WHA, 2004 WL 1936309 (N.D. Cal. Aug. 31, 2004) ................................11

*Elliott v. Versa CIC, L.P.*,
  349 F. Supp. 3d 1000 (S.D. Cal. 2018) ............................................................................2, 9

*Little Oil Co., Inc. v. A. Richfield Co.*,
  852 F.2d 441 (9th Cir. 1988) ................................................................................................8

*Pilot Catastrophe Services, Inc. v. Manuel,*
  20-cv-1083-TLN-DMC, 2021 WL 4261499 (N.D. Cal. Sept. 20, 2021) .................................9

*Plexxikon Inc. v. Novartis Pharm. Corp.*,
  17-cv-04405-HSG, 2021 WL 2577536 (N.D. Cal. June 23, 2021) .........................................8

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
  2:16-cv-02322-AB, 2017 WL 11489792 (C.D. Cal. Nov. 15, 2017) .......................................9

*Weaver v. U.S. Dept. of Agric., Forest Serv.*,
  10-CV-01523-AWI, 2013 WL 144974 (E.D. Cal. Jan. 11, 2013) ...........................................8

**Other Authorities**

Fed. R. Evid. 704 ...........................................................................................................................8

Uber Technologies, Inc. ("**Uber**") respectfully submits its Opposition to Anthony Levandowski's *Motion In Limine To Exclude Evidence And Argument In Support Of Uber's Equitable Indemnity Counterclaims* [Dkt. 413] (the "**Motion**"), and represents as follows:

**I.  INTRODUCTION**

Levandowski's Motion asks this Court to bar Uber from presenting evidence or argument in support of Uber's counterclaims for equitable indemnity and contribution (Counterclaim Counts VII and IX) on the basis that Uber allegedly did not disclose the amounts it seeks to recover on account of these claims and cannot prove its claims in any event. The Motion should be denied for three reasons.

*First*, Uber did in fact properly disclose the amounts and categories of damages it seeks to recover multiple times and in multiple ways over the course of this proceeding. Starting with its Counterclaims, and including in its Rule 26(a) Disclosures, its Interrogatory Answers, its document productions and at depositions, and its responses to Levandowski's two unsuccessful summary judgment motions seeking to dismiss both equitable indemnity claims, Uber has told Levandowski it seeks to recover the amounts Uber paid (i) to settle its litigation with Waymo LLC ("**Waymo**") ($250 million) and (ii) to satisfy Google LLC's ("**Google**") joint and several liability judgment against Levandowski's co-defendant, Lior Ron ($9,735,708.10).

As set forth herein, Levandowski's feigned complaints with Uber's disclosure go not to the fact that Levandowski does not know exactly the maximum amount of the judgment Uber asks this Court to award or the facts Uber contends support its claim. Instead, Levandowski's argument is about the fact that Uber has argued that, *at a minimum*, the appropriate apportionment of liability to Levandowski is 90% of the Waymo settlement and 80% of the Google settlement. According to Levandowski, by arguing that if the Court attributes any fault to Uber, it still should attribute most of the fault to Levandowski, Uber has somehow not fully disclosed "each category" of its damages to Levandowski as required by Rule 26(a) of the Federal Rules of Civil Procedure. Levandowski never explains (because he cannot do so) how this argument could impact his defense strategy in any way. So instead he argues that because Uber has not offered an expert witness to support a reduced allocation, the Court should bar Uber's equitable indemnity claim altogether. But no expert is required here. How to allocate fault is the ultimate fact question that this Court, and not an expert, must decide

based on the evidence of what Levandowski did. And on that score, Uber will present substantial evidence, including Levandowski's criminal conviction and other admissions, to demonstrate that Levandowski should be assigned all or almost all of the responsibility for the settlement consideration Uber paid to Waymo and Google. Uber also will present testimony and documentary evidence that Waymo and Uber agreed in arm's length negotiations that Uber would provide $250 million of consideration and further agreed that the stock Waymo received was worth $250 million.

*Second*, Levandowski's Motion also should be denied because he asks this Court to weigh the sufficiency of Uber's evidence and decide the claims summarily on the merits through motion practice. This is not a proper use of a motion *in limine*. *Elliott v. Versa CIC, L.P.*, 349 F. Supp. 3d 1000, 1002 (S.D. Cal. 2018). Instead, motions *in limine* are intended to streamline trials by deciding pure legal questions about the relevancy of proposed evidence or by addressing whether proposed evidence is admissible under the Federal Rules of Evidence. Because Levandowski's Motion raises neither type of issue (and in fact repeats arguments he made in his failed summary judgment motions), his Motion should be denied.

*Finally*, although the Court should not begin the process of weighing the evidence until the trial is concluded, as set forth herein and in Uber's *Trial Brief* [Dkt. 404], Uber will present substantial admissible evidence in support of its request that the Court apportion to Levandowski most, if not all, of the fault for the allegations in the Waymo litigation and the Google arbitration and that Levandowski be ordered to indemnify Uber for the amounts Uber was required to pay to Waymo and Google to resolve those disputes plus attorneys' fees.

**II. ARGUMENT**

**A. Levandowski's Disclosure Arguments Are Without Merit.**

**1. Uber Disclosed In Multiple Ways The Amounts It Seeks To Recover On Account Of Its Equitable Indemnity Claims.**

Relying upon inapposite case law, Levandowski incorrectly contends that Uber has failed to properly disclose the amounts it seeks to recover on account of its equitable indemnity and contribution claims and that Levandowski will somehow be prejudiced if these claims are allowed to go forward at trial. (Motion at 2-4.) But the fact that Levandowski has devoted most of his Motion to explaining

2

DOCS_SF:106990.1 85647/001
Case: 20-03050 Doc# 435-1 Filed: 02/07/22 Entered: 02/07/22 20:25:02 Page 5 of 17

why the evidence does not support Uber's proposed apportionment of the two settlements it paid (Motion at 4-10), belies Levandowski's claims of surprise and prejudice.

In fact, there is no secret here about the total amounts Uber paid to Waymo and Google on account of Levandowski's wrongful conduct. Starting with its Counterclaims, Uber made specific allegations setting forth the amounts it paid that should be apportioned to Levandowski and the reasons why. In Counterclaim VII, Uber alleged that it was seeking contribution for the consideration it paid to settle the Waymo litigation which had been publicly reported as approximately $245 million. (Dkt. 64 at ¶164.)[1] In Counterclaim IX, Uber alleged that it paid $9,453,135.87 to resolve the portion of the Google Arbitration Award that was found to be joint and several as between Ron and Levandowski and that it held an assignment of Ron's contribution rights against Levandowski. (*Id*. at ¶¶190, 192.)

In its Rule 26(a) disclosures, Uber again disclosed the amounts it wanted apportioned to Levandowski, stating:

> Uber is seeking the following damages in this action at this time. Uber's investigation continues.
> 
> a. Compensatory and consequential damages for defense costs that Uber incurred in the Waymo Litigation and approximately $245,000,000 for the consideration that Uber provided to settle the Waymo Litigation;
> 
> b. Contribution from Levandowski for the consideration valued at approximately $245,000,000 that Uber provided to settle the Waymo Litigation;
> 
> c. Compensatory and/or rescissory damages for the funds that Uber advanced to Levandowski to cover defense costs in the Google Arbitration;
> 
> d. Contribution for at least 50% of the approximately $9.5 million that Uber paid on behalf of Lior Ron ("Ron") for the joint and several portion of the Google Arbitration Award;
> 
> e. Attorneys' fees and costs incurred by Uber in defending this action, including fees incurred in the Bankruptcy proceeding; and

---

[1] Uber's Counterclaims and Disclosures stated that Waymo received "approximately $245 million," because that amount had been publicly reported, *see, e.g.*, https://www.reuters.com/article/us-alphabet-uber-trial/waymo-accepts-245-million-and-ubers-regret-to-settle-self-driving-car-dispute-idUSKBN1FT2BA. However, as the evidence at trial will demonstrate, the exact amount is $250 million, as stated in the Settlement Agreement and Uber's interrogatory answer.

    f. Prejudgment and post judgment interest on any amounts awarded to Uber in this action.

(Uber's Initial Disclosures Pursuant to Rule 26(a)(1), Motion, Ex. J at 10-11.)

  In addition, Uber provided Levandowski with a six-page response to Levandowski's interrogatory asking Uber to

> [e]xplain in detail the basis for Uber's demand that Levandowski contribute to any payment made by Uber under the Waymo Settlement Agreement and/or any offset Uber is entitled to, including stating the amount paid, the date Uber made the payment, the amount Uber seeks from Levandowski and/or the amount Uber claims as an offset, and providing all factual bases that support your claim for contribution and/or offset.

(Uber's Response to Plaintiff's Sixth Set of Interrogatories, Motion, Ex. C at 3, Interrogatory No. 11.) In that answer, Uber set forth the legal authority that supports its equitable indemnity claim and explained that █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (*Id.* at 3-4.) Uber then detailed the evidence it would present to show that the allegations in Waymo's lawsuit "were based not on Uber's own intentional misconduct, but rather on intentional misconduct committed by Mr. Levandowski." (*Id.* at 4-9.) Uber further stated that it would ask the Court to find that Levandowski was at least 90% at fault and liable for at least $225 million of the consideration Uber paid to Waymo. (*Id.* at 9.)

  Uber also provided evidence of its payments to Waymo and Google in document discovery, producing: (i) the stock issuance agreement █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (ii) the wire transfer advice reflecting Uber's payment of $9,735,708.10 to Google to settle the joint and several portions of the Google Arbitration Award (UBER-AL00003045); and (iii) the agreement between Ron and Uber assigning Ron's contribution claims against Levandowski to Uber (UBER-AL00000217). The Waymo Settlement Agreement also was produced in this case as evidenced by the fact that it has been provided to the

4

Court on multiple occasions in connection with various motions filed by the parties, including Levandowski's motion for summary judgment based on its terms. (*See* Dkt. 192.)

Levandowski also served a Rule 30(b)(6) deposition notice seeking testimony about: "Negotiations with Waymo and Google regarding Levandowski, including negotiations to settle the Prior Litigation and whether Uber communicated to Google or Waymo any of the proposals or constructs made by Levandowski to Uber regarding a global settlement of the Prior Litigation." (Levandowski Rule 30(b)(6) Notice, Ex. A, attached hereto, at 8-9.) "Prior Litigation" is defined as the "Google Arbitration and Waymo Litigation." (*Id*. at 6.)

Uber produced Cameron Poetzscher as its Rule 30(b)(6) witness to testify on this topic and he testified about the negotiations that led to the Waymo settlement. (Poetzscher Dep., Ex. B, attached hereto, at 23, 29-42.) At Lior Ron's deposition, Levandowski's counsel asked Ron questions about the assignment agreement. (Ron Dep., Ex. C, attached hereto, at 161-63.) Levandowski thus had the opportunity to ask about Uber's payments to Google and Waymo, including how the dollar amount of $250 million was negotiated and how Waymo and Uber valued the stock that Uber transferred to Waymo under the Waymo Settlement Agreement.

Further, the discovery in this adversary proceeding has focused on the very reasons that Uber contends Levandowski is responsible for most of the amounts Uber paid to Waymo and Google in the settlements: Levandowski's admitted criminal trade secret theft and his admitted failure to tell Uber about his secret funding and control of Tyto. The basis for allocation consists primarily of the evidence presented in the Waymo case and in the Google arbitration; not only has that record been available to Levandowski's counsel, but his current counsel, the Goodwin firm, was counsel of record in both the arbitration (for Levandowski) and in the Waymo litigation (for Otto Trucking).

Finally, when Levandowski moved for summary judgment on Uber's contribution claims, Uber submitted the payment documents it produced in discovery to support its opposition. (Dkt. 151 at Exs. U-6, U-46, U-50, U-51, U-75.) And because Levandowski unsuccessfully challenged the contribution claims in *two separate motions*, Uber explained in its two separate response briefs that it was seeking "contribution from Mr. Levandowski for the $250 million Uber paid to settle the Waymo Litigation, and for the roughly $9 million it paid to cover the portion of the Award that was joint and

5

severable against Mr. Levandowski and Mr. Ron." (Dkt. 149 at 18; *see also* Dkt. 148 at 5-6.) When the Court denied Levandowski's summary judgment motion, it also described the claims as seeking equitable indemnity and contribution respectively for the amounts Uber paid to Waymo under the Waymo Settlement Agreement and paid on behalf of Ron to settle Google's arbitration award. (Dkt. 344 at 53-54.)

In sum, the record establishes that Uber has fully disclosed the amounts it is seeking on account of its equitable indemnity and contribution claims and the factual basis for those claims. Accordingly, there is absolutely no basis for this Court to bar Uber from introducing evidence in support of those claims at trial.

**2. Because Uber Disclosed The Amounts It Is Seeking To Recover On Account Of Its Equitable Indemnity And Contribution Claims, Levandowski Cannot Establish That He Has Suffered Any Prejudice Whatsoever.**

Because Uber produced substantial information to Levandowski about its equitable indemnification claims and Levandowski had the opportunity to take discovery on those claims, he cannot establish that he has suffered any prejudice at all and certainly not the type of prejudice that would justify the drastic relief he seeks. Tellingly, Levandowski cannot point to anything that he did not know about Uber's equitable contribution claims that now comes as a surprise. Instead he raises two complaints, neither of which has merit.

*First*, Levandowski argues that he might have hired an expert if he knew that Uber was seeking to apportion fault for most of the Waymo and Google settlements to him. (Motion at 10-11.) That argument is incredible in light of the record in this case. For starters, if Levandowski thought expert testimony was required to apportion fault, he should have hired an expert because he knew from day one that Uber sought to shift liability for all of what it paid to Waymo and Google to him. In paragraphs 166 and 192 of its Counterclaims, Uber pleads that *all* of the Waymo and Google settlement payments should be allocated to Levandowski. (Dkt. 64 at ¶¶166, 192.) The fact that Uber has lowered its request from 100% of both settlement payments to 90% (Waymo) and 80% (Google) does not change the fact that Levandowski was on notice he would be required to present evidence that he was not significantly at fault for the events that forced Uber to settle these claims. Therefore, if Levandowski thought that his defense required expert testimony (which it does not), he could and

6

DOCS_SF:106992.1 85647/001
Case: 20-03050   Doc# 435-1   Filed: 02/07/22   Entered: 02/07/22 20:25:02   Page 9 of 17

should have hired an expert on that topic.

In addition, Levandowski also knew that Uber's accounting expert, Melissa Bennis, performed a mathematical calculation to establish that, if the Court accepts Uber's evidence on the allocation of fault, it is Levandowski, and not Uber, that would owe the resulting net judgment even in the highly unlikely event that Levandowski prevailed entirely on his indemnification claim. (Motion at 5.) If Levandowski thought an expert's opinion was necessary to rebut Ms. Bennis's mathematical calculation, he could have offered a rebuttal expert, as he did when he submitted the expert report of Carl Saba to address other aspects of Ms. Bennis's report.

Similarly, if Levandowski thought he had a case to make that Uber was not entitled to equitable indemnity for the Waymo settlement in the amount of $250 million because the stock transferred to Waymo was worth less than $250 million, nothing prevented Levandowski from developing such evidence through his own expert testimony or by examining Uber's and Google's witnesses about this value. In short, if Levandowski wanted to present expert testimony on this issue, nothing stopped him from doing so.[2]

***Second***, in tacit recognition that nothing prevented him from presenting expert testimony on these issues, Levandowski attempts to make what amounts to a "gotcha" argument in order to shift the focus to Uber. He incorrectly contends that Uber was required to present expert testimony about the stock's value in the first instance and that because Uber did not do so, it must forfeit its claim even if it has other admissible evidence to support that value. But "expert witness testimony is not required for a showing of damages; instead, fact witness testimony can suffice." *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 11-CV-01846-LHK, 2012 WL 2571719, at *28 (N.D. Cal. June 30, 2012) (accepting party's argument that expert testimony on damages was not required). Thus, Uber's "lack of expert testimony" on this issue is "not dispositive"; a party may prove its damages by relying on fact evidence, as Uber

---

[2] Levandowski also complains that Uber initially stated that it might produce an expert to demonstrate that the stock was worth more than $250 million. (Motion at 4.) Uber ultimately elected not to do so (just as Levandowski promised experts on certain issues and did not produce them). Uber's election to stand on the $250 million value for the stock, however, in no way prejudiced Levandowski because, unlike with Levandowski's alleged consequential damages claim (where he promised an expert to quantify the claim), (a) Levandowski was told from day one that Uber's position was that the stock was worth at least $250 million, and (b) Uber produced documents and a witness to answer questions about the settlement negotiations through which the $250 million settlement value was agreed upon—at arm's length between Uber and Waymo.

7

intends to do in the case of its equitable contribution claims. *Plexxikon Inc. v. Novartis Pharm. Corp.*, 17-cv-04405-HSG, 2021 WL 2577536, at *8 (N.D. Cal. June 23, 2021) (denying motion *in limine* seeking to bar non-expert testimony on damages); *Weaver v. U.S. Dept. of Agric., Forest Serv.*, 10-CV-01523-AWI, 2013 WL 144974, at *7 (E.D. Cal. Jan. 11, 2013) (rejecting defendant's argument that plaintiff could not prove damages without expert report quantifying damages). (Uber's factual evidence is described in Section C, *infra*.) Accordingly, the fact that Uber did not hire an expert to value the stock does not mean that Uber cannot proceed on its claims or that Levandowski was somehow prevented from presenting his own expert testimony.

Levandowski also cannot claim prejudice here because expert testimony on the fact question of how fault should be allocated is not required and, in any event, likely would not have been permitted had Levandowski (or Uber) sought to present such testimony. An expert "is generally not permitted to opine on an ultimate issue of fact" because "such opinions may 'invade the province of' the [trier of fact]." *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 971 (N.D. Cal. 2019); *accord Little Oil Co., Inc. v. A. Richfield Co.*, 852 F.2d 441, 446 (9th Cir. 1988) (affirming exclusion of expert opinion that improperly instructed trier of fact how to weigh the "ultimate facts in question"); Fed. R. Evid. 704, Advis. Comm. 1972 Note ("The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions" on the ultimate issue, and such opinions should be excluded if they "merely tell the jury what result to reach").

Here, as Levandowski acknowledges, the question of how much of the fault should be allocated to Levandowski is the ultimate question of fact that *this Court*, as the finder of fact, must decide. (*See* Motion at 2-3.) Thus, an expert opinion telling this Court how to rule on that question would likely not be admissible and therefore, certainly is not required. For that reason, it is not surprising that none of the equitable indemnity decisions that Levandowski cites holds that a party seeking equitable indemnity *must* offer expert testimony to support its allocation of fault or be subject to summary rejection of its claim. (*See* Motion at 2-3.) For example, Levandowski cites *Baird v. Jones*, 21 Cal. App. 4th 684, 687-88, 693 (4th Dist. 1994). In that decision, the appellate court upheld an award of equitable indemnity, which was based on the *trial court's* determination of which defendant was responsible for the underlying judgment. The decision contains no suggestion that the trial court

8

received expert testimony on the question before deciding who was at fault or that expert testimony is required to prove a claim for equitable indemnity under California law. Similarly, in *Pilot Catastrophe Services, Inc. v. Manuel*, the district court entered a default judgment granting an equitable indemnity claim and apportioned fault without requiring expert testimony. 20-cv-1083-TLN-DMC, 2021 WL 4261499, at *7-9 (N.D. Cal. Sept. 20, 2021), *report and recommendation adopted*, 2021 WL 5112996 (E.D. Cal. Nov. 3, 2021). None of the other equitable indemnification decisions that Levandowski string-cites requires a party seeking equitable indemnification to present expert testimony on how fault should be apportioned. (*See* Motion at 2-3.)

In sum, Levandowski has not shown what it is that Uber did not disclose to him or how this unidentified lack of disclosure has in any way prejudiced Levandowski. Accordingly, the Court should deny Levandowski's Motion.

### B. Levandowski's Motion Is Not A Proper Motion *In Limine*.

Levandowski's Motion also should be denied because it is not a proper motion *in limine*. "A motion *in limine* 'is not a proper vehicle for a party to ask the Court to weigh the sufficiency of the evidence to support a particular claim or defense, because '[t]hat is the function of a motion for summary judgment, with its accompanying and crucial procedural safeguards.'" *Elliott*, 349 F. Supp. at 1002 (quoting *Bowers v. National Collegiate Athletic Ass'n*, 563 F. Supp. 2d 508, 532 (D. N.J. 2008)); *accord Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 2:16-cv-02322-AB, 2017 WL 11489792, at *1 (C.D. Cal. Nov. 15, 2017). Instead, the proper use of an *in limine* motion is "to exclude inadmissible evidence before it is introduced at trial." *Elliott*, 349 F. Supp. at 1001.

*Elliott* is instructive. In that case, defendants moved to "preclude nonplausible claims," *id.* at 1003, and reargued the points that they had made in an unsuccessful summary judgment motion, *id.* at 1002. In denying the motion, the court also rejected defendants' arguments that certain claims were not disclosed, noting that it was "unclear to the Court how a claim purportedly not pleaded in this lawsuit was nevertheless a claim on which Defendants moved for summary judgment." *Id.* at 1003.

Levandowski's Motion suffers from the same defects as the motion in *Elliott*. Like the defendants in *Elliott*, Levandowski asks this Court to weigh the evidence, devoting most of his Motion to his arguments about why he should not be liable to Uber for either the Waymo or Google

9

DOCS_SF:106903.1 85647/001 Case: 20-03050 Doc# 435-1 Filed: 02/07/22 Entered: 02/07/22 20:25:02 Page 12 of 17

settlements. (Motion at 4-10). But how much of the fault is Levandowski's, as opposed to Uber's, is the very factual issue this Court must decide after hearing the evidence. Simply put, Levandowski's Motion must be denied because it does not ask this Court to reject evidence on the grounds that it is legally irrelevant or inadmissible under the Federal Rules of Evidence. Instead, it asks the Court to decide the ultimate fact question in Levandowski's favor summarily based solely on his one-sided presentation of the facts.

Further, like the defendant in *Elliot*, Levandowski professes ignorance of issues he previously argued and lost when the Court declined to grant summary judgment dismissing Uber's equitable indemnity claims. When he moved for summary judgment on the equitable indemnity claims, Levandowski made the same argument he now makes in this Motion: that Uber has not shown that the stock it transferred to Google was worth $250 million. (*Compare* Motion at 4 ("Uber failed to present any expert opinion testimony as to the value of the Waymo Settlement consideration") *with* Dkt. 175 at 13 n.8 ("Uber seeks $250 million for the amounts it paid in the Waymo Settlement, but the Waymo Settlement provided for payment in the form of preferred stock at Uber, not money....Uber provides no legal basis for seeking contribution for the stock it issued pursuant to the Waymo Settlement.") Having already made this argument and lost, Levandowski is not entitled to raise this argument again before trial and in any event, certainly should not be heard to complain that he did not know the amounts Uber was seeking on account of its equitable indemnity claims.

### C. Uber Has Admissible Evidence To Support Its Equitable Indemnity And Contribution Claims.

Ignoring the fact that (a) he was criminally convicted of theft of the confidential information that was at the heart of the Waymo litigation and (b) that he was held jointly and severally liable with Ron for the amounts Uber paid to Google, Levandowski argues that there is supposedly *no* evidence that he should be held responsible for any of the amounts Uber paid to Waymo or Google. (Motion at 5-10.) This remarkable argument is wholly misplaced in a motion *in limine* particularly given, as discussed above, the Court has already denied Levandowski's summary judgment motions seeking to dismiss Uber's equitable indemnity claims. In any event, although the Court need not and should not weigh the evidence in the context of a motion *in limine*, the record demonstrates that Uber has ample

10

DOCS_SF:106903.1 85647/001   Case: 20-03050   Doc# 435-1   Filed: 02/07/22   Entered: 02/07/22 20:25:02   Page 13 of 17

evidence to support its equitable indemnity claims.

*First*, Levandowski is wrong when he claims that Uber has no evidence of the value of the stock that was transferred to Waymo to settle the Waymo litigation. (Motion at 4-5.) Uber will present evidence that the stock's value was $250 million— ██████████████████████████████ ██████████████████████████████████████████ Uber will offer the testimony of Cameron Poetzscher, Uber's vice-president of corporate development, who Mr. Levandowski deposed as Uber's Rule 30(b)(6) witness on the Waymo Settlement Agreement. Uber expects that Poetzscher will testify ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ Poetzscher also will testify that as adversaries in hotly contested litigation, the negotiations with Waymo were at arm's length.

Additionally, the Waymo Settlement Agreement itself also is evidence that the settlement consideration was worth $250 million. ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ Thus, the Waymo Settlement Agreement itself is competent evidence of the value of the stock. *See, e.g.*, *Dux Cap. Mgmt. v. Chen*, No. C 03-00540 WHA, 2004 WL 1936309, at *13 (N.D. Cal. Aug. 31, 2004).

*Dux Capital Management* is instructive. In that case, defendants in a breach of fiduciary duty

11

suit argued that the plaintiff had failed to present any evidence that the corporation's stock had any value at the time defendants breached their fiduciary duties. *Id*. The court held that a settlement agreement resolving a different lawsuit in which the settling parties assigned a value of $2 per share to the corporation's stock was probative evidence of the stock's value because the parties to that agreement arrived at the value in good faith and as a result of arm's length negotiations. *Id*. That is the case here.

Further, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ The arbitration hearing transcript is part of the discovery in this case and Levandowski's lawyers in this case represented him during the arbitration hearing.

***Second***, Levandowski complains that there is no evidence to support Uber's contention that Levandowski was primarily responsible for the conduct alleged in Waymo's lawsuit against Uber. (Motion at 5-8.) Pointing to Waymo's opening statement, Levandowski argues that Waymo's statements about what Uber did show Uber was at fault. (*Id*. at 6.) Opening statements are not evidence and in any event, Uber is a corporation; it acts only through its employees. And in this case, that employee was Levandowski. That is why Judge Alsup made a criminal referral about Levandowski and Levandowski was indicted and convicted of theft of trade secrets. (*See United States v. Levandowski*, 3:19-cr-00377-WHA (N.D. Cal.), Dkt. 77.)

As Levandowski himself admitted in his criminal case, "[a]lthough [he] was not a party to Google/Waymo's lawsuit, *he was unquestionably at its center*" because "Google's case was premised on its allegation that, when *Mr. Levandowski* chose to leave Project Chauffeur, *he* stole some 14,000 files, representing 'billions' of dollars in value, with the intent of replicating Google's LiDAR devices at Uber." (*See id*. Dkt. 87 at 7 (emphasis added).) This admission, along with the evidence summarized in Uber's *Trial Brief* [Dkt. 404], provides a basis for the Court to apportion at least 90% of the fault

12

to Levandowski.

***Third***, Levandowski claims that Uber has no evidence that Levandowski is responsible for 80% of the amount Uber paid to Google to settle the arbitration award's joint and several judgment. (Motion at 8-10.) To make his argument, Levandowski selectively (and misleadingly) quotes his own interrogatory. Without alerting the Court that he asked only about the Waymo Settlement Agreement, Levandowski argues that he asked Uber to provide the bases and support for its equitable indemnification claim and complains that "Uber was silent on the Ron Indemnification Payment." (Motion at 8.) In fact, that interrogatory (which Uber quotes in full at page 3 *supra*) only asked Uber to: "[e]xplain in detail the basis for Uber's demand that Levandowski contribute to any payment made by Uber *under the Waymo Settlement Agreement* ...." (Waymo Settlement Agreement, Motion, Ex. B at 3 (emphasis added).) Having asked only about the basis for equitable indemnification for the Waymo Settlement, it is disingenuous for Levandowski to suggest that, by not addressing the Google/Ron settlement related to the Google arbitration, Uber must have no evidence to support its contribution claim based on the Google arbitration award against Ron.

Equally disingenuous is Levandowski's statement that he asked for all documents that support Uber's counterclaims and that "Uber produced nothing...." (Motion at 8.) This is false; if it were true, surely Levandowski would have filed a motion to compel. The record shows he did not do so. The reality is that Uber produced 2,077 documents to Levandowski, including certain documents related to the Waymo settlement negotiations, and both parties had access to the very voluminous records produced in the Waymo lawsuit and Google arbitration.

Moreover, as Levandowski's argument demonstrates, the Arbitration Award itself is the evidence that supports Uber's equitable indemnification claim. (Motion at 9-10.) If, as Levandowski argues, Ron and Levandowski were equal partners, at least 50% of the joint and several award is attributable to Levandowski. (*Id.*) Given that admission, there is no basis for this Court to summarily dismiss Uber's equitable indemnification claim. Uber expects that when the Court hears all of the evidence it will conclude that Levandowski was at least 80% responsible for the amounts Uber was required to pay to Google.

13

## III. CONCLUSION

For all of these reasons, Uber respectfully requests that this Court deny Levandowski's Motion and grant such other relief as may be just.

Dated: February 7, 2022

PACHULSKI STANG ZIEHL & JONES LLP

By  */s/ Debra I. Grassgreen*
Debra I. Grassgreen
Miriam Manning

--and--

JENNER & BLOCK LLP
David J. Bradford
Terri L. Mascherin
Catherine Steege
Katharine R. McLaughlin

*Counsel for Uber Technologies, Inc.*

14