THOMAS B. WALPER (State Bar No. 96667)
thomas.walper@mto.com
JOHN W. BERRY (State Bar No. 295760)
john.berry@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California  90071-3426
Telephone:     (213) 683-9100
Facsimile:     (213) 687-3702

RACHAEL E. MENY (State Bar No. 178514)
rmeny@keker.com
REID MULLEN (State Bar No. 270671)
rmullen@keker.com
W. HAMILTON JORDAN (State Bar No. 295004)
wjordan@keker.com
KEKER, VAN NEST & PETERS LLC
633 Battery Street
San Francisco, California 94111-1809
Telephone:     (415) 391-5400
Facsimile:     (415) 397-7188

*Counsel for Google LLC*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>ANTHONY SCOTT LEVANDOWSKI,<br><br>Debtor. | Bankruptcy Case No. 20-30242 (HLB)<br><br>Chapter 11<br><br>Hon. Hannah L. Blumenstiel |
| ANTHONY SCOTT LEVANDOWSKI,<br><br>Plaintiff,<br><br>UBER TECHNOLOGIES, INC.,<br><br>Defendant. | Adv. Proceeding No. 20-03050_<br><br>**GOOGLE LLC'S RESPONSE TO UBER TECHNOLOGIES, INC.'s MOTION *IN LIMINE* TO BAR EVIDENCE AND ARGUMENT ABOUT UBER'S MOTIVATIONS AND INTENT**<br><br>Trial Date: February 14, 2022<br>Place:      United States Bankruptcy Court<br>            450 Golden Gate Ave.<br>            Courtroom 19, 16th Floor<br>            San Francisco, CA 94102 |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................... 1

II.   ARGUMENT .......................................................................................... 2

    A.   Uber's Knowledge And Motivations Are Directly Relevant To This Case.............. 2

    B.   Uber's Contract Argument Fails........................................................ 4

    C.   Uber's Motion Seeks To Improperly Cherry-Pick The Record................... 5

    D.   Uber Misstates The Law On Its "Unclean Hands" Defense ...................... 5

    E.   Google Has The Right As Intervenor To Raise These Arguments ............ 7

    F.   Uber Waived An *In Pari Delicto* Defense And, In Any Event, It Is Not Properly Asserted With This Motion ................................................. 8

III.  CONCLUSION ....................................................................................... 9

Case: 20-03050 Google's Response To Uber's Motion Filed 02/08/22 Doc #: 418 Entered: 02/08/22 00:11:38 Page 2 of 13

# **TABLE OF AUTHORITIES**

**Page(s)**

FEDERAL CASES

*City Sols., Inc. v. Clear Channel Commc'ns*,
  365 F.3d 835 (9th Cir. 2004) ............................................................................... 3

*Crowe v. Gogineni*,
  No. 2:11-CV-3438-EFB, 2017 WL 4310427 (E.D. Cal. Sept. 28, 2017)................................... 3

*Farberware Licensing Co. LLC v. Meyer Mktg. Co.*,
  No. 09 Civ 2570(HB), 2009 WL 2710209 (S.D.N.Y. Aug. 25, 2009) ......................................... 4

*Hartmeyer v. Trane Co.*,
  216 F. Supp. 2d 500 (D. Md. 2002) ........................................................................ 3

*Kaufman v. Tallant (In re Tallant)*,
  207 B.R. 923 (Bankr. E.D. Cal.1997) ...................................................................... 3

*Keywell Corp. v. Weinstein*,
  33 F.3d 159 (2d Cir. 1994).................................................................................. 3

*Pinto Trucking Serv., Inc. v. Motor Dispatch, Inc.*,
  649 F.2d 530 (7th Cir. 1981) ............................................................................ 8, 9

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*,
  609 F. App'x 497 (9th Cir. 2015)........................................................................... 7

*SEC v. Moshayedi*,
  No. SACV 12-01179 JVS, 2013 WL 12129282 (C.D. Cal. Nov. 20, 2013) ............................... 5

*Tallant v. Kaufman (In re Tallant)*,
  218 B.R. 58 (B.A.P. 9th Cir. 1998) ........................................................................ 3

*In re Ulberg*,
  No. 10-53637-E-13, 2011 WL 6016131 (Bankr. E.D. Cal. Nov. 29, 2011)................................ 3

*United States v. Seals*,
  419 F.3d 600 (7th Cir. 2005) ............................................................................... 5

*United States v. Zabaneh*,
  837 F.2d 1249 (5th Cir. 1988) ............................................................................. 5

*Wolk v. Green*,
  No. C06-5025 BZ, 2008 WL 821807 (N.D. Cal. Mar. 26, 2008) ................................. 2

Case: 20-03050   Doc# 44   Filed 02/08/22   Entered 02/08/22 00:11:28   Page 3 of 13

# TABLE OF AUTHORITIES
### (Continued)

Page(s)

**STATE CASES**

*Alki Partners, LP v. DB Fund Servs., LLC*,
4 Cal. App. 5th 574 (2016) ................................................................ 4

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
7 Cal. 4th 503 (1994) ....................................................................... 5

*Belling v. Croter*,
57 Cal. App. 2d 296 (1943) ............................................................... 6

*Blain v. Doctor's Co.*,
222 Cal. App. 3d 1048 (1990) ........................................................... 6

*CrossTalk Prods., Inc. v. Jacobson*,
65 Cal. App. 4th 631 (1998) .......................................................... 6, 7

*JRS Prod., Inc. v. Matsushita Elec. Corp. of Am.*,
115 Cal. App. 4th 168 (2004), *as modified on denial of reh'g* (Feb. 25, 2004) ........................... 5

*Lopez v. Sw. Cmty. Coll. Dist.*,
No. D057248, 2011 WL 2347632 (Cal. Ct. App. June 14, 2011).................................... 4, 5

**FEDERAL STATUTES**

Bankruptcy Code § 1109 ........................................................................ 7

**FEDERAL RULES**

Rule 403 ............................................................................................ 5

Rule 404(b) ........................................................................................ 5

**TREATISES**

11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity ........................................ 6

Case: 20-03050   Doc# 48   Filed: 02/08/22   Entered: 02/08/22 00:11:38   Page 4 of 13

## I.  **INTRODUCTION**

In its pretrial brief, defendant Uber Technologies, Inc. argues that it was the "victim" of Anthony Levandowski's misconduct, but its motion *in limine* now asks the Court to prohibit Google LLC from challenging that characterization with evidence about Uber's true motivations in 2015 and 2016.  That evidence is relevant to rebut Uber's central trial themes, and directly bears on numerous claims and defenses that Uber itself has put at issue in this trial.

It's not surprising that Uber wants to exclude this evidence.  The trial record will be damning.  In 2015 and 2016, Uber knowingly encouraged Anthony Levandowski to form a competing business and staff it with Google employees while he was still a Google employee, and then bought that company for a reported approximately $680 million in an unrestrained attempt to catch up with and compete against Google in the self-driving car space.  Highly motivated to close that deal, Uber agreed to a broad and extraordinary "bad acts" Indemnification Agreement, even though the day it signed the agreement Uber faced $100-plus million in legal exposure given the "bad acts" that it knew Levandowski had already committed and the red flags that revealed the "bad acts" Uber now claims it did not know about.  All of this will squarely rebut Uber's trial theme—that Uber was an innocent victim that never intended to harm anyone and was defrauded by Levandowski.

In an effort to shield this evidence from the Court, Uber argues that this case is just a "breach of contract" case and so its motivations and intentions in 2015 and 2016 are "irrelevant."  That argument, however, has a fatal and obvious flaw—this is not just a breach of contract case.  Uber itself has asserted, both in its counterclaims and defenses, that Levandowski defrauded Uber and acted with "unclean hands."  By asserting these fraud-based tort theories, Uber has placed the state of mind and conduct of its former management team squarely at issue.  It will have the burden at trial to prove that it had acted reasonably and justifiably relied on Levandowski's statements in 2016, and that only Levandowski acted with "unclean hands."  To make this showing, Uber will have to present evidence about what its former executives were thinking and doing back in 2015 and 2016.  No one denies that Uber can argue that this evidence is admissible.

-1-

But Uber's motion seeks an extraordinary evidentiary ruling that would let Uber present whatever evidence it wants about the reasonableness of its former executives, but bar Google (and, apparently, Levandowski) from submitting any evidence that rebuts it. That is not how the rules of evidence work. Uber offers no justification for such a one-sided presentation of relevant evidence. All of the relevant evidence about what the Uber executives were thinking and doing back in 2016—and not just the record Uber wants to cherry-pick—should be admitted.

Nor is there any basis to prevent Google from presenting and making arguments about this evidence. As an active participant and intervenor in this trial, Google has every right to highlight and emphasize that evidence. This includes the ample record showing the knowledge, motivations and intentions of Uber's executive team back in 2015 and 2016, which will directly counter Uber's attempts to paint itself as an innocent victim. Uber's motion, therefore, should be denied.

## II. ARGUMENT

### A. Uber's Knowledge And Motivations Are Directly Relevant To This Case

Uber argues that its motivations in 2015 and 2016 are "irrelevant" in this case. Dkt. No. 415-1 ("Uber Mem.") at 1. But this evidence bears directly on Uber's own counterclaims and defenses, including its fraud-based tort theories. *See* Dkt. No. 63 (Uber Am. Answr.) at 68-70 (alleging fraud in "unclean hands" defense no. 8), *id*. at 100, 103 (alleging "actual fraud and fraudulent misrepresentations" in support of contribution counterclaims VII and IX for contribution). To establish this alleged fraud at trial, Uber will have to prove that its former executives "reasonably and justifiably relied" on the misstatements and omissions Uber alleges Levandowski made. *Id*. at 70 (Uber allegation in support of unclean hands defense); *see also* Dkt. No. 344 (SJ Order on Uber fraud claims) at 29, 56 (holding that Uber's fraud claims require proof of "justifiable reliance"). But, as this Court held on summary judgment, "[m]aterial issues of fact remain as to whether Uber reasonably relied on those misrepresentations" (Dkt. No. 344 at 84), and Uber will have the burden of addressing those open issues at trial. *See, e.g.*, *Wolk v. Green*, No. C06-5025 BZ, 2008 WL 821807, at *1 (N.D. Cal. Mar. 26, 2008).

Satisfying that burden will necessarily require Uber to delve into what its executives knew, believed and intended at the time. "Justifiable reliance 'is a subjective standard.'" *In re Ulberg*,

Case: 20-03050   Google's RESPONSE TO UBER's MOTION AD_MON832001V11 ESD Pages 6 of 13

No. 10-53637-E-13, 2011 WL 6016131, at *5 (Bankr. E.D. Cal. Nov. 29, 2011) (quoting *Kaufman v. Tallant (In re Tallant)*, 207 B.R. 923, 933 (Bankr. E.D. Cal.1997), *reversed in part on other grounds sub nom. Tallant v. Kaufman (In re Tallant)*, 218 B.R. 58 (B.A.P. 9th Cir. 1998)).  And so Uber will have to present evidence as to its corporate state of mind at the time—including its awareness of facts, decision-making, motivations and intentions at the time it allegedly relied on Levandowski—to prove it were justified in relying on Levandowski.  This is all relevant and should be admissible at trial (unless Uber had asserted privilege over the evidence in discovery in this case).  *See, e.g.*, *City Sols., Inc. v. Clear Channel Commc'ns*, 365 F.3d 835, 840 (9th Cir. 2004) (whether alleged "representation has played a substantial part, and so has been a substantial factor, in influencing [the party's] decision" is relevant to whether the party justifiably relied); *Crowe v. Gogineni*, No. 2:11-CV-3438-EFB, 2017 WL 4310427, at *5 (E.D. Cal. Sept. 28, 2017) (whether "plaintiff would have been aware of [alleged fraud] and acted differently" is relevant to whether plaintiff justifiably relied) (quotations omitted).

For the very same reason, any evidence that rebuts Uber's arguments about the materiality of the alleged fraud or the reasonableness of Uber's reliance is equally admissible.  For example, the evidence will show that Uber was well aware that Levandowski had engaged in significant misconduct at Google (some of it to benefit Uber) and that he had retained troves of confidential Google information after leaving Google.  During the course of the Stroz Friedberg investigation, Uber discovered numerous other facts that raised serious red flags, yet it decided to cut short the Stroz Friedberg investigation and indemnify Levandowski anyway because it was more concerned in 2016 about closing a deal to benefit Uber and harm Google (Uber's main competitor in the self-driving car space) than it was about Levandowski's actions, statements or omissions.

This evidence, which Uber seeks to exclude, directly contradicts Uber's theory that it innocently relied on, and actually cared about, what Levandowski did or did not tell Uber.  *See, e.g.*, *Crowe*, 2017 WL 4310427 at *5 (plaintiff had failed to prove fraud because he could not show he justifiably relied on the alleged fraud, having failed to prove the fraud had caused him to "act[] in a different manner"); *Hartmeyer v. Trane Co.*, 216 F. Supp. 2d 500, 504 (D. Md. 2002) (proof of justifiable reliance "shaky" because plaintiff "had his own commercial motivations for

1  delaying and limiting his search for other price quotes" he alleged was not disclosed to him);

2  *Keywell Corp. v. Weinstein*, 33 F.3d 159, 164 (2d Cir. 1994) ("[w]hen a party is aware of

3  circumstances that indicate certain representations may be false, that party cannot reasonably rely

4  on those representations, but must make additional inquiry to determine their accuracy").[1]

5      **B.      Uber's Contract Argument Fails**

6      Uber also tries to cast this case as purely a breach of contract case, arguing that "motive is

7  not an element of a breach of contract action" and so evidence of Uber's motivations is

8  "irrelevant."  Uber Mem. at 1, 3-4.  Uber even contends that any argument relying on this

9  evidence is a "tort argument and has no place in a breach of contract action."  *Id.* at 8.

10     This, of course, disregards the fact that this is more than just a contract case.  The fact that

11 some of Uber's key defenses and counterclaims, as well as Levandowski's defenses to Uber's

12 counterclaims, sound in fraud is fatal to Uber's argument.  *See, e.g.*, *Farberware Licensing Co.*

13 *LLC v. Meyer Mktg. Co.*, No. 09 Civ 2570(HB), 2009 WL 2710209, at *2 (S.D.N.Y. Aug. 25,

14 2009) (finding argument that evidence of motivation was "irrelevant" in breach of contract claim

15 "flawed because it is based on the faulty assumption that the only claims at issue in this action"

16 were contract-based claims).  This fatal flaw is highlighted by the cases Uber cites in support of its

17 breach-of-contract argument.  Each of those cases—unlike here—were expressly limited to breach

18 of contract claims.  Uber's cases, therefore, have no application here.  *See Alki Partners, LP v. DB*

19 *Fund Servs., LLC*, 4 Cal. App. 5th 574, 597 (2016) ("plaintiffs' claims are limited to those

20 alleging breach of the Agreement"); *Lopez v. Sw. Cmty. Coll. Dist.*, No. D057248, 2011 WL

21 2347632, at *5 (Cal. Ct. App. June 14, 2011) (unpublished) ("this case involves only contract-

22 based claims"); *JRS Prod., Inc. v. Matsushita Elec. Corp. of Am.*, 115 Cal. App. 4th 168, 183

23 (2004), *as modified on denial of reh'g* (Feb. 25, 2004) (remedy was "limited to contract

24

25 ---

[1] Levandowski also asserted defenses that require the Court to assess Uber's intentions and motivations in

26 2016. For example, Levandowski contends Uber is equitably estopped from avoiding its indemnity
   obligations because its executive team at the time knew "the very information that Uber claims [was] not

27 disclosed" and "continued with the Uber-Otto transaction anyway." Dkt. No. 78 (Pl. Answr. to Uber Am.
   Answr.) at 30-31. For the same reasons, Levandowski contends that Uber's claims are barred by the statute

28 of limitations and *laches*. *See id.* at 32-35. Evidence of what Uber executives knew, when they knew it,
   and why they did what they did despite this knowledge, all bear on these defenses as well.

-4-

damages"); *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 508, 516 (1994) (because case was only about breach of contract, distinguishing between "different spheres of contract and tort" in addressing admissibility of evidence and holding "motivations for conduct are [] treated differently" than for tort claims).

## C. Uber's Motion Seeks To Improperly Cherry-Pick The Record

Another flaw with Uber's motion is that it seeks to preclude Google from presenting any evidence about Uber's motivations and intent, while allowing Uber to put anything it wants into the record to support its theory that it reasonably relied on Levandowski. For example, Uber wants to characterize itself as an innocent "victim" that was fooled into believing Levandowski had not committed the "bad acts" he now asks to be indemnified for. Uber, of course, can attempt to make that argument at trial, but it cannot prevent Google from presenting evidence that shows just the opposite was true. *See U.S. v. Zabaneh*, 837 F.2d 1249, 1260 (5th Cir. 1988) ("Appellant may not offer only those portions of his witnesses' depositions that he finds favorable, and censor or bar admission of portions that might undermine the same witnesses' credibility."); *U.S. v. Seals*, 419 F.3d 600, 613 (7th Cir. 2005) ("[w]hat is sauce for the goose should be sauce for the gander," and holding that "[e]vidence admissible under Rule 404(b) to establish modus operandi [of defendants] should be admissible under Rule 403 to show that another set of criminals employed the same modus operandi"). Uber offers no valid basis for such a one-sided evidentiary ruling. The mere fact that the evidence Google wants to present will be damning to Uber's case does not justify its exclusion. *See SEC v. Moshayedi*, No. SACV 12-01179 JVS, 2013 WL 12129282, at *8 (C.D. Cal. Nov. 20, 2013) (admitting evidence of witness's beliefs because "[t]here is no prejudice beyond the fact that their testimony may prove unhelpful to [defendant]").

## D. Uber Misstates The Law On Its "Unclean Hands" Defense

Uber also argues that, even though it has asserted an "unclean hands" defense, evidence of Uber's knowledge and motivations should be excluded because that defense only concerns "Levandowski's conduct towards Uber." Uber Mem. at 10. This is wrong for several reasons.

First, a primary component of Uber's "unclean hands" defense is Uber's claim that it was defrauded by Levandowski. *See* Dkt. No. 63 (Uber Am. Answr.) at 68-70 (alleging fraud to

-5-

support Uber's "unclean hands" defense, including that its former executives "reasonably and justifiably relied" on Levandowski's alleged misstatements). As discussed above, evidence of Uber's knowledge, motivations and intentions is relevant to this fraud theory and so must be admissible in connection with Uber's "unclean hands" defense. *See supra*.

Second, Uber's argument ignores the basic tenet that a party like Uber, who is seeking to invoke the equitable defense of "unclean hands," must come with its own clean hands. *See CrossTalk Prods., Inc. v. Jacobson*, 65 Cal. App. 4th 631, 647 (1998) ("[H]e who comes into equity must come with clean hands.") (quoting 11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, § 8, p. 684). Therefore, evidence showing that Uber intended to unfairly compete and harm its primary competitor is admissible to show that Uber itself has unclean hands and so cannot prevail on its unclean hands defense. *See id*.; *Blain v. Doctor's Co.*, 222 Cal. App. 3d 1048, 1060 (1990).

Citing a 1943 case, *Belling v. Croter*, 57 Cal. App. 2d 296 (1943), Uber wrongly argues that the rule in California is that a plaintiff can only rebut an unclean hands defense with evidence of the defendant's misconduct if that defendant had "laid a trap" or "tricked" the plaintiff. Uber Mem. at 10. But Uber misconstrues *Belling*. As the appellate court in *CrossTalk* correctly explained, *Belling* is the "exception," not the rule. 65 Cal. App. 4th at 645. Rather, the rule in California is that a plaintiff can rebut an unclean hands defense if he can show that the defendant also engaged in misconduct, and that can only be determined once evidence of all the "circumstances" surrounding the parties' behavior is considered. *Blain*, 222 Cal. App. 3d at 1061-62 (doctrine of unclean hands should not "[deny] relief to one party against another when both have been engaged in a fraudulent transaction").

Third, an "unclean hands" defense is a "heavily fact dependent" defense that requires the Court to examine the conduct of both Uber and Levandowski in order to assess whether the defense should apply. *CrossTalk*, 65 Cal. App. 4th at 620; *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 609 F. App'x 497, 498 (9th Cir. 2015) ("the doctrine of unclean hands is a fact-specific inquiry" under California law). The Court cannot properly make that assessment if it unilaterally excludes evidence of the wrongs of one of the parties.

**E.  Google Has The Right As Intervenor To Raise These Arguments**

Uber also wrongly argues that Google, as an intervenor, should not be allowed to "present argument or evidence" about what Uber did and thought back in 2015 and 2016 because the Court's intervention orders did not, in Uber's view, grant "Google the right to advance its own theories of recovery against Uber." Uber Mem. at 7, 8. Uber even complains that Google should not be allowed to call itself a "victim" because that is just an effort "to litigate yet another case in which Google seeks compensation from Uber" and somehow violates ████████████ ████████████ *Id.* at 1.

This argument just repackages an argument Uber has repeatedly made and that this Court has consistently rejected.[2] And for good reason. Google is not seeking its own relief, and has intervened only so that it may be "heard" under Section 1109 Bankruptcy Code. Google's intervention therefore does not violate ██████████████████████████. And, despite what Uber suggests in its motion, Google has never been compensated for the harm it suffered. As Uber well knows, it paid Waymo when it settled the trade secrets case that Waymo had brought against it. Google's judgment against Levandowski for his illegal competition and solicitation of Google employees has nothing whatsoever to do with trade secret theft, and it remains unpaid to this day because Uber refuses to honor its indemnity obligations. *See* Dkt. No. 405 (Google Pretrial Brief) at 10. Also, the parameters of Google's intervention do not limit what Google can say about how Levandowski's and Uber's actions in 2016 harmed Google. Calling Google a victim of those "bad acts" is not a breach of a settlement agreement; it's simply the truth.

---

[2] Uber argued this same point when it opposed Google's initial motion to intervene in August 2020, and then at a scheduling conference in October 2020, and again in its opposition to Google's subsequent motion to clarify the scope of its intervention in March 2021. *See* Dkt No. 29 at 22-24, Dkt. No. 224 at 8-9; Hrg. Tr. (10/8/2020) at 35:16-23 (Uber counsel: Google "breached ████████████████████████ ██████). Not once has the Court accepted this argument. *See, e.g.*, Hrg. Tr. (9/3/2020) at 29:13-15 ████████████████████████████████████████ *id.* at 30:3-11 ████████████████████████████████████████ ████████████████; Hrg. Tr. (4/22/2021) at 7:25-8:1 (Court: "I don't believe that that clause [in the settlement agreement] prohibits my order on the intervention motion.").

1    Moreover, the fact that Uber's former executives had poor intentions and motivations in

2  2016 is not, as Uber now portrays it, "Google's theory."  Uber Mem. at 8, 10.  Levandowski is

3  making the same arguments that Uber now asks this Court to bar Google from making.  For

4  example, in his pretrial brief, Levandowski argues that Uber's "unclean hands" defense "will fail"

5  because the "evidence at trial will show that Uber's hands are very unclean."  Dkt. No. 408 at 13-

6  14.  He then highlights a sampling of those "unclean" acts, including that "Uber encouraged—and

7  even financially incentivized—Mr. Levandowski to solicit people from Google" and that "Uber

8  hired Mr. Levandowski and his team specifically because it wanted to acquire and leverage their

9  unique knowledge of Google's self-driving car technology."  *Id*. at 14.  Yet Uber's motion made

10  no attempt to prohibit Levandowski from introducing the evidence cited in his pretrial brief.  And

11  there is nothing in the scope of Google's intervention that prevents it from making arguments

12  based on this evidence or offering its own unique perspective on this Google-specific issue.

13         **F.    Uber Waived An *In Pari Delicto* Defense And, In Any Event, It Is Not
              Properly Asserted With This Motion**
14

15         Finally, Uber contends for the first time that, under the doctrine of *in pari delicto*, Uber's

16  entire indemnity obligations should be cast aside.  This argument should be rejected.

17         For one, Uber waived this defense because it never asserted it in its answer or in its

18  amended answer.  When it first moved to intervene in July 2020, Google made clear that it

19  contends Uber knew about, encouraged and agreed to indemnify Levandowski for the "bad acts"

20  that led to the arbitration award and judgment Levandowski now seeks indemnification for.  *See*

21  Dkt. No. 15.  Since then, over the course of extensive discovery and motion practice, Uber has had

22  ample opportunity to assert an *in pari delicto* defense, but chose not to do so until now, just days

23  before trial.  Uber makes no attempt to justify that delay, to seek leave to amend its pleadings or to

24  explain why its *in limine* motion is the proper vehicle to assert a defense for the first time.  The

25  defense, therefore, has been waived.  *See Pinto Trucking Serv., Inc. v. Motor Dispatch, Inc.*, 649

26  F.2d 530, 534 (7th Cir. 1981) (affirming ruling that defendant-appellants had waived "eleventh

27  hour" assertion of the *in pari delicto* defense).

28

-8-

1    In any event, Uber's theory makes no sense.  Under Uber's twisted logic, Google should
2    not receive any recovery because *both* Uber and Levandowski intended to harm Google in some
3    way.  In other words, Uber now claims it should be allowed to jettison its indemnity obligations
4    because it encouraged the very "bad acts" it agreed to indemnify Levandowski for.  If anything,
5    fairness and equity demand the reverse.  Uber knew about Levandowski's misconduct, encouraged
6    that misconduct while it was happening, and agreed to indemnify it after it had happened, because
7    doing so benefited Uber.  Under these circumstances, Uber should not be allowed to argue that its
8    own misconduct requires that Google, the real victim in this saga, be left without an adequate
9    remedy.

10   **III.    CONCLUSION**

11   For the foregoing reasons, Uber's motion *in limine* to bar Google from presenting evidence
12   or argument about Uber's motivations and intentions in 2015 and 2016 should be denied.

13   Dated:  February 7, 2022

         By:  _____/s/  John W. Berry_____
14
              John W. Berry
15            MUNGER, TOLLES & OLSON LLP
              350 South Grand Avenue, 50th Floor
16            Los Angeles, California 90071-3426
              (213) 683-9571
17            john.berry@mto.com

18       By:  _____/s/  Rachael Meny_____
              Rachael Meny
19            KEKER, VAN NEST & PETERS LLP
              633 Battery Street
20            San Francisco, California 94107-1809
              (415) 391-5400
21            rmeny@keker.com

22            *Counsel for Google LLC*

23

24

25

26

27

28